UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Buffalo, N.Y.,

Debtor.

Case No. 20-10322

Chapter 11

# MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL, AND (B) GRANTING ADEQUATE PROTECTION

The Diocese of Buffalo, N.Y. ("Diocese"), by and through its undersigned counsel, hereby moves this Court (this "Motion") for entry of interim and final orders, in substantially the forms attached hereto as ***Exhibits A*** and ***B*** respectively, (a) authorizing the Diocese's use of cash collateral, and (b) granting adequate protection pursuant to 11 U.S.C. §§ 105, 361 and 363. In support of this Motion, the Diocese respectfully represents as follows:

## BACKGROUND

1. On February 28, 2020 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case, and as of the date of this filing, no official committees have been appointed or designated.

2. Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Affidavit of Rev. Peter J. Karalus Regarding Structure and Pre-Filing History of The Diocese of Buffalo and in Support of the*

3491854.2

*Chapter 11 Petition and First Day Pleadings* and the *Affidavit of Charles Mendolera Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, each of which was filed on the Petition Date and is incorporated herein by reference.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

6. The statutory and rule-based predicates for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001and 9013 of the Local Rules of Bankruptcy Procedure for the Western District of New York (the "Local Rules").

7. The Diocese does not, by filing its petition for relief and other documents in this bankruptcy case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of New York, the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, New York trust law, and the rights to object to disclosure of information and to contend that certain assets discussed in the Motion are not property of the estate.

## STATEMENT PURSUANT TO RULE 4001(b)(1)(B)

8. The Diocese provides the following summary of the material provisions of this Motion pursuant to Bankruptcy Rule 4001(b)(1)(B):

   (i) The creditor who has an interest in the Cash Collateral is Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T"). *See* ¶ 9.

   (ii) The Diocese is seeking authorization to use Cash Collateral to pay employee wages and other ordinary course operating expenses, administrative

expenses incurred in this Chapter 11 Case, and such other payments as may be authorized by the Court by separate order. *See* ¶¶ 12-13.

(iii) The Diocese is seeking interim authorization to use Cash Collateral through March 31, 2020 pursuant to the and continued use of Cash Collateral pursuant to the Final Order (as defined herein). *See* ¶¶ 19-24.

(iv) In order to adequately protect M&T's interest in the Cash Collateral, the Diocese is proposing to grant Rollover Liens as described herein. *See* ¶¶ 17-18.

## THE DIOCESE'S PREPETITION SECURED INDEBTEDNESS

9. As of the Petition Date, the Diocese is indebted to M&T pursuant to the following transactions and documents:

(i) On April 1, 2013, the Diocese executed and delivered to M&T that certain Letter of Credit Agreement, pursuant to which the Diocese agreed to reimburse M&T for any payment made by M&T under a letter of credit issued for the benefit of the Diocese (the "LOC Agreement").

(ii) Pursuant to the LOC Agreement, M&T issued to the New York State Worker's Compensation Board (the "WCB") a letter of credit in the amount of approximately $4.8 million (the "Letter of Credit") to secure the Diocese's obligations under its self-insured worker's compensation program. As of the date of this Motion, the WCB has made no attempt to draw upon the Letter of Credit and, upon information and belief, there exists no cause for the WCB to do so.

(iii) To secure any obligations to M&T that might arise under the LOC Agreement if and when WCB were to draw upon the Letter of Credit, the Diocese (a) deposited approximately $5.1 million in securities into a blocked account (the "Blocked Account") held at M&T pursuant to a Securities Account Control Agreement dated October 11, 2019 (the "SACA"), and (b) granted to M&T a security interest in the securities in the Blocked Account as well as any other property of the Diocese in the possession or control of M&T pursuant to a Security Agreement dated October 11, 2019 (the "Security Agreement" and together with the LOC Agreement, the Letter of Credit, and the SACA, the "Prepetition Secured Debt Documents"). The securities held in the Blocked Account, as well as any cash or other collateral subject to M&T's lien under the Prepetition Secured Debt Documents, are collectively referred to in this Motion as the "Prepetition Collateral."

