UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | )   Case No. 20-10322 |
| The Diocese of Buffalo, N.Y., | ) |
|  | )   Chapter 11 |
| Debtor. | ) |
|  | ) |

**OBJECTION OF THE DIOCESE TO THE MOTION OF THE CONTINENTAL
INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY TO
AMEND COMPLAINT AND RESUME DECLARATORY JUDGMENT
ACTION REGARDING INSURANCE COVERAGE FOR SEXUAL ABUSE CLAIMS**

The Diocese of Buffalo, N.Y. ("Diocese"), by and through its undersigned counsel, hereby objects (this "Objection") to the *Motion of the Continental Insurance Company for Relief from the Automatic Stay to Amend Complaint and Resume Declaratory Judgment Action Regarding Insurance Coverage for Sexual Abuse Claims* [Docket No. 163] (the "Lift Stay Motion"). In support of this Objection, the Diocese respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Any plan of reorganization that the Diocese files in this chapter 11 case will require the application of available insurance policy proceeds to fund recoveries for sexual abuse claimants. Eight (8) different insurance carrier groups provided coverage to the Diocese during the years at issue, and the Diocese expects that over 400 individual claimants will seek compensation for sexual abuse claims. The purpose of this chapter 11 proceeding is to efficiently and effectively maximize recovery for these claimants from the resources available to the Diocese. To accomplish this, the Diocese must be given the opportunity to bring together in one court proceeding the single largest source of recovery for claimants, the insurance policy proceeds, in order to achieve a successful plan of reorganization and ensure the most favorable outcome for the claimants and all parties in interest.

3524684.5

2.     The insurance policies are by far the largest potential source of recovery available to provide recompense to sexual abuse claimants.  Before the commencement of this chapter 11 case, The Continental Insurance Company ("CNA"), one of the eight insurers in question, filed a declaratory judgment action in State Supreme Court (the "CNA State Court Action").  Only preliminary pleadings were filed prior to the filing of this chapter 11 case on February 28, 2020, and since that time, the CNA State Court Action has been stayed.  Notably, the CNA State Court Action docket has only four entries, consisting of the Complaint, an Affidavit of Service, the Diocese's Answer and CNA's Answer to Counterclaims. *See The Continental Insurance Company v. The Diocese of Buffalo*, Erie County Supreme Court Index No. 812980/2019.  The CNA State Court Action has not been assigned a judge and no request for judicial intervention has been filed.

3.     CNA is now seeking to modify the automatic stay to allow it to separately litigate issues of law and fact that will be relevant to coverage under all of the applicable insurance policies and critical to the Diocese's reorganization efforts.  CNA also seeks to amend the state court complaint to join the other seven Insurers, who are not currently parties to the CNA State Court Action. *See* Lift Stay Motion, ¶ 6.  This Court should deny CNA's Lift Stay Motion because it is premature, unnecessary and not supported by "cause" within the meaning of section 362 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code").

4.     The Diocese respectfully submits that to facilitate the most efficient and effective litigation of the relevant issues, the Lift Stay Motion must be denied and the issues litigated before the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court" or this "Court").  The consolidation of the relevant issues before this Court will eliminate the risk of inconsistent judgments in several respects: findings related to coverage issues of CNA will also be relevant to the other insurers and, separately, the availability of insurance proceeds will be the

2

3524684.5

cornerstone to any chapter 11 plan of reorganization proposed by the Diocese. Litigation related to the availability of insurance coverage is also critical to other parties in interest, including the sexual abuse claimants and co-defendant additional insureds such as parishes.

5.      All litigable issues CNA seeks to pursue on its own in state court can be competently and efficiently addressed and dispensed with by this Court in the context of the adversary proceeding [Adv. Case No. 20-01009] commenced by the Diocese on the Petition Date (as defined below) in this Court by the filing of a complaint [Adv. Docket No. 1] against all of its insurers seeking to facilitate a global resolution of all insurance coverage issues (the "Global Coverage Adversary"). CNA attempts to argue that the CNA State Court Action should go forward because it was filed prior to the Global Coverage Adversary (see Lift Stay Motion, ¶ 7). However, the Diocese respectfully submits that this Court has the discretion to prioritize the Global Coverage Adversary in order to eliminate the risk of inconsistent judgments and in consideration of the balance of convenience.

