UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Buffalo, N.Y.,

Debtor.

Case No. 20-10322 (CLB)

Chapter 11

**OMNIBUS OPPOSITION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO DEBTOR'S APPLICATIONS FOR (I) AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF LIPPES
MATHIAS WEXLER FRIEDMAN LLP AS SPECIAL COUNSEL TO THE
DIOCESE AND (II) AN ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF JONES DAY AS SPECIAL COUNSEL TO THE DIOCESE**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of Buffalo, N.Y. (the "**Debtor**" or the "**Diocese**"), the debtor and debtor-in-possession in the above-captioned case (the "**Chapter 11 Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), by and through its undersigned counsel, respectfully submits its *Omnibus Opposition to Debtor's Applications for (I) an Order Authorizing the Employment and Retention of Lippes Mathias Wexler Friedman LLP as Special Counsel to the Diocese and (II) an Order Authorizing the Employment and Retention of Jones Day as Special Counsel to the Diocese* (this "**Objection**") to the *Debtor's Application for an Order Authorizing the Employment and Retention of Lippes Mathias Wexler Friedman LLP as Special Counsel to the Diocese*[1] (the "**Lippes Mathias Application**") and the *Debtor's Application for an Order Authorizing the Employment and Retention of Jones Day as Special Counsel to the Diocese*[2] (the "**Jones Day Application**" and, together with the Lippes Mathias Application, the "**Applications**"). In support of its Objection, the Committee states as follows:

---

[1] Docket No. 795.
[2] Docket No. 785.

DOCS_NY:41892.3 18502/002

## INTRODUCTION

1. The Debtor seeks to: (a) employ Lippes Mathias Wexler Friedman LLP ("**Lippes Mathias**") to defend Bishop Emeritus Richard J. Malone and Auxiliary Bishop Edward M. Grosz with respect to an action commenced by the Attorney General of New York against the Diocese, Bishops Malone and Grosz in the Supreme Court of the State of New York, County of New York, Index No. 452354/2020 (the "**AG Lawsuit**");[3] (b) employ Jones Day to defend the Debtor with respect to the AG Lawsuit.

2. The Committee opposes the Diocese's retention and payment of any counsel to defend its former Bishop and Auxiliary Bishop with respect to the AG Lawsuit. The Diocese's sole justification for retaining counsel on behalf of these former leaders of the Diocese is an assertion that they are entitled to indemnification pursuant to the Diocese's bylaws. However, any such right of indemnification gives rise only to a general unsecured claim that cannot be paid as an administrative expense of the estate.

3. The Committee further objects to the Diocese's retention of Jones Day as unnecessary and burdensome to the estate. The Diocese is represented by competent and experienced counsel through Bond Schoeneck & King ("**BSK**"). The Diocese does not need to incur fees of a large, multinational law firm that is charging rates far in excess of rates charged in the Buffalo market or any other professional employed by the Diocese's estate. Moreover, the relief requested by the Attorney General in her complaint as to the Diocese is limited to

---

[3] A copy of the complaint filed in the AG Lawsuit is attached as **Exhibit A** (the "**AG Complaint**" and references thereto, "**AG Compl.**").

injunctive relief designed to protect the public and children from individuals who have sexually abused children.

## RELEVANT FACTS

### A. Bishops Malone and Grosz's Tenure with the Diocese

4. Bishop Emeritus Malone served as the Diocese's bishop from 2012 until his resignation in December 2019,[4] approximately one year after the commencement of the Attorney General's investigation of the Diocese (the "**AG Investigation**"), at which time he had been overseeing the Diocese and its response to sexual abuse allegations for more than seven years.[5] Bishop Grosz served as an auxiliary bishop of the Diocese for thirty years, from 1990 until March 2020.[6] Bishop Grosz also retired during the pendency of the AG Investigation.[7] Bishop Grosz was closely involved with the Diocese's response to allegations of sexual abuse of minors, with Bishop Emeritus Malone indicating to the Attorney General that Bishop Grosz served as the "point man" for the Diocese's response to those allegations.[8] On information and belief, neither Bishop Emeritus Malone nor Bishop Grosz has had any continued leadership role within the Diocese since their resignations. The Diocese asserts that they are "former officers" of the Diocese.[9]

---

[4] AG Compl. at ¶ 14.
[5] *Id.*, ¶ 7.
[6] *Id.* at ¶ 15.
[7] *Id.* at ¶7.
[8] *Id.* at ¶15.
[9] Lippes Matthias Application at ¶ 5.

