UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 20-10322 |
| The Diocese of Buffalo, N.Y., | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

**NOTICE OF MOTION FOR ENTRY OF AN ORDER DECLARING THAT LIPSITZ
GREEN SCIME CAMBRIA LLP VIOLATED THE AUTOMATIC STAY
BY TAKING ACTION TO OBTAIN PROPERTY OF THE ESTATE
AND AWARDING THE DIOCESE DAMAGES AND SANCTIONS**

　　　　**PLEASE TAKE NOTICE**, that on January 19, 2021, The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, moved (the "Motion") the United States Bankruptcy Court for the Western District of New York (the "Court") for entry of an order: (i) declaring that Lipsitz Green Scime Cambria LLP ("Lipsitz") violated the automatic stay by taking action to obtain property of the estate against the Diocese; (ii) awarding the Diocese damages and sanctions; and (iii) granting such other and further relief as the Court deems just and proper.

　　　　**PLEASE TAKE FURTHER NOTICE**, that any objections or responses to the Application must conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Western District of New York and be filed with the Court and served in accordance with Local Rule 9013-1 upon the following parties: (i) counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Charles J. Sullivan, Sara C. Temes, and Grayson T. Walter,  (ii) the Office of the United States Trustee for the Western District of New York, 300 Pearl Street, Suite 401, Buffalo, NY 14202. Attn:  Joseph W. Allen, (iii) counsel to the Official Committee of Unsecured Creditors, Pachulski, Stang, Ziehl & Jones, LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California, 90067-4003, Attn. James I. Stang, and 780 Third Avenue, 34th Floor, New York, New York, 10017-2024, Attn. Ilan Scharf, and (iv) and those persons who have formally appeared and requested service in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

　　　　**PLEASE TAKE FURTHER NOTICE**, a hearing to consider the Application and any objections related thereto will be held on **February 10, 2021 at 2:00 p.m.** (prevailing Eastern time), or as soon thereafter as counsel may appear and be heard, before the Honorable Carl L. Bucki, Chief United States Bankruptcy Judge for the Western District of New York, or such other judge as may be sitting in his stead in the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, NY 14202.

1

Dated: January 19, 2021

BOND, SCHOENECK & KING, PLLC


By:      /s/ Stephen A. Donato
Stephen A. Donato
Charles J. Sullivan
Sara C. Temes
Grayson T. Walter
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
Emails:      sdonato@bsk.com
             csullivan@bsk.com
             stemes@bsk.com
             gwalter@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*

2

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | )   Case No. 20-10322 |
| The Diocese of Buffalo, N.Y., | ) |
| | )   Chapter 11 |
| Debtor. | ) |
| | ) |

**MOTION FOR ENTRY OF AN ORDER DECLARING THAT LIPSITZ
GREEN SCIME CAMBRIA LLP VIOLATED THE AUTOMATIC STAY
BY TAKING ACTION TO OBTAIN PROPERTY OF THE ESTATE
AND AWARDING THE DIOCESE DAMAGES AND SANCTIONS**

The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, as

and for its motion requesting the entry of an Order, in substantially the form attached hereto as

*Exhibit A*, (i) declaring that Lipsitz Green Scime Cambria LLP ("Lipsitz") violated the automatic

stay by taking action to obtain property of the estate; (ii) awarding the Diocese damages and

sanctions; and (iii) granting such other and further relief as the Court deems just and proper (the

"Motion").  In support of the Motion, the Diocese respectfully sets forth as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b).

2.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (M) and (O).

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4.     The statutory bases for the relief requested are sections 105(a), 362(a)(3), and

362(k) of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq*., the "Bankruptcy Code") and

Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## BACKGROUND

5.    On February 28, 2020 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case.

6.    On March 11, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102 [Docket No. 92].

7.    Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Affidavit of Rev. Peter J. Karalus Regarding Structure and Pre-Filing History of The Diocese of Buffalo and in Support of the Chapter 11 Petition and First Day Pleadings* and the *Affidavit of Charles Mendolera Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, each of which was filed on the Petition Date and is incorporated herein by reference [Docket Nos. 7, 8].

