UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------
In re

    THE DIOCESE OF BUFFALO, N.Y.,         BK 20-10322 CLB


                     Debtor.               <u>DECISION & ORDER</u>
--------------------------------------------------------

        Bond, Schoeneck & King, PLLC
        Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
        Sara C. Temes, Esq., Grayson T. Walter, Esq., of counsel
        One Lincoln Center
        Syracuse, New York 13202-1355
        Attorneys for The Diocese of Buffalo, N.Y.

        Office of the U.S. Trustee
        Joseph W. Allen, Esq., Assistant U.S. Trustee
        Olympic Towers
        300 Pearl Street, Suite 401
        Buffalo, New York 14202

        Pachulski Stang Ziehl & Jones LLP
        Ilan D. Scharf, Esq., Brittany M. Michael, Esq., of counsel
        780 Third Avenue, 34th Floor
        New York, New York 10017
        Attorneys for Official Committee of Unsecured Creditors

        Gleichenhaus, Marchese & Weishaar, PC
        Scott Bogucki, Esq., of counsel
        43 Court Street, Suite 930
        Buffalo, New York 14202
        Co-Counsel for Official Committee of Unsecured Creditors

        Lipsitz Green Scime Cambria LLP
        Richard Weisbeck, Esq., and Amy Keller, Esq., of counsel
        42 Delaware Avenue, Suite 120
        Buffalo, New York 14202
        Attorneys for Various Claimants

        Lippes Mathias Wexler Friedman LLP
        Raymond L. Fink, Esq., Dennis C. Vacco, Esq., of counsel
        50 Fountain Plaza, Suite 1700
        Buffalo, New York 14202

      Jones Day
      John D. Goetz, Esq., of counsel
      500 Grant Street, Suite 4500
      Pittsburgh, Pennsylvania 15219

Bucki, Chief U.S.B.J., W.D.N.Y.

   The Diocese of Buffalo has filed motions seeking authorization under 11 U.S.C. § 327(a) to hire two additional law firms. With respect to one of the firms, a central issue involves the deference that this Court must extend to a debtor's exercise of discretion in the selection of counsel. The second motion presents the issue of whether the debtor may retain attorneys to represent two retired bishops who are co-defendants with the Diocese in an action commenced by the Attorney General for the State of New York.

   On February 14, 2019, New York State enacted the Child Victims Act, which reopened the Statute of Limitations with regard to claims arising from the sexual abuse of children. 2019 N.Y. Sess. Laws, c. 11, § 3. More than 250 actions alleging sexual abuse were thereafter initiated against The Diocese of Buffalo, N.Y. Recognizing a need to respond to these and other anticipated claims, the Diocese filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. In due course thereafter, the debtor secured authorization from this Court to retain various professionals, including both its general bankruptcy counsel and special counsel to assist with potential litigation matters.

   On November 23, 2020, the New York Attorney General commenced an action against the Diocese of Buffalo and its Apostolic Administrator, and against two retired bishops. Paragraph 4 of the complaint summarizes the purpose of this litigation, as follows:

> The Attorney General seeks injunctive relief to accomplish three objectives: provide mechanisms for independent review of the Diocesan Corporation's response to alleged sexual abuse; require reporting to the Attorney General for a period of five years; and mandate external oversight of an appropriate remedial and compliance plan.  This action also seeks to hold [retired] Bishop Malone and [retired] Auxiliary Bishop Grosz individually responsible for violating their secular duties as fiduciaries of the Diocesan Corporation by enjoining them from future service in a secular role as a director or officer of any charitable organization subject to New York law and by obtaining damages against and restitution from them for the waste of charitable assets caused by their misconduct.

The Diocese advises that it is attempting to remove the Attorney General's action to Federal District Court.  Meanwhile, the Attorney General has consented to an extension of the time to answer or otherwise respond to the complaint.

On December 22, 2020, the debtor filed a motion to authorize the employment of Jones Day to serve as special counsel for the Diocese in defending the Attorney General's action.  Then on December 28, the Diocese moved for authority to employ Lippes Mathias Wexler Friedman LLP ("Lippes Mathias") to serve as special counsel for the purpose of representing Bishop Malone and Bishop Grosz in that same litigation.  A hearing to consider these applications was originally scheduled for January 21, 2021, but was adjourned at the debtor's request to February 10.

Bishop Michael William Fisher was installed as Bishop of the Diocese of Buffalo on January 15, 2021.  In a supplemental declaration supporting the retention of the Jones Day law firm, Bishop Fisher expresses a concern that the Attorney General's lawsuit "seeks to exercise state control over internal Church operations, contrary to the protection afforded by the Establishment Clause of the First Amendment of the United States Constitution."  The bishop also states a belief that Jones Day possesses special

expertise in litigation regarding the First Amendment, and that the firm's experience "is crucial to implementing the Diocese's legal strategy with respect to the AG Lawsuit."

