UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Buffalo, N.Y.,

                              Debtor.

Case No. 20-10322

Chapter 11

## NOTICE OF MOTION TO ALLOW DISCLOSURE OF CONFIDENTIAL PROOF OF CLAIM NO. 608 FOR INVESTIGATION PURPOSES PURSUANT TO BAR DATE ORDER

**PLEASE TAKE NOTICE**, that on December 22, 2021, the Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, moved (the "Motion")[1] the United States Bankruptcy Court for the Western District of New York (the "Court") for entry of an order allowing disclosure of Confidential Sexual Abuse Proof of Claim Number 608 ("Claim 608") for investigation purposes pursuant to the *Order Establishing August 14, 2021 Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 729] (the "Bar Date Order").

**PLEASE TAKE FURTHER NOTICE**, that any objections or responses to the Motion must conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Western District of New York and be filed with the Court and served in accordance with Local Rule 9013-1 **so as to be actually received as soon as practicable** by the following parties: (i) counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Charles J. Sullivan, Sara C. Temes, and Grayson T. Walter, (ii) the Office of the United States Trustee for the Western District of New York, 300 Pearl Street, Suite 401, Buffalo, NY 14202. Attn: Joseph W. Allen, (iii) counsel to the Official Committee of Unsecured Creditors, Pachulski, Stang, Ziehl & Jones, LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California, 90067-4003, Attn. James I. Stang, and 780 Third Avenue, 34th Floor, New York, New York, 10017-2024, Attn. Ilan Scharf, and (iv) and those persons who have formally appeared and requested service in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

**PLEASE TAKE FURTHER NOTICE THAT**, a hearing to consider the Motion and any objections related thereto will be held on **January 18, 2022** at **10:00 a.m.** (prevailing Eastern time), or as soon thereafter as counsel may appear and be heard, before the Honorable Carl L. Bucki, Chief United States Bankruptcy Judge for the Western District of New York, or such other judge as may be sitting in his stead in the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, NY 14202.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Dated: December 22, 2021                BOND, SCHOENECK & KING, PLLC


                                        By:    /s/ Stephen A. Donato
                                        Stephen A. Donato
                                        Charles J. Sullivan
                                        Sara C. Temes
                                        Grayson T. Walter
                                        One Lincoln Center
                                        Syracuse, NY 13202-1355
                                        Telephone: (315) 218-8000
                                        Fax: (315) 218-8100
                                        Emails:     sdonato@bsk.com
                                                    csullivan@bsk.com
                                                    stemes@bsk.com
                                                    gwalter@bsk.com

                                        *Attorneys for The Diocese of Buffalo, N.Y.*

2

Case 1-20-10322-CLB, Doc 1480, Filed 12/22/21, Entered 12/22/21 14:53:07,
13486317.3               Description: Main Document , Page 2 of 16

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
|  | ) Case No. 20-10322 |
| The Diocese of Buffalo, N.Y., | ) |
|  | ) Chapter 11 |
| Debtor. | ) |

**MOTION TO ALLOW DISCLOSURE OF
CONFIDENTIAL PROOF OF CLAIM NO. 608 FOR
INVESTIGATION PURPOSES PURSUANT TO BAR DATE ORDER**

The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, hereby moves the Court (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), allowing disclosure of the contents of Confidential Sexual Abuse Proof of Claim Number CC608 ("Claim 608") to (a) the accused individual named in Claim 608 and counsel, as applicable (the "Accused Priest"), (b) the members of the Diocese's independent review board (the "Review Board"), (c) the investigators assigned by the Review Board (the "Investigators"), and (d) the district attorney's office for the county where Claim 608 was alleged to have occurred (the "District Attorney," and together with Investigators and the Review Board, the "Additional Authorized Parties") for the purpose of "conducting an internal investigation and assessing the actual claim" pursuant to paragraphs 12(c)(i) and (ix) of the *Order Establishing August 14, 2021 Deadline For Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 729] (the "Bar Date Order")[1]. In further support of the Motion, the Diocese respectfully represents as follows:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bar Date Order.

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule-based predicates for the relief requested herein are sections 105, 501, and 502 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code").

