UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re

    THE DIOCESE OF BUFFALO, N.Y.,                     BK 20-10322 CLB

                                  Debtor.                     <u>DECISION & ORDER</u>

---

    THE DIOCESE OF BUFFALO, N.Y., et al.,

                                  Plaintiff,                     AP 20-01009 CLB

    v.

    THE CONTINENTAL INSURANCE
    COMPANY, et al.,

                                  Defendants.

---

    ALL SAINTS ROMAN CATHOLIC CHURCH
    SOCIETY OF BUFFALO, et al.,

                                  Plaintiff,                     AP 21-01001 CLB

    v.

    21st CENTURY PREMIER INSURANCE
    COMPANY, et al.,

                                  Defendants.

---

              Bond, Schoeneck & King, PLLC
              Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
              Brian J. Butler, Esq., Grayson T. Walter, Esq.,
              Jeffrey D. Eaton, Esq., of counsel
              One Lincoln Center
              Syracuse, New York 13202-1355
              Attorneys for The Diocese of Buffalo, N.Y.

Blank Rome LLP
James R. Murray, Esq., of counsel
1271 Avenue of the Americas
New York, New York 10020
Attorneys for The Diocese of Buffalo, N.Y.

Goldberg Segalla LLP
Jonathan Schapp, Esq., Jeffrey L. Kingsley, Esq.,
Adam R. Durst, Esq., of counsel
665 Main Street
Buffalo, New York 14203
Attorneys for Employers Insurance Company of Wausau,
Wausau Underwriters Insurance Company,
Nationwide Insurance Company of America and
Nationwide Mutual Insurance Company

Goldberg Segalla LLP
Sharon Angelino, Esq., of counsel
665 Main Street
Buffalo, New York 14203
Attorneys for QBE Insurance Corporation

Carlton Fields PA
Robert W. DiUbaldo, Esq., Michael D. Margulies, Esq.,
David L. Gay, Esq., Nora A. Valenza-Frost, Esq., of counsel
405 Lexington Avenue, Ste 36th Floor
New York, New York 10174
Attorneys for National Union Fire Insurance Company of
Pittsburgh, PA

Barclay Damon, LLP
Jeffrey A. Dove, Esq., Kevin D. Szczepanski, Esq., of counsel
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for National Union Fire Insurance Company of
Pittsburgh, PA

Shipman & Goodwin LLP
James Pio Ruggeri, Esq., of counsel
1875 K Street NW, Ste 600
Washington, District of Columbia 20006
Attorneys for The Continental Insurance Company

Coughlin Duffy LLP
William Corbett, Jr., Esq., of counsel
350 Mount Kemble Avenue
Morristown, New Jersey 07962
Attorneys for Selective Insurance Company of New York

Gibbons P.C.
Robert Malone, Esq., of counsel
One Gateway Center
Newark, New Jersey 07102
Attorneys for Selective Insurance Company of New York

Rivkin Radler LLP
Peter P. McNamara, Esq., of counsel
926 RXR Plaza
Uniondale, New York 11556
Attorneys for Fireman's Fund Insurance Company

Clyde & Co LLP
Marianne May, Esq., of counsel
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932
Attorneys for Century Indemnity Company and
ACE Property & Casualty Insurance Company

Steptoe & Johnson LLP
William Carson, Esq., of counsel
1330 Connecticut Ave NW
Washington, District of Columbia 20036
Attorneys for American Guarantee and Liability Company

Coughlin Midlige & Garland LLP
Tanya Mascarich, Esq., of counsel
350 Mt. Kemble Avenue
Morristown, New Jersey 07962
Attorneys for Arrowood Indemnity Company

Zeichner Ellman & Krause LLP
Michael S. Davis, Esq., of counsel
1211 Avenue of the Americas
New York, New York 10036
Attorneys for Fair American Insurance and
Reinsurance Company

