**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| The Diocese of Buffalo, N.Y., | Case No. 20-10322 (CLB) |
| Debtor. | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN REAL PROPERTY IN OLEAN, NEW YORK; (B) AUTHORIZING AND APPROVING THE FORM OF STALKING HORSE BID SUBMITTED BY THE ARCHBISHOP WALSH FOUNDATION; (C) SCHEDULING AN AUCTION; AND (D) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE OF AUCTION AND SALE HEARING; (II) APPROVING THE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES <u>AND OTHER INTERESTS; AND (III) GRANTING RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of

Buffalo, N.Y., the debtor and debtor-in-possession (the "**Debtor**" or the "**Diocese**") in the above

captioned case (the "**Case**") under chapter 11 of Title 11 of the United States Code (the

"**Bankruptcy Code**"), by and through its undersigned counsel, respectfully submits this

objection (this "**Objection**"), to the Diocese's *Motion for Entry of Orders (I) (A) Approving*

*Bidding Procedures for the Sale of Certain Real Property in Olean, New York; (B) Authorizing*

*and Approving the Form of Stalking Horse Bid Submitted by the Archbishop Walsh Foundation;*

*(C) Scheduling an Auction; and (D) Approving the Form and Manner of Service of Notice of*

*Auction and Sale Hearing; (II) Approving the Sale Free and Clear of Liens, Claims,*

*Encumbrances and Other Interests; and (III) Granting Related Relief* (the "**Motion**") [Docket

No. 1476]. In support of its Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This is the Diocese's second request to sell Archbishop Walsh High School (the "**School**," and the property to be sold, as defined in the Motion, the "**Property**") to the Archbishop Walsh Foundation (the "**Foundation**").  The Diocese first sought authority to sell the Property to the Foundation for $150,000 in May 2020.[1]  On or about July 15, 2020 the Diocese withdrew the First Sale Motion after the Committee filed an objection (the "**First Sale Objection**").[2]  The Diocese has not undertaken any effort to market the property in the approximately seventeen months between the withdrawal of the First Sale Motion and the current Motion.  Instead, the Diocese seeks to sell to the same affiliate[3] based on a sale price that was presented despite the Diocese's efforts to engineer a private sale.  The Diocese pays lip service to an auction process that is clearly designed to avoid any marketing of the Property and discourage competing bids.  The Court should only authorize the sale of the Property if it is properly marketed and the sale is subject to proper sale procedures that take into account the fact that the proposed stalking horse buyer needs no incentive to stay in the sale process given its affiliate relationship with the Diocese and the school.  The proposed Bidding Procedures (as defined in the Motion) are wholly inadequate because:

---

[1] *See Motion of the Debtor for Entry of an Order Authorizing the Private Sale of Certain Real Property in Olean, New York* [Docket No. 328] (the "**First Sale Motion**").

[2] *See Objection of the Official Committee of Unsecured Creditors to the Motion of the Debtor for Entry of an Order Authorizing the Private Sale of Certain Real Property in Olean, New York* [Docket No. 384] and record of hearing regarding withdrawal of the First Sale Motion [Docket No. 450].

[3] While the relationship between the Diocese and the Foundation does not fit the Bankruptcy Code's definition of "affiliate" or "insider," the relationship between the School, the Foundation and the Diocese is not a relationship between outsiders or strangers.  See 11 U.S.C. § 101(2) and (32).  The education provided by the School is part of the Diocese's mission (see n. 5 below) and the Diocese has obtained a stipulated stay of litigation against the School pursuant to the *See Stipulation and Order Pursuant to 11 USC § 105(a) Staying Continued Prosecution of Certain Lawsuits* at Schedule 2 filed in Adv. Pro. *The Diocese of Buffalo, N.Y. v. JMH 100 Doe, et al. (In re The Diocese of Buffalo, N.Y.)*, Adv. No. 20-10322 [Docket No. 79-1].  As such, the relationship between the Diocese, the Foundation and the School is akin to an affiliate or insider relationship.

