UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re

THE DIOCESE OF BUFFALO, N.Y., BK 20-10322 CLB

Debtor. DECISION & ORDER

---

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq., Charles J. Sullivan, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for The Diocese of Buffalo, N.Y.

Morgan & Associates, PLLC
Michael A. Morgan, Esq., of counsel
201 North Union Street, Suite 410
Olean, New York 14760
Attorneys for Archbishop Walsh High School
and Archbishop Walsh Foundation

Pachulski Stang Ziehl & Jones LLP
Ilan D. Scharf, Esq., Brittany M. Michael, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Office of the U.S. Trustee
Joseph W. Allen, Esq., Assistant U.S. Trustee
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

In this chapter 11 case, the Official Committee of Unsecured Creditors has objected to the debtor's motion to authorize a process for the sale of a parcel of real property. The central issue is whether the proposed methodology is adequately designed to maximize a recovery for the benefit of the estate and creditors.

The Catholic Diocese of Buffalo is the owner of real property in the City of Olean, New York, that has been used for more than sixty years as the campus of Archbishop Walsh High School. Established in 1957, the school was operated by the Diocese until 1992, when management was transferred to an independent board of trustees. In conjunction with this restructuring, the Diocese agreed to lease the campus to Archbishop Walsh High School for a term of fifty years at an annual rent of one dollar. Under the lease, which was never recorded, the High School agreed to "be responsible for the cost of upkeep and maintenance, capital or structural repairs and replacements."

On February 28, 2020, the Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code. Then in May of 2020, the Diocese moved for authority to sell the Archbishop Walsh High School campus for $150,000 to the Archbishop Walsh Foundation, an organization formed to support school operations. The Official Committee of Unsecured Creditors objected, and on July 15, 2020, the Diocese withdrew that initial motion. The Diocese reports that in the Spring of 2021, a private developer offered to purchase the property for $300,000, subject to

contingencies regarding changes in zoning. In response, the Diocese reopened discussions with the Archbishop Walsh Foundation. These negotiations ultimately resulted in a revised proposal from the Foundation to acquire the Olean campus for $300,000, but without contingencies.

The Diocese now moves for authority to adopt procedures for the sale of the Olean campus of Archbishop Walsh High School. The motion asks that the Foundation serve as a "stalking horse" to whom the property would be sold in the absence of a competing bid. Notice of opportunity to bid would be given to the public by publication, and by mail to all creditors and to parties who may have expressed an interest in buying the property during the past two years. The Diocese proposes a minimum bid increment of $50,000 and that the Foundation receive a break-up fee of $15,000 upon a sale to any third party. The High School's attorney advises that his client agrees to honor the results of this process. Notwithstanding the remaining term of its lease, in the event that the Diocese accepts the higher bid of a third party, the school will vacate the premises 45 days after the end of the spring semester in 2024.

The Official Committee of Unsecured Creditors opposes the debtor's motion. In its written submission, the Committee contends: "(a) the Bidding Procedures do not stand up to strict scrutiny, under which insider transactions are reviewed; (b) the Debtor did not exercise any business judgment in designing the Bidding Procedures; (c) the Bidding Procedures are not designed to maximize value; and (d) the Bidding Procedures are designed to chill bidding." In particular, the Committee argues that the Diocese made no effort to market the property prior to filing its motion; that the

minimum increment of $50,000 is excessive; that the proposal allows insufficient opportunity to solicit competing bids; and that the debtor provides no justification for a break-up fee. The Diocese responds that the sale procedures are a reasonable exercise of sound business discretion. It asserts that the building urgently needs replacement of its roof and heating system at a cost of almost $1.4 million. Relying on an appraisal showing that the property may have a negative value, the Diocese believes that the Foundation's offer is reasonable and that the proposed auction process will suffice to confirm that conclusion.

## Discussion

Outside bankruptcy, a solvent entity can generally sell assets to whomever it may choose. For an eleemosynary institution, the motive for transfer may include the advancement of a charitable mission. Within bankruptcy, however, a debtor in possession assumes the duties of a trustee acting on behalf of creditors. *See* 11 U.S.C. § 1107(a). For proceedings in Chapter 11, the Court has no authority to compel any particular sale. But if the debtor chooses to sell property, it must adopt a sales process that is reasonably designed to achieve the greatest net return.

The proposed sale of the Archbishop Walsh campus is a transaction outside the debtor's ordinary course of business. Pursuant to 11 U.S.C. § 363(b)(1), the Diocese may conduct such a sale only after notice and a hearing. "Although not specified by section 363, the Second Circuit requires that transactions under section 363 be based

on the sound business judgment of the debtor or trustee." *In re MF Global Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012). In the present instance, we consider the exercise of sound business judgment from two perspectives: first, whether the property can be sold by auction; and second, whether the debtor has formulated auction procedures that will foster competitive bidding.

Bankruptcy Rule 6004(f)(1) recognizes that "sales not in the ordinary course of business may be by private sale or by public auction." Here, the debtor has articulated sound reasons for an auction process where bidding commences with the "stalking horse" offer of the Archbishop Walsh Foundation. The starting price of $300,000 is not insubstantial. While preserving that bid, the auction allows the possibility of a higher price. By forcing a prompt submission of competing offers, the auction will accelerate the disposal of property having urgent need for significant repairs. In contrast, marketing with the assistance of a broker carries a greater risk of uncertainty and delay. For similar reasons, trustees and debtors in possession have regularly sold both real and personal property through an auction process. The problem with the present proposal lies not in the concept but in the details.

