UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:

      THE DIOCESE OF BUFFALO, N.Y.,

                    Debtor

Chapter 11

Case No. 20-10322-CLB

---

## UNITED STATES TRUSTEE'S OMNIBUS LIMITED OBJECTION REGARDING INTERIM APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO:    THE HONORABLE CARL L. BUCKI,
        UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), through counsel, respectfully files this omnibus limited objection (the "Objection") to

the interim fee applications (the "Applications") of the retained professionals (collectively, the

"Retained Professionals") of the Diocese of Buffalo, N.Y. (the "Debtor") seeking interim

compensation and reimbursement of out-of-pocket expenses for the periods set forth below and

defined as to each of the Retained Professionals, as follow:

| Applicant | Fees Requested | Expenses Requested | Total | Application Period |
|---|---|---|---|---|
| Bond, Schoeneck & King, PLLC<br>*Counsel for the Diocese* | $694,027.50 | $3,879.54 | $697,907.04 | 9/1/21 – 1/31/22 |
| Blank Rome, LLP<br>*Special Counsel for the Diocese* | $280,329.12 | $0.00 | $280,329.12 | 9/1/21 – 1/31/22 |
| Phoenix Management Services, LLP<br>*Financial Advisors for the Diocese* | $32,182.50 | $0.00 | $32,182.50 | 9/1/21 – 1/31/22 |
| The Tucker Group, LLC<br>*Communications Consultants for Diocese* | $50,000.00 | $612.67 | $50,612.67 | 9/1/21 – 1/31/22 |
| Connors, LLP<br>*Special Counsel for the Diocese* | $438,510.00 | $26,077.60 | $464,587.60 | 8/1/21 – 1/31/22 |
| Gibson, McAskill & Crosby LLP<br>*Special Counsel for the Diocese* | $2,082.50 | $0.00 | $2,082.50 | 8/1/21 – 1/31/22 |
| Chelus, Herdzik, Speyer & Monte PC<br>*Special Counsel for the Diocese* | $16,734.50 | $1,216.07 | $17,950.57 | 10/1/21 – 1/31/22 |

| Applicant | Fees Requested | Expenses Requested | Total | Application Period |
|---|---|---|---|---|
| Insurance Archaeology Group *Insurance Archaeologist for the Diocese* | $2,245.00 | $0.00 | $2,245.00 | 9/1/21 – 1/31/22 |
| Jones Day *Special Counsel for the Diocese* | $499,869.00 | $8,251.23 | $508,120.23 | 9/1/21 – 1/31/22 |
| Bonadio & Co., LLP *Accountants for the Diocese* | $56,700.00 | $0.00 | $56,700.00 | 1/1/21 – 1/31/22 |
| Hodgson Russ LLP *Special Counsel for the Diocese* | $12,127.20 | $1,394.98 | $13,522.18 | 9/1/21 – 1/31/22 |
| Pachulski Stang Ziehl & Jones LLP *Counsel for Creditors' Committee* | $456,591.00 | $6,563.65 | $463,154.65 | 6/1/21 – 1/31/22 |
| Gleichenhaus, Marchese & Weishaar, PC *Co-Counsel for Creditors' Committee* | $127,129.00 | $2,373.15 | $129,502.15 | 6/1/21 –1/31/22 |

In support of his Objection, the United States Trustee respectfully states as follows:

## I.      JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.      The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to

28 U.S.C. § 1408.

2.      The statutory predicates are Sections 330 and 331 of title 11, of the United States

Code (the "Bankruptcy Code").  These matters were initiated pursuant to Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11

U.S.C. § 330 (the "Guidelines"). 28 C.F.R. Part 58, Appendix A.

## II.      FACTUAL BACKGROUND

3.      On February 28, 2020, (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of title 11 of the United States Code with the United States

Bankruptcy Court for the Western District of New York (the "Court").  ECF Doc. No. 1.

4.       On March 12, 2020, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in this case.  ECF Doc. No. 92.

5.       The Debtor is currently operating its business and managing its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.       By Order entered June 4, 2020, the Court approved procedures for monthly compensation and reimbursement of out-of-pocket expenses (the "Monthly Compensation Order").  ECF Doc. No. 362.  Under the Monthly Compensation Order, the Retained Professionals may be paid 80% of fees incurred and 100% of expenses on a monthly basis.  Id.

## III.    LEGAL STANDARDS

### A.    <u>Reasonableness</u>

7.       Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

8.       To determine reasonableness, Section 330(a)(3) instructs that

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> a.   the time spent on such services;
>
> b.   the rates charged for such services;
>
> c.   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

Case 1-20-10322-CLB,    Doc 1806,    Filed 06/23/22,    Entered 06/23/22 19:20:47,    Description: Main Document  , Page 3 of 32

d. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e. with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

f. whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

To determine "reasonable compensation," bankruptcy courts are guided by, among other things, the Guidelines. See In re Value City Holdings, Inc., 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of the Bankruptcy Code, requests for professional compensation must also conform with the Bankruptcy Rules, UST Fee Guidelines.") (footnotes omitted); Brous, 370 B.R. at 569, n.8. (adopting the Guidelines).

9. Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

10. Each applicant bears the burden of proving the reasonableness of its fees and expenses sought. Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

[4]

11.     If an applicant fails to sustain its burden on reasonableness, a court may properly

deny the application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir.

1988).  Similarly, a court may reduce a professional's fees or expenses when they are

disproportionate to the benefit to the estate, even if it already has approved the professional's

retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman Clothing Co.,

49 F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253,

262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and

inadequately detailed expenses).

12.     The Court has an independent burden to review fee applications "lest

overreaching . . . professionals drain [the estate] of wealth which by right should inure to the

benefit of unsecured creditors."  Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg.

Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City,

436 B.R. at 305.  Accordingly, courts serve a vitally important gate-keeping role in enforcing the

Code's requirements that only reasonable fees be approved and paid as well as maintaining

public confidence in the bankruptcy system itself.  In re Temple Retirement Community, Inc.,

97 B.R. 333, 337 (Bankr. W.D. Tex. 1989).  "[T]he judiciary should retain control of fees, given

the sensitivities they generate and the need to promote public confidence in the system."  In re

Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

### B.     Vague Time Entries

13.     In addition, time entries may not be vague.  Each Retained Professional has the

burden of proving the reasonableness of its fee request; accordingly, each applicant must provide

specific and detailed time records.  To that end, the Guidelines require:

> . . . Time entries for telephone calls, letters, and other communications should give
> sufficient detail to identify the parties to and the nature of the communication. Time

entries for court hearings and conferences should identify the subject of the hearing or conference.

See Guidelines, (b)(4)(v).

14.     In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific, and the records must clearly identify each discrete task billed.  Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also Bennett Funding, 213 B.R. at 244 ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.").  Such vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible." In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

15.     Instead of embarking on a treasure hunt to determine what services were performed on a specific date, the time entries submitted should allow the Court and a reviewer to determine "the legal issues involved, the difficulties of the issues, and the resolution or results obtained." Id.  References to telephone calls that do not make clear who the call was with or the subject matter discussed, preparation of memoranda of law that do not indicate the legal issues involved, email communications without a description of the substance of the communications and the recipients of such communications, and the review of documents without providing a description of the document reviewed are all examples of vague time entries that make a fair evaluation of the work done and its reasonableness impossible.  See Id.; CCT, 2010 WL3386947, *7 (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying the

subject matter, and referring to vague description such as "work on fee application" or "attention to Vlahos's request"); In re Fibermark, Inc., 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006); In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009) ("Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed.").

