# Exhibit A

Bidding Procedures Order

17963105.v4-7/18/24

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 1 of 54

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN REAL PROPERTY AT 711 KNOX ROAD, EAST AURORA, NEW YORK; (B) AUTHORIZING AND APPROVING THE FORM OF PURCHASE AGREEMENT; (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE; (D) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE OF AUCTION AND SALE HEARING; AND (E) GRANTING RELATED RELIEF

Upon consideration of the motion [Docket No. ___] (the "Motion")[1] filed by The Diocese of Buffalo, N.Y. (the "Diocese") for entry of an order pursuant to sections 105, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i)(a) approving bidding procedures in connection with the sale of certain real property located at 711 Knox Road, East Aurora, New York 14052 (the "Property"); (b) authorizing and approving the form of the proposed purchase agreement (the "Purchase Agreement") submitted by World Mission Society, Church of God a NJ Nonprofit Corporation (the "Stalking Horse Bidder"); (c) scheduling an auction (the "Auction") and the date and time of the hearing to approve the sale of the Property (the "Sale Hearing"); and (d) approving form and manner of service of notice of auction and sale hearing (the "Notice of Auction and Sale Hearing"); (ii) approving and authorizing the sale of the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

Property (the "Sale Transaction") free and clear of any liens, claims, encumbrances and other interests (collectively, "Encumbrances") pursuant to the terms of the Successful Bid (as defined herein); and (iii) granting related relief; and it appearing that the relief requested in the Motion is in the best interests of the Diocese, its estate, creditors, and other parties in interest; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**[2]

A.    This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.    The Diocese has articulated good and sufficient business reasons for this Court to approve the bidding procedures attached hereto as ***Exhibit 1*** (the "Bidding Procedures").

D.    The Bidding Procedures are reasonably designed to maximize the consideration to be received for the Property.

E.    The Stalking Horse Bidder is not an "insider" or "affiliate" of the Diocese, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Diocese.  The Stalking Horse Bidder and the Diocese, together with their respective counsel

_____

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  *See* Bankruptcy Rule 7052.

17963105.v4-7/18/24

and advisors, have acted in "good faith" and at "arm's length" within the meaning of section 363(m) of the Bankruptcy Code in connection with the negotiation of the agreement for the sale of the Property attached hereto as **Exhibit 2** (the "Purchase Agreement").

F.      The Diocese has demonstrated and proved to the satisfaction of this Court that a sale of the Property, pursuant to the terms of the Purchase Agreement, subject to higher or better offers, is in the best interests of the Diocese, its creditors, and its estate, and the Diocese's decision to enter into the Purchase Agreement with the Stalking Horse Bidder represents a prudent exercise of the Diocese's sound business judgment.

G.      The publication and service of the Notice of the Auction and Sale Hearing attached hereto as **Exhibit 3**, as described in the Motion, is reasonably calculated to provide all interested parties with adequate and proper notice of the proposed Sale Transaction, the Bidding Procedures, the Auction, and the Sale Hearing.

H.      The Diocese has articulated good and sufficient reasons for this Court to grant the relief set forth herein.  The entry of this Bidding Procedures Order is in the best interests of the Diocese, its estate, creditors, and other parties in interest.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion relating to the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      The Bidding Procedures attached hereto as **Exhibit 1** are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids to purchase the Property.  Any party desiring to submit a bid for the Property shall comply with the Bidding Procedures and this Order.

3

4. The form of the Purchase Agreement attached hereto as *Exhibit 2* is hereby approved. The offer by the Stalking Horse Bidder to purchase the Property pursuant to the terms of the Purchase Agreement is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder for all purposes under the Bidding Procedures.

5. In accordance with the terms of the Purchase Agreement, the Diocese shall return to the Stalking Horse Bidder its $380,000.00 deposit, payable in the event the Diocese, at no fault of the Stalking Horse Bidder, consummates a sale of the Property to a Successful Bidder other than the Stalking Horse Bidder.

6. The deadline for submitting bids for the Property (the "Bid Deadline") is 12:00 noon (prevailing Eastern Time) on _____, 2024. No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid is received by the Diocese prior to the Bid Deadline and otherwise satisfies all requirements set forth in the Bidding Procedures.

7. If more than one Qualified Bid for the Property is timely received by the Diocese in accordance with the Bidding Procedures, the Diocese shall hold an Auction for the Property. The Auction shall take place at the offices of Bond, Schoeneck & King, PLLC, The Avant Building, Suite 900, 200 Delaware Avenue, Buffalo, New York 14202-2107, on [_____ __, 2024 at 12:00 noon (prevailing Eastern Time), or on such other date and time as the Diocese shall notify all Qualified Bidders and other invitees.

8. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale Transaction. The Stalking Horse Bidder will be permitted, but not obligated, to submit overbids at the Auction.

17963105.v4-7/18/24

9.     The Notice of Auction and Sale Hearing, in substantially the form attached hereto as *Exhibit 3*, is hereby approved.

10.     Not later than five (5) business days following entry of this Bidding Procedures Order, the Diocese shall cause (a) a copy of the Notice of Auction and Sale Hearing, and (b) a copy of the Bidding Procedures Order, with exhibits, to be sent by first-class mail postage prepaid, to: (i) the Office of the United States Trustee for the Western District of New York; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) all parties filing Notices of Appearance and requests for papers in this Chapter 11 Case; (iv) all required governmental agencies; (v) all known parties who have expressed a bona fide interest in acquiring the Property during the pendency of this Chapter 11 Case; (vi) all creditors in the Chapter 11 Case; (vii) all persons known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in or upon any of the Property; and (viii) all parties who are known to have expressed an interest in purchasing the Property.

11.     The Diocese shall arrange for publication of a copy of the Notice of Auction and Sale Hearing in the *Buffalo News* not later than five (5) business days following entry of this Bidding Procedures Order (subject to applicable submissions deadlines).

12.     If the Diocese does not receive any Qualified Bids (other than the Purchase Agreement) prior to the Bid Deadline: (a) the Diocese may cancel the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Property; and (c) the Diocese shall be authorized to seek approval of the Purchase Agreement and the Sale Transaction to the Stalking Horse Bidder at the Sale Hearing.

13.     The Sale Hearing shall be held before this Court on [_____ __, 2024 at __:00 _.m. (prevailing Eastern time), or as soon thereafter as counsel and interested parties may be heard.

5

14. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than as reflected on the Bankruptcy Court's docket or announcement of said adjournment in open Court or on this Court's calendar on the date scheduled for the Sale Hearing.

15. Except as otherwise provided in this Bidding Procedures Order, the Diocese reserves the right as it may reasonably determine to be in the best interests of its estate, in the Diocese's business judgment, in consultation with the Committee, and subject to conformity with the Bidding Procedures to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) not in the best interests of the Diocese and its estate; (e) waive terms and conditions set forth herein with respect to all potential bidders or impose additional terms and conditions with respect to all bidders; (f) extend the deadlines set forth herein; (g) adjourn or cancel the Auction or Sale Hearing without further notice; and (h) modify the Bidding Procedures as the Diocese, in its business judgment, may determine to be in the best interest of its estate or to withdraw the Motion at any time with or without prejudice.

16. The Diocese is hereby authorized to take all actions necessary or appropriate to effectuate the terms of this Bidding Procedures Order.

17. Notwithstanding anything to the contrary in Bankruptcy Rule 6004(h), or otherwise, this Bidding Procedures Order shall be effective immediately upon its entry.

18. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

6

Dated: _____
      Buffalo, New York

                                 _____
                                 Hon. Carl L. Bucki
                                 Chief United States Bankruptcy Judge

17963105.v4-7/18/24

Case 1-20-10322-CLB,    Doc 3031-1,    Filed 07/18/24,    Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 8 of 54

**Exhibit 1**

(to Bidding Procedures Order)

Bidding Procedures

17963105.v4-7/18/24

Case 1-20-10322-CLB,    Doc 3031-1,    Filed 07/18/24,    Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 9 of 54

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

### BIDDING PROCEDURES FOR THE SALE OF 711 KNOX ROAD, EAST AURORA, NEW YORK OF THE DIOCESE OF BUFFALO, N.Y.

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale Transaction") of certain real property located at 711 Knox Road, East Aurora, New York 14052 (the "Property") by The Diocese of Buffalo, N.Y. (the "Diocese"). The Sale Transaction is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code").

On __, 2024, the Diocese filed the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Certain Real Property at 711 Knox Road, East Aurora, New York; (B) Authorizing and Approving the Form of Purchase Agreement; (C) Scheduling an Auction and Hearing to Consider the Sale; and (D) Approving the Form and Manner of Service of Notice of Auction and Sale Hearing; (II) Approving the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (III) Granting Related Relief* [Docket No. ____] (the "Sale Motion").

On _____, 2024, the Bankruptcy Court entered an order [Docket No. ___] (the "Bidding Procedures Order")[1] which, among other things, approved (i) these Bidding Procedures and (ii) the form of purchase agreement with World Mission Society, Church of God A NJ Nonprofit Corporation (the "Stalking Horse Bidder") attached as an exhibit to the Sale Motion (the "Purchase Agreement").

These Bidding Procedures describe, among other things, the Property available for sale, the form of bids and the manner in which bidders and bids become qualified, the coordination of diligence efforts, the conduct of the Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein) and the Court's approval thereof (the "Bidding Process").

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion and the Bidding Procedures Order, as applicable.

17963105.v4-7/18/24

Case 1-20-10322-CLB,  Doc 3031-1,  Filed 07/18/24,  Entered 07/18/24 15:21:09,  Description: Exhibit A - Proposed Bidding Procedures Order, Page 10 of 54

In the event of any disagreement as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court shall have jurisdiction to hear and resolve such dispute.

Copies of the Sale Motion and all exhibits thereto may be obtained by contacting the Diocese's counsel: Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Charles J. Sullivan, Grayston T. Walter and Jeffrey D. Eaton (Telephone (315) 218-8000; email: sdonato@bsk.com, csullivan@bsk.com, gwalter@bsk.com and jeaton@bsk.com), or they may be downloaded by visiting the Bankruptcy Court's electronic case management website at https://ecf.nywb.uscourts.gov/ or for free at https://case.stretto.com/dioceseofbuffalo.

## Property to be Sold

The real property to be sold (together with all improvements and fixtures located thereon) is located at 711 Knox Road, East Aurora, New York 14052.

The Sale Transaction will be conducted on "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Diocese, its agents or the Diocese's bankruptcy estate, except to the extent set forth in the Purchase Agreement. Except as otherwise provided in the Purchase Agreement or in the Bankruptcy Court's order approving the Sale Transaction, the Property shall be sold to the Successful Bidder free and clear of all liens, claims, encumbrances, and other interests ("Encumbrances"), with such Encumbrances to attach solely to the net proceeds of the sale.

## Participation Requirements

In order to participate in the Bidding Process, a bidder for the Property (a "Potential Bidder") must be an "Qualified Bidder." A Qualified Bidder is a person or group of persons who has provided the Diocese with current audited financial statements, evidence of committed financing, or such other financial and credit-quality disclosures as may be reasonably requested by, and satisfactory to the Diocese, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), evidencing the Potential Bidder's financial wherewithal to consummate the Sale Transaction and pay the purchase price for the Property to the Diocese in cash.

