UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re
     THE DIOCESE OF BUFFALO, N.Y.,         BK 20-10322 CLB

                       Debtor.              DECISION & ORDER
-------------------------------------------------------

                Jones Day
                John D. Goetz, Esq., and Todd R. Geremia, Esq., of counsel
                500 Grant Street, Suite 4500
                Pittsburgh, Pennsylvania 15219-2514
                Special Counsel for Debtor

                Office of the U.S. Trustee
                Joseph W. Allen, Esq., Assistant U.S. Trustee
                Olympic Towers
                300 Pearl Street, Suite 401
                Buffalo, New York 14202


Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

      The law firm of Jones Day has filed an application for interim compensation of $235,214 for services rendered as the debtor's special counsel during the period from August 1, 2023, to February 29, 2024. Issues include whether the services were necessary or beneficial to the estate, and whether the rates charged are reasonable for work outside the area of special expertise for which counsel was retained.

      The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. Shortly thereafter, this Court approved the debtor's request to employ several professionals, including both bankruptcy and corporate counsel. Then on November 23, 2020, the New York State Attorney General

commenced a lawsuit for injunctive relief against the Diocese and others in state court. In its action, the Attorney General asserted that the Diocese had violated various statutes in its handling of allegations of sexual abuse by clergy. From the debtor's perspective, the litigation involved complex and novel issues of law with regard to application of the First Amendment. Based on that view, the Diocese filed a motion on December 22, 2020, for authorization to appoint Jones Day as its special counsel.

We need not repeat the objections raised with regard to the employment of Jones Day, inasmuch as those issues were discussed in the written opinion that this Court issued on February 23, 2021. *See In re The Diocese of Buffalo*, 625 B.R. 567 (Bankr. W.D.N.Y. 2021). For now, it suffices to note that in approving the selection of special counsel, we acknowledged the concerns of the Official Committee of Unsecured Creditors that the proposed rates to be charged by Jones Day were significantly higher than those of general bankruptcy counsel. Accordingly, our opinion included the following reminder:

> "To the attorneys at Jones Day, we reiterate our previous warning that '[t]he Court intends fully to monitor expenses' . . . . As required by 11 U.S.C. § 330(a)(3), the Court will also 'consider the nature, the extent, and the value of such services.' In particular, we will look for proof that the estate has accrued value from services at rates purportedly commensurate with experience and expertise."

625 B.R. at 571 - 72 (citations deleted).

As special counsel for the Diocese, Jones Day caused the Attorney General's lawsuit to be removed to federal court. It then negotiated a settlement that the

parties signed on October 24, 2022. Part of the settlement included the appointment of an independent auditor. Jones Day has stated that its services are still needed with regard to issues of compliance with the settlement agreement.

To date, Jones Day has filed seven applications for interim compensation and reimbursement of expenses. The first six of these applications cover time through July 31, 2023. As to these prior requests, the Court has approved compensation of $2,249,683 and has authorized the reimbursement of expenses totaling $22,808.70. The seventh application now under consideration seeks additional interim compensation of $235,214 and reimbursement of additional expenses totaling $730.66. As to this most recent request, the Office of the United States Trustee filed a limited objection with regard to time devoted to fee applications.

On June 24, 2024, this Court held a hearing to consider thirteen fee applications, including the seventh application of Jones Day. At that time, the United States Trustee reported that its objection to the Jones Day application was resolved by a stipulation to reduce the fee request by $11,734. The Court, however, raised additional concerns. In response, Jones Day submitted a supplemental statement on July 5. We have now studied this letter and have carefully analyzed all of the time records submitted in support of the fee application.

Discussion

Section 330(a)(1) of the Bankruptcy Code states the general rule for allowance of professional fees:

> "After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103 – (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses."

With regard to any fee application, however, the Bankruptcy Court retains a broad power of oversight and review. Thus, 11 U.S.C. § 330(a)(2) provides that the Court "may, on its own motion . . . award compensation that is less than the amount of compensation that is requested." *See In re Select Tree Farms, Inc.*, 568 B.R. 1, 4 (Bankr. W.D.N.Y. 2017). Further, in determining the amount of reasonable compensation, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors." 11 U.S.C. § 330(a)(3). Relevant factors include six considerations stated in the statute. *Id.* Section 330(a)(4) then identifies circumstances in which compensation should not be awarded.

