UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re

    THE DIOCESE OF BUFFALO, N.Y.,          BK 20-10322 CLB


                Debtor.                        __DECISION & ORDER__
-------------------------------------------------------

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq., Grayson T. Walter, Esq.,
Charles J. Sullivan, Esq., Brendan Sheehan, Esq.,
Justin S. Krell, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for The Diocese of Buffalo, N.Y.

Pachulski Stang Ziehl & Jones LLP
Ilan D. Scharf, Esq., James I. Stang, Esq.,
Iain A.W. Nasatir, Esq., Hayley Winograd, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, New York 14604
Co-Counsel for Parish Steering Committee

Elsaesser Anderson, CHTD.
J. Ford Elsaesser, Esq., of counsel
320 East Neider Avenue, Suite 102
Coeur d' Alene, Idaho 83815
Co-Counsel for Parish Steering Committee

Jeff Anderson & Associates, PA
Jeffrey R. Anderson, Esq., Stacey Benson, Esq.,
Michael G. Finnegan, Esq., of counsel
366 Jackson Street, Suite 100
Saint Paul, Minnesota 55101
Attorneys for Various Claimants

Steve Boyd, PC
Stephen Boyd, Esq., of counsel
2969 Main St., Suite 100
Buffalo, New York 14214
Attorneys for Various Claimants

Marsh Law Firm PLLC
James R. Marsh, Esq. and Cori Iacopelli, Esq., of counsel
31 Hudson Yards, 11th Fl.
New York, New York 10001
Attorneys for Various Claimants

Pfau Cochran Vertetis Amala PLLC
Anelga Doumanian, Esq., of counsel
31 Hudson Yards, 11th Fl.
New York, New York 10001
Attorneys for Various Claimants

Law Offices of Mitchell Garabedian
Mitchell Garabedian, Esq., of counsel
100 State Street, 6th Floor
Boston, Massachusetts 02109
Attorneys for Various Claimants

Dan Chiacchia Attorneys, PLLC
Daniel J. Chiacchia, Esq., of counsel
5113 South Park Avenue
Hamburg, New York 14075
Attorneys for Various Claimants

Merson Law, PLLC
Matthew G. Merson, Esq., of counsel
950 Third Avenue, 18th Floor
New York, New York 10022
Attorneys for Various Claimants

Barclay Damon LLP
Jeffrey A. Dove, Esq., and
Kevin D. Szczepanski, Esq., of counsel
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for The Continental Insurance Company and
National Union Fire Insurance Company of Pittsburgh, PA

Plevin & Turner LLP
Mark D. Plevin, Esq., of counsel
580 California Street, Suite 1200
San Francisco, California 94104
Attorneys for The Continental Insurance Company

Plevin & Turner LLP
Miranda Turner, Esq., of counsel
1701 Pennsylvania Ave, NW, Suite 200
Washington, District of Columbia 20006
Attorneys for The Continental Insurance Company

David Christian Attorneys LLC
David Christian, Esq., of counsel
105 West Madison Street, Suite 2300
Chicago, Illinois 60602
Attorneys for The Continental Insurance Company

Coughlin Midlige & Garland LLP
William T. Corbett, Jr. Esq. and Laura A. Brady, Esq., of counsel
350 Mount Kemble Avenue
PO Box 1917
Morristown, New Jersey 07962
Attorneys for Selective Insurance Company of New York

Gibbons P.C.
Robert K. Malone, Esq., and Brett S. Theisen, Esq., of counsel
One Gateway Center
Newark, New Jersey 07102
Attorneys for Selective Insurance Company of New York

Kenney Shelton Liptak Nowak LLP
Judith Treger Shelton, Esq., of counsel
The Calumet Building
233 Franklin Street
Buffalo, New York 14202
Attorneys for Selective Insurance Company of New York

Goldberg Segalla LLP
Jonathan Schapp, Esq. and Adam R. Durst, Esq., of counsel
665 Main Street
Buffalo, New York 14203-1425
Attorneys for Employers Insurance Company of Wausau and
Wausau Underwriters Insurance Company

