UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re
    THE DIOCESE OF BUFFALO, N.Y.,          BK 20-10322 CLB

           Debtor.                        <u>DECISION & ORDER</u>
-------------------------------------------------------

        Bond, Schoeneck & King, PLLC
        Stephen A. Donato, Esq., of counsel
        One Lincoln Center
        Syracuse, New York 13202-1355
        Attorneys for The Diocese of Buffalo, N.Y.

        Blank Rome LLP
        James R. Murray, Esq., of counsel
        1825 Eye Street NW
        Washington, District of Columbia 20006
        Attorneys for The Diocese of Buffalo, N.Y.

        Pachulski Stang Ziehl & Jones LLP
        Ilan D. Scharf, Esq., of counsel
        780 Third Avenue, 34th Floor
        New York, New York 10017
        Attorneys for Official Committee of Unsecured Creditors

        Burns Bair LLP
        Timothy W. Burns, Esq., of counsel
        10 E. Doty Street, Suite 600
        Madison, Wisconsin 53703-3392
        Special Insurance Counsel for Official Committee of Unsecured
        Creditors

        Elsaesser Anderson, CHTD.
        J. Ford Elsaesser, Esq., of counsel
        320 East Neider Avenue, Suite 102
        Coeur d' Alene, Idaho 83815
        Co-Counsel for Parish Steering Committee

        Goldberg Segalla LLP
        Jonathan Schapp, Esq., of counsel
        665 Main Street
        Buffalo, New York 14203-1425
        Attorneys for Employers Insurance Company of Wausau and
        Wausau Underwriters Insurance Company

>           Plevin & Turner LLP
>           Miranda Turner, Esq., of counsel
>           1701 Pennsylvania Ave, NW, Suite 200
>           Washington, District of Columbia 20006
>           Attorneys for The Continental Insurance Company
>
>           O'Melveny & Myers LLP
>           Adam P. Haberkorn, Esq., of counsel
>           1301 Avenue of the Americas, Suite 1700
>           New York, New York 10019-6022
>           Attorneys for Pacific Employers Insurance Company
>
>           Patrick H. NeMoyer, J.S.C. (Retired)
>           80 Squire Drive
>           Orchard Park, New York 14127
>           Mediator
>
>           John - AB714Doe
>
>           Office of the U.S. Trustee
>           Joseph W. Allen, Esq.
>           Olympic Towers
>           300 Pearl Street, Suite 401
>           Buffalo, New York 14202

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

      Pursuant to 11 U.S.C. § 105(d), we now consider limitations and conditions that might promote a more expeditious and economic handling of this case.

      The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. No one questions the enormous complexities of this case. More than 900 claims have been filed by parties seeking to recover damages for alleged instances of sexual abuse. Insurers have disputed coverage, and for some claims, insurance appears not to exist. Meanwhile, the Diocese reports a

need to restructure its operations. To this end, it has announced the closing or merger of more than half of its affiliated parishes. Monthly operating reports indicate financial losses. The debtor has filed asset schedules which suggest access to limited resources for the satisfaction of claims. All the while, the debtor has paid more than $17 million on professional fees and expenses.

In a previous opinion in this case, we observed that "[g]iven the complexity of issues, contested litigation will take years if not decades to complete." *In re Diocese of Buffalo*, 634 B.R. 839 (Bankr. W.D.N.Y. 2021). For this reason, we have urged all parties to work in good faith for a settlement. To assist this process, we have appointed respected retired judges to serve as mediators. On several occasions, at the debtor's request, we granted temporary stays of litigation against parishes and affiliates, in order to allow time to focus on settlement negotiations. We have authorized the Diocese to employ an insurance archivist to complete an exhaustive search for insurance polices. Of course, some delays are inevitable, such as those caused by a need to await the deadline for filing claims. But despite best efforts to achieve a settlement, negotiations have thus far failed. As this case approaches the fifth anniversary of its filing, no plan of reorganization has been proposed. Concerned for this lack of progress, the Court directed the debtor and invited all interested parties to attend a status conference on December 11, 2024.

Section 105(d)(1) of the Bankruptcy Code states that on its own motion, the Court "shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case." Additionally, subdivision (2) of section 105(d)

provides that unless inconsistent with another provision of the Bankruptcy Code or with the Federal Rules of Bankruptcy Procedure, the Court "may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."

