UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Buffalo, N.Y.,

                Debtor.

Case No. 20-10322

Chapter 11

# CO-MEDIATORS' FIRST REPORT

Pursuant to the *Decision & Order*, dated January 13, 2025 [Dkt. No. 3501] (the "**Mediation Order**"), the Court appointed the Hon. Melanie L. Cyganowski (Ret.) as additional mediator (the "**Mediator**"), to serve alongside the Hon. Patrick H. NeMoyer (Ret.)[1] (together, the "**Co-Mediators**"), to conduct a mediation among the Diocese of Buffalo, N.Y. (the "**Debtor**"), the Parishes, and certain other Catholic-affiliated entities (collectively, the "**Parishes**" and, together with the Debtor, the "**Diocesan Parties**"), the Official Committee of Unsecured Creditors (the "**Committee**"), the Selective Insurance Company of New York f/k/a Exchange Mutual Insurance Company ("**Selective**"), the Continental Insurance Company ("**Continental**"), Employers Insurance Company of Wausau and Wausau Underwriters Insurance Company (together, "**Wausau**"), Catholic Mutual Group ("**Catholic Mutual**"), National Union Fire Insurance Company of Pittsburg, PA ("**National Union**"), the National Catholic Risk Retention Group ("**National Catholic**"), and additional insurance companies (all of which are collectively referred to herein simply as the "**Insurers**"). The Diocesan Parties, the Committee, and the Insurers are referred to herein collectively as the "**Mediation Parties**."

The Co-Mediators respectfully submit this mediation report ("**First Report**") in accordance with the Mediation Order, which provides that "[w]ithout offering any details about

---

[1] Judge NeMoyer was appointed pursuant to an order entered by the Court on January 19, 2023 [Dkt. No. 2201].

discussions, the mediator shall report periodically to the Court about whether the parties are making progress in their negotiations." *See* Mediation Order, at 7.

## **Statement of the Co-Mediators**

1. Since entry of the Mediation Order, the Co-Mediators have engaged in an extensive and sustained series of mediation efforts. From January through February 2025, the Co-Mediators conducted multiple initial meetings with the Mediation Parties and their retained professionals through Zoom and phone calls. In addition to the representatives and counsel for the Mediation Parties, the Co-Mediators also met with members of the Committee, Parish and Diocesan management and leadership (including clergy), among others.

2. After the initial meetings with the Mediation Parties and after careful consideration of the prior mediations conducted in this case, the Co-Mediators decided that the most constructive approach would be to divide the mediation process into multiple phases. The first phase would focus exclusively on negotiations between the Diocesan Parties and the Committee; the second phase would expand the mediation to include some or all of the Insurers, together with the Diocesan Parties and the Committee. If helpful to the mediation process, the Co-Mediators are prepared and willing to continue to facilitate the resolution of any remaining open issues.

3. Following that approach, the Co-Mediators conducted a two (2) day in-person mediation the with the Diocesan Parties and the Committee and their retained professionals on March 17 and 18, 2025. The two (2) day in-person mediation sessions were attended by more than twenty-five (25) participants, including members of the Committee, the Committee's State court counsel, and members of Diocesan and Parish management and leadership. The mediation sessions were marked by extraordinary efforts and good faith negotiations by all present.

4.      Upon conclusion of the in-person mediation sessions, the Co-Mediators facilitated numerous follow-up phone calls and emails with the Diocesan Parties and the Committee to address outstanding issues. On March 21, 2025, the Co-Mediators convened a follow-up Zoom meeting with Diocesan Parties, followed by a two (2) day mediation by Zoom with both the Diocesan Parties and the Committee on March 24 and 25, 2025. By this stage, the Diocesan Parties and the Committee had substantially narrowed the issues in dispute and were engaged in near-continuous communication—often facilitated by the Co-Mediators—both between and after these sessions.

5.      On April 9, 2025, the Co-Mediators convened another follow-up mediation session by Zoom.

6.      Shortly after the close of the April 9th mediation session, the Diocesan Parties and the Committee reached an agreement in principle which includes specific economic terms and various non-economic terms. The agreement in principle is subject to resolution of certain open issues, final documentation acceptable to the Diocesan Parties and the Committee, and confirmation of a plan of reorganization. In addition, the agreement in principle stands as an independent settlement, neither contingent upon nor subject to an agreement by any other party.

**Terms of Settlement in Principle Between the Diocesan Parties and the Committee**

7.      The settlement in principal contemplates a multi-million cash contribution by the Diocesan Parties, with certain of the funds payable on the effective date of a confirmed Chapter 11 plan and the remaining funds to be paid thereafter, subject to a tiered interest schedule. The settlement in principal also provides, among other terms, the withdrawal of pending claim objections, limited continuation of certain state court litigation, further negotiation with respect to a security interest to secure the deferred payment, and mutual releases upon full payment. The

Diocesan Parties and the Committee have also agreed to continue negotiating in good faith on open issues related to the settlement.

8. While the settlement in principal reflects an agreement on the basic material economic terms of the settlement between Diocesan Parties and the Committee, and reflects substantial progress toward a consensual plan of reorganization, it is not a final, binding settlement agreement.

9. The Co-Mediators wish to express to the Court that none of the progress described herein would have been possible without the commitment, diligence, and good-faith participation of the many who comprise the Diocesan Parties and the Committee. It is the Co-Mediators' belief that the agreement between the Diocesan Parties and the Committee will serve as a crucial foundation for the next phases of mediation and will meaningfully advance the case toward plan confirmation and ultimate closure.

**Current Status of Mediation**

10. With the foundational agreement in place between the Diocesan Parties and the Committee, the Co-Mediators have turned to next phase of the mediation—negotiations with many of the Insurers. After conducting an initial mediation session by Zoom with the Insurers on April 14, 2025, the Co-Mediators have scheduled two (2) day in-person (and Zoom for those unable to attend) mediation sessions with the Mediation Parties for April 22 and 23, 2025. The Co-Mediators anticipate that these negotiations will require continued time and engagement, but remain cautiously optimistic that progress can be made, particularly now that the Diocesan Parties and the Committee have come to an agreement in principle.

11. In accordance with the Mediation Order, the Co-Meditators will continue to appraise the Court of the progress of the mediation. The Co-Mediators will also make themselves

available to address any questions the Court may have at the upcoming hearing scheduled for April 22, 2025.

Dated: April 21, 2025
      New York, New York

/s/ *Melanie L. Cyganowski*
Hon. Melanie L. Cyganowski (Ret.)
Otterbourg P.C.


/s/ *Patrick H. NeMoyer*
Hon. Patrick H. NeMoyer (Ret.)