DECLARATION

Establishing the Chappelle Villas Condominium B, Town of Amherst, New York, Pursuant to Article 9-B of the Real Property Law of the State of New York.

NAME: CHAPPELLE VILLAS CONDOMINIUM B

SPONSOR: CHAPPELLE VILLAS ASSOCIATES
3305 Haseley Drive
Niagara Falls, New York 14304

DATED: APRIL 24, 1990

PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER
Attorneys for Sponsor
3400 Marine Midland Center
Buffalo, New York 14203
(716) 847-8400

STATE OF NEW YORK
ERIE CO. CLERK'S OFFICE
Recorded in Liber 16166
page ___ of ___
_Deeds_ on the 27
day of _April_ A.D., 1990
at 12:16 O'clock P.M.
and examined.
DAVID J. SWARTS, County Clerk

COUNTY CLERK

BO33345 — 260⁵⁰

DECLARATION OF
CHAPPELLE VILLAS CONDOMINIUM B

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| ARTICLE I. | SUBMISSION OF PROPERTY | 1 |
| Section 1.01 | Submission | 1 |
| ARTICLE II. | NAME OF CONDOMINIUM | 1 |
| Section 2.01 | Name | 1 |
| ARTICLE III. | BUILDINGS | 1 |
| Section 3.01 | Buildings | 1 |
| ARTICLE IV. | UNITS | 2 |
| Section 4.01 | Number and Address of Units | 2 |
| Section 4.02 | Designations, Locations and Plans of Units | 2 |
| Section 4.03 | Dimensions of Units | 3 |
| Section 4.04 | Ownership of Units | 3 |
| Section 4.05 | Use of Units | 3 |
| Section 4.06 | No Partition of Units | 4 |
| ARTICLE V. | COMMON ELEMENTS | 4 |
| Section 5.01 | Definition of Common Elements | 4 |
| Section 5.02 | Interest in Common Elements | 4 |
| Section 5.03 | Eminent Domain | 5 |
| Section 5.04 | Common Elements to Remain Undivided | 8 |
| Section 5.05 | Abandonment, Encumbrance, Conveyance or Transfer of Common Elements | 8 |
| Section 5.06 | Restricted Common Elements | 8 |
| ARTICLE VI. | ALTERATION OF UNITS OR COMMON ELEMENTS | 10 |
| Section 6.01 | Increases and Decreases in Size and Number of Units | 10 |
| Section 6.02 | No Other Additions or Structural Alterations to Units | 11 |
| Section 6.03 | Alteration and Improvement of Common Elements | 11 |
| | (a) By Board of Managers | 11 |
| | (b) By Unit Owners | 12 |
| Section 6.04 | Submission of Plans to Board of Managers; Approval | 12 |
| Section 6.05 | Written Notification of Disapproval | 14 |
| Section 6.06 | Failure of Board to Act | 14 |
| Section 6.07 | Board of Manager's Right to Promulgate Rules and Regulations | 14 |

Case 1-20-10322-CLB, Doc 3982-1, Filed 06/27/25, Entered 06/27/25 16:45:21, Description: Exhibit, Page 2 of 10

|  |  | Page |
|---|---|---|
| Section 6.08 | Applications for Permits; Insurance | 15 |
| Section 6.09 | Liability of Board of Managers | 15 |
| ARTICLE VII. | EASEMENTS | 16 |
| Section 7.01 | Utilities, Pipes and Conduits | 16 |
| Section 7.02 | Access of Board of Managers | 16 |
| Section 7.03 | Sponsor's Easement for Marketing, Development and Improvement Purposes; Other Rights of Sponsor | 17 |
| Section 7.04 | Easement for Encroachments | 17 |
| Section 7.05 | Easement of Necessity | 18 |
| Section 7.06 | Sponsor's Consent | 18 |
| Section 7.07 | Parking Areas Subject to Easements and Designation | 18 |
| Section 7.08 | Easements for Ingress and Egress to and from Other Chappelle Villas Areas | 18 |
| ARTICLE VIII. | VOTING RIGHTS | 19 |
| Section 8.01 | Voting Rights Based on Interest in Common Elements | 19 |
| ARTICLE IX. | COMMON CHARGES - ALLOCATION, LIEN AND LIABILITY | 19 |
| Section 9.01 | Allocation and Commencement of Common Charges | 19 |
| Section 9.02 | Common Charges - Personal Obligation of Unit Owner and Lien on Unit | 19 |
| ARTICLE X. | BOARD OF MANAGERS | 20 |
| Section 10.01 | Board of Managers | 20 |
| Section 10.02 | Administration | 20 |
| Section 10.03 | Power of Attorney to Board of Managers | 21 |
| Section 10.04 | Acquisition of Units by Board of Managers | 21 |
| Section 10.05 | Sponsor's Written Consent for Certain Actions Taken by Board of Managers | 21 |
| ARTICLE XI | OBLIGATIONS, RESPONSIBILITIES, COVENANTS AND RESTRICTIONS | 22 |
| Section 11.01 | All Owners, Tenants and Occupants Subject to Condominium Documents Which Run With the Land | 22 |
| Section 11.02 | Units to Be Properly Maintained | 22 |
| Section 11.03 | Mortgages on Units | 22 |
| Section 11.04 | No Nuisances | 22 |
| Section 11.05 | No Immoral or Unlawful Use | 23 |
| Section 11.06 | Obligation to Maintain Utility Service | 23 |
| Section 11.07 | Rules and Regulations | 23 |

