

One Lincoln Center | Syracuse, NY 13202-1355 | **bsk.com**

**ANDREW S. RIVERA**
arivera@bsk.com
P: 315.218.8351
F: 315.218.8745

September 23, 2025

**VIA ELECTRONIC FILING**

Honorable Carl L. Bucki
Chief United States Bankruptcy Judge
United States Bankruptcy Court, Western District of New York
Robert H. Jackson U.S. Courthouse
2 Niagara Square
Buffalo, New York 14202

Re: *In re the Diocese of Buffalo, N.Y.* Case No. 20-10322

Dear Judge Bucki:

My firm serves as primary bankruptcy counsel to The Diocese of Buffalo, N.Y. (the "Diocese") in the above-referenced chapter 11 case. Please accept this letter in further support of the *Application for an Order Authorizing the Employment and Retention of Jones Day as Special Counsel to the Diocese* [Docket No. 4104] (the "JD Retention Application"), for which this Court held an initial hearing on September 17, 2025 (the "Hearing").

**A. The Diocese's Response to the Court's Questions**

At the Hearing, this Court identified two concerns regarding the JD Retention Application. Those concerns are addressed below.

*First*, the Court raised a concern that the scope of services identified in the JD Retention Application might be overly broad, and requested that the Diocese provide a more narrowly defined scope of services. The Diocese has asked Jones Day to advise on legal issues concerning (i) a proposal by the Diocese regarding the potential use of certain funds held by the Foundation of the Roman Catholic Diocese of Buffalo (the "Foundation"); and (ii) the process for appropriately evaluating that proposal with the Foundation. These issues directly relate to the Diocese's efforts to fund the previously-announced $150 million Catholic family contribution for the benefit of abuse survivors and, ultimately, to resolve the Diocese's bankruptcy case. The analysis for this project is in its infancy. Accordingly, detail concerning specific funds held by the Foundation is not possible to provide at this stage, nor could the Diocese do so without waiving the attorney-client privilege. *See In re Diocese of Buffalo, N.Y.*, 625 B.R. 567, 571 (W.D.N.Y. Bankr. 2021) (noting the "'highly confidential' relationship between the special counsel-attorney and the trustee-client'") (quoting *Smith v. Geltzer (In re Smith)*, 507 F.3d 64, 71 (2d Cir. 2007)). We do understand, however, that the Foundation is represented by independent

legal counsel. If the Court requires more information to rule on the JD Retention Application, counsel for the Diocese is available for an *in-camera* conference with the Court.

**Second**, the Court raised a concern about who represented the Diocese in connection with the formation of the Foundation. The Foundation was incorporated on December 20, 1996, by the law firm Kennedy, Stoeckl & Martin, P.C. ("KSM"). As a result of a series of law firm combinations, a KSM attorney who was involved in forming the Foundation is now Of Counsel to Bond Schoeneck & King ("Bond"). It is important to note that Jones Day's proposed services do not include a review of the correctness, or a challenge of the propriety, of the Foundation's incorporation. Jones Day's services are required because Bond may be presented with a conflict that renders it unable to perform the services identified in the JD Retention Application, as clarified herein.

**B. The Diocese's Response to the Objection By U.S. Fire Insurance**

The Diocese also addresses below the objection submitted by U.S. Fire Insurance Company. It should be overruled for a series of reasons.

**First**, U.S. Fire Insurance has not satisfied its obligation to show that it has standing to object to the Diocese retaining special counsel as requested by the JD Retention Application in this letter. At the September 17 hearing—and not in its written objection—U.S. Fire Insurance invoked *Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024), which addressed an insurer's statutory standing in a bankruptcy case under § 1109(b). But, as the Diocese explained at the hearing, U.S. Fire Insurance must show that it has not only statutory standing under § 1109(b) of the Bankruptcy Code, but also that it has *both* Article III and prudential standing. U.S. Fire Insurance cannot make either showing. To have Article III standing, a party "'must have a personal stake in the outcome of the controversy.'" *In re Roman Catholic Diocese of Syracuse, N.Y.*, 665 B.R. 866, 879 (Bankr. N.D.N.Y. 2024) (quoting *In re SVB Fin. Grp.*, 662 B.R. 53, 63 (Bankr. S.D.N.Y. 2024)). This requires an "injury in fact" that is "concrete, distinct and palpable," and that the asserted injury "fairly can be traced to the challenged action and is likely to be addressed by a favorable decision." *Id.* (cleaned up). Prudential standing protects against a person bringing "generalized grievances" and requires that the asserted interest "fall[s] within the zone of interests protected by the law involved." *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)). As Judge Kinsella has noted in the *Diocese of Syracuse* bankruptcy case, prudential standing is especially important in the bankruptcy context, where many parties may try to assert other parties' rights for their own benefit. *See id.*

This is not a close question. U.S. Fire Insurance does not even try to explain what "injury" it will suffer by the Diocese's retention of special counsel for this matter related to achieving a proposed settlement—at the same blended rate as the Diocese's bankruptcy counsel—nor how any such unasserted "injury" would be likely to be redressed by an order denying the application. U.S. Fire Insurance is not a creditor of the Diocese in this case, and has no legitimate interest in the pending employment application. Under the doctrine of prudential standing, this is also a textbook example of a "generalized grievance" by a person who is not asserting any right or interest of its own, but only those of other parties—none of whom is objecting. U.S. Fire Insurance therefore lacks both Article III and prudential standing, and on this ground alone its objection should be overruled.

