**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| THE DIOCESE OF BUFFALO, NY, | )     Case No. 20-10322 (CLB) |
| | ) |
| Debtor. | )     Chapter 11 |
| | ) |
| | ) |

## DECLARATION OF ADAM P. HABERKORN IN SUPPORT OF INSURERS' MOTIONS TO DISALLOW SEXUAL ABUSE PROOFS OF CLAIM

I, Adam P. Haberkorn, pursuant to pursuant to 28 U.S.C. § 1746(2), under penalty of perjury, hereby declare as follows:

1.     I am a counsel at the firm O'Melveny & Myers LLP, attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company (collectively, the "Insurers"). I am a member in good standing of the Bar of the State of New York, and am admitted to practice in the United States District Courts for the Northern, Western, Southern and Eastern Districts of New York.

2.     I submit this declaration in support of the Insurers' Objections to Allowance of Sexual Abuse Proofs of Claims, filed in the above-captioned bankruptcy case. I also submit this declaration based on my personal knowledge of the proceedings in the above-captioned bankruptcy case, and my review of the documents described below.

3.     On August 18, 2025, the Insurers sent a letter to Mr. Obis as the representative of the Diocese notifying the Diocese that the Insurers "exercise their right to associate in the defense of the Lawsuits" for which the automatic stay was lifted by this Court and implicate the Insurers' respective excess policy periods; this letter confirmed the Insurers are associating in the defense of seven such lawsuits.

4.     Attached hereto as **Exhibit 1** is a true and correct copy of the public records Entity Information maintained by the New York State Department of State, Division of Corporations for the entity named ST. ANTHONY OF PADUA, FRANCISCAN FATHERS MINOR

CONVENTUAL, U.S.A., which was accessed on August 25, 2025, at 7:24pm (EST).

5.      Attached hereto as **Exhibit 2** is a true and correct copy of the public records Entity Information maintained by the New York State Department of State, Division of Corporations for the entity named FRANCISCAN FATHERS MINOR CONVENTUALS OF BUFFALO, N.Y., which was accessed on August 25, 2025, at 7:19pm (EST).

6.      Attached hereto as **Exhibit 3** is a true and correct copy of the public records Entity Information maintained by the Maryland Secretary of State for the entity named FRANCISCAN FRIARS-OUR LADY OF THE ANGELS PROVINCE, INC., which was accessed on August 25, 2025, at 8:53pm (EST).

7.      Attached hereto as **Exhibit 4** is a true and correct copy of the Articles of Incorporation for Franciscan Friars – Our Lady of the Angels Province, Inc., obtained from the Maryland Secretary of State public website on August 25, 2025.

8.      Attached hereto as **Exhibit 5** is a true and correct copy of the "Who We Are" webpage from the Our Lady of the Angels Province public website, https://www.olaprovince.org/about-us/, accessed on August 25, 2025, at 7:42pm (EST).

9.      Attached hereto as **Exhibit 6** is a true and correct copy of the "Education" webpage from the Our Lady of the Angels Province public website, https://www.olaprovince.org/locations/education/, accessed on August 25, 2025, at 7:41pm (EST).

10.     Attached hereto as **Exhibit 7** is a true and correct copy of the Erie County, New York, property records listing the ownership history of the parcel of land on which St. Francis High School is built, which lists the owner of the land as ST FRANCIS HIGH SCHOOL from January 14, 1960 through today, the information was accessed on August 23, 2025.

11.     Attached hereto as **Exhibit 8** is a true and correct copy of the "History" webpage from the Our Lady of the Angels Province public website, https://www.stfrancishigh.org/about-us/history, accessed on September 9, 2025, at 1:56pm (EST).

12.     Attached hereto as **Exhibit 9** is a true and correct copy of the Erie County, New York, property records listing the real property ownership information for 4129 Lakeshore Rd.,

Athol Springs, NY—the parcel of land on which St. Francis High School is built—which lists the current owner of the land as ST FRANCIS HIGH SCHOOL, the information was accessed on August 23, 2025.

13.     Attached hereto as **Exhibit 10** is a true and correct copy of the Wikipedia webpage for St. Francis High School (Athol Springs, New York), https://en.wikipedia.org/wiki/Saint_Francis_High_School_(Athol_Springs,_New_York), accessed on August 25, 2025, at 9:35pm (EST).

14.     Attached hereto as **Exhibit 11** is a true and correct copy of the June 4, 2025 Hearing Transcript in *In re The Diocese of Buffalo, N.Y.*, Case No. 20-10322 (CLB).

I declare under penalty of perjury that the foregoing is true and correct and to the best of my knowledge and belief.

*[Remainder of page intentionally left blank.]*

Dated: September 30, 2025

By:  /s/ Adam P. Haberkorn

ADAM P. HABERKORN
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone:     (212) 326-2000
Email: ahaberkorn@omm.com

*Attorneys for U.S. Fire Insurance Company
and Pacific Employers Insurance Company*

# EXHIBIT 1

An official website of New York State.

Here's how you know ⌄



🔍

# Department of State
## Division of Corporations

## Entity Information

| Return to Results | Return to Search |
|---|---|

**Entity Details** ⌃

**ENTITY NAME:** ST. ANTHONY OF PADUA PROVINCE, FRANCISCAN FATHERS MINOR CONVENTUAL, U.S.A.

**DOS ID:** 125509

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC NOT-FOR-PROFIT CORPORATION

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:**  -

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 01/11/1960

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 01/11/1960

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** NOT REQUIRED

**COUNTY:** ERIE

**NEXT STATEMENT DUE DATE:**

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

⟨     **ENTITY DISPLAY**    NAME HISTORY    FILING HISTORY    MERGER HISTORY    ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

> **Name:**
>
> **Address:**

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

> **Name:**
>
> **Address:**

Principal Executive Office Address

> **Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|

Agencies App Directory Counties Events Programs Services

# EXHIBIT 2

An official website of New York State.
Here's how you know ⌄



# Department of State
## Division of Corporations

## Entity Information

🔍

| Return to Results | Return to Search |

**Entity Details**                                                          ⌃

**ENTITY NAME:** FRANCISCAN FATHERS MINOR CONVENTUALS OF BUFFALO, N.Y

**DOS ID:** 26437

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC NOT-FOR-PROFIT CORPORATION

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:**  -

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 01/05/1901

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 01/05/1901

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** NOT REQUIRED

**COUNTY:** ERIE

**NEXT STATEMENT DUE DATE:**

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

| ‹ | ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |

### Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

> **Name:**
>
> **Address:**

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

### Chief Executive Officer's Name and Address

> **Name:**
>
> **Address:**

### Principal Executive Office Address

> **Address:**

### Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:**  NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| | | |

Agencies App Directory Counties Events Programs Services

# EXHIBIT 3

# FRANCISCAN FRIARS-OUR LADY OF THE ANGELS PROVINCE, INC.: D15784218

| | |
|---|---|
| Department ID Number: | D15784218 |
| Business Name: | FRANCISCAN FRIARS-OUR LADY OF THE ANGELS PROVINCE, INC. |
| Principal Office: ⓘ | 12300 FOLLY QUARTER ROAD<br>ELLICOTT CITY MD 21042-1419 |
| Resident Agent: ⓘ | REV. ROBERT A. TWELE, OFM CONV.<br>12300 FOLLY QUARTER ROAD<br>ELLICOTT CITY MD 21042-1419 |
| Status: | INCORPORATED |
| Good Standing: | THIS BUSINESS IS IN GOOD STANDING |
| Business Type: | CORPORATION |
| Business Code: | 04 ORDINARY BUSINESS - NON-STOCK |
| Date of Formation/ Registration: | 04/04/2014 |
| State of Formation: | MD |
| Stock Status: | NONSTOCK |
| Close Status: | NO |

