UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) |
|  | ) Chapter 11 |
| Debtor. | ) |
|  | ) |

## MOTION OF AB 615 DOE FOR RELIEF FROM AUTOMATIC STAY

Child Victims Act ("CVA") Plaintiff AB 615 Doe by and through his undersigned counsel, hereby moves for relief from the automatic stay pursuant to 11 U.S.C. § 362 to permit AB 615 Doe to move forward with claims against the Diocese of Buffalo, N.Y. (the "Diocese" or the "Debtor"), and non-bankrupt co-defendants Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. ("Franciscans") and St. Francis High School in the state court action. AB 615 Doe submits, and incorporates herein by reference, the *Declaration of Michael G. Finnegan in Support of Motion for Relief from the Automatic Stay*, attached hereto as **Exhibit A**.

### JURISDICTION AND VENUE

The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### INTRODUCTION

Relief from the automatic bankruptcy stay is warranted to permit pre-trial discovery and trial in this state court action. After five plus years in bankruptcy and after the Diocese and several insurance companies reached a settlement in principle with the Official Committee of Unsecured

Creditors ("Committee"), the Pacific Employers Insurance Company and U.S. Fire Insurance Company ("Insurers") are attempting to derail and delay plan confirmation and in the process deny child sexual abuse survivors the long-awaited justice and resolution they deserve. The Insurers now advocate for costly and distracting litigation of claims as the Diocese and hundreds of survivors attempt to bring the bankruptcy case to an end. The Insurers claim they should be entitled to a judgement as a matter of law and have submitted a declaration citing publicly available information, including Wikipedia, a website that anyone in the world can edit, as evidence that should be considered by this Court to eliminate the rights of survivors with claims against the Diocese. The Insurers also claim the Declaration of Richard C. Suchan is sufficient to eliminate survivors' claims, but Mr. Suchan does not possess the necessary knowledge, information or documents to allow this court to extinguish survivors' rights against the Diocese.[1]

The crux of the issue before the Court is whether the Diocese is responsible for controlling clergy and other Catholic organizations within its geographical territory. The short answer is "Yes." However, this is a highly factual question that should be addressed in state court as the claims and discovery disputes will be dictated by state law. The arguments and declaration set forth by the Insurers cannot resolve these issues as a matter of law. Plaintiff has not been able to conduct discovery on the underlying case because of the automatic stay.[2] The documents used as evidence to support the Insurer's legal argument fail to address the issues of control or employment of the religious order perpetrator that is the subject of the Plaintiff's claims or the relationship between the Diocese and the non-bankrupt defendants. Not only are there significant due process concerns that would arise if these claims are denied at this procedural stage, but the Insurer's claim

---

[1] Plaintiff disagrees with the assertions contained in Mr. Suchan's January 8, 2025, declaration (Dkt. No. 3587) as further discovery is needed including Mr. Suchan's deposition.
[2] When the Diocese filed its claim objections in January 2025, Plaintiff issued limited discovery on all defendants, but that process was stopped when the Diocese and Committee settled.

Case 1-20-10322-CLB,    Doc 4261,    Filed 10/17/25,    Entered 10/17/25 16:37:00,
Description: Main Document , Page 2 of 39

objections should be overruled as the evidence developed will show that the Diocese did in fact have supervision and control over the actions and employment of the alleged perpetrator and that the Diocese had a relationship with the non-bankrupt defendants.

## FACTS

The New York State Legislature passed the CVA on January 28, 2019, and Governor Andrew Cuomo signed the CVA into law on February 14, 2019. The CVA extended the civil statute of limitations for survivors of child sexual abuse and created a window for survivors whose claims were previously time-barred to file suit.

On February 28, 2020, the Diocese filed a petition for relief under chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"). AB 615 Doe timely filed Sexual Abuse Proof of Claim No. 203 in the Diocese's chapter 11 case (Finnegan Decl.).

On July 16, 2021, AB 615 Doe commenced a case against non-Diocesan defendants in the Supreme Court of the State of New York. (Decl. of Michael G. Finnegan ("Finnegan Decl."), Ex. 1, Summons and Complaint ("Complaint")). The state court action names the Franciscans, St. Francis High School and Does 1-5 whose identities are unknown to Plaintiff. AB 615 Doe was not able to include the Diocese as a defendant in the state court action because the Diocese commenced its chapter 11 case before AB 615 Doe was able to commence the state court action. AB 615 Doe alleges that from approximately 1981 to 1982 when AB 615 Doe was approximately 15 to 16 years old and a student at St. Francis High School, AB 615 Doe was sexually abused by Fr. Michael Lewandowski, O.F.M.Conv. and Fr. Luke Rutter, O.F.M.Conv. ("Frs. Lewandowski and Rutter") (Compl. ¶¶ 18, 19, 21). AB 615 Doe asserted claims for negligence, negligent training and supervision, and negligent retention against all defendants.

Defendants Franciscans and St. Francis High School filed an answer on February 7, 2022.

(Finnegan Decl. Ex. 2). Some written discovery has been exchanged and no depositions, including AB 615 Doe's deposition, have occurred.

The state court action and the sexual abuse proof of claim seek damages against the Diocese, the Franciscans and St. Francis High School for sexual abuse by Frs. Lewandowski and Rutter, for whom the Diocese, the Franciscans and St. Francis High School were responsible. The amount of damages sought through the state court action and sexual abuse proof of claim is unliquidated at this time.

