UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | Chapter 11 |
| Debtor. | |

**OPPOSITION TO OBJECTION TO ALLOWANCE OF
SEXUAL ABUSE PROOF OF CLAIM NO. 111**

Child Victims Act ("CVA") Claimant 111 ("Claimant") by and through his undersigned counsel hereby submits the following in opposition to the objection to allowance of his sexual abuse Proof of Claim ("POC") filed by Pacific Employers Insurance Company and U.S. Fire Insurance Company ("Excess Insurers"), Docket No. 4223. Claimant submits, and incorporates herein by reference, the Declaration of Stephenie Lannigan Bross in Opposition to Objection to Allowance of Sexual Abuse Proof of Claim ("Bross Decl."). Claimant further incorporates herein by reference for all purposes the Declaration of Robert Zilliox ("Zilliox Decl."), that has been filed in opposition to the Objections filed by the Excess Insurers against POC 125, POC 203 and POC 428 (See Docket Nos. 4286, 4287 and 4288.) Claimant also incorporates herein by reference for all purposes, as if fully set forth herein, the Response of the Official Committee of Unsecured Creditors to Certain Claims Objections Filed by Certain Insurers (Docket No. 4292) as well as the legal arguments and supporting documentation proffered in the Oppositions to Motions Objecting to Allowance of Sexual Abuse Proofs of Claim filed by other Sexual Abuse Claimants in

1

opposition to the virtually identical objections filed in their cases, i.e. POC No. 807, POC No. 791, POC No. 731, POC No. 697. POC No. 428, POC No. 203, and POC No. 125.

## INTRODUCTION

This Court should deny the Objection to Allowance of Sexual Abuse Proof of Claim No.111 in all respects. Alternatively, the Court should 1) adjourn the matter until Claimant has been afforded a reasonable opportunity to discovery, which is necessary for the prosecution of his claim or 2) allow the Diocese of Buffalo's ("Diocese" or "Debtor") Plan of Reorganization to proceed to confirmation, notwithstanding this objections, because the Excess Insurers' right to litigate this claim post-confirmation is preserved in the Plan.

After nearly six years of bankruptcy proceedings and on the eve of filing of the Diocese's Plan of Reorganization ("Plan"), the Excess Insurers have now objected to multiple claims, including Claimant's, and are attempting to deny these child sexual abuse survivors the long overdue justice and resolution they deserve. In their motions, Excess Insurers now seek to engage in the costly and distracting litigation of claims, based entirely on publicly available information and the self-serving declaration of the Chief Operating Officer of the Diocese of Buffalo, Richard Suchan, ("Suchan Declaration") alleging that the Diocese has never had any control, ownership, operational responsibility or supervision over Friar Michael Kolodziej, O.F.M.Conv. ("Fr. Kolodziej"), the Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. ("Franciscans") and St. Francis High School, all while providing no evidentiary facts to support their contentions. (See Docket No. 4223). The Excess Insurers claim they should be entitled to a judgement as a matter of law in a motion which seeks to distract and derail the Plan confirmation process and eliminate the rights of child sexual

2

abuse survivors, including Claimant, with valid claims against the Diocese. Because of the automatic stay occasioned by the Diocese's bankruptcy, Claimant has been unable to conduct discovery on the Diocese; discovery was served upon them in connection with an objection previously filed by the Diocese, but was not pursued after a settlement was reached with the Diocese by the Committee. Bross Decl., Exh. 2.

New York Law does not support Proof of Claim No. 111 being disallowed without first allowing Claimant to conduct discovery on material aspects of his claim. The issue before the Court is whether the Diocese is responsible for controlling clergy and other Catholic organizations within its geographic territory. The short answer to this question is "Yes." However, this is a highly factual question that should be addressed in state court where there are mechanisms and procedures in place to proceed with discovery and motion practice in an effective and efficient manner. The arguments and self-serving declaration submitted by the Excess Insurers cannot resolve these issues as a matter of law. The substance of the Suchan Declaration and the public sources cited by the Excess Insurers fail to address the issues of duty, control or employment of the perpetrator that is the subject of Claimant's claims or the relationship between the Diocese and the non-bankrupt defendants. Significant due process concerns will arise if these claims are disallowed at this procedural stage. The Excess Insurers' Claim Objection also should be overruled because further discovery will lead to evidence that will show that the Diocese did in fact have supervision and control over the actions and employment of the alleged perpetrator and that the Diocese had a relationship with the non-bankrupt defendants such that Claimant believes will demonstrate the Diocese's liability for the harm caused to Claimant.

