# EXHIBIT "1"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

————————————————————X

GREGG PACILLO,

            Plaintiff,

   -against-

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA
PROVINCE, FRANCISCAN FATHERS MINOR
CONVENTUAL, FRANCISCAN FRIARS-OUR
LADY OF THE ANGELS PROVINCE, INC., and
MICHAEL J. KOLODZIEJ,

            Defendants.

————————————————————X

Date Index No. Purchased:

Index No.:

Plaintiff designates Erie County
as the place of trial.

The basis of venue is
Defendant's residence.

**SUMMONS**

The Above-Named Defendants:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      August 2, 2021

Yours, etc.,

By: Adam P. Slater, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

Linc C. Leder, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

1

TO:   **ST. FRANCIS HIGH SCHOOL**
4129 Lake Shore Road
Hamburg, NY 14075

**ST. FRANCIS OF ASSISI PARISH**
4263 St. Francis Drive, PO Box 182
Athol Springs, NY 14010

**FRANCISCAN FRIARS-OUR LADY OF THE ANGELS PROVINCE, INC.**
**o/b/o St. Anthony of Padua Province, Franciscan Fathers Minor Conventual**
12300 Folly Quarter Road
Ellicott City, MD 21042

**MICHAEL J. KOLODZIEJ**
1283 Thompson Street
Pittsboro, NC 27312-5632

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

——————————————————————X

GREGG PACILLO,

             Plaintiff,

   -against-

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA
PROVINCE, FRANCISCAN FATHERS MINOR
CONVENTUAL, FRANCISCAN FRIARS-OUR
LADY OF THE ANGELS PROVINCE, INC., and
MICHAEL J. KOLODZIEJ,

             Defendants.

——————————————————————X

Date Filed:
Index No.:

**VERIFIED COMPLAINT**

Plaintiff, GREGG PACILLO ("Plaintiff"), by his attorneys Slater Slater Schulman LLP, brings this action against Defendants, ST. FRANCIS HIGH SCHOOL ("School"), ST. FRANCIS OF ASSISI PARISH ("Parish"), ST. ANTHONY OF PADUA PROVINCE, FRANCISCAN FATHERS MINOR CONVENTUAL, FRANCISCAN FRIARS-OUR LADY OF THE ANGELS PROVINCE, INC, and MICHAEL J. KOLODZIEJ ("Abuser") (collectively, "Defendants"); and alleges, on personal knowledge as to himself and on information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1.      This action is brought pursuant to the Child Victims Act ("CVA"). *See* CPLR § 214-g and 22 NYCRR 202.72; as it alleges physical, psychological and emotional injuries/damages suffered as a result of conduct against an infant that constitutes one or more sexual offenses as defined in Article 130 of the New York Penal Law, including without limitation,

3

conduct constituting sexual abuse (consisting of sexual contact) (N.Y. Penal Law §§ 130.55 - 130.77).

2.  This Court has personal jurisdiction over the School pursuant to CPLR §§ 301 and 302, as the School resides in New York or conducts, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

3.  This Court has personal jurisdiction over the Parish pursuant to CPLR §§ 301 and 302, as the Parish resides in New York or conducts, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

4.  This Court has personal jurisdiction over the St. Anthony of Padua Province, Franciscan Fathers Minor Conventual pursuant to CPLR §§ 301 and 302, as the St. Anthony of Padua Province, Franciscan Fathers Minor Conventual reside in New York or conduct, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

5.  This Court has personal jurisdiction over the Franciscan Friars-Our Lady of The Angels Province, Inc., pursuant to CPLR §§ 301 and 302, as the Franciscan Friars-Our Lady of The Angels Province, Inc., reside in New York or conduct, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

6.  This Court has personal jurisdiction over Abuser pursuant to CPLR §§ 301 and 302, as Abuser either resides in New York or conducts, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

7.  This Court has jurisdiction over this action because the amount of damages Plaintiff is seeking exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

8.  Venue for this action is proper in the County of Erie pursuant to CPLR § 503 as one or more Defendants reside in this County.

## PARTIES

9.       Plaintiff is an individual residing in Erie County, New York. Plaintiff was an infant at the time of the abuse alleged herein.

10.       Whenever reference is made to any defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business affairs.

11.       At all times material to this complaint, St. Anthony of Padua Province, Franciscan Fathers Minor Conventual was a non-profit educational corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

12.       St. Anthony of Padua Province, Franciscan Fathers Minor Conventual is authorized to conduct business under the laws of the State of New York, with its principal place of business at 1450 New York Avenue, Huntington Station, New York 11746.

13.       Franciscan Friars-Our Lady of The Angels Province, Inc., is a non-profit educational corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

14.       Franciscan Friars-Our Lady of The Angels Province, Inc., is authorized to conduct business under the laws of the State of New York, with its principal place of business at 12300 Folly Quarter Road, Ellicott City, MD 21042.

15.       Defendants merged St. Anthony of Padua Province, Franciscan Fathers Minor Conventual with Franciscan Friars-Our Lady of The Angels Province, Inc in or about the year

5

1992, after the sexual abuse described herein. Upon information and belief, St. Anthony of Padua Province, Franciscan Fathers Minor Conventual ceased business operations soon after the merger, and Franciscan Friars-Our Lady of The Angels Province assumed the responsibilities and liabilities ordinarily necessary for the uninterrupted continuation of St. Anthony of Padua Province, Franciscan Fathers Minor Conventual's operations and business with a continuity of attendance, management, personnel, records, obligations, and general administration.

16. St. Anthony of Padua Province, Franciscan Fathers Minor Conventual and Franciscan Friars-Our Lady of The Angels Province are collectively referred to herein as "Franciscan Friars."

17. At all times material to this complaint, the Franciscan Friars operated under the control of the Parish and the School.

18. At all times material to this complaint, the Franciscan Friars operated for the benefit of the Parish and the School.

19. The Parish was and continues to be a non-profit religious corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

20. The Parish was and remains authorized to conduct business under the laws of the State of New York.

21. The Parish's principal place of business is 4263 St. Francis Drive, Athol Springs, NY 14010.

22. The Parish oversaw and continues to oversee a variety of liturgical, sacramental, educational, and faith formation programs, including the School.

