UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF BUFFALO, NY,

                    Debtor.

Case No. 20-10322 (CLB)

Chapter 11

# US FIRE AND PEIC'S REPLY IN SUPPORT OF THEIR STANDING TO BE HEARD ON MOTIONS TO DISALLOW PROOFS OF CLAIM

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com
        ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone: (973) 210-6700
Email: marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF RELEVANT FACTS .................................................................................... 2

      The Committee objected to the Insurers' standing ................................................ 2

      The Insurers issued policies to the Diocese for years when alleged abuse occurred ................................................................................................................. 3

      US Fire/PEIC are paying real costs to associate in the defense of claims alleging abuse during their policy periods ................................................... 3

      The Diocese and Committee represented the Insurers have financial responsibility .................................................................................................... 4

      The relevant Claims are invalid and must be disallowed as a matter of law ......... 5

ARGUMENT .................................................................................................................................. 5

    A.    The Committee Ignores the Significant Impact of *Kaiser* and its Holding ........... 5

    B.    The Committee Ignores that Supreme Court Rebuffed the "Issue-by-Issue" Evaluation for Insurer Standing ................................................................................ 6

    C.    Allowance of Proofs of Claim Lacking Merit Can Alter and Impose Obligations on Insurers ............................................................................................. 7

    D.    Article III and Party-in-Interest Standing "are Effectively Coextensive" in Tort Driven Bankruptcies, Not Two Separate Requirements as the Committee Contends ................................................................................................. 9

    E.    The Committee's Prudential Standing Concerns are Superseded Where Congress has Expressly Conferred Standing by Statute ........................................ 9

    F.    *Kaiser* Conferred Broad Standing to Insurers Including to Object to Claims ................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
 321 B.R. 147 (D.N.J. 2005) ............................................................................................... 13

*Bennett v. Spear*,
 520 U.S. 154 (1997) ........................................................................................................... 11

*Gen. Instrument Corp. of Del. V. Nu-Tek Elecs. & Mfg.*,
 197 F.3d 83 (3d Cir. 1999) ................................................................................................. 11

*In re AIO US, Inc., et al.*,
 Case No. 24-11836-CTG (D. Del. Bankr. June 6, 2025) ..................................................... 2

*In re Amatex Corp.*,
 755 F.2d 1034 (3d Cir. 1985) ............................................................................................. 12

*In re Boy Scouts of Am.*,
 35 F.4th 149 (3d Cir. 2022) ................................................................................................ 12

*In re Congoleum*,
 2005 WL 712540 (D.N.J. Mar. 24, 2005) .......................................................................... 13

*In re Congoleum*,
 414 B.R. 44 (D.N.J 2009) ................................................................................................... 14

*In re Congoleum*,
 426 F.3d 675 (3d Cir. 2005) ............................................................................................... 11

*In re Congoleum*,
 426 F.3d 685 (3d Cir. 2005) ............................................................................................... 13

*In re Global Indus. Technologies, Inc.*,
 645 F.3d 201 (3d Cir. 2011) ............................................................................... 1, 9, 10, 12

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
 602 U.S. 268 (2024) ..................................................................................................... passim

*United Food & Com. Workers Union v. Brown Grp., Inc.*,
 517 U.S. 544 (1996) ........................................................................................................... 11

**Statutes**

11 U.S.C. § 1109(b) ..................................................................................................................... 1

U.S. Fire Insurance Company and Pacific Employers Insurance Company ("US Fire" and "PEIC", respectively), by and through their counsel, hereby file this reply in response to the Committee's objection to their standing (Dkt. No. 4292) (the "Committee's Response"). In support of this reply, the Insurers set forth as follows:

**PRELIMINARY STATEMENT**

1. The Committee's narrow interpretation of *Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024) ("Kaiser")—that it only addressed party-in-interest portion of the bankruptcy standing analysis—is wrong. *Kaiser*'s holding is unambiguous: in *Kaiser*, the Supreme Court settled that "[a]n insurer with financial responsibility for a bankruptcy claim is . . . a 'party in interest'" under 11 U.S.C. § 1109(b), and Rule 3007 of the Federal ants parties-in-interest the right "to 'appear and be heard on any issue' in a Chapter 11 proceeding." 602 U.S. at 272, 277.