3

## RELIEF REQUESTED

10. The Diocese seeks to use cash (other than cash or securities held in the Blocked Account) existing on or after the Petition Date that may be part of the Prepetition Collateral (the "Cash Collateral"). The Diocese hereby requests that the Court grant the following relief:

   (i) authorize the Diocese, pursuant to section 363(c) of the Bankruptcy Code, to use Cash Collateral to make payments in the ordinary course of the Diocese's business, to pay administrative expenses incurred in this Chapter 11 Case, and to make such other payments as may be authorized by the Court by separate order; and

   (ii) authorize the Diocese, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to M&T in the form of replacement liens.

11. The Diocese has consulted with M&T regarding its continued use of Cash Collateral and M&T supports the relief requested herein.

## BASIS FOR RELIEF

### A. The Diocese Has an Immediate Need to Use Cash Collateral

12. The Diocese has an urgent need to use Cash Collateral. Pursuant to the Security Agreement with M&T, the Prepetition Collateral includes, among other things, cash held by the Diocese in several accounts at M&T, including, without limitation, the Diocese's primary operating account (the "Operating Account"), as well as a segregated account for the payment of medical claims under the Diocese's self-insured health plan (the "Catholic Partnership Health Account").

13. As described more fully in the Diocese's motion seeking entry of an order authorizing the continued maintenance of its cash management system which was filed contemporaneously herewith, the Diocese relies upon its Operating Account to collect accounts receivable which are then used to fund other accounts within the Diocese's cash management

system from which disbursements for payroll, vendor and utility payments, and other ordinary course expenses are made. The Diocese also relies upon the cash in the Catholic Partnership Health Account to pay self-insured medical claims. The Diocese does not have sufficient unencumbered cash in its cash management accounts held at other institutions to fund its business operations and pay operating expenses. Accordingly, absent the ability to use Cash Collateral, the Diocese would not be able to pay wages, utility charges, medical claims, and other critical operating expenses.

### B. The Interests of M&T Are Adequately Protected

14. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may only use "cash collateral" with the consent of the secured party with an interest therein or court approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in cash collateral, the court shall prohibit or condition such use of cash collateral as is necessary to provide adequate protection of such entity's interest. *See* 11 U.S.C. § 363(e).

15. Appropriate adequate protection is decided on a case-by-case basis. *See e.g.*, *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Indus. Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); *see also In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)). Although adequate protection is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three (3) nonexclusive examples of what may constitute adequate protection:

> (1) requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that the
5

3491854.2

> ... use ... under section 363 ... results in a decrease in the value of such entity's interest in such property;
>
> (2)     providing to such entity an additional or replacement lien to the extent that such ... use ... results in a decrease in the value of such entity's interest in such property; or
>
> (3)     granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. Essentially, with the provision of adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *Beker Indus.*, 58 B.R. at 736; *see also In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral").

16.     M&T has consented to the Diocese's continued use of Cash Collateral on the terms set forth herein and the Diocese believes that M&T is adequately protected by the granting of replacement liens as described below.

### *The Proposed Adequate Protection*

17.     In order to adequately protect any interest M&T may have in the Cash Collateral, the Diocese proposes to grant M&T, to the extent of any diminution in the value of its interest in the Prepetition Collateral, and effective as of the Petition Date, perfected replacement security interests in, and valid, binding, enforceable and perfected liens (the "Rollover Liens"), on all of the Diocese's cash, deposit accounts, and investment property in the possession of, or subject to the control of, M&T, and all proceeds of the foregoing, whether in existence on the Petition Date or thereafter created, acquired or arising (collectively, the "Postpetition Collateral") provided,

however, that the Postpetition Collateral shall not include, and the Rollover Liens shall not attach to, any funds or property held by the Diocese (i) for the purpose of administering its self-insurance or charitable gift annuity programs, (ii) which represent trust fund taxes or employee payroll deductions, or (iii) which are endowed funds or subject to donor restrictions on use.

18. Because M&T's claim against the Diocese is contingent upon the WCB drawing down the Letter of Credit, and because the value of the Blocked Account is already in excess of M&T's potential exposure under the Letter of Credit, the Diocese submits that the proposed Rollover Liens more than adequately protect M&T's interest (if any) in the Cash Collateral.

C. **Interim Approval Should be Granted**

19. The Diocese seeks interim approval of the use of Cash Collateral in an amount not to exceed $800,000 through March 31, 2020 to pay only (i) reasonable and necessary expenses to be incurred in the ordinary course in connection with the operation of its business and fulfilment of its religious mission, (ii) administrative expenses incurred in connection with this Chapter 11 Case, and (iii) such other payments as may be authorized by separate order of the Court.