## BACKGROUND

6.      On February 28, 2020 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 et seq., the "Bankruptcy Code") with the Bankruptcy Court, commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case.

7.      On March 11, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102 [Docket No. 92].

3524684.5

8. Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Affidavit of Rev. Peter J. Karalus Regarding Structure and Pre-Filing History of The Diocese of Buffalo and in Support of the Chapter 11 Petition and First Day Pleadings* and the *Affidavit of Charles Mendolera Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings* (the "First Day Affidavits"), each of which was filed on the Petition Date and is incorporated herein by reference [Docket Nos. 7, 8].

9. As set forth in the First Day Affidavits, this Chapter 11 Case was precipitated by an influx of lawsuits naming the Diocese as a defendant with respect to claims arising from alleged sexual abuse following New York State's enactment of the Child Victims Act (the "CVA"), as well as the threat of additional actions and claims based on alleged sexual abuse (the "CVA Actions and Claims").

10. The Diocese has identified approximately eight (8) different insurance carrier groups (each, an "Insurer" and collectively the "Insurers") who issued to the Diocese, or later acquired responsibility for, one or more primary general liability, umbrella and/or excess liability insurance policies (each a "Policy" and collectively the "Policies") which provide coverage to the Diocese with respect to the CVA Actions and Claims.

11. Upon information and belief, each of the Policies requires the Insurers to pay on behalf of the Diocese all sums that the Diocese becomes legally obligated to pay as a result of bodily injury, as long as any part of the injury took place, and with regard to certain Policies a claim was made, during the applicable policy period.

12. Upon information and belief, each of the Policies also requires the Insurers to pay defense costs and expenses, including attorney's fees, incurred by the Diocese in the investigation

4

3524684.5

and defense of the CVA Actions and Claims. This obligation applies even if the allegations against the Diocese are without merit.

13. The Policies represent the most significant source of recovery for abuse victims in this Chapter 11 Case. Knowing the scope and extent of coverage available under the Policies must occur before the Diocese can propose a confirmable plan of reorganization. Accordingly, prior to the Petition Date, the Diocese notified each of the Insurers of its potential claims under the Policies and requested that the Insurers confirm coverage for both defense and liability with respect to the CVA Actions and Claims. Following such notification, both prior to and continuing after the Petition Date, the Diocese has attempted to engage with the Insurers to confirm the availability of coverage under the Policies and to discuss any objections or defenses to coverage that might be raised by the Insurers. The Diocese and its attorneys have engaged in discussions on these issues with representatives from several Insurers.

14. On October 3, 2019, CNA commenced the CNA State Court Action by filing a complaint in the Supreme Court of New York, Erie County ("State Court") seeking, among other things, a declaratory judgment setting forth CNA's obligations pursuant to CNA Policies, if any, to defend and indemnify the Diocese. Following the commencement of this action, however, no substantial activity has taken place. In fact, as set forth in greater detail below, the CNA State Court Action docket contains only four entries. No request for judicial intervention has been filed in the CNA State Court Action, therefore no judge has been assigned to the action.

15. In addition to the allegations set forth in the CNA State Court Action, other Insurers have objected to or reserved rights regarding the availability of coverage under the Policies as a result of, among other things, the passage of time since the alleged incidents giving rise to the CVA Actions and Claims and the Diocese's alleged knowledge of such incidents. However, the

5

discussions the Diocese has had to date with the Insurers have been, for the most part, constructive. As such, the Diocese was optimistic that it would be able to avoid the cost of litigating coverage issues and instead negotiate a global consensual resolution with all eight of the Insurers regarding the availability of coverage for the CVA Actions and Claims. The Diocese intends to confer with the Insurers in order to identify and propose a mutually acceptable independent mediator to oversee and assist with settlement negotiations as part of the Global Coverage Adversary. The mediation contemplated would focus not only on insurance coverage, but on a global settlement of issues presented in this Chapter 11 Case, including issues relating to the CVA Actions and Claims, availability of insurance coverage, and liability of co-defendant additional insureds. The resolution sought in this case is comparable to the preliminary resolution reached in the chapter 11 case *In re The Diocese of Rochester*, Chapter 11 Case No. 19-20905, Adv. Pro. No. 19-02021 (PRW) (Bankr. W.D.N.Y.), in which The Diocese of Rochester and its insurers have agreed to enter into a mediation process to address CVA-related claims.[1]