- 3 -

### B. The Diocese's Contends That It's Assets Are Limited

5.      The Diocese previously argued to this Court that it does not have sufficient cash to maintain its operations while simultaneously funding its Chapter 11 case.[10] Specifically, less than three months ago, Sister Mary McCarrick, the Diocese's Chief Operating Officer, stated under penalty of perjury that the Diocese "face[d] a pivotal moment that threaten[ed] its viability."[11] She asserted that the Diocese "while in chapter 11 … ha[s] implemented a major reorganization of diocesan departments, resulting in scaling down a number of vital ministries, reducing positions and, in some cases, eliminating services altogether."[12] The Diocese argued that it could not incur professional fees and other charges related to this Chapter 11 Case.[13] In a complete about-face, the Diocese now seeks to retain (a) new counsel for itself at rates far above those charged by the Diocese's other professionals (who are competent to represent the Diocese in the AG Lawsuit) and (b) counsel for former officers that the Diocese is under no obligation to fund because the former officers are entitled to nothing more than a general unsecured claim on account of any purported indemnification obligation. The Diocese's cries of poverty a mere three months ago are in direct contradiction to the Diocese's efforts to retain more professionals under the conditions requested in the Applications.

### C. The AG Lawsuit

6.      On November 23, 2020, the Attorney General of the State of New York filed the AG Complaint. The AG Complaint includes serious allegations against the Diocese,

---

[10] *See Motion for Reconsideration of Bar Date and Mediation Order*, Docket No. 574.
[11] *Sister Mary McCarrick Declaration*, Docket No. 589, Ex. 1, p.1.
[12] *Id.* at p 2.
[13] *See Motion for Reconsideration of Bar Date and Mediation Order* [Docket No. 574] at par. 6.

- 4 -

Bishop Emeritus Malone and Bishop Grosz.  The Committee is troubled by the allegations in the AG Complaint regarding the Diocese's behavior and failures to protect the Buffalo community from predators.  However, the Attorney General does not seek monetary damages from the Diocese.  Rather, the Complaint seeks injunctive relief to compel the Diocese to properly investigate all accusations of abuse, follow its own internal disciplinary mechanisms related to adjudicating potential abusers, inform the public of credible abuse accusations, take reasonable steps to protect children from potential and credibly-accused abusers, maintain proper written records of such efforts, and enact and enforce policies to prevent a culture of protecting abusers.[14]  These requests represent the bare-minimum the Diocese should be doing to prevent future sexual abuse of children and to hold perpetrators of abuse accountable.  Additionally, the Attorney General requested the appointment of an "independent compliance auditor" selected by the Diocese, with the Attorney General's approval, "to monitor and audit" the Diocese's compliance with the child protection policies.[15] Again a basic step in correcting the Diocese's past practices and one the Diocese's should welcome as it attempts to regain its constituency's and the community's trust.  Rather than gearing up to aggressively litigate the AG Complaint, the Diocese should, at the very least, agree to the relief requested.  Frankly, it is offensive that the Diocese needs to be compelled to protect children and hold abusers accountable through the AG Lawsuit or other means.  It is highly disturbing that the Diocese is stretching its finances (in

---

[14] Ex. A, p. 213–14.

[15] *Id.* at 214–15.

contravention of its recent cries of poverty), and using money that should be available to fund a settlement for survivors of abuse, to fight against basic child protection practices.

**ARGUMENT**

**A. The Debtor's Former Officers' Alleged Indemnification Claims Are Not Entitled to Administrative Priority**

7. The Committee objects to the Diocese's proposed retention of Lippes Mathias on behalf of its former officers, Bishops Malone and Grosz, allegedly based on certain indemnification provisions contained in the *By-Laws of The Diocese of Buffalo, N.Y.* (the "**DOB By-Laws**").[16] Any potential indemnity obligation owed to former officers is a prepetition general unsecured claim that is ineligible for administrative expense priority.

8. The Debtor brings the Lippes Mathias Application pursuant to sections 327(a), 329, 503(b) and 507(a)(2) of the Bankruptcy Code.[17] The Debtor cites to section 327 as allowing debtors to employ attorneys "to represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code]."[18] Here, Lippes Mathias is not being employed to represent or assist *the debtor* in relation to *the debtor's duties* under the Bankruptcy Code. Instead, the Debtor is proposing to hire Lippes Mathias to represent **former** officers in defending themselves against claims wholly unrelated to the Debtor's bankruptcy duties. Such an employment is not contemplated within the plain language of section 327.

---

[16] Lippes Mathias Application, Ex. B. The Committee does not concede that the Diocese owes an indemnity obligation to its former officers in regards to the AG Lawsuit, but it is not necessary for the Court to consider that issue at this stage in the proceedings.

[17] Lippes Mathias Application, p. 5.

[18] *Id.*, p. 6 (quoting 11 U.S.C. § 327(a)).