8.    Beginning on or about July 1, 1973, and at all times thereafter, the Diocese has maintained a joint self-insurance program (the "SIP") which provides comprehensive risk management services and insurance coverage for the Diocese and also for parishes, schools and other related Catholic entities, including Catholic ministry entities and institutions within the geographical territory of the Diocese (the "SIP Participants"). The Diocese holds a property

11877258.4
Case 1-20-10322-CLB,   Doc 831,   Filed 01/19/21,   Entered 01/19/21 17:47:39,
Description: Main Document  , Page 4 of 16

interest in the insurance coverages, that are now, or have in the past, been maintained pursuant to the SIP. Such property interest constitutes property of the Diocese's chapter 11 estate.

9. Under the SIP, the Diocese has continually maintained policies of excess insurance covering general liability claims against the SIP Participants (including claims for personal injury, sexual misconduct, and errors and omissions). The Diocese is responsible for coordinating the defense of, and paying all defense costs and claims for losses by any SIP Participant, up to the point of available excess coverage.[1]

10. By order entered April 21, 2020, the Court authorized the Diocese to continue to maintain the SIP during this Chapter 11 Case and to pay claims, premiums, defense costs, obligations and administrative costs of the SIP in the ordinary course of business consistent with its prepetition practices [Docket No. 253].

11. The Diocese has maintained from the commencement of this Chapter 11 Case, that actions against entities insured under the SIP draw down on insurance policies which are property of the estate and could be used to satisfy claims against the Diocese.

12. Despite prior notice sent to Lipsitz by the Diocese, the Lipsitz firm has taken affirmative actions on behalf of certain of their clients which violate the automatic stay and will damage the Diocese's estate and by extension, every other creditor of the Diocese. These actions directly contradict the policy goals of the Bankruptcy Code and could damage the Chapter 11 Case.

## STAY ADVERSARY PROCEEDING

13. On May 2, 2020, the Diocese commenced an adversary proceeding (the "Stay Adversary") [Adv. Case No. 20-01016], seeking entry of an order, pursuant to 11 U.S.C. §§ 105 and 362, enjoining the continued prosecution of certain lawsuits against the Diocese and/or non-

---

[1] A more detailed discussion of the SIP can be found in the *Declaration of John M. Scholl Regarding the Diocese's Self Insurance Program and Available Insurance Coverage* [Adv. Case No. 20-01016, Docket No. 5].

debtor parishes, schools and other Catholic ministry entities and institutions within the geographical territory of the Diocese (the "Additional Stay Parties"). All of the Additional Stay Parties are also SIP Participants.

14. On July 2, 2020, the Court entered a decision and order preliminarily enjoining the continued prosecution of abuse claims against the Additional Stay Parties until September 15, 2020 [Stay Adversary, Docket No. 70].

15. On October 9, 2020, the Diocese filed the *Motion for Entry of Stipulation and Order Staying the Continued Prosecution of Certain Lawsuits* (the "Stay Stipulation Motion") [Stay Adversary, Docket No. 79]. The Stay Stipulation Motion sought approval of a stipulation between the Diocese, Additional Stay Parties, and the Committee staying certain actions alleging that the Diocese and/or one or more of the Additional Stay Parties are liable for instances of sexual abuse that, prior to and but for the enactment of the New York Child Victims Act, were barred by the applicable statute of limitations (each, a "CVA Action").

16. On October 29, 2020, Lipsitz filed an objection to the Stay Stipulation Motion (the "Lipsitz Objection") [Stay Adversary, Docket No. 81], on behalf of 35 plaintiffs of CVA Actions (the "Lipsitz Plaintiffs"). As set forth in the Lipsitz Objection, there are currently 23 pending motions to sever the Diocese from certain CVA Actions pending in New York State Supreme Court, which are returnable January 25, 2021 (the "Severance Motions"). *See* Lipsitz Objection ¶ 11.