The Official Committee of Unsecured Creditors and a number of abuse claimants object to the proposed employment of Jones Day on essentially two grounds. Their first contention is that the appointment will generate excessive and unnecessary costs. The objectors argue that the Court has previously authorized the Diocese to retain law firms having attorneys with the experience and expertise needed to respond to the Attorney General's lawsuit; that existing counsel would charge at rates substantially less than those of Jones Day; and that the Diocese has no need to incur the greater expense of a multi-national firm. Secondly, the objectors challenge the decision of the Diocese to oppose the Attorney General's request for injunctive relief. They believe that injunctive relief is appropriate, and that rather than oppose the Attorney General's demands, the Diocese should instead accept the proposed measures to prevent future abuse.

With regard to the appointment of Lippes Mathias, the Diocese contends that Article XI of its by-laws imposes an obligation to indemnify Bishops Malone and Grosz for the cost of defending the Attorney General's complaint. Lippes Mathias had previously represented the bishops during the investigation that preceded the commencement of the Attorney General's litigation. Asserting that the law firm possesses the knowledge and background needed to efficiently represent the retired bishops, the Diocese seeks authorization to retain Lippes Mathias for that purpose.

The United States Trustee joins with the Committee of Unsecured Creditors and various abuse claimants in opposing the retention of Lippes Mathias. Their primary contention is that the retired bishops have at most a right only to seek reimbursement of expenses, and that any such right should be addressed through the claims process and not through the direct retention of special counsel by the Diocese.

Discussion

Retention of Jones Day

As a debtor in possession, The Diocese of Buffalo holds the rights and powers of a trustee serving in a case under Chapter 11.  *See* 11 U.S.C. § 1107.  In seeking to employ Jones Day, the Diocese relies on the authority of 11 U.S.C. § 327(a), which states in relevant part as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Here, no one has challenged the assertions by Jones Day that it is disinterested and does not hold or represent an interest adverse to the debtor's estate.  That the Diocese has already retained general counsel is not *per se* a disqualification, in that the statute allows the trustee to employ "one or more attorneys."  Nonetheless, even when the proposed attorney is otherwise qualified, section 327(a) requires the approval of this Court.

In considering any request to employ counsel, this Court must follow Second Circuit precedents allowing a trustee's broad exercise of discretion.  The controlling standard was set in *In re Mandell (Palmer v. Kennedy)*, 69 F.2d 830 (1934), a case decided by Judges Learned Hand, Thomas Swan and Augustus Hand.  On behalf of a unanimous bench, Judge Swan wrote that except in unusual circumstances, it was "an abuse of judicial discretion" to deny to a bankruptcy trustee "the privilege of selecting his own counsel."  *Id.* at 831.  More recently, the Court of Appeals has applied this principle to the trustee's selection of counsel under the current Bankruptcy Code.  In his opinion in *In re Smith (Smith v. Geltzer)*, 507 F.3d 64, 71 (2007), Judge Chester

J. Straub provides the following guidance:

> Under [11 U.S.C. § 327(a)], a trustee's choice of special counsel is subject to the evaluation and approval of the bankruptcy court. In exercising its approval function, however, the bankruptcy court should interfere with the trustee's choice of counsel "'[o]nly in the rarest cases,'" such as when the proposed attorney has a conflict of interest, or when it is clear that "'the best interest of the estate'" would not be served by the trustee's choice. Courts give the trustee such deference in choosing special counsel because of the "'highly confidential' relationship between the special counsel-attorney and the trustee-client."

(citations deleted). In the present situation, we find that this is not one of those rarest of cases in which the Court can override the discretion of management.

The Creditors Committee appropriately reminds us that even at a promised discount of twenty percent, Jones Day will bill at rates far in excess of those that would have been charged by the attorneys that were previously hired to perform the same work. Soon after the commencement of this bankruptcy proceeding, the debtor argued to this Court that the law firm of Bond, Schoeneck & King, PLLC and the firm of Connors LLP were well qualified to represent the Diocese in their respective roles of general counsel and special counsel to assist in matters like the lawsuit of the Attorney General. Based on these representations, the Court approved the hiring of both firms, which continue to assist the Diocese on other matters. In its first fee application, Bond, Schoeneck & King applied a cap of $380 to its hourly rate. For the Diocese, Connors LLP charges a discounted hourly rate of $250 for partners and $200 for associates. With discounts, the partners of Jones Day will bill at rates between $820 and $1,000 per hour, while its associates will charge between $400 and $720 per hour.