**BACKGROUND**

**Chapter 11 Case**

4. On February 28, 2020 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case.

5. On March 11, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102 [Docket No. 92].

6. Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Affidavit of Rev. Peter J. Karalus Regarding Structure and Pre-Filing History of The Diocese of Buffalo and in Support of the Chapter 11 Petition and First Day Pleadings* and the *Affidavit of Charles Mendolera Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day*

2

*Pleadings*, each of which was filed on the Petition Date and is incorporated herein by reference [Docket Nos. 7, 8].

### Bar Date Order

7. On July 2, 2020, the Diocese filed a motion seeking entry of an order establishing a bar date for filing proofs of claims in the Chapter 11 Case [Docket No. 432]. On December 11, 2020, the Court entered the Bar Date Order setting August 14, 2021 as the deadline to file proofs of claim in the Chapter 11 Case.

8. The Bar Date Order, among other things, established a Confidentiality Protocol applicable to all Sexual Abuse Proofs of Claim. The Confidentiality Protocol provides, in relevant part, that Sexual Abuse Proofs of Claim received by the Diocese's claims agent are to be held and treated as confidential, and copies of such claims are to be provided or made available only to Authorized Parties, as defined in the Bar Date Order. *See* Bar Date Order at ¶ 12(c). The Bar Date Order enumerates certain categories of Authorized Parties that are generally necessary to assist in reviewing and analyzing the Sexual Abuse Proofs of Claim for purposes of administering, and negotiating a resolution of, this Chapter 11 Case, including Diocesan personnel, the Committee, the Diocese's insurers, and each of their respective counsel. *Id.*

9. Paragraph 12(c)(i) of the Bar Date Order provides for notification to the alleged abuser as part of the investigation process, upon notice to the claimant, with an opportunity for the claimant to object.[2]

10. The Bar Date Order also contemplates that additional persons may be added as Authorized Parties and be granted access to Sexual Abuse Proofs of Claim "with the express written consent of the Diocese and the Committee, upon 10 business days' notice to the affected Sexual Abuse Claimant(s)," and/or "as the Court may authorize . . . pursuant to subsequent order." Bar Date Order at ¶¶ 12(c)(viii) and 12(c)(ix).

**The Diocese's Commitment to Addressing Past Abuse and Preventing Future Abuse**

11. *The Charter for the Protection of Children and Young People* (the "Charter") is a comprehensive set of guidelines and protocols developed and approved by the United States Conference of Catholic Bishops for the purposes of (i) promoting healing and reconciliation with abuse survivors, (ii) establishing effective procedures to respond to allegations of abuse, (iii) ensuring accountability, and (iv) providing future protection through safe environment programs.[3]

---

[2] "[T]he Diocese is authorized to discuss the contents of any Sexual Abuse Proof of Claim. with a person identified as an alleged abuser who was not previously disclosed to the Diocese as an individual who had committed an act of sexual abuse for the purpose of conducting an internal investigation and assessing the actual claim by providing any affected Sexual Abuse Claimant, such affected Sexual Abuse Claimant's counsel (if any), and counsel to the Committee, with notice delivered via overnight delivery and e-mail of such planned disclosure (a "Disclosure Notice") and an opportunity to object to such disclosure. If the Diocese receives a written objection to such disclosure (an "Objection Notice") on or before 5 p.m. (Eastern) on the fifth (5th) day following its receipt of the Disclosure Notice (the "Objection Deadline"), (a) the Diocese may not make the disclosure set forth in the Disclosure Notice until such time as the Court permits such disclosure or the Committee consents to such disclosure, and (b) the Diocese may make an application to the Court on no less than 24 hours' notice seeking authorization to make such disclosure over the Committee's objection. In the event that no Objection Notice is received prior to the Objection Deadline, the Diocese may make the disclosure set forth in the Disclosure Notice."
*See* Bar Date Order at ¶ 12(c)(i).

[3] A copy of the Charter is attached hereto as ***Exhibit B***.

12. The Charter, among other things, requires each diocese to establish a review board, comprised primarily of lay persons, to function as a confidential consultative body to advise the bishop in assessing allegations of abuse and making determinations regarding a cleric's suitability for ministry. *See* Charter at pg. 9-10. The Charter further provides that a review board may review these matters both retrospectively and prospectively. *Id*. The Charter further instructs that diocesan policy shall provide in the event of "even a single act of sexual abuse of a minor—whenever it occurred—which is admitted or established after an appropriate process in accord with Canon Law, the offending priest or deacon is to be permanently removed from ministry and, if warranted, dismissed from the clerical state." *Id*. at pg. 11. Moreover, the Charter mandates that dioceses report any allegations of sexual abuse of a person who is a minor to public authorities. *Id*. at pg. 10.