Skarzynski Marick & Black LLP
Karen M. Dixon, Esq., of counsel
353 North Clark Street, Suite 3650
Chicago, Illinois 60654
Attorneys for Great American Insurance Company

Johnson & Bell
Glen Fencl, Esq., of counsel
33 W Monroe Street, Suite 2700
Chicago, Illinois 60603
Attorneys for the National Catholic Risk Retention Group

Elsaesser Anderson, Chtd.
J. Ford Elsaesser, Esq., of counsel
414 Church Street, Suite 201
P.O. Box 1049
Sandpoint, Idaho 83864
Attorneys for Parish Steering Committee

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, NY 14604
Co-Counsel for Parish Steering Committee

Pachulski Stang Ziehl & Jones LLP
James I. Stang, Esq., Ilan D. Scharf, Esq., Iain Nasatir, Esq.,
Brittany M. Michael, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Office of the U.S. Trustee
Joseph W. Allen, Esq.
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202
Assistant U.S. Trustee

Kevin T. Stocker, Esq.
2645 Sheridan Dr.
Tonawanda, New York 14150
Attorney for 22 Abuse Claimants

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

The Diocese of Buffalo has moved to refer this Chapter 11 case and two related adversary proceedings to mandatory global mediation. The central issue is not whether some form of mediation is now appropriate, but the terms, conditions and limitations of an optimal mediation process.

In 2019, the State of New York reopened the applicable statute of limitations to allow victims of child abuse the right to assert claims that were previously barred by the passage of time. *See* Child Victims Act, 2019 N.Y. Sess. Laws, c. 11, § 3. For the Diocese of Buffalo, this legislation presented two related challenges. First, the Diocese anticipated a need to address hundreds of claims by abuse victims. Second, the existence of insurance coverage was uncertain, fragmented and disputed. Recognizing these problems, The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. On that same date, the Diocese also commenced Adversary Proceeding No. 20-1009, in which it sought a declaratory judgment to determine the coverage obligations of eight insurance companies.

In June of 2020, the Diocese asked this Court to refer Adversary Proceeding No. 20-1009 to mediation. We held that the request was then premature for three

reasons.  First, the adversary proceeding involved some but not all of the relevant insurers.  Indeed, the Diocese had retained an insurance archivist who had not yet completed its work in identifying the universe of potentially responsible carriers.  In the Court's view, the absence of some of the insurers would preclude effective mediation.  Second, the parties could not fully identify the claims in need of resolution until after the bar date.  Third, the Diocese had not yet provided access to all of the documents and information that would be needed to facilitate meaningful negotiations.  *See Diocese of Buffalo, N.Y. v. The Continental Insurance Co., et al. (In re Diocese of Buffalo, N.Y.)*, 620 B.R. 445, 450 - 51 (Bankr. W.D.N.Y. 2020).

The Diocese of Buffalo now renews its application for mediation, and requests that a mediator be charged with the task of facilitating both the development of a reorganization plan and the resolution of two adversary proceedings.  In urging this appointment, the debtor maintains that it has resolved many of the concerns that previously compelled the Court to defer mediation.  The insurance archivist has substantially completed its work in identifying insurance carriers.  With this information, the Diocese and its affiliated parishes commenced Adversary Proceeding No. 21-1001 for a judgment declaring the coverage obligations of 68 insurance companies.  The deadline for filing proofs of claim was set for August 14, 2021, and has now passed.  The Diocese asserts that it has provided tens of thousands of pages of data to the Official Committee of Unsecured Creditors and to insurers who have accepted a confidentiality agreement. Based on its perception of progress in this case, the debtor asks for entry of an order that incorporates the following relief: (1) a

mandate that the parishes and the insurance companies participate in mediation; (2) a suspension of further activity in the two Adversary Proceedings that were commenced against insurers; (3) the adoption of confidentiality protocols; and (4) a direction that the parties confer on the selection of a mediator, and in the absence of agreement, that they so advise the Court so that it may appoint a mediator.