2

DOCS_NY-26720  Case 1-20-10322-CLB,   Doc 1550,   Filed 01/31/22,   Entered 01/31/22 11:43:48,
Description: Main Document  , Page 2 of 10

a.      The Debtor did not retain a broker to market the Property and has made no effort to market the Property.

b.      Archbishop Walsh Foundation has offered to pay $300,000 for the Property.  However, the minimum bid increment is $50,000, which is one-sixth of the stalking horse offer.  The Committee sees no justification for robbing the estate of tens of thousands of dollars solely because a potential buyer would pay, for example, $30,000 more but not $50,000.  Bidding increments of $10,000 are appropriate for a sale of this size.

c.      The proposed sale procedures require competing bids to be submitted within approximately 30 days, which is an inadequate period to solicit competing bids, especially given the lack of marketing.  The Debtor has not put together a sales package or a data room.  The Debtor has not contacted any party other than the Foundation regarding the sale of the Property.  The Debtor essentially asks the Court to assume that potential buyers will stumble upon the sale, assess the Property, obtain financing, and submit a bid to a seller uninterested in selling to anyone other than the Foundation -- all within 30 days.   This proposed timeframe is especially inadequate given the seventeen months the Diocese has taken to negotiate a second sale with the Foundation.

d.      The Sales Procedures propose to pay a break-up fee of $15,000 to the Foundation even though (i) the relationship between the Debtor and the Foundation is tainted by self dealing, and (ii) the break-up fee is part of a fatally flawed process designed to chill bidding. Moreover, the addition of the breakup fee increases the initial overbid amount to $65,000, which is more than twenty percent (20%) of the proposed purchase price.

2.      The Debtor seeks to sell the Property to the Foundation as the stalking horse bidder.  The Foundation is an organization established to fundraise on behalf of the School and to "carry on the legacy of a Walsh. . . education."[4]  The Diocese of Buffalo has a close relationship with the Catholic schools in its territory, including the School.  According to the Diocese's website, "The Roman Catholic Diocese of Buffalo provides strong support for the Catholic schools of the diocese."[5]  Given the Debtor and the School's close relationship, the

_____

[4] https://www.stcswalsh.org/ways-to-give

[5] https://www.wnycatholicschools.org/about-us-mission-test

proposed sale is akin to a transaction with an affiliate or an insider. As such, the terms of the proposed sale and the bid procedures for the sale are subject to strict scrutiny. However, the proposed sale procedures do not pass a strict scrutiny review, the more lenient business judgment test, or any other standard of review.

3. The Debtor has a fiduciary obligation to maximize the value of its assets. Rather than perform its fiduciary obligation, the Debtor has chosen to negotiate a rigged sale and ask the Court to approve a sham sale process that is designed to preserve the Schools use of the Property rather than maximize value for the Debtor's estate and creditors.

4. The Committee has repeatedly asked the Debtor for a meaningful plan to sell its real property in a manner designed to maximize value. Instead of proposing a meaningful property disposition plan, the Debtor now seeks to forge ahead with an engineered transaction dressed up as an auction. Clearly, the Debtor is not performing its obligation as a fiduciary with the relief requested in the Motion. Thus, the Court should not approve the Bidding Procedures because the Debtor is asking the Court to bless a flawed process and condone the Debtor's willful disregard for its fiduciary obligations to the victims of its predators.

## OBJECTION

5. The Committee objects to the Bidding Procedures proposed by the Debtor because (a) the Bidding Procedures do not stand up to strict scrutiny, under which insider transactions are reviewed, (b) the Debtor did not exercise any business judgment in designing the Bidding Procedures; (c) the Bidding Procedures are not designed to maximize value; and (d) the Bidding Procedures are designed to chill bidding. The Committee urges the Court to deny the Motion. The Committee reserves all rights to object to the sale if the Bidding Procedures are approved as is.

**DISCUSSION**

**A.      The Debtor has a Fiduciary Duty to Obtain
the Highest and Best Offer for the Property**

6.       Section 363(b) of the Bankruptcy Code provides that the debtor, "after notice and a hearing, may … sell …, other than in the ordinary course of business, property of the estate…" Bankruptcy Code § 363(b).  In any bankruptcy sale, the "overarching objective" is to "maximize value to the estate."  *In re Metaldyne Corp.*, 409 B.R. 661, 667-68 (Bankr. S.D.N.Y. 2009) *citing Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992); *see also In re GSC, Inc.*, 453 B.R. 132, 169 (Bankr. S.D.N.Y. 2011) ("The Trustee's decision of what is best for the estate should be undertaken with the goal of maximizing the value of the estate.").  The debtor maximizes value for the estate and its creditors by selecting the bid with the highest and best purchase price. *GSC, Inc.*, 453 B.R. at 169-70 *citing, In re Fin. News Network, Inc.*, 126 B.R. 152, 157 (Bankr. S.D.N.Y. 1991), *aff'd* 980 F.2d 165 (2d Cir. 1992).