Although an auction could represent an exercise of sound business judgment, the debtor abandons that judgment by recommending procedures that unduly discourage competitive bidding. In reaching this conclusion, we address concerns that include the following:

1. The Diocese proposes an almost meaningless level of advertizing and marketing of opportunities to participate in the auction. In particular, print advertizing

would be limited to the publication of a single announcement in one newspaper of general circulation. Notice by publication may satisfy minimum requirements of due process under exceptional circumstances, but such announcements offer little chance of reaching the universe of likely buyers. *See In re Diocese of Buffalo, N.Y.*, 620 B.R. 445, 451-52 (Bankr. W.D.N.Y. 2020). By way of comparison, in Chapter 7 cases, panel trustees in this district will regularly employ professional auctioneers with skills in marketing and access to a network for making contact with potentially interested parties. The Court will not dictate the details of advertizing, but we cannot in the present instance allow an auction to proceed without benefit of some reasonable amount of promotional activity.

2. The Diocese proposes that the auction be open only to cash offers without any financing contingency and that a closing occur within ten business days after the order approving the sale has become final and non-appealable. Meanwhile, counsel for the High School and Foundation has advised that in the event of a sale to a third party, his clients will not vacate the premises until 45 days after the end of the school's spring semester in 2024. Essentially, therefore, the Foundation and High School would acquire something different than what is being offered to everyone else. While the stalking horse bids for immediate occupancy, third parties can obtain only a right of access that will not mature for more than two years after purchase. This discrepancy awards greater benefit to the Foundation and could chill the interest of competitors. To equalize the terms of sale, the auction would need at a minimum to allow final payment at or about the time of occupancy.

3.  The Diocese proposes a break-up fee of $15,000, in the event that the property is sold to anyone other than the Archbishop Walsh Foundation.  This Court has previously held that break-up fees are permissible only when they "represent a reimbursement for costs and expenses that the stalking horse reasonably incurred either in formulating its offer or in facilitating the bid process."  *In re Jon J. Peterson, Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009).  In its present motion, the Diocese offers no such justification for the break-up fee.  Rather, it gives an impermissible advantage to the Foundation in any bidding contest.

4.  The Diocese proposes bid increments of $50,000, and that the initial minimum overbid be set at $65,000, consisting of the $50,000 minimum increment plus the break-up fee.  These conditions effectively enable the Foundation's $300,000 offer to prevail over anyone willing to pay up to $365,000.  Such requirements can only serve to discourage competition.  The Bankruptcy Code does not dictate any bidding increment, but for reasons of convenience, we have previously allowed minimum competing offers of about two percent of the starting price.  A similar practice would here suggest bid increments of no more than $6,000.

5. The Diocese proposes bidding procedures under which "the Diocese reserves the right not to submit for approval to the Bankruptcy Court any bid (regardless of whether it may be a Qualified Bid under these Bidding Procedures) if such bid is not acceptable to the Diocese for any reason."  Why would anyone incur the cost of participating in an auction in which the outcome is not based on acceptance of the highest offer?  By its terms, the bidding procedures would allow the Diocese to reject

any sale other than to the stalking horse.

6. The Diocese proposes that participation in the auction be limited only to "Qualified Bidders." Ostensibly, the purpose of this requirement is to assure that bidders have the financial ability to complete the sale. However, the proposed bidding procedures recite that financial disclosures must be "satisfactory to the Diocese, in its sole discretion." Even if one assumes that qualification standards will never be used to discourage participation, the Court will not assign "sole discretion" to the debtor without opportunity for judicial oversight.

7. The Diocese proposes that any auction take place at the offices of its attorneys in Syracuse, New York. The Court takes judicial notice that this proposed auction site is located outside the territory of the Buffalo Diocese and more than 160 miles from the Archbishop Walsh campus in Olean. This distance will further hinder participation by the local investors who are most likely to have interest in submitting a competing bid. The debtor offers no explanation for why it chose not to follow the usual practice of conducting an auction at or near the subject property. Nor do the proposed bidding procedures allow for a suitable alternative, such as telephonic or some other form of remote participation.

Taken together, the above factors demonstrate an intent to discourage competitive bidding for the Archbishop Walsh campus. Accordingly, to the extent indicated herein, the Court will sustain the objection of the Official Committee of Unsecured Creditors.

If the Diocese still wishes to sell the Archbishop Walsh campus, it will need to

adopt procedures that promote, rather than dissuade competitive offers. We recognize the possibility that additional marketing effort and expense might not even produce an outcome as favorable as what is now on the table. That, however, is a risk that the debtor and creditors must accept in order to maintain the integrity of the bankruptcy process. The many benefits of Chapter 11 come with a price, and that price includes a duty to assure fairness and to take reasonable measures to optimize a recovery of asset value.

Aside from concern for the realization of value, the bankruptcy process must remain transparent and accessible. In its bidding procedures, the debtor proposes that any auction be closed to the public and open only to the Diocese, the Committee, qualified bidders and the United States Trustee. We find no justification for this restriction and will direct that in making any amended proposal, the debtor should allow public access to any auction.

This Court has no power to compel the Archbishop Walsh Foundation to accept any new conditions for a purchase of the school campus. On the other hand, any marketing of the property is an open process to which it is invited to participate. Accordingly, the Foundation is at liberty to resume negotiations with the debtor and the Official Committee of Unsecured Creditors, for the purpose of developing appropriate bidding protocols.

For the reasons stated herein, the motion of the Diocese to approve bidding procedures and for related relief is denied, but without prejudice to presenting an amended motion to approve procedures that conform with the directives stated herein.

Any such amended motion may be set for hearing on notice to all parties who appeared on the debtor's original motion.

So ordered.

Dated: March 11, 2022
Buffalo, New York

/s/ Carl L. Bucki____________
Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.