## C. Overhead and Other Administrative Activities

16.     When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skills. See, e.g., Fibermark, 349 B.R. at 396–97 ("The Court specifically considers where the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate. Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.").

17.     Accordingly, many courts have taken the position that tasks that are clerical in nature and that are appropriate for office staff, which is considered part of a professional's overhead, may not be billed to the estate. Id. (concluding that non-compensable administrative activities include tasks such as "mailing or delivering papers; photocopying; word processing, including but not limited to creating templates, adding pages to various stipulations, formatting, creating spreadsheets, scanning and saving files into the firm's computer system, creating and revising charts, inserting case numbers into orders and printing documents; organizing files; maintaining an internal calendar; checking for docket updates; updating a master service list; creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney; and making travel arrangements"); see also In re Tan, Lie Hung & Mountain States Investments,

LLC, 413 B.R. 851, 862 (Bankr. D. Or. 2009) (holding that reductions were warranted in compensation sought by Chapter 11 trustee's attorneys based upon their improper billing, at paralegal rates, for clerical tasks such as compiling and processing data for the electronic filing of various motions and other documents); Hudson, 364 B.R. at 881 (holding that photocopying, organizing documents, and assembling exhibits constituted clerical tasks included in the firm's overhead); In re Dimas, LLC, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services performed by professionals which were clerical in nature, such as indexing, organizing and copying documents, conducting PACER searches to locate an order or other pleading, uploading pleadings to CM-ECF, and filing pleadings); In re Market Resources Dev., 320 B.R. 841, 846 (Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents, printing, and copying were non-compensable overhead); In re Joseph Charles & Associates, Inc., 295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing of an objection fell within the purview of clerical duties which were non-compensable); In re Castorena, 270 B.R. 504, 516 (Bankr. D. Idaho 2001) ("Lawyers, or paralegals for that matter, may not charge professional rates for clerical functions").

18.     Word processing is also "a clerical service regardless of who performs it." Bennett Funding, 213 B.R. at 428; The Guidelines, 4(b)(5)(vii).  As an overhead expense, word processing cannot be billed to the client.  Moreover, time spent by a firm's library staff is considered overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting that debtor's counsel use of librarian was "overhead" and was not properly charged to the estate); In re First Software Corp., 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the compensation for research performed by a librarian).  A court should therefore deny fees associated with clerical tasks.

### D.     **Preparation of Fee Applications**

19.     While the United States Trustee acknowledges the allowance of a reasonable

amount of time for fee application preparation under the Bankruptcy Code, the fees related to

such task should be limited to the preparation of the actual fee application and should not

encompass the review and correction of bills and response to parties in interest to inquiries or

objections raised with respect to the fee applications.  Said differently, the Bankruptcy Code does

not give professionals carte blanche to charge debtors' estates for unreasonable fees to prepare

fee applications.  As the court in In re Computer Learning Centers, Inc., held:

> [T]his does not mean that every aspect of preparing a fee application is
> compensable. In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 483–88
> (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each
> aspect for purposes of compensation under 11 U.S.C. §330.  It holds that those
> portions of the billing process common to billing both bankruptcy clients and non-
> bankruptcy clients are not compensable under §330 because they are part of the
> professional's overhead.  They are not separately charged to non-bankruptcy
> clients and no additional effort is required to complete them for a bankruptcy
> client.  For example, maintaining time records does not require additional effort.
> Lawyers and accountants maintain the same time records in a non-bankruptcy
> matter as in bankruptcy matters.  Nor do lawyers or accountants charge for
> preparing their bills.  Bills must be prepared in non-bankruptcy matters as well as
> bankruptcy matters.  There may be some additional effort in putting the time
> records into the format required by the court.  For example, the court requires
> time records to be maintained chronologically by task.  While this may sometimes
> differ from the format of a nonbankruptcy bill, the additional effort is not
> generally significant if the records are initially properly set-up.  Time records are
> almost universally maintained on computers with software that shows multiple
> formats, one of which will usually satisfy the bankruptcy requirements.  "A
> computer billing package used by a professional that does not retrieve information
> in a format compatible with bankruptcy requirements and requires revisions to
> rectify the inadequacies, is not a deficiency the estate should pay for. This is
> especially true for professionals who regularly practice in this court and regularly
> prepare fee applications. Only those aspects of preparing a bankruptcy fee
> application that require additional-not merely different-efforts are compensable
> under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Group

Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9)

("'[T]he review and editing of time records – as opposed to fee applications – is not compensable.'"). Accordingly, billing a debtor's estate for time spent reviewing the firm's time entries to ensure compliance with the Guidelines imposed by case law, the Court, and the United States Trustee as well as handling administrative matters in connection with billing for the engagement should not be compensable.

### E. "Lumping" or Block Billing

20. According to the Guidelines, billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate. See Guidelines at (b)(4)(v). Moreover, the Guidelines provide that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." Id. The Guidelines only permit "lumping" where the aggregate time does not exceed a half-hour. Id.

21. Recording multiple tasks as one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. See Baker, 374 B.R. at 494 (citations omitted) ("A professional is required to bill each task separately. That way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task."). As a result of "lumping" time, the "timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable." Brous, 370 B.R. at 576. Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. See, e.g., Baker, 374 B.R. at 496 (deducting 20% from the requested fees for

[10]


Case 1-20-10322-CLB, Doc 1806, Filed 06/23/22, Entered 06/23/22 19:20:47,
Description: Main Document , Page 10 of 32

improper block billing); see also, In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes for each "lumped" entry, irrespective of the aggregate time billed for that entry); CCT, 2010 WL 3386947at *7 (allowing only 30 minutes of time for lumped entries).

### F.    Actual and Necessary Expenses

22.    Under Section 330(a)(1)(B), only documented expenses that are actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398. Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686–87 (Bankr. E.D.N.Y. 1998).

### G.    Interim Compensation

23.    Interim compensation to professionals, as reflected in Section 331, finds its origins in the equity powers of the bankruptcy court.  In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987).  Therefore, the Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications.  Id.

24.    In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court."  Id.  Because the pending Applications are interim in nature, the timing of any payments is also within the

parameters of the Court's discretion.  Id.  Furthermore, courts have discretion to defer ruling on any or all of the Applications, until the time for final applications is proper.  In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

25.     Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation.  See Bennett Funding, 213 B.R. at 244.  At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award."  Child World, 185 B.R. at 17. Section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation."  Id.  Thus, the statute "authorizes the award of interim compensation, but does not mandate it."  In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); see also Barron, 73 B.R. at 814 (noting that Congressional intent underlying Section 331 "was only to give officers of the estate an opportunity to apply for reimbursement.") (emphasis in original).

## IV.    OBJECTIONS AND COMMENTS

The United States Trustee has reviewed the fee applications filed by the following Retained Professionals and has no objections to their applications:  Phoenix Management Services, LLP, ECF Doc. No. 1669; Gibson, McAskill & Crosby, LLP, ECF Doc. No. 1670; Chelus, Herdzik, Speyer & Monte P.C., ECF Doc. No. 1671; The Tucker Group, LLC, ECF Doc. No. 1674; Insurance Archaeology Group, ECF Doc. No. 1675; and Bonadio & Co., LLP, ECF Doc. No. 1676.