The Diocese, in its discretion, shall determine whether a bid qualifies as an "Qualified Bid." To constitute a Qualified Bid, a bid must be an offer from a Qualified Bidder received by the Diocese before the Bid Deadline (defined below) and:

(i)     be submitted in writing;

(ii)    provide for a purchase price, payable in full, in cash, upon the Sale closing date, which exceeds the cash consideration set forth in the Purchase Agreement by at least $100,000.00 (the "Initial Minimum Overbid").

(iii)   be on terms that are not more burdensome or conditional in any material respect than the terms of the Purchase Agreement;

2

(iv) not be conditioned on obtaining financing, the outcome of any due diligence investigation, or on the receipt of any third-party approvals or consents (excluding required Bankruptcy Court approval and any third-party approvals or consents contemplated in the Purchase Agreement);

(v) not request or entitle the bidder to any break-up fee, expense reimbursement, or similar type of payment;

(vi) include a binding and definitive purchase agreement for the Property, in substantially the same form as the Purchase Agreement and executed by the Qualified Bidder (a "Qualified Bidder Contract"), together with a marked copy showing any changes from the Purchase Agreement, and a clean electronic copy in Microsoft Word readable format;

(vii) be accompanied by a cash, certified bank check, or wire transfer deposit equal to 10% of the purchase price set forth in the Qualified Bidder Contract;

(viii) fully disclose the identity of each entity that will be bidding for the Property or otherwise participating in connection with such bid, the complete terms of any such participation, and identify no more than three (3) representatives authorized to appear and act on behalf of such Qualified Bidder at the Auction ("Authorized Bidder Representatives");

(ix) include an acknowledgment and representation that the Qualified Bidder has had an opportunity to consider all due diligence regarding the Property prior to submitting its bid and that it has relied solely upon its own independent review, investigation and inspection of any documents or the Property in making its bid;

(x) confirm that, if selected as the Successful Bidder or the Back-Up Bidder, such bidder will complete the Sale Transaction within five (5) business days following the date on which (A) the Bankruptcy Court's order approving the sale shall have become a final and non-appealable order, and (B) the Diocese shall have provided written notice of its readiness to consummate the Sale Transaction;

(xi) certify that the bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale Transaction; and

(xii) provide that such bid shall remain open and irrevocable until:

(A) if such bid is not the Successful Bid or Back-Up Bid (as each term is defined below), the entry by the Bankruptcy Court of an order approving the sale of the Property to another Qualified Bidder;

(B) if such bid is the Successful Bid, the closing of the Sale Transaction to such Successful Bidder; or

(C) if such bid is chosen by the Diocese to be the Back-Up Bid, the date which is the earlier to occur of: (i) the closing of the Sale Transaction to the

3

17963105.v4-7/18/24

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 12 of 54

Successful Bidder or (ii) the closing of the Sale Transaction to such Back-Up Bidder.

As promptly as practicable after receiving a bid from a Potential Bidder, the Diocese shall determine, in consultation with the Committee, and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder and whether the bid is a Qualified Bid. Notwithstanding anything to the contrary herein, the Stalking Horse Bidder is a Qualified Bidder, and the Purchase Agreement is a Qualified Bid, for all purposes of these Bidding Procedures.

## Bid Deadline

All Qualified Bids must be actually received at or before 12:00 noon (prevailing Eastern Time) on _____, 2024 (the "Bid Deadline"), by counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202 (Attn: Stephen A. Donato, Charles J. Sullivan, Grayson T. Walter, Justin S. Krell and Jeffrey D. Eaton (Telephone (315) 218-8000; email: sdonato@bsk.com, csullivan@bsk.com, gwalter@bsk.com, jkrell@bsk.com and jeaton@bsk.com). The Diocese may extend the Bid Deadline in its discretion but is not obligated to do so.

As soon as practicable following the Bid Deadline, the Diocese will review all timely-received bids and will provide copies of all bids deemed to be Qualified Bids to counsel to the Committee, and the Office of the United States Trustee for the Western District of New York (the "UST").

## "As-is" Sale / Diligence

The Sale of the Property shall be on an "as-is" basis, without any representations or warranties provided by the Diocese, except those set forth in the Purchase Agreement.

Each Potential Bidder shall comply with all reasonable requests for information by the Diocese or its advisors regarding such Potential Bidder's financial wherewithal and ability to consummate the Sale. Failure by any Potential Bidder to comply with requests for additional information from the Diocese may be a basis for the Diocese, in its discretion, to determine that a Potential Bidder is not a Qualified Bidder, or that any bid is not a Qualified Bid.

Prior to the Bid Deadline, the Diocese shall provide any Potential Bidder deemed to be a Qualified Bidder with reasonable site access and due diligence information upon request. In no instance shall the Diocese have any obligation to produce or furnish any information not already within the Diocese's possession and control.

Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Property provided by anyone other than the Diocese or its representatives.

By submitting their bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Property and that it has relied

solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Property, or the completeness of any information provided in connection with the Bidding Process except as expressly stated in the Qualified Bidder Contract submitted with its Qualified Bid.

## **Auction**

If no Qualified Bids (other than the Purchase Agreement submitted by the Stalking Horse Bidder, which shall be deemed as a Qualified Bid) are received on or prior to the Bid Deadline, the Stalking Horse Bidder shall be the Successful Bidder (as defined below) and the Diocese shall seek authorization to sell the Property to the Stalking Horse Bidder without further competitive bidding.

If the Diocese receives more than one Qualified Bid prior to the Bid Deadline, the Diocese shall conduct an Auction ("Auction") for the Sale of the Property. The Auction shall take place on _____ __, 2024 at 12:00 noon (prevailing Eastern Time) at the offices of Bond, Schoeneck & King, PLLC, The Avant Building, Suite 900, 200 Delaware Avenue, Buffalo, New York 14202-2107, or at such other time and place as the Diocese may notify all Qualified Bidders. Only the Stalking Horse Bidder and those Qualified Bidders who timely submitted a Qualified Bid will be eligible to participate in the Auction.

At the commencement of the Auction, the Diocese shall announce the Qualified Bid that it has determined represents the highest or otherwise best bid for the Property (the "Starting Qualified Bid") and the overall consideration value ascribed to such bid (the "Bid Value").

Each Qualified Bidder present at the Auction will be permitted to increase its Qualified Bid in turns (each such increased Qualified Bid, a "Qualified Overbid"), provided that each Qualified Overbid thereafter must exceed the Bid Value of the then-highest or otherwise best Qualified Overbid, by at least one hundred thousand dollars ($100,000.00) (the "Minimum Bid Increment"). During the course of the Auction, the Diocese will inform the participants which Qualified Overbid reflects the then-highest or otherwise best offer for the Property and the Bid Value ascribed thereto.

During the Auction, the Diocese is permitted at any time to request any additional financial information of any Qualified Bidder.

The Auction may be adjourned from time to time by the Diocese, but it shall not be concluded until each Qualified Bidder present at the Auction has been given an opportunity to submit a Qualified Overbid with knowledge of the Bid Value ascribed to the Starting Qualified Bid or then-highest Qualified Overbid, as applicable.

At the conclusion of the Auction the Diocese will announce (i) the Qualified Bid which the Diocese, in consultation with the Committee, deems to represent the highest or otherwise best bid for the Property (such bid being the "Successful Bid" and the Qualified Bidder submitting such bid, the "Successful Bidder") and (ii) the next highest or otherwise best bid (the "Back-Up

5

17963105.v4-7/18/24

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 14 of 54

Bid" and the party submitting such bid, the "Back-Up Bidder"). As a condition precedent to the Diocese declaring any bid the Successful Bid or the Back-Up Bid, the Diocese may require the Successful Bidder or Back-Up Bidder to deposit additional cash or immediately available funds such that their total deposit shall be not less than (10%) of the purchase price of their respective Successful Bid or Back-Up Bid. Any deposits not applied in satisfaction of the obligations of the Successful Bidder or Back-Up Bidder shall be returned not later than five (5) business days following the consummation of the Sale Transaction.

No bids submitted after the conclusion of the Auction shall be considered unless a motion to reopen the Auction is made on notice, prior to the Sale Hearing, to all Qualified Bidders who attended and submitted a bid at the Auction and such motion is granted by the Court.

All Qualified Bids and Qualified Overbids submitted by Qualified Bidders prior to or at the Auction shall remain open and irrevocable as follows:

> (a)     if such bid is not the Successful Bid or Back-Up Bid, until the entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder;

> (b)     if such bid is the Successful Bid, until the closing of the Sale to such Successful Bidder; or

> (c)     if such bid is the Back-Up Bid, until the date which is the earlier to occur of: (i) the closing of the Sale to the Successful Bidder or (ii) the closing of the Sale to such Back-Up Bidder.

## **The Sale Hearing**

A hearing to approve the sale transaction (the "Sale Hearing") is scheduled to take place on _____ __, 2024 at __:00 noon (prevailing Eastern time) before the Honorable Carl L. Bucki, Chief Judge of the United States Bankruptcy Court for the Western District of New York, at the Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, NY 14202. Objections to the Sale must be in writing, comply with the Local Bankruptcy Rules for the Western District of New York, and be filed with the Bankruptcy Court as soon as practicable in advance of the Sale Hearing. At the Sale Hearing, the Diocese will seek entry of an order (the "Sale Order"), among other things, authorizing and approving the sale of the Property to the Successful Bidder (or in the alternative, the Back-Up Bidder), as determined by the Diocese in the Diocese's business judgment and in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Purchase Agreement or Qualified Bidder Contract, as applicable, and as the same may be modified by any Qualified Overbid submitted at the Auction. The Sale Hearing may be adjourned or rescheduled without notice other than as reflected on the Bankruptcy Court's docket or by an announcement of the adjourned date in open court at the Sale Hearing.

The Diocese shall be deemed to have accepted a Qualified Bid only when (i) such Bid is declared the Successful Bid (or the Back-Up Bid) in accordance with these Bidding Procedures,

17963105.v4-7/18/24

(ii) definitive documentation has been executed in respect thereof, and (iii) the Bankruptcy Court has entered the Sale Order.

Following the entry of the Sale Order, if the Successful Bidder fails to consummate the approved Sale Transaction in accordance with the terms of its Successful Bid because of a breach or failure to perform on the part of such Successful Bidder, the Diocese may terminate its agreement to sell the property to the Successful Bidder, retain the Successful Bidder's deposit, and maintain the right to pursue all available remedies whether legal or equitable against such Successful Bidder. In the event the Diocese elects to so terminate, the Backup Bid, shall automatically be deemed to be the Successful Bid with respect to the Property, and the Diocese shall be authorized to effectuate the sale of the Property to the Backup Bidder without further order of the Bankruptcy Court.

The Diocese shall return any deposits to all Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, within five (5) business days following the date on which the Sale Order becomes a final and non-appealable order. The deposit of the Successful Bidder shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale Transaction. The deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder within five (5) business days following the date its bid is no longer required to remain open and irrevocable as set forth herein.

## **<u>Reservation of Rights</u>**

The Diocese reserves all rights to terminate the Bidding Process at any time if the Diocese determines, in consultation with the Committee, that the Bidding Process is not in the best interest of the Diocese's bankruptcy estate. In addition, the Diocese reserves the right not to submit for approval to the Bankruptcy Court any bid (regardless of whether it may be a Qualified Bid under these Bidding Procedures) if the Diocese has reason to believe that such bid was not submitted in good faith or other similar reason. Without limiting the generality of the foregoing, the Diocese may reject at any time before entry of the Sale Order, any bid that it determines, in consultation with the Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) not in the best interests of the Diocese, its estate and creditors. The Diocese shall further have the right to amend the rules set forth herein for the Bidding Process or impose such other or additional terms and conditions for the Bidding Process which the Diocese determines, in consultation with the Committee, are in the best interests of the chapter 11 estate, provided that such modifications are not inconsistent with these Bidding Procedures or the Bidding Procedures Order.