Jones Day was appointed to serve as special counsel for the limited purpose of providing representation in the lawsuit that the New York State Attorney General had commenced for injunctive relief. On December 22, 2020, a partner of the firm submitted a declaration in support of its retention. Paragraph 8 of this document recites: "Jones Day is willing to render the necessary professional services described above as special litigation counsel and will not serve as general bankruptcy and reorganization counsel to the Diocese." The Court would later remind Jones Day of its limited role on December 12, 2022, on the occasion of a hearing on the fourth

application of Jones Day for compensation. Because the Diocese had reached a settlement with the Attorney General, the Court inquired about whether the Jones Day engagement would soon end. As indicated in the docketed transcript of that proceeding, the firm's representative advised that although some work was needed to implement the settlement, Jones Day expected that its involvement "will start to decline."

Now before the Court is the seventh fee application of Jones Day, which seeks compensation of $235,214. This fee represents an average monthly charge more than twice that of the prior allowance awarded in December 2023. From attorney time sheets attached to the seventh application, the Court learned for the first time that Jones Day had expanded its role to include work to restrict public access to allegedly sensitive information. On July 14, 2023, the Office of the Attorney General notified the Diocese that The Buffalo News had requested review of more than 25,000 pages of documents pursuant to New York's Freedom of Information Law ("FOIL"). *See* N.Y. PUB. OFF. LAW Ch. 47, Art. 6 (McKinney 2021). Over the objection of the Diocese, the Attorney General decided that the documents should be released. At the behest of its client, Jones Day then challenged this determination through what is commonly referred to as an Article 78 Proceeding. *See* N.Y. C.P.L.R. ART 78 (McKinney 2008).

In seeking the appointment of special counsel, the Diocese asserted that Jones Day possessed unique qualifications to address First Amendment issues, and that those qualifications justified a higher rate of compensation. At the time of the firm's appointment, one of its partners submitted a supporting affidavit in which he

represented that Jones Day "has developed expertise in safeguarding Catholic organizations' First Amendment rights to religious liberty." The Court has thus far taken this purported expertise into account. In considering the firm's first six applications for interim compensation, we accepted the proposed rates. But the Article 78 Proceeding is a new action in state court that is distinct from the lawsuit of the Attorney General that was settled in Federal District Court. Most significantly, the Article 78 Proceeding does not appear to involve the exercise of First Amendment prerogatives. With its supplemental letter of July 5 in support of its fee application, Jones Day attached a copy of the brief filed in the Article 78 Proceeding. Nowhere does it address any First Amendment issues.

Jones Day never applied to this Court for authorization to expand the scope of its engagement as special counsel. Rather, it apparently viewed the Article 78 Proceeding as an extension of its approved role. At the vary least, compensation for this new activity requires a robust and careful review. Justifications for a rate of compensation for defense of the Attorney General's lawsuit will not necessarily apply to another area of representation.

The seventh fee application of Jones Day seeks compensation for 304.3 hours of work by attorneys and paraprofessionals. For ease of analysis, the Court has re-grouped the submitted time entries into the following five categories:

**1. Fee/Employment Applications:** Attorneys may receive reasonable compensation for the preparation of fee applications. *See* 11 U.S.C. § 330(a)(6). In its seventh interim application, Jones Day seeks more than $23,000 for time spent in

preparing monthly fee statements and the sixth interim request.  The United States Trustee objected that these charges were excessive and related to some work that is not compensable.  At the hearing on June 24, 2024, the parties reported that Jones Day had consented to a voluntary reduction of $11,734 for this component of its application.  Having studied each of the related time entries, the Court finds the agreement to be reasonable.  Accordingly, the requested fee allowance will be reduced by the stipulated amount.

      **2. Audit and Compliance Review:** As part of its settlement with the Attorney General, the Diocese agreed to an annual audit of its activities.  With its seventh interim fee application, Jones Day submitted records showing almost $50,000 of time spent on implementation of the settlement.  The Court finds that these services relate to the firm's agreed engagement.  Accordingly, we make no adjustment to this portion of the fee request.

      **3. Pro Hac Vice Application:**  The Article 78 Proceeding was handled in part by an attorney not licensed to practice in New York.  In its seventh interim fee application, Jones Day sought payment for about $2,500 of time spent on a motion for pro hac vice admission of counsel.  Generally, arrangements for authorization to practice are overhead expenses not entitled to reimbursement.  If the firm had preliminarily moved to expand its engagement as special counsel, it might have sought to include the pro hac vice application as a billable expense.  Instead, we fall back to the usual understanding.  Accordingly, the compensation request will be reduced by $2,500.