ArentFox Schiff, LLP
Everett Cygal, Esq., Joseph Mark Fisher, Esq.,
Dan Schufreider, Esq., of counsel
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Attorneys for The Catholic Mutual Relief Society of America

O'Melveny & Myers LLP
Tancred V. Schiavoni, Esq. and
Adam P. Haberkorn, Esq., of counsel
Times Square Tower
7 Times Square
New York, New York 10036
Attorneys for U.S. Fire Insurance Company

Clyde & Co US LLP
Marianne G. May, Esq., of counsel
340 Mt. Kemble Ave., Suite 300
Morristown, New Jersey 07340
Attorneys for U.S. Fire Insurance Company

Carlton Fields, P.A.
Robert W. DiUbaldo, Esq. and
Nora A. Valenza-Frost, Esq., of counsel
405 Lexington Avenue, 36th Floor
New York, New York 10174-0002
Attorneys for National Union Fire Insurance Company of
Pittsburgh, Pa.

        Gimigliano Mauriello & Maloney, PA
        John Maloney, Esq., of counsel
        163 Madison Avenue, Suite 500
        P.O. Box 1449
        Morristown, New Jersey 07962-1449
        Attorneys for Hartford Accident and Indemnity Company,
        Hartford Fire Insurance Company and First State Insurance
        Company

        Office of the U.S. Trustee
        Joseph W. Allen, Esq.
        Olympic Towers
        300 Pearl Street, Suite 401
        Buffalo, New York 14202

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

      Seventeen plaintiffs have filed motions for stay relief to allow the continuance of litigation in state court to determine liability and damages for injuries arising from alleged instances of sexual abuse. The debtor opposes these requests and asks the Court instead to appoint additional mediators who might assist the parties to resolve claims through the development of a consensual plan of reorganization. Meanwhile, various insurers have questioned whether counsel for abuse claimants have conflicts that limit or preclude their representation. All of these matters collectively involve the issue of how best to move this case toward confirmation of a reorganization plan.

      The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. More than 900 claims were thereafter filed by parties seeking to recover damages for sexual abuse. We need not here reiterate the profound complexities of this case, as those issues are adequately identified in our

prior decisions. *See, for example, In re Diocese of Buffalo*, 634 B.R. 839 (Bankr. W.D.N.Y. 2021). Due to those complexities, the Court in December of 2021 authorized the appointment of an initial mediator to assist with settlement negotiations. Thereafter, in January of 2023, at the request of the Diocese, we approved the selection of a second mediator.

Almost three years have transpired since this case was first referred to mediation, and more than twenty-two months have passed since the appointment of a second co-mediator. Nonetheless, the parties have yet to report even a partial settlement of the outstanding disputes.

Subject to exceptions not here relevant, the filing of the debtor's bankruptcy petition operated as an automatic stay of proceedings against the Diocese, including actions against the Diocese in state court to recover damages for sexual abuse. 11 U.S.C. § 362(a)(1). On September 10, 2024, the seventeen moving parties requested limited relief from the automatic stay for the purpose of obtaining a judgment, but not for the purpose of enforcing that judgment. The movants contend that because mediation has failed to produce a confirmed plan, they should be allowed at least an opportunity at this time to establish the value of their claims. The Official Committee of Unsecured Creditors supports the motions. In opposing stay relief, the Diocese and a committee of parishes assert the need for further mediation and urge the appointment of two additional mediators to assist with that process. Various insurance companies ask that the Court defer any decision until they have had an opportunity for discovery, particularly on the question of whether counsel for the movants can ethically

represent multiple plaintiffs. In a separate but related motion, the Continental Insurance Company has moved to compel attorneys for abuse claimants to comply with the disclosure requirements of Bankruptcy Rule 2019.

The Court has carefully considered each of the many arguments that the parties have presented in their extensive papers and at the hearings. Our discussion, however, will focus on those issues that determine the outcome of the outstanding motions.