Enacted in 2005, section 105(d)(2) grants authority to mandate steps that will advance the development of a confirmable plan. Under the statute, these broad powers may be exercised only after the status conference that is permitted under the first subdivision of section 105(d). Here, at the conference on December 11, we allowed full opportunity for all interested parties to offer their recommendations regarding the management of this case. Having carefully considered all comments, we now issue the directions recited hereinafter. The Court will divide its discussion into three parts: first, the continuation of negotiations with assistance of an additional mediator; second, the imposition of limitations and conditions on mediation; and third, the scheduling of proceedings to confirm the availability of estate assets.

Continuance of Mediated Negotiations

Due to the failure of negotiations, the Court is increasingly reluctant to restrain the litigation of disputes. Thus, on September 30, 2024, we denied the debtor's motion for another temporary stay of actions against parishes and affiliates. *See In re Diocese of Buffalo*, 663 B.R. 197 (Bankr. W.D.N.Y. 2024). Then on November 22, 2024, we granted limited stay relief to 17 claimants seeking to determine abuse claims against the Diocese itself in state court. *See In re Diocese of Buffalo*, __ B.R. __, 2024 WL 5001744 (Bankr. W.D.N.Y. 2024). Nonetheless, as stated in the later of these

decisions, we reject any suggestion "that stay relief and mediation are preclusive alternatives. Our decision to grant stay relief does not prevent concurrent discussions and may even create additional incentives for serious negotiations." 2024 WL 5001744, at *4. Accordingly, we now look to promote and encourage the continuation of settlement discussions.

The debtor as well as the Creditors' Committee and various other interested parties have urged the appointment of an additional mediator. Previously, the Court expressed its reluctance to consider this possibility without first hearing the views of one of the current mediators. *See In re Diocese of Buffalo*, __ B.R. __, 2024 WL 5001744 at *4 (Bankr. W.D.N.Y. 2024). The December 11th conference provided an opportunity to receive this input.

The Honorable Patrick NeMoyer, a retired Justice of the Appellate Division of the New York State Supreme Court, has served as the primary mediator for the past two years. At the status hearing, Justice NeMoyer expressed his belief that the selection of an additional mediator with bankruptcy experience might facilitate a settlement. Justice NeMoyer advised that he would remain available to assist the quick involvement of any additional mediator. The position of the current mediator is not inconsistent with the request of debtor's counsel to allow negotiations for several more months. Fearing that the parties may have reached an impasse, the Court does not want further discussions to serve as an excuse for delay. However, at the status conference, we also heard the assurances of numerous counsel that their clients desire to resume mediation in good faith.

Litigation is expensive in both dollars and delay. To avoid these costs, the parties must renew their commitment to seek a fair and realistic settlement. Based on representations at the status conference, the Court finds that the appointment of an additional mediator is necessary and appropriate to facilitate a resolution. If such efforts are not successful in the near term, however, we may have no reasonable alternative but to compel a more robust resumption of litigation, particularly on issues such as insurance coverage.

The various parties have suggested the names of several potential mediators. Most are retired judges and all appear well qualified to serve in this role. At the current stage of negotiations, however, the Court prefers not to show deference to the views of any participant. Instead, we have conducted an independent consideration of qualified candidates. Based on this review, the Court has selected Melanie Cyganowski to serve as mediator. As a retired bankruptcy judge for the Eastern District of New York, Cyganowski enjoys broad knowledge and experience in the field of bankruptcy law. In addition, her background includes familiarity with the community that the debtor serves. She previously resided in Buffalo and has conducted scholarly research on the practice of law in this region. *See* Melanie Cyganowski & H.A. Zionts, *Survey: The Buffalo Polish-American Legal Experience*, 30 Buff. L. Rev. 161 (1981). Perhaps most significantly, before making its selection, the Court spoke with Judge Cyganowski and was impressed with her knowledge of and familiarity with the special challenges of a Diocesan bankruptcy.