| | | Page |
|---|---|---|
| **ARTICLE XII.** | AMENDMENT AND TERMINATION | 23 |
| Section 12.01 | Amendment | 23 |
| Section 12.02 | Amendment by Sponsor to Correct Errors | 24 |
| Section 12.03 | Amendment for Filing of Supplemental Floor Plans | 24 |
| Section 12.04 | Termination | 24 |
| Section 12.05 | Expansion and Merger of Condominium With Other Condominiums | 25 |
| **ARTICLE XIII.** | GENERAL | 25 |
| Section 13.01 | Service of Process | 25 |
| Section 13.02 | Invalidity | 25 |
| Section 13.03 | Waiver | 25 |
| Section 13.04 | Captions | 25 |
| Section 13.05 | Gender | 25 |
| **SCHEDULE A** | DESCRIPTION OF CONDOMINIUM PROPERTY | 27 |
| **SCHEDULE B** | DESCRIPTION OF THE BUILDINGS | 29 |
| **SCHEDULE C** | SCHEDULE OF UNIT DESIGNATIONS/TAX LOT NUMBERS/ROOMS/PERCENTAGE INTERESTS IN COMMON ELEMENTS/APPROXIMATE SQUARE FOOT AREAS/ACCESS TO COMMON ELEMENTS | 30 |
| **SCHEDULE D** | SITE PLAN | 32 |
| **SCHEDULE E** | CONDOMINIUM BY-LAWS | |

DECLARATION

ESTABLISHING

CHAPPELLE VILLAS CONDOMINIUM B

For the Premises Described on Schedule A attached hereto in the Town of Amherst, New York, pursuant to Article 9-B of the Real Property Law of the State of New York.

Chappelle Villas Associates, general partnership having its office at 3305 Haseley Drive, Niagara Falls, New York 14304, hereinafter referred to as the "Sponsor" does hereby disclose:

ARTICLE I

SUBMISSION OF PROPERTY

Section 1.01. Submission. The Sponsor hereby submits the land described on Schedule A attached hereto and made a part hereof, together with all improvements thereon erected (hereinafter called the "Property") to the provisions of Article 9-B of the Real Property Law of the State of New York.

ARTICLE II

NAME OF CONDOMINIUM

Section 2.01. Name. This Condominium shall be known as the Chappelle Villas Condominium B, sometimes hereinafter referred to as the "Condominium". The Condominium shall be comprised of the "Units" (see Section 4.01 below) and the "common elements" (see Section 5.01 below) on the Property.

ARTICLE III

BUILDINGS

Section 3.01. Buildings. The "Buildings" as hereinafter referred to are: the two (2) residential structures, with one such structure containing 16 residential dwelling Units known as 15-29 Bristol Drive, and with the other structure containing 12 residential dwelling units known as 22-32 Bristol Drive.

1   Declaration

ARTICLE VIII

VOTING RIGHTS

Section 8.01. Voting Rights Based on Interest in Common Elements. Each Unit Owner shall be entitled to vote on all matters put to a vote at all meetings of Unit Owners in accordance with the percentage interest of the Unit owned in the common elements of the Condominium.

ARTICLE IX

COMMON CHARGES - ALLOCATION, LIEN AND LIABILITY

Section 9.01. Allocation and Commencement of Common Charges. Except as otherwise permitted in this Article or the By-Laws, common expenses shall be charged by the Board of Managers to the Unit Owners according to their respective percentage interests in the common elements. The common profits of the Property, after offsetting the common expenses relating to the common elements and making due allowance for the retention of a reserve to cover future common expenses, shall be distributed among the Unit Owners in the same manner. Common charges shall commence on the date of recording of the first deed transferring title to a Unit.