***Second***, if the Court were to proceed to the merits of the objection, it should also be overruled because it is not directed to the pending employment application. U.S. Fire Insurance *concedes* in its objection that it "has no position on the expansion of the Jones Day retention for the very limited purpose set out in the Application." Doc. No. 4179 ¶ 5. *That means U.S. Fire Insurance has no proper objection to the pending application*, which concerns the Diocese's retention of Jones Day to provide legal advice with respect to issues concerning the Foundation of the Diocese of Buffalo. U.S. Fire Insurance's objection expressly relates to a *different matter*, for which Jones Day has already been retained without any timely objection having been asserted by U.S. Fire Insurance: Jones Day's representation of the Diocese in an Article 78 proceeding pending in New York State Supreme Court. U.S. Fire Insurance's objection should thus be overruled on the additional ground that it is misplaced.

***Third***, the central predicate of U.S. Fire Insurance's objection is incorrect. According to U.S. Fire Insurance, any appeal by the Diocese in its Article 78 proceeding should be thought of as "moot" because, according to U.S. Fire Insurance, on April 22, 2025, "the Diocese announced on the record that it reached a settlement with the Committee indicating that the terms of the settlement include the public disclosure [sic] abuse-related documents." Doc. No. 4179 ¶ 3. Although the Diocese anticipates that disclosure of certain records relating to abuse will be provided for in agreed-upon protocols that will be approved pursuant to its chapter 11 plan, those protocols, which must take into consideration protecting sensitive personal information of survivors of abuse, have not yet been arrived at between the Creditors Committee and the Diocese. Nor has a plan of reorganization yet been filed, disclosed, solicited, or confirmed by the Court. Moreover, the documents in question in the appeal of the Article 78 proceeding are unredacted and present a significant risk of public exposure of sensitive personal information of survivors, and are therefore <u>markedly</u> different than any documents that eventually may be disclosed under the plan or in connection with this case.

***Finally***, U.S. Fire Insurance is wrong when it asserts that the Diocese would be "expand[ing] the scope of Jones Day's engagement [in the Article 78 proceeding] to include an [] appeal of the State Supreme Court and Attorney General rulings." Doc. No. 4179 ¶ 4. Not only is that point misdirected at the pending application, it is also based on a misreading of the prior retention Order for the Article 78 proceeding. The Court did not authorize the retention of Jones Day solely to write a brief in response to an *amicus* submission and appear for oral argument, as U.S. Fire Insurance insinuates in its objection. The Court authorized reimbursement for "all" of Jones Day's work in representing the Diocese in response to a request made pursuant to New York's Freedom of Information Law ("FOIL"), including work that involved, up to that point, the Diocese's several rounds of submissions to the Office of the Attorney General and the preparation of an Article 78 petition, accompanying memorandum of law, and supporting papers. *See* Doc. No. 3068, *In re Diocese of Buffalo, N.Y.*, No. BK-20-10233 CLB, slip. op at 9 (Bankr. W.D.N.Y. Aug. 7, 2024) ("For this and all of its other work in responding to the FOIL request, Jones Day may receive reasonable compensation ….").

Jones Day was also expressly retained by Order of the Court "to represent the Diocese in connection with the Article 78 proceeding referenced in the Motion, *see Diocese of Buffalo v. Office of the N.Y. State Attorney General*, Index No. 160558/2023 (Sup. Ct. N.Y. Cnty.) …." Doc. No. 3242 ¶ 2. Any appeal that the Diocese elects to perfect from a Decision and Order by the New York State Supreme Court denying its petition will of course be in that same Article 78 proceeding, and there was nothing in the Court's retention Order that restricts Jones Day in any way from following the instructions of its client and pursuing an appeal in the Article 78 proceeding, or that purported to forbid the Diocese from appealing any adverse determination in that proceeding. Nor would any such limitation on the Diocese's business judgment have been appropriate in a retention Order, as U.S. Fire Insurance seems to imply. This Court has ruled on another application by the Debtor to employ special counsel that "[l]itigation strategies are business decisions that the Diocese has a right to make until such time as it is no longer a debtor in possession" *In re Diocese of Buffalo, N.Y.*, 625 B.R. 567, 572 (W.D.N.Y. Bankr. 2021) (ruling that). U.S. Fire Insurance, at this late date, has not shown that it has any standing to interfere with the Diocese's decision whether to perfect an appeal in the Article 78 proceeding, let alone that "the Diocese has abused its discretion that the law allows it to exercise" in that proceeding. *Id*.

U.S. Fire Insurance's objection is meritless and should be overruled on each of these independent grounds.

In conclusion, the Diocese respectfully submits that this is not one of those "rarest of cases in which the Court can override the discretion of management" of the Diocese in retaining special counsel as it seeks to raise funds to compensate claimants and resolve this bankruptcy case. *See In re Diocese of Buffalo, N.Y.*, 625 B.R. 567, at 572. In light of the foregoing, the Diocese respectfully requests that the Court grant the JD Retention Application.

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

*Andrew Rivera*

Andrew S. Rivera