# EXHIBIT 4

# CORPORATE CHARTER APPROVAL SHEET
## ** EXPEDITED SERVICE** ** KEEP WITH DOCUMENT **

DOCUMENT CODE __02N__   BUSINESS CODE __04__

#  _____

Close _____   Stock _____   Nonstock __✓__

P.A. _____   Religious _____

Merging (Transferor) _____

_____

_____

Surviving (Transferee) _____

_____

_____

|||||||||| BARCODE ||||||||||

1000362006255188

Affix Barcode Label Here
ID # D15784218 ACK # 1000362006255188
PAGES: 0005
FRANCISCAN FRIARS-OUR LADY OF THE ANGEL
S PROVINCE, INC.
                                    MAIL
                                    BACK

04/04/2014  AT 12:16 P WO # 0004283456

New Name _____

_____

## FEES REMITTED

| | |
|---|---|
| Base Fee: | 100 |
| Org. & Cap. Fee: | 20 |
| Expedite Fee: | 50 |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| Certified Copies | |
| Copy Fee: | |
| Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Mail Processing Fee: | 5 |
| Other: Tax Exempt | 50 |
| TOTAL FEES: | 225 |

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
              and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name
_____
_____

_____ Other Change(s)
_____
_____

Credit Card _____   Check __✓__   Cash _____

__1__ Documents on __2__ Checks

Approved By: _____

Keyed By: _____

COMMENT(S):

Code __027__

Attention: _____

Mail: Name and Address
_____
GALLAGHER, EVELIUS & JONES
STE 400
218 N. CHARLES ST.
BALTIMORE MD 21201-4021

**Stamp Work Order and Customer Number HERE**

CUST ID:0003066876
WORK ORDER:0004283456
DATE:04-04-2014 12:16 PM
AMT. PAID:$225.00

# ARTICLES OF INCORPORATION
## of
## Franciscan Friars – Our Lady of the Angels Province, Inc.

**THIS IS TO CERTIFY** that Rev. Robert A. Twele, OFM Conv., whose post office address is 12300 Folly Quarter Road, Ellicott City, MD 21042-1419, and being over eighteen (18) years of age, under and by virtue of the General Laws of the State of Maryland authorizing the formation of corporations, does so intend to form a non-stock corporation by executing and filing these Articles of Incorporation.

**ARTICLE ONE : NAME**
The name of the corporation is Franciscan Friars – Our Lady of the Angels Province, Inc. (hereinafter referred to as the "Corporation").

**ARTICLE TWO: PURPOSES AND POWERS**
The Corporation is organized and shall be operated exclusively for religious, charitable, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (or the corresponding provision of any future United States Internal Revenue law) (hereinafter referred to as the "Code"). The specific purposes for which the Corporation is formed are:

a) to frame such rules, regulations and ordinances to govern the life of the members of the Province of Our Lady of the Angels (the "Province"), established by the Order of Friars Minor Conventual (the "Order"), a religious Order of men of the Roman Catholic Church, according to the Rule of St. Francis of Assisi, the Code of Canon Law of the Roman Catholic Church, and the Constitution of the Order of Friars Minor Conventual, and the advancement of the religious, spiritual, educational and charitable purposes of the Order, as may be consistent with the discipline and government of the Roman Catholic Church.

b) to exist as a private, non-stock, religious, charitable, and educational corporation within the meaning and intent of Section 501(c)(3) of the Internal Revenue Code its subsequent amendments and regulations as they now exist or as they may hereafter be amended and, in this connection to promote all the charitable, religious and educational purposes of the Province and the Order of Friars Minor Conventual.

c) to exercise all the pertinent and appropriate powers granted corporations by the Corporations and Associations Article of the Annotated Code of Maryland.

d) to receive, manage, control, invest and disburse contributions, legacies, devises, donations and property of every kind and description for the purposes and objects of the Corporation, and to expend the same in the exercise thereof.

e) generally to do any and all things which may be necessary to promote the general objects and purposes for which this Corporation is formed.

d) and to perform other activities permitted corporations under the General Laws of the State of Maryland, to the extent such activities are permitted of organizations which are exempt from Federal income tax under Section 501(c)(3) of the Code.

In furtherance of these purposes, the Corporation may:

e) have and exercise to the extent necessary or desirable for the accomplishment of any of the aforesaid purposes, and to the extent that they are not inconsistent with the charitable purposes of the Corporation, any and all powers exercisable by non-stock corporations under the Maryland General Corporation Law, together with the power to solicit grants and contributions for such purposes;

f) receive, manage, control, invest and disburse contributions, legacies, devises, donations and property of every kind and description for the purposes and objects of the Corporation, and expend the income and principal thereof in such manner and at such times as the Corporation may deem best to carry out the charitable purposes described herein; and

g) acquire, own, hold, develop, manage, lease and invest and reinvest in real or personal property, tangible or intangible, and to borrow monies with respect to the acquisition of and investment in such property; and

h) otherwise operate exclusively for religious, charitable, community benefit, scientific and educational purposes within the meaning of Section 501(c)(3) of the Code.

## ARTICLE THREE: **BOARD OF DIRECTORS**

The business and affairs of the Corporation shall be managed under the direction of its Board of Directors, consisting of a minimum of three (3) and a maximum of twenty (20) members, all of whom must be serving on the Definitory of the Province as determined by the Constitution of the Order and the Statutes of the Province. The names of the Directors who will serve until the first annual meeting and until their successors are elected and qualify are as follows:

Friar James McCurry (as President), Friar Justin Biase (as Vice President), and Friar Richard-Jacob Forcier (as Secretary).

The number of Directors may be increased or decreased in the manner provided in the Bylaws of the Corporation but shall never be less than the minimum number permitted by the General Laws of the State of Maryland now or hereafter in force.

The Minister Provincial, the Vicar Provincial, and the Secretary of the Province shall, by virtue of such offices, be members of the Board of Directors and serve as Chairman, Vice Chairman, and Secretary respectively. The Treasurer of the Corporation shall be elected and appointed as provided for in the Bylaws.

The Board of Directors, in addition to the Minster Provincial, the Vicar Provincial, and the Secretary of the Province, shall consist of those who serve on the Definitory of the Province as

determined by the Constitution of the Order of Friars Minor Conventual and the Statutes of the Province, which are incorporated by reference in these Articles. It is the intent of these Articles to preserve intact all the distinct powers and authority conferred upon the Minister Provincial or the Minister Provincial with his Definitory

## ARTICLE FOUR: OFFICES AND RESIDENT AGENT

The post office address of the principal office at which the Corporation in this State will be located is 12300 Folly Quarter Road, Ellicott City, Maryland 21042-1419.
The Resident Agent of the Corporation is Rev. Robert A. Twele, OFM Conv., whose post office address is 12300 Folly Quarter Road, Ellicott City, Maryland 21042-1419.

## ARTICLE FIVE: CAPITAL STOCK
The Corporation is not authorized to issue any capital stock.

## ARTICLE SIX: MEMBERS
The Directors of the Corporation also constitute the members of the Corporation and, when meeting as Directors, may exercise the rights and powers of members.