## RELIEF REQUESTED

AB 615 Doe respectfully requests relief from the automatic stay for cause pursuant to section 362(d) of the Bankruptcy Code to prosecute the state court action against the Diocese and all other defendants in the action. If stay relief is granted, AB 615 Doe intends to move to amend the Complaint to include the Diocese and proceed with discovery to determine the Diocese's control of the perpetrator and its relationship to the Franciscans and St. Francis High School

## BASIS FOR RELIEF REQUESTED

The Court may grant relief from the automatic stay "for cause" pursuant to 11 U.S.C. § 362(d)(1). If a movant meets his initial burden to show cause to lift the stay, the burden shifts to the party opposing relief from stay. 11 U.S.C. § 362(g); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Although the Bankruptcy Code does not define "cause," the legislative history of 11 U.S.C. § 362 states that cause "might include the lack of any connection with or interference with the pending bankruptcy case"[3] and the "facts of each request will determine whether relief is appropriate under the circumstances."[4] Courts have noted that "cause" is "an intentionally broad and flexible concept that must be determined on a case-by-case basis." *In re Project Orange*

---

[3] S. Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838.
[4] H.R. Rep. No. 595, 95th Cong., 2d Sess. 343–44, *reprinted in* 1978 U.S. Code Cong. & Admin. News 6150.

*Assoc., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (internal citation omitted).[5]

The decision of whether to lift the stay is let to the discretion of the bankruptcy courts. *Sonnax*, 907 F.2d at 1286. Bankruptcy courts in the Second Circuit apply a twelve-factor test to determine whether there is cause to lift the automatic stay:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286. "Not all of these factors will be relevant in every case." *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). The Court "need not assign equal weight to each factor." *In re New York Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). The Court has discretion to determine whether the stay should be lifted in a particular case. *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*, 183 B.R. 682, 687–88 (Bankr. S.D.N.Y. 1994).

I. **The *Sonnax* Factors Support Relief From Stay to Allow AB 615 Doe to Proceed Against Defendants**

The relevant *Sonnax* factors support lifting the automatic stay include:

---

[5] Internal citations and quotations are omitted unless otherwise noted.

- *Sonnax* Factor #1 (whether relief would result in a partial or complete resolution of the issues): Allowing AB 615 Doe to proceed with the state court action to obtain discovery from the Diocese and non-bankrupt defendants will establish the Diocese's relationship, supervision and control over the non-bankrupt defendants and Frs. Lewandowski and Rutter. The evidence establishing the nature of the Diocese's relationship to the non-bankrupt defendants and Frs. Lewandowski and Rutter, is in the possession, control and custody of the Diocese and non-bankrupt defendants. To dismiss AB 615 Doe's proof of claim based solely on Insurers' declaration and publicly available information without allowing AB 615 Doe to obtain discovery would be a due process violation and contrary to the CVA's intent.

- *Sonnax* Factor #2 (lack of any connection with or interference with the bankruptcy case): Allowing AB 615 Doe to move forward with claims against the Diocese and non-bankrupt defendants will not interfere with the Diocese's bankruptcy case but will in fact do the opposite and aide in resolution of a core issue in the case, namely, the claim objection issues. *See Project Orange*, 432 B.R. at 108 ("By permitting the parties to resolve issues surrounding termination in the state court where the court is very familiar with the facts and history of the case … this Court will be better equipped to determine any remaining bankruptcy law issues, including any assumption motion, more quickly."); *PG&E Corp.*, 2019 WL 3889247, at *2 (holding that state court litigation "may proceed on a parallel track" to the bankruptcy case).

- *Sonnax* Factor 4 (whether a specialized tribunal with the necessary expertise has been established to hear the cause of action): Erie County Supreme Court is uniquely equipped to address AB 615 Doe's claims against the Diocese and non-bankrupt

defendants. After the CVA passed, the New York court system established several dedicated parts of Supreme Court to handle CVA actions and the judge originally assigned to AB 615 Doe's case (Justice Deborah Chimes) was one of five regionally designated judges selected to oversee all pretrial proceedings in CVA matters.[6] Finally, Erie County Supreme Court is overseeing many cases naming the Franciscans and/or St. Francis High School involving sexual abuse.[7] Thus, Erie County Supreme Court has specialized knowledge necessary to facilitate discovery and resolve pre-trial issues of the AB 615 Doe's claim against the Diocese and non-bankrupt defendants.

- *Sonnax* Factor #6 (whether the action primarily involves third parties): If the Court grants relief from stay, AB 615 Doe's claims will involve the discovery and litigation of issues involving third parties. Additionally, AB 615 Doe alleges abuse by a religious order priest, a member of the Franciscans religious order. AB 615 Doe expects that St. Francis High School and the Franciscans are in possession, custody and control of many documents relevant to AB 615 Doe's case (e.g., the personnel file of documents pertaining to both the perpetrator and the non-bankrupt defendants' relationship to the Diocese).

- *Sonnax* Factor # 7 (whether litigation in another forum would prejudice the interests of other creditors): Pre-trial discovery and litigation of AB 615 Doe's claims against the Diocese and the non-bankrupt defendants obtained as a result of litigating AB 615 Doe's claims against the Diocese and non-bankrupt defendants will likely benefit other

---

[6] *See* 22 N.Y.C.R.R. § 202.72(a); New York State Unified Court System, *Press Release: New York State Courts Prepare for Influx of Cases as Key Provision of New York's New Child Victims Act Takes Effect* (Aug. 13, 2019) (Finnegan Decl., Ex. 4).

[7] Counsel for AB 615 Doe have filed several cases in Erie County Supreme Court and other counties in the 8th judicial district involving child sexual abuse in which the Franciscans are named as a defendant. The Franciscans have also been named in several other CVA actions filed in Erie County Supreme Court and other counties in the 8th judicial district by other attorneys representing survivors who were sexually abused as children.

creditors of the Diocese who also have CVA claims against non-bankrupt entities and who may be subject to claim objections brought by the Insurers.

- *Sonnax* Factor #10 (the interests of judicial economy and the expeditious and economical resolution of litigation): Permitting AB 615 Doe to proceed against the Diocese and non-bankrupt defendants will expedite resolution of AB 615 Doe's case. Modifying the stay as AB 615 Doe requests will also serve the goal of judicial economy. Allowing AB 615 Doe to move forward in state court will yield discovery that will narrow the issues in the other bankruptcy claims and CVA cases in which the Diocese and non-bankrupt defendants are named, thereby preserving the resources of this Court and Erie County Supreme Court. Additionally, the fact that litigating AB 615 Doe's claims against the Diocese and non-bankrupt defendants simultaneous to the Diocese's bankruptcy case will result in multiple litigation should not be held against AB 615 Doe; it is "a direct by-product of bankruptcy law" and "the duplication, to the extent it may exist, is Congressionally created and sanctioned." *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1199 (6th Cir. 1983).