### BRIEF STATEMENT OF FACTS IN CLAIMANT'S PROOF OF CLAIM

Claimant was sexually abused by Fr. Kolodziej during Claimant's 9th grade school year, in or about 1979-1980. The abuse began when Claimant was about 14 years old and continued until he was about 15 years old; it took place at St. Francis High School, in the wrestling room located near the gymnasium. Fr. Kolodziej, the vice principal of the school, engaged in wrestling matches with Claimant in which he would fondle Claimant's buttocks and genitals, then hold Claimant's head in a "scissor hold" between his thighs.

### LEGAL ARGUMENT

I. **Bankruptcy Law and New York Law Favor Allowance of Claimant's Proof of Claim**

At the outset, it is critical to point out that Claimant, because of this pending bankruptcy, was not allowed to file a complaint naming the Diocese of Buffalo as a defendant and has been precluded from conducting discovery in the underlying state court case due to the automatic stay. Nonetheless, the Excess Insurers now attempt to force Claimant to litigate fact-sensitive issues in a venue they were thrust into without having had the opportunity to conduct any meaningful discovery whatsoever. This position is entirely unsupported by bankruptcy law.

On December 11, 2020, this Court entered the Bar Date Order approving the proof of claim form to be used by claimants asserting Survivor Claims. (Dkt. No. 729) This Court did not require Survivors to present causes of action or allegations that might establish a factual or legal basis for their claims outside of the bankruptcy process. Claimant answered each of the questions set forth in the POC and thus met the standard of sufficiency set forth by this Court. Claimant's Proof of Claim therefore has prima facie validity.

Moreover, the Diocese agreed to the Proof of Claim form that was used for Sexual Abuse Claims in this case. It would be extremely unfair to allow the Debtor to agree to a specialized proof

of claim that provided far more factual details than a form 410 but didn't require any specific allegations of the Diocese's liability and then have the Debtor's Excess Insurers turn around and say the proof of claim is missing answers to questions the form never asked. What the Excess Insurers are advocating, is a "heads I win, tails you lose" scenario which is fundamentally unfair to survivors of child sexual abuse. Even when dismissing a claim for failing to meet federal pleading standards, Judge Glenn of the Southern District of New York Bankruptcy Court noted that, because the proof of claim form did not request information sufficient to meet the pleading standard, discovery was appropriate. See *In re The Roman Catholic Diocese of Rockville Centre, N.Y.*, 651 B.R. 146, 153 (Bankr. S.D.N.Y. 2023).

II. **Bankruptcy Proofs of Claim are Presumed to Be Valid**

The allowance of claims is governed by Section 502 of the Bankruptcy Code. A proof of claim is, of course, prima facie evidence of its validity. *Whitney v. Dresser*, 200 U.S. 532 (1906). Unless the debtor objects and tenders sufficient evidence to overcome the prima facie validity accorded to the claim, the claim is allowed. *Matter of Spohn*, 61 B.R. 264, 265 (Bankr. W.D. Wis. 1986) (emphasis added). The Excess Insurers have not submitted *any* factual evidence refuting any of the sworn facts in Claimant's Proof of Claim. *See In re WHET, Inc.*, 33 B.R. 424 (Bankr. D.Mass 1983) (the objecting party bears the burden of producing evidence of a probative force equal to that of the allegations in the creditor's proof of claim.)

Here, by filing a sexual abuse proof of claim in the Diocese of Buffalo's chapter 11 proceeding, Claimant is alleging, on its face, that the Diocese of Buffalo is liable for the sexual abuse he endured. In Claimant's state court summons and complaint, he alleges that St. Francis High School was under the control of the Diocese of Buffalo. (Bross Declaration, Exhibit "1," Complaint, at ¶ 38) Claimant alleges, that at all material times, Friar Michael J. Kolodziej,

O.F.M.Conv. ("Fr. Kolodziej") was a Roman Catholic cleric employed by Defendants and the Diocese and that Fr. Kolodziej remained under the direct supervision, employ, and control of Defendants and Diocese. (Compl. ¶¶ 38, 42-44) Plaintiff further alleges that Defendants and the Diocese placed Fr. Kolodziej in positions where he had access to children. (Compl. ¶¶ 38, 45-59) and that, upon information and belief, Fr. Kolodziej was previously accused of child abuse. (Compl. ¶ 40)