23. At all times material to this complaint, the Parish had and continues to have various programs and activities that seek the participation of children.

6

24.     At all times material to this complaint, the Parish, through its agents, servants, or employees had and continues to have control over its programs involving children, including the School.

25.     At all times material to this complaint, the Parish employed individuals working with or alongside children and providing said children guidance or instruction including, but not limited to, those at the Parish, Franciscan Friars, and School.

26.     The School is a non-profit educational corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

27.     The School is authorized to conduct business under the laws of the State of New York.

28.     The School oversaw and continues to oversee a variety of liturgical, sacramental, educational, and faith formation programs, including most predominantly schools and the Parish.

29.     At all times material to this complaint, the School had and continues to have various programs and activities that seek the participation of children.

30.     At all times material to this complaint, the School, through their agents, servants, or employees, had and continues to have control over their activities involving children, including the School.

31.     At all times material to this complaint, the School had and continues to have the power to employ individuals working with or alongside children and providing said children guidance or instruction including, but not limited to, those at the Parish, Franciscan Friars, and School.

32.     At all times material to this complaint, the School participated in the management, control, and operation of the Franciscan Friars.

33.     At all times material to this complaint, the School operated under the control of the Parish.

34.     At all times material to this complaint, the School operated for the benefit of the Parish.

35.     The Diocese of Buffalo ("Diocese") is not a party to this civil action.

36.     On February 28, 2020, the Diocese filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York (Case No. 20-10322) and is currently the debtor in the pending bankruptcy proceeding.

37.     The Diocese is not a named nor pled defendant due to the automatic stay provision of the United States Code. See 11 U.S.C. § 362 et seq.

38.     Although not a party to this civil action, the Diocese oversaw and continues to oversee a variety of liturgical, sacramental, educational, and faith formation programs, including schools and the School; the Diocese had and continues to have various programs and activities that seek the participation of children; the Diocese through its agents, servants, or employees, had and continues to have control over those activities involving children; the Diocese had and continues to have the power to employ individuals working with or alongside children and providing said children guidance or instruction under the auspices of the Diocese including, but not limited to, those at the Parish, Franciscan Friars, the School; Abuser was an agent, servant, or employee of the Diocese; and, while an agent, servant or employee of the Diocese, Abuser remained under the control and supervision of the Diocese.

39.     At all times material to this complaint, Abuser was a priest at the Parish and School.

40.     Upon information and belief, Abuser was previously accused of child sex abuse.

8

41.     Abuser currently resides in Manchester, New Hampshire with a service address of PO Box 310, Manchester, New Hampshire 03105.

42.     At all times material to this complaint, Abuser was an agent, servant, or employee of the Parish.

43.     At all times material to this complaint, Abuser was an agent, servant, or employee of the School.

44.     At all times material to this complaint, Abuser was an agent, servant, or employee of the Franciscan Friars.

45.     At all times material to this complaint, while an agent, servant or employee of the Parish, Abuser remained under the control and supervision of the Parish.

46.     At all times material to this complaint, while an agent, servant, or employee of the Parish, Abuser remained under the control and supervision of the School.

47.     At all times material to this complaint, while an agent, servant, or employee of the Parish, Abuser remained under the control and supervision of the Franciscan Friars.

48.     At all times material to this complaint, while an agent, servant, or employee of the School, Abuser remained under the control and supervision of the Parish.

49.     At all times material to this complaint, while an agent, servant, or employee of the School, Abuser remained under the control and supervision of the School.

50.     At all times material to this complaint, while an agent, servant, or employee of the School, Abuser remained under the control and supervision of the Franciscan Friars.

51.     At all times material to this complaint, while an agent, servant, or employee of the Franciscan Friars, Abuser remained under the control and supervision of the Parish.

52.     At all times material to this complaint, while an agent, servant, or employee of the Franciscan Friars, Abuser remained under the control and supervision of the School.

9

53.     At all times material to this complaint, while an agent, servant, or employee of the Franciscan Friars, Abuser remained under the control and supervision of the Franciscan Friars.

54.     The Parish placed Abuser in positions where he had immediate access to children.

55.     The School placed Abuser in positions where he had immediate access to children.

56.     The Franciscan Friars placed Abuser in positions where he had immediate access to children.

57.     The Parish placed Abuser in positions where he had unfettered and prolonged unsupervised access to children.

58.     The School placed Abuser in positions where he had unfettered and prolonged unsupervised access to children.

59.     The Franciscan Friars placed Abuser in positions where he had unfettered and prolonged unsupervised access to children.

## **BACKGROUND**

60.     By tradition, Roman Catholics and those within their custody and control, including Plaintiff, are taught to hold religious figures in the highest esteem as earthly representatives of God, and that religious figures, unlike lay people, belong to a separate and higher state in life, which Defendants represent to be of divine origin and which they represent, entitles them to special privileges.  For these and other reasons relating to the practice of the Roman Catholic Church, religious figures, and other individuals in leadership positions in the Roman Catholic Church, have traditionally occupied positions of great trust, respect, and allegiance among adults and children, including Plaintiff.

61.     The pattern and practice of intentionally refusing or failing to disclose the identities and locations of sexually inappropriate or abusive clerics has been practiced by the Catholic Church for decades and continues through current day.  The failure to disclose the identities of

10

such allegedly sexually inappropriate or abusive clerics is unreasonable and knowingly, or recklessly, creates or maintains a condition that endangers the safety and health of members of the public, and more specifically, Plaintiff herein.

62.     Moreover, Roman Catholic Church officials, including Defendants herein, have used their power and influence to prevent victims of such abuse and their families from disclosing allegations of abuse.

## FACTS

63.     Plaintiff attended the School between the approximate years of 1979 to 1980, when then infant Plaintiff was approximately fourteen (14) to fifteen (15) years old.

64.     Plaintiff and his family also attended the Parish for religious instruction and devotion.

65.     At all times material to this complaint, Abuser was Plaintiff's priest at the School and Parish, and provided educational and religious instruction to infant Plaintiff under the auspices of the Parish, School, and Franciscan Friars.