2. The Committee misstates the significant impact of *Kaiser* and is simply wrong about the holding. Insurers certainly satisfy Article III standing and prudential standing, in addition to Section 1109(b) party-in-interest standing that has been confirmed under *Kaiser*. In reaching its holding, the Supreme Court quoted the Third Circuit's rationale for conferring insurer standing—noting that where a proposed plan "allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed." *In re Global Indus. Technologies, Inc*. 645 F.3d 201, 204 (3rd Cir. 2011).

3. Earlier this year, the Third Circuit relied on *Kaiser* to hold that appellant insurers established a likelihood of success as parties in interest in their motion to stay pending appeal of the plan confirmation order in *In re The Diocese of Camden, New Jersey*. *See* Case No. 24-2065

(3d Cir. Jan. 2, 2025) [ECF 57], at 2.  Even more recently, Judge Craig Goldblatt issued an opinion in a case before the U.S. Bankruptcy Court for the District of Delaware, finding insurers had established party-in-interest standing under Section 1109(b) to be heard on objections to proposed solicitation procedures.  *See In re AIO US, Inc., et al.*, Case No. 24-11836-CTG, ECF 1125 (D. Del. Bankr. June 6, 2025).  The opinion highlights the extent to which *Kaiser* has reshaped the legal landscape on standing in Chapter 11 bankruptcy proceedings.

4. As Judge Goldblatt explained, *Kaiser* has "abrogated the concept of 'prudential standing'" or the idea that a court has the discretion to determine whether the party should be heard, and now "'[p]rudential standing' is no longer a thing." *Id.* at 16-18.

5. US Fire and PEIC have a concrete and personal financial stake in whether the claims at issue are allowed or disallowed.  In moving to lift the stay, the Committee represented that US Fire and PEIC's excess policies cover claims for which stay relief was sought that allege abuse during their policy periods.  US Fire and PEIC associated counsel into the defense and have incurred, and are incurring, costs associated with cases for which stay relief has been granted.

6. The fact that US Fire and PEIC have incurred, and are incurring, expenses associated with the defense of these claims and the Committee contends that they face potential liability if there is a verdict and determination of coverage gives them standing to object to these claims under *Kaiser*.

7. The Committee's objection to standing should be overruled and the Motions to Disallow granted.

## STATEMENT OF RELEVANT FACTS

### *The Committee objected to the Insurers' standing*

8. The Committee objected to US Fire and PEIC's standing to be heard with respect

2
Case 1-20-10322-CLB,    Doc 4303,    Filed 10/29/25,    Entered 10/29/25 02:07:48,    Description: Main Document  , Page 5 of 20

to the 8 proofs of claim that are the subject of the Motions to Disallow. In the Committee's Response at ¶ 57, it argues that US Fire and PEIC do not have standing to object to claims under *Kaiser* asserting (wrongly) that the decision has very narrow application.[1]

9. On October 1, 2025, the Committee asked the Court to decline to consider US Fire and PEIC's motion to seal its Motion to Disallow, objecting that insurers lack standing to object to proofs of claims. *See* Haberkorn Declaration, Exh. 1 (attaching the email from Committee's counsel to the Court); Committee's Response, at ¶ 57. The Court declined to address the issue at that time and directed that any standing objection should be raised in response to the Motions to Disallow.

### *The Insurers issued policies to the Diocese for years when alleged abuse occurred*

10. The Diocese contends that US Fire and PEIC both issued excess policies to the Diocese.[2] Each of the 8 proofs of claim that are the subject of the Motions to Disallow allege abuse in one or both policy periods, July 1, 1978, through July 1, 1979, and/or July 1, 1981 through July 1, 1982.[3]

### *US Fire/PEIC are paying real costs to associate in the defense of claims alleging abuse during their policy periods*

11. US Fire and PEIC are associated into the defense having notified the Diocese that

---

[1] In doing so they cite just two exemplar cases to support their interpretation of *Kaiser*, *In re Roman Cath. Diocese of* Albany, No. 23-10244, 2025 Bankr. LEXIS 2185 (Bankr. N.D.N.Y. Sept. 3, 2025); *In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866 (Bankr. N.D.N.Y. 2024). *See* Committee's Response, at ¶ 57.