20. The Diocese respectfully requests that the Court conduct a preliminary hearing on this Motion and authorize the Diocese to use Cash Collateral on an interim basis pending a hearing to consider authorizing such use on a final basis. Interim access to the Cash Collateral will ensure that the Diocese is able to avoid immediate and irreparable harm at the outset of this Chapter 11 Case.

21. Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining approval to use cash collateral and it provides:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires,

> but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(b)(2).

22. After the final hearing, Bankruptcy Rule 4001(b) does not limit the use of cash collateral solely to those amounts necessary to prevent immediate and irreparable harm to the estate, and the debtor may use such amounts as it deems prudent in the operation of its business. *Cf. In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (approving at the final hearing debtor in possession financing in excess of what had been held to be "necessary to avoid immediate and irreparable harm" at the interim hearing).

23. The Diocese submits that, for the reasons set forth herein, immediate access to Cash Collateral is necessary to allow the Diocese to continue to operate and to preserve the value of the Diocese's estate for the benefit of all parties in interest. Moreover, M&T as the sole party with an interest in Cash Collateral has consented to such use.

**D.   Request for Final Hearing**

24. Pursuant to Bankruptcy Rule 4001(b)(2), the Diocese requests that the Court schedule a hearing to consider entry an order authorizing the use of Cash Collateral on a final basis (the "<u>Final Order</u>"). The Diocese further request that the hearing to consider entry of the Final Order be held no later than thirty (30) days after the Petition Date.

<u>**WAIVER OF NOTICE AND STAY REQUIREMENTS**</u>

25. To implement the foregoing successfully, the Diocese seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.

## RESERVATION OF RIGHTS

26. Nothing in this Motion, nor any payment made pursuant to the relief sought herein, if granted, is intended or should be construed as an admission as to the validity, priority or amount of any claim against the Diocese, a waiver of the Diocese's right to dispute any claim or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code and the Diocese expressly reserves its rights with respect thereto.

## NOTICE

27. Notice of this Motion will be given to (i) the Office of the United States Trustee for the Western District of New York, (ii) counsel for M&T, (iii) the Diocese's twenty (20) largest unsecured creditors as set forth in the list filed with the Diocese's petition, (v) all required governmental agencies and (vi) the Diocese's banks. In light of the nature of the relief requested herein, the Diocese submits that no further notice is required.

## NO PRIOR REQUEST

28. The Diocese has not previously sought the relief requested herein from this or any court.

**WHEREFORE**, the Diocese respectfully requests that the Court enter interim and final orders, substantially in the forms attached hereto as *Exhibits A* and *B* respectively, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

9

3491854.2

Case 1-20-10322-CLB, Doc 10, Filed 02/28/20, Entered 02/28/20 08:07:05, Description: Main Document , Page 9 of 10

Dated: February 28, 2020　　　　　　　　　　　　BOND, SCHOENECK & KING, PLLC

　　　　　　　　　　　　　　　　　　　　　　　By: /s/ Stephen A. Donato
　　　　　　　　　　　　　　　　　　　　　　　Stephen A. Donato
　　　　　　　　　　　　　　　　　　　　　　　Charles J. Sullivan
　　　　　　　　　　　　　　　　　　　　　　　Sara C. Temes
　　　　　　　　　　　　　　　　　　　　　　　Grayson T. Walter
　　　　　　　　　　　　　　　　　　　　　　　One Lincoln Center
　　　　　　　　　　　　　　　　　　　　　　　Syracuse, NY 13202-1355
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (315) 218-8000
　　　　　　　　　　　　　　　　　　　　　　　Fax: (315) 218-8100
　　　　　　　　　　　　　　　　　　　　　　　sdonato@bsk.com
　　　　　　　　　　　　　　　　　　　　　　　csullivan@bsk.com
　　　　　　　　　　　　　　　　　　　　　　　stemes@bsk.com
　　　　　　　　　　　　　　　　　　　　　　　gwalter@bsk.com

　　　　　　　　　　　　　　　　　　　　　　　*Proposed Attorneys for The Diocese of Buffalo, N.Y.*

10

3491854.2

Case 1-20-10322-CLB, Doc 10, Filed 02/28/20, Entered 02/28/20 08:07:05, Description: Main Document, Page 10 of 10