16.      Unfortunately, despite the Diocese's intent to proactively engage in meaningful discussions to address coverage issues on a consensual and global basis through the Global Coverage Adversary, CNA now seeks, through the Lift Stay Motion, to separately litigate issues in State Court that it acknowledges will be central to the Diocese's ability to reorganize. As set forth below, the Diocese respectfully submits that CNA has failed to establish "cause" to justify relief from the automatic stay under section 362 of the Bankruptcy Code and controlling Second Circuit precedent. Moreover, the institution of the Global Coverage Adversary renders any

---

[1] The mediation process in the *Diocese of Rochester* case stemmed from an Order denying a motion by CNA in that case seeking stay relief to allow it to litigate its coverage dispute in state court, as CNA requests in the instant Lift Stay Motion.

3524684.5

perceived need for stay relief moot by providing a single forum in which all insurance coverage issues, including those raised in the CNA State Court Action, can be litigated efficiently in a uniform and comprehensive manner before this Court.

17.     As set forth herein, CNA has not established "cause" justifying stay relief. In recognition of the importance that resolving coverage issues under the Policies will have on the ultimate outcome of this Chapter 11 Case, the Diocese has taken the proactive step of filing the Global Coverage Adversary in this Court seeking a declaratory judgment regarding coverage with respect to all of the Policies, thereby providing a single forum to efficiently adjudicate any disputes between the Diocese and the Insurers regarding coverage under the Policies.

18.     The Diocese submits that this Court is best-suited to hear and determine all issues relating to the availability of coverage under the Policies and any other disputes that may arise between the Diocese and the Insurers.

19.     Having all insurance coverage issues litigated in a single forum in this Court will allow each of the Insurers, the Committee, additional insureds and all creditors and other potential parties in interest to monitor and, if necessary, participate in such litigation. Lastly, given the importance of the insurance issues to the Diocese's reorganization efforts, the Diocese respectfully submits that this Court, which will be more familiar with the Diocese's Chapter 11 Case than any other tribunal, is the most appropriate forum to hear and determine all issues between the Diocese and the Insurers.

20.     Upon information and belief, the Committee supports the Diocese's Objection as set forth herein and will be filing its own papers in opposition to the Lift Stay Motion.

3524684.5

**OBJECTION**

21.     The Diocese objects to the relief sought in the Lift Stay Motion because the request by CNA is premature and unnecessary, because CNA has not established "cause" for the Court to grant relief from the automatic stay pursuant to section 362 of the Bankruptcy Code and the controlling Second Circuit precedent set forth in *Sonnax Industries Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990), and because the issues CNA seeks relief from the automatic stay to litigate will be appropriately and fully addressed in the context of the Diocese's pending Global Coverage Adversary.

**I.      The Diocese is entitled to the continued protection of the automatic stay and CNA's Lift Stay Motion is premature.**

22.     Section 362(a)(1) of the Bankruptcy Code provides that the filing of a chapter 11 petition "operates as a stay, applicable to all entities, of (1) the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title." 11 U.S.C. § 362(a)(1). The automatic stay provides a debtor with a "breathing spell" which is "designed to give the debtor time to organize its affairs." *Teachers Ins. & Annuity Assoc. v. Butler*, 803 F.2d 61, 64-65 (2d Cir. 1986). It affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't. of Env. Prot.*, 474 U.S. 494, 503 (1986).

23.     In the two months since the Petition Date, the Diocese has diligently pursued a reorganization strategy and attempted to address the very issues CNA seeks relief from the automatic stay to litigate. As described above, the Diocese and its representatives have proactively sought to engage with the Insurers on a collective basis regarding insurance coverage issues common to each of the Policies. This is precisely the sort of non-judicial and global resolution of

8

3524684.5

issues that are inherent in the formulation of many chapter 11 plans and which the automatic stay is meant to encourage. The Court should reject CNA's attempt to short-circuit this negotiation process by allowing CNA to individually litigate issues common to all of the Diocese's Policies in a separate forum. This is the type of action that the automatic stay was intended to prevent. *See In re Ionosphere Clubs*, 922 F.2d 984, 989 (2d Cir. 1990) ("…the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.")