9. The Debtor also cites to section 503(b) as a potential source of authority for approval of the Debtor's retention of attorneys on behalf of its former officers. Section 503(b) allows priority payment solely for expenses required to "preserve the estate."[19] It is well-established in the Second Circuit that "an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business."[20] Indeed, it is well-settled that indemnification claims arising from prepetition acts are properly classified as general unsecured claims against the debtor's estate.[21] Claims for indemnification related to prepetition acts are deemed a "claim" as that term is defined by section 101(5) of the Bankruptcy Code.[22]

10. Here, all of the operative facts, legal relationships, and conduct of both Bishop Emeritus Malone and Bishop Grosz upon which the allegations in the AG Complaint relate occurred prepetition.[23] The DOB By-Laws were adopted, as amended, and enacted by the

---

[19] 11 U.S.C. § 503(b). "First, the claim must derive from a debt incurred post-petition. Next, the claim must arise in connection with a transaction between the claimant and the trustee or debtor in possession. Finally, the claim must represent a debt incurred to benefit the debtor in the operation of its business." *In re Keegan Utility Contractors, Inc.*, 70 B.R. 87, 89 (Bankr. W.D.N.Y. 1987) (citations omitted) (denying claim for attorney's fees incurred by individual in capacity as debtor's manager and officer because legal services were not rendered to debtor directly).

[20] *See Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (quoting *In re Mammoth Mart*, 536 F.2d 950, 954 (1st Cir. 1976)); *see also In re Buf-Air Freight*, 174 B.R. 184, 184 (Bankr. W.D.N.Y. 1994) (Kaplan, J.) ("This Court is bound by [*McFarlin's*]."). "Congress granted priority to administrative expenses in order to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of all the estate's creditors." *Mammoth Mart*, 536 F.2d at 953. Administrative expenses arise from operating the debtor's estate "in the overall interests of the creditors." *See Yorke v. N.L.R.B.*, 709 F.2d 1138, 1143 (7th Cir. 1983).

[21] *See In re Amfesco Indus., Inc.*, 81 B.R. 777, 786 (Bankr. E.D.N.Y. 1988); *see also In re Christian Life Ctr.*, 821 F.2d 1370 (9th Cir. 1987); *In re Green Field Energy Servs., Inc.*, 585 B.R. 89, 114 (Bankr. D. Del. 2018); *In re Health Diagnostic Lab., Inc.*, 557 B.R. 885, 895–96 (Bankr. E.D. Va. 2016); *In re Summit Metals, Inc.*, 379 B.R. 40, 56 (Bankr. D. Del. 2007); *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816 (Bankr. D. Del. 1999).

[22] *See Amfesco,* 81 B.R. at 783.

[23] *See id.* at 784.

Debtor prepetition.[24] Any duty of the Debtor to indemnify Bishops Malone and Grosz arises from their prepetition service to the Diocese, and not for services rendered post-petition to the Debtor.[25]

11. Bishops Malone and Grosz are not entitled to have counsel retained and paid as administrative priority expenses of the Debtor. Therefore, the Committee respectfully requests the Court deny the Debtor's request to retain Lippes Mathias on behalf of its former officers.

12. Notwithstanding the reasons set forth above for denying the Lippes Mathias Application, the AG Complaint also raises serious concerns regarding whether Dennis Vacco, the attorney who would be primarily responsible for representing Bishops Malone and Grosz, may be called as a fact witness in the AG Lawsuit. The Lippes Mathias Application states, "Beginning in 2012, the Diocese retained Lippes Mathias to conduct several internal investigations pertaining to priest misconduct. The last such investigation concluded in 2017 with the issuance of a report to the Diocese."[26] However, the AG Complaint makes clear that no such reports were produced as part of the AG Investigation.[27]

13. The Committee is also concerned that Lippes Matthias fails to disclose all potential connections to creditors in violation of Fed.R.Bankr.P. 2014(a). Mr. Vacco is proposed as the lead attorney to represent Bishops Malone and Grosz. Lippes Matthias's application fails

---

[24] *See id.*

[25] *See id.*

[26] *See* Lippes Mathias Application at ¶25.

[27] AG Compl. at ¶66.

- 8 -

to disclose that his sister, Dianna Vacco, is a defendant in at least two lawsuits alleging that she abused children.[28] Due to this potential conflict that Mr. Vacco's close relative may have with the Diocese and creditors, this connection should have been disclosed.

**B.   The Debtor Should Not Employ Yet Another Law Firm**

14.   The Attorney General's allegations against the Debtor are very serious, but the actual relief sought from the Debtor does not require the hiring of yet another law firm, especially a large, multinational firm with rates significantly higher than the Buffalo market or other professional's rates in this Chapter 11 Case.[29] Notably, the Diocese's current bankruptcy counsel, BSK, has attorneys experienced in representing exempt organizations,[30] litigation,[31] and governmental investigations.[32] Simply put, there is no need to hire Jones Day other than to send a signal that the Diocese is prepared to aggressively fight against basic child protection measures.