17. On November 2, 2020, the Court held a hearing on the Stay Stipulation Motion (the "Stay Stipulation Hearing") [Stay Adversary, Docket No. 83]. At the Stay Stipulation Hearing, the Court requested, among other things, that Lipsitz provide a list of Lipsitz Plaintiffs who were survivors of abuse that occurred before July 1, 1973, when the SIP was implemented by the

11877258.4
Case 1-20-10322-CLB, Doc 831, Filed 01/19/21, Entered 01/19/21 17:47:39,
Description: Main Document , Page 6 of 16

Diocese. On November 20, 2020, Lipsitz filed a letter dated November 19, 2020 by Amy C. Keller

of Lipsitz (the "Keller Letter"), containing list of 18 individuals who were allegedly victimized

before July 1, 1973 (the "Pre 1973 Survivors"). A copy of the Keller Letter is attached hereto as

*Exhibit B*.

18.     By letter dated December 3, 2020, the Diocese responded to the Keller Letter (the

"Automatic Stay Letter") [Stay Adversary, Docket No. 91] providing insurance coverage

information with respect to certain of the Lipsitz clients. A copy of the Automatic Stay Letter is

attached hereto as *Exhibit C*. Through the Automatic Stay Letter, the Diocese advised Lipsitz that

prosecuting an action which is based upon allegations of abuse which are alleged to have occurred

during any period of time in which the Additional Stay Parties are covered as additional insureds

under the Diocese's SIP insurance policies, including, without limitation, any attempt to sever the

Diocese and proceed with such action solely against the Additional Stay Parties, is an act to obtain

possession of, or exercise control over, property of the Diocese's bankruptcy estate, in violation

of the automatic stay imposed pursuant to 11 U.S.C. § 362(a)(3).

19.     The Automatic Stay Letter also provided the following list of Lipsitz Plaintiffs

whom have alleged abuse occurring during the SIP coverage period and which are therefore clearly

stayed by section 362(a)(3) as a result of the shared insurance coverage implicated by such claims:

| Plaintiff | Index No. | Timeframe of Alleged Abuse |
|---|---|---|
| LG 1 Doe | 811175/2019 | 1985-1986 |
| LG 2 Doe | 811230/2019 | 1978-1979 |
| LG 3 Doe | 811339/2019 | 1981-1982 |
| LG 4 Doe | 811442/2019 | 1971-1974 |
| LG 10 Doe | 812011/2019 | 1971-1973 |
| LG 11 Doe | 814319/2019 | 1988-1989 |
| LG 12 Doe | 814320/2019 | 1988-1989 |
| LG 13 Doe | 814321/2019 | 1988-1989 |
| LG 14 Doe | 814322/2019 | 1988-1989 |
| LG 15 Doe | 814323/2019 | 1988-1989 |

| | | |
|---|---|---|
| LG 16 Doe | 814317/2019 | 1988-1989 |
| LG 17 Doe | 814315/2019 | 1988-1989 |
| LG 18 Doe | 812169/2019 | 2001 |
| LG 19 Doe | 812168/2019 | 1978-1981 |
| LG 21 Doe | 812171/2019 | 1963-1973 |
| LG 23 Doe | 812007/2019 | 1977-1978 |
| LG 24 Doe | 812691/2019 | 1976-1979 |
| LG 25 Doe | 812755/2019 | 1974-1978 |
| LG 26 Doe | 813996/2019 | 1973-1975 |
| LG 30 Doe | 814010/2019 | 1972-1974 |
| LG 65 Doe | 810098/2020 | 1981-1983 |
| Dorian Reeves | 808176/2020 | 1984-1985 |
| Wyatt Schoenle | 809143/2020 | 1978-1979 |