We acknowledge the expectations of both creditors and congregants for careful stewardship of Church resources. In considering a motion to approve the employment of counsel, however, this Court is not at liberty to substitute its judgment for that of a debtor. Nor is it sufficient for an objector to show, by a preponderance of the evidence, that the estate would be better served by different professionals. Rather, under the precedents of the Second Circuit, the test is whether the Diocese has abused the discretion that the law allows it to exercise. Here, the evidence demonstrates only that reasonable grounds exist to disagree with the debtor's decision. Because the Diocese has shown that Jones Day does not hold or represent an adverse interest, is disinterested, and is otherwise qualified to provide representation, we must defer to the debtor in its selection of counsel.

Price is always a concern in any arrangement for services. In a previous written opinion, we recognized that this bankruptcy presents a situation "in which legal costs threaten to dissipate resources that might otherwise be used to address the claims of creditors and to advance the mission of the debtor." *In re Diocese of Buffalo, N.Y.*, 620 B.R. 445, 450 (Bankr. W.D.N.Y. 2020). To the attorneys at Jones Day, we reiterate our previous warning that "[t]he Court intends fully to monitor expenses." *In re Diocese of Buffalo, N.Y.*, 616 B.R. 10, 12 (Bankr. W.D.N.Y. 2020). For example, we will carefully review future fee applications for any unjustified duplication of services. As required by 11 U.S.C. § 330(a)(3), the Court will also "consider the nature, the extent, and the value of such services." In particular, we will look for proof that the estate has accrued value from services at rates purportedly commensurate with experience and expertise.

The Committee and various creditors also object to the debtor's decision to challenge the injunctive relief that the Attorney General seeks in her complaint. Litigation strategies are business decisions that the Diocese has a right to make until such time as it is no longer a debtor in possession. For now, the Court merely

considers an application for employment of counsel. On that issue, disagreements regarding future litigation strategies have no relevance. Hereafter, with benefit of confidential advice from appointed counsel, the debtor may implement a litigation response. To the extent that interested parties believe that any such business decision represents an abuse of discretion, they may respond in any appropriate manner.

For the reasons stated above, the objections to the employment of Jones Day are overruled.

### Retention of Lippes Mathias Wexler Friedman LLP

In its second motion, The Diocese of Buffalo seeks authorization under 11 U.S.C. § 327(a) to retain the Lippes Mathias law firm for the purpose of representing two retired bishops. This motion is denied, without prejudice to the right of the bishops to seek reimbursement for their legal expenses.

Section 327(a) of the Bankruptcy Code states that the debtor may employ one or more attorneys "to represent or assist the [debtor in possession]." Here, the Diocese seeks to employ Lippes Mathias not for the purpose of representing the Diocese, but for the purpose of representing Bishop Malone and Bishop Grosz. This Court simply has no authority either to approve or to disapprove the selection of attorneys for such non-debtor parties. Rather, the retired bishops must make their own arrangements for representation.

For all relevant purposes, the by-laws of the Diocese do not restrict the independent right of the bishops to select counsel in the present instance. Section 1 of Article XI of the Diocesan by-laws states that the Diocese "shall indemnify any person ('Indemnified Person') made or threatened to be made a party in any action or proceeding . . . by reason of the fact that he or she . . . is or was a Member and

Trustee or officer." The Diocese contends that the retired bishops are beneficiaries of this provision. Without necessarily accepting that conclusion, we note that the by-laws provide not for the rendering or delivery of legal representation, but for indemnification. Although the retired bishops may have a right to seek reimbursement for expenses, the Diocese has no obligation to retain an attorney on their behalf.

At oral argument, the debtor's counsel suggested that the Court treat their motion as an application under 11 U.S.C. § 363(b)(1) to authorize payment for legal expenses outside the ordinary course of the debtor's business. This request is premature for at least three reasons. First, the debtor's written submission does not seek this alternative relief, to the effect that creditors have not received an adequate opportunity to respond. Second, the Diocese has not provided sufficient justification for an extraordinary payment of what may be a general unsecured claim for reimbursement. Third, before approving any such expenditure, the Court would want clarification of the status of officer and director liability insurance that might cover some of the cost of defense.

Neither Bishop Malone nor Bishop Grosz are debtors before this Court. Thus, they have no obligation to seek the Court's approval of their personal attorney. We are not insensitive to the fact that this decision will compel them to negotiate appropriate financial arrangements and to advance any required retainer, all without a guarantee of reimbursement from the Diocese. However, without proof of a right to legal representation from the Diocese, the Court can identify no basis to appoint personal counsel at the debtor's expense.

Conclusion

For the reasons stated herein, the Debtor's motion to retain Jones Day as special counsel is granted. The motion by the Diocese to retain Lippes Mathias is denied, but

without prejudice to the right of Bishop Richard J. Malone and Bishop Edward M. Grosz to retain that firm on their own behalf or to seek a future reimbursement of their legal expenses.

      So ordered.

Dated: February 23, 2021         /s/ Carl L. Bucki_____
      Buffalo, New York        Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.