13. The Diocese has adopted a set of policies and procedures for the purpose of implementing the Charter's mandate with respect to investigating and taking appropriate action in response to allegations of abuse.[4] Among other things, these policies require that the Diocese conduct a prompt initial inquiry in response to a complaint of abuse. As part of that initial inquiry, the policy requires that an accused individual be notified of the particulars of the allegations and advised of their right to be represented by civil and/or canonical counsel.

14. The policy provides for the accused to be placed on administrative leave pending the outcome of a thorough investigation by an Investigator who "shall be a person of integrity and skill with significant experience conducting investigations and shall not be a member of the

---

[4] The Diocese's Policy and Procedure for the Protection of Children, Young People and Vulnerable Adults is publicly available at https://www.buffalodiocese.org/protecting-gods-children/. The Diocese is also a party to a memorandum of understanding with the District Attorneys (the "DA MOU") pursuant to which the Diocese has agreed to report all allegations of child sexual abuse received after July 6, 2020 to the District Attorneys for investigation and, where appropriate, prosecution. The DA MOU applies to newly reported claims regardless of when the abuse is alleged to have occurred.

Chancery, a priest or employee of the Diocese."[5]  At the conclusion of the investigation, the Investigator submits a written report to the Diocese's independent Review Board.  The Review Board, after conducting any additional inquiries that it deems necessary, then prepares a recommendation to the Bishop as to whether the allegations of the complaint should be found to be substantiated or unsubstantiated.

15. In accordance with the requirements of the Charter, the Diocese's Review Board is comprised of individuals of outstanding integrity and good judgment, the majority of whom are lay persons who are not diocesan employees.  A list of the current members of the Review Board, together with summary biographical information demonstrating their respective qualifications, is set forth below:

> **Honorable Salvatore R. Martoche (Chairman)** is a retired justice of the New York State Supreme Court, Appellate Division. A graduate of Canisius College and the University of North Dakota School of Law, Martoche has had a long and distinguished career as an attorney in private practice, in the public sector and as a judge.
>
> **Rose F. Buscaglia, LCSW-R** is a licensed Clinical Social Worker practicing in Buffalo, New York. She has over 32 years of diverse experience, including group therapy and individual therapy.
>
> **Lee Coppola,** former dean of St. Bonaventure University's journalism school, was a newspaper reporter, an investigative television reporter and an assistant U.S. Attorney before taking his position at St. Bonaventure.
>
> **John F. Coyne, M.D.** was an ordained Catholic priest before deciding to change his vocation and study medicine. The local pediatrician is a graduate of the State University of New York at Buffalo's School of Medicine and Biomedical Sciences and currently works for Catholic Health.

---

[5] The Investigators utilized by the Diocese are former law enforcement officials trained in investigating abuse claims. For example, in the past few years, the investigators were (i) a former Buffalo Police Commissioner, (ii) a former Buffalo Police Department Detective with 18 years of experience in the Special Victims Unit, (iii) a former New York State Police Investigator and Supervisor of investigators, (iv) a former Assistant District Attorney who worked in the Sexual Assault Bureau of the Erie County District Attorney's Office, and (v) a former Assistant Chief of the Sexual Assault Bureau of the Erie County's District Attorney's Office.

**Amy Habib** is a prominent and long-time leader in the Western New York community. She was for many years a successful business executive and before that a teacher.

**Sister Anne Marie Jablonicky, CSSF,** a Felician Franciscan sister, is a counselor and a therapist in the Diocesan Counseling Center for Church Ministers in the Diocese of Buffalo, NY. She is a National Board Certified Counselor (NCC) and a NYS certified school psychologist. She holds graduate degrees in clinical psychology from St. John's University, Queens, NY, school psychology and a professional diploma from Alfred University, Alfred, NY and counseling from Canisius College, Buffalo, NY.

**Alfred F. Luhr, III** is a retired senior vice president and regional market manager with the Business and Professional Banking Department of a prominent local bank.

**Nancy H. Nielsen, M.D., Ph.D.** is the Senior Associate Dean for Health Policy and a Clinical Professor at the State University of New York at Buffalo's Jacobs School of Medicine and Biomedical Studies. She is former President of the American Medical Association and specializes in Internal Medicine and Infectious Diseases.