The Official Committee of Unsecured Creditors ("the Committee") supports the debtor's motion. In a written statement, it contended that "[t]he sheer complexity of the Diocese's Chapter 11 Case, given the number of claims, the types and number of insurance policies at issue requires a seasoned mediator or team of mediators with experience regarding insurance coverage issues, sexual abuse litigation, rights regarding assets of not for profit entities, and bankruptcy issues." Various defendants opposed the motion, primarily on grounds that the Diocese had still not provided all of the information that they would need to participate in meaningful negotiations. Counsel for 22 abuse claimants objected unless he was allowed the opportunity to attend the mediation sessions. Having carefully considered these and all of the other arguments expressed in writing and orally, the Court determines that mediation is necessary and proper, but only under the terms and conditions set forth herein.

Discussion

The complexities of this case far exceed the debtor's initial expectations. In an affidavit filed with the bankruptcy petition in February of 2020, the Executive Director of Financial Administration for the Diocese predicted that more than 400 individuals

would assert abuse claims.  Ultimately, however, in excess of 900 purported victims filed proofs of claim on or before the bar date.  On the day of the bankruptcy filing, the Diocese commenced Adversary Proceeding No. 20-1009 against the eight companies that it had identified as providers of insurance.  Then in papers filed on September 25, 2020, counsel for the Diocese advised the Court that his client had "completed" a further review that resulted in the identification of 18 more potential insurers.  By the time the Diocese had commenced Adversary Proceeding No. 21-1001 in January of 2021, the total number of potentially responsible insurers had risen to more than 70. We note these facts not for the purpose of questioning anyone's *bona fides*, but as an illustration of the unanticipated complexities of this bankruptcy case.

Pursuant to 11 U.S.C. § 1106(a)(5), a debtor in Chapter 11 is charged with a duty, "as soon as practicable," to develop a plan of reorganization.  But the Diocese is in no position to present a plan unless it first resolves many difficult legal and factual issues.  How are we to determine the compensation that is owed to abuse victims?  Is there insurance to cover both the cost of defense and the payment of damages?  What are the exclusions from coverage?  Some of the insurance claims arise under policies that are lost.  For those instances, what are the applicable limitations?  What resources are available to pay liabilities in excess of insurance?  To what extent can the debtor's plan address the liability of parishes and affiliated entities?  What consideration must affiliates pay for a channeling injunction, if any?

This Court will work expeditiously to address any issue that falls within our jurisdiction and that the parties are ready to present.  But from a practical perspective,

full-scale litigation will impose tremendous and untoward costs in terms of delay and financial expenditures. The parties have given no indication that they will be ready at any time in the near future either for a trial or to seek dispositive relief with regard to Adversary Proceeding No. 20-1009 and Adversary Proceeding No. 21-1001. Coverage issues will likely need resolution before any determination of liability on claims of abuse. Bankruptcy Court jurisdiction excludes the trial of personal injury tort claims. 28 U.S.C. § 157(b)(5). Thus, any adjudication would most likely occur in state court. Given the complexity of issues, contested litigation will take years if not decades to complete. We are unable even to estimate the resulting legal expenses. However, the Court has already authorized the Diocese to pay more than $6.2 million to attorneys and other professionals for a portion of the services rendered through August 31, 2021. Additional legal fees in the amount of more than $500,000 have been approved but not authorized for payment. Meanwhile, insurance companies and creditors are incurring costs not subject to any judicial review.

The time has come for all parties in good faith to negotiate a fair and reasonable settlement of the various disputes in this case. If a settlement was easy to accomplish, the parties would already have achieved that result. Tremendous complexity suggests a need for mediation. But any mediation must be fair to all parties and protective of due process.

On November 17, 2021, the Court held a hearing that nominally served both as an opportunity for argument on the application for appointment of a mediator and as a pretrial conference in Adversary Proceeding No. 20-1009. The Court will further treat

that hearing as a status conference pursuant to 11 U.S.C. § 105(d). In relevant part, section 105(d) provides as follows:

> "The court, on its own motion or on the request of a party in interest, (1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and (2) unless inconsistent with another provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedure, may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . . . ."