7.       Courts in the Second Circuit recognize that sales pursuant to section 363 of the Bankruptcy Code require debtors to present sufficient evidence to allow the Court to make findings that, among other things, (1) a sound business reason exists for the transaction; (2) the property has been properly marketed, the purchase price constitutes the highest or otherwise best offer and provides fair and reasonable consideration; (3) the proposed transaction is in the best interests of the debtor's estate and its creditors; and (4) the transaction has been proposed and negotiated in good faith.  *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (debtor must exercise business judgment); *See In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010); Here, the Debtor can support none of those factors.

5

8.      Moreover, in order to approve bid protections including a breakup fee, the Court must assess whether "(1) is the relationship of the parties who negotiated the breakup fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; and (3) is the amount of the fee unreasonable relative to the proposed purchase price." Metaldyne, 409 B.R. at 670 (citing *Integrated Res*., 147 B.R. at 659).  Here, the Debtor can meet none of these factors.  First, the relationship between the parties that negotiated the breakup fee is clearly tainted by manipulation.  Second, the proposed fee clearly hampers bidding because it is too high and signals to competing bidders that the Diocese is trying to steer the sale to the Foundation.  Finally, the amount of the breakup fee is unreasonable when coupled with the proposed overbids.

9.      With the proposed sale of the Property to the Foundation, the Debtor is clearly more concerned about the School's ability to continue using the Property than with maximizing value for creditors.

**B.      The Debtor's Selection of the Stalking Horse Bidder Does Not Stand Up to Strict Scrutiny**

10.      The proposed sale of the Property to the Foundation is akin to an insider transaction.  Thus, the sale is subject to review under a "heightened scrutiny" standard, which closely examines transactions with insiders. *See In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010); *see also In re Summit Global Logistics, Inc.*, Case No. 08-11566, 2008 WL 819934*9 (Bankr. D.N.J., March 26, 2008) (*citing In re Univ. Heights Ass'n*, 2007 Bankr. LEXIS 2000*12 (Bankr. N.D.N.Y., January 22, 2007)); *In re Angelika Films 57th, Inc.*, Case No. 97 Civ. 2239 (MBM), 1997 WL 283412*7 (S.D.N.Y., May 29, 1997) (*quoting In re Biderman Indus. U.S.A., Inc.*, 203 B.R. 547, 541 (Bankr. S.D.N.Y. 1997) ("[s]ales to fiduciaries

in chapter 11 cases… are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse.")).

11.     Since the prospective purchaser is akin to an insider of the Debtor, the sale is subject to heightened scrutiny.  As noted by the *Innkeepers* Court:

> In applying heightened scrutiny, courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration.

*Innkeepers*, 442 B.R. at 231.

12.     Here, the Debtor fails miserably when subjected to heightened scrutiny:

    a.     The process in selecting the stalking horse has not been fair.  The Debtor has not solicited a single bid from a party other than the Foundation.  More egregiously, the Debtor appears to have ignored another bidder in its efforts to assure that the Property is sold to the Foundation.  The Debtor has not obtained any professional real estate advice regarding the sale of the Property.  The Debtor has not advertised the property nor put together a package of information for potential buyers.  The Diocese expects the Court to approve a process that clearly gives an inside track to the Foundation (an insider/affiliate) and asks potential bidders to come forward with fewer than 30 days from the hearing on the Motion to (i) chance upon the sale of the Property, (ii) conduct due diligence, (iii) obtain financing, and (iv) submit a qualified bid.

    b.     The requirements of a qualified overbid are not fair.  The Initial Minimum Overbid is a 122% increase over the Foundation's offer, an outrageous increment for a fair sale.

    c.     The Debtor has not properly taken its fiduciary obligations into consideration.  The Debtor has a fiduciary obligation to maximize value.  Instead, the Debtor is clearly attempting to allow the School to keep operating at the Property at creditors' expense.

13.     For the foregoing reasons, the proposed sale does not stand up to strict scrutiny.

**C.    The Debtor Did Not Properly Exercise Business
        Judgment in Selecting the Stalking Horse Bidder or
        Designing the Sale Procedures**

14.    Typically, courts will defer to a debtor's business judgment.  However,

courts may assess whether a debtor properly applied business judgment.  As the *Innkeepers*

Court noted:

> The business judgment rule's presumption shields corporate
> decision makers and their decisions from judicial second-guessing
> only when the following element are present: (i) a business, (ii)
> disinterestedness, (iii) due care, (iv) good faith, and (v) according
> to some courts and commentators, no abuse of discretion or waste
> of corporate assets. *See In re Integrated Res., Inc.*, 147 B.R. 650,
> 656 (S.D.N.Y. 1992).