The United States Trustee has limited objections to the following fee applications:

### A.    Application of Bond, Schoeneck & King, PLLC ("BSK")

BSK, Counsel for the Diocese, seeks an allowance of fees aggregating $694,027.50 and reimbursement of expenses totaling $3,879.54 for its Fourth Fee Period (the time period from

[12]

September 1, 2021 to January 31, 2022). ECF Doc. No. 1673. According to BSK's Retention

Application, prior to the Petition Date, the Debtor paid BSK "$442,908.19 for legal services

rendered in connection with financial restructuring matters and work associated with the

preparation of this Chapter 11 Case." See ECF Doc. No. 183, ¶ 13.

The United States Trustee believes that BSK has exercised good billing judgment overall

for a case of this size and has mostly minimized duplication of efforts. However, the United

States Trustee has identified a number of time entries reflecting multiple professionals appearing

in court together, attending conferences together and seemingly attending to the same matters.

While some of these appear to be reasonable activities, without further explanation and/or

justification, it appears that having multiple professionals appear for and bill for the same matters

may be objectionable in some instances.

Set forth below, are time entries illustrative of duplicate billing. The United States

Trustee understands that some meetings warrant multiple attorney attendance, perhaps even more

than two. The United States Trustee believe a voluntary disallowance of a portion of BSK's fees

will address its concerns regarding duplication of appearances and/or efforts.

| Multiple Professionals: Appearances | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount | Subtotal |
| 11/17/21 | Participated in court hearings concerning Rule 16 conference and motion referring matters to mediation. (Exhibit C, pages 7-8 of 54) | S.A. Donato | 1.50 | 765.00 | 2,760.00 |
| | | B.J. Butler | 1.50 | 645.00 | |
| | | G.T. Walter | 1.50 | 630.00 | |
| | | C.J. Sullivan | 1.50 | 720.00 | |
| 01/28/22 | Participated in court status conference regarding mediation procedures. (Exhibit E, pages 24-25 of 71) | S.A. Donato | 0.80 | 408.00 | 1,184.00 |
| | | B.J. Butler | 0.80 | 344.00 | |
| | | C.J. Sullivan | 0.90 | 432.00 | |
| | | **Total:** | 8.50 | 3,944.00 | $3,944.00 |

Given that BSK attorneys regularly and routinely participate in telephone conferences

with each other, the need for multiple professionals participating in telephone conferences with

Committee Counsel and/or with Diocese representatives is not readily apparent.

| Multiple Professionals – Conference Calls with Committee Counsel | | | | | |
|---|---|---|---|---|---|
| **Date** | **Description** | **Timekeeper** | **Hours** | **Amount** | **Subtotal** |
| 09/13/21 | Participated in weekly update conference call with counsel for Committee regarding mediation issues and settlement negotiations. (Exhibit A, page 19 of 48) | SAD | .60 | 297.00 | 804.00 |
| | Participated in status call with Committee counsel to discuss mediation issues and settlement negotiations. (Exhibit A, page 19 of 48) | CJS | .60 | 276.00 | |
| | Conferred with Committee counsel regarding mediation issues and settlement negotiations. (Exhibit A, page 19 of 48) | GTW | .60 | 231.00 | |
| 09/23/21 | Participated in weekly update conference call with counsel for Creditors' Committee regarding Rule 16 conference, discovery updates and Lipsitz firm injunction issues and Parish stipulation. (Exhibit A, page 20 of 48) | SAD | .30 | 148.50 | 402.00 |
| | Participated in telephone conference with Committee counsel regarding Rule 16 conference, discovery updates and Lipsitz firm injunction issues and Parish stipulation. (Exhibit A, page 20 of 48) | CJS | .30 | 138.00 | |
| | Conferred with Committee counsel regarding Rule 16 conference, discovery updates and Lipsitz firm injunction issues and Parish stipulation. (Exhibit A, page 19 of 48) | GTW | .30 | 115.50 | |
| 12/06/21 | Participated in weekly update conference call with counsel for Creditors' Committee regarding mediator selection, discovery and claim review issues. (Exhibit D, page 21 of 52) | SAD | .40 | 204.00 | 564.00 |
| | Participated in telephone conference with Committee counsel regarding case status, mediator selection, discovery and claim review issues. (Exhibit D, page 21 of 52) | CJS | .40 | 192.00 | |
| | Conferred with Committee counsel regarding case status, mediation and discovery issues. (Exhibit D, page 21 of 52) | GTW | .40 | 168.00 | |
| 12/20/21 | Participated in weekly update conference call with counsel for Creditors' Committee regarding Good Shepherd stay extension issues, mediator selection and insurance adversary litigation updates. (Exhibit D, page 21 of 52) | SAD | .30 | 153.00 | 423.00 |
| | Participated in status call with Committee counsel regarding Good Shephard stay extension, mediator selection and insurance adversary. (Exhibit D, page 22 of 52) | CJS | .30 | 144.00 | |
| | Conferred with Committee counsel regarding mediator and other case matters. (Exhibit D, page 21 of 52) | GTW | .30 | 126.00 | |
| 01/03/22 | Participated in weekly update conference call with counsel for Creditors' Committee regarding mediator appointment, insurance litigation and discovery updates. (Exhibit E, page 38 of 71) | SAD | .40 | 204.00 | 564.00 |
| | Participated in telephone conference with Committee counsel regarding case status, mediator | CJS | .40 | 192.00 | |

| Multiple Professionals – Conference Calls with Committee Counsel | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount | Subtotal |
| | appointment, insurance litigation and discovery updates. (Exhibit E, page 38 of 71) | | | | |
| | Participated in call with Committee counsel to discuss mediator appointment, discovery updates, insurance litigation and case status. (Exhibit E, page 37 of 71) | GTW | .40 | 168.00 | |
| 01/31/22 | Participated in weekly status update conference call with counsel for Committee regarding mediation, discovery and business operations. (Exhibit E, page 38 of 71) | SAD | .40 | 204.00 | 564.00 |
| | Participated in telephone conference with Committee counsel regarding case status, mediation and discovery issues. (Exhibit E, page 38 of 71) | CJS | .40 | 192.00 | |
| | Conferred with Committee counsel to discuss business operations, discovery and mediation issues. (Exhibit E, page 38 of 71) | GTW | .40 | 168.00 | |
| | | | | Total: | $3,321.00 |

| Multiple Professionals – Conference Calls with Diocese Representatives | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount | Subtotal |
| 09/01/21 | Participated in weekly status update conference call with Diocese representatives regarding claims review updates, Lipsitz litigation, insurance adversary and discovery issues. (Exhibit A, page 30 of 48) | SAD | .70 | 346.50 | 938.00 |
| | Participated in telephone conference with Diocese representatives regarding claims review updates, Lipsitz litigation and discovery issues. (Exhibit A, page 30 of 48) | CJS | .70 | 322.00 | |
| | Participated in telephone conference with Diocese representative regarding claims review updates, discovery, Lipsitz litigation and insurance adversary proceeding. (Exhibit A, page 31 of 48) | GTW | .70 | 269.50 | |
| 09/08/21 | Participated in weekly update conference call with Diocese representatives regarding claim review updates, insurance adversary and discovery updates. (Exhibit A, page 32 of 48) | SAD | .80 | 396.00 | 1,072.00 |
| | Participated in telephone conference with Diocese representatives regarding claim review updates, discovery updates and insurance adversary proceeding. (Exhibit A, page 33 of 48) | CJS | .80 | 368.00 | |
| | Participated in telephone conference with Diocese representatives regarding claim review updates, discovery updates and insurance adversary proceeding. (Exhibit A, page 32 of 48) | GTW | .80 | 308.00 | |
| 09/15/21 | Participated in weekly update conference call with Diocese representatives regarding insurance adversary issues, claim review updates, discovery | SAD | .80 | 396.00 | 1,072.00 |