*    *    *

17963105.v4-7/18/24

**Exhibit 2**

(to Bidding Procedures Order)

Purchase Agreement

17963105.v4-7/18/24

## PURCHASE AND SALE AGREEMENT

June

This PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of the 12th day of ~~May~~ 2024 (the "Effective Date"), is entered into between **THE DIOCESE OF BUFFALO, N.Y.**, a New York special act corporation created by the New York State Legislature pursuant to Chapter 568 of the Laws of 1951, having an address at 795 Main Street, Buffalo, NY 14203 ("Seller"), and **WORLD MISSION SOCIETY, CHURCH OF GOD A NJ NONPROFIT CORPORATION**, a New Jersey not-for-profit corporation authorized to conduct business in New York, having an address at 880 Jackson Avenue, New Windsor, New York 12553 ("Purchaser"; each a "Party", and collectively, the "Parties").

## RECITALS

WHEREAS, Seller is the owner of real property located in the Town of Aurora, County of Erie, and State of New York, commonly known as **711 Knox Road, Tax Map Parcel No. 163.00-3-23** in the Town of Aurora, County of Erie, and State of New York, which is shown outlined on the property sketch attached hereto as **Exhibit A-1**, and is more particularly described on **Exhibit A-2** attached hereto (together with all improvements and fixtures located thereon, the "Property").

WHEREAS, on February 28, 2020 (the "Petition Date") Seller filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 et seq., the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"), commencing Seller's chapter 11 case (this "Bankruptcy Case");

WHEREAS, Seller continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Seller retained Hanna Commercial Real Estate ("Hanna CRE") to serve as a real estate broker with respect to the proposed sale of the Property;

WHEREAS, Seller listed the Property for sale with Hanna CRE beginning on or about November 2, 2023;

WHEREAS, subject to the terms and conditions hereof, Seller desires to sell to Purchaser, and Purchaser desires to purchase the Property from Seller;

WHEREAS, the transaction contemplated by this Agreement is subject to the approval of the Bankruptcy Court, which approval will include, among other things, issuance by the Bankruptcy Court of a Bidding Procedures Order directing the manner in which a bidding procedure will be conducted for solicitation of competing offers from third parties for the purchase of the Property; and

WHEREAS, depending upon the outcome of bidding pursuant to the Bidding Procedures Order, this Agreement and the transactions contemplated herein will be consummated pursuant to a sale order to be entered in the Bankruptcy Case, or, in the alternative, this Agreement may be terminated by Seller, as hereinafter provided.

1

**Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY**

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

# ARTICLE I
## DEFINITIONS

For purposes of this Agreement (including any Exhibits or Schedules attached hereto), the following terms shall have the meanings ascribed to them below, unless the context clearly requires otherwise:

1.1 "**Bankruptcy Case**" shall have the meaning given to it in the Recitals to this Agreement.

1.2 "**Bankruptcy Code**" shall have the meaning given to it in the Recitals to this Agreement.

1.3 "**Bankruptcy Court**" shall have the meaning given to it in the Recitals to this Agreement.

1.4 "**Bargain and Sale Deed**" shall mean the deed to be delivered at Closing by Seller to Purchaser in the form attached hereto as **Exhibit B**.

1.5 "**Bidding Procedures**" shall mean the bidding procedures governing the process by which the sale of the Property shall occur, which are attached to the Bidding Procedures Order as Exhibit 1.

1.6 "**Bidding Procedures Order**" shall mean an order of the Bankruptcy Court: (i) approving the terms of this Agreement, subject to higher and better bids; (ii) establishing procedures for Seller's solicitation of competing offers to purchase the Property from third parties; (iii) establishing procedures for an auction to determine the highest or otherwise best offer for the Property; and (iv) scheduling a hearing to consider entry of the Sale Order.

1.7 "**Business Day(s)**" shall mean calendar days, exclusive of Saturdays, Sundays and holidays on which banking institutions in New York are authorized by Law to close.

1.8 "**Claim**" shall mean any claim within the meaning of section 101(5) of the Bankruptcy Code.

1.9 "**Closing**" shall mean the closing of the transaction as set forth in Section 7.1 of this Agreement.

1.10 "**Closing Date**" shall mean the date of Closing.

1.11 "**Encumbrance**" shall mean any Lien, Claim, Interest, or defect in title, whether imposed by Law, agreement, understanding or otherwise. For the avoidance of doubt, rights of way and easements of record shall not be considered an Encumbrance under this Agreement.

**Purchase and Sale Agreement**
**for 711 Knox Road, Aurora, NY**

1.12    "**Effective Date**" shall mean June 12, 2024.

1.13    "**Escrow Agent**" shall mean the Seller's attorneys, Bond, Schoeneck & King, PLLC.

1.14    "**Excluded Items**" shall mean any and all religious materials and texts located within the library on the day of Closing.

1.15    "**Interest**" shall mean any interest in, or related to, the Property within the meaning of section 363(f) of the Bankruptcy Code, and all mortgages, Leases, or other interests, pledges, security interests, rights of setoff, successor liabilities, conditions, obligations to allow participation, agreements or rights, rights asserted in litigation matters, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of Sellers (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all Liens, rights of offset, replacement liens, adequate protection liens, charges, obligations.

1.16    "**Law**" shall mean all federal, state and local laws, ordinances, rules, regulations, standards, and Orders.

1.17    "**Leases**" shall mean all leases, subleases, licenses, concessions, options, extension letters, assignments, termination agreements, subordination agreements, nondisturbance agreements, estoppel certificates and other agreements, whether written or oral, and any amendments or supplements to any of the foregoing.

1.18    "**Liability**" shall mean any liability or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated and whether due or to become due).

1.19    "**Lien**" shall mean any charge against or Interest in the Property to secure payment of a debt or performance of an obligation (statutory or otherwise), deed of trust, mortgage, pledge, security interest, security agreement, hypothecation, preference, priority, or right of recovery.

1.20    "**Order**" shall mean any award, decision, injunction, judgment, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any court, or administrative agency.

1.21    "**Permitted Exception**" shall have the meaning given to such term in Section 9.2.

1.22    "**Person**" shall mean any individual, corporation, general or limited partnership, limited liability company, joint venture, estate, trust, association, or other legal organization.

1.23    "**Proceeding**" shall mean any action, demand, complaint, inquiry, suit, injunction, dispute, arbitration, audit, hearing, investigation, litigation, citation, notice of violation (or similar notice), or suit (whether civil or criminal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Person.

Case 1-20-10322-CLB,    Doc 3031-1,    Filed 07/18/24,    Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 20 of 54

1.24    "**Property**" shall have the meaning given to such term in the Recitals of this Agreement.

1.25    "**Remaining Personal Property**" shall mean any items of equipment and personal property, aside from the Excluded Items, remaining on the Property on the day of the Closing.

1.26    "**Sale Order**" shall mean an Order of the Bankruptcy Court in form and substance reasonably acceptable to Purchaser and Seller authorizing the sale of the Property to Purchaser in accordance with the terms and conditions set forth herein, free and clear of any Encumbrances pursuant to section 363(f) of the Bankruptcy Code.

1.27    "**Tax**" and "**Taxes**" shall mean individually or collectively, as appropriate, any and all U.S. or non-U.S., federal, state, county, local, municipal or other taxes, charges, imposts, rates, fees, levies or other assessments.

1.28    "**Title Company**" shall mean a reputable title company to be selected by Purchaser.

1.29    "**Transaction**" shall mean the purchase and sale of the Property contemplated by this Agreement.

# ARTICLE II
## AGREEMENTS TO SELL AND PURCHASE; RELATED MATTERS

2.1.    **Agreement to Sell and Purchase the Property**.  On the Closing Date, subject to the performance of the parties of the terms and provisions of this Agreement and satisfaction of the terms and conditions set forth in the Sale Order, Seller shall sell, convey, assign, transfer, and deliver to Purchaser, and Purchaser shall purchase, acquire, and accept from Seller, the Property, free and clear of all Encumbrances, except as otherwise expressly provided in this Agreement.

2.2.    **Condition of Property**.  Seller is selling and Purchaser is acquiring the Property "AS IS" "WHERE IS", and with all faults, as provided in **ARTICLE XII** below.

2.3.    **Personal Property.**  Seller shall have the right at any time prior to Closing to remove from the Property any religious items and other equipment and personal property which Seller elects to remove and retain. For the avoidance of doubt, the pews shall be considered religious items under this Agreement. Purchaser agrees to accept possession of the Property at Closing with any Remaining Personal Property included in the sale (at no additional cost to Purchaser) on an "AS IS" "WHERE IS" basis.  Seller shall deliver to Purchaser at Closing a quitclaim bill of sale conveying Seller's interest in any such Remaining Personal Property. To the extent any such Remaining Personal Property is owned by an entity affiliated with Seller, Seller shall deliver to Purchaser a quitclaim bill of sale executed by such affiliated entity. Purchaser shall at the time of Closing provide Seller with evidence reasonably satisfactory to Seller demonstrating that Purchaser is exempt from New York State Sales Tax in connection with the purchase of any such Remaining Personal Property. Notwithstanding anything to the contrary contained herein, the Remaining Personal Property does not encompass or include the Excluded Items.

2.4.     **Building Systems and Fixtures.**  Notwithstanding the foregoing, Seller agrees not to remove from the Property any of the following to the extent they are in place on the Property as of the Effective Date of this Agreement, and that all such items shall be included in the sale to Purchaser, as fixtures to the Property:  any natural gas and electric fixtures, facilities, appliances and wiring, fixtures and related equipment, all emergency generators, engines, boilers, elevators, incinerators, motors, heating, ventilation, and air conditioning equipment, affixed cabinetry, sinks, basins, water closets, lavatory fixtures, faucets, and pipes, all electrical and telephone systems, components, wiring, transformers, electrical boxes, switches, lighting fixtures, and bulbs, any sprinkler systems, fire prevention and extinguishing apparatus, any central music and public address systems, any burglar alarms, security systems and equipment, remote control devices for overhead doors, any window shades, awnings, screens, blinds, installed carpeting, drapes, and curtains. Seller makes no representation or warranty that any of the foregoing items are in place on the Property.

**ARTICLE III**
**PURCHASE PRICE**

3.1.     **Purchase Price**.  The Purchase Price for the Property shall be THREE MILLION EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($3,800,000.00) (the "Purchase Price"), payable as follows:

      3.1.1.     **Deposit**.  Within five (5) days after the Effective Date, Purchaser shall deposit in escrow with Seller's attorneys, Bond, Schoeneck and King, PLLC, an earnest money deposit of THREE HUNDRED EIGHTY THOUSAND AND 00/100 DOLLARS ($380,000.00) (the "Earnest Money Deposit") in a non-interest bearing account, which Earnest Money Deposit is to become part of the Purchase Price, or be returned, if required under the terms of this Agreement.