**4. Opposition to Submission of Amicus Brief:** In the Article 78 Proceeding, The Buffalo News requested an opportunity to file an amicus brief in support of the Attorney General's decision to release information. Jones Day opposed this request and now seeks $20,412 for that effort. Section 330(a)(4)(A) of the Bankruptcy Code directs that in a case filed under Chapter 11, "the court shall not allow compensation for . . . services that were not – (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." The judges of New York State are fully capable of deciding the legal arguments that an amicus brief may present. Counsel may wish to challenge the merits of those arguments, but we see no benefit to the estate from efforts to silence even the consideration of an opposing point of view. Nor did the proper administration of this case require opposition to the mere presentation of a legal argument.

By choosing voluntarily to bring an Article 78 Proceeding in state court, the Diocese implicitly affirmed its trust in the ability of that tribunal to render a fair decision on the merits. Such trust belies the justification for opposing the submission of an amicus brief. Whatever may be the contents of those papers, the state court will exercise the same quality of judgment upon which the Diocese relied when it commenced the Article 78 Proceeding. Accordingly, this Court will deny the request for payment of $20,412 as compensation for time spent in objecting to the filing of an amicus brief.

**5. Response to FOIL Request:** Based on its review of the submitted time sheets, the Court calculates that Jones Day spent 191.95 hours in opposing the release

of information by the Attorney General under the New York Freedom of Information Law. This time includes litigation of the Article 78 Proceeding, but excludes the debtor's objection to consideration of an amicus brief. For the 191.95 hours of service, Jones Day requests compensation of $138,248.

In seeking appointment as special counsel, Jones Day asserted that it was uniquely qualified to represent the Diocese on matters involving First Amendment rights. Accepting this argument, we allowed the higher hourly rates that the firm believed were commensurate with its specialized skills. But the FOIL dispute and the Article 78 Proceeding are matters extraneous to the area of specialization for which Jones Day was first employed. The Court does not question the amount of time that Jones Day spent on FOIL issues or the quality of its work. However, we have no reason to find any distinct proficiency that might warrant an application of the same rates to its new endeavor. Nor do the time reports suggest unique qualifications. Between September 28 and October 12 of 2023, the firm recorded five entries for basic research on the proper procedures for initiating an Article 78 Proceeding. For this and all of its other work in responding to the FOIL request, Jones Day may receive reasonable compensation, but not at the enhanced rates that it was able to justify with regard to First Amendment issues.

The Bankruptcy Code directs that in determining the amount of reasonable compensation, the Court must take into account "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3)(F).

With regard to its work on FOIL issues, comparably skilled practitioners are litigators with the ability to handle an Article 78 Proceeding. Taking all factors into account, we find that the debtor's bankruptcy counsel serves as a proper benchmark. In its most recent fee application, that firm charged a blended rate of $378.75 for all attorney services. Applying that same rate to the 191.95 hours that Jones Day devoted to its response to the FOIL request, we derive a compensation of $72,701.06. This sum is a reduction of $65,546.94 from the suggested compensation.

To date, this Court has not ruled on any contested motion seeking the release of information in the possession of the Diocese. Nonetheless, in the Article 78 Proceeding, Jones Day has asserted on behalf of the debtor that disclosure would interfere with the bankruptcy process. Nothing in this decision should be viewed as an indication of either acceptance or rejection of that position.

Conclusion

In its seventh fee application, Jones Day requests an interim allowance of $235,214. For the reasons stated herein, the Court will enforce a reduction of $11,734 for work related to fee and employment applications; a reduction of $2,500 for work related to the pro hac vice application; a reduction of $20,412 for the objection to submission of an amicus brief; and a reduction of $65,546.94 for work related to the FOIL request. Altogether, the request for compensation will be reduced by $100,192.94. Accordingly for the period from August 1, 2023, to February 29, 2024, Jones Day is allowed interim fees of $135,021.06. Reimbursement of expenses in the

amount of $730.66 is approved. Thus, for fees and disbursements, Jones Day is granted a total interim allowance of $135,751.72. Pursuant to a prior arrangement that this Court approved on June 4, 2020, Jones Day has already received monthly advances in an amount greater than what this decision has approved. We will not require the excess to be disgorged at this time, but direct that overpayments be credited against prospective allowances.

So ordered.

Dated: August 7, 2024        /s/ Carl L. Bucki_____
     Buffalo, New York        Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.