### Request for Stay Relief

Section 362(d) of the Bankruptcy Code states in relevant part that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." In their motions for stay relief, the seventeen claimants have sought authorization only to determine liability and damages, and not to enforce any resulting judgment. After considering the current circumstances of this case, we find good cause to modify the stay.

In its decision in *In re Sonnax Industries, Inc. (Sonnax Industries, Inc. v. Tri Component Products Corp.)*, 907 F.2d 1280 (2d Cir. 1990), the Court of Appeals identified twelve factors "to be weighed in deciding whether litigation should be permitted to continue in another forum." We have carefully studied each of these factors, but find that in the present instance, the outcome is controlled by the twelfth

factor, namely "the impact of the stay on the parties and the balance of harms." *Id.* at 1286.  Earlier in this case, we might have continued the automatic stay.  But with the passage of almost five years since the bankruptcy filing, the balancing of interests has shifted, at least with regard to the parties that have moved for stay relief.  We reach this conclusion for three reasons.

    **A.  Prejudicial Impact of Further Delay:** The Bankruptcy Code anticipates that in every Chapter 11 case, the day will come when the debtor will make some sort of distribution on account of allowed claims.  Presently, each of the seventeen movants has a claim that is unliquidated and disputed.  Until the claims are resolved, no distribution is possible.  These are not the typical contract claims of a commercial enterprise, where a creditor can usually establish liability by reference to books and records.  Rather, the claims allege torts for which proof of liability will likely require eyewitness testimony.  Many of the instances of alleged abuse occurred decades ago.  Since the filing of bankruptcy, an undetermined number of claimants have died.  If their claims had been fully liquidated, at least a right of distribution would survive for the benefit of the victim's estate.  But if the claim is not determined during the lifetime of witnesses, the ability to establish liability may be compromised or eliminated.  Under these circumstances, further delay in making that determination is unduly prejudicial to claimants.

    **B.  Diminishing Justification for Further Delay:** By imposing a pause on litigation, the automatic stay creates opportunities for settlement of claims and a resolution of payment obligations.  Nonetheless, the continuation of the stay should be

purposeful and not an excuse for endless procrastination. Here, almost five years have passed since commencement of the bankruptcy proceeding. Despite the assistance of skilled mediators, the parties have failed to report any consensus regarding the outline of a confirmable plan. Admittedly, some of the delay is attributable to factors beyond anyone's control, such as the need to await passage of a bar date. Still, the parties have had ample opportunity to work for a resolution. With each passing day, the lack of settlement suggests the need to try a different approach. Litigated disputes are often settled on the courthouse steps. By pushing litigants closer to a trial of tort claims, we hope that the parties may better appreciate their risks and the benefits of a consensual plan.

**C. Prejudicial Impact on Rights against Joint Tortfeasors:** In each of the seventeen motions, a claimant seeks to pursue litigation against both the Diocese and others. When balancing interests, we must consider the consequences of delay as it affects the obligations of all defendants.

The motions for stay relief can be divided into two categories. The first is a group of five motions that involve lawsuits in which the Diocese is a co-defendant with a religious order. Four of these orders operated high schools, which are also named as defendants. Unlike parishes that are affiliated with the Diocese, the religious orders are separate and independent entities with assets not subject to Diocesan control. We find no good reason to restrain litigation against religious orders. On the other hand, considerations for judicial economy suggest that lawsuits against a religious order should be tried with related claims against the Diocese. *See In re Sonnax Industries,*

*Inc.*, 907 F.2d at 1286 (recognizing the interests of judicial economy as an additional factor in allowing stay relief). Moreover, if satisfied from assets of the religious order, any judgment would reduce the need for recovery from the bankruptcy estate. In balancing these considerations, we find that good cause exists to grant the request for stay relief to allow a determination of the liability of the Diocese and of any co-defendant religious order.