Limitations and Conditions of Mediation

Mediation is appropriate when used to facilitate a more prompt resolution of disputes. No one should view the continuation of mediated negotiations as a departure from a commitment to resolve this matter as quickly as practicable. All creditors deserve a resolution of their claims. The debtor is entitled to seek the opportunity of a fresh start. With a desire to advance these objectives, the Court will impose the following additional protocols:

1. All parties are directed to cooperate and to attend any session at which the mediators may request their presence. If any party refuses to participate, Mediator Cyganowski may contact the Court by simple letter to request the issuance of an Order to Show Cause why active engagement should not be compelled.

2. The debtor shall pay the fees and expenses of the mediator, but shall be reimbursed for one-half of those fees and expenses by the Reimbursement Defendants identified on Schedule 1 to the prior mediation order of March 31, 2023.

3. Without offering any details about discussions, the mediator shall report periodically to the Court about whether the parties are making progress in their negotiations.

4. September 1, 2025, is set as the deadline by which the debtor shall file a disclosure statement and plan of reorganization. Upon a demonstration of adequate progress in negotiations, the Court might allow a short extension of this deadline. If the debtor is unable to file a disclosure statement and plan within the time limit, the Court will consider a fuller resumption of litigation, including but not necessarily limited

to actions involving the scope of insurance coverage in either state or federal court.

The Court otherwise places its trust in the appointed mediators, and will therefore mandate no particular methodology for negotiations. For example, Mediator Cyganowski may choose to conduct sessions remotely or in person. At all times, upon proper motion, any party may seek further guidance from the Court.

Availability of Assets

At the status conference, the debtor reported that it had committed to pay at least $100 million toward a settlement. In response to questions about the source of any such funds, counsel advised that the Diocese might utilize proceeds from the liquidation of real property that is titled either in the debtor's own name or in parishes that are now being closed.

Section 1129(a)(3) of the Bankruptcy Code allows confirmation of a plan only when it "has been proposed in good faith and not by any means forbidden by law." A concern is whether some properties are held in trust for a particular purpose and might therefore not be available to fund a settlement. As they proceed with negotiations, parties must realize that the availability of real estate proceeds is in question. To resolve this uncertainty and thereby to facilitate the development of a plan that the Court can confirm, we need to begin the process of determining the accessibility of assets, particularly under the *cy pres* doctrine of New York law.

On July 18, 2024, the Diocese filed a motion to authorize the sale of real property that had been previously used as a seminary at 711 Knox Road in East Aurora, New York. During a hearing on that request, the Court asked about the same

issue that we identify above as to whether the sale proceeds might be subject to an implied trust.  For this reason, in approving the sale, the Court signed an order on November 20, 2024, which stated that the proceeds "shall not be disbursed except as directed by further order of the Court."  Inasmuch as the parties will soon resume settlement negotiations, the time has come to determine the availability of seminary proceeds.  Are these funds general assets of the Diocese, or are they held in trust to fulfill the specific intentions of donors?  The answer may determine whether proceeds are an asset of the estate that are available to fund a plan.  *See* 11 U.S.C. §541(d). Accordingly, the Court directs the debtor to seek access to these funds by motion to be set for hearing no later than the end of February 2025.  Notice of this motion should be served on the Official Committee of Unsecured Creditors, on the Parish Steering Committee, on the Office of the United States Trustee, and on all parties who have requested service of papers.  To assist the Court with its deliberations, the debtor's moving papers should include a report about the source of funding for property acquisition and development.  At the hearing, the Court will entertain argument from any person claiming a beneficial interest in the property.  We also invite other motions to clarify the availability of proceeds from parish properties.

Conclusion

For the reasons stated herein, the Court will appoint Melanie Cyganowski, a retired bankruptcy judge from the Eastern District of New York, to serve as a joint mediator to assist with negotiations regarding the terms of a plan of reorganization.  All parties shall follow the aforesaid guidelines for mediation.  By appropriate motion,

the debtor shall move for authority to use proceeds from the sale of the seminary property. Otherwise, to the extent allowed under 11 U.S.C. § 105(d)(2), the Court will reserve the option to issue further orders prescribing such limitations and conditions as may be appropriate to ensure the expeditious and economic handling of this case.

So ordered.

Dated: January 13, 2025         __/s/ Carl L. Bucki_____
      Buffalo, New York         Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.