Section 9.02. Common Charges - Personal Obligation of Unit Owner and Lien on Unit. The common charges shall be paid when due. All sums assessed as common charges by the Board of Managers of the Condominium, but unpaid, together with any accelerated installments, late charges as may be established by the Condominium By-Laws, interest thereon at such rate as may be fixed by the Board of Managers from time to time, such rate not to exceed the maximum rate of interest then permitted by law, and attorneys' fees and other costs and expenses incurred in efforts to collect such past due assessments, shall be the personal obligation of the Unit Owner and, to the extent permitted by law, shall constitute a lien upon the Unit prior to all other liens except: (a) tax or assessment liens on the Unit by the taxing subdivision of any governmental authority, including but not limited to State, County, Town and School District taxing agencies and (b) all sums unpaid on any first mortgage of record encumbering any Unit.

A purchaser of a Unit shall be liable for the payment of unpaid common charges assessed against such Unit prior to such purchaser's acquisition, except that a mortgagee or other purchaser who acquires title at a foreclosure sale, or an institutional

19                                                               Declaration

mortgagee who acquires title to a Unit by a deed in lieu of foreclosure, shall not be liable for, and such Unit shall not be subject to, a lien for the payment of common charges against such Unit, and which became due prior to such acquisition of title. In such event, the unpaid balance of common charges shall be charged to all other Unit Owners as a common expense.

Except as provided above, in the case of any conveyance of a Unit either by voluntary instrument, operation of law or judicial proceeding in accordance with this Declaration or the By-Laws, the grantee of the Unit shall be jointly and severally liable with the former Unit Owner for any unpaid common charges against the latter assessed and due up to the time of the grant or conveyance without prejudice to the grantee's right to recover from the former Unit Owner the amounts paid by the grantee therefor. "Grantee" as used herein shall not include either the holder of an institutional mortgage of record or a purchaser of a Unit at a foreclosure sale of an institutional mortgage. No Unit Owner shall be liable for the payment of any common charges accruing subsequent to a sale, transfer or other conveyance by him of such Unit made in accordance with applicable laws or the provisions of this Declaration and the By-Laws. The term "Institutional mortgagee" as used in this Article shall mean a bank, savings and loan association, life insurance company, pension trust, trust company or the Sponsor.

No Unit Owner may be exempt from liability for payment of common charges assessed against such Owner's Unit by waiver of the use or enjoyment of any of the common elements or by the abandonment of his Unit. Dissatisfaction with the quantity or quality of maintenance furnished to the Property shall not be grounds for the withholding or failure to pay any common charge or special assessment.

## ARTICLE X
## BOARD OF MANAGERS

Section 10.01. **Board of Managers.** The affairs of the Condominium shall be governed and controlled pursuant to the Condominium By-Laws (attached hereto as Schedule E and made a part hereof) by a Board of Managers who shall be elected and serve and shall have the duties and powers as provided in the By-Laws.

Section 10.02. **Administration.** The administration of the Condominium Property, including the Buildings and parcel of land described herein shall be in accordance with the provisions of this Declaration and with the provisions of the Condominium By-Laws.

Declaration 20

LI 010166 P 024

Case 1-20-10322-CLB, Doc 3982-1, Filed 06/27/25, Entered 06/27/25 16:45:21, Description: Exhibit , Page 7 of 10

Section 10.03. **Power of Attorney to Board of Managers.** Each Unit Owner shall grant to the persons who shall from time to time constitute the Board of Managers, an irrevocable Power of Attorney, coupled with an interest, to acquire title to or lease any Unit whose Owner desires to surrender, sell or lease the same, or which may be the subject of a foreclosure or other judicial sale, or any other Unit, in the name of the Board of Managers or its designee, corporate or otherwise, on behalf of all Unit Owners, and to convey, sell, lease, mortgage, vote the votes appurtenant thereto or otherwise deal with any such Unit so acquired or to sublease any Unit so leased by the Board of Managers.

Section 10.04. **Acquisition of Units by Board of Managers.** In the event (a) any Unit Owner shall surrender such Unit Owner's Unit, together with (i) the undivided interest in the common elements appurtenant thereto; (ii) the interest of such Unit Owner in any other Units acquired by the Board of Managers or its designee on behalf of all Unit Owners or the proceeds of the sale, or lease thereof, if any; and (iii) the interest of such Unit Owner in any other assets of the Condominium (hereafter collectively called the "Appurtenant Interests") pursuant to the provisions of Section 339-x of the Real Property Law of the State of New York, on (b) the Board of Managers shall purchase at a foreclosure or other judicial sale, or in any other manner acquire, a Unit together with the Appurtenant Interests, title to any such Unit, together with the Appurtenant Interests shall be held by the Board of Managers or its designee, corporate or otherwise, on behalf of all Unit Owners, in proportion to their respective common interests. The lease covering any Unit leased by the Board of Managers, or its designees, on behalf of all Unit Owners, shall be held by the Board, or its designee, on behalf of all Unit Owners in proportion to their respective common interests.