## ARTICLE SEVEN: NON-PROFIT STATUS
In all events and circumstances, and notwithstanding any merger, consolidation, reorganization, termination, dissolution, or winding up of the corporation, voluntary or involuntary, or by operation of law, or amendment of the Articles of Incorporation:

a)      no part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to, any member, Director or officer of the Corporation, or any other private person, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services actually rendered to or for the Corporation and to make payments and distributions in furtherance of the purposes set forth in Article TWO hereof;

b)      no substantial part of the activities of the Corporation shall consist of carrying on propaganda or otherwise attempting to influence legislation; nor shall the Corporation in any manner or to any extent participate in or intervene in (including the publishing or distributing of statements) any political campaign on behalf of any candidate for public office;

c)      notwithstanding any other provision of these Articles, the Corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by a corporation exempt from Federal income tax under Section 501(c)(3) of the Code.

## ARTICLE EIGHT: DURATION
The duration of the Corporation shall be perpetual.

## ARTICLE NINE: DISSOLUTION
In the event of the liquidation or dissolution of the Corporation, whether voluntary or involuntary, the assets of the Corporation remaining after payment of its liabilities and obligations shall have been made or provided for, and which shall not be held upon condition requiring return, transfer or conveyance, which condition occurs by reason of such dissolution or final liquidation, shall be distributed, transferred, conveyed, delivered and paid over to one or more organizations that are organized and operated exclusively for charitable, religious, scientific

or educational purposes and that at the time qualify as exempt organizations under Section 501(c)(3) of the Code as the Directors shall determine.

## ARTICLE TEN: AMENDMENT OF ARTICLES

In accordance with its Bylaws, the Corporation reserves the right to make from time to time, by the vote of a majority of the Directors, any amendment to these Articles which may now or hereafter be authorized by law, provided that no amendment shall be made which shall cause the Corporation to lose its exemption from Federal income tax under Section 501(c)(3) of the Code.

**IN WITNESS WHEREOF**, I have made, signed, and acknowledged these Articles of Incorporation, this _3rd_ day of _A PRIL_, 2014.

WITNESS:

_Christopher M. Vaughn_                    _J. Robert Augustine Twele, ofm conv._

                                             Rev. Robert A. Twele, OFM Conv.
                                             General Counsel to the Province
                                             12300 Folly Quarter Road
                                             Ellicott City, Maryland 21042-1419

I hereby consent to act as Resident Agent in Maryland for AnthonyCorps, Inc.

Date: _3 April 2014_                    _J. Robert Augustine Twele ofm conv._

                                             Rev. Robert A. Twele, OFM Conv.
                                             12300 Folly Quarter Road
                                             Ellicott City, Maryland 21042-1419

CUST ID:0003066876
WORK ORDER:0004283456
DATE:04-04-2014 12:16 PM
AMT. PAID:$225.00

# EXHIBIT 5



# FRANCISCAN FRIARS CONVENTUAL

HOME     WHO WE ARE     HOW WE SERVE     VOCATIONS     SUPPORT OUR WORK     SAFE ENVIRONMENT

MEMBERS – REALM

## Who We Are

**What's with the Gray Habit?**

The name of 'mendicant friars' was given to several groups of 'begging friars' whose origins in Europe date to the 13th and 14th centuries. These friars, in contrast to the monks, moved about freely among the people, especially the poor, preaching the gospel. Recognized by their religious habits, they were popularly referred to as Grey Friars (Franciscans), Black Friars (Dominicans), Austin Friars (Augustinians), and White Friars (Carmelites).

The Franciscan Friars today are divided into three main groups or branches: the Friars Minor (Brown Franciscans – OFM), the Friars Minor Capuchin (Capuchins – OFM Cap.), and the Friars Minor Conventual (Conventuals – OFM Conv.). Each branch adopted a habit that would distinguish it from the others. The history of the community and their distinctive religious garb is long and involved. Basically, the Friars Minor and Capuchins adopted a chestnut brown habit, while the Conventuals gradually changed to grey and were known as the "Gray Friars."

"The habit does not make the monk or friar," says the adage, but it is both a reminder of our religious consecration and a bond to our 800-year tradition.

   

Home

Who We Are

Our Lady of the Angels

St. Francis

News

Contact Us

How We Serve

Parishes

Education

Missions

Other Ministries

Cause Fr. Martin de Porres Maria Ward

2025 Jubilee – Our Lady of the Angels Province Pilgrims of Hope

Vocations

Support Our Work

Make a Donation

Estate Planning

Hurricane Helene Relief

Safe Environment

Policies, Procedure & Protocols

Procedures Explained

Report Abuse

Statement Form

Members – REALM

Search …

ACCREDITED BY

PRAESIDIUM

2023-2026

Copyright © 2025 Our Lady of the Angels Province. All Rights Reserved.

WEBSITE PRIVACY POLICY

# EXHIBIT 6



# FRANCISCAN FRIARS CONVENTUAL

HOME        WHO WE ARE        HOW WE SERVE        VOCATIONS        SUPPORT OUR WORK        SAFE ENVIRONMENT

MEMBERS – REALM

# Education

Throughout its long history, education has been an important part of the Franciscan Order.  Friars from Our Lady of the Angels Province have had strong traditions in education ministry.  They operated a College-Seminary and administered and taught in a great number of high schools.

**High Schools**

Today the Province is responsible for administration of its own high school in Hamburg, NY (St. Francis High School) and an Archdiocesan high school in Baltimore, MD (Archbishop Curley High School).

Individual friars work in a high school academic or campus ministry capacity, as well as a number of friars involved in higher education – serving as administrators, teachers & chaplains at various seminaries and colleges. Many of our parishes are affiliated with parochial elementary schools, where our friars work to be a strong patoral presence.  Our friars have served as instructors and administrators at seminaries and universities, while many have been involved in the education and training of the laity for ministry in the Church.

**Youth & Young Adult Ministry**

Many of the ministries in which the Friars of Our Lady of the Angels Province are engaged in have programs for youth and young adults. This is especially true in the parishes, schools, colleges, and universities where the friars serve as educators and sacramental ministries through RCIA programs, faith enrichment programs, and through service and Catholic social justice activities. Our Youth and Young Adult ministry programs can be found in the United States and Canada:

University of North Carolina at Chapel Hill Newman Center – Chapel Hill, N.C.
Elon University Catholic Campus Ministry – Elon, N.C.
Syracuse University Catholic Campus Ministry – Syracuse, N.Y.
Bishop McNamara High School – Forestville, Md.
Our Lady of Good Counsel High School – Olney, Md.
Regiopolis-Notre Dame Catholic High School – Kingston, Ontario (Canada)
FrancisCorps – Syracuse, N.Y.



FRIARS MINOR CONVENTUAL

Home
Who We Are
Our Lady of the Angels
St. Francis
News
Contact Us
How We Serve

Case 1-20-10322-CLB,    Doc 4216,    Filed 09/30/25,    Entered 09/30/25 16:48:19,    Description: Main Document  , Page 24 of 61

Parishes

Education

Missions

Other Ministries

Cause Fr. Martin de Porres Maria Ward

2025 Jubilee – Our Lady of the Angels Province Pilgrims of Hope

Vocations

Support Our Work

Make a Donation

Estate Planning

Hurricane Helene Relief

Safe Environment

Policies, Procedure & Protocols

Procedures Explained

Report Abuse

Statement Form

Members – REALM

Search …



Copyright © 2025 Our Lady of the Angels Province. All Rights Reserved.