- *Sonnax* Factor #12 (impact of the stay on the parties and the balance of harms): The final *Sonnax* factor also supports modification of the stay. AB 615 Doe suffered horrific sexual abuse as a vulnerable child under the care of the Diocese and non-bankrupt defendants, and AB 615 Doe deserves the day in court that the CVA afforded AB 615 Doe.[8] It has been almost six years since the CVA was enacted and over five years since the Diocese filed bankruptcy. AB 615 Doe is advancing in age and many sexual abuse

---

[8] *See* 2019 New York Senate Bill No. 2440; 2019 Legis. Bill Hist. NY S.B. 2440 ("Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties.").

survivors have passed away during the pendency of their cases, foregoing them any peace, justice or resolution for the harm they suffered. Furthermore, as this Court previously stated when weighing *Sonnax's* twelfth factor in its November 22, 2024, *Decision and Order* granting stay relief for 17 cases, "These are not the typical contract claims of a commercial enterprise, where a creditor can usually establish liability by reference to books and records. Rather the claims allege torts for which proof of liability will likely require eyewitness testimony." (Dkt. No. 4224).

Although relief from stay would not lead to complete resolution of the issues (*Sonnax* factor #1) and the parties are not yet ready for trial (*Sonnax* factor #11), these factors should not prevent the Court from modifying the stay where the majority of the relevant *Sonnax* factors support modification. *Sonnax* factor #1 should carry little weight here because there is no indication that the non-bankrupt defendants will contribute to a settlement and seek a release in the Diocese's bankruptcy case, and therefore resolution of AB 615 Doe's claims will necessarily occur in multiple phases. *Sonnax* factor #11 should not prevent the Court from granting relief because if the stay is lifted, AB 615 Doe intends to expedite discovery with the Diocese and non-bankrupt defendants.

## II.    New York State Court is the Appropriate Venue to Decide Issues of Fact

The Bankruptcy Court also cannot preside over a trial of the Movants' personal injury claims. *See* 28 U.S.C. § 157(b)(5); 28 U.S.C. § 157(b)(2)(B) (core proceedings do not include the "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11"). Pre-trial discovery and adjudication of AB 615 Doe's claims must occur in another court, therefore judicial economy will be not served by keeping the automatic stay in place. *Packerland Packing Co. v. Griffith*

*Brokerage Co. (In re Kemble)*, 776 F.2d 802 (9th Cir. 1985); *Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 754-55 (Bankr. S.D.N.Y. 2014) (granting relief from stay when complete resolution of personal injury action could not be adjudicated in bankruptcy court); *see also In re Castlerock Properties*, 781 F.2d at 163 (affirming court's decision to lift stay for abstention reasons, finding that state claims and imminent trial justified the decision). Courts have lifted the stay for "cause" to permit claims in the bankruptcy case to be liquidated through prosecution and completion of pending prepetition non-bankruptcy actions. *Murray v. On-Line Business Systems, Inc. (In re Revco D.S., Inc.)*, 99 B.R. 768 (Bankr. N.D. Ohio 1989); and *May v. Wheeler Group, Inc. (In re Wheeler Group, Inc.)*, 75 B.R. 200 (Bankr. S.D. Ohio 1987). It would be far more efficient for these cases to be adjudicated by the state court. The fourth, tenth, and eleventh *Sonnax* Factors therefore all weigh in favor of granting relief from stay to pursue the State Court Actions in state court. Because the relevant *Sonnax* factors support modification of the stay, AB 615 Doe respectfully requests that the Court grant the motion.

### III. The Diocese's Reorganization Plan Allows the Insurers to Litigate Claims Post Confirmation

The Diocese filed its Joint Chapter 11 Plan of Reorganization for the Diocese of Buffalo, N.Y. ("Reorganization Plan") and Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for the Diocese of Buffalo, N.Y. ("Disclosure Statement") on October 1, 2025. (Dkt. Nos. 4222, 4221). The Insurers waited for more than five years to bring objections to claims and brought the objections on the eve of the filing of the Reorganization Plan. If this court denies AB 280 Doe's Motion for Stay Relief, allowing the Reorganization Plan to proceed toward confirmation will preserve the Insurers' ability to litigate claims. The Reorganization Plan provides an opportunity for the Insurers to litigate claims, therefore preserving their rights if they choose not to participate in the Reorganization Plan. This alternative is a better use of estate resources and

provides for judicial economy, as litigating the Insurers claim objections is a distraction and wasteful use of estate resources.

## CONCLUSION

The *Sonnax* factors support modification of the stay to allow AB 615 Doe to continue AB 615 Doe's claims in state court against the Diocese and non-bankrupt defendants. AB 615 Doe should be given the opportunity for justice that the CVA affords. AB 615 Doe respectfully requests that the Court grant the motion.

WHEREFORE, AB 615 Doe requests that this Court issue an Order (a) granting relief from the automatic stay as requested herein and (b) such other and further relief as the Court deems just and proper.

Dated: October 17, 2025.

JEFF ANDERSON & ASSOCIATES, P.A.

/s/Michael G. Finnegan
Jeffrey R. Anderson
Michael G. Finnegan
Stacey J. Benson
363 7th Avenue, 12th Floor
New York, NY 10001
(646) 759-2551
jeff@andersonadvocates.com
mike@andersonadvocates.com
stacey@andersonadvocates.com

Stephen Boyd.
STEVE BOYD, PC
2969 Main Street, Suite 100
Buffalo, NY 14214
(716) 600-0000
sboyd@steveboyd.com

Attorneys for AB 615 Doe

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF MICHAEL G. FINNEGAN IN SUPPORT OF AB 615 DOE's MOTION FOR RELIEF FROM AUTOMATIC STAY

Pursuant to 28 U.S.C. § 1746, I, Michael G. Finnegan, hereby submit this declaration (the "Declaration") under penalty of perjury:

1.     I am counsel of record to AB 615 Doe in *AB 615 Doe v. v. Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc.; St. Francis High School; and Does 1-5 whose identities are unknown to Plaintiff,* Index No. 809515/2021 and on the related Sexual Abuse Proof of Claim number 203.   I submit this Declaration in support of the *Motion of AB 615 Doe for Relief from the Automatic Stay* (the "**Motion**").  Capitalized terms used but not defined herein shall have the meanings and definitions ascribed to them in the Motion.