### III. Even Without Discovery, There is Evidence That A Duty of Reasonable Care was Owed to Claimant and the Diocese of Buffalo Breached Their Duty

Claimant's Sexual Abuse Proof of Claim, Summons and Complaint, and additional evidence sufficiently supports a claim for negligence. To establish a prima facie case of negligence in New York, a plaintiff must demonstrate "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Rolfe v. Galt*, 477 N.Y.S.2d 790, 792 (3d Dep't 1984). The Court of Appeals has noted that "[n]eglience cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination." *Ugarriza v. Schmieder*, 46 N.Y.2d 471, 474 (1979). Thus, respectfully, it would be inappropriate to dismiss Claimant's negligence claim at what essentially amounts to the pleading stage.

The Excess Insurers focus on the first element of a negligence claim, duty. The Excess Insurers allege no duty existed to supervise or protect Claimant within its geographic territory. The Excess Insurers, through the Suchan Declaration suggest the Diocese had no oversight or control over Fr. Kolodziej, the Franciscans or St. Francis High School, whatsoever and that Claimant failed to plead any facts giving rise to a duty because the Diocese never had any control or oversight.

6

More specifically, Richard Suchan claims that the Diocese does not and did not ever have any supervisory authority over the Franciscans at St. Francis High School and that since its founding, the Diocese has not supervised, managed, or controlled in any way St. Francis High School or its faculty or staff. (Suchan Decl.) This is blatantly false. First, even though Claimant was precluded from naming the Diocese in a lawsuit, Claimant did plead facts in his state court complaint that give rise to a special relationship between Claimant, Fr. Zolodziej, the Diocese, the Franciscans and St. Francis High School. (Compl. ¶6) Second, "For a religious institute to enter a particular diocese and engage in some type of public ministry, the permission of the bishop would be required." (Zilliox Decl. at p 18) Furthermore, "Ownership of property and buildings has no bearing to determine authority over ministry, especially if the ministry is external to the religious institute." (Id. at 19).

The Excess Insurers, through Mr. Suchan, also claim that the Diocese did not play any role whatsoever in assigning or appointing Fr. Kolodziej to St. Francis High School. (Suchan Decl.) Again, this is a blatantly false statement. "A member of a religious institute who works in a ministry or apostolate in a diocese is subject to two superiors: the superior of the religious institute and the bishop. The bishop's authority extends to all things that pertain to the work of a parish or a school since he is responsible for the moral and spiritual welfare of the members of the diocese who are served by the parish or school." (Zilliox Decl. at p. 20) Additionally, "Priests who are members of religious institutes, or "priest members," also may work in dioceses, but to do so they need the permission of their own superior as well as the bishop in whose diocese such work is undertaken." (Id. at p. 12) The Bishop of Buffalo had to grant Fr. Kolodziej permission (faculties) to work in the Diocese of Buffalo and at St. Francis High School. To state under oath that the Diocese had no control or oversight of Fr. Kolodziej and other clerics working at St. Francis,

7

including oversight and involvement in Fr. Kolodziej's appointment and assignments within the Diocese, is untrue. "All priests who work in parishes and schools, including priests of religious institutes are answerable to the diocesan bishop and their superior in virtue of the public works of the apostolate." (Zilliox Decl. at 12)

The Excess Insurers by way of Mr. Suchan's declaration also allege the Diocese never managed, supervised, controlled, directed or operated St. Francis High School. This too is false. The Diocese of Buffalo entered into contractual agreements with the Franciscans addressing in detail the various responsibilities of the Diocese and the Franciscans as it pertains to the Franciscans' work within the Diocese of Buffalo. "As such, the Bishop of the Diocese of Buffalo retains his direct authority over all ministries that take place in the diocese including those run by members of the Conventual Franciscans. For a religious institute to enter a particular diocese and engage in some type of active public ministry, the permission of the bishop would be required." (Zilliox Decl. at p. 19) It is clear that the Diocese was directly involved in the management, control, direction and operation of the schools and the staff within the Diocese of Buffalo, including St. Francis and Fr. Kolodziej