66.     Upon information and belief, the Abuser was Plaintiff's vice principal.

67.     At all times material to this complaint, Abuser was an adult.

68.     Between the approximate years of 1979 and 1980, Plaintiff engaged in recreational, educational, and religious activities at the School and Parish.

69.     During said activities, Plaintiff, as a vulnerable minor, was dependent on the Defendants and Abuser for his care and welfare.

70.     During said activities, Defendants had custody of Plaintiff and accepted the entrustment of then infant Plaintiff.

71.     During said activities, Defendants were responsible for, and had authority over, then infant Plaintiff.

11

72.    Under the doctrine of *in loco parentis*, Defendants assumed duties to protect then infant Plaintiff from harm.

73.    Through Abuser's position at, within, or for the Parish, School, and Franciscan Friars, Abuser was put in direct contact with Plaintiff, a minor student or parishioner of the Parish, School, and Franciscan Friars.

74.    Under these circumstances, Plaintiff came to be under the direction, contact, and control of Abuser, who used his position of authority and trust to manipulate, sexually abuse, and sexually harass then infant Plaintiff.

75.    On numerous occasions, from approximately 1979 through about 1980, while Plaintiff was a minor, Abuser, while acting as a priest, counselor, teacher, trustee, director, officer, employee, agent, servant, or volunteer of the Parish, sexually assaulted, sexually abused, or had sexual contact with Plaintiff in violation of the laws of the State of New York, including New York's Penal Law Article 130.

76.    On numerous occasions, from approximately 1979 through about 1980, while Plaintiff was a minor, Abuser, while acting as a priest, counselor, teacher, trustee, director, officer, employee, agent, servant, or volunteer of the School, sexually assaulted, sexually abused, or had sexual contact with Plaintiff in violation of the laws of the State of New York, including New York's Penal Law Article 130.

77.    On numerous occasions, from approximately 1979 through about 1980, while Plaintiff was a minor, Abuser, while acting as a priest, counselor, teacher, trustee, director, officer, employee, agent, servant, or volunteer of the Franciscan Friars, sexually assaulted, sexually abused, or had sexual contact with Plaintiff in violation of the laws of the State of New York, including New York's Penal Law Article 130.

78.     Specifically, the abuse included, but was not limited to, Abuser fondling and groping then infant Plaintiff's bare genitals and buttocks, and Abuser forcibly clenching Plaintiff's head between Abuser's thighs.

79.     Said sexual abuse approximate three (3) times over the course of the school year on School property.

80.     Plaintiff's relationship to the Parish, as a vulnerable minor, parishioner, and participant in its religious and instructional activities, was one in which Plaintiff was subject to its ongoing influence.   The dominating culture of the Catholic Church over Plaintiff pressured Plaintiff not to report Abuser's sexual abuse.

81.     Plaintiff's relationship to the School, as a vulnerable minor, student, and participant in its religious and instructional activities, was one in which Plaintiff was subject to its ongoing influence.   The dominating culture of the Catholic Church over Plaintiff pressured Plaintiff not to report Abuser's sexual abuse.

82.     Plaintiff's relationship to the Franciscan Friars, as a vulnerable minor, student, and participant in their religious and instructional activities, was one in which Plaintiff was subject to their ongoing influence.   The dominating culture of the Catholic Church over Plaintiff pressured Plaintiff not to report Abuser's sexual abuse.

83.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Parish.

84.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the School.

85.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Franciscan Friars.

86.     The Parish knew, or reasonably should have known, or knowingly condoned, or covered up, the inappropriate and unlawful sexual activities of Abuser.

87.     The School knew, or reasonably should have known, or knowingly condoned, or covered up, the inappropriate and unlawful sexual activities of Abuser.

88.     The Franciscan Friars knew, or reasonably should have known, or knowingly condoned, or covered up, the inappropriate and unlawful sexual activities of Abuser.

89.     The Parish negligently or recklessly believed Abuser was fit to work with children, that any previous problems Abuser had were fixed and cured, that Abuser would not sexually molest children, and that Abuser would not injure children.

90.     The School negligently or recklessly believed Abuser was fit to work with children, that any previous problems Abuser had were fixed and cured, that Abuser would not sexually molest children, and that Abuser would not injure children.

91.     The Franciscan Friars negligently or recklessly believed Abuser was fit to work with children, that any previous problems Abuser had were fixed and cured, that Abuser would not sexually molest children, and that Abuser would not injure children.

92.     The Parish had the responsibility to supervise and direct its employees or agents serving at the Parish or School, and specifically had a duty not to aid individuals such as Abuser by assigning, maintaining, or appointing, him to a position with unfettered access to minors.

93.     The School had the responsibility to supervise and direct its employees or agents serving at the Parish or School, and specifically had a duty not to aid individuals such as Abuser by assigning, maintaining, or appointing, him to a position with unfettered access to minors.

94.     The Franciscan Friars had the responsibility to supervise and direct their employees or agents serving with the Parish or School, and specifically had a duty not to aid individuals such

14

as Abuser by assigning, maintaining, or appointing, him to a position with unfettered access to minors.

95.  By holding Abuser out as safe to work with children and undertaking the custody, supervision, and care of minor Plaintiff as a parishioner and student, the Parish entered a fiduciary relationship with Plaintiff. As a result of Plaintiff being a vulnerable minor and the Parish undertaking his care and guidance, the Parish held a distinct position of power over Plaintiff.

96.  By holding Abuser out as safe to work with children and undertaking the custody, supervision, and care of minor Plaintiff as a parishioner and student, the School entered a fiduciary relationship with Plaintiff. As a result of Plaintiff being a vulnerable minor and the School undertaking his care and guidance, the School held a distinct position of power over Plaintiff.

97.  By holding Abuser out as safe to work with children and undertaking the custody, supervision, and care of minor Plaintiff as a parishioner and student, the Franciscan Friars entered a fiduciary relationship with Plaintiff. As a result of Plaintiff being a vulnerable minor and the Franciscan Friars undertaking his care and guidance the Franciscan Friars held a distinct position of power over Plaintiff.