[2] *See* Declaration of James R. Murray, *The Diocese of Buffalo, N.Y. v. JMH 100 Doe, et al.*, Adv. Proc. 20-01016-CLB, Doc. No. 290 (Bankr. W.D.N.Y. Oct. 23, 2023), ¶¶ 8, 10, Exh. A (stating that "from July 1, 1978 to July 1, 1979, the Diocese purchased excess coverage from U.S. Fire Insurance Company" and "[f]rom July 1, 1981 to July 1, 1982, the Diocese purchased an excess policy from Pacific Employers Insurance Company," listed with policy numbers 523 017914 4 and XMO007350, respectively, on the coverage chart attached as Exhibit A for those time periods).

[3] *Id.*

they "exercise their right to associate in the defense of the Lawsuits" for which the stay was lifted that allege abuse in their policy periods.[4] *See* Oct. 1 Haberkorn Declaration, ¶ 3. Associated defense counsel is appointed, working and billing on these cases. These are real and continuing costs in the defense of claims.

### The Diocese and Committee represented the Insurers have financial responsibility

12. In the insurance coverage adversary proceeding, the Diocese represented and demanded declaratory relief that all of its insurer have financial responsibility.[5] The Diocese alleges that its insurers, pursuant to the terms of their policies, owe defense costs and indemnity for the underlying CVA actions.[6]

13. The Committee represented that the Diocese's insurers have financial responsibility for the defense costs associated with claims alleging abuse from 1973 and later. *See Joinder and Memorandum of Law in Support of Motions for Relief from the Automatic Stay* (Dkt. No. 3161), at ¶¶ 27-28.

14. The Committee's assertion that US Fire and PEIC do not face financial risk is also completely at odds with the Committee's representations that the 17 claims chosen for stay relief would be covered and insurers financial responsible for these claims. *See id.*

---

[4] US Fire and PEIC sent a letter to the Diocese on August 18, 2025, notifying the Diocese that the Insurers "exercise their right to associate in the defense of the Lawsuits" for which the stay was lifted and implicate the Insurers' excess policy periods. *See* Oct. 1 Haberkorn Declaration, ¶ 3. Such association is a real expense in the pursuit of defending claims against the Diocese.

[5] *See* Complaint, *All Saints Roman Catholic Church Society of Buffalo, et al. v. 21st Century Premier Insurance Company, et al.*, Adv. Proc. 21-01001-CLB, Doc. No. 1, at ¶¶ 358, 398, 404 (Bankr. W.D.N.Y. Jan. 19, 2021) (naming US Fire in the coverage adversary proceeding seeking both a declaratory judgment that the Insurers are obligated to indemnify the Parishes and/or the Diocese for all sums the Parishes and/or Diocese become obligated to pay through judgment, settlement, or otherwise, as well as damages for defense costs related to such settlements and/or judgments in the Underlying Actions and Claims).

[6] *See id.*

*The relevant Claims are invalid and must be*
*disallowed as a matter of law*

15. None of the claimants named in their complaints the Diocese of Buffalo as a defendant, rather they each name the Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. ("<u>Franciscan Friars</u>") and St. Francis High School of Athol Springs, N.Y. ("<u>St. Francis High School</u>").

16. US Fire and PEIC motions to disallow the 8 claims are based on the straightforward legal principle that an actor must owe a duty to be held liable for negligence. Specifically, all of the objections assert that the Diocese is not liable for these claims because the alleged perpetrator was a member of the Franciscan Friars, a separate religious order over which the Diocese exercised no control and/or served in St. Francis High School, a school that the Diocese did not own, manage, or supervise. Because these claims allege abuse by perpetrators who were not subject to the Diocese's supervision or control, the Diocese cannot be liable to the claimants under any theory of negligence or *respondeat superior*, as a matter of law.

17. US Fire and PEIC seek disallowance to avoid being held financially responsible for facially invalid claims.

## ARGUMENT

**A. The Committee Ignores the Significant Impact of *Kaiser* and its Holding**

18. The Committee suggests that the *Kaiser* opinion has no impact. But *Kaiser* made the basis for standing clear: insurers in bankruptcy cases "***stand alone in carrying the financial burden***," while "Debtors nor the Claimants have an incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 282 (emphasis added). The Supreme Court expressly held that "Insurers . . . with financial responsibility for bankruptcy claims are parties in

interest," and as such, Section 1109(b) grants them "a voice in the proceedings" to "appear and be heard on any issue" in the bankruptcy. 602 U.S. at 281, 277.