24.     In light of the short time that this Chapter 11 Case has been pending and the Diocese's efforts to date to address issues common to both CNA and the other Insurers, the Diocese respectfully submits that CNA's Lift Stay Motion is premature and should be denied.

## II.     CNA has not met its burden of demonstrating cause to lift the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.

25.     Section 362 of the Bankruptcy Code provides, in relevant part, that relief from the automatic stay may be granted "for cause." 11 U.S.C. § 362(d)(1). As the Second Circuit recognized in *Sonnax*, section 362(d)(1) of the Bankruptcy Code provides the appropriate standard to justify granting a party relief from the automatic stay to pursue a judicial proceeding. *Sonnax*, 907 F.2d at 1285 ("[s]ection 362(d)(1) requires an initial showing of cause by the movant. . . [i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

26.     The Bankruptcy Code does not define the term "cause," however, the Second Circuit has approved of a number of factors that courts should consider when assessing whether

3524684.5

"cause" exists to justify stay relief to allow litigation outside of the bankruptcy court. *Id.* at 1286.

Those factors are:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Id.*

27. The moving party bears the burden to demonstrate, under the relevant *Sonnax* factors, that cause exists to lift the stay. *See, e.g., In re Sonnax Indus.*, 907 F.2d at 1285; *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999). In support of the Lift Stay Motion, CNA relies primarily on three of the *Sonnax* factors, specifically the tenth, seventh, and twelfth factors. *See* Lift Stay Motion at ¶¶ 13-18. CNA has not met its burden to show that cause exists in this case. When analyzed in the context of this Chapter 11 Case and in light of the pending

Global Coverage Adversary, none of the three factors relied upon by CNA, nor the remaining nine factors, on balance, support a finding of "cause" to grant relief from the automatic stay.

A.  **Factor 10 - The interests of judicial economy and the expeditious and economical resolution of litigation favor keeping the automatic stay in place and litigating any disputes in this Court.**

28.     Judicial economy would be best served by addressing all of the Diocese's Policies simultaneously as part of the Global Coverage Adversary and in the context of the Chapter 11 Case along with the claimants under the CVA Actions and Claims. CNA improperly suggests that judicial economy is favored by litigating its coverage issues in the State Court because CNA takes the position that this Court lacks the authority to enter final judgment. CNA also takes the position that because the CNA State Court Action has been pending for five months, interests of judicial economy would be better served in the State Court that is already "familiar with the underlying facts and the legal issues in play in the dispute." Lift Stay Motion, ¶ 24. As discussed in more detail below, the Diocese believes that CNA has grossly oversimplified the analysis of whether or not this Court can enter final judgment in a dispute over coverage under the Policies, and is mistaken that interests of judicial economy are better served in the State Court. Further, as set forth below, virtually no activity has taken place in the CNA State Court Action, and the interests of justice are best served by litigation of claims involving all of the Policies in one court.

29.     CNA suggests in its Lift Stay Motion that litigation of insurance coverage issues in this Court would be inefficient because CNA claims that such issues are not "core" and that this Court therefore lacks the authority to enter final judgment. Lift Stay Motion at ¶ 22. Although the Diocese does not concede this point, and indeed submits that Second Circuit case law suggests

11

3524684.5

otherwise,[2] the Diocese submits that, even if CNA were correct, that does not necessarily mean coverage issues could be more efficiently resolved in another forum. Pursuant to 28 U.S.C. § 157(c)(2), the parties can always submit to the jurisdiction of this Court to enter a final order. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). Furthermore, pursuant to 28 U.S.C. § 157(c)(1), this Court can submit findings of fact and conclusions of law to the District Court for *de novo* review and entry of final judgment.

30. Accordingly, and especially in light of the pending Global Coverage Adversary which will address all of the issues that CNA seeks to litigate in its proposed declaratory judgment action in the CNA State Court Action but which already includes all of the Insurers as parties, the Diocese respectfully submits that judicial economy is best served, and an expeditious resolution of the dispute at issue can be most efficiently achieved, by maintaining the automatic stay and allowing the Global Coverage Adversary to proceed in this Court.