15.   The AG Lawsuit seeks about a dozen measures that would require the Diocese to take basic steps to investigate allegations of abuse, inform the public of the outcome of those investigations, reasonably protect minors from exposure to potential abusers, and institute policies and training programs to further the goal of protecting minors.[33] The injunctive

---

[28] In order to protect the privacy of the plaintiff survivors, the Committee will provide details of the lawsuits to counsel to the Diocese and to the Court upon request.

[29] Jones Day proposes compensating partners at a maximum of $1,250, which is more than three times the hourly rate of the Bond, Schoeneck & King, PLLC ($380).

[30] https://www.bsk.com/practices/exempt-organizations.

[31] https://www.bsk.com/practices/litigation#ourteam.

[32] https://www.bsk.com/info/site-search?ss360Query=investigation.

[33] Ex. A, para. 1.

- 9 -

relief requested by the Attorney General includes the bare minimum of measures necessary to protect children, which the Diocese should already be doing or should willingly agree to do in order to prevent repetition of the horrible events that led to both this bankruptcy and the AG Lawsuit. And the Diocese's current attorneys are more than capable of negotiating such a settlement with the Attorney General. In fact, non-monetary child protection protocols similar to, and typically significantly more extensive then, those proposed by the Attorney General are almost always included in Catholic diocese Chapter 11 plans, which are negotiated by dioceses' bankruptcy professionals.[34]

16. Notably, under similar circumstances, the Archdiocese of St. Paul and Minneapolis faced a lawsuit from a governmental authority during the pendency of its chapter 11 case.[35] The county attorney's complaint was filed in June 2015 and the parties signed a negotiated settlement, including approximately twenty pages of non-monetary child protection protocols, by December 2015.[36] The parties focused on reaching a settlement agreement, instead of engaging in wasteful litigation, and were able to resolve the matter in just seven months.

17. The Debtor has failed to justify the employment of an additional law firm to handle such negotiations on its behalf and therefore the Committee respectfully requests the Court deny the Debtor's request to employ Jones Day.

---

[34] *See, e.g., In re. Religious Corporation Sole (Diocese of Helena)*, Case No. 14-60075, Docket No. 166, Ex. A, p. 19–24; *In re. Bishop of the Roman Catholic Church of the Diocese of Gallup, an Arizona corporation sole*, Case No. 13-13677, Docket No. 591-3, Ex. R; *In re The Christian Brothers' Institute*, Case No. 11.22829 (RDD), Docket No. 652, Ex. A, Section 17; *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (CSS), Docket No. 1321, Section 17.5..

[35] *See In re. Archdiocese of St. Paul and Minneapolis*, Case No. 15-30125, Docket No. 1262, p. 120 of 216.

[36] *Id.* pp. 118–120.

### C. Estate Resources Should Not Be Used to Fight Against Child Protection Measures

18. To the extent the Debtor does not intend to simply negotiate a settlement with the Attorney General, the Committee strongly objects to the use of estate resources to fund such litigation. Any other approach to the AG Lawsuit would be an inappropriate use of such funds. The Debtor should not be allowed to use assets that would otherwise be allocated to pay the claims of survivors of child sexual abuse to fight against implementing provisions to prevent such abuse in the future. Such an action would be a violation of the Debtor's fiduciary duty to its creditors.

### CONCLUSION

19. For the reasons stated above, the Diocese should not be allowed to inappropriately spend estate resources on the retentions of Lippes Mathias and Jones Day.

### RESERVATION OF RIGHTS

20. To the extent the Court does not deny the Diocese's request to retain counsel on behalf of its former officers, the Committee reserves the right to seek discovery on the Diocese's retention of Lippes Mathias, including in relation to Dennis Vacco's potential conflicts, and the Diocese's alleged indemnification obligation. The Committee also reserves all rights (a) regarding any claims that may be asserted against Bishops Malone and Grosz based on the allegations in the AG Complaint and (b) regarding any claim for indemnification that may be asserted by Bishops Malone and Grosz.

WHEREFORE, the Committee respectfully requests that the Court deny the Applications.

Dated: January 8, 2021        PACHULSKI STANG ZIEHL & JONES LLP.

*/s/ Ilan D. Scharf*
James I. Stang, Esq. (admitted *pro hac vice*)
Ilan D. Scharf, Esq.
Brittany M. Michael, Esq.
10100 Santa Monica Boulevard
13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

and

780 Third Ave., 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
bmichael@pszjlaw.com

and

GLEICHENHAUS, MARCHESE & WEISHAAR, P.C.

Scott J. Bogucki
43 Court Street, Suite 930
Buffalo, New York 14202-3100
Telephone: (716) 845-6446
Facsimile: (716) 845-6475
Email: sbogucki@gmwlawyers.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

- 12 -