20. The Automatic Stay Letter further provided the following list of Lipsitz Plaintiffs that alleged abuse that occurred before the SIP was implemented in 1973, but that potentially involves shared insurance coverage for the relevant Additional Stay Parties and the Diocese:

| Plaintiff | Index No. | Timeframe of Alleged Abuse | Pre-July 1, 1973 Carrier |
|---|---|---|---|
| LG 27 Doe | 813442/2019 | 1970-1972 | Aetna Insurance Co. |
| LG 28 Doe | 813916/2019 | 1971-1972 | Travelers |
| LG 29 Doe | 814008/2019 | 1962-1965 | Aetna Casualty & Surety Co. |
| LG 31 Doe | 814383/2019 | 1958-1960 | Jamestown Mutual |
| LG 36 Doe | 814700/2019 | 1969 | Merchants Mutual |
| LG 49 Doe | 802219/2020 | 1965 | General Accident |
| LG 69 Doe | 806229/2020 | 1965-1966 | Fireman's Fund |
| LG 77 Doe | 809144/2020 | 1969-1972 | Consortium; Aetna; Newark |
| Don E. Whelan | 808039/2020 | 1971 | Fireman's Fund |

21. Finally, the Automatic Stay Letter advised Lipsitz that if the firm or any of the Lipsitz Plaintiffs undertake any further action to advance the above cases, the Diocese would pursue an order of civil contempt and sanctions for a willful violation of the automatic stay.

22. On December 4, 2020, the Court entered a decision and order, which was revised on December 7, 2020 (the "Stipulation Order") [Stay Adversary, Docket No. 92 and 95] approving

6

the Stay Stipulation Request, except as to the Lipsitz Plaintiffs, and other possible parties that did not receive notice of the Stay Stipulation Motion. The Court noted in the Stay Order that there is a possibility that Bankruptcy Code section 362(a)(3) may bar the continued prosecution of the CVA Actions against the Additional Stay Parties notwithstanding the Stipulation Order. *See* Stipulation Order, pg. 8-9.

23.     The Stipulation Order further provides that "nothing in this decision will modify the application of 11 U.S.C. 362(a). To the extent that a plaintiff is concerned about the relevance of 11 U.S.C. 362(a)(3) to actions against the parishes or affiliates, that plaintiff may seek the comfort of a clarifying order under 11 U.S.C. 362(d)." *See* Stipulation Order, pg. 8-9.

24.     Despite this warning from the Court, and the Automatic Stay Letter delivered by the Diocese, the Lipsitz Plaintiffs chose not to file an application for relief from the automatic stay or a motion seeking a clarifying order under 11 U.S.C. 362(d). Rather, on January 8, 2021, Lipsitz filed supplemental declarations supporting the Severance Motions in New York State Supreme Court on behalf of certain Lipsitz Plaintiffs in each of their respective pending CVA Actions (each, a "Supplemental Declaration"). Lipsitz filed a Supplemental Declaration on behalf of the following twenty-two (22) Lipsitz Plaintiffs in each of the underlying CVA Actions pending in the New York State Supreme Court, Erie County: LG Doe 1, LG Doe 2, LG Doe 3, LG Doe 4, LG Doe 11, LG Doe 12, LG Doe 13, LG Doe 14, LG Doe 15, LG Doe 16, LG Doe 17, LG Doe 21, LG Doe 22, LG Doe 23, LG Doe 24, LG Doe 25, LG Doe 26, LG Doe 27, LG Doe 28, LG Doe 29, LG Doe 31, and LG Doe 36 (the "Supplemental Declaration Doe Plaintiffs").

25.     By filing the Supplemental Declarations, the Lipsitz firm is indicating that it intends to move forward with the prosecution of cases against non-debtor entities that will deplete assets of the Diocese, despite having been advised in the Automatic Stay Letter that doing so would be a

7

11877258.4
Case 1-20-10322-CLB,   Doc 831,   Filed 01/19/21,   Entered 01/19/21 17:47:39, Description: Main Document  , Page 9 of 16

violation of the automatic stay. Attached hereto as ***Exhibit D*** is a copy of a Supplemental Declaration filed by Lipsitz in each of the twenty-two (22) CVA Actions. While each Supplemental Declaration is filed in a different CVA Action, the Supplemental Declarations are substantially the same.