**Rev. Richard ("Duke") E. Zajac**, has been a staff chaplain at Sisters of Charity Hospital in Buffalo for the past 39 years.

16. In cases where the Bishop, in consultation with the Review Board, has determined that there is sufficient evidence that sexual abuse of a child has occurred, the accused individual must remain on administrative leave, is prohibited from the public celebration of the Most Holy Eucharist, and where feasible, is subjected to a safety plan to protect against further abuse pending further proceedings before the Congregation for the Doctrine of the Faith to determine whether dismissal from the clerical state, or other canonical penalties are appropriate.

### NYAG Complaint

17. On November 23, 2020, the New York Attorney General (the "NYAG") filed a summons and complaint against the Diocese in *People ex rel James v. Diocese of Buffalo, Malone, Grosz, and Scharfenberger* (the "NYAG Complaint").[6] Among other things, the NYAG Complaint asserts claims for relief based upon allegations that the Diocese historically failed to

---

[6] Case No. 21-cv-00189 (S.D.N.Y., Jan. 9, 2021); State Court Index No. 452354/2020 (removed).

follow the protective protocols provided in the Charter and its own policies, and demands compliance going forward. Specifically, the NYAG seeks an order requiring the Diocese to conduct a prompt independent investigation into every allegation of sexual abuse of a minor, and to issue a written report regarding such independent investigation to the Review Board, which then must conduct its own independent assessment of such allegations to ensure that the Bishop makes a reasonably prompt determination regarding how handle to such allegations. *See NYAG Complaint* at pgs. 213-14. The Diocese is working toward a resolution of these issues with the NYAG and the Diocese believes that it is already in substantial compliance with the Charter and its safe environment policies. The Diocese has filed this Motion, in part, to ensure that it can maintain compliance and thereby satisfy the NYAG's demands.

### Newly Asserted Claims and Claim 608

18. Approximately 900 non-duplicative proofs of claims were filed prior to the Bar Date by survivors asserting liability for child sexual abuse ("Abuse Claims"). The Diocese is currently conducting an extensive review and analysis of the Abuse Claims filed in the Chapter 11 Case, as well as many newly-filed lawsuits in state court against parishes and other non-debtor Catholic entities ("CVA Cases").

19. Through its review process, the Diocese has identified multiple alleged perpetrators who, prior to the submission of proofs of claim in this Chapter 11 Case and/or the commencement of the CVA Cases, had not been identified as having a substantiated claim of abuse. Many of such individuals are deceased or no longer in active ministry. However, the Diocese identified several Sexual Abuse Proofs of Claim which named alleged abusers who had not previously been investigated by the Diocese, the Review Board, the Investigators or the District Attorney. As a result of this identification, six priests who were in active ministry have been placed on

administrative leave. After providing notice to the Sexual Abuse Claimants pursuant to the procedures set forth in the Bar Date Order, the Diocese entered into discussions with counsel for the Sexual Abuse Claimants to resolve any objections raised to disclosure to the accused individual in each such claim and the Additional Authorized Parties. The Diocese was able to resolve the objections of seven (7) of the Sexual Abuse Claimants by agreeing to a limited disclosure of the contents of the Sexual Abuse Proofs of Claim.

20. On November 17, 2021, the Diocese sent a notice pursuant to Bar Date Order ¶¶ 12(c)(i) and 12(c)(viii) informing the Sexual Abuse Claimant named in Claim 608 that the contents of Claim 608 would be disclosed to (i) the Accused Priest named in Claim 608 and (ii) the Additional Authorized Parties, respectively. The holder of Claim 608, through counsel (S. Mary Liu, Aylstock, Witkin, Kreis & Overholtz, PLLC) served a written objection to disclosure to the Accused Priest and declined to consent to disclosure to the Additional Authorized Parties. The Diocese seeks authorization to disclose the contents of Claim 608 on a limited basis, as set forth herein, to the Accused Priest and the Additional Authorized Parties.