For the reasons stated above, mediation is an appropriate condition to expedite the handling of this case. Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure prohibits mediation. Rather, this outcome conforms fully with procedures for the pretrial conference that was held at the time of the hearing. Bankruptcy Rule 7016 provides that Rule 16 of the Federal Rules of Civil Procedure "applies in adversary proceedings." Rule 16 then states that at any pretrial conference, this Court may adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." FED. R. CIV. P. 16(C)(2)(L). Mediation is such a special procedure that is appropriately used in this complicated case.

Although the Court recognizes a need for some form of mediation, we reject certain aspects of what the debtor has proposed. Four topics merit particular discussion.

**1. Pre-Mediation Discovery:**

In its decision of September 11, 2020, this Court found that mediation was then premature for reasons that included insufficient access to information in the possession of the Diocese. *See Diocese of Buffalo, N.Y. v. The Continental Insurance Co., et al.,* 620 B.R. at 451. The Diocese now claims that it subsequently made tens of thousands of pages of documents available for review and that parties should have adequate data to enable their meaningful participation in the mediation process. Various insurance companies disagree. They contend that many of the documents are heavily redacted and that the Diocese has still not responded to reasonable discovery demands. Unfortunately, the present record is inadequate to enable the Court to decide the issue. In order not to unduly delay the start of mediation, the Court will allow parties until January 31, 2022, for the filing of motions to compel the Diocese to release information. Absent further direction from the Court, an initial hearing on any such motion will be set for 2 P.M. on February 14, 2022. Based on the outcome of these motions and after confirming the exchange of necessary data, the Court will set a timetable for the start of mediation.

**2. Mediation Participants:**

The debtor's motion asks that the Court compel participation in the mediation process by the Diocese, its parishes, and all of the defendants named in Adversary Proceeding No. 20-1009 and Adversary Proceeding No. 21-1001. However, because the adversary proceedings were commenced prior to the bar date, the defendants were named without benefit of knowledge about whether any particular insurer would be

implicated in a filed claim. Nor does the current motion make any assertion based even on information and belief that at least one extant claim will affect each of the defendants that the Diocese now wishes to call into mediation. Indeed, subsequent to the hearing on the motion to compel mediation, the plaintiffs in Adversary Proceeding No. 21-1001 filed a Notice of Voluntary Dismissal with regard to one of the defendants. Before directing mandatory participation by all of the other defendants, the Court will require the Diocese to assert the basis for its belief that each defendant has a material interest in the outcome of mediation. Upon receipt of that representation, the Court will issue a further order identifying the parties who will be compelled to participate in the mediation process.

While the request for mediation may be over-inclusive as to some defendants, the proposed process is under-inclusive as to other proper participants. The primary stakeholders in the proposed mediation are the abuse victims. Accordingly, we will sustain the objection filed on behalf of 22 purported victims, and will direct that they be allowed participation. For the same reason, we accept the debtor's suggestion that the Committee be deemed a party to the mediation for all purposes.

**3. Selection of Mediator:**

In its motion, the Debtor proposes that mediation proceed under the Alternative Dispute Resolution Plan adopted by the United States District Court for the Western District of New York (the"ADR Plan"). *See* https://www.nywd.uscourts.gov/alternate-dispute-resolution. Although this Plan does not apply to bankruptcy proceedings, we wholeheartedly accept its philosophy and general approach. As stated in section 5.1

of the ADR Plan, a mediator is "a qualified Neutral" who "facilitates resolution of the issues between the parties and assists with settlement discussions." In this spirit, any mediator in this bankruptcy proceeding must similarly maintain neutrality with regard to all controversies, including disputes between the debtor and victim creditors and between insurers and the purported insured.