*Innkeepers,* 442 B.R. at 231.

15.    Here, the Debtor's proposed sale to the Foundation and the Bidding

Procedures do not pass the business judgment test:

a.    The Debtor is not making a business decision to sell the Property
      to the Foundation.  The Debtor acknowledges that it needs to sell
      property in order to fund a plan of reorganization and pay
      creditors.  In other words, the Debtor recognizes its fiduciary duty
      to maximize value.  However, the Debtor's decision to market the
      Property only to the Foundation is driven by the Debtor's objective
      of maintaining the Property's use as a school that provides a
      Catholic education.  This may be an admirable goal if one is not in
      bankruptcy, but it is not one of the Debtor's fiduciary duties; nor is
      it designed to maximize value.

b.    The Debtor is not disinterested.  One of the Debtor's primary
      missions is overseeing Catholic education within its territory.  It is
      therefore important to the Diocese that the Property continue to be
      used for Catholic education.

c.    The Bidding Procedures have not been negotiated with "due care."
      The Debtor previously attempted to sell the Property to the
      Foundation based on an under-valued appraisal.[6]  Following that
      failed sale attempt, the Diocese received an unsolicited request to
      purchase the Property for double the amount in the Diocese's

---

[6] *See* Motion, para. 9.

DOCS_NY:26720

initial motion.[7]  Rather than taking from that experience that there may be interest in the Property and greater value than the Diocese initially anticipated, therefore encouraging the Diocese to commit to an open and competitive sale process, the Diocese is instead attempting to stifle any further interest in the Property to maintain its function as a Catholic school.

d.   The sale has not been negotiated in good faith.  It is an insider transaction that was not subject to any marketing process.  It is a sale driven by considerations antithetical to the Debtor's duty to creditors.

## D.   The Sale Has Not Been Proposed In Good Faith

16.   The Debtor acknowledges that approval of sales pursuant to section 363 requires a showing of good faith.[8]  As noted in the *Angelika Film* Case:

> The requirement that a purchaser act in good faith, speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Angelika Films*, 1997 WL 283412*7 (*quoting In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D.Mo. 1988).

17.   Here, there has been collusion between the buyer and the seller.  Collusion is self-evident given interrelatedness of the entities.  The Debtor's objective is to benefit the Foundation.  No other purchaser was sought.  The Bidding Procedures are clearly rigged in favor of the Foundation.  As such, the Debtor is not proceeding in good faith by proposing a sale of the Property to Archbishop Walsh Foundation.

## CONCLUSION

The Committee supports the sale of property for the highest and best price.  The Committee does not oppose the sale of the Property to the Foundation (or any Catholic entity) as

---

[7] *Id.*, para. 11.

[8] Motion, paras. 21, 23.

9

long as the sale is for fair value determined after proper marketing. Based on the foregoing, the

Court should deny the proposed Sale Procedures and require the Debtor to properly market and

sell the Property. Specifically, the Committee requests the Debtor be required to:

1.    Retain a broker acceptable to the Committee to sell the Property.

2.    Require a 120 day minimum marketing process after the broker is retained, which marketing process should have a reasonable budget, be designed based on a broker's recommendation and provide necessary data to potential buyers as is usual and customary with respect to sales of similar properties.

3.    Condition any approval of bidding procedures to allow potential buyers to inspect the Property.

4.    Remove the Break-Up Fee in favor of the Foundation.

5.    Decrease the bidding increments to $25,000.

Dated:  New York, New York          PACHULSKI STANG ZIEHL & JONES LLP
        January 31, 2022January


                                    /s/ Ilan D. Scarf
                                    James I. Stang, Esq. (admitted *pro hac vice*)
                                    Ilan D. Scharf, Esq.
                                    Brittany M. Michael, Esq.
                                    780 Third Avenue, 36th Floor
                                    New York, NY  10017-2024
                                    Telephone:  (212) 561-7700
                                    Facsimile:   (212) 561-7777
                                    Email: jstang@pszjlaw.com
                                    Email: ischarf@pszjlaw.com
                                    Email: bmichael@pszjlaw.com


                                    Counsel for the Official Committee of
                                    Unsecured Creditors of The Diocese of Buffalo, N.Y..