| Multiple Professionals – Conference Calls with Diocese Representatives | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount | Subtotal |
| | and business operations. (Exhibit A, page 33 of 48) | | | | |
| | Participated in telephone conference with Diocese representatives regarding insurance adversary issues, claim review updates, discovery and business operations. (Exhibit A, page 33 of 48) | CJS | .80 | 368.00 | |
| | Participated in telephone conference with Diocese representatives regarding insurance adversary issues, claim review updates, discovery and business operations. (Exhibit A, page 33 of 48) | GTW | .80 | 308.00 | |
| 09/22/21 | Participated in weekly update conference call with Diocese representatives regarding insurance adversary proceeding, discovery updates and claim review process. (Exhibit A, page 35 of 48) | SAD | .80 | 396.00 | 1,072.00 |
| | Participated in telephone conference with Diocese representatives regarding insurance adversary proceeding, discovery updates and claim review process. (Exhibit A, page 35 of 48) | CJS | .80 | 368.00 | |
| | Participated in telephone conference with Diocese representatives regarding insurance adversary proceeding, discovery updates and claim review process. (Exhibit A, page 35 of 48) | GTW | .80 | 308.00 | |
| 09/29/21 | Participated in weekly update conference call with Diocese representatives regarding Lipsitz firm's preliminary injunction hearing results, Rule 16 conference results, business operations and update concerning Attorney General litigation and claim review. (Exhibit A, page 37 of 48) | SAD | 1.10 | 544.50 | 1,474.00 |
| | Participated in telephone conference with Diocese representatives regarding Lipsitz firm's preliminary injunction hearing results, Rule 16 conference results, business operations and update concerning Attorney General litigation and claim review. (Exhibit A, page 36 of 48) | CJS | 1.10 | 506.00 | |
| | Participated in telephone conference with Diocese representatives regarding Lipsitz firm's preliminary injunction hearing results, Rule 16 conference results, business operations and update concerning Attorney General litigation and claim review. (Exhibit A, page 36 of 48) | GTW | 1.10 | 423.50 | |
| 10/06/21 | Participated in weekly update meeting with Diocese representatives regarding business operations, Rule 16 conference and claim review. (Exhibit B, page 25 of 44) | SAD | .70 | 357.00 | 987.00 |
| | Participated in telephone conference with Diocese regarding status and strategy, business operations, claims review and Rule 16 | CJS | .70 | 336.00 | |

[16]

| Multiple Professionals – Conference Calls with Diocese Representatives | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount | Subtotal |
| | conference. (Exhibit B, page 25 of 44) | | | | |
| | Participated in telephone conference with Diocese representative regarding case status and updates, business operations and claims review process. (Exhibit B, page 25 of 44) | GTW | .70 | 294.00 | |
| 10/13/21 | Participated in weekly status update conference call with Diocese representatives. (Exhibit B, page 3 of 44) | SAD | 1.0 | 510.00 | 1,410.00 |
| | Participated in telephone conference with Diocese representatives regarding case status and updates. (Exhibit B, page 3 of 44) | CJS | 1.0 | 480.00 | |
| | Participated in telephone conference with Diocese representatives to discuss case status and updates. (Exhibit B, page 3 of 44) | GTW | 1.0 | 420.00 | |
| 10/20/21 | Participated in Diocese update call regarding status and strategy. (Exhibit B, page 3 of 44) | CJS | 1.0 | 480.00 | 900.00 |
| | Participated in call with Diocese representatives regarding case status, strategy and updates. (Exhibit B, page 3 of 44) | GTW | 1.0 | 420.00 | |
| 10/27/21 | Participated in weekly update conference call with Diocese regarding claim review updates, insurance issues and business operations. (Exhibit B, page 30 of 44) | SAD | .60 | 306.00 | 594.00 |
| | Participated in telephone conference with Diocese regarding case status, business operations, and claims review. (Exhibit B, page 31 of 44) | CJS | .60 | 288.00 | |
| 11/3/21 | Participated in weekly update conference call with Diocese representatives concerning insurance adversary issues, claim review updates and mediation issues. (Exhibit C, page 31 of 54) | SAD | .80 | 408.00 | 1,128.00 |
| | Participated in telephone conference with Diocese representatives regarding case status and strategy, insurance adversary issues, claim review updates and mediation issues. (Exhibit C, page 30 of 54) | CJS | .80 | 384.00 | |
| | Conferred with Diocese representatives regarding mediation issues, insurance adversary proceeding and claim review updates. (Exhibit C, page 30 of 54) | GTW | .80 | 336.00 | |
| 12/08/21 | Participated in weekly update conference call with Diocese regarding mediation, discovery, BSA and claim review updates. (Exhibit D, page 32 of 52) | SAD | 1.80 | 918.00 | 2,538.00 |
| | Participated in conference call with Diocese regarding status and strategy, mediation, discovery and claim updates. (Exhibit D, page 32 of 52) | CJS | 1.80 | 864.00 | |
| | Participated in call with Diocese representatives regarding case update and strategy, mediation and discovery. (Exhibit D, page 32 of 52) | GTW | 1.80 | 756.00 | |

| Multiple Professionals – Conference Calls with Diocese Representatives | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount | Subtotal |
| 12/15/21 | Participated in weekly update conference call with Diocese regarding business operations, mediation and litigation updates. (Exhibit D, page 33 of 52) | SAD | 1.50 | 765.00 | 1,485.00 |
| | Participated in weekly update conference call with Diocese regarding business operations, mediation and litigation updates. (Exhibit D, page 33 of 52) | CJS | 1.50 | 720.00 | |
| 01/12/22 | Participated in weekly update conference call with Diocese regarding mediation updates, discovery updates and business operation issues. (Exhibit E, page 53 of 71) | SAD | 1.0 | 510.00 | 1,480.00 |
| | Participated in telephone conference with Diocese regarding case status and strategy, mediation updates, discovery updates and business operational issues. (Exhibit E, page 53 of 71) | CJS | 1.0 | 490.00 | |
| | Attended telephonic status conference with Diocese and counsel to discuss case status, mediation updates and discovery updates. (Exhibit E, page 53 of 71) | GJM | 1.0 | 480.00 | |
| | | | | Total: | $16,150.00 |

BSK's Fourth Application for Interim Compensation includes 20 entries totaling 11.7 hours and fees of $5,226.00 for matters related to case monitoring, document review and analysis of the decision on third party releases in In re: Purdue Pharma, L.P., et al., Chapter 11 Case No. 19-23649-RDD, filed in the Southern District of New York. BSK's Application also contains 17 entries totaling 20.3 hours and fees of $6,184.00 for researching, drafting memorandum and analyzing the issues of third-party releases and non-consensual releases. Together, these 37 time entries total 32 hours and $11,410.00 in fees.