      3.1.2.     **Balance**.  The balance of the Purchase Price shall be paid, plus or minus Closing adjustments, as the case may be, in wire transferred funds of United States currency to Seller in accordance with the terms of the Sale Order.

3.2.     **Cash Transaction**. Purchaser acknowledges that Purchaser's representation below that the transaction contemplated herein is a "Cash Transaction" was a determinative factor in Seller's acceptance of Purchaser's offer. To that end, Purchaser shall, on or before the Effective Date, provide Seller with evidence reasonably satisfactory to Seller confirming Purchaser's ability to purchase the Property pursuant to this Agreement without obtaining financing or funding from outside funding sources ("Proof of Funds").

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller makes no representations or warranties, express or implied, except those expressly contained or incorporated in this Agreement. All of the representations and warranties of Seller contained in this Agreement are to the best of Seller's knowledge, made as of the Effective Date, and except as otherwise set forth herein, shall merge with the Quitclaim Deed and shall not survive

the Closing. Subject to the foregoing, Seller represents and warrants unto Purchaser as of the date hereof, as follows:

4.1. **Organization**. Seller is a New York special act corporation created by the New York State Legislature pursuant to Chapter 568 of the Laws of 1951, duly organized, validly existing, and in good standing under the laws of the State of New York, and subject to the Bankruptcy Court's entry of the Sale Order, Seller has the legal power, right and authority to enter into this Agreement and the instruments referenced herein, and to consummate the transaction contemplated herein.

4.2. **Power and Authority**. All requisite corporate action has been taken by Seller in connection with entering into this Agreement, the documents and instruments referenced herein, and the consummation of the transaction contemplated hereby. Subject to the Bankruptcy Court's entry of the Sale Order, no consent, authority, licensing, or approval of any partner, shareholder, trustee, trustor, beneficiary, creditor, investor, or other party is required for Seller to execute and deliver this Agreement and the instruments and documents referenced herein or consummate the transaction contemplated by this Agreement. The individual(s) executing this Agreement and the instruments referenced herein on behalf of Seller have the legal power, right, and actual authority to bind Seller to the terms and conditions hereof and thereof.

4.3. **Consents**. Subject to the Bankruptcy Court's entry of the Sale Order, no consent, approval, waiver, license, permit, or certificate of authority any other third Person is required in connection with the execution, delivery or performance by Seller of this Agreement or the consummation by Seller of the transactions contemplated hereby.

4.4. **Foreign Person**. Seller is not a "foreign person" as defined in §1445(f)(3) of the Internal Revenue Code and regulations promulgated thereunder, which Seller shall so certify at Closing (via "Non-Foreign Person Affidavit").

4.5. **Encumbrances**. Except as otherwise expressly provided in this Agreement, at the Closing, Seller will convey the Property free and clear of all Encumbrances, as provided in the Sale Order, subject to any rights of way or easements of record.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

5.1. **Power and Authority**. All requisite action (corporate, trust, partnership or otherwise) has been taken by Purchaser in connection with entering into this Agreement, the documents and instruments referenced herein, and the consummation of the transaction contemplated hereby. No consent, authority, licensing or approval of any partner, shareholder, trustee, trustor, beneficiary, creditor, investor, regulatory authority or other party is required for Purchaser to execute and deliver this Agreement and the instruments and documents referenced herein or consummate the transaction contemplated by this Agreement. The individual(s) executing this Agreement and the instruments referenced herein on behalf of Purchaser have the legal power, right, and actual authority to bind Purchaser to the terms and conditions hereof and thereof.

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 23 of 54

5.2. **Sufficient Funds**. The transaction contemplated by this Agreement is a "Cash Transaction", and Purchaser has as of the date hereof, and will have as of the Closing, sufficient funds in cash in its possession to pay the Purchase Price and the Earnest Money Deposit as the same become due and payable under this Agreement, without obtaining financing or funding from outside funding sources.

5.3. **Certain Relationships**. Purchaser represents and warrants to Seller (i) that neither Purchaser nor any Person or entity that directly or indirectly owns any interest in Purchaser nor any of its officers, directors or members is a Person or entity with whom U.S. Persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the U.S. Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including, but not limited to, Executive Order 13224 ("Executive Order") signed on September 24, 2001 and titled "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"), or other governmental action, (ii) that Purchaser's activities do not violate the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders promulgated thereunder (as amended from time to time, the "Money Laundering Act"), and (iii) that so long as this Agreement is in full force and effect, Purchaser shall comply with the Executive Order and with the Money Laundering Act.

5.4. **Foreign Person**. Purchaser is not a "foreign person" as defined in §1445(f)(3) of the Internal Revenue Code and the regulations promulgated thereunder.

**ARTICLE VI**
**CONDITIONS TO CLOSING**

6.1. **Conditions to Obligations of Each Party**. The respective obligations of each Party to consummate the transactions contemplated hereby shall be subject to the satisfaction at or prior to the Closing of the following conditions:

6.1.1. **Sale Order**. The Bankruptcy Court shall have entered the Sale Order.

6.2. **Additional Conditions to Obligations of Purchaser**. The obligations of the Purchaser to consummate the transactions contemplated hereby are subject to satisfaction or waiver by the following additional conditions:

6.2.1. **Representations and Warranties**. The representations and warranties of Seller set forth in this Agreement shall be materially true and correct as of the Effective Date and as of the Closing Date, as if made as of such time (except to the extent that such representations and warranties expressly speak as of another date, in which case such representations and warranties shall be true and correct as of such date).

6.2.2. **Agreements and Covenants**. Seller shall have performed and complied with all of its covenants hereunder in all material respects through the Closing.

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 24 of 54

6.2.3. **Documents**. All of the documents, instruments and agreements required to be executed and/or delivered by Seller on or prior to Closing pursuant to **Section 7.1.1** of this Agreement shall have been executed by the parties thereto other than the Purchaser and delivered to the Purchaser.

6.3. **Additional Conditions to Obligations of Seller**. The obligations of Seller to consummate the transactions contemplated hereby are subject to satisfaction or waiver by Seller of the following additional conditions:

6.3.1. **Representations and Warranties**. The representations and warranties of the Purchaser set forth in this Agreement shall be materially true and correct as of the Closing Date, as if made as of such time (except to the extent that such representations and warranties expressly speak as of another date, in which case such representations and warranties shall be true and correct as of such date).

6.3.2. **Agreements and Covenants**. Purchaser shall have paid the full Purchase Price performed and complied with all of its other covenants hereunder in all material respects through the Closing.

6.3.3. **Documents**. All of the documents, instruments and agreements required to be executed and/or delivered by Purchaser on or prior to Closing pursuant to **Section 7.1.2** of this Agreement shall have been executed by the parties thereto other than Seller and delivered to Seller.

## ARTICLE VII
## CLOSING; DELIVERIES AND ACTIONS TAKEN AT THE CLOSING

7.1. **Closing Date**. The Closing of the purchase and sale of the Property and any other transactions contemplated in this Agreement shall occur no later than the date that is five (5) Business Days after the date of the entry of the Sale Order or such other later date as the parties may mutually agree. The parties agree that TIME IS OF THE ESSENCE with respect to the occurrence of the Closing Date. The Closing shall be held via escrow and wire transfer through the offices of Seller's attorney.

7.1.1. **Deliveries by Seller at the Closing**. At the Closing, Seller shall cause to be executed and delivered to Purchaser the following documents with respect to the Property being conveyed:

7.1.1.1. a duly executed and acknowledged Bargain and Sale Deed;

7.1.1.2. a Quitclaim Bill of Sale conveying title to the Remaining Personal Property:

7.1.1.3. two (2) counterparts of a duly executed Closing Statement setting forth all closing adjustments and prorations for the Property (the "Closing Statement");

Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY

17429967.12

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 25 of 54

7.1.1.4. two (2) counterparts of duly executed Water Supply Assignment and Assumption Agreements (as hereinafter defined);

7.1.1.5. a Non-Foreign Person Affidavit signed by Seller;

7.1.1.6. a copy of the Sale Order; and

7.1.1.7. such other agreements, instruments, and documents of conveyance and transfer executed by Seller, in form and substance reasonably acceptable to Purchaser, as may be reasonably necessary or desirable to convey the Property to Purchaser free and clear of all Encumbrances, except as otherwise expressly provided in this Agreement.

7.1.2. **Deliveries by the Purchaser at the Closing**. At the Closing, Purchaser shall cause to be delivered to Seller the following:

7.1.2.1. the Purchase Price, by wire transfer of immediately available funds (subject to prorations and adjustments, including, but not limited to, a credit for the Earnest Money Deposit) by no later than 2:00 p.m. (eastern time);

7.1.2.2. two (2) counterparts of a Closing Statement setting forth all closing adjustments and prorations for the Property;

7.1.2.3. two (2) counterparts of duly executed Water Supply Assignment and Assumption Agreements (as hereinafter defined); and

7.1.2.4. such other agreements, instruments, and documents as Seller may reasonably request to consummate the purchase and sale transaction contemplated hereby.

## ARTICLE VIII
## TERMINATION

8.1. **Termination.** This Agreement may be terminated at any time prior to Closing:

8.1.1. by mutual written agreement of Purchaser and Seller;

8.1.2. by Seller or Purchaser, by written notice to the other, if the Bankruptcy Court has not granted the Sale Order by July 15, 2024;

8.1.3. by Seller, by written notice to Purchaser, if the Closing shall not have occurred on or before the date that is ten (10) Business Days after the date of entry of the Sale Order (as may be extended by written agreement of Purchaser and Seller); provided, however, that Seller is not in material breach of any of its representations and warranties contained in this Agreement and has not failed in any material respect to perform any of its obligations hereunder;

**Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY**

17429967.12

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 26 of 54

8.1.4.   by Purchaser, by written notice to Seller, if there shall have been a material breach by Seller of any of its representations, warranties, covenants or agreements contained in this Agreement, which breach would result in the failure to satisfy one or more of the conditions set forth in this Agreement, and such material breach or other event or condition shall be incapable of being cured or, if capable of being cured, shall not have been cured within twenty-one (21) calendar days after written notice thereof shall have been received by Seller; provided, that Purchaser is not in material breach of this Agreement as of such date;

8.1.5.   by Seller, if there shall have been a material breach by Purchaser of any of its representations, warranties, covenants or agreements contained in this Agreement, which breach would result in the failure to satisfy one or more of the conditions set forth in this Agreement, and such material breach or other event or condition shall be incapable of being cured or, if capable of being cured, shall not have been cured within ten (10) calendar days after written notice thereof shall have been received by Purchaser; provided, that no Seller is in material breach of this Agreement as of such date; or

8.1.6.   by Purchaser on or after the date the Sale Order ceases to be in full force and effect, or is revoked, rescinded, vacated, materially modified, reversed or stayed, or otherwise rendered ineffective by a court of competent jurisdiction.

## ARTICLE IX
## EVIDENCE OF TITLE AND WATER SUPPLY AGREEMENTS

9.1.   **Abstract of Title.**  Within thirty (30) days following the Effective Date, Seller shall, deliver to Purchaser (or its attorneys) a 60-year title abstract and tax search of the Property (the "Title Search"). Purchaser shall be responsible for obtaining a commitment for title insurance prepared by a title company of Purchaser's choice covering the Property (the "Title Commitment"), committing the Title Company to issue to Purchaser, upon the recording of the Bargain and Sale Deed, an ALTA fee title insurance policy in the full amount of the Purchase Price, together with legible copies of all documents referenced in Schedules B-1 or B-2 to the Title Commitment. Purchaser shall be responsible for paying the cost of the Title Search at the Closing, and Purchaser shall be solely responsible for the cost of the procurement and issuance of the Title Commitment and the premium for the title insurance policy, such responsibility shall survive the Closing or cancellation of this Agreement.