The second group consists of thirteen motions that involve actions in which the Diocese is a co-defendant with one or more parishes.[1] The Diocese of Buffalo had closed a significant number of parishes prior to the filing of its bankruptcy petition in 2020. Since then, it has announced the further closing or consolidation of more than half of the parishes that were in existence on the date of filing. In all but one instance, the requests for stay relief will affect litigation against parishes that are closed, or are scheduled for closing or consolidation, or are targeted for merger.

Pursuant to 11 U.S.C. § 362(d)(1), cause for stay relief may include "the lack of adequate protection of an interest in property." The text of the statute refers not to property of the estate, but to any property in which the moving party may have an interest. To the extent that a parish is found jointly liable for an incident of abuse, plaintiffs may look to parish assets for recovery. But the possibility exists that those assets may be dissipated by reason of a defendant's closing, merger or consolidation. For example, if an insolvent parish consolidates into a parish with assets, a plaintiff

---

[1] One motion falls into both groups, as the state court defendants include both a parish and a religious order, as well as the Diocese.

with an abuse claim against the latter may find a dissipation of resources that would otherwise be available exclusively for payment of his or her damages. No one has made an offer of adequate protection for rights that are thereby impacted. Unless we allow a determination of liability, however, no one is positioned to establish the need for adequate protection of claims against co-defendants. Delay may inhibit a plaintiff from tracing the assets of a co-defendant. By causing a change in the financial status quo of its co-defendants, the Diocese has created an additional justification for stay relief.

**Other Objections to Stay Relief:** The Diocese contends that the motions for stay relief are test cases for which relief should be granted only upon a demonstration that the plaintiffs are a fair representation of the overall class of sexual abuse claimants. We reject the premise of this argument. Whether or not the parties wish to view the seventeen lawsuits as a test, this Court has considered each motion on its own merits. If any party in interest believes that the cases are not representative, it can create a different mix merely by securing stay relief with regard to other litigants. In all instances, this Court intends to examine whether the particular movant has established an entitlement to relief under the same balancing test that we have employed herein.

The motions for stay relief were filed by attorneys who represent multiple claimants. Various insurers ask that the Court defer a decision on the motions until after a resolution of conflicts of interest that may arise from these multiple representations. We reject this suggestion due to a lack of standing by the insurers.

Competent and diligent representation is a duty that attorneys owe to their client, not to their client's opponent. *See* Rules of Professional Conduct 1.7, 22 N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0 (2022). We trust that all counsel will proceed ethically, particularly in the event that a non-waivable conflict were to arise. While omnipresent, these ethical concerns do not speak to the merits of stay relief.

Based upon a balancing of all interests, we find that stay relief should be granted. Because the motions seek only an opportunity to determine liability and damages, our ruling will still preserve the stay for purposes of addressing the satisfaction of claims. No judgment in state court shall create a lien against assets of the debtor or its estate. Until further order of the Court, the automatic stay will remain in effect with regard to the enforcement of any judgment against the debtor.

## Appointment of Additional Mediators

In opposing the motions for stay relief, the Diocese urged the Court to instead appoint two additional mediators to assist the parties in the negotiation of a settlement. We reject the notion that stay relief and mediation are preclusive alternatives. Our decision to grant stay relief does not prevent concurrent discussions and may even create additional incentives for serious negotiation. Nonetheless, we will treat the debtor's statement of opposition as a motion to authorize the employment of additional mediators.

Mediation is a useful process that aims to promote the amicable settlement of disputes. With full appreciation for its value, this Court has previously approved the selection of mediators for this case. In each instance, the Court found good cause for

the appointment. Thus, in December of 2021, we selected an initial mediator. *See In re Diocese of Buffalo, N.Y.*, 634 B.R. 839 (Bankr. W.D.N.Y. 2021). Thereafter, we appointed supplemental mediators, but only after confirming the acquiescence of the existing mediator. In the present instance, however, the debtor requests additional appointments without any recommendation from or notice to the current mediators. Without such input, we lack sufficient background to decide whether additional mediation will serve as a helpful resource or only as a cause for delay.