Section 10.05. **Sponsor's Written Consent for Certain Actions Taken by Board of Managers.** Notwithstanding anything to the contrary contained in this Declaration, until the closing of title to 50% of the Residential Units or until 2 years after the date of closing of title of the first Residential Unit, whichever is sooner, the Board of Managers may not, without the Sponsor's written consent except for necessary repairs, (i) make any addition, alteration or improvement to the common elements or to any Unit owned by the Condominium or (ii) assess any common charges for the creation of, addition to or replacement of all or part of a reserve, contingency or surplus fund in excess of an amount equal to the proportion of the then existing budget which the amount of reserves in the initial budget of estimated expenses for the Condominium bears to the total amount of such initial budget of estimated expenses or, (iii) hire any

employee in addition to the employees, if any, provided for in the initial budget of the Condominium, except as may be necessary to maintain the quantity or quality of services or maintenance, or (iv) enter into any maintenance or service contract for work not provided for in the initial budget of the Condominium, or (v) borrow money on behalf of the Condominium or (vi) reduce the quantity or quality of services or maintenance of the Property. This Section shall not be amended without the written consent of the Sponsor as long as the Sponsor owns 50% or more of the Residential Units.

### ARTICLE XI
### OBLIGATIONS, RESPONSIBILITIES,
### COVENANTS, AND RESTRICTIONS

Section 11.01. <u>All Owners, Tenants and Occupants Subject to Condominium Documents Which Run With the Land</u>. All present or future Unit Owners, tenants, occupants, or any other person that might use the Units or the facilities of the Property in any manner, are subject to the provisions of the Declaration, the By-Laws and Rules and Regulations of the Condominium as they may be amended from time to time. The acceptance of a deed or conveyance or the entering into of a lease, or the entering into of occupancy of any Unit shall signify that the provisions of this Declaration and the By-Laws and Rules and Regulations of the Condominium are accepted and ratified by such Owner, tenant or occupant, and all of such provisions shall be deemed and taken to be covenants running with the land and shall bind any person having at any time and stipulated at length in each and every deed or conveyance or lease thereof.

Section 11.02. <u>Units to be Properly Maintained</u>. Unit Owners shall maintain their Units in good repair and overall appearance and shall keep patios and balconies limited to their use in a clean and neat condition.

Section 11.03. <u>Mortgages on Units</u>. Any Unit Owner who mortgages his Unit shall promptly provide the Board of Managers with the name and address of the mortgagee.

Section 11.04. <u>No Nuisances</u>. No nuisances shall be allowed upon the Property nor shall any use or practice be allowed which is a source of annoyance to residents or which interferes with the peaceful possession and proper use of the Property by its residents.

Case 1-20-10322-CLB, Doc 3982-1, Filed 06/27/25, Entered 06/27/25 16:45:21, Description: Exhibit , Page 9 of 10

Section 11.05. No Immoral or Unlawful Use. No immoral, improper, offensive or unlawful use shall be made of the Property nor any part thereof and all valid laws, zoning ordinances and regulations of all governmental bodies having jurisdiction thereof shall be observed.

Section 11.06. Obligation to Maintain Utility Service. Regardless of whether the Residential Unit is occupied, the Owner thereof shall be obligated to maintain sufficient utility service to prevent damage to other Units or to the common elements, and to maintain a minimum heat level of 55° Farenheit at all times of the year. If such service is not maintained by the Owner, the Board of Managers shall have the right to immediately arrange for such service, upon such notice to the Owner as is practical under the circumstances and without notice in emergency situations. If such service must be arranged by the Board of Managers, any costs incurred shall be collectible in the same manner as common charges and shall constitute a lien on the Unit involved and a personal obligation of the Unit Owner(s).

Section 11.07. Rules and Regulations. Rules and regulations promulgated by the Board of Managers concerning the use of the Property shall be observed by the Unit Owners, provided, however, that copies of such rules and regulations are furnished to each Unit Owner prior to the time the said rules and regulations become effective.

## ARTICLE XII
## AMENDMENT AND TERMINATION

Section 12.01. Amendment. Except as otherwise provided in this Declaration, this Declaration may be modified, altered, amended or added to at, or pursuant to a vote taken during a specified canvass period after any duly called meeting of Unit Owners provided that:

(a) Notice of the meeting containing a full statement of the proposed modification, alteration, amendment or addition, and the canvass period, if any, for voting on the amendment, has been sent to all Unit Owners and first mortgagees of Units as listed on the books and records of the Condominium at least 30 days and not more than 50 days prior to the date set for said meeting; and

(b) 67% or more in number and in common interest of all Unit Owners approve the change; and