WEBSITE PRIVACY POLICY

# EXHIBIT  7

| Owner | Book Page / Date |
|---|---|
| FRANCISCAN FATHERS ASSN | 840 527 *01/20/1916* |
| FRANCISCAN FATHERS ASSN | 1371 65 *10/16/1916* |
| ST FRANCIS HIGH SCHOOL | 6515 398 *01/14/1960* |
| ST FRANCIS HIGH SCHOOL | 10931 7826 *05/01/1998* |
| ST FRANCIS HIGH SCHOOL | 11146 2695 *06/17/2008* |
| ST FRANCIS HIGH SCHOOL | 11312 5073 *04/28/2017* |

**Back to Property Information**

# EXHIBIT 8

# History



Skip Animation

# Founder of St. Francis High School

The school was founded under the leadership of the Very Rev. Justin Figas, OFM Conv., who had long desired to establish a secondary school for young men in the Niagara Frontier area. In December 1924, he met with a group of Polish-American professionals and businessmen from Buffalo to consider the possibility of erecting a school in Athol Springs, NY on a thirty-two-acre site that had been purchased for the Conventual Franciscans of St. Anthony of Padua Province in 1916 by the Very Rev. Hyacinth Fudzinski, OFM Conv. The site, which is located on the shores of Lake Erie about eight miles south of Buffalo, had been the estate of Dr. Pierce, a nationally famous maker of patent medicines at the turn of the century.



# The Justin Drivers

A committee, which came to be known as the "Father Justin Drivers" was formed to raise the funds necessary for the construction of the high school. It met with such great success that on July 12, 1925 ground breaking ceremonies were held and sixteen months later construction was completed. St. Francis High School was formally dedicated on November 25, 1926 as a college-ready Catholic high school for young men. The following year the first class of students was officially enrolled.

Skip To Main Content

# Our Franciscan Tradition

.

.

.

Since Franciscan education takes a holistic approach toward the development of the individual, the student is encouraged to become a more active Christian within society. Therefore, religion, academics, fine arts, athletics, and numerous social activities are all important facets of a St. Francis education.

The school's philosophy of education rests in the rich tradition of the Conventual Franciscans, developed since the 13th century, which understands education in terms of an individual's relationship with God, with other persons, and with the world community. Each young man at St. Francis High School is therefore encouraged to seek knowledge of his God, his own personal identity, and his place in the world.

Self-discipline is the foundation of an individual's total development, and enables the student to achieve his goals by fostering authentic humility and promoting greater respect for others. The St. Francis student is taught to live within the bounds of society and take responsibility for his actions.

# EXHIBIT 9

# Real Property Information

| | | | | | |
|---|---|---|---|---|---|
| **Parcel Status** | ACTIVE | **City\Town** | Hamburg | **Village** | |
| **S-B-L** | 159.18-2-1.11 | **Owner** | ST FRANCIS HIGH SHOO | | |
| **Property Location** | 4129 LAKESHORE RD | **Mailing Address** | | | |
| **Property Class** | 612 SCHOOL | **Line 2** | | | |
| **Assessment** | $7,400,000.00 | **Line 3** | | | |
| **Taxable** | $0.00 | **Street** | 4129 LAKESHORE RD | | |
| **Desc** | BLDGS | **City/State** | ATHOL SPRINGS  NY | | |
| **Desc** | 500-27 | **Zip** | 14010 | **SWIS** | 144889 |
| **Deed Book** | | **Deed Page** | | | |
| **Frontage** | 1820.00 | **Depth** | 0.00 | **Acres** | 29.00 |
| **Year Built** | | **Square Ft** | | | |
| **Beds** | | **Baths** | | | |
| **FirePlace** | | **School** | FRONTIER CENTRAL SCH | | |

**Owner History**          **Tax Payment History**

**Google Maps**

# EXHIBIT 10



**The Free Encyclopedia**

# Saint Francis High School (Athol Springs, New York)

**Saint Francis High School** is a Catholic, private college preparatory high school for young men that operates under the administration of Our Lady of the Angels Province of the Order of Friars Minor Conventual in Athol Springs, New York within the Diocese of Buffalo. The school was founded in 1927 by Fr. Justin Figas, OFM Conv. The school is accredited by Middle States Association of Colleges and Schools.

## Founding and development



The Quad addition. In the foreground is Friar's Hall. One of the copper gnomes of the chapel can be seen. In the upper left the original Justin Hall can be seen, and to the right is the most recent addition.

The school's founder, Fr. Justin Figas, OFM Conv., wished to establish a secondary school for young men of the Polish-American immigrant community in the Niagara Frontier area in Western New York. The Conventual Franciscans of the Saint Anthony of Padua Province already owned a 32-acre (130,000 m²) parcel of land on the shore of Lake Erie in Athol Springs just outside Buffalo. The site was purchased in 1916 by Father Hyacinth Fudzinski. The land had previously been the estate of one "Dr. Pierce," who developed pharmaceuticals around the start of the 20th century. In

### St. Francis High School



**Location**



Wikimedia | © OpenStreetMap

4129 Lake Shore Road Athol Springs
Hamburg, New York 14010
United States

| Coordinates | 42°46′12″N 78°51′50″W |
|---|---|
| **Information** | |
| **Type** | Private, Boys |
| **Motto** | Latin:*Pax et Bonum; Deus Scientarium Dominus* English: *Peace and All Good; God is the Master of Knowledge* |
| **Religious affiliation(s)** | Roman Catholic (Conventual Franciscan) |

December 1924 Father Justin assembled a group of Polish-American businessmen and professionals from Buffalo, New York to help raise funds and support for the construction of the school. This group became known as the "Father Justin Drivers," or the "Justin Drivers." The group was successful and in 1925 ground was broken for the new school in a ceremony held on 12 July 1925. Construction took sixteen months and Saint Francis High School was dedicated on 25 November 1926. In 1927 the first class was enrolled. The original structure built on campus is now called Friar's Hall.

In May 1937 the school was found to meet all requirements of the Board of Regents of the State of New York. In the fall 1943 the school became affiliated with the Catholic University of America in Washington, DC.

In the 1940s there was a great increase in student enrollment, and Father Justin again saw the need to build. This time he planned to build a dormitory/gymnasium building with a tunnel linking to the original building. In 1946 Father Justin again assembled a group of "drivers" and four years later, in 1950, ground was broken on the new complex. The gymnasium was completed first on 2 September 1951, but the dormitories were not completed for another six years. The building is now known as Justin Hall.

Renovations were done to the chapel, science labs, student dining room, residence facilities, offices, and gymnasium in the 1960s and 70s. The school was able to offer a full college preparatory curriculum for students who lived on campus, and for students who commuted daily. Enrollment again increased and increased classroom space was needed. Classrooms were made in Justin Hall where resident living was once planned. At the same time, in the late 1970s and continuing into the 1980s, the number of resident students steadily decreased. By the late 1980s, only the top floor of Justin Hall was used for residence life. At the end of the 1988 school year, the Board of Directors terminated the residency program.

| | |
|---|---|
| Established | 1927 |
| Founder | Justin Figas |
| Oversight | Order of Friars Minor Conventual |
| CEEB code | 330230 |
| President | Friar Matt Foley |
| Principal | Michael Messore |
| Faculty | 49 |
| Grades | 9-12 |
| Enrollment | 557 (2017) |
| Student to teacher ratio | 12:1 |
| Campus | Overlooks Lake Erie |
| Campus size | 48.5 acres (196,000 m$^2$) |
| Color(s) | Red and White |
| Slogan | Success Begins at Saint Francis |
| Song | "In My Own Lifetime" |
| Athletics | 15 sports. Freshman, JV, and Varsity team. |
| Athletics conference | Monsignor Martin Athletic Association |
| Mascot | Reggie The Raider |
| Nickname | Red Raiders |
| Rivals | <ul><li>Bishop Timon – St. Jude High School</li><li>Canisius High School</li><li>St. Joseph's Collegiate Institute</li></ul> |
| Accreditation | Middle States Association of Colleges and Schools |
| Publication | *The Odyssey* (Literary Magazine) |
| Newspaper | *Banner* |
| Yearbook | *Crusader* |
| Tuition | $12,870 |
| Website | www.stfrancishigh.org (http://www.stfrancishigh.org) [1] |

In 1985 fundraising began for the construction an auditorium complex. In May 1987 ground was broken and on 29 October 1988 the John Ormsby Alumni Auditorium opened. The building was constructed adjacent to Justin Hall and includes a thrust stage with an orchestra pit in an 800-seat auditorium, a campus book store, a fitness center, and a boardroom. In 1995 the complex was completed with the construction of a band room, practice rooms, dressing rooms, offices, and storage space.