2.     AB 615 Doe timely filed Sexual Abuse Proof of Claim No. 203 in the Diocese of Buffalo's chapter 11 case.

3.     Attached hereto as Exhibit 1 is a true and correct copy of AB 615 Doe's Summons and Complaint filed July 16, 2021.

4.     Attached hereto as Exhibit 2 is a true and correct copy of Defendants Franciscans

and St. Francis High School's Answer filed February 7, 2022.

5.      Attached hereto as Exhibit 3 is a true and correct copy of an August 13, 2019, press release issued by the New York Unified Court System.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge and belief. I executed this Declaration on October 17, 2025 at 366 Jackson Street, Suite 100, St. Paul, MN 55101.

By: /s/Michael G. Finnegan

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

AB 615 DOE,

             Plaintiff,

v.

CONVENTUAL FRANCISCANS
D/B/A OUR LADY OF ANGELS
PROVINCE, INC. A/K/A ST.
ANTHONY OF PADUA PROVINCE,
FRANCISCAN FATHERS MINOR
CONVENTUAL, U.S.A., INC. A/K/A
FRANCISCAN FATHERS MINOR
CONVENTUALS OF BUFFALO, NY,
INC.; ST. FRANCIS HIGH SCHOOL;
and DOES 1-5 whose identities are
unknown to Plaintiff,

             Defendants.

Index No. _____

**SUMMONS**

Date Index No. Purchased: July 16, 2021

**TO THE ABOVE NAMED DEFENDANTS:**

    **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint, a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned attorneys listed below within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment by default will be taken against you for the relief demanded herein.

    The basis of venue is the principal place of business of Defendant St. Francis High School, which is 4129 Lake Shore Road, Athol Springs, New York 14010.

Dated:  July 16, 2021.

*/s/ Stacey Benson*
Jeffrey R. Anderson, Esq.
Michael G. Finnegan, Esq.
Stacey J. Benson, Esq.
**JEFF ANDERSON & ASSOCIATES, P.A.**
55 West 39th Street, 11th Floor
New York, NY 10018
Telephone: (646) 759-2551
jeff@andersonadvocates.com
mike@andersonadvocates.com
stacey@andersonadvocates.com

Stephen Boyd, Esq.
**STEVE BOYD, PC**
40 North Forest Road
Williamsville, NY 14221
Telephone: (716) 400-0000
sboyd@steveboyd.com

*Counsel for Plaintiff*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

AB 615 DOE,

        Plaintiff,

v.

CONVENTUAL FRANCISCANS
D/B/A OUR LADY OF ANGELS
PROVINCE, INC. A/K/A ST.
ANTHONY OF PADUA PROVINCE,
FRANCISCAN FATHERS MINOR
CONVENTUAL, U.S.A., INC. A/K/A
FRANCISCAN FATHERS MINOR
CONVENTUALS OF BUFFALO, NY,
INC.; ST. FRANCIS HIGH SCHOOL;
and DOES 1-5 whose identities are
unknown to Plaintiff,

        Defendants.

Index No. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL[1]**

Plaintiff, by and through Plaintiff's attorneys, states and alleges as follows:

## PARTIES

1. At all times material to this Complaint, Plaintiff resided in the State of New York.

2. Plaintiff brings this action under a pseudonym with leave of Court.

3. At all times material, Plaintiff was a minor under 18 years of age when the sexual abuse occurred.

4. This action is brought pursuant to the New York Child Victims Act, CPLR § 214-g. The conduct at issue constituted sexual offense against a minor in violation of a section within Article 130 and/or § 263.05 of the New York Penal Law, or a predecessor statute that prohibited

---

[1] Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

such conduct at the time of the act, and resulted in physical, psychological, and emotional injuries. As a civil cause of action was previously time-barred prior to August 14, 2019, the terms of the Child Victims Act, CPLR § 214-g, revive the claims set forth below.

5.    Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

6.    Defendant Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. ("Franciscans") was and continues to be a religious order of priests and brothers affiliated with the Roman Catholic Church with its United States headquarters and principal place of business at 12300 Folly Quarter Road, Ellicott City, Maryland 21042.

7.    The Franciscans is an organization or entity which includes, but is not limited to, civil corporations, decision making entities, officials, and employees, authorized to conduct business and conducting business in the State of New York. The provincial is the top official of the Franciscans and is given authority over all matters dealing with the Franciscans as a result of his position. The Franciscans function as a business by engaging in numerous revenue-producing activities and soliciting money from its members in exchange for its services.

8.    The Franciscans have several programs that seek out the participation of children including, but not limited to, schools and other educational programs. The Franciscans, through its

2

officials, have complete control over those activities and programs involving children. The Franciscans have the power to appoint, train, supervise, monitor, remove and terminate each and every person working with children within the Franciscans.

9.    At all times material, Defendant St. Francis High School ("St. Francis") was and continues to be an organization authorized to conduct business and conducting business in the State of New York, with its principal place of business at 4129 Lake Shore Road, Athol Springs, New York 14010. St. Francis includes, but is not limited to, the school corporation and any other organizations and/or entities operating under the same or similar name with the same or similar principal place of business.

10.    At all times material, Defendant St. Francis was and continues to be under the direct authority, control, and province of the Diocese of Buffalo, the Bishop of the Diocese, and Defendant Franciscans.

11.    Defendants Does 1 through 5 are unknown agents whose identities will be provided when they become known pursuant to CPLR § 1024.