Moreover, the Diocese of Buffalo's own publicly available education policies contradict the Suchan Declaration. "All Catholic elementary and secondary schools in the Diocese are canonically responsible to the Bishop and shall maintain true communion with the Church." (Bross Decl. Ex. 3) "All Catholic elementary and secondary schools in the Diocese shall abide by the four Catholic identity standards (1210: Communion & Cooperation with the Bishop, 1220: Appropriate Celebration of Sacramental Life, 1230: Teaching the Faith, and 1240: Environment & Catholic Identity…" Id. "All Catholic schools shall have a formal and defined relationship with the Diocese and specifically with the Bishop who has oversight of the teaching of the faith in all Catholic

8

schools." Id. "All Catholic schools shall communicate, consult and collaborate with all involved parties, particularly the appropriate Diocesan offices in an effort to ensure communion with the local Church." Id. "All Diocesan Catholic schools shall adhere to Diocesan child protection regulations as presented in the Child Protection Policy Handbook." Id. "All Catholic schools shall conform in all matters of religious education to the oversight of the Bishop." Id. "No Catholic school is independent of the Diocese relative to its communion with the Church…with the Bishop as head of the local Church." Id.

These excerpts from the Policies for Catholic Schools Pertaining to All Catholic Schools Within the Diocese of Buffalo ("Policies for Catholic Schools"), illustrate the relationship that existed and continues to exist between Claimant, Fr. Kolodziej, the Franciscans, St. Francis High School, and the Diocese of Buffalo. When the Policies for Catholic Schools states that there shall be additional policies to govern schools owned and operated by the Diocese of Buffalo, that indicates that the Diocese of Buffalo inherently has the ability to control, supervise, manage and maintain *all* schools in its geographic territory regardless of ownership, including, in the instant case, St. Francis High School.

As the Honorable L. Michael Mackey previously recognized in a CVA case, an institution that assumes custody, care, and control of a child owes a duty to protect the child from foreseeable dangers, not merely specific dangers of which the institution had prior notice:

> A party to whom physical custody of a child is entrusted has a duty *in loco parentis* to protect him from harm (see *Santer v. Bd. of Educ. of East Meadow Union Free Sch. Dist.*, 23 N.Y.3d 251 (2014)) and where the "duty to supervise is mandatory, notice is not an issue." *Coon v. Bd. of Educ. of City of New York*, 160 A.D.2d 403, 403 (1st Dep't 1990). Rather, if the potential danger to the child "can be reasonably foreseen and prevented by adequate supervision," then the child's custodian may be held liable for his assault, notwithstanding the fact that it lacked notice of prior dangerous

9

Case 1-20-10322-CLB, Doc 4293, Filed 10/28/25, Entered 10/28/25 15:58:08, Description: Main Document , Page 9 of 13

conduct by the alleged assailant. *Garcia v. City of New York*, 222 A.D.2d 192, 196 (1st Dep't 1996).

*Harmon v. Diocese of Albany*, No. 902825-20, 2021 WL 56654, at *5 (Sup. Ct. Albany Cty. Jan. 6, 2021) (emphasis added). Thus, in *Harmon*, the court acknowledged that the Diocese of Albany had a duty to protect a survivor of child sexual abuse in its custody "from foreseeable harm." Id. The facts here show that the Diocese of Buffalo had the ability, and the responsibility, to watch over the schools within its geographic territory, the students at the schools, and the staff at the schools interacting with students, to make sure each school was following the Diocesan child protection regulations. Here, the Diocese of Buffalo owed a duty of care to Claimant while he was a student and Catholic parishioner within the geographic territory of the Diocese of Buffalo while attending St. Francis High School.

**IV. The Suchan Declaration is Not Sufficient Documentary Evidence Under New York Law**

The Suchan declaration is fraught with dozens of factual inaccuracies, conclusory statements, and self-serving statements and is not sufficient documentary evidence to support the Excess Insurers' position under New York Law.

In *J.D. vs. The Archdiocese of New York*, Plaintiff J.D. was abused by a Roman Catholic priest and filed a lawsuit under the CVA against the Archdiocese of New York ("Archdiocese"), USA Northeast Province of the Society of Jesus ("Jesuits"), and Fordham Preparatory. The Archdiocese brought a pre-answer motion to dismiss on similar grounds to those advanced by the Excess Insurers in the instant claim objection. The Archdiocese argued that Fordham Preparatory and the land it is on was owned by the Jesuits and therefore the Archdiocese had no control over the abuser priest in question or the students attending Fordham Preparatory. To support its motion, the Archdiocese offered only the affidavit of its general counsel, land deeds and corporate records.