98.  By holding itself out as being able to provide a safe environment for children, the Parish sought and accepted this position of power over Plaintiff. This empowerment prevented then minor Plaintiff from effectively protecting himself. As a result, the Parish entered a fiduciary relationship with Plaintiff.

99.  By holding itself out as being able to provide a safe environment for children, the School sought and accepted this position of power over Plaintiff. This empowerment prevented then minor Plaintiff from effectively protecting himself. As a result, the School entered a fiduciary relationship with Plaintiff.

100.   By holding themselves out as being able to provide a safe environment for children, the Franciscan Friars sought and accepted this position of power over Plaintiff. This empowerment prevented then minor Plaintiff from effectively protecting himself. As a result, the Franciscan Friars entered a fiduciary relationship with Plaintiff.

101.   The Parish had a special relationship with Plaintiff.

102.   The School had a special relationship with Plaintiff.

103.   The Franciscan Friars had a special relationship with Plaintiff.

104.   The Parish owed Plaintiff a duty of reasonable care because the Parish had knowledge about the risk that Abuser posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children.

105.   The School owed Plaintiff a duty of reasonable care because the School had knowledge about the risk that Abuser posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children.

106.   The Franciscan Friars owed Plaintiff a duty of reasonable care because the Franciscan Friars had knowledge about the risk that Abuser posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children.

107.   The Defendants owed Plaintiff a duty of reasonable care because they sought out youth or their parents or guardians for participation in their programs; encouraged youth and their parents or guardians to have the youth participate in their programs; undertook custody of said youth; promoted their facilities and programs as being safe for children; held their agents, out as safe to work with children; encouraged youth and their parents or guardians to spend time with their agents; and encouraged their agents, to spend time with, interact with, and welcome children.

108.   The Parish owed Plaintiff a duty to protect Plaintiff from harm because the Parish's actions created a foreseeable risk of harm to Plaintiff.

16

109.    The School owed Plaintiff a duty to protect Plaintiff from harm because the School's actions created a foreseeable risk of harm to Plaintiff.

110.    The Franciscan Friars owed Plaintiff a duty to protect Plaintiff from harm because the Franciscan Friars' actions created a foreseeable risk of harm to Plaintiff.

111.    At all times material to this complaint, the Defendants, or their agents, or their employees, were responsible and liable for each other's **_negligent_** actions and omissions via, but not limited to, *respondeat superior*. However, Plaintiff does not allege that the doctrine of *respondeat superior* applies directly to **_intentional_** acts of sexual assault or sexual abuse alleged of the individual perpetrator identified in this complaint.

112.    The Parish's breach of its duties include, but are not limited to: failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement the policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make sure that the policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the workers at institutions and programs within the Parish, failure to protect children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying on mental health professionals, or failure by relying on people who claimed that they could treat child molesters.

113.    The School's breach of its duties include, but are not limited to: failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement the policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make

17

sure that the policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the workers within the School, failure to protect children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying on mental health professionals, or failure by relying on people who claimed that they could treat child molesters.

114.    The Franciscan Friars' breach of their duties include, but are not limited to: failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement the policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make sure that the policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train those within the Franciscan Friars, failure to protect children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying on mental health professionals, or failure by relying on people who claimed that they could treat child molesters.

115.    The Parish also breached its duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk Abuser posed and the risks of child sexual abuse by its employees or

18

agents. The Parish also failed to warn Plaintiff about any of the knowledge that it had about child sexual abuse.

116.     The School also breached its duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk Abuser posed and the risks of child sexual abuse by its employees or agents. The School also failed to warn Plaintiff about any of the knowledge that it had about child sexual abuse.

117.     The Franciscan Friars also breached their duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk Abuser posed and the risks of child sexual abuse by their employees or agents. The Franciscan Friars also failed to warn Plaintiff about any of the knowledge that they had about child sexual abuse.

118.     The Parish also violated a legal duty by failing to report known or suspected abuse of children by Abuser or its other agents to the police and law enforcement.

119.     The School also violated a legal duty by failing to report known or suspected abuse of children by Abuser or its other agents to the police and law enforcement.

120.     The Franciscan Friars also violated a legal duty by failing to report known or suspected abuse of children by Abuser or their other agents to the police and law enforcement.

121.     By employing Abuser at the Parish or School, or other facilities under its supervision, the Parish, through its agents, affirmatively represented to minor children and their families that Abuser did not pose a threat to children, did not have a history of molesting children, that the Parish did not know that Abuser had a history of molesting children, and that the Parish did not know Abuser was a danger to children. Plaintiff and Plaintiff's family were induced to rely on these affirmations and did rely on them.

122.     By employing Abuser at the School, the School through its agents, affirmatively represented to minor children and their families that Abuser did not pose a threat to children, did

19

not have a history of molesting children, that the School did not know that Abuser had a history of molesting children, and that the School did not know Abuser was a danger to children. Plaintiff and Plaintiff's family were induced to rely on these affirmations and did rely on them.

123. By employing Abuser at the School, or other facilities under their supervision, the Franciscan Friars through their agents, affirmatively represented to minor children and their families that Abuser did not pose a threat to children, did not have a history of molesting children, that the Franciscan Friars did not know that Abuser had a history of molesting children, and that the Franciscan Friars did not know Abuser was a danger to children. Plaintiff and Plaintiff's family were induced to rely on these affirmations and did rely on them.

124. At no time did the Parish ever send an official, investigator, or any employee or independent contractor to advise or provide any form of notice to the parishioners, students, or their families, either verbally or in writing, that there were credible allegations against Abuser and to request anyone who saw, suspected, or suffered sexual abuse, to come forward and file a report with the police department. Rather, the Parish remained silent.

125. At no time did the School ever send an official, investigator, or any employee or independent contractor to advise or provide any form of notice to the parishioners, students, or their families, either verbally or in writing, that there were credible allegations against Abuser and to request anyone who saw, suspected, or suffered sexual abuse, to come forward and file a report with the police department. Rather, the School remained silent.