19. The bankruptcy plan in *Kaiser* was recognized as "insurance neutral[]," meaning the parties acknowledged (at least on paper) that insurers' rights were fully preserved. 602 U.S. at 283–84. The insurance neutrality doctrine was rooted in case law relating to the "prudential" standing requirements.[7] Pre-*Kaiser*, the insurance neutrality doctrine aimed to answer the question of "whether and how the particular proposed Plan affects [an insurer's] prepetition and post-petition obligations and exposure." 602 U.S. at 284.

20. But *Kaiser* changed how these requirements apply. Despite the insurance neutrality finding, the Supreme Court unanimously held that the insurer still had standing to object because the plan adversely impacted "insurers with financial responsibility for bankruptcy claims." *Id.*

## B. The Committee Ignores that Supreme Court Rebuffed the "Issue-by-Issue" Evaluation for Insurer Standing

21. In *Kaiser*, as here, the insurers defended under a reservation of rights and there was not a determination of coverage for claims for which liability had yet been found, nor could there be. *See id.* at 274-75.

22. The Court characterized the "insurance neutrality" approach as "conceptually wrong." *Id.* at 283. For the Supreme Court, "the insurance neutrality doctrine is too limited in its scope" because "[i]t zooms in on the insurer's prepetition obligations and policy rights." *Id*.

---

[7] *See In re BSA*, 642 B.R. 504, 667 (Bankr. D. Del. 2022) ("Debtors are correct that 'insurance neutrality' is a standing concept that appears to have arisen in the context of mass tort cases in order to prevent insurance companies from objecting to confirmation."); *In re Diocese of Camden*, 2022 Bankr. LEXIS 2244, at *12 (Bankr. D.N.J. Aug. 12, 2022) (finding, pre-*Kaiser*, that "because **standing is 'evaluated on an issue-by-issue basis**,' the Insurers have standing to raise issues as to the Plan only to the extent it affects their rights and obligations, and lack standing to object to confirmation as to issues that affect only third parties") (internal citations omitted) (emphasis added).

That approach the Court found "wrongly ignores all the other ways in which bankruptcy proceedings and reorganization plans can alter and impose obligations on insurers." *Id*.

23. The Supreme Court focused instead on the "capacious" text of Section 1109(b) itself. The Court noted that Section 1109(b) is unambiguous and was aimed to create an "expansive definition" that would bring "a broad range of individual and minority interests" into Chapter 11 proceeding cases to prevent "dominant interests to control the restructuring process." *Id.* at 280 (quoting D. Dick, *The Chapter 11 Efficiency Fallacy*, 2013 B.Y.U. L. REV. 759, 774-75 (2014)); *see also id.* 280-81 ("In short, § 1109(b) was 'designed to serve ... the policies of inclusion underlying the chapter 11 process.'" (quoting 7 Collier on Bankruptcy ¶1109.02)).

24. The Supreme Court resolved in *Kaiser* that Section 1109(b) is not dependent on "a plan-specific rule," which is essentially what "prudential standing" limitations were designed to address. The Court held that the proper inquiry into whether an insurer can "appear and be heard on any issue" is focused on whether an insurer's rights could ***potentially*** be impacted as a result of the bankruptcy case—not how a particular plan actually treated the insurer. 602 U.S. at 272 ("Section 1109(b) asks whether the reorganization proceedings ***might*** directly affect a prospective party, not how a particular reorganization plan actually affects that party.").

25. The Court made the analysis for determining standing clearer for those insurers who "stand alone in carrying the financial burden" while "Debtors nor the Claimants have an incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 282.

C. **Allowance of Proofs of Claim Lacking Merit Can Alter and Impose Obligations on Insurers**

26. The Supreme Court recognized that a plan could impact insurers in multiple ways—it "can impair an insurer's contractual right to control settlement or defend claims," "abrogate an insurer's right to contribution from other insurance carriers," "violat[e] ... the

debtor's duty to cooperate and assist," or "impair the insurer's financial interests by inviting fraudulent claims." *Id.* at 281. In particular, the Supreme Court noted that "[w]here a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed.'" *Id.* at 282 (quoting *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 204 (3d Cir. 2011)). Thus, it held that that "Insurers such as Truck with financial responsibility for claims" are parties in interest under Section 1109(b) and are entitled to "a voice in bankruptcy proceedings." 602 U.S. at 284-85.