31. More important, in determining how the Diocese's insurance issues can be most effectively litigated, is the efficiency to be gained by litigating the coverage issues of all eight (8) Insurers in a single unified action that can simultaneously address the many common issues of fact and law that will be presented in each dispute. The Global Coverage Adversary provides this Court with a pending declaratory judgment action that will allow for the resolution of all insurance issues in an efficient and uniform manner. CNA proposes to amend the state court complaint to

---

[2] *See, e.g., United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indemn. Ass'n. (In re United States Lines)*, 197 F.3d 631 (2d Cir. 1999) (declaratory action by Trust in its capacity as successor to debtor under confirmed chapter 11 plan seeking to establish insurer's coverage obligations was a "core" proceeding where determination of availability of insurance was necessary to effectuate an equitable distribution of the bankruptcy estate and potential insurance proceeds represented the only funds available to pay mass tort personal injury claims; *accord Cohen v. National Union Fire Ins. Co. (In re County Seat Stores)*, 2002 U.S. Dist. LEXIS 1555 (S.D.N.Y. Jan. 31, 2002) (action to determine coverage under D&O policy was "core" where the bankruptcy court would have great difficulty administering an orderly and equitable distribution of the estate's assets without determining whether coverage was available).

3524684.5

join the other seven Insurers to accomplish the same result, however, doing so would effectively be starting the case over as the other Insurers would need to be served and answer the complaint. Moreover, CNA has failed to demonstrate to this Court that the State Court would have jurisdiction over the other Insurers in the context of the CNA State Court Action.

32.     CNA argues that the coverage issues would be more efficiently resolved in the State Court because the CNA State Court Action has been pending for five months the and the State Court is familiar with the underlying facts and the legal issues.  This is a gross overstatement.  In fact, the CNA State Court Action docket contains only four entries, no request for judicial intervention has been filed in the CNA State Court Action, therefore no judge has been assigned to the action.  While issue has been joined in the CNA State Court Action by the filing of the Diocese's answer, nothing else has occurred besides minor discussions relating to the scope of discovery.  As such, this Court, which is already overseeing the Diocese's Chapter 11 Case, is already more familiar with the Diocese, its business and history, and the facts and circumstances surrounding the CVA Actions and Claims than any other court or finder of fact.  Furthermore, the Global Coverage Adversary was filed over two months ago, is currently pending before this Court and includes all of the Insurers.  Accordingly, this Court is in the best position to resolve any coverage disputes in an efficient and consistent manner.

3524684.5

33.     As indicated above, the Diocese is attempting to broker a global resolution with its

Insurers which will serve as a significant source of funding for a chapter 11 plan.[3]  Even if a global

resolution cannot be consensually achieved and litigation becomes necessary to resolve coverage

disputes under the Policies, the Diocese submits that such litigation can be handled much more

efficiently in this Court via the Global Coverage Adversary than in in the CNA State Court Action.

This Court is fully competent to hear and determine all issues that may arise between the Diocese

on the one hand and one or more Insurers on the other and can efficiently resolve these issues for

all of the Policies in the context of the pending Global Coverage Adversary.  Although each of the

Policies is a separate contract with a different counterparty, upon information and belief most of

the Policies were written on standard forms and therefore contain similar if not identical language.

Furthermore, the CVA Actions and Claims raise many similar coverage issues that will be common

throughout the Policies. There are accordingly a number of common issues of law and fact that

will be critical to interpreting each of the Policies and the operative terms utilized therein, as well

as adjudicating any defenses or objections to coverage that may be raised by CNA or any of the

other Insurers.[4]   Also, in some instances, there may be disputes between and among the various

---

[3] The automatic stay provided by the Bankruptcy Code is intended to foster just this kind of negotiation between interested parties, and the Diocese should be allowed a reasonable opportunity to pursue this strategy through mediation of the claims asserted in the Global Coverage Adversary.  Indeed, in *In re Purdue Pharma, L.P.* the United States Bankruptcy Court for the Southern District of New York recently recognized the efficiencies that can be achieved by having all interested parties to come together in a single forum to address their disputes when Judge Drain entered a series of orders temporarily enjoining certain governmental entities from continuing to pursue claims against the Diocese and its affiliates in various state court actions in order to facilitate negotiations regarding a chapter 11 plan of reorganization.  S.D.N.Y Case No. 19-23649, Adv. Pro. 19-08289 [Docket Nos. 82, 89 and 105].