26. Lipsitz filed a Supplemental Declaration with respect to twenty-two (22) different Supplemental Declaration Doe Plaintiffs. Of the Supplemental Declaration Doe Plaintiffs, twenty-one (21) appear on the Automatic Stay Letter where the Diocese provided Lipsitz insurance coverage information. Of the Supplemental Declaration Doe Plaintiffs, six (6) allege sexual abuse which took place previous to 1973.[2] Attached hereto as ***Exhibit E*** is a list of the Supplemental Declaration Doe Plaintiffs where a Supplemental Declaration was filed in violation of the automatic stay and the Diocese previously indicated that insurance coverage existed under circumstances where the policy is an asset of the estate. The Diocese respectfully submits that Lipsitz violated the automatic stay sixteen (16) separate times by filing the Supplemental Declarations with respect to sixteen (16) separate Supplemental Declaration Doe Plaintiffs in the CVA Actions.

## **RELIEF REQUESTED**

27. By this motion, the Diocese requests that the Court issue an Order pursuant to sections 105(a), 362(a)(3), and 362(k) of the Bankruptcy Code and Bankruptcy Rules 9014 and 9020,[3] (i) declaring each of the sixteen (16) Supplemental Declarations filed by Lipsitz which

---

[2] Despite its best efforts to date, the Diocese has not yet been unable to locate insurance policy documents which conclude that the Diocese is itself an additional insured party under such policies. However, it was customary for a parish or other Catholic entity to list the Diocese as an additional insured on insurance coverage previous to 1973. The Diocese is not currently seeking sanctions for these six (6) actions taken. The Diocese reserves the right to later seek sanctions for these six Supplemental Declarations, if the Diocese is able to provide evidence in the form of copies of implicated insurance policies naming the Diocese as an additional insured.

[3] Bankruptcy Rule 9020 provides that "Rule 9014 governs a motion for an order of contempt made by . . . a party in interest."

8

11877258.4
Case 1-20-10322-CLB, Doc 831, Filed 01/19/21, Entered 01/19/21 17:47:39, Description: Main Document , Page 10 of 16

implicate insurance coverage of the Diocese that are listed in Exhibit E violated the automatic stay;

(ii) awarding the Diocese damages and sanctions; and (iii) granting such other and further relief as

the Court deems just and proper.

**BASIS FOR RELIEF REQUESTED**

**A. Lipsitz Willfully Violated the Automatic Stay**

28.     Section 362(a) of the Bankruptcy Code provides that "a petition filed under section

301 . . . of this title . . . operates as a stay, applicable to all entities, of

(3)     any act to obtain possession of property of the estate or of property from the estate
or to exercise control over property of the estate;

11 U.S.C. §§ 362(a)(3).

29.     What property is considered property of the estate is governed by Bankruptcy Code

section 541 and includes "all legal or equitable interests of the debtor in property as of the

commencement of the case."  11 U.S.C. § 541(a)(1); *In re Prudential Lines, Inc.*, 107 B.R. 832

(Bankr. S.D.N.Y. 1989).

30.     Congress intended the scope and application of the automatic stay to be broad in

order to ensure the debtor receives the "fresh start" contemplated by the Bankruptcy Code. *See*

H.R. Rep. No. 95-595 at 340 (1977); S. Rep. No. 95-989 at 49 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5987, 6296-97;  *see also McMullen v. Sevigny (In re McMullen),* 386 F.3d 320, 324

(1st Cir. 2004) (holding that the automatic stay "efficiently ensures that the assets remain within

the exclusive jurisdiction of the bankruptcy court pending their orderly and equitable distribution

among the creditors, better enabling the debtor's 'fresh start.'").