**RELIEF REQUESTED**

21. By this Motion, the Diocese respectfully seeks entry of an Order, in substantially the form attached hereto as *Exhibit A*, allowing the disclosure of the contents of Claim 608 to the Accused Priest and the Additional Authorized Parties, on the limited basis set forth herein. Specifically, to comply with the protocols established in accordance with the Charter, the Diocese's own policies, the DA MOU, and the demands of the NYAG, the Diocese seeks

9
13486317.3
Case 1-20-10322-CLB, Doc 1480, Filed 12/22/21, Entered 12/22/21 14:53:07, Description: Main Document , Page 11 of 16

authorization to share limited information from Claim 608 with the Accused Priest and the Additional Authorized Parties.

22. The Diocese does not believe that the Accused Priest or the Additional Authorized Parties need access to information contained in Claim 608 relating to the contact information for the survivor, or to damages suffered or other impacts resulting from their abuse. Accordingly, the Diocese proposes only to provide the Accused Priest and the Additional Authorized Parties information regarding (i) the identity and contact information (through counsel, where applicable) for the alleged perpetrator, claimant, and any witnesses identified in Claim 608, and (ii) details of the alleged acts of abuse (*i.e.,* the time, place, and manner of the alleged abuse). All other information (including direct contact information for the claimant) would be redacted from Claim 608 prior to its provision to the Accused Priest and Additional Authorized Parties.

## **BASIS FOR RELIEF REQUESTED**

23. The Bar Date has passed, and the Diocese now has a full picture of the universe of claims asserted against it under the CVA. Approximately 900 unique Abuse Claims were filed prior to the Bar Date. The Diocese is conducting an extensive and thorough review and analysis of the Abuse Claims filed in the Chapter 11 Case.

24. The Diocese submits that newly asserted Abuse Claims - especially those which, like Claim 608, identify individuals who have not been identified previously as having a substantiated claim of abuse – warrant an immediate investigation in accordance with the Charter and established Diocesan policy, to ensure a safe environment for all children and individuals who interface with the Diocese, its parishes and ministries, to provide due process for such individuals to respond to claims made against them, and, if such claims should prove to be unsubstantiated, to allow the Diocese to return to ministry those individuals who have been exonerated of the claims against them.

10
13486317.3
Case 1-20-10322-CLB, Doc 1480, Filed 12/22/21, Entered 12/22/21 14:53:07, Description: Main Document , Page 12 of 16

25. Prior to the Petition Date, the Diocese, upon receiving new sexual abuse claims, would transmit information regarding such claims to the Additional Authorized Parties to enable them to swiftly assess the claims and to take any necessary action. Prior to the Petition Date, the Diocese also confronted the individuals alleged to have committed abuse with the details of the new allegations as part of the investigation.

26. In keeping with the Diocese's pre-petition practices, special litigation counsel for the Diocese supplied excerpted portions of four (4) Sexual Abuse Proofs of Claim involving newly-accused individuals engaged in active ministry to the relevant District Attorney, and three (3) of those four (4) excerpted Sexual Abuse Proofs of Claim were also sent to the Chair of the Review Board. Those disclosures were made without first strictly complying with the procedure under the Confidentiality Protocol to seek consent from the Committee and provide notice to affected claimants.[7] *See Notice Regarding Confidentiality Protocol Set Forth In Order Establishing August 14, 2021 Deadline For Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1310]. Upon recognizing that the disclosures did not follow the Confidentiality Protocol, the Diocese notified counsel for the Committee and litigation counsel, at the Committee's request, confirmed that the portions of the Abuse Proofs of Claim provided to the Review Board Chair have been destroyed.

27. Thereafter, in accordance with the Confidentiality Protocol, the Diocese (i) requested that the Committee consent to the provision of portions of seven (7) proofs of claim involving newly-accused individuals to the Additional Authorized Parties, and (ii) provided notice to the affected claimants of its intent to disclose such information to the Accused Priest and

---

[7] In accordance with the requirements of the Charter and the Diocese's policy on handling complaints of abuse, the essential details of the abuse allegations set forth in these Sexual Abuse Proofs of Claim were also discussed orally with the newly-accused individuals before they were placed on administrative leave.

Additional Authorized Parties. On November 5, 2021, the Committee advised that it would consent to the provision of some claim-related information to the applicable District Attorneys, subject to certain conditions.[8] The Committee further indicated that it would "defer on its decision to decide on whether to consent" to providing Sexual Abuse Proofs of Claim or information in such claims to Investigators or the Review Board "until the affected survivor weighs in." The Diocese further consulted with the Committee and counsel for the claimants listed in the newly asserted Abuse Claims and received consent that notifications could be sent to counsel, rather than directly to claimants, as required by the Bar Date Order. On November 17, 2021, the Diocese provided notifications to the claimants, through counsel, pursuant to the procedures set forth in paragraphs 12(c)(i) and 12(c)(viii) of the Bar Date Order, providing notice of disclosure of certain information in the Sexual Abuse Proofs of Claim to (a) the alleged abuser in each case and (b) the Investigator, Review Board and District Attorneys, respectively.