The ADR Plan incorporates two principles of particular relevance to the present discussion. First, all parties are entitled to share equal opportunity for input on any recommendation for the selection of a mediator. Thus, for matters in District Court, the ADR Plan contemplates that the parties confer with each other and that everyone joins by stipulation in presenting any recommendation. Second, the selection process should not serve as a cause for delay. In those instances where all of the litigants are able within 28 days to agree on a designation, they may "file a stipulation regarding their selection." ADR Plan § 5.5(C)(1). In the absence of such prompt and unanimous agreement, the Court itself will make an appropriate appointment. ADR Plan § 5.5(C)(2).

In the present case, due to the number of defendants and the complexity of issues, negotiations regarding the selection of a mediator would surely become a cumbersome process that offers little prospect for consensus. Such an exercise would also entail a further investment of time at great expense to the bankruptcy estate. We are unwilling to invite negotiations on a matter having so little prospect of success. Therefore, for the sake of both expediency and fairness, the Court will instead make the initial selection of an appropriate mediator.

For almost three decades, the bankruptcy judges for the Western District of New

Case 1-20-10322-CLB, Doc 1512, Filed 12/27/21, Entered 01/10/22 10:32:00, Description: Main Document , Page 13 of 16

York have helped to mediate disputes in cases that were assigned to another of our colleagues. The Honorable Michael J. Kaplan is now retired, but is serving on a limited recall. His past success at mediation gives assurance of a reasonable prospect for successful mediation in the present instance. His assistance will also avoid the expense of a private mediator. Accordingly, with Judge Kaplan's gracious consent, I will refer to him the task of mediation. In that context, I will also defer to his sound discretion the setting of protocols to assure confidentiality and fairness.

Successful mediation may here include either a global resolution or even some progress in surveying the path to that outcome. In papers submitted in support of the motion for mediation, both the debtor and the Committee acknowledged a possible need for multiple mediators, each of whom might address a different aspect of this complex case. Without limiting the discretion that Judge Kaplan may choose to exercise, this Court appreciates the possibility that the initial mediator might serve best by assisting the development of an appropriate strategy to involve the participation of other mediators.

On December 17, after the Court had nearly finished the drafting of this opinion but before its issuance, the Diocese and the Committee filed statements urging the appointment of particular individuals to serve as mediators. The Court has disregarded these proposals, because they ignore the principles of the ADR Plan that the Diocese itself has moved to implement. None of the defendants have stipulated to the recommendations, and some of the defendants have reported that they were never invited to participate in any discussions regarding mediator selection.

Mediation earns respect from impartiality in all regards, including the process of selecting a mediator. Before considering any recommendation from the Diocese and the Committee, the Court would have wanted to invite suggestions from all other interested parties, including insurers. At the time that they made an unsolicited recommendation, the Diocese and the Committee knew that the Court was then deliberating on the motion to set procedures for mediation. Other respondents to the motion were patiently awaiting the Court's guidance. In fairness, we will not entertain any request that might be seen as an attempt to preempt a process that was then under due consideration.

**4. Suspension of litigation:**

The Diocese requests that the Court suspend all proceedings in the two adversary proceedings that were commenced against potential insurers. Anticipating that the parties will voluntarily continue their current suspension of activity, we find it unnecessary to grant such relief. Also, we do not foreclose the possibility that even during mediation, some defendants might justifiably seek dispositive relief. The Court prefers not to predict appropriate exceptions to a blanket prohibition. In the unlikely event that the mediation process is compromised by activity in either adversary proceeding, however, the Diocese may renew its suspension request.

Conclusion

As indicated herein, the motion to compel mediation is conditionally granted in part. Commencement of mediation shall be deferred until the Court has duly

considered any applications for pre-mediation discovery and has issued its further order identifying the parties who will be required to participate in the mediation process. Upon satisfaction of these conditions, the Court will advise the mediator so that he may proceed at his discretion in scheduling appropriate sessions.

So ordered.

Dated: December 27, 2021         /s/ Carl L. Bucki_____
       Buffalo, New York         Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.