BSK represents the debtors in the following case: In re The Diocese of Rochester, Chapter 11 Case No. 19-20905-PRW, filed in the Western District of New York, and In re The Roman Catholic Diocese of Syracuse, New York, Chapter 11 Case No 20-30663-WAK, filed in the Northern District of New York.

The issues and time expended researching third party and non-consensual releases are relevant to all three cases in which BSK represents The Diocese of Buffalo, Rochester and Syracuse. Accordingly, the time billed should be equitably allocated between these three cases.

| Purdue Pharma | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 12/17/21 | Analyzed Purdue decision on third party releases. (Exhibit D, page 42 of 52) | GTW | 1.10 | 462.00 |
| 12/17/21 | Analyzed Purdue Pharma appellate decision regarding channeling injunction enforcement issues. (Exhibit D, page 42 of 52) | SAD | .30 | 153.00 |
| 12/18/21 | Continued analysis of Purdue Pharma appellate decision regarding channeling injunction enforceability. (Exhibit D, page 43 of 52) | SAD | .20 | 102.00 |
| 12/19/21 | Analyzed impact of Purdue decision on third party releases on Diocese reorganization strategy. (Exhibit D, page 43 of 52) | GTW | .70 | 294.00 |
| 01/03/22 | Participated in telephone conference with Diocese regarding mediator appointment decision, business operations, discovery updates and review of Purdue Pharma appeal issues. (Exhibit E, page 52 of 71) | SAD | .40 | 204.00 |
| 01/05/22 | Participated in weekly update conference call with Diocese regarding mediation, business operations, Purdue Pharma issues, proof of claim sharing issues and claim review updates. (Exhibit E, page 53 of 71) | SAD | 2.20 | 1,122.00 |
| 01/05/22 | Participated in telephone conference with Diocese regarding mediation, business operations, Purdue Pharma issues, proof of claim sharing issues and claim review updates. (Exhibit E, page 53 of 71) | CJS | 2.20 | 1,056.00 |
| 01/02/22 | Analyzed District Court decision regarding Purdue Pharma plan confirmation. (Exhibit E, page 58 of 71) | SAD | .40 | 204.00 |
| 01/02/22 | Revised draft memo summarizing District Court decision regarding Purdue Pharma plan confirmation. (Exhibit E, page 58 of 71) | SAD | .20 | 102.00 |
| 01/02/22 | Prepared correspondence to Attorney Eaton regarding follow-up issues concerning draft memo summarizing District Court decision regarding Purdue Pharma plan confirmation.(Exhibit E, page 59 of 71) | SAD | .10 | 51.00 |
| 01/03/22 | Reviewed summary of Purdue Pharma decision. (Exhibit E, page 59 of 71) | CJW | .20 | 96.00 |
| 01/03/22 | Consulted with Attorney Eaton regarding Purdue Pharma court decision issues. (Exhibit E, page 59 of 71) | SAD | .10 | 51.00 |
| 01/03/22 | Revised memorandum to Diocese summarizing Purdue Pharma court decision. (Exhibit E, page 59 of 71) | SAD | .40 | 204.00 |
| 01/06/22 | Consulted with Attorney Schaeffer regarding impact of Purdue Pharma decision on third party releases. (Exhibit E, page 60 of 71) | GTW | .30 | 126.00 |
| 01/19/22 | Analyzed Purdue Pharma third party release dispute. (Exhibit E, page 62 of 71) | NDB | .80 | 216.00 |
| 01/25/22 | Reviewed and monitored Purdue third party release dispute.(Exhibit E, page 64 of 71) | NDB | .80 | 216.00 |

[19]

| Purdue Pharma | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 01/26/22 | Reviewed Amicus cure issue regarding Purdue Pharma. (Exhibit E, page 64 of 71) | SAD | .20 | 102.00 |
| 01/26/22 | Participated in telephone conference with Attorney Basalyga regarding potential amicus brief in Purdue Pharma action. (Exhibit E, page 64 of 71) | CJS | .30 | 144.00 |
| 01/26/22 | Participated in conference call with Attorneys Slome and Sullivan regarding Purdue Pharma Amicus. (Exhibit E, page 64 of 71) | NDB | .30 | 81.00 |
| 01/27/22 | Reviewed Purdue Pharma decision and evaluated possible amicus brief strategy. (Exhibit E, page 64 of 71) | CJS | .50 | 240.00 |
| | | Total: | 11.7 | $5,226.00 |

| Third-Party Releases/Non-Debtor Discharges | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 09/01/21 | Participated in Zoom conference with USCCB representatives and other diocesan counsel with regard to bankruptcy bill regarding non-debtor discharges. (Exhibit A, page 44 of 48) | DKS | 1.0 | 210.00 |
| 09/01/21 | Participated in telephone conference with USCCB counsel regarding Non-Debtor Release Act. (Exhibit A, page 44 of 48) | CJS | .50 | 230.00 |
| 09/01/21 | Reviewed correspondence and background documentation concerning Non-Debtor Release Prohibition Act issues. (Exhibit A, page 44 of 48) | SAD | .30 | 148.50 |
| 09/01/21 | Participated in conference call with USCCB, NYSCC, and Attorney Sullivan regarding proposed revision to bankruptcy law. (Exhibit A, page 44 of 48) | JAS | 1.50 | 315.00 |
| 09/23/21 | Conducted research regarding constitutionality of non-debtor releases. (Exhibit A, page 45 of 48) | NDB | 2.10 | 504.00 |
| 10/25/21 | Reviewed memorandum regarding status of non-debtor release act. (Exhibit B, page 41 of 44) | CJS | .30 | 144.00 |
| 12/17/21 | Researched regarding third party non-consensual releases in bankruptcy plan. (Exhibit D, page 42 of 52) | JDE | 1.40 | 469.00 |
| 12/17/21 | Researched recent non-debtor release precedent to address status of law regarding same. (Exhibit D, page 42 of 52) | SCT | 1.70 | 714.00 |
| 12/19/21 | Continued research regarding third party non-consensual releases in bankruptcy plan. (Exhibit D, page 43 of 52) | JDE | .40 | 134.00 |
| 12/19/21 | Drafted memorandum related to non-consensual third party releases in a bankruptcy plan. (Exhibit D, page 43 of 52) | JDE | 2.30 | 770.50 |
| 12/21/21 | Continued drafting memorandum related to non-consensual third party releases in a bankruptcy plan. (Exhibit D, page 43 of 52) | JDE | .70 | 234.50 |
| 12/22/21 | Finalized draft memorandum regarding non-consensual third party releases in bankruptcy plans. (Exhibit D, page 43 of 52) | JDE | .80 | 268.00 |
| 01/03/22 | Revised memorandum regarding third party releases for Diocese review. (Exhibit E, page 59 of 71) | JDE | 1.10 | 368.50 |

[20]

| Third-Party Releases/Non-Debtor Discharges | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 01/03/22 | Researched issues related to third party releases in plans. (Exhibit E, page 59 of 71) | ASR | 2.90 | 783.00 |
| 01/19/22 | Analyzed Ascena third party release dispute. (Exhibit E, page 62 of 71) | NDB | 1.10 | 297.00 |
| 01/24/22 | Analyzed Ascena third party release dispute in Chapter 11 case. (Exhibit E, page 63 of 71) | NDB | 1.40 | 378.00 |
| 01/25/22 | Reviewed and monitored Purdue third party release dispute. (Exhibit E, page 64 of 71) | NDB | .80 | 216.00 |
| | | Total: | 20.3 | $6,184.00 |

Based on the foregoing, the United States Trustee suggests that a voluntary downward adjustment to the BSK Application in the amount of $7,500 is warranted and reasonable.