9.2.   **Condition to Title**. The Property shall be sold and conveyed, and Purchaser shall purchase the Property, (i) free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens to attach to the consideration to be received by Seller in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and (ii) subject to: (a) the terms and conditions of the Sale Order, (b) such title exceptions affecting the Property as the Title Company (or any other reputable title insurance company licensed to do business in the State of New York) shall, at regular rates, be willing to omit as exceptions to coverage, and (c) those matters listed in Exhibit "C-1" to this Agreement (collectively, the "Permitted Exceptions"). Seller

17429967.12

and Purchaser hereby expressly agree that the state of title set forth in the Sale Order and Exhibit "C-1" hereto, including the Permitted Exceptions, reflect good, marketable, insurable and acceptable title to the Property.

9.3. **Survey**. Purchaser shall have the right, but not the obligation, to order a new survey of the Property (a "Survey"), at Purchaser's sole cost and expense and, if Purchaser elects to obtain a Survey, Purchaser shall deliver a copy of the Survey to Seller upon receipt. Notwithstanding the foregoing, Closing shall not be subject to or conditioned upon Purchaser's or Seller's receipt of or Title Company's review a Survey.

9.4. **Approval of Water Supply Agreements**. Within thirty (30) days following the Effective Date, Seller shall deliver to Purchaser (or its attorneys) copies of the existing agreements between Seller and the owners of three residential properties located adjacent to the Property (collectively, the "Water Supply Agreements") pursuant to which Seller furnishes water to such property owners on the terms and conditions set forth in the Water Supply Agreements. Seller shall, at the time of Closing, assign to Purchaser all of Seller's rights under the Water Supply Agreements, and Purchaser shall assume all of Seller's obligations thereunder pursuant to written assignment and assumption agreements (collectively, the "Water Supply Assignment and Assumption Agreements").

## ARTICLE X
## CLOSING ADJUSTMENTS

10.1. **Apportionment**. The following shall be apportioned on the Closing Statement against sums due Seller at Closing:

10.1.1. Seller shall pay for the New York real property transfer tax due, if any, in connection with this transaction.

10.1.2. Purchaser shall pay all recording fees and other charges and fees payable in connection with the recording of the Bargain and Sale Deed.

10.1.3. Purchaser shall also pay for (1) the examination and search fees incurred by the Title Company to prepare the Title Search; (2) the examination and search fees incurred by the Title Company to acquire the Title Commitment, (3) all premiums charged on the owner's policy of title insurance issued to Purchaser pursuant to the Title Commitment, including, without limitation, the costs of any endorsements or extended title insurance coverage requested by Purchaser, and (4) the charges for preparing the Survey, if applicable.

10.1.4. Each party shall bear its own attorneys' fees in connection with its negotiation, due diligence investigation and conduct of the transaction.

10.2. **Real Estate Taxes and Other Charges**. Real estate taxes, utilities, including but not limited to water charges, sewer, rents and fuel, and all other customary items shall be adjusted, apportioned and allowed as of the Closing Date, if necessary by an estimated tax calculation, with

17429967.12

the Closing Date being a day of income and expense to the Purchaser. If at any time up to the Closing Date, the Property or any part thereof shall be or shall have been affected by an assessment or assessments for municipal improvements whether or not confirmed or completed an whether or not payable in installments, then for purpose of this Agreement, the proportional share of all of the unpaid installments of any such assessment(s), which are to become due and payable after the delivery of the Bargain and Sale Deed contemplated hereunder, shall be paid by the Purchaser. Installments allocable to period prior to the Closing and unpaid as of the Closing Date shall be paid by Seller or allowed as a reduction in the Purchase Price.

**ARTICLE XI**
**POSSESSION**

11.1.    **Right to Possession**.  Right to possession of, and control over, the Property shall transfer to Purchaser on the Closing Date.  On the Closing Date, Seller shall:

11.1.1.    Transfer possession to Purchaser of the Property in AS-IS, WHERE IS condition.

11.1.2.    Transfer and deliver to Purchaser all keys, pass keys, pass codes, security codes, locks and safe combinations and all other similar items in Seller's possession as Purchaser may require to obtain occupation and control of the Property.

11.1.3.    Make available to Purchaser originals of all documents, instruments and agreements in Seller's possession that are required to be transferred to Purchaser by this Agreement.

11.2    **Limited Right to Post-Occupancy**. Notwithstanding the foregoing and provided that Seller notifies Purchaser prior to the entry of the Sale Order, Seller shall have the right to store, maintain, and remove the Excluded Items from the library until December 31, 2024 (the "Post-Occupancy"), the terms and conditions substantially set forth in **Exhibit D**.

**ARTICLE XII**
**AS-IS, WAIVER AND RELEASE**

12.1.    As a material inducement to the execution and delivery of this Agreement by Seller and the performance by Seller of its duties and obligations hereunder, Purchaser does hereby acknowledge, represent, warrant and agree, to and with Seller, that (i) Purchaser is purchasing the Property in an "AS-IS" condition as of the Closing Date with respect to any facts, circumstances, conditions and defects, latent or patent; (ii) Seller has no obligation to repair or correct any such facts, circumstances, conditions or defects or compensate Purchaser for same; (iii) Purchaser has undertaken all such physical inspections and examinations of the Property as Purchaser deems necessary or appropriate under the circumstances, and that based upon same, Purchaser is and will be relying strictly and solely upon such inspections and examinations and the advice and counsel of its agents and officers, and Purchaser is and will be fully satisfied that the Purchase Price is fair and adequate consideration for the Property; (iv) Seller is not making and has not made any warranty or representation with respect to all or any part of the Property (including, but not limited

17429967.12

to, any matters contained in documents made available or delivered to Purchaser in connection with this Agreement as an inducement to Purchaser to enter into this Agreement and thereafter to purchase the Property or for any other purpose); and (v) by reason of all of the foregoing, Purchaser shall assume the full risk of any loss or damage occasioned by any fact, circumstance, condition or defect pertaining to the physical and financial condition of the Property, including without limitation the presence of any asbestos containing material, hazardous, toxic or radioactive waste, substance or materials in, on, under or about the Property, and Purchaser hereby expressly and unconditionally waives and releases Seller and all of their parents, subsidiaries, Affiliates and partnerships, and its and their respective officers, directors, shareholders, partners, agents and employees, and their respective successors, heirs and assigns and each of them (individually and collectively, the "Released Parties") from any and all rights and claims against Seller and/or the Released Parties with respect to the condition of the Property, including without limitation any rights of Purchaser under the State or Federal Comprehensive Environmental Response, Compensation and Liability Act, as amended from time to time, or similar Laws. Purchaser acknowledges and agrees that the foregoing waiver and release includes all rights and claims of Purchaser against Seller pertaining to the condition of the Property, whether heretofore or now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, which in any way arise out of, or are connected with, or relate to, the condition of the Property. The foregoing provisions shall survive the Closing Date and the consummation of the transaction contemplated by this Agreement.

## ARTICLE XIII
## DEFAULT

13.1. **Seller Default**. In the event that Seller shall be in material default hereunder for any reason other than Purchaser's default, Purchaser may deliver a written notice to Seller stating with particularity the alleged default of Seller, the action required by Seller to cure such default, and Purchaser's intent to exercise its remedies provided below if the default is not cured. Seller shall have twenty-one (21) days after receipt of such notice to cure the alleged default to Purchaser's reasonable satisfaction (and the Closing Date shall be delayed, if necessary, until the end of such twenty-one (21) day period). In the event such default is not cured within such twenty-one (21) day period, then Purchaser may elect, as its sole and exclusive remedy, to seek to enforce specific performance only for failure to cause the Property to be conveyed in accordance with the terms and provisions hereof (without any reduction in the Purchase Price) or to terminate this Agreement by written notice to Seller and the Title Company, whereupon Purchaser shall be entitled to a full refund of the Earnest Money Deposit. It is expressly understood and agreed that the remedy of specific performance shall not be available to enforce any other obligation of Seller hereunder other than a failure to cause the Property to be conveyed in accordance with the terms and provisions of this Agreement. Purchaser shall be deemed to have elected to terminate this Agreement if Purchaser fails to file suit for specific performance against Seller in Bankruptcy Court, or, with the permission of Bankruptcy Court, in a court having jurisdiction in the county and state in which the Property is located, on or before thirty (30) days following the date upon which the Closing was to have occurred pursuant to this Agreement. Notwithstanding anything to the contrary contained herein, Purchaser shall have no right to specific performance of this Agreement, nor shall Seller have any authority or obligation to transfer the Property to Purchaser

17429967.12

pursuant to this **Article XIII** absent the entry of a Sale Order by the Bankruptcy Court authorizing and directing such conveyance of the Property by Seller to Purchaser.

13.2.    **Purchaser Default**.  In the event that Purchaser shall be in default hereunder for any reason other than Seller's default, Seller may deliver a written notice to Purchaser stating with particularity the alleged default of Purchaser, the action required by Purchaser to cure such default and Seller's intent to terminate this Agreement if the default is not cured.  Purchaser shall have ten (10) days after receipt of such notice to cure the alleged default to Seller's reasonable satisfaction (and the Closing Date shall be delayed, if necessary, until the end of such ten (10) day period).  In the event such default is not cured within such ten (10) day period, then Seller may, as Seller's sole and exclusive remedy for such default, terminate this Agreement by written notice to Purchaser and the Title Company, whereupon Seller shall be entitled to retain the Earnest Money Deposit as full liquidated damages for such default of Purchaser.  It is hereby agreed that Seller's damages in the event of a default by Purchaser hereunder are uncertain and difficult to ascertain, and that the Earnest Money Deposit constitutes a reasonable liquidation of such damages and is intended not as a penalty, but as full liquidated damages.  Purchaser covenants not to bring any action or suit challenging the amount of liquidated damages provided hereunder in the event of such default.  Notwithstanding anything to the contrary contained herein, this provision shall in no way affect or impair Seller's right of recovery under any indemnity given by Purchaser in favor of Seller under this Agreement.

## ARTICLE XIV
## WAIVER OF INSPECTION, VIOLATIONS, AND LOCAL REQUIREMENTS

14.1.    Purchaser expressly waives any and all right to an inspection of the Property by a licensed inspector, licensed contractor or licensed engineer prior to the Closing Date.

14.2.    Notwithstanding the foregoing, Seller grants Purchaser and any Representative of Purchaser, after reasonable notice to Seller, reasonable access to conduct a final walk through of the Property with all utilities in service within forty-eight (48) hours prior to the Closing to ensure that all conditions of this Agreement have been met by Seller.

14.3.    Purchaser shall accept the Property subject to any and all violations of law, rules, regulations, ordinances, orders or requirements issued by any Federal, state, county, municipal or other department or governmental agency having jurisdiction against or affecting the Property (collectively, "Violations").  Seller shall have no obligation to cure or remove any Violations existing as of the Effective Date.