Unless compelled by some exigent circumstance, this Court will not interfere with the work of a mediator. Undue interference would occur if we were to appoint yet another mediator without even hearing the views of anyone who now serves in that role. Accordingly, we will at this time deny without prejudice the request to appoint two additional mediators.

Disclosures under Bankruptcy Rule 2019

Aside from its opposition to the motions for stay relief, the Continental Insurance Company has moved to compel all law firms that represent multiple claimants to file disclosures under Bankruptcy Rule 2019. For the reasons stated hereafter, this motion is denied without prejudice.

Bankruptcy Rule 2019(b)(1) states as follows:

> "In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or

insiders of one another."

Continental contends that various law firms are representing multiple abuse claimants, and that those firms must therefore file a verified statement as described in subdivision (c) of the rule. What Continental overlooks, however, is that the activities of the law firms have thus far not fallen within the definition of representation.

Subdivision (a)(2) of Rule 2019 states that for purposes of the rule, "'[r]epresent' or 'represents' means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another." Notably, this subdivision places no comma after the word "court." Consequently, the rule applies only to either of two activities. The first occurs when someone "takes a position before the court . . . regarding the confirmation of a plan on behalf of another." The second involves the solicitation of votes regarding a plan. Here, no plan of reorganization has yet been filed. Without a plan, no firm can yet take a position before this Court regarding its confirmation. Similarly, there exists no plan on which a firm can solicit votes.

Rule 2019 directs that when a plan is filed, attorneys who represent multiple creditors will need to file a verified statement if they intend to take a position before the Court regarding confirmation, or if they intend to solicit votes. We trust that an attorney with any such intention will comply with the disclosure requirements of Rule 2019. At this moment, however, the obligations under Rule 2019 have not yet matured.

Serious ethical concerns may arise from the representation of multiple parties.

For example, claimants may compete for rights to a limited pool of assets. In such instances, the successful advocacy of a claim of one client may reduce the percentage of distribution to another. Whether such conflicts can be waived is an issue not now under consideration. While recognizing the need for ethical diligence, we merely find that Rule 2019(b) does not yet apply to representation in this case. If a plan is ever brought before this Court, any party in interest may then move for appropriate sanctions under Bankruptcy Rule 2019(e).

## Status Conference

All of the motions relate to a serious challenge, namely how to advance this case toward plan confirmation. To facilitate this process, Congress amended the Bankruptcy Code in 2005 to permit status conferences. Thus, 11 U.S.C. § 105(d)(1) now provides that the Court, on its own motion, "shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case." Until now, we have allowed ample opportunity for the parties to attempt a settlement. The time has come, however, for the Court to inquire about progress.

In the role of mediator, Retired Justice Patrick NeMoyer has been interacting with the parties for almost two years. During that time, the Court has avoided any discussion about the case with Justice NeMoyer. Without seeking access to privileged communications, the Court will direct the debtor and will invite all parties and Justice NeMoyer to participate in a status conference at 11 A.M. on December 13, 2024. In particular, the Court will seek comment about the likelihood of settlement. Of course, mediated negotiations can always continue even during the course of trials. But unless

we have some reason to believe that a plan of reorganization is in the offing, the Court might consider other options. These may include a resumption of litigation regarding the existence of insurance coverage. The Court may also seek a fuller explanation of what resources are available to fund any plan proposal.

      For the status conference, the Court selected a time that follows promptly after another hearing that many of the parties have scheduled in this case. Participants may appear in person or by telephone. The bankruptcy clerk will be directed to arrange appropriate notice of the status conference to creditors and parties in interest.

## Conclusion

      The seventeen motions for stay relief are granted, to the effect that the movants may resume litigation in state court to determine liability and damages, but not for purposes of enforcing any judgment or to impose a lien on assets of the debtor. Both the motion for appointment of additional mediators and the motion to compel disclosures under Bankruptcy Rule 2019 are denied without prejudice. To further the expeditious and economical resolution of this case, the Court will hold a status conference as described herein.

      So ordered.

Dated: November 22, 2024         /s/ Carl L. Bucki_____
      Buffalo, New York         Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.