In 1999, a 16.5-acre (0.067 km$^2$) parcel of land behind the school's football field on Big Tree Road was acquired. Practice fields and additional playing fields were constructed in that space.[2] The science labs in Friar's Hall were overhauled and modernized in 2003. In November 2004 an expansion of Justin Hall and the gymnasium began. In late 2005 construction was completed and the new facility included additional classrooms; separate locker-rooms for gym classes, home teams, opposing teams, and referees; an additional gym floor, and an athletic trainer's room. At the time of construction the campus traffic pattern was also changed. Previously traffic blowed between the two major



The John Ormsby Alumni Hall

complexes on campus, essentially forming a sea of parking and traffic. The update saw the addition of a 52-space parking lot on the Lake Erie side of Friar's Hall and the creation of a traditional grass quadrangle with walkways between Friar's and Justin Halls. In 2007, construction began on the new Mary Schneider Visual Arts Center located in the lower floor of Friar's Hall. It features 4,695 sq ft (436.2 m$^2$) of floor space and includes space for art classes and storage. Also included are a new classroom and a teachers' dining room.[2]

2010 saw an update of the school's athletic facilities with the addition of new bleachers as well as a new press box on the football field.

In 2010-2011 construction took place for new resident rooms. There are dorms for 26 residents along with an activities rooms. The dormatories opened in the 2011–2012 school year.

From 2015 to 2017, the outdoor athletic facilities were expanded and renovated. In 2015 a multi-sport synthetic turf playing surface (Polian Family Field) was installed along with a new eight lane track. 2016 saw the Gacioch Family Athletic Center completed featuring on-site home an away locker rooms, an athletic training room, an officials room, a coaches room, a viewing suite overlooking Polian Family Failed, a filming tower, a permanent home for the Fr. Rufinus Niedzwiecki OFM Conv. Sports Hall of Fame, and a concessions stand. On March 18, 2017, the varsity baseball field was dedicated as Jeff Sgroi Memorial Field in memory of long time assistant coach Jeffrey Michael Sgroi. Improvements include the addition of dugouts, a new playing surface, fencing, bullpens, storage and a scoreboard.

# Notable alumni

- Brian Daboll, head coach for the New York Giants
- Kevin Kuwik, head men's basketball coach for Army
- Elliot Jacobson, drummer for singer/songwriter Ingrid Michaelson and other artists[3][4]
- Patrick Kaleta, right wing for NHL's Buffalo Sabres from 2007 to 2013 (attended)
- Kevin Kobel, former Major League Baseball pitcher for Milwaukee Brewers and New York Mets
- Todd Krygier, player for NHL's Hartford Whalers, 1989–1991; Washington Capitals, 1991–1994, 1995–1998; and Anaheim Ducks, 1994-1996
- Jim Kubiak, quarterback who broke 22 passing records at U.S. Naval Academy; was on NFL's Indianapolis Colts roster for one season
- Dylan McDuffie, college football running back for the Kansas Jayhawks (attended)
- Aaron Miller, NHL defensemen, won Stanley Cup with Colorado Avalanche in 1996; played on USA Olympic Hockey Team in 1998, 2002, and 2006
- Jim Negrych, baseball player for Buffalo Bisons, AAA affiliate of Toronto Blue Jays
- Brian Polian '93, head football coach at University of Nevada, Reno 2013–16; assistant coach at LSU
- Jack Quinn III, former New York State Assemblyman representing 146th District; son of former U.S. Congressman Jack Quinn
- Kyle Smith, American football executive for the Washington Redskins[5]
- Lee Stempniak '01, right wing for NHL's Calgary Flames[6][7]
- Luke Tasker, wide receiver in NFL and Canadian Football League
- Tom Telesco '91, general manager of NFL's Las Vegas Raiders
- Doug Worthington '05, NFL defensive lineman
- Mark Jackson '95, Plant Manager Motion Concepts

# References

1. MSA-CSS. "MSA-Commission on Secondary Schools" (https://web.archive.org/web/20200609202821/https://www.msa-cess.org/RelId/606553/ISvars/default/Member_Directory.htm). Archived from the original (http://www.msa-cess.org/RelId/606553/ISvars/default/Member_Directory.htm) on June 9, 2020. Retrieved March 10, 2018.
2. History of Saint Francis High School (https://www.sfhs.com/page.cfm?p=515) Retrieved March 10, 2018.
3. Elliot Jacobson: Drummer (http://elliot-jacobson.com/), *Elliot Jacobson*, Retrieved March 10, 2018.
4. "Elliot Jacobson of Ingrid Michaelson" (https://www.moderndrummer.com/2014/06/elliot-jacobson-ingrid-michaelson/). *Modern Drummer*. July 2014. Retrieved March 10, 2018.
5. Skurski, Jay (January 14, 2019). "Kyle Smith, son of former Bills exec, goes from St. Francis to NFL scouting director" (https://buffalonews.com/2019/01/14/washington-redskins-kyle-smith-scouting-nfl/). *BuffaloNews.com*. Retrieved January 14, 2020.
6. "Leafs look to capitalize tonight" (https://www.nhl.com/mapleleafs/news/leafs-look-to-capitalize-tonight/c-513721). National Hockey League. January 15, 2010. Retrieved March 10, 2018.
7. "Leafs continue road trip against Flames" (https://www.nhl.com/mapleleafs/news/leafs-continue-road-trip-against-flames/c-689200). National Hockey League. October 30, 2013. Retrieved March 10, 2018.

# External links

- St. Francis High School Website (http://www.stfrancishigh.org/)

Retrieved from "https://en.wikipedia.org/w/index.php?
title=Saint_Francis_High_School_(Athol_Springs,_New_York)&oldid=1303259262"

# EXHIBIT 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------x
In Re:                                1-20-10322(CLB)
                                      Chapter 11

The Diocese of Buffalo, N.Y.,
              Debtor.
--------------------------------------------------x
**HEARING**          **June 4, 2025**      **Buffalo, New York**


                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE CARL L. BUCKI
                UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

DEBTOR:                    BOND, SCHOENECK & KING, PLLC
(Via telephone)             BY:  ANDREW RIVERA, ESQ.
                           One Lincoln Center
                           Syracuse, New York 13202

CREDITORS                  PACHULSKI, STANG, ZIEHL & JONES LLP
COMMITTEE:                   BY:  KAREN B. DINE, ESQ.
(Via telephone)            780 Third Avenue
                           34th Floor
                           New York, New York 10017-2024




TRANSCRIBER:      Diane S. Martens
                  dmartensreporter@gmail.com


(Proceedings recorded by electronic audio recording,
 transcript produced by computer.)