## JURISDICTION

12.    This Court has jurisdiction pursuant to CPLR § 301 as Defendant St. Francis' principal place of business is in New York and because the unlawful conduct complained of herein occurred in New York.

13.    Venue is proper pursuant to CPLR § 503 in that Erie County is the principal place of business of Defendant St. Francis. In addition, many of the events giving rise to this action occurred in Erie County.

## FACTS

14.    At all times material, Father Michael Lewandowski, O.F.M.Conv. ("Fr.

3

Lewandowski") was a Roman Catholic cleric employed by St. Francis, Franciscans (hereinafter "Defendants") and the Diocese. Fr. Lewandowski remained under the direct supervision, employ, and control of Defendants and Diocese.

15.     At all times material, Father Luke Rutter, O.F.M.Conv. "Fr. Rutter") was a Roman Catholic cleric employed by St. Francis, Franciscans (hereinafter "Defendants") and the Diocese. Fr. Rutter remained under the direct supervision, employ, and control of Defendants and Diocese.

16.     Defendants and Diocese placed Fr. Lewandowski and Fr. Rutter in positions where they had access to and worked with children as an integral part of their work.

17.     Defendants held their leaders and agents out as people of high morals, as possessing immense power, teaching families and children to obey these leaders and agents, teaching families and children to respect and revere these leaders and agents, soliciting youth and families to their programs, marketing to youth and families, recruiting youth and families, and holding out the people that worked in the programs as safe.

18.     Plaintiff was raised in a devout Roman Catholic family and attended and resided at St. Francis in Athol Springs, New York, in the Diocese of Buffalo. Plaintiff and Plaintiff's family came in contact with Fr. Lewandowski and Fr. Rutter each as an agent and representative of Defendants and Diocese, and at St. Francis.

19.     Plaintiff was a student and resident and participated in youth activities and/or church activities at St. Francis. Plaintiff, therefore, developed great admiration, trust, reverence, and respect for the Roman Catholic Church, including Defendants and their agents, including Fr. Lewandowski and Fr. Rutter.

20.     During and through these activities, Plaintiff, as a minor and vulnerable child, was dependent on Defendants and Fr. Lewandowski and Fr. Rutter. Defendants had custody of Plaintiff

4

and accepted the entrustment of Plaintiff and, therefore, had responsibility for Plaintiff and authority over Plaintiff.

21. From approximately 1981 to 1982, when Plaintiff was approximately 15 to 16 years old, Fr. Lewandowski engaged in unpermitted sexual contact with Plaintiff in violation of at least one section of New York Penal Law Article 130 and/or § 263.05, or a predecessor statute that prohibited such conduct at the time of the abuse.

22. From approximately 1981 to 1982, when Plaintiff was approximately 15 to 16 years old, Fr. Rutter engaged in unpermitted sexual contact with Plaintiff in violation of at least one section of New York Penal Law Article 130 and/or § 263.05, or a predecessor statute that prohibited such conduct at the time of the abuse.

23. Plaintiff's relationship to Defendants and Fr. Lewandowski and Fr. Rutter, as a vulnerable child, Catholic parishioner, student, resident, and participant in church activities, was one in which Plaintiff was subject to the ongoing influence of Defendants and Fr. Lewandowski and Fr. Rutter.

24. The culture of the Catholic Church over Plaintiff created pressure on Plaintiff not to report the abuse Plaintiff suffered.

25. Defendants knew or should have known that Fr. Lewandowski and Fr. Rutter were a danger to children before Fr. Lewandowski and Fr. Rutter sexually assaulted Plaintiff.

26. Prior to the sexual abuse of Plaintiff, Defendants learned or should have learned that Fr. Lewandowski and Fr. Rutter were not fit to work with children. Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Fr. Lewandowski's and Fr. Rutter's propensity to commit sexual abuse and of the risk to Plaintiff's safety. At the very least, Defendants knew or should have known that they did not have sufficient

information about whether or not their leaders and people working at Catholic institutions within the Diocese were safe.

27. Defendants knew or should have known that there was a risk of child sexual abuse for children participating in Catholic programs and activities within the Diocese. At the very least, Defendants knew or should have known that they did not have sufficient information about whether or not there was a risk of child sexual abuse for children participating in Catholic programs and activities within the Diocese.

28. Defendants knew or should have known that Defendants and Diocese had numerous agents who had sexually molested children. Defendants knew or should have known that child molesters have a high rate of recidivism. Defendants knew or should have known that some of the leaders and people working in Catholic institutions within the Diocese were not safe and that there was a specific danger of child sexual abuse for children participating in their youth programs.

29. Instead, Defendants negligently deemed that Fr. Lewandowski and Fr. Rutter were fit to work with children and/or that any previous problems were fixed or cured and/or that Fr. Lewandowski and Fr. Rutter would not sexually assault children and/or that Fr. Lewandowski and Fr. Rutter would not injure children.

30. Defendants owed Plaintiff a duty of reasonable care because they had superior knowledge about the risk that Fr. Lewandowski and Fr. Rutter posed to Plaintiff, the risk of abuse in general in their programs and/or the risks that their facilities posed to minor children.

31. Defendants owed a duty to Plaintiff to protect Plaintiff from harm because Defendants' actions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities Defendants offered to minors, Plaintiff was a foreseeable victim. As a vulnerable child who Fr. Lewandowski and Fr. Rutter had access to

6

through Defendants' facilities and programs, Plaintiff was a foreseeable victim.

32.    Defendants also breached their duties to Plaintiff by actively maintaining and employing Fr. Lewandowski and Fr. Rutter each in a position of power and authority through which Fr. Lewandowski and Fr. Rutter had access to children, including Plaintiff, and power and control over children, including Plaintiff.