The trial court dismissed the lawsuit and Plaintiff, J.D., appealed. The Supreme Court of the State of New York Appellate Division, First Judicial Department, held that while the deeds and articles of incorporation, were documentary evidence of ownership, "they do not conclusively resolve the allegations in the complaint that plaintiff's alleged abuser, [abuser priest], was an agent of the Archdiocese, that the Archdiocese exercised supervision and control over [abuser priest's] appointment or employ, and that there were special relationships between plaintiff, the Archdiocese, and [abuser priest]. *J.D. v. Archdiocese of New York*, 214 A.D.3d 561, 183 N.Y.S.3d 851 (2023). The Appellate Division, First Judicial Department also held that the affidavit of the Archdiocese of New York's general counsel was not sufficient documentary evidence for the purpose of the motion and that the affidavit "consists of mainly legal conclusions and denials." Id. Similarly here, while the exhibits contained in Suchan's Declaration, and the publicly available documents and websites cited in the Excess Insurers' Declaration, may speak to ownership of the individual properties and/or schools, the statements made by Richard Suchan are entirely insufficient to qualify as documentary evidence for the purpose proffered by the Excess Insurers, that Fr. Kolodziej was not the Diocese's agent, that the Diocese did not supervise Fr. Kolodziej's employment or appointment, and that there was no relationship between Claimant, the Diocese, the Franciscans and St. Francis High School.

**V. Claimant is Entitled to Discovery in Order to Prosecute his Claim.**

Considering the fact intensive issue at hand, whether the Diocese of Buffalo had control, authority, and supervision over Fr. Kolodziej, the Franciscans and St. Francis High School, and owed Claimant a duty of care, discovery is warranted. Indeed New York Courts have deemed sexual abuse survivors entitled to the very kind of discovery needed by Claimant in this case. *Borrino v. Diocese of Brooklyn, et al.*, Index No. 506296/2020 (Kings Sup. Ct., 8/2/24) (NYSCEF Doc. No. 273) In *Borrino*, the court ordered immediate production of "(1) all documents regarding [the perpetrator at issue], including all documents reflecting the relationship between any defendant and [the perpetrator], such as contracts, manuals, and policies and procedures that touch on that relationship, (2) all documents regarding the relationship between any defendant with regard to [the parish at issue], (3) all documents that reflect the names of individuals who may have personal knowledge regarding the factual issues in this case, including yearbooks, directories, bulletins, employee lists, and similar documents, and (4) all manuals, policies, and procedures, regardless of time, regarding the protection of children from danger, including the danger of child sexual abuse." Id. ; *see also S.E. v. Diocese of Brooklyn, et al.*, Index No. 506289/2020, (Kings Sup Ct., 9/30/24) (NYSCEF Doc. No. 191) (holding the plaintiff's discovery demands are "plainly material and necessary to the prosecution of the claims asserted by plaintiff and the defenses raised by defendants.") These are the very kinds of documents Claimant has sought in his discovery demands to the Diocese of Buffalo, the Franciscans and St. Francis High School. (Bross Declaration, Ex. 2) This Court should not disallow this Proof of Claim without first allowing Claimant the opportunity to conduct the discovery necessary to the prosecution of his claims.

## CONCLUSION

The issue of whether the Diocese had control, authority, and/or supervision of the students at St. Francis High School and the staff working at St. Francis High School or for the Franciscans, is a highly fact intensive issue, an issue that is not easily resolved without crucial discovery and should not be resolved without affording Claimant the opportunity to conduct that discovery. At this point in Claimant's case, he has not been given the opportunity to conduct any meaningful and critically important discovery, in fact he has not even been able to name the Diocese of Buffalo as a defendant in his lawsuit due to the automatic stay.

For all the reasons set forth herein, Claimant respectfully asks this Court to deny the Diocese of Buffalo's Objection to Allowance of Sexual Abuse Proof of Claim No. 111 or, alternatively, adjourn this Claim Objection to allow Claimant the opportunity to conduct discovery that is imperative to the prosecution of his claim.

Dated: October 28, 2025
Melville, New York

Respectfully submitted,

/s/ *Stephenie Lannigan Bross*

_____
Stephenie Lannigan Bross, Esq
SLATER SLATER SCHULMAN LLP
445 Broad Hollow Road, Suite 419
Melville, NY 11747
631-420-9300
Email sbross@sssfirm.com
Counsel for Claimant 111