126. At no time did the Franciscan Friars ever send an official, investigator, or any employee or independent contractor to advise or provide any form of notice to the parishioners, students, or their families, either verbally or in writing, that there were credible allegations against Abuser and to request anyone who saw, suspected, or suffered sexual abuse, to come forward and file a report with the police department. Rather, the Franciscan Friars remained silent.

20

127.     The Parish, as school administrators, violated various New York statutes, including, but not limited to N.Y. Soc. Serv. Law §§ 413 and 420, which require, *inter alia*, school officials, teachers, day care center workers, providers of family or group family day care, and any other childcare worker to report suspected cases of child abuse and impose liability for failure to report.

128.     The School violated various New York statutes, including, but not limited to N.Y. Soc. Serv. Law §§ 413 and 420, which require, *inter alia*, school officials, teachers, day care center workers, providers of family or group family day care, and any other childcare worker to report suspected cases of child abuse and impose liability for failure to report.

129.     The Franciscan Friars, as school administrators, violated various New York statutes, including, but not limited to N.Y. Soc. Serv. Law §§ 413 and 420, which require, *inter alia*, school officials, teachers, day care center workers, providers of family or group family day care, and any other childcare worker to report suspected cases of child abuse and impose liability for failure to report.

130.     As a result of Defendants' conduct described herein, Plaintiff has and will continue to suffer personal physical, eemotional and psychological injuries, including but not limited to great pain of mind and body; severe and permanent emotional distress; physical manifestations of emotional distress; problems sleeping and concentrating; low self-confidence, low self-respect, and low self-esteem; feelings of worthlessness, shamefulness, and embarrassment; feeling alone and isolated; losing faith in God and authority figures; feeling estranged from religion; struggling with gainful employment and career advancement; feeling helpless and hopeless; problems with sexual and emotional intimacy; relationship problems; trust issues; feeling confused and angry; depression; anxiety; feeling dirty, used, and damaged; experiencing traumatic flashbacks; and invasive feelings that his childhood and innocence were stolen. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's normal daily activities; has incurred and will

21

continue to incur expenses for medical and psychological treatment, therapy, and counseling; and, on information and belief, has incurred and will continue to incur loss of income or loss of earning capacity. As a victim of Defendants' misconduct, Plaintiff is unable at this time to fully describe all the details of that abuse and the extent of the harm Plaintiff suffered as a result.

131.    The injuries and damages suffered by Plaintiff are specific in kind to Plaintiff, special, peculiar, and above and beyond those injuries and damages suffered by the public.

## NATURE OF ALLEGED CONDUCT

132.    This action alleges physical, psychological, and emotional injuries suffered as a result of conduct which would constitute a sexual offense on a minor as defined in Article 130 of the New York Penal Law, including without limitation, conduct constituting sexual abuse (consisting of sexual contact) (N.Y. Penal Law§§ 130.55 - 130.77).

133.    The limitation of liability set forth in CPLR Art. 16 is not applicable to the claim of personal injury alleged herein, by reason of one or more of the exemptions provided in CPLR § 1602, including without limitation, that Defendants acted, with reckless disregard for the safety of Plaintiff, or knowingly, or intentionally, in concert with its agents and employees, to retain and permit Abuser mentioned herein unfettered and prolonged unsupervised access to children.

## FIRST CAUSE OF ACTION: NEGLIGENCE

134.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

135.    The Parish knew or was negligent in not knowing Abuser posed a threat of sexual abuse to children.

136.    The School knew or was negligent in not knowing Abuser posed a threat of sexual abuse to children.

137. The Franciscan Friars knew or were negligent in not knowing Abuser posed a threat of sexual abuse to children.

138. Prior to the sexual abuse of Plaintiff, the Parish knew or should have known that Abuser was unfit to work with children. The Parish, by and through its agents, servants or employees knew, or should have known of Abuser's propensity to commit sexual abuse and of the risk to Plaintiff's safety. At the very least, the Parish knew or should have known that it did not have sufficient information about whether its employees or those working within the Parish or School were safe or not.

139. Prior to the sexual abuse of Plaintiff, the School knew or should have known that Abuser was unfit to work with children. The School, by and through its agents, servants or employees knew, or should have known of Abuser's propensity to commit sexual abuse and of the risk to Plaintiff's safety. At the very least, the School knew or should have known that it did not have sufficient information about whether its employees or those working at the School, were safe or not.

140. Prior to the sexual abuse of Plaintiff, the Franciscan Friars knew or should have known that Abuser was unfit to work with children. The Franciscan Friars, by and through their agents, servants or employees knew, or should have known of Abuser's propensity to commit sexual abuse and of the risk to Plaintiff's safety. At the very least, the Franciscan Friars knew or should have known that they did not have sufficient information about whether their employees or those working at the School, were safe or not.

141. The acts of Abuser described hereinabove were undertaken, or enabled by, or during the course, or within the scope of Abuser's employment, appointment, or agency with the Parish.

23

142.     The acts of Abuser described hereinabove were undertaken, or enabled by, or during the course, or within the scope of Abuser's employment, appointment, or agency with the School.

143.     The acts of Abuser described hereinabove were undertaken, or enabled by, or during the course, or within the scope of Abuser's employment, appointment, or agency with the Franciscan Friars.

144.     The Parish's willful, wanton, grossly negligent, or negligent, acts of commission or omission resulted directly or proximately in the damages set forth herein at length.

145.     The School's willful, wanton, grossly negligent, or negligent, acts of commission or omission resulted directly or proximately in the damages set forth herein at length.

146.     The Franciscan Friars' willful, wanton, grossly negligent, or negligent, acts of commission or omission resulted directly or proximately in the damages set forth herein at length.

147.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Parish.

148.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the School.

149.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Franciscan Friars.

150.     At all times material to this complaint, the Parish's actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in its disregard for the rights and safety of Plaintiff.

151.     At all times material to this complaint, the School's actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in its disregard for the rights and safety of Plaintiff.

24

152.    At all times material to this complaint, the Franciscan Friars' actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in their disregard for the rights and safety of Plaintiff.