27. In the briefings before the Supreme Court in *Kaiser*, the Respondents argued that insurers must meet issue-by-issue Article III/injury-in-fact standing requirements, as well as prudential standing to object to a plan's confirmation.[8] The Supreme Court nonetheless dispelled any risk of insurer-litigants raising another person's legal rights, *i.e.*, the primary concern for prudential standing under case law. The Court noted the argument that there may be a "parade of horribles" in allowing "peripheral parties" with interest in the proceedings to derail a reorganization. *Truck,* 602 U.S. at 284. The Court found that such concern of "peripheral parties" is not present for the insurers like Truck, who have a significant financial stak*e* in the proceedings and is essentially *the only party with any incentive to question any improper plan provisions* that may impact them directly. *Id*. at 284.

28. The only support the Committee cites to the contrary are two bankruptcy court decisions that have yet to be reviewed by the district court or the Second Circuit (or any Article III courts). *In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866 (Bankr. N.D.N.Y. 2024); *In re*

---

[8] *See, e.g*., Brief for Debtor-Side Respondents, 2024 WL 328749, at *44 (Jan. 24, 2024); Brief for Respondents Official Committee of Asbestos Personal Injury Claimants and Future Claimants' Representative, 2024 WL 328747, at *35-39 (Jan. 24, 2024); *see also* Briefs in Opposition on Petition for a Writ of Certiorari, 2023 WL 5822579, at *17-20 (Sep. 5, 2023) and 2023 WL 5822576, at *18-20 (Sep. 5, 2023).

*Roman Cath. Diocese of Albany*, No. 23-10244, 2025 Bankr. LEXIS 2185 (Bankr. N.D.N.Y. 2025).

D.  **Article III and Party-in-Interest Standing "are Effectively Coextensive" in Tort Driven Bankruptcies, Not Two Separate Requirements as the Committee Contends**

29. As the Third Circuit Court held in *In re Global Indus.,* Article III and party-in-interest standing "are effectively coextensive," and thus satisfying party-in-interest status means that Article III "injury in fact" has been met. 645 F.3d at 210–11 (stating that "injury-in-fact requirement ... [is] very generous" and is met with an "identifiable trifle of injury" or when a party has "a personal stake in the outcome of [the] litigation").

30. An insurer has shown "injury in fact" if the plan or other action potentially may impair its contractual rights or monetary interests. Claims allowance and valuation procedures adversely impact insurers by subjecting them to inflated liability for claims, which imposes an "entirely new set of administrative costs, including the investigative burden of finding any meritorious suits in the haystack of potentially fraudulent ones." *In re Glob. Indus.,* 645 F.3d at 214. As the Third Circuit found in *In re Glob. Indus.,* the ancillary financial burden "will be enormous, even if [Insurers] never pay a single dollar of indemnity," and the injury is "hardly too speculative" to afford party in interest status. *Id.* The Insurers will face these high financial burdens if they are not permitted to address invalid claims in this Bankruptcy Court.

31. The Supreme Court in *Kaiser* recognized the various forms of impairments that insurers suffer in almost every tort driven bankruptcy to grant them party-in-interest status. *See* 602 U.S. at 281. The Court found that the financial impact a bankruptcy proceeding has upon insurers is more than enough to confer Article III standing.

E.  **The Committee's Prudential Standing Concerns are Superseded Where Congress has Expressly Conferred Standing by Statute**

32. By any measure, prudential standing concerns are met because, under *Kaiser*,

9
Case 1-20-10322-CLB, Doc 4303, Filed 10/29/25, Entered 10/29/25 02:07:48, Description: Main Document , Page 12 of 20

insurers have party-in-interest standing under Section 1109(b). By its terms, Section 1109(b) specifies that any "party in interest" in a Chapter 11 case "may raise and may appear and be heard on *any issue*." And where, as here, "Congress has expressly conferred standing by statute, prudential standing concerns are superseded."[9]

33. In any event, prudential standing is met for the same reasons insurers have satisfied the Section 1109(b) standard. Like in *Kaiser*, insurers carry a significant financial burden for the claims and have a practical stake in whether meritless claims are allowed, whereas neither the "Debtor[] nor the Claimants have incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 282.

34. The lack of incentive (other than from insurers) to challenge inflated costs, awards, or meritless claims in general is telling why standing is appropriate. Because "no one [else] has an incentive to pursue" a challenge to claims lacking merit "other than the insurers slated to provide coverage," *Global Indus. Techs.*, 645 F.3d at 214, the insurers have a practical stake and are directly impacted. *In re Congoleum*, 426 F.3d 675, 687 (3d Cir. 2005) (finding insurer standing appropriate where "as a practical matter ... it is highly unlikely that any of the parties other than the insurers or their attorneys" would bring challenge).