[4] For example, the Diocese anticipates that a critical factor in determining the amount of available coverage under all of the Policies will be the interpretation and meaning of the term "occurrence" as it pertains to injuries suffered as a result of abuse.  In light of the fact that the Policy language is similar if not identical from one Policy to the next, that term should be given consistent application across all Policies.  Several issues such as the interpretation of "bodily injury," the proper calculation of the amount of limits at issue, the legal standard for fact-based defenses such as "expected or intended" are all common questions that will have to be resolved and are important to the Diocese and all implicated Insurers.

14

3524684.5

Insurers as to which Insurer's coverage is primary, which can also be most efficiently resolved in a single action in this Court.

**B.** **Factor 7 – Litigation in another forum would potentially prejudice the interests of creditor beneficiaries of the Policies, other Insurers and third parties.**

34.     CNA suggests that litigation of its claims in the CNA State Court Action will not prejudice the interests of creditors who may have an interest in the Policies. That is incorrect. The primary parties in interest in the Diocese's Chapter 11 Case are claimants representing the CVA Actions and Claims. Such claimants not only have a general interest in the Policies as creditors in the Chapter 11 Case, but have a specific interest in the coverage available under the Policies as it becomes available to compensate victims of abuse.

35.     For the same reason that the Diocese's insurance issues are more efficiently resolved in the pending Global Coverage Adversary before this Court, all parties (other than CNA) with an interest in the Diocese's coverage disputes would be forced to incur greater costs if the CNA State Court Action were allowed to proceed. This is true not only of abuse claimant creditors who may be the direct beneficiaries of any recovery under the Policies, but also with respect to other Insurers who will be forced to participate in the CNA State Court Action when they may have already prepared a defense in the Global Coverage Adversary, and with respect to parishes and other third parties who may have an interest in the Policies as co-insureds.

36.     Additionally, the Committee, which represents the creditor constituency with the most direct interest in any recovery under the Policies, upon information and belief, plans to file its own objection to the Lift Stay Motion. Upon information and belief, the Committee supports the Diocese's preferred approach of attempting to resolve all insurance issues consensually and litigating, if necessary, any disputes as part of the Global Coverage Adversary. Furthermore, with

3524684.5

the exception of CNA and Employers Insurance Company of Wausau, no other Insurers have joined in the request for adjudication of these issues in State Court.

### C. Factor 12 – The balance of harms favors keeping the automatic stay in place.

37.     CNA suggests in its Lift Stay Motion that the balance of the harms favors lifting the stay because failing to do so would "improperly usurp [CNA]'s choice of forum". (*See* Lift Stay Motion at ¶ 28).  While some deference is given to a plaintiff's choice in forum, this deference cannot be given to the detriment of the Diocese's estate.  As established above, resolving the Global Coverage Adversary in this Court is in the best interest of the estate.  Further, the Diocese respectfully submits that mediation of all coverage issues under the auspices of the Global Coverage Adversary will encourage multilateral negotiations and significantly reduce the number of open issues for trial, thus resulting in increased efficiencies.  Accordingly, the Diocese respectfully submits that the balance of harms clearly weighs in favor of maintaining the automatic stay in place.

38.     Moreover, CNA has not identified any real harm that it would suffer if the automatic stay remains in place, especially in view of the pending Global Coverage Adversary before this Court.  The CNA Policies at issue relate to coverage for incidents occurring between 1973 and 1977.  There should be no dispute that, whatever CNA's liability under the Policies may be, it has been fixed for over four (4) decades. CNA will not be required to make payment with respect to those Policies absent either its agreement to enter into a voluntary settlement with the Diocese or a decision applying New York law in the Global Coverage Adversary in favor of the Diocese.  Therefore, CNA suffers no harm by the continuation of the automatic stay.

3524684.5

**D. Factor 2 – The proposed action by CNA is directly connected with the Diocese's Chapter 11 Case and will interfere with the Diocese's ongoing efforts to address its insurance coverage issues.**

39.    CNA admits, as it must, that issues regarding the availability and extent of the Diocese's coverage under the Policies are critical to the Diocese's Chapter 11 Case and reorganizational efforts.  CNA then attempts to downplay this connection by arguing that the issues it seeks to litigate are "not dependent in any way upon any bankruptcy issue."  Lift Stay Motion at ¶ 33.