31.     Certain actions taken against non-debtors are also be subject to the automatic stay

under section 362(a)(3). *See, e.g. In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997) ("We have ruled

that an action taken against a nondebtor which would inevitably have an adverse impact upon the

9

property of the estate must be barred by the automatic stay*"); see also In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987).

32.     Additionally, where a liability insurance policy is an important asset of the estate, any action, even an action against a non-debtor, which may diminish the value of that asset, is subject to the automatic stay under section 362(a)(3).  *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001–02 (4th Cir. 1986) (holding that  "actions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3)").

33.     Similarly, proceeds of an insurance policy are property of the estate, and actions against non-debtor co-insureds that "affects the debtors' interest in the proceeds" are subject to the automatic stay under section 362(a)(3).  *In re Metro. Mortg. & Sec. Co., Inc.*, 325 B.R. 851, 857 (Bankr. E.D. Wash. 2005) (holding that third-party litigation against non-debtor co-insureds are subject to the automatic stay because "[co]insureds have undivided, unliquidated interests in the identical asset, i.e., the policy proceeds. Continued diminution of those proceeds affects the debtors' interests in and rights to recover the proceeds"); see *also In re Circle K Corp.*, 121 B.R. 257, 261 (Bankr. D. Ariz. 1990) (holding that "continued prosecution of [third party litigation against non-debtor] affects debtor's property interests in a valuable estate asset in violation of the automatic stay").

34.     In *Metro. Mortg. & Sec. Co., Inc.*, the court noted the distinction in policy objectives between insurance and bankruptcy law:

> Under principles of insurance law, all entities or persons having an interest in the policy proceeds would engage in a race to judgment or settlement with the fleetest claimants realizing upon their interest while the slower claimants were deprived of their interest. Such a

11877258.4

result is contrary to the fundamental principle of bankruptcy law that all of the debtors' interests in property are to be equitably distributed. The problem is worsened in this case by the fact that the cost of determining each claimant's interest in the policy proceeds may deplete the proceeds before all but the very fleetest claimants recover.

*Metro. Mortg. & Sec. Co., Inc.*, at 857 (adding that "Because of the number of lawsuits and arbitrations and the number of third-parties seeking recovery, it is quite likely that the limits of these policies will be exhausted before the majority of the claims are fully litigated").

35.     The Diocese provided Lipsitz with insurance coverage information for the Lipsitz Plaintiffs.  This Court, through the Stipulation Order invited Lipsitz to file a motion seeking a comfort order before moving forward with its motions to sever.  None of the warnings were heeded and instead Lipsitz forged ahead with the Supplemental Declarations with respect to twenty-one (21) of the CVA Plaintiffs where Diocese insurance coverage is implicated.  Further, these Supplemental Declarations misstated the status of events in this Chapter 11 Case.

36.     All other CVA Actions are currently stayed, voluntarily through the Stipulation Order.  Lipsitz is attempting to win a race to the courthouse to obtain verdicts against non-debtor entities which have insurance coverage through the SIP.  Like in *Metro*, allowing the Lipsitz Plaintiffs to continue prosecuting their CVA Actions in state court would deplete available assets for the abuse survivor pool as a whole, and therefore, the automatic stay under section 362(a)(3) should apply to the Lipsitz Plaintiffs' CVA Actions to the extent they deplete property of the estate.

**B.  Sixteen of the Supplemental Declarations are Void *Ab Initio***

37.     Judicial actions and proceedings commenced against a debtor without relief from the automatic stay are void *ab initio*.  *In re Ebadi*, 448 B.R. 308, 313 (Bankr. E.D.N.Y. 2011) ("In the Second Circuit, actions taken in violation of the automatic stay are generally void *ab initio*.") (citing Rexnord *Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994)).

38.     Thus, because sixteen (16) of the Supplemental Declarations were filed in violation of the automatic stay, the Supplemental Declarations filed by Lipsitz for the Supplemental Declaration Doe Plaintiffs listed in Exhibit E should be deemed void *ab initio*.