28. Notably, as set forth above, the Diocese has been successful in addressing objections from the holders of seven (7) of the newly alleged Abuse Claims in a consensual manner but has been unable to address the objection of the holder of Claim 608 to date. Furthermore, as of the date of this Motion, the Committee has not consented to allowing the Diocese to provide this critical information to Investigators or the Review Board.

29. The Diocese respectfully submits that allowing disclosure of the contents of Claim 608 to the Accused Priest and Additional Authorized Parties is necessary and prudent. Compliance with the Charter and the Diocese's safe environment policies is critical to ensuring that children

---

[8] The Committee has suggested that the District Attorneys should agree to provide notice to any claimant before proof of claim information is disclosed to any third party (including a defendant in a criminal action). While it might be appropriate for the District Attorneys to provide such notice, such an agreement by the District Attorneys should not be a condition precedent to the Diocese fulfilling its obligation to provide this information as may be required by the Charter, Diocesan policy, the DA MOU and/or applicable law.

12
13486317.3
Case 1-20-10322-CLB, Doc 1480, Filed 12/22/21, Entered 12/22/21 14:53:07, Description: Main Document , Page 14 of 16

and others in contact with the Diocese and its parishes and ministries remain safe, while also allowing the Diocese to determine whether newly asserted claims can be substantiated. The Diocese also believes that such designation is a core term that is essential to resolve the NYAG's Complaint without costly and time-consuming litigation on the merits of the claims.

30. Moreover, an investigation should be conducted to allow the Accused Priest named in Claim 608 an opportunity to respond to serious allegations, including addressing the possibility of a misidentification based on faulty memories. To the extent new claims may lack merit or may have been asserted against the wrong individual, fundamental fairness requires that the incorrectly accused priest be returned to ministry. Lastly, if Claim 608 cannot be properly investigated, the Diocese's ability to evaluate and, if appropriate, pursue objections to the allowance of such claim, if appropriate, will be severely prejudiced.

31. For the reasons set forth herein, the Diocese respectfully submits that allowing the full investigation of Claim 608 by permitting disclosure of the contents of the Claim to the Accused Priest and Additional Authorized Parties is necessary to ensure an expeditious and effective response to allegations of sexual abuse, to promote the safety and welfare of the community the Diocese serves, and to reduce the likelihood that a wrongly accused individual is unnecessarily removed from critical ministry duties. Therefore, the Diocese respectfully requests that the Court enter an order, substantially in the form set forth in *Exhibit A* to this Motion, allowing disclosure of the contents of Claim 608 to the Accused Priest and Additional Authorized Parties.

## **NOTICE**

32. Notice of this Motion will be given to (i) the Office of the United States Trustee for the Western District of New York, (ii) counsel for the Committee (iii) the Sexual Abuse Claimant named in Claim 608 filed in the Chapter 11 Case (through counsel S. Mary Liu, Aylstock, Witkin,

13
13486317.3
Case 1-20-10322-CLB, Doc 1480, Filed 12/22/21, Entered 12/22/21 14:53:07, Description: Main Document , Page 15 of 16

Kreis & Overholtz, PLLC), (iv) all required governmental agencies and (v) all parties who have formally appeared in this Chapter 11 Case and requested notice in accordance with Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Diocese respectfully submits that further notice of this Motion is neither required nor necessary.

**WHEREFORE**, the Diocese respectfully requests that the Court enter an Order, substantially in the form annexed hereto as ***Exhibit A***, allowing disclosure of Claim 608 to the Accused Priest and Additional Authorized Parties and granting such further relief as the Court may deem just and proper.

Dated: December 22, 2021

BOND, SCHOENECK & KING, PLLC

By: /s/ Stephen A. Donato
Stephen A. Donato
Charles J. Sullivan
Sara C. Temes
Grayson T. Walter
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
Emails:  sdonato@bsk.com
 csullivan@bsk.com
 stemes@bsk.com
 gwalter@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*