### B. Application of Connors, LLP ("Connors")

Connors, Special Counsel for the Debtor, seeks an allowance of fees aggregating $438,510.00 and reimbursement of expenses totaling $26,077.60 for its Fourth Fee Period (the period of time from August 1, 2021 through January 31, 2022). See ECF Doc. No. 1677.

According to Connors' Retention Application, prior to the Petition Date, the Debtor engaged Connors to act as special litigation counsel with respect to claims made under New York State's Child Victims Act ("CVA") and with respect to certain subpoenas and "the Diocese anticipates it will need [Connors] to continue with these representations in the post-petition period." See ECF Doc. No. 352, ¶ 13.

The United States Trustee believes that Connors has exercised good billing judgment overall for a case of this size and has minimized duplication of efforts. However, the United States Trustee has identified certain time entries reflecting non-compensable services. Further, the United States Trustee notes certain mathematical errors in Connors' time entries.

The United States Trustee has identified the following entries totaling $280.00 that can be classified as overhead and are non-compensable:

| Non-Compensable Services - Overhead | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 08/02/2021 | Prepare documents for transfer to BSK (Exhibit A, page 12 of 24) | KKS | 1.10 | 110.00 |
| 10/12/2021 | Obtain proof of claim documents as requested by Randall D. White (Exhibit C, page 15 of 22) | KKS | 0.50 | 50.00 |
| 11/30/2021 | Work on review and redaction of documents for production (Exhibit D, page 23 of 23) | RMV | 1.20 | 120.00 |
| | | **Total:** | **2.80** | **$280.00** |

The United States Trustee has identified the following mathematical errors that result in a net reduction of fees in the amount of $90.00, as shown below:

| Mathematical Errors in Time Entries | | | | | | |
|---|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours Billed | Actual Time | Amount | Adjustment |
| 10/20/21 | (Misc) Communications with representatives of other Dioceses regarding pastoral support and priest wellness (.6); communications with Independent Review Board Chairman regarding same (.5); communications with investigators (.5). (Exhibit C, page 4 of 22) | LFQ | 2.60 | 1.60 | $650.00 | Reduce by $250.00 |
| 01/18/22 | (Misc) Communications with investigators and several attorneys for priests (.7); work on response to questions from auditors (1.5). (Exhibit F, page 4 of 5) | LFQ | 1.20 | 2.20 | $300.00 | Increase by $250.00 |
| 01/06/22 | Communications with bankruptcy attorneys and Independent Review Board Chairman to achieve agreement acceptable to Independent Review Board and to claimants that will allow for investigation to proceed without expense and delay of motion (.9); communications with attorneys for different priests regarding process of investigations (1.3). (Exhibit F, page 2 of 4) | LFQ | 2.40 | 2.20 | $600.00 | Reduce by $50.00 |
| 01/19/22 | Continue drafting/revising privilege log (1.7); prepare for and meet Randall D. White regarding privileged documents and preparation of privilege log (.9). (Exhibit E, page 2 of 4) | KER | 2.80 | 2.60 | $560.00 | Reduce by $40.00 |
| | | | | **Total net reduction:** | | **$90.00** |

Case 1-20-10322-CLB,  Doc 1806,  Filed 06/23/22,  Entered 06/23/22 19:20:47,
Description: Main Document , Page 22 of 32

The United States Trustee believes a voluntary downward adjustment of $370.00 in the Connors Application is warranted and reasonable.

### C. **Application of Hodgson Russ, LLP ("Hodgson Russ")**

Hodgson Russ, Special Counsel for the Debtor, seeks an allowance of fees aggregating $12,127.20 and reimbursement of expenses totaling $1,394.98 for its Third Fee Period (the time period from September 1, 2021 through January 31, 2022).

The United States Trustee has reviewed the *Third Interim Fee Application of Hodgson Russ LLP,* ECF Doc. No. 1672 ("Hodgson's Application") and does have limited objections to its allowance in full.

The United States Trustee calls the following time entries to the Court's attention:

| Date | Description | Timekeeper | Hours | Amount |
|---|---|---|---|---|
| 12/06/21 | Received Omnibus Limited Objection of the UST regarding interim compensation application and subsequent telephone conference with J. Allen regarding same. (Exhibit A, page 31 of 32) | GMG | .30 | 142.50 |
| 12/28/21 | Telephone calls and extensive emails with accounting department and GMG regarding application of fees and costs awarded in the Second Interim Fee Applications across multiple open matters and partial reduction of fees, along with fees from previous time entries. (Exhibit A, page 32 of 32) | CSN | .50 | 90.00 |
| | | | **Total:** | **$232.50** |

These time entries appear to reflect (i) time spent addressing the United States Trustee's limited objection to Hodgson Russ' second interim fee application and (ii) Hodgson Russ' attending to internal issues as to the application of payment.

Compensation sought in connection with defending fee applications, though, should be disallowed in its entirety as time expended benefits the applicant only and not the estate. In its decision in Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2169 (2015), the Supreme Court affirmed the Fifth Circuit's denial of fees to a debtor's counsel for defending its fees from objections. In ASARCO, the Supreme Court ruled that in section 330(a) of the Bankruptcy Code

Congress did not depart from the American Rule that absent a statute or contractual provision providing otherwise, each litigant pays his or her own attorney's fees, win or lose. Id. at 2164. Thus, the Supreme Court held that the fees incurred in defending the debtor's counsel's fee application were not compensable from the estate. Id. at 2169.

Further, time spent by Hodgson Russ on the internal allocation of fee issues does not benefit the estate and should not be compensated by the estate.

The United States Trustee suggests that a downward adjustment of $232.50 would be appropriate for Hodgson Russ' Application.

### D. Application of Blank Rome, LLP ("Blank Rome")

Blank Rome, Special Counsel for the Diocese, seeks an allowance of fees aggregating $280,329.12 for its Fourth Fee Period (the period of time from September 1, 2021 through January 31, 2022) (ECF Doc. No. 1668). According to its retention application, Blank Rome did not receive a pre-petition retainer in connection with this Chapter 11 Case. See ECF Doc. No. 258, ¶ 10.

The United States Trustee believes that Blank Rome has exercised good billing judgment overall for a case of this size and has minimized duplication of efforts. However, the United States Trustee has identified the following entries that can be classified as overhead and are therefore non-compensable services:

| Non-Compensable Services - Overhead | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 09/30/21 | Pull the complaints listed in the most recent notice letters sent to insurers (Exhibit A, Page 7 of 41) | K. Rogers | 2.80 | 910.00 |
| 12/20/21 | Coordinate delivery of notice letters to excess insurers (Exhibit A, page 27 of 41) | H. Ahn | 0.30 | 124.74 |
| | | Total: | 3.10 | $1,034.74 |

The United States Trustee believes a downward adjustment to the Blank Rome Application in the amount of $1,034.74 is warranted and reasonable.

[24]

### E.  Application of Pachulski Stang Ziehl & Jones LLP ("PSZJ")

PSZJ, Counsel to the Official Committee of Unsecured Creditors for the Debtor, seeks allowance of fees aggregating $456,591.00, together with reimbursement for expenses in the amount of $6,563.65, for its Third Fee Period (the period of time from June 1, 2021 through January 31, 2022) (ECF Doc. No. 1680).  According to its retention application, PSZJ did not receive a pre-petition retainer in connection with this Chapter 11 Case. See ECF Doc. No. 195, Exhibit A annexed thereto (Declaration of James I. Stang, Esq.).