14.4.    To the extent the Town of Aurora, County of Erie, State of New York, or any other governmental agency or authority having jurisdiction (collectively, "Governmental Authorities") imposes requirements for issuance certificates of occupancy, certificates of compliance, certificates of inspection of sanitary sewer and/or storm sewer fixtures or facilities, or any other inspection and/or certification requirements in connection with and as a condition to the sale of the Property (collectively, "Local Requirements"), Purchaser shall be deemed to have waived all such Local Requirements to the extent the same are waivable.  To the extent any such Local

**Purchase and Sale Agreement**
**for 711 Knox Road, Aurora, NY**

Requirement or Local Requirements are not waivable by Purchaser, Purchaser shall comply with the Local Requirement(s) in question at Purchaser's sole cost.

## ARTICLE XV
## BROKER

15.1. **Broker Commission**. In connection with the consummation of the sale contemplated by this Agreement, Seller shall be solely responsible for paying a broker's commission to Hanna CRE from the proceeds of the Purchase Price and pursuant to the terms of a separate agreement in an amount not to exceed five percent (5%) of the gross profit. No commissions shall be due or payable to Hanna CRE unless and until the Closing contemplated hereby occurs. Purchaser and Seller each represent and warrant to the other that, except for the Hanna CRE, they have not employed, retained or consulted with any other broker, agent or finder in connection with the solicitation of Purchaser, the negotiations in connection with this Agreement or the purchase and sale referenced herein.

## ARTICLE XVI
## BIDDING PROCEDURES AND ALTERNATIVE TRANSACTION

16.1. **Sale Motion**. The Parties acknowledge that this Agreement is subject to approval of the Bankruptcy Court, which approval will include, among other things, issuance by the Bankruptcy Court of a Bidding Procedures Order directing the manner in which a bidding procedure will be conducted for solicitation of competing offers from third parties for the purchase of the Property. Depending upon the outcome of the bidding procedure, this Agreement may be subject to termination by Seller, as hereinafter provided. Seller shall file a motion to approve this Agreement (the "Sale Motion") and to establish reasonable bidding procedures (the "Bidding Procedures") within twenty-one (21) days of the Effective Date of this Agreement.

16.2. **Higher Bids**. This Agreement is subject to higher and better offers pursuant to the Bidding Procedures to be established by the Bankruptcy Court, and is subject to termination pursuant to **Article VIII**.

16.3. **Alternative Transaction**. If the Bankruptcy Court shall enter a final Sale Order approving a purchase of the Property by an Alternative Bidder (as hereinafter defined), then Seller shall terminate this Agreement, by written notice to Purchaser, Purchaser shall be entitled to receive a refund of the Earnest Money Deposit, and Seller shall be free to consummate a sale of the Property to the Alternative Bidder (and "Alternative Transaction").

16.4. **The Bidding Procedures**. Subject to the approval by the Bankruptcy Court, Bidding Procedures shall include the following:

16.4.1. the procedures for solicitation of competing offers from third parties for the purchase of the Property (each, a "Alternative Bidder");

16.4.2. any bid submitted by an Alternative Bidder shall include proof of funds and a signed Purchase and Sale Agreement along with a marked copy showing any changes from this Agreement;

**Purchase and Sale Agreement**
**for 711 Knox Road, Aurora, NY**

16.4.3.     any bid submitted by an Alternative Bidder must exceed the Purchase Price set forth in this Agreement by Ten Thousand Dollars ($10,000.00) (the "Initial Overbid");

16.4.4.     any subsequent bidding after the Initial Overbid shall be in minimum increments of $100,000.00, with minimum subject to modification in the Seller's sole and absolute discretion;

16.4.5.     the procedures for an auction to determine the highest and best offer for the Property (the "Successful Bidder");

16.4.6.     such further terms as are determined to be necessary by Seller in order to obtain Bankruptcy Court approval of the Bidding Procedures; and

16.4.7.     Purchaser shall be allowed to participate in the bidding process along with Alternative Bidders.

16.5.    **Backup Bidder**.  In the event that the Purchaser is not the Successful Bidder in the bidding process, the Purchaser's bid (as reflected in this Agreement or in any higher bid placed by Purchaser during the bidding process) shall remain irrevocable as the backup bidder (the "Backup Bidder") until the earliest of: (i) a period of sixty (60) days from the Sale Order, or (ii) the closing of a sale with the Successful Bidder.

## ARTICLE XVII
## MISCELLANEOUS

17.1.    **Amendment**. This Agreement shall not be amended, modified, supplemented, or revoked, except by a writing signed by Seller and Purchaser.

17.2.    **Governing Law**.  This Agreement shall be governed by and construed, interpreted and enforced in accordance with the Laws of the State of New York without regard to conflicts of Laws or choice of Laws principles thereof that would cause the application of the Laws of any jurisdiction other than the State of New York.

17.3.    **Binding Effect**.  This Agreement shall bind the parties hereto, their respective heirs, successors and assigns.  Except as set forth in **Section 17.5** hereof, neither Purchaser nor Seller may assign its interest hereunder without the prior written approval of the other party.

17.4.    **Notices**.  All notices required under this Agreement shall be in writing and shall be: (i) personally delivered; (ii) sent by certified mail, return receipt requested, postage pre-paid; or (iii) sent by nationally recognized overnight air courier service at the expense of sender, addressed to the parties hereto at their respective addresses set forth below.  Such notice or other communication shall be deemed given upon delivery, or if delivery is refused, upon refusal to accept delivery. Notice hereunder may be given at the following addresses:

If to Seller:                    The Diocese of Buffalo, N.Y.
                                 795 Main Street

|                      |                                       |
|----------------------|---------------------------------------|
|                      | Buffalo, New York 14203               |
|                      | Attn: Richard Suchan                  |
| With a copies to:    | Bond Schoeneck & King PLLC            |
|                      | 110 W. Fayette Street                 |
|                      | One Lincoln Center                    |
|                      | Syracuse, New York 13202              |
|                      | Attn:  Charles Sullivan, Esq.         |
|                      | Jeffrey Eaton, Esq.                   |
|                      | Email: csullivan@bsk.com              |
|                      | jeaton@bsk.com                        |
|                      | Bond, Schoeneck & King PLLC           |
|                      | 200 Delaware Avenue                   |
|                      | Suite 900                             |
|                      | Buffalo, New York 14202               |
|                      | Email: swheeler@bsk.com               |
|                      | Attn: Sarah Wheeler, Esq.             |
| If to Purchaser:     | World Mission Society, Church of God  |
|                      | a New Jersey Nonprofit Corporation    |
|                      | Email: Eduard.Rodriguez@zionusa.org   |
|                      | Attn: Eduard Rodriguez                |
| With a copy to:      | Augello & Matteliano, LLP             |
|                      | 403 Main Street, Suite 420            |
|                      | Buffalo, New York 14202               |
|                      | Email:    traugello@damglaw.com       |
|                      | Attn:   Thomas R. Augello, Esq.       |

The above notwithstanding, notice may be given by email from one party's attorney to the other party's attorney, with a copy by first class mail, addressed to the respective attorney above. Notice upon brokers, realtors, or other third parties shall be deemed courtesy copies only.

17.5.   **Time for Performance**.   Time shall be of the essence for purposes of this Agreement.

17.6.   **Assignability**.  Purchaser shall not have the right to assign this Agreement and its rights hereunder without Seller's prior written consent, unless such assignment is to a single asset entity in which Purchaser owns a controlling interest, in which case, Seller's consent shall not be required, provided, however, that upon such assignment, Purchaser shall in no way be released or relieved of any of its obligations under this Agreement.

**Purchase and Sale Agreement**
**for 711 Knox Road, Aurora, NY**

17429967.12

Case 1-20-10322-CLB,    Doc 3031-1,    Filed 07/18/24,    Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 34 of 54

17.7. **Number and Gender**. Whenever required by the context or use in this Agreement, the singular word shall include the plural word and the masculine gender shall include the feminine and/or neuter gender, and vice versa.

17.8. **Captions**. The paragraph titles, headings and/or captions contained herein have been inserted solely as a means of reference and convenience. Such captions shall not affect the interpretation or construction of this Agreement and shall not define, limit, extend or otherwise describe the scope of this Agreement or the intent of any provision hereof.

17.9. **Counterparts and Electronic Delivery**. This Agreement may be executed in any number of counterparts, each of which, when executed, shall be deemed to be an original, all of which shall be deemed to be one and the same instrument. This Agreement may be delivered by Facsimile or email transmission, and facsimile, email, or photocopies of the fully executed Agreement shall have the same force and effect as originals.

17.10. **Legal Counsel**. Purchaser and Seller acknowledge that they have been, or have had the opportunity to be, represented by legal counsel in connection with this Agreement and that this Agreement is the product of extensive negotiations between the parties. Purchaser and Seller agree that the fact that this Agreement or one or more provisions hereof were drafted by one party or the other shall not affect the meaning or interpretation of this Agreement.

17.11. **Waiver**. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party, shall be deemed to constitute a waiver by any party taking such action of compliance with any representation, warranty, covenant, or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

17.12. **Third Party Beneficiaries**. Nothing in this Agreement is intended, nor shall anything herein be construed, to confer any rights, legal or equitable, in any Person other than the parties hereto and their permitted successors and assigns. There are no third party beneficiaries to this Agreement.

17.13. **Cooperation and Further Assurances**. The Parties shall use their respective commercially reasonable efforts to (a) take or cause to be taken all actions, and to do or cause to be done all other things, necessary, proper or advisable to expeditiously satisfy the closing conditions set forth herein and to consummate the transactions contemplated hereby as promptly as practicable and evidence the consummation of the transactions contemplated hereby, and (b) obtain in a timely manner all necessary waivers, consents and approvals and to effect all necessary registrations and filings in connection with the foregoing. Seller shall assist with such other post-closing matters as Purchaser may reasonably request, provided that the performance of such matters is within Seller's ordinary course of business and does not require an order of the Bankruptcy Court.

17.14.  **No Merger**. Except as otherwise expressly provided herein, the provisions of this Agreement containing agreements between the parties relating to actions occurring after Closing shall not be merged into the instruments of Closing but shall expressly survive and be enforceable according to their terms.

17.15.  **Notification of Certain Matters**.  From time to time prior to the Closing Date, the Parties shall promptly notify each other of the occurrence or non-occurrence of any event or circumstance that as applicable, indicates (a) that any of the representations and warranties set forth herein may not be, will not be, or are not, true and correct, or (b) any failure on its part to comply with or satisfy, in any material respect, any covenant, agreement or condition to be complied with or satisfied by it pursuant hereto (any such notification, a "Required Notification"); provided, however, that in each case, such disclosure shall not be deemed to (i) amend or supplement any Schedule hereto, or (ii) cure any breach of such representation, warranty, covenant or agreement or satisfy any condition set forth herein.

17.16.  **Entire Agreement**. This Agreement, including the exhibits and schedules, contains the entire agreement between Seller and Purchaser pertaining to the transaction contemplated hereby and fully supersedes all prior agreements and understandings between Seller and Purchaser pertaining to such transaction. If any provision hereof is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect. This Agreement may be amended, modified, or supplemented only by an instrument in writing signed by the parties.

17.17.  **Escrow Agent and Earnest Money Deposit.** The Earnest Money Deposit made by Purchaser under the terms of this Agreement shall be held by the Seller's attorneys, **Bond, Schoeneck & King, PLLC** in a non-interest-bearing attorney's trust account, in accordance with and subject to the following provisions:

(a)  Escrow Agent, without risk to Escrow Agent, except for willful misconduct or fraud, shall place the Earnest Money Deposit in a non-interest bearing bank attorney trust account maintained at a commercial bank, savings bank or savings and loan association.