APPEARANCES


U.S. FIRE and          O'MELVENY & MYERS LLP
PACIFIC:                 BY:  ADAM HABERKORN, ESQ.
(Via telephone)        1301 Avenue of the Americas
                       New York, New York 10019

SURVIVORS:             THE LAW OFFICES OF STEVE BOYD PC
(Via telephone)          BY:  STEPHEN BOYD, ESQ.
                       510 Clinton Square
                       Rochester, New York 14604

SURVIVORS:             JEFF ANDERSON & ASSOCIATES, PA
(Via telephone)          BY:  STACEY BENSON, ESQ.
                       366 Jackson Street
                       Suite 100
                       St. Paul, Minnesota 55101

1

**P R O C E E D I N G S**

2

3                    *              *              *

4

5      **THE COURT:**  Good afternoon.  This is Judge Bucki.

6      We are here for what was scheduled as a motion in the

7 case of the Diocese of Buffalo New York.

8      For those who are online, I remind you that local

9 bankruptcy rules prohibit the recording or rebroadcasting of

10 any portion of today's proceeding and I ask everyone to

11 please identify yourselves each time that you speak.  We need

12 that to facilitate the preparation of a transcript should one

13 be necessary or requested.

14      What we have today is a number of motions objecting to

15 claims.

16      But let me get appearances first.  I understand that

17 there may be a request to adjourn the consideration of these

18 motions.

19      Who do I have on line on behalf of the Diocese?

20      **MR. RIVERA:**  Good afternoon, your Honor.

21      Andrew Rivera, Bond Schoeneck & King on behalf of the

22 Diocese of Buffalo.

23      **THE COURT:**  All right.  Thank you.

24      Do I have anybody on behalf of the Committee?

25      **MS. DINE:**  Your Honor, this is Karen Dine from

In Re: Diocese of Buffalo - BK 20-10322

1  Pachulski, Stang, Ziehl & Jones on behalf of the Committee.

2     **THE COURT:** All right. Thank you.

3     Are the Parishes represented today?

4     (No response.)

5     **THE COURT:** Apparently not.

6     Do we have the United States Trustee appearing?

7     (No response.)

8     **THE COURT:** Anyone else wishing to note their

9  appearances?

10     **MR. BOYD:** Good afternoon, your Honor, Stephen Boyd

11  representing two members of the Committee and several other

12  Unsecured Creditors.

13     **THE COURT:** Thank you.

14     Anyone else?

15     **MS. BENSON:** Good morning, your Honor Stacey Benson with

16  Jeff Anderson & Associates on behalf of numerous sexual abuse

17  survivors and two Committee members.

18     **THE COURT:** All right. Thank you.

19     Well let me ask. I know you're representing a number of

20  creditors. Are you representing any of the respondents to

21  these motions.

22     **MS. BENSON:** Yes, we represent several. I'd have to get

23  the number for you exactly.

24     **THE COURT:** No, that's all right. I just want to know

25  for sure that you're not only interested generally in the

In Re: Diocese of Buffalo - BK 20-10322

1  case but also in the specific motions.

2      **MS. BENSON:**  Yes.

3      **THE COURT:**  Anyone else appearing?

4      **MS. BENSON:**  Both Mr. Boyd and I.  Sorry.

5      **THE COURT:**  Oh, both of you are.  That's fine.

6      **MR. BOYD:**  Yes.

7      **THE COURT:**  Anyone else appearing?

8      **MR. HABERKORN:**  Good morning, your Honor, that is Adam

9  Haberkorn of O'Melveny & Myers on behalf of U.S. Fire and

10 Pacific Employers Insurance Company.

11     **THE COURT:**  All right.  We welcome you as well.

12     Anyone else?

13     (No response.)

14     **THE COURT:**  All right.

15     Well, Mr. Rivera, these are your motions and I was told,

16 though, that you might be looking for an adjournment.

17     What do you want to say?

18     **MR. RIVERA:**  That's correct, your Honor.

19     As the Court is aware, the Catholic Family and the

20 Committee have reached a $150 million settlement and the

21 Diocese is committed to continuing its efforts to reach a

22 global settlement with insurers in mediation and we think at

23 this juncture it's appropriate to adjourn these matters so

24 that we can focus our efforts on mediation.

25     I believe the Committee agrees -- Karen is on and I

In Re: Diocese of Buffalo - BK 20-10322

1   would like for her to confirm -- but at this point we're

2   seeking a 90-day adjournment of these motions.

3       **THE COURT:**  Well, let me press you on this.

4       Your position, at least in the motions, is that these

5   are people who are not even creditors in the bankruptcy case

6   for the Diocese of Buffalo.  Or at least should not be

7   treated as creditors in the Diocese of Buffalo.  If that is

8   your continuing position, should we not clear this issue out

9   of -- off the docket as opposed to continuing with their

10  adjournment?

11      **MR. RIVERA:**  So, your Honor, we have announced

12  settlement and at this point we're starting to put together

13  the terms of what a Plan would look like.  And a lot of these

14  Plans in other Diocese cases have a claims administrator that

15  would have the ability to set the value of claims and we

16  think at this point it doesn't make sense, while the parties

17  are really focused at this critical time on mediation and

18  resolving a Plan, to spend the money, you know, pursuing

19  these claim objections if they will ultimately be dealt with

20  under the terms of the Plan.

21      **THE COURT:**  So, is it your expectation that

22  notwithstanding *Purdue Pharma*, that you would -- you may be

23  presenting a plan that addresses claims of creditors who have

24  no claim by your position against the Diocese itself?

25      **MR. RIVERA:**  So I don't want to get ahead of ourselves,

1   your Honor but, but, you know, there are -- I don't know if

2   it's a *Purdue Pharma* issue, especially if we're pursuing a

3   consensual plan where the creditors are going to be

4   voluntarily or consensually releasing their claims.  But at

5   this point, you know, I, I don't want to, you know, say that

6   we won't pursue these claims but I just think we are not in a

7   position where we want to move forward right now.  We think a

8   90-day adjournment so that the parties can focus on

9   formulating a Plan and reaching that second level agreement

10  with insurers are critical at this point.

11       **THE COURT:**  All right.  Who else wants to speak on this

12  request?

13       **MR. HABERKORN:**  Your Honor, I'd like to be heard on

14  this, if that's okay with the Court.

15       **THE COURT:**  Go ahead.

16       **MR. HABERKORN:**  Yes.  On that point, you raised a good

17  point that we wanted to raise as well.  The resolution of

18  these claims which they are the prima facia case that has

19  been presented by the Diocese, these claims are, you know,

20  not allowable under the Bankruptcy Code.  Resolution of these

21  claims objections is in the interest of the ongoing

22  mediation.  While the Diocese has a settlement in principle

23  with the Committee, the insurers remain in mediation, in

24  ongoing mediation.  And knowing exactly which claims we're

25  actually negotiating over is going to be incredibly helpful

1   leading to a resolution of the mediation.

2       If the Diocese is, you know, content not moving forward

3   with these objections, you know, perhaps the insurers would

4   be willing to step in and litigate these objections and file

5   appropriate motions to, to make that happen.  We're happy to

6   discuss that with the Diocese but these should be resolved in

7   short order, especially given the deadline for a plan of, you

8   know, at the end of September.

9       So, we would ask that if there's an adjournment granted,

10  that these motions be adjourned no more than say 30 days and

11  if the Diocese doesn't want to go forward, the insurers will

12  step in and litigate them.

13      **THE COURT:**  Although right now there's no order

14  prohibiting you from proceeding with your own claim

15  objections on these cases (extraneous noise).

16      **MR. HABERKORN:**  Yes, that's correct.

17      **THE COURT:**  All right.

18      **MR. HABERKORN:**  And if that's the way you deem -- you

19  view objections that's how we need to proceed, we'll proceed

20  but at this time the Diocese is already made a prima facia

21  case for the unallowability of these claims, and as far as

22  I'm aware, no individual claimants have filed opposition or

23  responded to them in any way.  So, it's -- those should go

24  forward.