33.    Each Defendant breached its duties to Plaintiff. Defendants failed to use ordinary care in determining whether their facilities were safe and/or determining whether they had sufficient information to represent their facilities as safe. Defendants' breach of their duties include, but are not limited to: failure to protect Plaintiff from a known danger, failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make sure that policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the employees at institutions and programs within Defendants' geographical confines, failure to train parishioners within Defendants' geographical confines about the risk of sexual abuse, failure to have any outside agency test their safety procedures, failure to protect the children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child sexual abuse by fellow employees, failure by relying upon mental health professionals, and/or failure by relying on people who claimed that they could treat child molesters.

34.    Defendants also breached their duties to Plaintiff by failing to warn Plaintiff and

7

Plaintiff's family of the risk that Fr. Lewandowski and Fr. Rutter posed and the risks of child sexual abuse in Catholic institutions. Defendants also failed to warn them about any of the knowledge that Defendants had about child sexual abuse.

35.     Each Defendant additionally violated a legal duty by failing to report known and/or suspected abuse of children by Fr. Lewandowski and Fr. Rutter and/or their other agents to the police and law enforcement.

36.     Defendants were negligent and/or made representations to Plaintiff and Plaintiff's family during each and every year of Plaintiff's minority.

37.     As a direct result of Defendants' negligence as described herein, Plaintiff has suffered, and will continue to suffer, great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, physical, personal and psychological injuries.  Plaintiff was prevented, and will continue to be prevented, from performing normal daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling, and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

38.     The limitations of Article 16 of the CPLR do not apply because one or more of the exceptions set forth in CPLR 1601 and/or 1602 apply.

## AS AND FOR A FIRST CAUSE OF ACTION:
### NEGLIGENCE

39.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

40.     Each Defendant owed Plaintiff a duty of reasonable care to protect Plaintiff from injury.

8

41.     Each Defendant owed Plaintiff a duty of reasonable care because each Defendant had a special relationship with Plaintiff.

42.     Each Defendant also had a duty arising from its special relationship with Plaintiff, Plaintiff's parents, and other parents of young, vulnerable children, to properly train and supervise its clerics, agents, and employees. The special relationship arose because of the high degree of vulnerability of the children entrusted to Defendants' care. As a result of the high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, Defendants had a duty to establish measures of protection not necessary for persons who are older or better able to safeguard themselves.

43.     Each Defendant owed Plaintiff a duty to protect Plaintiff from harm because each Defendant had a special relationship with Fr. Lewandowski and Fr. Rutter.

44.     Each Defendant owed Plaintiff a duty to control the conduct of Fr. Lewandowski and Fr. Rutter because each Defendant had complete ability to control Fr. Lewandowski's and Fr. Rutter's access to children like Plaintiff to prevent the foreseeable harms associated with childhood sexual abuse, giving rise to a special relationship with Fr. Lewandowski and Fr. Rutter and a duty to control Fr. Lewandowski's and Fr. Rutter's conduct.

45.     Each Defendant owed Plaintiff a duty of reasonable care because each Defendant solicited youth and parents for participation in its youth programs; encouraged youth and parents to have the youth participate in its programs; undertook custody of minor children, including Plaintiff; promoted its facilities and programs as being safe for children; held its agents, including Fr. Lewandowski and Fr. Rutter, out as safe to work with children; encouraged parents and children to spend time with its agents; and/or encouraged its agents, including Fr. Lewandowski and Fr. Rutter, to spend time with, interact with, and recruit children.

9

46.     By holding Fr. Lewandowski and Fr. Rutter out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, each Defendant entered into a fiduciary relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by Defendants undertaking the care and guidance of the then vulnerable minor Plaintiff, each Defendant held a position of empowerment over Plaintiff.

47.     Further, Defendants, by holding themselves out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment. Defendants thus entered into a fiduciary relationship with Plaintiff. Defendants exploited their positions of empowerment, putting Plaintiff at risk to be sexually assaulted.

48.     By accepting custody of the minor Plaintiff, Defendants established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

49.     By establishing and/or operating and/or staffing St. Francis, accepting the minor Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff, accepting custody of the minor Plaintiff *in loco parentis*, and by establishing a fiduciary relationship with Plaintiff, each Defendant entered into an express and/or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for children, who participated in its programs. Defendants also owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from foreseeable dangers. Defendants had the duty to exercise the same degree of care over young parishioners under their control as a reasonably prudent person would have exercised under similar circumstances.

50.     By establishing and/or operating and/or staffing St. Francis, which offered educational programs to children and which included a school, and by accepting the enrollment

and participation of the minor Plaintiff as a participant in those educational programs, Defendants owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from generally foreseeable dangers.

51.     Each Defendant owed Plaintiff a duty to protect Plaintiff from harm because each Defendant invited Plaintiff onto its property and Fr. Lewandowski and Fr. Rutter posed a dangerous condition on each Defendant's property.

52.     Each Defendant breached its duties to Plaintiff by failing to use reasonable care. Each Defendant's failures include, but are not limited to, failing to properly supervise Fr. Lewandowski and Fr. Rutter, failing to properly supervise Plaintiff and failing to protect Plaintiff from a known danger.

53.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## AS AND FOR A SECOND CAUSE OF ACTION:
## NEGLIGENT TRAINING AND SUPERVISION OF EMPLOYEES

54.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

55.     At all times material, Fr. Lewandowski and Fr. Rutter were employed by Defendants and each was under each Defendant's direct supervision, employ, and control when they committed the wrongful acts alleged herein. Fr. Lewandowski and Fr. Rutter engaged in the wrongful conduct while acting in the course and scope of their employment with Defendants and/or accomplished the sexual abuse by virtue of their job-created authority.

56.     Defendants had a duty, arising from their employment of Fr. Lewandowski and Fr. Rutter, to ensure that Fr. Lewandowski and Fr. Rutter did not sexually molest children.

57.     Further, Defendants owed a duty to train and educate employees and administrators

11

and establish adequate and effective policies and procedures calculated to detect, prevent, and address inappropriate behavior and conduct between clerics and agents and children.

58.     The abuse complained of herein occurred on Defendants' property and/or with the use of its chattels.

59.     Defendants were negligent in the training, supervision, and instruction of their employees. Defendants failed to timely and properly educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when sexual abuse of a child is suspected or observed.