153.    The Parish owed Plaintiff a duty of care because it had a special relationship with Plaintiff.

154.    The School owed Plaintiff a duty of care because it had a special relationship with Plaintiff.

155.    The Franciscan Friars owed Plaintiff a duty of care because they had a special relationship with Plaintiff.

156.    The Parish had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents or guardians, or the other parents or guardians of young, innocent, vulnerable children in the Parish, to properly train and supervise its clerics, employees, or agents. This special relationship arose because of the high degree of vulnerability of those children, including Plaintiff, entrusted to its care. As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, the Parish had a duty to establish measures of protection not necessary for people who are older and better able to protect themselves.

157.    The School had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents or guardians, or the other parents or guardians of young, innocent, vulnerable children in the School, to properly train and supervise its clerics, employees, or agents. This special relationship arose because of the high degree of vulnerability of those children, including Plaintiff, entrusted to its care. As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, the School had a duty to establish measures of protection not necessary for people who are older and better able to protect themselves.

158.     The Franciscan Friars had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents or guardians, or the other parents or guardians of young, innocent, vulnerable children in the School, to properly train and supervise its clerics, employees, or agents. This special relationship arose because of the high degree of vulnerability of those children, including Plaintiff, entrusted to its care.  As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, the Franciscan Friars had a duty to establish measures of protection not necessary for people who are older and better able to protect themselves.

159.     The Parish owed Plaintiff a duty to protect Plaintiff from Abuser's sexual deviancy, before and after Abuser's misconduct.

160.     The School owed Plaintiff a duty to protect Plaintiff from Abuser's sexual deviancy, before and after Abuser's misconduct.

161.     The Franciscan Friars owed Plaintiff a duty to protect Plaintiff from Abuser's sexual deviancy, before and after Abuser's misconduct.

162.     By accepting custody of infant Plaintiff, the Parish established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury. Further, the Parish entered a fiduciary relationship with Plaintiff by undertaking the custody, supervision of, or care of infant Plaintiff.  As a result of Plaintiff being an infant, and by the Parish undertaking the care and guidance of Plaintiff, the Parish also held a position of power over Plaintiff.  Further, the Parish, by holding itself out as being able to provide a safe environment for children, solicited or accepted this position of power.  The Parish, through its employees or agents, exploited this power over Plaintiff and, thereby, put the infant Plaintiff at risk for sexual abuse.

163.     By accepting custody of infant Plaintiff, the School established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

26

Further, the School entered a fiduciary relationship with Plaintiff by undertaking the custody, supervision, or care of infant Plaintiff. As a result of Plaintiff being an infant, and by the School undertaking the care and guidance of Plaintiff, the School also held a position of power over Plaintiff. Further, the School, holding itself out as being able to provide a safe environment for children, solicited or accepted this position of power. The School, through its employees or agents, exploited this power over Plaintiff and, thereby, put the infant Plaintiff at risk for sexual abuse.

164. By accepting custody of infant Plaintiff, the Franciscan Friars established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury. Further, the Franciscan Friars entered a fiduciary relationship with Plaintiff by undertaking the custody, supervision of, or care of infant Plaintiff. As a result of Plaintiff being an infant, and by the Franciscan Friars undertaking the care and guidance of Plaintiff, the Franciscan Friars also held a position of power over Plaintiff. Further, the Franciscan Friars, by holding themselves out as being able to provide a safe environment for children, solicited or accepted this position of power. The Franciscan Friars, through their employees or agents, exploited this power over Plaintiff and, thereby, put the infant Plaintiff at risk for sexual abuse.

165. By establishing and operating the School, accepting infant Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff, accepting custody of infant Plaintiff *in loco parentis*, and by establishing a relationship with Plaintiff, the Parish entered an express or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for the children who participated in its programs. The Parish had the duty to exercise the same degree of care over minors under its control as a reasonably prudent parent would have exercised under similar circumstances.

166. By establishing and operating the School, accepting infant Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff,

accepting custody of infant Plaintiff *in loco parentis*, and by establishing a relationship with Plaintiff, the School entered an express or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for the children who participated in its programs. The School had the duty to exercise the same degree of care over minors under its control as a reasonably prudent parent would have exercised under similar circumstances.

167.    By establishing and operating the School, accepting infant Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff, accepting custody of infant Plaintiff *in loco parentis*, and by establishing a relationship with Plaintiff, the Franciscan Friars entered an express or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for the children who participated in their programs. The Franciscan Friars had the duty to exercise the same degree of care over minors under their control as a reasonably prudent parent would have exercised under similar circumstances.

168.    The Parish breached the aforementioned duties it owed Plaintiff and was otherwise negligent.

169.    The School breached the aforementioned duties it owed Plaintiff and was otherwise negligent.

170.    The Franciscan Friars breached the aforementioned duties they owed to Plaintiff and were otherwise negligent.

171.    The Parish additionally violated a legal duty by failing to report to law enforcement known or suspected abuse of children by Abuser or its other agents.

172.    The School additionally violated a legal duty by failing to report to law enforcement known or suspected abuse of children by Abuser or its other agents.

173.    The Franciscan Friars additionally violated a legal duty by failing to report to law enforcement known or suspected abuse of children by Abuser or their other agents.

28

174. The Parish's actions or inactions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities the Parish offered to minors, Plaintiff was a foreseeable victim. Additionally, as a vulnerable child who Abuser had access to through the Parish's facilities and programs, Plaintiff was a foreseeable victim.

175. The School's actions or inactions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities the School offered to minors, Plaintiff was a foreseeable victim. Additionally, as a vulnerable child who Abuser had access to through the School's facilities and programs, Plaintiff was a foreseeable victim.

176. The Franciscan Friars' actions or inactions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities the Franciscan Friars offered to minors, Plaintiff was a foreseeable victim. Additionally, as a vulnerable child who Abuser had access to through the Franciscan Friars' facilities and programs, Plaintiff was a foreseeable victim.

177. The Parish's conduct showed a reckless or willful disregard for the safety and well-being of Plaintiff and other children.

178. The School's conduct showed a reckless or willful disregard for the safety and well-being of Plaintiff and other children.

179. The Franciscan Friars' conduct showed a reckless or willful disregard for the safety and well-being of Plaintiff and other children.