35. Any suggestion that "Insurers are not 'persons aggrieved' to whom appellate standing extends" also falls aside in the face of *Kaiser* and Third Circuit precedent. *Global Indus.*, 645 F.3d at 214. The Third Circuit has explained that "person aggrieved" appellate standing is "standing to appeal the *substance* of the bankruptcy court's decision"—which is

---

[9] *Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg.*, 197 F.3d 83, 87 (3d Cir. 1999); *see also Bennett v. Spear*, 520 U.S. 154, 164–66 (1997) (statute that authorized "any person" to commence suit rendered irrelevant any inquiry into whether the plaintiff came within the "zone of interests" protected by the statute); *United Food & Com. Workers Union v. Brown Grp., Inc.*, 517 U.S. 544, 557–58 (1996) (stating that prudential standing "is a judicially self-imposed limit ... not a constitutional mandate," and thus, Congress may "abrogate" it).

"distinct from standing to appeal the bankruptcy court's decision regarding bankruptcy standing." *Id.* at 209. Even "in the bankruptcy context," the court "resolv[es] bankruptcy standing issues on appeal without reaching the question of bankruptcy appellate standing." *Id.* at 209-10, n.23; *see also In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985) (addressing *inter alia* a would-be intervenor's "party-in-interest" standing without reaching the question of whether he had bankruptcy appellate standing). Thus, when insurers are denied standing to "sue, or to intervene, or to object," they "may obviously appeal such a determination." *Id.*

36. Insurers who satisfy standing under *Kaiser* clearly meet the persons aggrieved standard. *See, e.g., In re Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022) (Appellants are "persons aggrieved" if they can show that the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights."). Not only are their contractual rights diminished by allowance of non-meritorious claims, but also, as the Supreme Court recognized in *Kaiser*, a plan can "impair the insurer's financial interests by inviting fraudulent claims," while the insurers "stand alone in carrying the financial burden" and "Debtors nor the Claimants have [any] incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 281–82.

37. With insurers' practical stake in the bankruptcy proceedings, courts have also conferred insurers broad party-in-interest standing (akin to the *Kaiser* decision) to uphold the integrity or fairness of the proceedings as a whole.

38. For example, in *In re Congoleum*, the court held that insurers have parties in interest standing to challenge the *general fairness* of the plan under Section 1129(a), as they "have practical stake in the fundamental fairness of the [p]lan as a whole," including "interrelated issues of good faith, classification, § 524(g), and feasibility." 2005 WL 712540, at

*4 (D.N.J. Mar. 24, 2005).

39. Similarly, the Third Circuit extended insurers' standing to even challenge a debtor's choice of insurance counsel to preserve the integrity of the proceedings that impacts the insurers. *See In re Congoleum*, 426 F.3d at 685-687 (3d Cir. 2005) (granting insurers standing to challenge retention of debtor's insurance counsel as "an issue based on procedural due process concerns that implicate the integrity of the bankruptcy court proceeding as a whole"); *see also Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 159 n.1 (D.N.J. 2005) (confirming that insurers who are parties in interest can raise "all issues pertinent to plan confirmation"). And in fact in *In re Congoleum Corp.*, having dealt with challenges to insurers' standing to object to a plan multiple times, the court upheld insurers' rights and stated that "[t]his is the seventh time a court . . . has found that the insurers have standing to challenge the Plan due to **their fundamental stake** in the outcome of the bankruptcy proceedings." 414 B.R. 44, 55–57 (D.N.J. 2009) (emphasis added). Thus, the *Kaiser* decision essentially follows a long line of courts conferring insurers' standing in mass tort bankruptcy proceedings.

F. *Kaiser* Conferred Broad Standing to Insurers Including to Object to Claims

40. The Supreme Court addressed head-on the "prudential" standing in tort driven bankruptcy cases and emphatically rejected it as a barrier to insurer participation.[10] In *Kaiser*, the Court unanimously rejected the "insurance neutrality" doctrine, the prudential limitation that lower courts have used to prevent any consideration of insurers' objections on the. Instead, the Court relied on the "capacious" language of Bankruptcy Code and conferred insurers broad and

---

[10] *See* Casazza, Kiernan & Bennett, *The Future of Prudential Barriers in Bankruptcy Appeals Post-'Kaiser Gypsum'*, NAT'L L.J. (Aug. 14, 2024) (noting that in rejecting the insurance-neutrality doctrine, the Supreme Court's decision in *Kaiser* casts doubt on other prudential barriers to bankruptcy appeals, such as equitable mootness and restrictive appellate standing, a textual doctrines which may soon be curtailed or abolished).

greater participation in reorganization proceedings because such insurers bare the financial responsibility for bankruptcy claims. This holding ensures that insurers like Truck, who have long been silenced in chapter 11 proceedings, will now have a "voice" to be heard in these proceedings on the merits. This also ensures that the Insurers have standing to be heard on the allowance of claims.