40.    While CNA may be correct that litigation of insurance issues will turn primarily on questions of state law, it does not follow that such litigation, even if limited to issues of state law, will not interfere with the Diocese's Chapter 11 Case.  As discussed throughout this Objection, the Diocese is attempting to resolve issues common to all of its eight (8) Insurers that are integral to the formulation of any chapter 11 plan of reorganization.  The Diocese seeks to resolve these issues as part of the Chapter 11 Case through mediation, which may obviate the need to fully litigate the Global Coverage Adversary.  Unfortunately, CNA's decision to immediately seek stay relief and create a contested gating issue of where the CNA coverage issues would be litigated, rather than engaging with the Diocese would seem to indicate that CNA is not interested in reaching a consensual resolution of these issues with respect to its Policies.

41.    The Diocese respectfully submits that the best approach to resolving its insurance issues with the least disruption to this Chapter 11 Case would be to keep the automatic stay in place while the Diocese continues to negotiate with CNA and the other Insurers with the assistance of a court-appointed mediator.  To the extent those negotiations reach an impasse, any outstanding issues can be addressed as part of the pending Global Coverage Adversary.

3524684.5

42.     CNA also suggests that because the Diocese has retained Blank Rome, LLP as its insurance counsel, the any interference or connection to the Diocese's reorganization is minimized. This is incorrect.  Blank Rome is advising the Diocese and its restructuring professionals regarding continuing insurance coverage issues, crucial to analysis of assets available to creditors in the Chapter 11 Case.  If the Diocese were required to litigate with CNA outside of its bankruptcy proceeding in another forum, while engaging in contemporaneous litigation with the remainder of the Insurers as part of the Global Coverage Adversary, the Diocese's scarce resources, additional professional fees and the divided attention of management would be a significant barrier to a successful resolution of this Chapter 11 Case.

**E.      Factor 1 – A complete resolution of the issues is best achieved by maintaining the automatic stay in place.**

43.     The Diocese acknowledges that either this Court or the State Court could capably resolve any coverage disputes between CNA and the Diocese.  However, only this Court, through the Global Coverage Adversary, can at the same time address very similar issues that will likely arise with respect to the Policies issued by each of the Diocese's seven (7) other Insurers with the CVA Actions and Claims and the Diocese's reorganization in mind without the need to amend the complaint to join additional parties.  Accordingly, a complete resolution of all insurance coverage issues, for the benefit of all parties in interest, is best achieved by maintaining the automatic stay in place and resolving any issues which cannot be consensually resolved in the Global Coverage Adversary.

18

3524684.5

F.     **Factor 4 – There is no specialized tribunal established to hear insurance coverage claims and this Court is fully capable of evaluating the relevant legal and factual issues**

44.     CNA concedes that "there is no specialized tribunal established to hear state law insurance coverage disputes" while postulating that "the State Court [is] better equipped to quickly and efficiently adjudicate the issues." Lift Stay Motion at ¶ 35. The availability of another forum that might be able to competently resolve an issue does not establish cause to lift the automatic stay. Rather, "[b]ankruptcy courts are often called upon to apply state laws in resolving claims against the estate." *Grayson v. Worldcom, Inc. (In re Worldcom, Inc.)*, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. August 4, 2006) (affirming bankruptcy court's denial of motion for relief from the automatic stay where no specialized tribunal was established or necessary to adjudicate movant's state-law claims).

45.     Accordingly, there is good reason to believe that this Court is not only equipped to evaluate the complicated legal and factual issues which will arise in the context of any litigation over the Diocese's insurance coverage, but is perhaps better equipped than the State Court to litigate the coverage issues in the context of the Diocese's Chapter 11 Case, as keeping any litigation in federal court will allow this Court to monitor its progress and ensure that it does not become unnecessarily protracted or delayed and thereby adversely affect the Diocese's ability to timely reorganize its affairs.