## C. Sanctions Are Warranted

39.     Section 105(a) of the Bankruptcy Code authorizes a court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under this section, the Court may award damages to a corporate debtor such as the Diocese for willful stay violations as a sanction for civil contempt.  *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. 1990) ("contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay");  *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 108 (N.D.N.Y 2005); *Rediger Invs. Corp. v. H Granados Communs., Inc. (In re H Granados Communs., Inc.)*, 503 B.R. 726, 733 (B.A.P. 9th Cir. 2013).

40.     Further, "the necessary level of willfulness is not particularly high . . . it merely must be shown that the alleged violator had knowledge of the bankruptcy case and the existence of the automatic stay."  *A.C.E. Elevator Co. v. Local no. 1 (In re A.C.E. Elevator Co.)*, Case No. 04-17994 (RDD), 2009 Bankr. LEXIS 3089, at *17 (Bankr. S.D.N.Y. 2009); *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir. 1976) (awarding costs, including reasonable attorney's fees under section 105 for action against debtor done with "knowledge" of automatic stay and "deliberate[]" disregard of the bankruptcy rules), cert. denied, 429 U.S. 1093 (1977).

41.     Section 362(k) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs

11877258.4

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Under section 362(k), "specific intent to violate the stay is not required; instead, 'general intent in taking actions which have the effect of violating the automatic stay' is sufficient to warrant damages." *In re Sturman*, 2011 WL 4472412, at \*2 (S.D.N.Y. 2011) (quoting *In re Dominguez*, 312 B.R. 499, 508 (Bankr. S.D.N.Y.2004)).

42. The facts surrounding Lipsitz's prohibited conduct in the Diocese's Chapter 11 Case are clear. The Diocese informed Lipsitz in the Automatic Stay Letter that the automatic stay applied to the continued prosecution of the Lipsitz Plaintiffs' CVA Actions, and the Lipsitz Plaintiffs were even invited by the Court to seek clarification whether prosecution of any of the Lipsitz Plaintiffs' CVA Actions would be a violation of section 362(a)(3). Even if Lipsitz had a belief that the automatic stay did not apply, it had a duty to take steps to obtain a confirming order, especially in light of the comments of the Diocese and the Court. The only conclusion that can be drawn is that Lipsitz had knowledge of the automatic stay and intentionally violated the automatic stay by filing the Supplemental Declarations anyway.

43. Based upon the foregoing, the Diocese requests that the Court, pursuant to its inherent power to sanction parties for violation of the automatic stay, impose monetary sanctions on Lipsitz including, without limitation, reimbursement of the fees incurred or to be incurred by the Diocese's counsel in connection with the Lipsitz Plaintiffs' CVA Actions and this Motion. For the avoidance of doubt, the Diocese is seeking monetary damages from Lipsitz for its willful violations, not from the Lipsitz Plaintiffs themselves.

**WHEREFORE**, based upon the foregoing, the Diocese respectfully request that the Court issue an Order substantially in the form attached as Exhibit A (i) declaring that Lipsitz violated the automatic stay by filing Supplemental Declarations in the sixteen (16) Supplemental Declaration

Doe Plaintiffs' CVA Actions; (ii) awarding the Diocese damages and sanctions; and (iii) granting

such other and further relief as the Court deems just and proper.


Dated: January 19, 2021                          BOND, SCHOENECK & KING, PLLC


                                                 By:_____/s/ Stephen A. Donato_____
                                                 Stephen A. Donato
                                                 Charles J. Sullivan
                                                 Sara C. Temes
                                                 Grayson T. Walter
                                                 One Lincoln Center
                                                 Syracuse, NY 13202-1355
                                                 Telephone: (315) 218-8000
                                                 Fax: (315) 218-8100
                                                 Emails:        sdonato@bsk.com
                                                                csullivan@bsk.com
                                                                stemes@bsk.com
                                                                gwalter@bsk.com

                                                 *Attorneys for The Diocese of Buffalo, N.Y.*

11877258.4