The United States Trustee believes that PSZJ has exercised good billing judgment overall for a case of this size.  However, the United States Trustee has identified the following entries that can be classified as overhead and are therefore non-compensable services:

| Non-Compensable Entries - Overhead | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Rate | Amount |
| 11/01/21 | Pull articles for TCC for Michaels re coverage. (Exhibit F, page 8 of 12) | IAWN | .70 | 700.00 | 490.00 |
| 11/16/21 | Coordinate filing of statement re mediation motion (.3) (Exhibit F, page 9 of 12) | LSC | .30 | 300.00 | 90.00 |
| 11/17/21 | Coordinate filing and service of statement re mediation (.3) (Exhibit F, page 9 0f 12) | LSC | .30 | 300.00 | 90.00 |
| 01/31/21 | Coordinate filing of objection to sell, serve same, and prepare/file certificate of service for same. (Exhibit G, page 7 of 14) | LSC | .90 | 300.00 | 270.00 |
| | | | | Total: | $940.00 |

Given that PSZJ attorneys regularly and routinely participate in telephone conferences with each other, the need for multiple professionals' appearance at hearings and status conferences is not readily apparent, at least not in each instance.  While the United States Trustee believes that PSZJ has exercised good billing judgment and minimized duplication of efforts, the following instances are noted:

| Multiple Professionals - Appearances | | | | | |
|---|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Rate | Amount | Total |
| 9/24/21 | Attend hearing regarding stay extension motion. (Exhibit D, page 8 of 13) | IDS | 2.50 | 700.00 | 1,750.00 | 3,765.50 |
| | Participate in hearing. (Exhibit D, page 8 of 13) | BMM | 2.90 | 695.00 | 2,015.50 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/17/21 | Attend hearing regarding mediation motion. (Exhibit F, page 8 of 12) | IDS | 1.70 | 700.00 | 1,190.90 | 2,372.40 |
| | Hearing on mediation motion and insurance status conference. (Exhibit F, page 8 of 12) | BMM | 1.70 | 695.00 | 1,181.50 | |
| 07/28/21 | Attend status conference AP. (Exhibit B, page 8 of 14) | IDS | .50 | 700.00 | 350.00 | 697.50 |
| | Participate in AP status conference. (Exhibit B, page 8 of 14) | BMM | .50 | 695.00 | 347.50 | |
| | **Total:** | | **9.8** | | | **$6,835.40** |

The United States Trustee believes a downward adjustment to the PSZJ Application in the amount of $3,000.00 is warranted and reasonable[1].

### F. Application of Gleichenhaus, Marchese & Weishaar, P. C. ("GMW")

GMW, Co-Counsel to the Official Committee of Unsecured Creditors for the Debtor, seeks an allowance of fees aggregating $127,129.00, together with reimbursement for expenses in the amount of $2,373.15, for its Third Fee Period (the period of time from June 1, 2021 through January 31, 2022) (ECF Doc. No. 1681). According to its retention application, GMW did not receive a pre-petition retainer in connection with this Chapter 11 Case. See ECF Doc. No. 296, Exhibit A annexed thereto (Declaration of Scott J. Bogucki, Esq.).

Prior to the COVID-19 pandemic, Committee Counsel without a physical presence in Buffalo routinely hired "local counsel" to assist with their representation of creditors' committees. Local counsel would appear in court on behalf of Committee Counsel, who routinely monitored court proceedings telephonically, but were not allowed to participate by telephone in hearings before Judge Bucki. This arrangement minimized travel and lodging expenses for Committee Counsel, which ultimately inured to the benefit of the debtor.

The COVID-19 pandemic resulted in the cessation of in-person court proceedings, and all parties have been allowed to appear and participate telephonically since March 2020, thus seemingly obviating the need for "local counsel". However, the UST recognizes that the

---

[1] See related discussion in the next section regarding PSZJ and GMW review of claims.

services provided by GMW are offered at substantially lower rates than those of PSZJ, resulting in savings to the Debtor that may ultimately benefit the unsecured creditors, the majority of which are claimants under New York State's Child Victim's Act.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Multiple Professionals/Duplicative Services – Appearances at Court and/or Teleconferences** | | | | | | |
| **Date** | **Description** | **Rate** | **Hours** | **Amount** | **Total** | |
| 07/28/21 | Appear for/attend pre-trial conference re critical dates and status of discovery process. (Exhibit B, page 2 of 3) | 230.00 | .60 | 138.00 | 369.00 | |
| | Appear for/attend pre-trial conference re discovery disputes et al. (Exhibit B, page 2 of 3) | 385.00 | .60 | 231.00 | | |
| 08/11/21 | Appear for/attend hearing on motion for insurance financing and other matters. (Exhibit C, page 4 of 6) | 230.00 | .30 | 69.00 | 184.50 | |
| | Appear for/attend hearing on Debtor's Motion for Insurance Premium Financing regarding missing line item entries for excess coverage policies. (Exhibit C, page 4 of 6) | 385.00 | .30 | 115.50 | | |
| 09/24/21 | Appear for/attend hearing re status of production, requests for mediation, Motion to Extend Preliminary Injunction et al. (Exhibit D, page 4 of 5) | 230.00 | 2.80 | 644.00 | 1722.00 | |
| | Appear for/attend hearing on retention of special counsel and extension of preliminary injunction. (Exhibit D, page 4 of 5) | 385.00 | 2.80 | 1078.00 | | |
| 09/30/21 | Communicate (within legal team) with State Court Counsel re discovery issues and litigation strategy. (Exhibit D, page 3 of 5) | 385.00 | .60 | 231.00 | 462.00 | |
| | Communicate (within legal team) participate in State Court Counsel teleconference re confidentiality protocol matters et al. (Exhibit D, page 3 of 5) | 385.00 | .60 | 231.00 | | |
| 10/19/21 | Communicate (within legal team) participate in State Court Counsel teleconference re breach of confidentiality agreement et al. (Exhibit E, page 2 of 3) | 385.00 | .20 | 77.00 | 123.00 | |
| | Communicate (within legal team) participate in state court counsel teleconference re breach of confidentiality agreement et al. (Exhibit E, page 2 of 3) | 230.00 | .20 | 46.00 | | |
| 10/28/21 | Communicate (with client) and State Court Counsel regarding the mediator resigning, replacement mediator, and concerns regarding the mediator selection process. (Exhibit E, page 2 of 3) | 230.00 | .90 | 207.00 | 553.50 | |
| | Communicate (with client) participate in Committee teleconference re mediator selection process, Connors breach of confidentiality, and other related matters. (Exhibit E, page 2 of 3) | 385.00 | .90 | 346.50 | | |
| 11/9/21 | Communicate (within legal team) regarding ongoing mediator issues, Parish expenditures, and Diocesan Review Board matters. (Exhibit F, page 2 of 3) | 230.00 | .60 | 138.00 | 369.00 | |
| | Communicate (within legal team) participate in State Court Counsel teleconference regarding mediation issues, proposed Parish expenditures, and issues related to the Diocesan Review Board. (Exhibit F, page 2 of 3) | 385.00 | .60 | 231.00 | | |
| | | | | **Total:** | **$3,783.00** | |

Nevertheless, the United States Trustee questions the need for multiple professionals from GMW and PSZJ to appear in Court together. Further, it is difficult to ascertain what discrete tasks have been allocated to GMW and whether GMW and PSZJ are attending to the same matters, resulting in duplicative billing. For example, GMW spent 197 hours and billed $55,535.00 from July through September 2021, for reviewing and analyzing proofs of claim, preparing memos and entering claims data into a spreadsheet.