(b)  At the Closing, if any, Escrow Agent shall disburse the Earnest Money Deposit to Seller, and said Earnest Money Deposit shall be credited to the Purchase Price.

(c)  Upon receipt of written demand therefor signed by Seller, stating that Purchaser have defaulted in the performance of Purchaser's obligations under this Agreement and that Seller has terminated this Agreement on account of said default of Purchaser, Escrow Agent shall, subject to the provisions of **Section 17.17(g)**, disburse the Earnest Money Deposit to Seller; provided, however, that Escrow Agent shall not honor such demand until not less than five (5) days after the date on which Escrow Agent shall have given notice to Purchaser (in the manner specified in this Agreement for notices to be given).

(d)  Upon receipt of written demand therefor signed by Purchaser, stating that this Agreement has been terminated and that Purchaser are entitled under the terms of this Agreement to the return of the Earnest Money Deposit, Escrow Agent shall, subject to the provisions of **Section 17.17(g)**, disburse the Earnest Money Deposit to Purchaser; provided,

however, that Escrow Agent shall not honor such demand until not less than five (5) days after the date on which Escrow Agent shall have given notice to Seller (in the manner specified in this Agreement for notices to be given).

(e)    If an action or proceeding is commenced by either party to determine the rights of the parties to the Earnest Money Deposit, all attorneys' fees and court costs of the prevailing party shall be borne by whoever shall not prevail in such action or proceeding.

(f)    It is agreed that the duties of Escrow Agent are only as herein specifically provided, are purely ministerial in nature and that Escrow Agent shall incur no liability whatsoever except for willful misconduct or fraud. Seller and Purchaser hereby release Escrow Agent from any act done or omitted to be done by Escrow Agent in good faith in the performance of Escrow Agent's duties hereunder. If requested at Closing, Seller and/or Purchaser shall execute and deliver general releases in the usual form to Escrow Agent.

(g)    Escrow Agent is acting only as a stakeholder with respect to the Earnest Money Deposit. If any dispute shall arise as to whom the Earnest Money Deposit is to be disbursed, Escrow Agent shall not disburse the Earnest Money Deposit to either party but in such event shall hold the same until receipt by Escrow Agent of a written authorization signed by Seller and Purchaser directing the disposition of same, or in the absence of such authorization, Escrow Agent may hold the Earnest Money Deposit until the final determination of the rights of the parties in an appropriate action or proceeding. If such written authorization is not given, or an action or proceeding for such determination is not begun and diligently continued, Escrow Agent may, but is not required to, bring any appropriate action or proceeding for interpleader or other leave to place the Earnest Money Deposit in court pending such determination. All costs of such action or proceeding, including, without limitation, attorneys' fees of Escrow Agent are to be borne by the party who shall not prevail in such action or proceeding. Upon delivery of the Earnest Money Deposit in the manner herein provided, Escrow Agent shall have no further liability hereunder or otherwise. Escrow Agent shall have the right to represent Seller in any dispute between Purchaser and Seller with respect to the Earnest Money Deposit.

(h)    Escrow Agent has executed this Agreement solely to acknowledge Escrow Agent's receipt of the Earnest Money Deposit by check subject to collection, and to evidence Escrow Agent's agreement to act as escrow agent in accordance with the provisions of this **Section 17.17.**

**[Signature Pages Follow]**

**Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY**

17429967.12

**In Witness Whereof** the parties have executed this Agreement as of the day and year first written above.

**SELLER**: Diocese of Buffalo

_Richard C. Suchan_ (signature)
Signature

Richard C Suchan
Name

Chief Operating Officer
Title

**[Seller Signature Page – 711 Knox Road, Town of Aurora, New York]**

Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY

17429967 12

**PURCHASER**: World Mission Society, Church of God A NJ Nonprofit Corporation

_Signature_

Signature

JOO CHEOL KIM

Name

PRESIDENT

Title

**[Purchaser Signature Page – 711 Knox Road, Town of Aurora, New York]**

**Purchase and Sale Agreement**          **for 71**

17429967.12

**ESCROW AGENT**: Bond, Schoeneck & King, PLLC

_[signature]_
Signature

_Jeffrey D. Eaton_
Name

_Senior Counsel_
Title

[Escrow Agent Signature Page – 711 Knox Road, Town of Aurora, New York]

23

# Exhibit A-1

## Property Sketch



Exhibit A

Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY

17429967.12

Case 1-20-10322-CLB,    Doc 3031-1,    Filed 07/18/24,    Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 41 of 54

**Exhibit A-2**

Legal Description of the Property

## PARCEL A

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Aurora, County of Erie and State of New York, being part of Lot No. 48, Township 9, Range 6 of the Holland Land Company's Survey, bounded and described as follows:

BEGINNING at a point in the center line of Knox Road, distant 2232 feet southerly from its intersection with the center line of Willardshire Road; thence westerly at an exterior angle of 87° 36', 2097.17 feet to a point; thence northeasterly at an interior angle of 73° 00' 30", 345.47 feet to a point; thence westerly at an exterior angle of 71° 37' 30", 597.40 feet to a point in the easterly line of Lot No. 56, distant 12.63 feet southerly from the northeast corner of lands in said Lot No. 56 conveyed to Fred H. Reuter by deed recorded in Erie County Clerk's Office in Liber 3514 of Deeds at page 75 on March 25, 1944 (designated as Parcel A therein); thence northerly along said east line of Lot No. 56 forming an interior angle of 86° 50' with last above line, 316.92 feet to the northwest corner of lands in Lot No. 48 conveyed to Fred H. Reuter by deed aforesaid (designated as Parcel B therein); thence north 88° 30' east along the north line of lands so conveyed to Fred H. Reuter, 1200 feet to a point in the west line of the middle third of Lot No. 48; thence south 25' east, 257 feet; thence north 88° 05' east along the north line of lands so conveyed to said Fred H. Reuter, 1405 feet to a point in the center line of Knox Road being the northeast corner of lands conveyed to Fred H. Reuter by aforesaid deed; thence southerly along the said center line of Knox Road, 360 feet to the place of beginning.

## PARCEL B

ALL THAT TRACT OF PARCEL OF LAND, situate in the Town of Aurora, County of Erie and State of New York, being part of Lot No. 48, Township 9, Range 6 of the Holland Land Company's Survey, bounded and described as follows:

BEGINNING at a point in the center line of Knox Road distant 2232 feet southerly from its intersection with the center line of Willardshire Road; thence westerly at an interior angle of 87° 36.', 2097.17 feet to a point; thence southwesterly at an interior angle of 106° 59' 30", 189.95 feet to a point; thence southerly at an interior angle of 170° 04', 638.55 feet to a point; thence easterly at an interior angle of 83° 46', 206.85 feet to a point; thence easterly at an interior angle of 178° 52', 166.90 feet to a point; thence easterly at an interior angle of 181° 05' 425 feet to a point; thence southeasterly at an interior angle of 210° 14', 45 feet to a point; thence southeasterly at an interior angle of 196° 09', 100 feet to a point; thence southeasterly at an interior angle of 176° 47', 50 feet to a point; thence southeasterly at an interior angle of 158° 33', 53 feet to a point; thence northeasterly at an interior angle of 150° 15', 527 feet to a point; thence northeasterly at an interior angle of 165° 57', 35 feet to a point; thence northeasterly at an interior angle of 158° 13', 80 feet to a point; thence northeasterly at an exterior angle of 162° 15' 218 feet to a point; thence easterly at an interior angle of 203° 42', 400 feet to a point in the center line of Knox Road distant 406.35 feet northerly from the south line of said Lot No. 48 as measured along said center line of said Knox Road; thence northerly along said center line of Knox Road 734.67 feet to the place of beginning.

Exhibit A        Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY

17429967.12

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 42 of 54

## PARCEL C

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Aurora, County of Erie and State of New York, being part of Lots Nos. 47, 48, 55 and 56, Township 9, Range 6 of the Holland Land Company's Survey, bounded and described as follows:

BEGINNING at a point in the easterly line of said Lot No. 56, distant 2191.5 feet southerly from the center line of Willardshire Road as measured along said east line of Lot No. 56, being the northeast corner of lands in said Lot No. 56 conveyed to Fred H. Reuter by deed recorded in Erie County clerk's Office in Liber 3514 of Deeds at page 75 on March 25, 1944 (designated as Parcel A therein); thence southerly along said east line of Lot No. 56, 12.63 feet to a point; thence easterly at an interior angle of 93° 10', 597.40 feet to a point; thence southwesterly at an interior angle of 71° 37' 30", 535.42 feet to a point; thence southerly at an exterior angle of 170° 04', 638.55 feet to a point; thence westerly at an interior angle of 96° 14', 273.15 feet to a point; thence southerly at right angles about 825 feet to the Cazenovia Creek (formerly called the Buffalo Creek); thence westerly along the Cazenovia Creek, about 135 feet to the east line of Lot No. 55; thence southerly along said east line of Lot No. 55 to the center line of said Cazenovia Creek; thence northwesterly and northerly along said center line of Cazenovia Creek about 1965 feet to the northwesterly corner of lands in Lot No. 56 conveyed to Fred H. Reuter by aforesaid deed; thence northeasterly, northerly and easterly along the northerly and westerly lines of lands so conveyed to Fred H. Reuter by aforesaid deed the following 6 courses and distances: (1) North 66° 16' east, 188.60 feet; (2) North 9° 46' east, 268 feet; (3) North 13° 47' west, 105 feet; (4) North 36° 11' east, 106.8 feet; (5) South 73° 37' east, 273 feet and (6) South 87° 42' east, 439 feet to the point or place of beginning.

Exhibit A                                    Purchase and Sale Agreement
                                                  for 711 Knox Road, Aurora, NY

17429967.12

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 43 of 54

## Exhibit B

Bargain and Sale Deed

**THIS INDENTURE**, made the _____ day of _____ 2024,

BETWEEN

**Diocese of Buffalo**, a New York special act corporation created by the New York State Legislature pursuant to Chapter 568 of the Laws of 1951, having an office at 795 Main Street, Buffalo, New York 14203, party of the first part,

and,

**World Mission Society, Church of God a NJ Nonprofit Corporation**, a New Jersey not-for-profit corporation authorized to conduct business in New York, having an address at 880 Jackson Avenue, New Windsor, New York 12553, party of the second part,

**WITNESSETH** that the said party of the first part, in consideration of One Dollar ($1.00 and No More), lawful money of the United States, paid by the party of the second part, do hereby grant and release unto the party of the second part, the theirs or successors and assigns of the party of the second part forever,

**ALL THAT TRACT AND PARCEL OF LAND**,

Pursuant to Sections _____ of the _____, the Bankruptcy Court of _____ approved the sale contemplated herein by an Order dated _____ and located at Index No. _____ (the "Order"), attached hereto as **Schedule A** shall be incorporated herein and shall be understood to be a part hereof.