25      **THE COURT:**  All right.  Anyone else want to speak to

1   this question?

2   **MS. DINE:**  Yes, your Honor, if I may be heard.

3   **THE COURT:**  Yes, please.

4   **MS. DINE:**  So I'll start by saying that the Committee

5   absolutely agrees with the Diocese's position and disagrees

6   with the position of the insurer, that while the objections

7   have been made, that does not resolve the objections and they

8   are certainly going to be in dispute and the claimants are

9   obviously going to view this differently.  And part of what

10  is being resolved through the mediation and the agreement

11  that's been reached with the Diocese and the Committee will

12  be the way that these claims are addressed ultimately,

13  whether there will be a claims review process that will

14  determine the viability of claims and also then what share of

15  any settlement trust those claimants may be entitled to.

16      You know, this is not a resolution necessarily that

17  those claims will ultimately be allowed against the trust but

18  it's just saying that we are not going to litigate those now

19  and spend the time and the effort and this will be part of

20  what's mediated.  To the extent that the insurers disagree

21  with this approach and, you know, don't think that this is

22  something that is part of the mediation or that this somehow

23  has to be resolved, that would be something that you would

24  take up as an issue at another day and reserve all rights as

25  to whether the insurers can make those objections and whether

1  those would need to be heard now.

2       **THE COURT:**  All right.  Anyone else want to speak?

3       **MR. BOYD:**  Yes, your Honor, may I be heard.

4       **THE COURT:**  Yes, please.

5       **MR. BOYD:**  So, your Honor, as mentioned earlier, we did

6  have disagreement with the claims objections and the manner

7  in which we disagreed was with an extensive amount of

8  discovery demands upon the Debtor in coding documents,

9  subpoenas for depositions.  And after those were made by

10  multiple attorneys involved in this case -- I think there was

11  over 90 claims objections total, something in that nature --

12  we reached the settlement with the Catholic Family.  And as

13  the Court has noted, and we know, they will, they are

14  struggling to figure out exactly how they're going to fund

15  that settlement.  And we trust that they will.

16       But to diminish estate assets by involving the estate in

17  all of those depositions, in responding to 90 discovery

18  demands where there might be 70 or 80 different perpetrator

19  files involved, that is a massive amount of cost to the

20  estate and, you know, U.S. Fire could have filed its own

21  motion.  We don't even know if they have any of the claims to

22  which the Diocese has objected.  So I don't know what

23  standing they have to object to the adjournment and I don't

24  think they're part of this motion.

25       But I represent a number of people who absolutely

1  believe that the claims objections would be overruled but at

2  this point since we've reached a settlement with the Diocese,

3  why spend those assets when all of our efforts should be

4  focused, laser focused, on the continuing mediation with the

5  more reasonable insurance carriers.

6      **THE COURT:** Well let me ask you this question. I mean,

7  are you not somewhat in a dilemma here? You have a set --

8  it's been represented to the Court and publicly that as far

9  as a settlement -- there's been an agreement, let's call it,

10  you can call it a settlement, $150 million to be contributed

11  by the Diocese. But if you add on an additional 28 claimants

12  who have no -- and I'm not, first of all, I'm going to be

13  clear. I'm not making any ruling or suggestion of a ruling

14  as to these claim objections, I haven't heard any oral

15  argument. I haven't heard the responses so I'm not making

16  any ruling today one way or the other.

17      But if the Diocese is correct -- and that's a big

18  "if" -- if the Diocese is correct that these, I think it was

19  28, whatever the exact number is, if these 28 or so claimants

20  have absolutely no claim again the Diocese and yet you allow

21  them to go and recover through the plan, are you not diluting

22  the recovery for the other 800 and some claimants and

23  reducing what they will ultimately get by way of this

24  settlement because you're adding on additional claims.

25      **MR. BOYD:** Well, thank you for your question, your

1    Honor.

2         First of all, as I mentioned at the top, we vehemently

3    disagree with the claims objections and I'll tell you why.

4         And the Court in a prior hearing cited the independence

5    of religious orders under Canon Law but also under Canon Law,

6    the Diocese or the local Bishop has authority over all

7    priests that practice the Catholic faith in the geography of

8    that Bishop.  And so we were preparing with an expert to make

9    our case to the court to show that in fact the Diocese did

10   have some control.  So, the premise of your question is one

11   that I can't agree with to start with because I believe that

12   the claims objections would ultimately be overruled in most

13   of the cases.

14        But to your question, your Honor -- and I am very much

15   learning bankruptcy law because as a personal injury lawyer,

16   my focus on every case prior to this matter has been what is

17   the damage and what is the value of the case.  But I

18   understand in bankruptcy we are not looking at that.  We are

19   looking at what is the assets of the estate because, frankly,

20   your Honor, if I were to take ten of our cases to state court

21   and the average settlement with the Diocese, I don't know the

22   numbers.  But if the average settlement is "A", I could go to

23   state court and get "A" times 5.  But I can't do that in

24   bankruptcy because we're focused on the assets of the estate.

25   So ultimately I don't know if it really matters how many

1 claimants there are.

2     We believe that we have reached a deal with the

3 estate -- with the Debtor that is fair and equitable

4 considering the seriousness of the claims and the amount of

5 assets available to the Estate to pay these claims.

6     **THE COURT:** Well, I mean, if -- I mean, here again,

7 we're looking at positions that everyone has taken. If you

8 look at the claims, which would be the position that

9 you've -- you've taken or your firm has taken with respect to

10 many of the claims -- not all -- and you add on the demands

11 that you're making or allegations of damages, that's probably

12 an amount that far exceeds the available funds. And by the

13 same token, the Diocese is taking the position at to these 28

14 or so claims that there's no liability. Maybe they're right,

15 maybe they're not right.

16     But doesn't it create somewhat of a conflict? I mean if

17 you're, if you're representing some people who may be or

18 perhaps should be looking elsewhere to one of the religious

19 orders, are not you reducing the funds available for your

20 other clients and does that pose a potential conflict of

21 interest?

22     **MR. BOYD:** I think it doesn't, your Honor, because

23 these, as I said, we believe these are good faith claims

24 against the Debtor.

25     I'll give you an example. The Diocese has an

1  independent review board.  We have cooperated with the

2  investigators for that independent review board for the last

3  six years.  When they are investigating a priest and they

4  want to talk to a survivor, we have asked our client would

5  they be willing to talk and in about half of the cases, maybe

6  a little more, they are willing to talk to the Diocesan

7  investigators.  The very last one that I was involved with

8  had to do with a Jesuit priest, a priest who taught at

9  Canisius high school, that was a Diocesan investigator

10 investigating a matter for the local Bishop with regard to

11 whether or not this person should remain a priest.  So there

12 are crossovers.

13     And when I say we vehemently oppose the claims

14 objections, I'm not just saying it to say it, I believe that

15 we would be successful in bringing forth evidence to this

16 Court to show that the claim is valid because the Diocese was

17 involved.  And all of this started before we reached that

18 agreement.  So in reaching that agreement, your Honor, I was

19 negotiating on behalf of all my clients.  The Diocese was

20 negotiating on behalf of themselves dealing with all of the

21 claimants so we did not start any conflict of interest.

22     The only potential issue would be if claims objections

23 were sustained, we do not intend to go back and say to the

24 Diocese, okay, now it's less than 150 million because

25 150 million doesn't cover it that's because we're in

In Re: Diocese of Buffalo - BK 20-10322

1  bankruptcy and not in state court.  150 million is not enough

2  to bring justice to half of the claimants but we acknowledge

3  that it is the most that we can get out of this Debtor so I

4  don't believe there's any conflict of interest.