60.     Defendants were additionally negligent in failing to supervise, monitor, chaperone, and/or investigate Fr. Lewandowski and Fr. Rutter and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Fr. Lewandowski's and Fr. Rutter's sexual abuse of Plaintiff.

61.     In failing to properly supervise Fr. Lewandowski and Fr. Rutter, and in failing to establish such training procedures for employees and administrators, Defendants failed to exercise the care that a reasonably prudent person would have exercised under similar circumstances.

62.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### AS AND FOR A THIRD CAUSE OF ACTION: NEGLIGENT RETENTION OF EMPLOYEES

63.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

64.     Defendants became aware or should have become aware of Fr. Lewandowski's and Fr. Rutter's propensity for child sexual abuse, and failed to take any further action to remedy the problem and failed to investigate or remove Fr. Lewandowski and Fr. Rutter from working with

12

children.

65.     Defendants negligently and/or recklessly retained Fr. Lewandowski and Fr. Rutter with knowledge of Fr. Lewandowski's and Fr. Rutter's propensity for the type of behavior which resulted in Plaintiff's injuries in this action.

66.     Defendants negligently and/or recklessly retained Fr. Lewandowski and Fr. Rutter each in a position where Fr. Lewandowski and Fr. Rutter had access to children and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendants acted reasonably.

67.     In failing to timely remove Fr. Lewandowski and Fr. Rutter from working with children or terminate the employment of Fr. Lewandowski and Fr. Rutter, Defendants negligently and/or recklessly failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

68.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing causes of action, Plaintiff prays for judgment against Defendants in an amount that will fully and fairly compensate Plaintiff for Plaintiff's injuries and damages and for any other relief the Court deems appropriate. The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable. Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

Dated:  July 16, 2021.

*/s/ Stacey Benson*

Jeffrey R. Anderson, Esq.
Michael G. Finnegan, Esq.
Stacey J. Benson, Esq.
**JEFF ANDERSON & ASSOCIATES, P.A.**
55 West 39th Street, 11th Floor
New York, NY 10018
Telephone: (646) 759-2551
jeff@andersonadvocates.com
mike@andersonadvocates.com
stacey@andersonadvocates.com

Stephen Boyd, Esq.
**STEVE BOYD, PC**
40 North Forest Road
Williamsville, NY 14221
Telephone: (716) 400-0000
sboyd@steveboyd.com

*Counsel for Plaintiff*

14

# EXHIBIT 2

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

AB 615 DOE,

Plaintiff,

v.

CONVENTUAL FRANCISCANS
D/B/A OUR LADY OF ANGELS
PROVINCE, INC. A/K/A ST.
ANTHONY OF PADUA PROVINCE,
FRANCISCAN FATHERS MINOR
CONVENTUAL, U.S.A., INC. A/K/A
FRANCISCAN FATHERS MINOR
CONVENTUALS OF BUFFALO, NY,
INC.; ST. FRANCIS HIGH SCHOOL;
and DOES 1-5 whose identities are
unknown to Plaintiff,

Defendants.

**ANSWER**

Index No. 809515/2021

---

Defendants CONVENTUAL FRANCISCANS D/B/A OUR LADY OF ANGELS PROVINCE, INC. A/K/A ST. ANTHONY OF PADUA PROVINCE, FRANCISCAN FATHERS MINOR CONVENTUAL, U.S.A., INC. A/K/A FRANCISCAN FATHERS MINOR CONVENTUALS OF BUFFALO, NY, INC.; and ST. FRANCIS HIGH SCHOOL; (hereinafter "Defendants"), by their attorneys, Lippes Mathias LLP, as and for their Answer to the Complaint, respond as follows:

1. Deny knowledge or information sufficient to respond to the allegations contained in paragraphs 1, 2, 3, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 58 of the Complaint, and therefore deny same.

2.      The allegations contained in paragraphs 4, 5, 7, 10, 12, 13, 38, 40, 41, 42, 43, 45, 46, 48, 49, 50, 51, 56, and 57 call for a legal conclusion requiring neither an admission nor denial. To the extent that a response is necessary, Defendants deny same.

3.      Defendants admit allegations contained in paragraph 6 of the Complaint.

4.      With respect to the allegations contained in paragraph 8 of the Complaint, Defendants deny knowledge or information sufficient to respond to the first sentence of the Complaint. The remaining allegations within paragraph 8 call for legal conclusions requiring neither an admission nor denial; to the extent a response is necessary, Defendants deny same.

5.      With respect to the allegations contained in paragraph 9 of the Complaint, Defendants admit that Defendant St. Francis High School ("St. Francs") was and continues to be an organization authorized to conduct business and conducting business in the State of New York, with its principal place of business at 4129 Lake Shore Road, Athol Springs, New York 14010. The remaining allegations within paragraph 9 call for a legal conclusion requiring neither an admission nor denial; to the extent a response is necessary, Defendants deny same.

6.      Deny the allegations contained in 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 44, 52, 53, 55, 59, 60, 61, 62, 64, 65, 66, 67, and 68 of the Complaint.

7.      Defendants repeat and reallege all of the allegations above and below paragraphs 39, 54, and 63 of the Complaint.

8.      As to the allegations within paragraph 47, Defendants deny the last sentence. The remaining allegations within paragraph 47 call for a legal conclusion requiring neither an admission nor denial. To the extent that a response is necessary, Defendants deny same.

9.      Defendants further deny each and every allegation of the Complaint not hereinbefore specifically admitted, controverted, or denied.

2

## AFFIRMATIVE AND OTHER DEFENSES

10. For a first affirmative defense, Defendants assert that the Complaint and each Cause of Action therein fails to state a claim upon which relief can be granted.

11. For a second affirmative defense, Defendants assert that this Court lacks jurisdiction over some or all of the claims made in the Complaint.

12. For a third affirmative defense, Defendants assert that Plaintiff's claims are barred, in whole or in part, by the doctrine of laches and the applicable statues of limitations.