180. Defendants breached their duties to the Plaintiff and were otherwise negligent.

181. As a direct or indirect result of said conduct, Plaintiff has suffered the injuries and damages described herein.

182.    By reason of the foregoing, Defendants are jointly, severally, or in the alternative, liable to Plaintiff for compensatory damages, and for punitive damages, together with interest and costs.

**SECOND CAUSE OF ACTION: NEGLIGENT HIRING, RETENTION, OR DIRECTION**

183.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

184.    The Parish hired Abuser.

185.    The School hired Abuser.

186.    The Franciscan Friars hired Abuser.

187.    The Parish hired Abuser for a position that required Abuser to work closely with, mentor, supervise, and counsel young boys and girls.

188.    The School hired Abuser for position that required Abuser to work closely with, mentor, supervise, and counsel young boys and girls.

189.    The Franciscan Friars hired Abuser for a position that required Abuser to work closely with, mentor, supervise, and counsel young boys and girls.

190.    The Parish herein was negligent in hiring Abuser because the Parish knew or should have known, through the exercise of reasonable care, of Abuser's propensity to develop inappropriate relationships with children in the Parish's charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

191.    The School herein was negligent in hiring Abuser because the School knew or should have known, through the exercise of reasonable care, of Abuser's propensity to develop inappropriate relationships with children in the School's charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

192.     The Franciscan Friars herein were negligent in hiring Abuser because the Franciscan Friars knew or should have known, through the exercise of reasonable care, of Abuser's propensity to develop inappropriate relationships with children in the Franciscan Friars' charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

193.     Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been hired by the Parish to mentor and counsel children in the Parish.

194.     Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been hired by the School to mentor and counsel children in the School.

195.     Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been hired by the Franciscan Friars to mentor and counsel children in the School.

196.     Abuser continued to sexually abuse Plaintiff while within the Parish and School.

197.     The harm complained of herein was foreseeable.

198.     Plaintiff would not have suffered the foreseeable harm complained of herein but for the negligence of the Parish in having placed Abuser, or allowed Abuser to remain, in his position.

199.     Plaintiff would not have suffered the foreseeable harm complained of herein but for the negligence of the School in having placed Abuser, or allowed Abuser to remain, in his position.

200.     Plaintiff would not have suffered the foreseeable harm complained of herein but for the negligence of the Franciscan Friars in having placed Abuser, or allowed Abuser to remain, in his position.

201.     At all times material to this complaint, while Abuser was employed or appointed by the Parish, he was supervised by, under the direction of, or answerable to, the Parish, School, Franciscan Friars, or their agents or employees.

202. At all times material to this complaint, while Abuser was employed or appointed by the School, he was supervised by, under the direction of, or answerable to, the Parish, School, Franciscan Friars, or their agents or employees.

203. At all times material to this complaint, while Abuser was employed or appointed by the Franciscan Friars, he was supervised by, under the direction of, or answerable to, the Parish, School, Franciscan Friars, or their agents or employees.

204. The Parish was negligent in its direction or supervision of Abuser as the Parish knew or should have known, through the exercise of ordinary care, that Abuser's conduct would subject third parties to an unreasonable risk of harm, including Abuser's propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

205. The School was negligent in its direction or supervision of Abuser as the School knew or should have known, through the exercise of ordinary care, that Abuser's conduct would subject third parties to an unreasonable risk of harm, including Abuser's propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

206. The Franciscan Friars were negligent in their direction or supervision of Abuser as the Franciscan Friars knew or should have known, through the exercise of ordinary care, that Abuser's conduct would subject third parties to an unreasonable risk of harm, including Abuser's propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

207. The Parish failed to take steps to prevent such conduct from occurring.

208. The School failed to take steps to prevent such conduct from occurring.

209. The Franciscan Friars failed to take steps to prevent such conduct from occurring.

32

210.    The Parish was negligent in its retention of Abuser as the Parish knew, or should have known, through the exercise of reasonable care, of his propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

211.    The School was negligent in its retention of Abuser as the School knew, or should have known, through the exercise of reasonable care, of his propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

212.    The Franciscan Friars were negligent in their retention of Abuser as the Franciscan Friars knew, or should have known, through the exercise of reasonable care, of his propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

213.    The Parish retained Abuser in his position as mentor and counselor to such children and thus left him in a position to continue such behavior.

214.    The School retained Abuser in his position as mentor and counselor to such children and thus left him in a position to continue such behavior.

215.    The Franciscan Friars retained Abuser in his position as mentor and counselor to such children and thus left him in a position to continue such behavior.

216.    The School was further negligent in its retention, supervision, or direction of Abuser allowing him to sexually molest Plaintiff on the School's premises.

217.    The Franciscan Friars were further negligent in their retention, supervision, or direction of Abuser allowing him to sexually molest Plaintiff on the School's premises.

218.    The Parish failed to take reasonable steps to prevent such events from occurring on the Parish's premises.

33

219.    The School failed to take reasonable steps to prevent such events from occurring on the School's premises.

220.    The Franciscan Friars failed to take reasonable steps to prevent such events from occurring on the School's premises.

221.    Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been negligently retained, supervised, or directed by the Parish as a mentor and counselor to its infant parishioners, including Plaintiff.

222.    Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been negligently retained, supervised, or directed by the School as a mentor and counselor to its infant students, including Plaintiff.

223.    Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been negligently retained, supervised, or directed by the Franciscan Friars as a mentor and counselor to their infant students, including Plaintiff.

224.    The Parish breached its duty of care to the Plaintiff and was otherwise negligent.

225.    The School breached its duty of care to the Plaintiff and was otherwise negligent.

226.    The Franciscan Friars breached their duty of care to the Plaintiff and were otherwise negligent.

227.    As a direct or indirect result of said negligence, Plaintiff has suffered the injuries and damages described herein.

228.    By reason of the foregoing, Defendants are jointly, severally, or in the alternative, liable to Plaintiff for compensatory damages, and for punitive damages, together with interest and costs.