**WHEREFORE,** based upon the foregoing, US Fire and PEIC respectfully request that the Court overrule the Committee's objections to the Insurers' standing to bring their Motions to Disallow claims.

Dated: October 29, 2025

Respectfully submitted,

By: */s/ Adam Haberkorn*

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com
        ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone: (973) 210-6700
Email: marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company*

```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
```
                                              )
In re:                                        )
                                              )   Case No. 20-10322 (CLB)
THE DIOCESE OF BUFFALO, NY,                   )
                                              )   Chapter 11
                          Debtor.             )
                                              )
                                              )

## DECLARATION OF ADAM P. HABERKORN IN SUPPORT OF INSURERS' REPLY IN SUPPORT OF THEIR STANDING TO BE HEARD ON MOTIONS TO DISALLOW PROOFS OF CLAIM

I, Adam P. Haberkorn, pursuant to pursuant to 28 U.S.C. § 1746(2), under penalty of perjury, hereby declare as follows:

1. I am a counsel at the firm O'Melveny & Myers LLP, attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company (collectively, the "Insurers"). I am a member in good standing of the Bar of the State of New York, and am admitted to practice in the United States District Courts for the Northern, Western, Southern and Eastern Districts of New York.

2. I submit this declaration in support of the US Fire and PEIC's Reply in Support of Their Standing to be Heard on Motions to Disallow Proofs of Claim, filed in the above-captioned bankruptcy case. I also submit this declaration based on my personal knowledge of the proceedings in the above-captioned bankruptcy case, and my review of the documents described below.

3. Attached hereto as **Exhibit 1** is a true and correct copy of an email from Ilan Scharf, counsel to the Official Committee of Unsecured Creditors, to the Court regarding the Insurers' standing to litigate claims objections.

I declare under penalty of perjury that the foregoing is true and correct and to the best of my knowledge and belief.

*[Remainder of page intentionally left blank.]*

Dated: October 29, 2025

By: /s/ Adam P. Haberkorn

ADAM P. HABERKORN
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 326-2000
Email: ahaberkorn@omm.com

*Attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company*

# EXHIBIT 1

**Haberkorn, Adam P.**

| | |
|---|---|
| **From:** | Ilan D. Scharf <ischarf@pszjlaw.com> |
| **Sent:** | Wednesday, October 1, 2025 11:19 AM |
| **To:** | Barbara Ridall |
| **Cc:** | Schiavoni, Tancred; Stephen A. Donato; Grayson T. Walter; csullivan@bsk.com; Haberkorn, Adam P.; Karen B. Dine |
| **Subject:** | Diocese of Buffalo-US Fire Ex Parte Motion |
| **Importance:** | High |

Ms. Ridall,

We write with respect to the Ex Parte Motion of US Fire and PEIC for Order Authorizing Insurers to Provisionally File Documents Under Seal [Docket No. 4214] filed in In re The Diocese of Buffalo, NY (Case No, 20-10322). The Committee respectfully requests that the Court decline to grant the motion ex parte and schedule a hearing on the matter. As a threshold matter, we believe that the Court must address the issue of whether US Fire and PEIC have standing to file and litigate claims objections. In a recent decision in the Diocese of Albany case, Judge Littlefield held that insurers did not have standing to object to abuse claims. Given the importance of the standing issue, we respectfully request that the Court schedule a hearing on the Motion to seal, so that the parties can litigate issues relating to that motion, including standing. Moreover, there is no crisis or emergency that requires the Motion to Seal be heard on an ex parte basis.

Counsel for the Diocese and US Fire/PEIC are copied on this email.

Respectfully,

Ilan Scharf

Ilan D. Scharf
Pachulski Stang Ziehl & Jones LLP
1700 Broadway, 36th Floor
New York, NY 10019
P. 212-561-7700