G.     **Factor 6 – The action proposed by CNA is one directly against the Diocese, but could have collateral implications for third parties**

46.     CNA argues that the CNA State Court Action will primarily involve third parties if it is permitted to amend its complaint to join the other Insurers. Lift Stay Motion at ¶ 36. This argument is not only circular, but it is also misleading, as it fails to consider that the Diocese would

19

be the primary adversary to each of the Insurers even if the amendment were permitted. Accordingly, the Diocese respectfully submits that this factor weighs against stay relief.

### H. Factor 11 – Trial readiness concerns do not weigh in favor of granting relief from the automatic stay.

47. As described above, that Global Coverage Adversary already includes all Insurers, so time and resources would not be wasted amending the CNA State Court Action and beginning again. Further, the CNA State Court Action has not progressed in a material way. In fact, a judge has not yet been appointed. Accordingly, this is not a situation where the Diocese is seeking to delay resolution of an issue, or where the imposition of the automatic stay will cause logistical or other hardships for any party with respect to trial preparation and readiness. Therefore, this factor does not support a finding of cause to lift the automatic stay.

### I. Factors 3, 5, 8 and 9 – The remaining *Sonnax* factors are inapplicable and do not support a finding of cause to lift the automatic stay.

48. The remaining *Sonnax* factors can be characterized as "one-way" factors in the sense that they relate to various factual scenarios which, if present, could influence a court toward or against a finding of cause to lift the automatic stay but which do not by their mere absence suggest the opposite result. Because the factual scenarios contemplated by those factors are not present here, these remaining factors are inapplicable to the Court's determination as to whether cause exists to lift the automatic stay.

### III. The pending Global Coverage Adversary obviates any need for stay relief.

49. In addition to the fact that an analysis of the *Sonnax* factors makes it clear that "cause" does not exist to justify granting CNA relief from the automatic stay, stay relief is wholly unnecessary because all of the issues CNA seeks to address in the CNA State Court Action in its amended form are duplicative of, and will necessarily be addressed and adjudicated in connection

20

with, the Global Coverage Adversary filed by the Diocese on the Petition Date. Notably, Judge Warren rejected similar arguments brought by CNA in the context of another chapter 11 case, *In re The Diocese of Rochester*, Chapter 11 Case No. 19-20905, Docket No. 271 (PRW) (Bankr. W.D.N.Y., Nov. 21, 2019) (motion to lift stay denied for reasons stated on the record at the hearing).

50. Where, as here, a motion seeks relief from the automatic stay in order to pursue litigation concerning issues which are already pending, and can be capably litigated, in the bankruptcy court or another forum, courts have denied stay relief. *See, e.g.*, *In re Lehman Brothers Holdings Inc.*, 435 B.R. 122, 137-39 (S.D.N.Y. 2010) (affirming bankruptcy court's denial of stay relief when issue to be litigated was already on appeal to the Ninth Circuit); *In re Enron Corp.*, 306 B.R. 465, 476-77 (Bankr. S.D.N.Y. 2004) (finding no "cause" to justify lifting the automatic stay where "[t]he issues to be determined . . . appear to be similar to issues already raised in connection with these bankruptcy cases."). Indeed, on facts very similar to those presently before the Court, the *Enron* court determined that stay relief was not appropriate where the party seeking relief from the automatic stay sought to resort to a state court forum to litigate issues as to the validity of certain contractual agreements that were substantially similar to the "issues that [the debtor] is seeking to resolve with all of its various counterparties" and where the debtors' interest in the outcome of litigation already pending in the form of an adversary proceeding in the bankruptcy court "represents one of the largest assets of the debtors' estates."). *Id*. Accordingly, the Global Coverage Adversary, should be given priority and the Lift Stay Motion should be denied.

3524684.5

**WHEREFORE**, in light of the foregoing, the Diocese respectfully submits that there is no cause to lift the automatic stay and that such relief is unnecessary and would interfere with, rather than promote, the efficient resolution of the Diocese's Chapter 11 Case.  Accordingly, the Diocese respectfully requests that the Court enter an order denying the Lift Stay Motion and providing such further relief as the Court may deem just and proper.

Dated:  April 30, 2020

BOND, SCHOENECK & KING, PLLC


By:____/s/  Stephen A. Donato_____
Stephen A. Donato
Charles J. Sullivan
Grayson T. Walter
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
gwalter@bsk.com

*Proposed Attorneys for The Diocese of Buffalo, N.Y.*

22

3524684.5