PSZJ spent 285.40 hours and billed $130,608.00 for the same time period, July through September 2021, for claims review and analysis, reviewing and charting sex abuse claims, and updating spreadsheet regarding claims analysis. Without additional information regarding how GMW and PSZJ apportioned the tasks related to claims review and analysis, it is difficult to determine whether multiple professionals are billing for the same matters.

The United States Trustee assumes that PSZJ and GMW split the claim review work in a manner that avoided material duplication of work. However, in future fee applications it would be helpful if more detail is provided as to such joint projects.

The Application includes time billed related to the efforts of counsel to defend or resolve the United States Trustee's objection to the Second Interim Fee Application of GMW. The United States Trustee objects to the allowance of the following fee because these fees represent non-compensable entries for time spent by GMW in connection with the United States Trustee's prior objection to its second fee application.

| Non-Compensable – Defending Fee Application | | | | |
|---|---|---|---|---|
| Date | Description | Rate | Hours | Amount |
| 11/15/21 | Communicate (other external) telephone conference with J. Zubler (United States Trustee) regarding potential issues with Second Interim Fee Application. (Exhibit F, page 3 of 3) | 385.00 | .50 | 192.50 |
| | | Total: | .50 | $192.50 |

GMW seeks compensation from the estate for work done in connection with monitoring a matter in the Diocese of Rochester bankruptcy case. The time entries representing this work are as follows:

| Entries in Connection with In re The Diocese of Rochester | | | | |
|---|---|---|---|---|
| Date | Description | Rate | Hours | Amount |
| 07/08/21 | Review/analyze overview of Motions for Stay Relief and Committee Joinder filed in *In re The Diocese of Rochester* re mediation and insurance carrier litigation issues. (Exhibit B, page 2 of 3) | 385.00 | .80 | 308.00 |
| 07/08/21 | Review/analyze objections to stay relief filed in *In re The Diocese of Rochester* re mediation and carrier litigation issues. (Exhibit B, page 2 of 3) | 385.00 | .50 | 192.50 |
| 07/08/21 | Review/analyze Debtor's 9019 Motion and related pleadings filed in *In re The Diocese of Rochester* re insurance carrier litigation issues et al. (Exhibit B, page 2 of 3) | 385.00 | .70 | 269.50 |
| 07/09/21 | Appear for/attend hearing in *In re The Diocese of Rochester* re lift stay relief, 9019 settlement with insurance carrier, and mediator matters. (Exhibit B, page 2 of 3) | 385.00 | 1.80 | 693.00 |
| | | Total: | 3.8 | $1,463.00 |

However, it must be noted that PSZJ is counsel to the creditors' committee in the Diocese of Rochester bankruptcy case, in addition to being counsel to the Committee in this case. Mr. Scharf of PSZJ briefed and argued the motion in the Diocese of Rochester case referenced in GMW's timesheets.

It appears to the United States Trustee that GMW should not be charging the Debtor's estate for its work monitoring the motion PSZJ (which is also counsel to the Committee in this case) made and argued in the Diocese of Rochester case.

Unlike its First and Second Interim Fee Applications, the timesheets annexed to GMW's Third Application do not identify the professional performing the task. There appear to be numerous entries billed at the rate of $345.00 per hour, but this rate does not correspond with any of the professionals listed on GMW's Third Application, thus it is possible that the time billed at $345.00 should have been billed at a higher or a lower hourly rate. The Fee Application

should be amended to identify the professional providing the legal services, and to clarify the time entries billed at $345.00 per hour.

Subject to GMW making this amendment, the United States Trustee believes a $3,500 reduction in GMW's fees is warranted and reasonable.

### G. **Application of Jones Day**

Jones Day, Special Counsel for the Debtor, seeks an allowance of fees aggregating $499,869.00 and reimbursement of expenses totaling $8,251.23 for its Third Fee Period (the time period from September 1, 2021 through August 31, 2021). This is Jones Day's third interim fee application as the Debtor retained Jones Day effective as of December 1, 2020 pursuant to this Court's February 23, 2021 order. ECF Doc. No. 905. The Debtor retained Jones Day to represent it in an action brought against it by the Attorney General of the State of New York.

The United States Trustee has reviewed the *Third Interim Fee Application of Jones Day,* ECF Doc. No. 1678 ("Jones Day Application") and believes that Jones Day has exercised good billing judgment overall for a case of this size and has minimized duplication of efforts in most instances. However, the United States Trustee does have limited objections to Jones Day's requested allowance.

The United States Trustee has identified a number of client calls and conferences with the New York State Attorney General in which Jones Day partners participated. These occurred on September 1, 8, 24, 29 and 30; October 6; November 17; January 5, 6, 12 and 19. Without further explanation it is not clear that three Jones Day partners were needed for *each* call.

Further, Jones Day has time entries which pertain to addressing the United States Trustee's prior fee objections. These entries include:

| Time Entries Pertaining to Prior Fee Objections | | | | |
|---|---|---|---|---|
| Date | Description | Timekeeper | Hours | Amount |
| 12/06/21 | Review the U.S. Trustee's objections to Jones Day's fee applications and review e-mails from B. Thomson regarding a response to the same. (Invoice: 221400264, Page 7) | J D Goetz | .30 | 258.00 |
| 12/08/21 | Prepare for the hearing on interim fee applications, review e-mails regarding the U.S. Trustee's response to a proposal for resolution of the objections (0.50); attend hearing on interim fee applications (0.30); converse with B. Thomson regarding issues to address during the interim fee application hearing (0.50). (Invoice: 221400264, Page 7) | J D Goetz | 1.30 | 1,118.00 |
| 12/08/21 | Attend the interim fee hearing (0.30); calls with J. Goetz regarding the fee hearing (0.50); call with the U.S. Trustee's office regarding its fee objection (0.10); revise the summary of key points for the interim fee hearing (0.40); e-mails with Bond, Schoeneck & King regarding my conversation with the U.S. Trustee's office (0.20); draft and send a proposed order approving Jones Day's fee application (0.40). (Invoice: 221400264, Page 7) | B J Thomson | 1.90 | 1,026.00 |
| | | **Total:** | **3.5** | **$2,402.00** |

As discussed above in connection with the limited objection to the Hodgson Russ fee application, such time is not compensable by the estate.

The United States Trustee believes a downward adjustment to the Jones Day Application in the amount of $4,000.00 is warranted and reasonable.

## V.  <u>CONCLUSION</u>

WHEREFORE, the United States Trustee respectfully submits that the Court enter an order reducing the fees and expenses requested by the Retained Professionals as set forth herein; and granting such other and further relief as it may be deemed just and proper.

Dated: June 23, 2022
Buffalo, NY

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By: _/s/ Joseph W. Allen_
Joseph W. Allen, Esq.
Assistant United States Trustee
Jill M. Zubler, Esq.,
Trial Attorney
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202
Telephone: (716) 551-5541

[32]