TOGETHER with all right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

Exhibit B

Purchase and Sale Agreement
for 711 Knox Road, Aurora, NY

17429967.12

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 44 of 54

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

**DIOCESE OF BUFFALO**

_____
Signature

_____
Name

_____
Title

STATE OF NEW YORK          )
                           )SS.:
COUNTY OF ERIE             )

On the _____ of _____ in the year 2024, before me, the undersigned, a notary public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**Exhibit B**                    **Purchase and Sale Agreement**
                                 **for 711 Knox Road, Aurora, NY**
17429967.12

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 45 of 54

**Exhibit C-1**

**PERMITTED EXCEPTIONS**

**Exhibit C**                    **Purchase and Sale Agreement**
                                    **for 711 Knox Road, Aurora, NY**

17429967.12

Case 1-20-10322-CLB,    Doc 3031-1,    Filed 07/18/24,    Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 46 of 54

# Exhibit D

## POST-OCCUPANCY AGREEMENT

**REAL PROPERTY**: a portion of real property located in the Town of Aurora, County of Erie, New York, commonly known as 711 Knox Road, Aurora, New York, Tax Map No. 163.00-3-23 (the "Real Property")

**SELLERS**: Diocese of Buffalo

**PURCHASER**: World Mission Society, Church of God a NJ Nonprofit Corporation

**SELLER'S ATTORNEY**: Bond, Schoeneck & King, PLLC, Attn: Charles Sullivan, Esq.; Jeffrey Eaton, Esq.; and Sarah Wheeler, Esq.

**BUYER'S ATTORNEY**: Augello & Matteliano, LLP, Attn: Thomas R. Augello, Esq.

WHEREAS, Seller and Purchaser (collectively, the "Parties") have entered into to that certain Purchase and Sale Agreement, dated May _____, 2024 (the "Agreement"), with respect to the above-described Real Property;

WHEREAS, due to constraints outside the Parties reasonable control, Seller requires additional time to remove religious materials and texts (the "Excluded Items") currently located on the Real Property, more specifically, located in the library (the "Library");

WHEREAS, Seller and/or its agents or contractors shall have access to the Library, together with ingress and egress through the Real Property, during reasonable business hours and upon reasonable notice to Purchaser, to remove the Excluded Items;

WHEREAS, Seller and/or its agents or contractors shall remove the Excluded Items on or before December 31, 2024 (the "Occupancy Period");

WHEREAS, the Parties hereby agree to provide for a hold back of sale proceeds due to Seller under the Agreement until such a time as Seller and/or its agents or contractors removes the Excluded Items from the Library, the terms and conditions of which are outlined below (the "Post-Occupancy Agreement"); and

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      The Parties agree the per diem value of Seller's sole use and occupancy of the Library after Closing is _____ ($____.00) (the "Per Diem Rate"). At Closing, Seller shall withhold from the sale proceeds received an amount equal to the Per Diem Rate multiplied by the number of days remaining in the calendar year (the "Withheld Funds"). The Withheld Funds

shall be deposited with Seller's Attorney and held in escrow until the Excluded Items are removed from the Real Property.

2.        Upon notification that the Excluded Items were removed from the Library, Seller's Attorney shall calculate the number of days the Excluded Items remained in the Library after Closing and multiply the same by the Per Diem Rate (the "Rent"). Seller's Attorney shall release to Purchaser the Rent from the Withheld Funds. Any Withheld Funds remaining after the deduction of Rent shall be promptly released to Seller.

3.        During the Occupancy Period, Purchaser affirmatively agrees to ensure the Library remains locked, with access and use strictly limited to Seller and/or its agents or contractors.

4.        Seller's attorneys shall not be liable for any act or omission to act under this Post-Occupancy Agreement, except for its own gross negligence or willful misconduct. The Seller's attorney may act upon any instrument or signature believed by it to be genuine and may assume that any person purporting to give any notice or instruction hereunder, reasonably believed by it to be authorized, has been duly authorized to do so. In the event that Seller's attorney should at any time be confronted with inconsistent or conflicting claims or demands by the parties hereto, Seller's attorneys shall have the right to interplead said parties in any court of competent jurisdiction and request that such court determine such respective rights of the parties with respect to this Agreement, and upon doing so, Seller's attorneys shall be released from any obligations or liability to either party as a consequence of any such claims or demands. After the Withheld Funds are disbursed, Seller's attorneys' duties and obligations hereunder shall cease and this Post-Occupancy Agreement shall terminate.

5.        Notices. All notices, demands or request provided for or permitted to be given pursuant to this Escrow Agreement must be in writing. All notices, demands and requests to be sent to the Parties shall be personally delivered, emailed, or sent by mail, postage prepaid, or delivered by a recognized overnight or same day courier or delivery service and addressed to the intended recipient of such notice at the address or email for such Party as set forth below or otherwise provided to the other Parties. All such notices, demands, or requests shall be effective on personal delivery or, upon electronic transmission, or if mailed, three (3) days following deposit in the mail as required by this Section.

6.        Seller's financial obligations arising out of or relating to or in connection with the storage of the Excluded Items during the Occupancy Period shall at no time exceed the amount of the Withheld Funds.

7.        Purchaser, as record title owner, shall be responsible for the payment and maintenance of any utilities servicing the Library and Real Property and the real property taxes and assessments affecting the Library and the Real Property.

8.        This Post-Occupancy Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one

**Exhibit D**                **Purchase and Sale Agreement**
**for 711 Knox Road, Aurora, NY**

17429967.12

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 48 of 54

and the same instrument. Moreover, signatures transmitted electronically by email, facsimile, or PDF, among others, shall be binding as if original.

9.      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Post-Occupancy Agreement.

10.     Any provision of the Post-Occupancy Agreement not expressly amended or modified herein shall remain in full force and effect.

11.     Neither this Post-Occupancy Agreement, nor any rights or obligations under it, may be assigned by either party without the prior written consent of the other party.

12.     The recitals of this Post-Occupancy Agreement are hereby incorporated herein as if fully set forth.

**[SIGNATURE PAGE TO FOLLOW]**

**Exhibit D**                                       **Purchase and Sale Agreement**
**for 711 Knox Road, Aurora, NY**

17429967.12

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 49 of 54

IN WITNESS WHEREOF, the undersigned have executed this Post-Occupancy Agreement as of this 12 day of ~~May~~, 2024.

June

SELLER: THE DIOCESE OF BUFFALO

_Signature_

_Richard C. Suchan_
Name

_Chief Operating Officer_
Title

PURCHASER: WORLD MISSION SOCIETY, CHURCH OF GOD A NJ NONPROFIT CORPORATION

_Signature_

_JOO CHEOL KIM_
Name

_PRESIDENT_
Title

Case 1-20-10322-CLB, Doc 3031-1, Filed 07/18/24, Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 50 of 54

**Exhibit 3**

(to Bidding Procedures Order)

Notice of Auction and Sale Hearing

17963105.v4-7/18/24

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | )  Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) |
|  | )  Chapter 11 |
| Debtor. | ) |
|  | ) |

## *NOTICE OF AUCTION AND SALE HEARING*

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On July __, 2024, the Diocese filed the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Certain Real Property at 711 Knox Road, East Aurora, New York; (B) Authorizing and Approving the Form of Purchase Agreement; (C) Scheduling an Auction and Hearing to Consider the Sale; and (D) Approving the Form and Manner of Service of Notice of Auction and Sale Hearing; (II) Approving the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (III) Granting Related Relief* [Docket No. ____] (the "Sale Motion")[1].

2.      The Diocese is seeking to sell certain real property located at 711 Knox Road, East Aurora, New York 14052 (the "Property") to World Mission Society, Church of God a NJ Nonprofit Corporation or such other purchaser who may submit the highest or otherwise best offer for the Property.

3.      On ____, 2024, the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court") entered an order [Docket No. ____] (the "Bidding Procedures Order") approving bidding procedures (the "Bidding Procedures") and granting other relief related to the proposed sale of the Property.  The Bidding Procedures approved by the Court are attached as *Exhibit 1* to the Bidding Procedures Order.  Pursuant to the Bidding Procedures Order, if the Diocese receives more than one Qualified Bid for the Property, an Auction for the Property shall take place on _____ __, 2024 at 12:00 noon (prevailing Eastern time) at the offices of Bond, Schoeneck & King, PLLC, The Avant Building, Suite 900, 200 Delaware Avenue, Buffalo, New York 14202-2107.  Only parties that have submitted Qualified Bids in accordance with the Bidding Procedures by the Bid Deadline may participate in the Auction.  Any party that wishes to take part in this process and submit a bid for the Property must submit a Qualified Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

17963105.v4-7/18/24

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 52 of 54

4.     The Sale Hearing to consider approval of the sale of the Property to the Successful Bidder or Back-Up Bidder free and clear of all liens, claims, encumbrances and other interests will be held before the before the Honorable Carl L. Bucki, United States Bankruptcy Court for the Western District of New York, at the United States Courthouse, 2 Niagara Square, Buffalo, NY 14202 on _____ __, 2024 at __:00 noon (prevailing Eastern time), or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than reflected on the Bankruptcy Court's docket or by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.     Parties can choose to appear either (i) in person at the Robert H. Jackson Courthouse, 2 Niagara Square, Buffalo, New York or (ii) telephonically (call in 1-571-353-2301, Courtroom ID 483077448#, and security pin 9999#).

6.     Objections, if any, to the sale, or the relief requested in the Sale Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Western District of New York (Buffalo Division), as soon as practicable in advance of the Sale Hearing; and (d) be served upon (i) counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Charles J. Sullivan, Grayson T. Walter, Justin S. Krell and Jeffrey D. Eaton (ii) the Office of the United States Trustee for the Western District of New York, 300 Pearl Street, Suite 401, Buffalo, NY 14202. Attn: Joseph W. Allen, (iii) counsel to the Official Committee of Unsecured Creditors, Pachulski, Stang, Ziehl & Jones, LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California, 90067-4003, Attn. James I. Stang, and 780 Third Avenue, 34th Floor, New York, New York, 10017-2024, Attn. Ilan Scharf, and (iv) those persons who have formally appeared and requested service in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. UNLESS AN OBJECTION IS SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING OR NOTICE.

7.     This Notice is subject to the fuller terms and conditions of the Sale Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Diocese encourages parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Property or obtaining a copy of any of the foregoing documents may make a written request to counsel to the Diocese, Bond Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York, 13202, Attn: Stephen A. Donato, Charles J. Sullivan, Grayson T. Walter, Justin S. Krell and Jeffrey D. Eaton. In addition, copies of the Sale Motion, the Bidding Procedures Order, the Bidding Procedures and this Notice can be obtained free of charge at https://case.stretto.com/dioceseofbuffalo and are on file with the Clerk of the Bankruptcy Court.

17963105.v4-7/18/24

Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09, Description: Exhibit A - Proposed Bidding Procedures Order, Page 53 of 54

Dated: _____, 2024

BOND, SCHOENECK & KING, PLLC

By: ___/s/ *Charles J. Sullivan*_____
    Stephen A. Donato
    Charles J. Sullivan
    Grayson T. Walter
    Justin S. Krell
    Jeffrey D. Eaton
    One Lincoln Center
    Syracuse, NY 13202-1355
    Telephone: (315) 218-8000
    Fax: (315) 218-8100
    Emails:   sdonato@bsk.com
              csullivan@bsk.com
              gwalter@bsk.com
              jkrell@bsk.com
              jeaton@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*

17963105.v4-7/18/24
Case 1-20-10322-CLB,   Doc 3031-1,   Filed 07/18/24,   Entered 07/18/24 15:21:09,
Description: Exhibit A - Proposed Bidding Procedures Order, Page 54 of 54