5      **THE COURT:**  Mm-mm.  Well, all right.  I hear your

6  argument.

7      Anyone else have a comment?

8      **MR. RIVERA:**  Your Honor, I think on behalf of the

9  Diocese I just have a couple other remarks in our, you know,

10  the Diocese perspective on some of your questions.

11      I just want to re-clarify that what we're seeking here,

12  we're not withdrawing the claim objections, the Diocese is

13  not agreeing to at this point withdraw.  We're -- we don't

14  have a plan on file and we're simply asking for an

15  adjournment.

16      And what I would say to the Court is that the 90-day

17  adjournment that we're looking for is not by accident.  This

18  Court set a September 1st deadline to file a plan.  If we

19  take 90 days from today, that puts us right after that.  I'm

20  not saying we're going to be ready to move forward with claim

21  objections or that at that point we'll be ready to resolve or

22  withdraw or that that Plan, if it's filed timely, will be the

23  ultimate plan that we're going to proceed with towards

24  confirmation but I think the 90-day adjournment that we're

25  requesting here is narrowly tailored for the parties to

1    address mediation and Plan formulation and try to push this

2    case towards a resolution here.  I hear -- it seems, your

3    Honor, that perhaps you're looking ahead and we might get to

4    where you're thinking but even if these claims are allowed

5    for the settlement trust purposes, that allowance does not

6    dictate what the distribution under a Plan would be.  It

7    could be $0.

8        So whether it's resolving these claims through a claims

9    of reprocess in the plan or if we do have to proceed with

10   claim objections, I just wanted to advise the Court that

11   we're not abandoning these claim objections at this moment

12   but simply seeking a 90-day adjournment.

13       And with respect to the insurers possibly raising their

14   own claim objections, we echo both the Committee's and with

15   Mr. Boyd's comments that we're not sure exactly their

16   standing at this point.  We reserve all rights to object to

17   those claim objections or respond in any way if they are made

18   in the future.

19       **THE COURT:**  All right.  Anyone else want to speak in?

20       (No response.)

21       **THE COURT:**  All right.  Well, first of all, it's obvious

22   that we're not ready to go forward today on this particular

23   set of objections.  And I'm going to repeat myself for

24   purposes of emphasis.

25       I'm not making any ruling on this.  The commonality on

1  these objections that are before me today is the argument

2  that the liability rests not with the Diocese but with an

3  independent entity such as a religious order who may have

4  operated a school or a parish and that they would be beyond

5  the control of the Diocese and, therefore, the Diocese has no

6  liability.  I'm making no ruling whatsoever because I have

7  not heard the arguments on it as to whether or not that is an

8  appropriate defense or not an appropriate defense.  The

9  requests I have is to adjourn this for three months.  I will

10  adjourn it for three months but it is without prejudice to

11  any interested party who has standing to file an objection in

12  this court similar to the objections that I'm going to grant

13  the adjournment.

14      So, for example, if any of the insurers that have, that

15  want to get a determination on this so that they ascertain

16  the scope of their potential coverage obligations, they can

17  bring a motion.  Whether they have standing, I'm not ruling

18  on.  All I'm saying is they can file a motion if they so

19  wish.  And at that point I'll address all the many issues

20  that might relate to it.

21      But I'll grant your request for an adjournment without

22  prejudice to anyone else raising a further issue if they feel

23  it is appropriate.  And I will address the issues related to

24  that new motion when it is brought, whether it be on the

25  merits, whether it be on the standing question, whether it be

1  on a timeliness question, any issue that might be raised,

2  I'll address it then.

3      But I'll grant your adjournment.  I'm granting the

4  adjournment primarily because of my own pressure that I'm

5  putting on everyone.  This case has been with us for more

6  than five years and I've already spoken to that question in

7  my decision from January where I stated that I was concerned

8  about the length and about the delay in providing remedies to

9  parties who have legitimate claims.  And at that same order I

10 appointed an additional mediator -- now the sole mediator --

11 to go and try to put pressure on the parties to work out a

12 settlement.

13     And so the deadline, of course, is September for that,

14 for a plan to be filed and I understand that if these motions

15 will face aggressive or let's say diligent response there may

16 be a time expenditure in dealing with the issues on these

17 particular claim objections that perhaps should be more

18 focused on settlement negotiations and the finalization of a

19 proposed plan.  So, I understand that.  And so I'll give you

20 the adjournment.  But, again, it is without prejudice.

21     If any party with standing wishes to raise their own

22 objection, perhaps even on the identical grounds that are

23 raised by the Diocese in these motions, we'll give you a

24 hearing time and we'll give it consideration.  And so we're

25 open to that being raised by anyone.

In Re: Diocese of Buffalo - BK 20-10322

1    But for now, I hear your argument and concern that

2  you're working for a drafting of a plan by September and so

3  I'll give you an adjournment.

4    Mr. Rivera, how are you for the first week of September?

5    (No response.)

6    **THE COURT:**  Did we lose you, Mr. Rivera?

7    **MR. RIVERA:**  No.  I'm sorry, your Honor, I am here.

8    So the first week of September, let me just.  I think

9  September 4th works for me if it works for the Committee and

10 the other parties.

11   **THE COURT:**  All right.  I know that people with children

12 in school may be pressed but I don't know if that affects

13 anybody.  September 4th, the whole day is open and we can

14 certainly do that.  How does that work for other people?

15   **MR. BOYD:**  That's fine for me, your Honor.

16   **THE COURT:**  All right.  Thank you.

17   Does it work for the Committee?

18   **MS. DINE:**  Your Honor, that's fine for the Committee.

19   **THE COURT:**  All right.  How about 2:00 in the afternoon?

20   **MR. BOYD:**  That's great.

21   **MR. RIVERA:**  That works for me.

22   **MS. DINE:**  That's fine, your Honor.

23   **THE COURT:**  That's the 90 days that you want.  In fact,

24 it's three months from today.  So I'll put it on, I'll

25 schedule this for 2:00 in the afternoon on September 4th.

In Re: Diocese of Buffalo - BK 20-10322

1    And, again, it's without prejudice to anyone doing, bringing

2    their own motion, it's also without prejudice to seeking a

3    further adjournment if you can establish grounds.

4         **MR. BOYD:**  Thank you, your Honor.

5         **THE COURT:**  Or if you present -- if your proposed plan

6    addresses these issues in a way that's consistent with

7    Section 1129 of the Bankruptcy Code.  All right.

8         **MR. RIVERA:**  Understood.

9         **THE COURT:**  Okay.  Anything else this afternoon.

10        (No response.)

11        **THE COURT:**  All right.  With that, I thank you all.

12        We stand in recess.

13        We'll hear this matter again on September 4th at 2:00.

14        Thank you, all.

15        (Counsel says thank you.)

16        (WHEREUPON, proceedings adjourned.)

17

18

19

20

21

22

23

24

25

In Re: Diocese of Buffalo - BK 20-10322

1

2                    *          *          *

3              **CERTIFICATE OF TRANSCRIBER**

4

5          In accordance with 28, U.S.C., 753(b), I

6    certify that this is a true and correct record of proceedings

7    from the official audio recording of the

8    proceedings held in the United States Bankruptcy Court

9    for the Western District of New York before the

10   Honorable Carl L. Bucki on June 4, 2025.

11

12

13   S/ Diane S. Martens

14   Diane S. Martens
     Transcriber
15

16

17

18

19

20

21

22

23

24

25