13. For a fourth affirmative defense, Defendants assert that the Childs Victim Act is unconstitutional.

14. For a fifth affirmative defense, Defendants assert that Defendants did not breach any lawful duty owed to Plaintiff.

15. For a sixth affirmative defense, Defendants assert that all or some of the claims in the Complaint are barred because the alleged violations and damages sustained by Plaintiff, if any, were caused by the acts of a third party over whom Defendants had no control.

16. For a seventh affirmative defense, Defendants assert that Plaintiff's claims are barred, in whole or in part, because the acts of others constitute responsible and/or intervening and/or superseding causes of Plaintiff's alleged damages.

17. For an eighth affirmative defense, Defendants assert that all or some of the claims in the Complaint are barred because the alleged violations and damages sustained by Plaintiff, if any, were not caused by Defendants.

18. For a ninth affirmative defense, the Child Victims Act violates Defendants' Due Process rights under the New York State Constitution (Const. Art I, §6).

INDEX NO. 809515/2021

RECEIVED NYSCEF: 02/07/2022

19.     For a tenth affirmative defense, in the event that the Plaintiff recovers damages which have been paid or are payable by a collateral source, Defendants will seek an offset to such damages pursuant to Article 45 of the CPLR.

20.     For an eleventh affirmative defense, if Defendants are found liable as alleged in the complaint, Defendants allege that the provisions of CPLR 1601 will apply.

21.     For a twelfth affirmative defense, any proof adduced or presented during any trial of this matter on the issue of punitive damages and any such resulting award must conform to the procedural and substantive constitutional limitations set forth in the due process clauses of the 14th Amendment to the United States Constitution and the applicable sections of the New York State Constitution.

22.     Defendants reserve the right to asserts any additional affirmative defenses and cross-claims as may be appropriate based upon the facts or issues disclosed during the course of additional investigation and discovery.

WHEREFORE, Defendants respectfully demand judgment dismissing Plaintiff's Complaint in its entirety and for such other and further relief as to this Court may seem just, proper and equitable, together with the costs and disbursements of this action.

Dated:     Buffalo, New York
           February 7, 2022

                        LIPPES MATHIAS LLP

                        _____/s/Dennis C. Vacco_____
                        Dennis C. Vacco, Esq.
                        Scott S. Allen Jr., Esq.
                        50 Fountain Plaza, Suite 1700
                        Buffalo, New York 14202
                        T: (716) 853-5100
                        dvacco@lippes.com
                        sallen@lippes.com

4

TO:    Jeffrey R. Anderson
         Michael G. Finnegan
         Stacey J. Benson
         **JEFF ANDERSON & ASSOCIATES, P.A.**
         55 West 39th Street, 11th Floor
         New York, NY 10018

         Stephen Boyd, Esq.
         **STEVE BOYD, PC**
         40 North Forest Road
         Williamsville, NY 14221

         *Counsel for Plaintiff*

5

# EXHIBIT 3



# PRESS RELEASE

**New York State**
**Unified Court System**

**Contact:**
**Lucian Chalfen,**
**Public Information Director**
**Arlene Hackel, Deputy Director**
**(212) 428-2500**

**Hon. Lawrence K. Marks**
**Chief Administrative Judge**

**www.nycourts.gov/press**

**Date: August 13, 2019**

## New York State Courts Prepare for Influx of Cases as Key Provision of New York's New Child Victims Act Takes Effect

**NEW YORK**—The New York State court system has designated 45 judges statewide—including 12 in New York City's five boroughs—to prepare for the influx of lawsuits beginning tomorrow, August 14, when a key provision of New York's Child Victims Act (CPLR 214-g) takes effect. This date marks the start of a one-year, one-time window period during which plaintiffs can file claims against their alleged abusers and the institutions that allegedly protected the abusers, regardless of how long ago the abuse may have occurred.

Chief Administrative Judge Lawrence K. Marks said, "The revived Child Victims Act cases are critically important cases, raising numerous challenging legal issues, that must be adjudicated as consistently and expeditiously as possible across the State. We are fully committed to providing appropriate and sufficient resources to achieve that goal."

The court system recently conducted judicial training on the new law and issues frequently encountered in civil actions of this nature. It also implemented new rules (22 NYCRR §202.72: Actions Revived Pursuant to CPLR 214-g) to ensure the timely, consistent handling of the anticipated lawsuits.

The rules, available online at http://ww2.nycourts.gov/rules/trialcourts/202.shtml, incorporate a recommended timeline for each case, including the scheduling of a preliminary conference within 30 days after the lawsuit is filed, with the goal that discovery is completed within a year and any trial commences shortly thereafter.

As outlined in the new rules, dedicated parts of Supreme Court have been established in New York City and each judicial district outside the City to handle cases filed pursuant to the new law. Cases will remain on the docket of the county where filed and be immediately assigned to one of five regionally-designated judges for all pretrial proceedings, including conferences and motions.

All cases filed in New York City's five boroughs will be assigned for pretrial proceedings to Justice George Silver, Deputy Chief Administrative Judge for the New York City Courts. Outside New York City, cases will be assigned for pretrial proceedings to four regionally-designated judges as follows: in the Third and Fourth Judicial Districts, to Justice Michael Mackey; in the Fifth and Sixth Judicial Districts, to Justice Michael V. Coccoma; in the Seventh and Eighth Judicial Districts, to Justice Deborah Chimes; and in the Ninth and Tenth Judicial Districts, to Justice Terry Jane Ruderman. Hon. Vito Caruso, Deputy Chief Administrative Judge for Courts Outside New York City, will oversee this process in the regions outside New York City.

While the case is in the pretrial phase, it will also be assigned to a parallel alternative dispute resolution (ADR) track, as appropriate, to one of the designated judges for resolution by settlement. If the case is unable to settle, it will eventually be assigned to a designated judge for trial.

Among other steps being taken to achieve consistency in the handling of these matters throughout the State, the court system is developing and adopting a case management order—as it has for asbestos-related lawsuits—for all actions revived pursuant to CPLR 214-g.

# # #