## THIRD CAUSE OF ACTION: BREACH OF STATUTORY DUTY TO REPORT
## ABUSE UNDER SOC. SERV. LAW §§ 413 and 420

229.     Plaintiff repeats and realleges by reference every allegation set forth as if fully set forth herein.

230.     Pursuant to N.Y. Soc. Serv. Law §§ 413 and 420, Defendants as school administrators, by and through, including but not limited to their principals, agents, or employees, had a statutorily imposed duty to report or cause to report abuse or maltreatment of children in their care, or parents, guardians, custodians, or other persons legally responsible for such children that otherwise came before them in their official capacity, when Defendants had reasonable cause to suspect abuse or maltreatment of such children.

231.     Defendants breached that duty by negligently, knowingly, or willfully failing to report or causing to report reasonable suspicion of abuse or maltreatment of such children, and Plaintiff in particular.

232.     As a direct or indirect result of said conduct, Plaintiff has suffered injuries and damages described herein.

233.     By reason of the foregoing, Defendants, jointly, severally, or in the alternative, are liable to Plaintiff for compensatory damages, and for punitive damages, together with interest and costs.

## FOURTH CAUSE OF ACTION: ASSAULT
### (against MICHAEL J. KOLODZIEJ)

234.     Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

235.     At all times material hereto, the acts of Abuser described above placed Plaintiff in reasonable fear of harmful and injurious contact, including but not limited to further and continued intentional and malicious sexual assault, molestation, battery, and abuse.

35

236.    At all times material hereto, Abuser acted with reckless disregard for the safety and well-being of Plaintiff.

237.    At all times material hereto, Abuser acted willfully, wantonly, maliciously, and recklessly.

238.    At all times material hereto, Abuser was under the direct supervision, employ and/or control of the Defendants.

239.    By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, together with interest and costs.

## FIFTH CAUSE OF ACTION: BATTERY
### (against MICHAEL J. KOLODZIEJ)

240.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

241.    By the acts of Abuser described hereinabove, Abuser intentionally and maliciously sexually assaulted, battered, molested, abused, and otherwise injured Plaintiff.

242.    The offensive and harmful contact of Abuser as alleged herein was performed by Abuser without the consent of Plaintiff.

243.    At all times material hereto, Abuser acted with reckless disregard for the safety and wellbeing of Plaintiff.

244.    At all times material hereto, Abuser acted willfully, wantonly, maliciously, and recklessly.

245.    At all times material hereto, Abuser was under the direct supervision, employ, or control of the Defendants.

246.    As a direct result of said conduct, Plaintiff has suffered the injuries and damages described herein.

36

247.    By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, together with interest and costs.

### SIXTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against MICHAEL J. KOLODZIEJ)

248.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

249.    At all times material hereto, Abuser molested Plaintiff, which Abuser knew would cause, or disregarded the substantial probability that it would cause, severe emotional distress while the Defendants employed Abuser as Plaintiff's custodian, temporary guardian, chaperone, supervisor, teacher, mentor, or counselor.

250.    At all times material hereto, it was part of Abuser's job to gain Plaintiff's trust.

251.    Abuser used his position, and the representations made by the Defendants about his character that accompanied that position, to gain Plaintiff's trust and confidence and to create opportunities to violate Plaintiff.

252.    Plaintiff suffered severe emotional distress, including psychological and emotional injury as described above.

253.    This distress was caused by Abuser's sexual abuse of Plaintiff.

254.    The sexual abuse of Plaintiff was extreme and outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized community.

255.    By reason of the foregoing sexual contact, Plaintiff has suffered harms as more fully alleged herein, including emotional trauma and related continuing psychological sequelae.

256.    By reason of the foregoing, Defendant is liable to Plaintiff for compensatory damages and punitive damages, together with interest and costs.

37

**WHEREFORE,** it is respectfully requested that the Court grant judgment in this action in favor of Plaintiff, and against Defendants, jointly and severally, in a sum of money exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with all applicable interest, costs, disbursements, as well as punitive damages and such other, further, and different relief as the Court in its discretion shall deem to be just, proper and equitable.

Plaintiff further places Defendants on notice and reserves the right to interpose claims sounding in Fraudulent Concealment, Deceptive Practices, or Civil Conspiracy should the facts and discovery materials support such claims.

Dated: New York, New York
        August 2, 2021

Yours, etc.,

By: Adam P. Slater, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

Linc C. Leder, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

### ATTORNEY'S VERIFICATION

Adam P. Slater, an attorney duly admitted to practice law in the Courts of the State of New York, hereby affirms the following statements to be true under the penalties of perjury, pursuant to Rule 2106 of the CPLR:

Affirmant is a partner of SLATER SLATER SCHULMAN, LLP, attorneys for the Plaintiff in the within action;

Affirmant has read the foregoing Summons & Complaint and knows the contents thereof; that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters he believes it to be true.

Affirmant further states that the source of his information and the grounds for his belief are derived from interviews with the Plaintiff and from the file maintained in the normal course of business.

Affirmant further states that the reason this verification is not made by the Plaintiff is that the Plaintiff is not presently within the County of New York, which is the county wherein the attorneys for the Plaintiff herein maintain their offices.

Dated: New York, New York
   August 2, 2021

_Adam P. Slater_
Adam P. Slater, Esq.

39

SUPREME COURT OF THE STATE NEW YORK
COUNTY OF ERIE

--------------------------------------------------------------X

GREGG PACILLO,

Index No.

                 Plaintiff,

     -against-

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA PROVINCE,
FRANCISCAN FATHERS MINOR CONVENTUAL,
FRANCISCAN FRIARS- OUR LADY OF THE
ANGELS PROVINCE, INC., and MICHAEL J.
KOLODZIEJ,

                 Defendants.

--------------------------------------------------------------X

## SUMMONS & VERIFIED COMPLAINT

Slater Slater Schulman LLP
*Attorneys for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

### CERTIFICATION

    Pursuant to 22 NYCRR §130-1.1-a, the undersigned, an attorney duly admitted to practice in the courts of the State of New York, certifies that, upon information and belief, and reasonable inquiry, the contentions contained in the annexed document are not frivolous as defined in subsection (c) of the aforesaid section.

Adam P. Slater, Esq.

Linc C. Leder, Esq.