**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

<table>
<tr><td>In re:</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Case No. 20-10322 (CLB)</td></tr>
<tr><td>THE DIOCESE OF BUFFALO, NY,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Chapter 11</td></tr>
<tr><td>Debtor.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## NOTICE OF OBJECTION TO ALLOWANCE OF
## SEXUAL ABUSE PROOF OF CLAIM NO. 111

**PLEASE TAKE NOTICE**, that for U.S. Fire Insurance Company and Pacific Employers Insurance Company (collectively, the "Insurers"), by and through their counsel, filed the *Objection to Proof of Claim No. 111*, seeking an Order, pursuant to 11 U.S.C. § 502(a) and (b) and Rule 3007 of the Federal Rules of Bankruptcy Procedure: (i) disallowing and expunging Sexual Abuse Proof of Claim No. 111 in its entirety; and (ii) granting such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE**, that the hearing to consider the Objection and any responses thereto will be held on October 30, 2025, at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel may appear and be heard, before the Honorable Carl L. Bucki, Chief United States Bankruptcy Judge for the Western District of New York, or such other judge as may be sitting in his stead, in the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, New York 14202.

**PLEASE TAKE FURTHER NOTICE**, that parties can choose to appear either (i) in person at the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, New York or (ii) telephonically (call in 1-517-353-2301, Courtroom ID 483077448#, and security pin 9999#).

**PLEASE TAKE FURTHER NOTICE**, that any responses to the Objection must conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the

Western District of New York and be filed with the Court and served in accordance with Local

Rule 9013-1 upon the following parties: (i) counsel to the Insurers, O'Melveny & Myers LLP,

1301 Avenue of the Americas, Suite 1700, New York, NY 10019, Attn: Tancred Schiavoni, Esq.

and Adam Haberkorn, Esq.; (ii) counsel to the Diocese, Bond, Schoeneck & King, PLLC, One

Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq., and Grayson T.

Walter, Esq., (iii) the Office of the United States Trustee for the Western District of New York,

300 Pearl Street, Suite 401, Buffalo, NY 14202, Attn: Joseph W. Allen, Esq., (iv) counsel to the

Official Committee of Unsecured Creditors, Pachulski, Stang, Ziehl & Jones, LLP, 780 Third

Avenue, 34th Floor, New York, New York, 10017-2024, Attn. Ilan Scharf, Esq. and James

Stang, and (v) those persons who have formally appeared and requested service in this case

pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

**PLEASE TAKE FURTHER NOTICE**, that copies of the Objection and all other

documents filed in the Diocese's chapter 11 case may be obtained free of charge via the case

management website maintained by the Diocese's notice agent at

https://case.stretto.com/dioceseofbuffalo or by contacting the undersigned counsel for the

Insurers.

Dated:  September 30, 2025

Respectfully submitted,

By: /s/ Adam Haberkorn

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
          ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone:    (973) 210-6700
Email: marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| THE DIOCESE OF BUFFALO, NY, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

## INSURERS' OBJECTION TO PROOF OF CLAIM NO. 111
## AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
            ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone:    (973) 210-6700
Email: marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company*
*and Pacific Employers Insurance Company*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

       The allegations of the POC ................................................................ 3

       Claimant names the Franciscan Friars and St. Francis High School as responsible in his separate state court complaint ....................................... 4

       The Diocese objected to this claim on the exact same basis (Dkt. No. 3581) ....... 5

       St. Francis High School was founded, incorporated, owned, and managed entirely by the Franciscan Friars, a religious order wholly separate from the Diocese ................................................................................ 6

       The New York Department of State and Erie County corroborate the Suchan Declaration ........................................................................................ 7

       Clearing out proofs of claim not properly asserted against the Diocese............... 8

       It will further inflame the objecting parishes if they are charged with paying claims that are not legally viable ............................................................ 9

RELIEF REQUESTED ....................................................................................... 10

JURISDICTION ............................................................................................... 10

ARGUMENT ................................................................................................... 11

    A.    If a single essential allegation in a claim is refuted, the burden of proof shifts to the claimant to establishing the validity of the claim............................. 11

    B.    The Diocese did not owe Claimant a legal duty of care and because there is no such duty, it cannot be held liable for the alleged abuse............................ 16

    C.    Claimant is not entitled to discovery before the Court determines whether they have adequately stated a claim against the Diocese.................................... 24

    D.    Insurers have standing to object under Section 502(a) ....................................... 25

       Insurers are "Parties in Interest" to this Bankruptcy Case .................................. 25

       Denial of Standing on an Issue on Which the Court has an  Independent Duty to Act will Needlessly Force an Appeal ................................................... 27

       Motion for Stay Pending Appeal if Standing is Denied ...................................... 29

NOTICE AND PROCEDURE ............................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*,
    96 N.Y.2d 280 (2001) ........................................................................................... 18

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ............................................................................... 14

*Ark263 Doe v. Archdiocese of N.Y.*,
    2022 N.Y. Misc. LEXIS 3510 (July 18, 2022) ................................................. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................. 4, 14, 15

*Bautista v. Archdiocese of New York*,
    164 A.D.3d 450 (1st Dep't 2018) ...................................................................... 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007) .................................................................................... 14, 15

*Coyle v. United States*,
    954 F.3d 146 (2d Cir. 2020) ............................................................................... 17

*D'Amico v. Christie*,
    71 N.Y.2d 76 (1987) ........................................................................................... 19

*De Angelis v. Lutheran Medical Ctr.*,
    58 N.Y.2d 1053 (1983) ................................................................................. 18, 19

*Doe v. Roman Cath. Diocese of Rockville Ctr. (In re Roman Cath. Diocese of
    Rockville Ctr.)*,
    2024 U.S. Dist. LEXIS 124499 (S.D.N.Y. July 15, 2024) ........................... 13, 16

*Espinal v. Melville Snow Contractors*,
    98 N.Y.2d 136 (2002) ......................................................................................... 18

*Farrulla v. Happy Care Ambulette Inc.*,
    125 A.D.3d 529 (1st Dep't 2015) ...................................................................... 19

*In re Actos Antitrust Litig.*,
    2020 WL 8996696 (S.D.N.Y. Mar. 9, 2020) .................................................... 31

*In re Black, Davis & Shue Agency, Inc.*,
    460 B.R. 407 (Bankr. M.D. Pa. 2011) .................................................. 11, 27, 28

*In re Country Squire Assocs. of Carle Place, L.P.*,
    203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) ......................................................... 31

*In re Heating Oil Partners*,
    2009 U.S. Dist. LEXIS 117871 (D. Conn. Dec. 17, 2009) ............................... 27

*In re Johnsbury Trucking Co., Inc.*,
    206 B.R. 318 (Bankr. S.D.N.Y. 1997) .............................................................. 12

*In re Megan-Racine Assocs., Inc.*,
    1996 WL 167681 (N.D.N.Y. Apr. 1, 1996)...................................................... 31, 32

*In re Prime Capital Ventures, LLC*,
    2025 WL 73066 (Bankr. N.D.N.Y. Jan. 10, 2025) ................................................ 29

*In re Prime Capital Ventures, LLC*,
    2025 WL 73066 (Bankr. N.D.N.Y. Jan. 10, 2025) ................................................ 31

*In re Reilly*,
    245 B.R. 768 (B.A.P. 2d Cir. 2000)......................................................................... 12

*In re Residential Cap. LLC*,
    531 B.R. 1 (S.D.N.Y. 2015) .................................................................................... 13

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015).................................................................................... 32

*In re Rockefeller Ctr. Props.*,
    272 B.R. 524 (Bankr. S.D.N.Y.2000)...................................................................... 12

*In re Roman Cath. Diocese of Rockville Ctr.*
    2023 WL 6284596 (Bankr. S.D.N.Y. Sep. 26, 2023) ....................................... 3, 25

*In re Roman Cath. Diocese of Rockville Ctr., N.Y.*
    651 B.R. 399 (Bankr. S.D.N.Y. 2023)............................................................. passim

*In re Roman Catholic Diocese of Syracuse*,
    665 B.R. 866 (Bankr. N.D.N.Y. 2024) .................................................................... 29

*In re Standard Insulations, Inc.*,
    138 B.R. 947 (Bankr. W.D. Mo. 1992).................................................................... 27

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007).................................................................................... 31

*K.I. v. New York Cty. Bd. of Educ.*,
    256 A.D.2d 189 (1st Dep't 1998) ........................................................................... 23

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................................ 31

*Palka v. Servicemaster Mgt. Servs. Corp.*,
    83 N.Y.2d 589 (1994) ............................................................................................. 18

*Pratt v. Robinson*,
    39 N.Y.2d 554 (1976) ............................................................................................. 23

*Primavera Familienstifung v. Askin*,
    130 F. Supp.2d 450 (S.D.N.Y. 2001)...................................................................... 12

*Pulka v. Edelman*,
    40 N.Y.2d 781 (1976) ................................................................................. 17, 18, 23

Case 1-20-10322-CLB,    Doc 4304,    Filed 10/29/25,    Entered 10/29/25 11:43:44,
Description: Main Document  , Page 7 of 90

*Purdy v. Public Adm'r of County of Westchester*,
    72 N.Y.2d 1 (1988) ..................................................................................................... 18, 19

*R.D. v. Archdiocese of New York et al.*,
    2021 WL 4307231 (Sup. Ct. Kings Cty. Sep. 22, 2021) ...................................... 20

*SCVAWCR-Doe v. Archdiocese of New York*,
    2024 N.Y. Misc. LEXIS 1549 (Sup. Ct. Westchester County Mar. 27, 2024) ..................... 21

*Sheila C. v. Povich*,
    11 A.D.3d 120 (1st Dep't 2004) ........................................................................... 22

*Solomon ex rel. Solomon v. City of New York*,
    46 N.Y.2d 401 (1978) ............................................................................................ 17

*Springer v. Archdiocese of New York*,
    2021 WL 1054553 (Sup. Ct. New York Cty. Mar. 18, 2021) ............................ 20

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
    602 U.S. 268 (2024) ........................................................................... 27, 28, 29, 30

*Walker v. Archdiocese of New York*,
    270 A.D.2d 127 (1st Dep't 2000) ........................................................................ 20

**Statutes**

11 U.S.C. § 101, *et seq.* ........................................................................................... 10

11 U.S.C. § 1109(b) .................................................................................................. 33

11 U.S.C. § 502 ........................................................................................................ 17

11 U.S.C. § 502(a) ................................................................................................... 10

11 U.S.C. § 502(b)(1) .......................................................................................... 10, 12

11 U.S.C. § 502(b)(1) ............................................................................................... 12

U.S. Fire Insurance Company and Pacific Employers Insurance Company (the "Insurers"), by and through their counsel, hereby object to Sexual Abuse Proof of Claim No. 111 ("POC 111") filed in this chapter 11 case (the "Chapter 11 Case"), and respectfully request the entry of an order disallowing and expunging, in its entirety, POC 111. In support of this Objection, the Insurers set forth as follows:

## PRELIMINARY STATEMENT

1.      POC 111 alleges abuse by a Franciscan Friar, Michael Kolodziej, O.F.M. Conv., at St. Francis High School of Athol Springs, N.Y. ("St. Francis High School"), where it is alleged the claimant was a student from 1979 to 1980 ("Claimant"). It is alleged Friar Kolodziej was a vice principal at St. Francis High School.

2.      The proof of claim was filed in this bankruptcy case. However, the Claimant separately filed a state court complaint that was not attached to POC 111. The Claimant names as defendants in his complaint the Franciscan Friars and St. Francis High School, and represents that the Franciscan Friars and St. Francis High School employed and were responsible for Friar Kolodziej.

3.      Friar Kolodziej was not a cleric or employee of the Diocese; rather, he is alleged by the Claimant in his complaint to have been a member of the Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. ("Franciscan Friars"), a religious order separate and apart from the Diocese, and to have been employed by the Franciscan Friars at a Franciscan Friars' school, St. Franscis High School.

4.      New York law requires a direct relationship between the Diocese and Friar Kolodziej, specifically an employment or agency relationship, in order to demonstrate the

Diocese had a duty to control Friar Kolodziej. Such a relationship must be pled with accompanying factual allegations bearing on the plausible existence of such a relationship. Merely filing a proof of claim in the Diocese's bankruptcy case without any factual allegations plausibly establishing that the Diocese could control or employ Friar Kolodziej, is wholly insufficient under federal pleading standards. There are no such facts pled in POC 111 about or against the Diocese. Nor could there be. The declaration filed by the Diocese nine months ago attesting that Friar Kolodziej was not employed by the Diocese, and that St. Francis High School was not owned by the Diocese, is uncontroverted.

5. In *Diocese of Rockville Centre*, Judge Glenn disallowed 39 proofs of claim— including 22 that did not file a state court complaint—involving religious order priests and schools pled almost identical to those here, emphasizing the need for supporting factual allegations that go beyond the type of conclusory allegation that the diocese had an agency or employment relationship with the alleged perpetrator or separate religious order which are not even made here. *See In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 651 B.R. 399 (Bankr. S.D.N.Y. 2023) (dismissing 39 claims against alleged abusers employed by separate religious orders / institutions on the basis that the claims failed to allege facts sufficient to establish an employment or agency relationship with the diocese), *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499. Because there were no non-conclusory allegations to support either an employment or agency relationship, the claims had to be dismissed as a matter of law and the District Court affirmed that decision. *Id*. Further, Judge Glenn found that the plaintiffs' Canon Law assertions could not support the claims without sufficient allegations of secular facts. *Id.* at 420-28.

6. POC 111 further fails to allege that the Diocese had any knowledge of Friar

Kolodziej's propensity to commit abuse prior to the alleged abuse suffered by Claimant. Claimant does not plead any facts that would put the Diocese on notice of any duty owed where the alleged perpetrator was employed by the Franciscan Friars, a separate religious order from the Diocese, and the Claimant failed to plead how the Diocese knew or should have known of the alleged perpetrator's propensity for child sexual abuse, a necessary element of a claim.

7. Just like Judge Glenn found in *Rockville Centre*, this Court need not consider the factual support offered in Diocese's declaration as the Claimant has not pled specific facts sufficient to support a claim, nor could they, and therefore POC 111 must be disallowed as a matter of law. While the Diocese's declaration establishes that facts cannot be pled to support a claim against the Diocese, as Judge Glenn states "[t]he Proofs of Claim here fail not because the Debtor has refuted any facts, but because the Claimants have failed to allege sufficient facts in the first instance." *In re Roman Cath. Diocese of Rockville Ctr.*, 2023 WL 6284596, at *7 (Bankr. S.D.N.Y. Sep. 26, 2023). POC 111 fails for the same reason.

8. As set forth herein, accepting Claimant's allegations against Friar Kolodziej as true for purposes of this Objection does not mean that the Diocese is responsible for Friar Kolodziej's criminal conduct. The POC fails to adequately plead a cause of action under federal pleading standards and therefore must be dismissed.

## STATEMENT OF FACTS

### *The allegations of the POC*

9. POC 111 is devoid of any allegation that the Diocese had control over the hiring, retention and/or supervision of the Franciscan Friar employed at St. Franscis High School. Nor is there any allegation that the Diocese knew or should have known of the risks posed by Friar Kolodziej. The only factual allegations in POC 111 regarding an employee-employer relationship state that "Abuser acted as vice principal at the high school claimant attended,"

Case 1-20-10322-CLB, Doc 4304, Filed 10/29/25, Entered 10/29/25 11:43:44, Description: Main Document , Page 11 of 90

which was St. Francis High School.  POC 111, Attachment, Part 3.b.  No facts are alleged that

any information about the Friar reached anyone at the Diocese.

10.     These allegations fail to state any facts or allegations of a claim against the

Diocese and are even less than "[t]hreadbare recitals of the elements of a cause of action" that

still would not suffice.  *Iqbal*, 556 U.S. at 678.

### Claimant names the Franciscan Friars and St. Francis High School as responsible in his separate state court complaint

11.     Claimant separately filed a state court complaint that was not attached to POC

111 that names only the Franciscan Friars and St. Francis High School, in which it is represented

that the Franciscan Friars and St. Francis High School employed and were responsible for Friar

Kolodziej.  *See* Complaint, *Gregg Pacillo v. St. Francis High School, et al.*, Index No.

810502/2021, Doc. No. 1 (Sup. Ct. Erie Cty. Aug. 2, 2021) ("Complaint"), attached hereto as

**Appendix 1**.[1]

12.     Friar Kolodziej was not a cleric or employee of the Diocese; rather, he is alleged

by the Claimant in his separately filed complaint to have been a member of the Franciscan Friars,

a religious order separate and apart from the Diocese, and to have been employed by the

Franciscan Friars at a Franciscan Friars' school, St. Franscis High School.  *Id.*, at ¶¶ 43-44.

13.     The Franciscan Friars and St. Francis High School do not deny the allegations that

Friar Kolodziej was a member of the order of Franciscan Friars or employed by St. Francis High

School or the Franciscan Friars as neither defendant has filed an answer to the Complaint.  And

the one defendant who did file an answer, the parish St. Francis of Assisi Roman Catholic

Church Society of Athol Springs, New York, denied "knowledge and information sufficient to

---

[1] The Complaint is signed solely by the Claimant's lawyers, Adam P. Slater and Linc Leder of Slater Slater Schulman LLP, and not by the Claimant. *See* Complaint.

form a belief as to" such allegations in their Answer to the Complaint. *See* Verified Answer to Complaint, *Gregg Pacillo v. St. Francis High School, et al.*, Index No. 810502/2021, Doc. No. 11, ¶ 1 (Sup. Ct. Erie Cty. July 31, 2024), attached hereto as **Appendix 2** (denying knowledge or information sufficient to respond to the allegations contained in paragraphs 43 and 44 of the Complaint, which allege the Friar's employment relationship to the Franciscan Friars and St. Francis High School).

***The Diocese objected to this claim on the
exact same basis (Dkt. No. 3581)***

14.     The Diocese objected to POC 111 on January 15, 2025. *Objection to Allowance of Sexual Abuse Proof of Claim No. 111* at docket entry number 3581 (the "Diocese Objection"). The Diocese walked through in its Objection how POC 111 failed to plead an employment or agency relationship, in order to demonstrate the Diocese had a duty to control Friar Kolodziej, with accompanying factual allegations bearing on the plausible existence of such a relationship. *See* Diocese Objection, at ¶ 17-20, 29.

15.     In demonstrating that such facts could not be pled, the Diocese Objection to POC 111 is supported by the Declaration of Richard C. Suchan dated January 8, 2025 (Dkt. No. 3587) (the "Suchan Declaration"). Mr. Suchan is the Chief Operating Officer for the Diocese, a position he has served in since July 2021.[2] He affirms that the statements in the declarations are based on his personal knowledge, and specifically that he makes "this Declaration based upon: (a) [his] personal knowledge of certain facts stated [therein], (b) information supplied to [him] by others associated with the Diocese, (c) [his] review of relevant documents, (d) consultation with professionals engaged by the Diocese, and (e) [his] experience and knowledge of Diocesan

---

[2] *See* Suchan Declaration, ¶ 1.

operations."[3]

16. In the nine months since the filing of the Diocese Objection, the claimant who filed POC 111 has not offered anything to controvert the facts offered in the Diocese Objection and Suchan Declaration.

### *St. Francis High School was founded, incorporated, owned, and managed entirely by the Franciscan Friars, a religious order wholly separate from the Diocese*

17. As set forth in the Suchan Declaration, St. Francis High School of Athol Springs, N.Y. "is an all-boys secondary school located in Hamburg, New York that was founded, supervised and controlled by the [Franciscan Friars], an independent, separately incorporated religious order that was, and is, separate from and not affiliated with the Diocese."[4] "St. Francis High School is a separately incorporated entity."[5] The charter for St. Francis High School, attached at Exhibit 10 to the Suchan Declaration, was granted on September 25, 1959, and contains no reference to the Diocese.[6]

18. Mr. Suchan further affirms that: "The Diocese does not own the property where the school is located"[7] and that "[s]ince its founding by the Franciscan Friars, the Diocese has not managed, supervised, controlled, directed, or operated St. Francis High School."[8] Mr. Suchan further verifies as the CFO of the Diocese that: "The Diocese did not hire, employ, supervise, control, or train the faculty, staff, or other employees in their work at St. Francis High School."[9]

---

[3] *Id.*, ¶ 2.
[4] *Id.*, ¶ 46.
[5] *Id.*
[6] Suchan Declaration, ¶ 46 ("Attached hereto as Exhibit 10 is the charter for St. Francis High School granted on September 25, 1959, which contains no reference to the Diocese.").
[7] *Id.*
[8] *Id.*, ¶ 47.
[9] *Id.*

19.     Mr. Suchan verifies that "[t]he Diocese did not assign [Friar Kolodziej] to St. Francis High School, did not supervise [Friar Kolodziej] or any Franciscan Friars there, and did not pay their salaries and benefits."[10]  Mr. Suchan further attests that "[t]he Diocese does not maintain records for the clerics, staff or employees of St. Francis High School."[11]

### The New York Department of State and Erie County corroborate the Suchan Declaration

20.     The government records maintained by the New York Department of State independently confirm that St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. and Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. were and are separately incorporated entities.[12]  Additionally, the government records maintained by the Maryland Secretary of State independently confirm that Our Lady of Angels Province, Inc. is also a separately incorporated entity.[13]  The Franciscan Friars hold themselves out on their official website as a separate and independent religious order.[14]  The Franciscan Friars also hold themselves out on their official website as being "responsible for administration of its own high school in Hamburg, NY (St. Francis High School)."[15]

21.     Government records maintained by the New York Department of State confirm

---

[10] *Id.*, ¶ 49.

[11] *Id.*

[12] *See* Haberkorn Declaration, Exhs. 1, 2 (New York Department of State records for (1) St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. founded in 1901 and (2) Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. formed in 1960, both of which remain active not for profit entities in New York).

[13] *See id.*, Exhs. 3, 4 (Maryland Secretary of State records for Franciscan Friars-Our Lady of Angels Province, Inc. along with the Articles of Incorporation, showing this is a separately incorporated entity).

[14] *See id.*, Exh. 5 (The "Who We Are" page of the Franciscan Friar's website describes the friars as originating in Europe in the 13th and 14th centuries and "today are divided into three main groups or branches:  the Friars Minor (Brown Franciscans – OFM), the Friars Minor Capuchin (Capuchins – OFM Cap.), and the Friars Minor Conventual (Conventuals – OFM Conv.)")

[15] *See id.*, Exh. 6 (the "Education" page of the Franciscan Friars' webpage states that they are responsible for the administration of St. Francis High School and even includes a hyperlink leading directly to the school's webpage).

Case 1-20-10322-CLB,   Doc 4304,   Filed 10/29/25,   Entered 10/29/25 11:43:44,
Description: Main Document  , Page 15 of 90

that St. Francis High School is and was a separately incorporated entity.[16]  St. Francis High

School maintains on its official website that it was founded and has been run by the Franciscan

Friars since its inception.[17]

22.    The Erie County property records reflect that the owner of the school premises is

St. Francis High School (not the Diocese).[18]  The history of the school reflects that the

Franciscan Order purchased the property on which St. Francis High School was built and with

the help of Polish American businessmen and professionals raised money for the Franciscan

Order to construct the school.[19]

### *Clearing out proofs of claim not properly*
### *asserted against the Diocese*

23.    At the June 4 hearing, the Court noted the benefit of clearing out proofs of claim

not properly asserted against the Diocese.

"[I]f these 28 or so claimants have absolutely no claim against the Diocese and

---

[16]  *See id*., Exh. 7 (the Erie County property records list the ownership history of the parcel of land upon which the high school is built, which currently lists the owner of the land as "ST FRANCIS HIGH SCHOOL" as an independent business entity).

[17]  *See id*., Exh. 8 (The "History" page on the St. Francis High School website, which is directly linked from the "Education" page on the Franciscan Friars' website (*see* FN 15 *supra*), provides that the school was founded in the mid-1920's by "the Very Rev. Justin Figas, OFM Conv." on the shores of Lake Erie "on a thirty-two acre site that had been purchased for the Conventual Franciscans of St. Anthony of Padua Province in 1916 by the Very Rev. Hyacinth Fudzinski, OFM Conv.").

[18]  *See id.*, Exhs. 9, 7 (the property records for Erie County, New York show that St. Francis High School is the owner of the parcel of land upon which the high school is built, and the ownership history for that property goes back to 1916 with the only property owners listed being the "FRANCISCAN FATHERS ASSN" and "ST FRANCIS HIGH SCHOOL").

[19]  *See id*., Exh. 10 (Wikipedia,
https://en.wikipedia.org/wiki/Saint_Francis_High_School_(Athol_Springs,_New_York) (as of Aug. 25, 2025, 9:35pm EST), "The Conventual Franciscans of the Saint Anthony of Padua Province already owned a 32-acre (130,000 m$^2$) parcel of land on the shore of Lake Erie in Athol Springs just outside Buffalo. The site was purchased in 1916 by Father Hyacinth Fudzinski who was a member of the Franciscan Order. The land had previously been the estate of one "Dr. Pierce," who developed pharmaceuticals around the start of the 20th century. In December 1924 Father Justin assembled a group of Polish American businessmen and professionals from Buffalo, New York to help raise funds and support for the construction of the school. This group became known as the "Father Justin Drivers," or the "Justin Drivers." The group was successful and in 1925 ground was broken for the new school in a ceremony held on 12 July 1925.").

yet you allow them to go and recover through the plan, are you not diluting the recovery for the other 800 and some claimants and reducing what they will ultimately get by way of this settlement because you're adding on additional claims."[20]

24.     In granting the Diocese's request to adjourn the hearing on the Diocese Objection and later allowing the Diocese to withdraw its objection at the insistence of the Committee the Court expressly preserved the rights of other parties—including the Insurers—to separately advance objections to the same proofs of claim that were the subject of the Diocese's claims objections.[21] *See* Haberkorn Decl., Exh. 11 (June 4, 2025, Hearing Transcript at 17:21-25 ("If any party with standing wishes to raise their own objection, perhaps even on the identical grounds that are raised by the Diocese in these motions, we'll give you a hearing time and we'll give it consideration.  And so we're open to that being raised by anyone.")).

25.     This Objection is being filed on that basis.

### *It will further inflame the objecting parishes if they are charged with paying claims that are not legally viable*

26.     Leadership from certain parishes filed a lawsuit in the beginning of July 2025 against the Diocese and certain parishes to enjoin their respective parish's assets from being allocated to pay for the Diocese's settlement with the claimants, including this Claimant.[22]

27.     Neither this Claim nor any of the others that are the subject of the Insurers' motions to disallow assert a claim against any parish.  The Diocese acknowledged that it believes

---

[20] *Id.*, Exh. 11 (June 4, 2025, Hearing Transcript at 10:19-24).
[21] The Insurers wrote the Court and conveyed the benefits to the estate, claimants and the mediation of going forward with the Claims Objections and clearing out of the claims that are not properly asserted against the Diocese. *See* Letter in Response to Letter Adjourning Matter [Dkt. No. 3757].  In April 2025, the Diocese conveyed that it reached an agreement in principle with the Committee on the amount it would contribute to a plan of reorganization in exchange for the Committee's agreement to support the Diocese being granted a discharge of any liability it may have for all abuse claims.  No longer having an economic interest in what claims are allowed, the Diocese asked that the Diocese Objection be taken off calendar pursuant to a letter notice filed at docket entry number 4059.
[22] *See* Verified Complaint, *John Rozak, et al. v. Diocese of Buffalo, et al.*, Index No. 811414/2025, Doc. No. 2 (Sup. Ct. Erie Cty. July 8, 2025).

this Proof of Claim is not legally viable against it.

28.     It will only further inflame the situation to permit obviously deficient claims to be allowed and allocated to the parishes.

## RELIEF REQUESTED

29.     U.S. Fire and PEIC respectfully request that the Court issue an order disallowing and expunging POC 111 in its entirety.  In response to an objection, if a claim is determined to be unenforceable against the debtor it should be disallowed.  *See* 11 U.S.C. § 502(b)(1).  The claimant has not plausibly asserted that he has a "right to payment" from the Diocese of Ogdensburg, and his claim should be disallowed.  *See* 11 U.S.C. § 101; 11 U.S.C. § 502(b)(1).

## JURISDICTION

30.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

31.     The relief requested is available pursuant to sections 502(a) and (b) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* and Rule 3007 of the Federal Rules of Bankruptcy Procedure.  "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless *a party in interest . . . objects*."  11 U.S.C. § 502(a) (emphasis added).

32.     "The language of section 502(a) is clear and unambiguous.  *It plainly authorizes a party in interest to object to any claim or interest*, proof of which is filed under section 501 of the Code.  Nowhere is this right made subject to any other provision of the Code or to the Trustee's refusal to pursue possible objections to certain claims."  4 Collier on Bankruptcy ¶ 502.02 (16th 2025) (quoting *Whitely v. Slobodian (In re Mechanicsburg Fitness, Inc.)*, 592 B.R. 798, 807 (Bankr. M.D. Pa. 2018)) (emphasis added).

33.     U.S. Fire and PEIC have associated into the defense of the underlying claims, are paying the cost of associated defense counsel,[23] are parties to the adversary proceeding filed against them by the Diocese and the monetary made against them[24] and are parties to the Mediation Order and the monetary demands for this claim.[25]  As insurers with a "***potential*** financial stake in the outcome*" of the claim U.S. Fire and PEIC are parties in interest with standing to object to proofs of claim.  *In re Black, Davis & Shue Agency, Inc.*, 460 B.R. 407, 414-15 (Bankr. M.D. Pa. 2011) (quoting *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000)) (emphasis added).

34.     In response to an objection, if a claim is determined to be unenforceable against the debtor it should be disallowed.  *See* 11 U.S.C. § 502(b)(1).  The claimant has not plausibly asserted that he has a "right to payment" from the Diocese of Ogdensburg, and his claim should be disallowed.  *See* 11 U.S.C. § 101; 11 U.S.C. § 502(b)(1).

## **ARGUMENT**

**A.      If a single essential allegation in a claim is refuted, the burden of proof shifts to the claimant to establishing the validity of the claim**

35.     Where, as here, a claim is unenforceable under applicable state law, it should be

---

[23] Haberkorn Decl., ¶ 3 (describing the letter the Insurers sent on August 18, 2025, to Mr. Obis as the authorized representative of the Diocese notifying the Diocese that the Insurers "exercise their right to associate in the defense of the Lawsuits" for which the stay was lifted and implicate the Insurers' excess policy periods).

[24] *See* Complaint, *All Saints Roman Catholic Church Society of Buffalo, et al. v. 21st Century Premier Insurance Company, et al.*, Adv. Proc. No. 20-10322 CLB, Doc. No. 1, at ¶¶ 358, 398, 404 (Bankr. W.D.N.Y. Jan. 19, 2021) (naming U.S. Fire Insurance Company in the coverage adversary proceeding seeking both a declaratory judgment that the Insurers are obligated to indemnify the Parishes and/or the Diocese for all sums the Parishes and/or Diocese become obligated to pay through judgment, settlement, or otherwise as well as damages for costs to pay settlements and/or judgments in the Underlying Actions and Claims).

[25] *See* Order, at 3 [Dkt. No. 1568] (mandating participation in the mediation for all insurer defendants listed on Exhibit A attached thereto, including but not limited to U.S. Fire); see also Decision & Order, at 7 [Dkt. No. 3501] (mandating participation by all parties in all mediation sessions for the latest round of mediation efforts).

disallowed. 11 U.S.C. § 502(b)(1). If an objection is asserted refuting at least one essential allegation in a claim, the claimant then has the burden to demonstrate the validity of such claim. *See, e.g., In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y.2000). Importantly, a claimant "must prove the claim, not sit back while the objector attempts to disprove it." *In re Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997) (citing *In re Bennett*, 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988)); *see also Primavera Familienstifung v. Askin*, 130 F. Supp.2d 450, 541 (S.D.N.Y. 2001) ("The ultimate burden or persuasion to prove the loss claimed . . . remains with the claimant.").

36. The proof of claim subject to this Objection alleges sexual abuse that occurred at, and by individuals associated with and controlled by, a separately incorporated entity unaffiliated with and distinct from the Diocese. In the Complaint, the Claimant represents that the Franciscan Friars entity defendants employed the abusers.

37. Federal pleading rules apply in assessing the validity of a proof of claim. *See In re Residential Cap. LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y. 2015), *on reconsideration in part*, 537 B.R. 161 (Bankr. S.D.N.Y. 2015); *Doe v. Roman Cath. Diocese of Rockville Ctr. (In re Roman Cath. Diocese of Rockville Ctr.)*, 2024 U.S. Dist. LEXIS 124499, *3 (S.D.N.Y. July 15, 2024) ("The legal standard of review of the disallowance of claims at a sufficiency hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). Judge Glenn found that this standard also applies to proofs of claim where the claimant's "arguments regarding the Debtor's liability are founded on the same allegations regarding control as" those that also filed complaints in state court and also depend on a control theory to succeed. *In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 651 B.R. 399, 434 (Bankr. S.D.N.Y. 2023), *aff'd In re Roman Cath. Diocese of*

*Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499.

38.     A claimant, thus, must assert allegations of plausible fact that make their claims rise above a speculative level.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level.").  In order to be plausible, "the complaint's '[factual] allegations must be enough to raise a right to relief above the speculative level.'"  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)  (quoting *Twombly*, 550 U.S. at 555, 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Similarly, a complaint is properly dismissed when, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

39.     Here, it is alleged in POC 111 § 3.b that "[Friar Kolodziej] acted as vice principal at the high school claimant attended," which Claimant identifies as St. Francis High School in POC 111 § 4.a.  Claimant makes no allegation that the Diocese had control over the hiring, retention and supervision of the alleged abusers.  There are no references to the Diocese anywhere in POC 111 other than the fact that the proof of claim was filed against the Diocese in this Case.

40.     These allegations do not even set out "[t]hreadbare recitals of the elements of a cause of action" that still would not be sufficient to state a claim.  *Iqbal*, 556 U.S. at 678.  Because Claimant has not asserted allegations of plausible fact that "raise a right to relief above

the speculative level," *Twombly*, 550 U.S. at 555, the claim should be disallowed as against the Diocese.

41.     In *Rockville Centre*, 39 very similarly pled proofs of claim—including 22 that did not file a state court complaint—were objected to and dismissed on the basis that the claimants did not adequately allege that the diocese had an employment relationship or an agency relationship with the respective alleged abusers when the claimants merely made simple "conclusory recitals of the legal relationships that the claimants seek to establish."  *In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 651 B.R. 399, 418 (Bankr. S.D.N.Y. 2023), *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499.  As described more fully below, one of these two relationships is necessary under New York law to establish the requisite degree of control exercised by the diocese over the alleged abusers and threadbare allegations of the possibility of control fails as a matter of law.  *Id.* at 417-19.

42.     Judge Glenn carefully considered and applied the federal dismissal standard and based on an analysis of the conclusory facts alleged in the complaints, granted the objections.  *Id.* at 409, 417-19.  Importantly, Judge Glenn noted that an allegation of "'control' itself is not actually an independent theory that allows a plaintiff to hold a defendant liable in tort for the actions of a third party" and thus is wholly insufficient to plead a claim arising out of an employment or agency relationship under New York state law.  *Id.* at 410; *see also In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499 at *5 (affirming bankruptcy court's dismissal of claims where claimants "offer[ed] no non-conclusory allegations to support a theory of liability based on the Debtor's relationships with either the alleged abusers or the religious institutions where the abuse occurred.").

43.     The claims against the Diocese of Rockville Centre were dismissed by Judge

Glenn because there were no factual allegations to support the claimant's alleged legal labels of employment or agency and therefore no allegations of factual circumstances to support the diocese's alleged employment or agency relationships with the abusers or separate religious order. *Id.* at 416, 418-19. Here, the proof of claim alleges no facts that bear upon any employment or agency relationship between the Diocese and Friar Kolodziej.

44.     Conversely, the Suchan Declaration delineates the legal distinctions among the Diocese, the Franciscan Friars and St. Francis High School, and establishes that the Diocese did not own, operate or control that private school, nor did it hire, direct, manage, supervise or control the clerics or employees of St. Francis High School.[26] Government records submitted in support of this objection further confirm the Suchan Declaration.

45.     As set forth in Section B below, the Claimant does not have viable causes of action under New York law for an abuse claim against the Diocese. Here, the Claimant does not plead plausible facts of a custodial or "control" relationship—neither employment nor agency— between the Diocese and Claimant or between the Diocese and Claimant's alleged abuser. Because POC 111 is unenforceable under appliable law, it should be disallowed pursuant to 11 U.S.C. § 502.

46.     POC 111 is also devoid of any allegation the Diocese had any knowledge of Friar Kolodziej's propensity to commit abuse prior to the alleged abuse suffered by Claimant.

47.     In *C.S. v. Archdiocese of N.Y.*, plaintiff's abuse claims against the Archdiocese were dismissed because the "Plaintiff has not submitted any evidence that would put Archdiocese on notice of any duty owed" where the alleged perpetrators were employed by the Franciscan Friars of the Atonement, a separate religious order from the Archdiocese, and the

---

[26] *See* Suchan Declaration at ¶¶ 46-49.

plaintiff failed to establish how the Archdiocese knew or should have known of the alleged

perpetrators' propensities for child sexual abuse. Index No. 951299/2021, 2022 N.Y. Misc.

LEXIS 6640, at *2-4 (Sup. Ct. New York Cty. Nov. 2, 2022). This Court is faced with the

precise same situation here.

**B.     The Diocese did not owe Claimant a legal duty of care and because there is no such duty, it cannot be held liable for the alleged abuse**

48.     To establish a prima facie case of negligence under New York law, "a plaintiff

must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and

(3) that she suffered injuries proximately resulting from that breach." *Coyle v. United States*,

954 F.3d 146, 148 (2d Cir. 2020) (quoting *Solomon ex rel. Solomon v. City of New York*, 66

N.Y.2d 1026, 1027 (2016)); *Becker v. Schwartz*, 46 N.Y.2d 401, 410 (1978) ("As in any cause of

action founded upon negligence, a successful plaintiff must demonstrate the existence of a duty,

the breach of which may be considered the proximate cause of the damages suffered by the

injured party.").

49.     Under New York law, for the Diocese to be liable for the torts of alleged abusers,

the Diocese must have a duty to control them. The duty to control arises only when "the

relationship between the defendant and the person who threatens the harm to the third person . . .

require[s] the defendant to attempt to control the other's conduct." *Pulka v. Edelman*, 40 N.Y.2d

781, 783-84 (1976). For instance, in an employment relationship or when the "relationship

between the defendant and the person exposed to harm . . . requires the defendant to afford

protection from certain dangers including the conduct of others." *Id.* (citations omitted).

50.     It is well-established law that "[i]n the absence of duty, there is no breach and

without a breach there is no liability." *Pulka*, 40 N.Y.2d at 782 (citation omitted); *532 Madison*

*Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 96 N.Y.2d 280, 289 (2001) ("Absent a duty

running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm. This restriction is necessary to avoid exposing defendants to unlimited liability to an indeterminate class of persons conceivably injured by any negligence in a defendant's act."). "Duty is essentially a legal term by which we express our conclusion that there can be liability. It tells us whether the risk to which one person exposes another is within the protection of the law. In fixing the bounds of that duty, not only logic and science, but policy plays an important role." *De Angelis v. Lutheran Medical Ctr.*, 58 N.Y.2d 1053, 1055 (1983) (citation omitted).

51. A "threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138 (2002) (citations omitted). Whether someone owes a duty of care to reasonably avoid injury to another is a question of law. *See Purdy v. Public Adm'r of County of Westchester*, 72 N.Y.2d 1, 8 (1988); *Palka v. Servicemaster Mgt. Servs. Corp.*, 83 N.Y.2d 589, 585 (1994) (holding that "the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration.") (citations omitted). "The question of duty is best expressed as 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Pulka*, 40 N.Y.2d at 784 (citations omitted). However, "a line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit." *De Angelis*, 58 N.Y.2d at 1055.

52. It is well-settled in New York law that "[a] defendant generally has no duty to control the conduct of a third person so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *D'Amico v. Christie*, 71 N.Y.2d 76, 88

(1987) (citing *Pulka v. Edelman*, 40 N.Y.2d 781, 783 (1976)). New York courts have identified a duty to control the conduct of another person when "there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons." *Purdy*, 72 N.Y.2d at 8. The New York Court of Appeals has "imposed a duty to control the conduct of others where there is a special relationship: a relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person's conduct; or a relationship between the defendant and plaintiff requiring defendant to protect the plaintiff from the conduct of others." *Id.* (citations omitted).

53.   A party, like the Diocese here, cannot be held liable for tortious conduct by individuals outside of its control. *See Bautista v. Archdiocese of New York*, 164 A.D.3d 450, 451 (1st Dep't 2018) (no legal liability because defendant did not have "the authority to supervise or control" the individual); *Farrulla v. Happy Care Ambulette Inc.*, 125 A.D.3d 529, 530 (1st Dep't 2015) (defendant "did not cause plaintiff's alleged injuries and was not legally responsible for the person who did").

54.   In *Ark263 Doe v. Archdiocese of N.Y.*, the court dismissed a complaint that alleged abuse by an employee of a high school that was owned and operated by the Congregation of Christian Brothers—a religious organization separate and independent from the Archdiocese, similar to the Franciscan Friars. 2022 N.Y. Misc. LEXIS 3510, at *3-6 (July 18, 2022). The Archdiocese did not own the school property where the alleged abuser worked, nor did the Archdiocese "hire, retain, employ, oversee, or control the staff or employees" of the high school, including the alleged abusers. *Id.* at *3-4. Based on the lack of ownership over the property, any direct relationship between the Archdiocese and the Congregation of Christian Brothers, and testimony evidencing the lack of operational control, including hiring and supervision, by the

Archdiocese, the court dismissed the complaint.  *Id.* at *5-6.

55.     Courts have repeatedly held, including in the context of claims asserted under the CVA, that where a diocese does not control the entity with which the alleged abuser is associated, the diocese is not responsible for that individual's alleged misconduct as a matter of law.  *See*, *e.g.*, *Walker v. Archdiocese of New York*, 270 A.D.2d 127, 128 (1st Dep't 2000) (affirming the summary judgment dismissal of a personal injury action against the Archdiocese where affidavits established "the Archdiocese does not own, operate or exercise control over the school," nor did it own the "premises on which the defendant school is located" which was separately owned by the defendant church); *R.D. v. Archdiocese of New York et al.*, No. 519339/2020, 2021 WL 4307231 (Sup. Ct. Kings Cty. Sep. 22, 2021) (granting motion to dismiss the abuse claims against the Archdiocese where documentary evidence established (1) that "contrary to plaintiff's claims, [Archdiocese] did not oversee St. Agnes and St. Francis[, the two locations where the abuse alleged[ly] occurred], and had no custody, control, or supervision over either entity's residents or employees," (2) the premises of St. Agnes "has been owned by the Dominican Convent, not the Archdiocese," and (3) St. Francis was located in Brooklyn outside of the Archdiocese's geographic territory); *Springer v. Archdiocese of New York*, No. 950137/2019, 2021 WL 1054553, at *1 (Sup. Ct. New York Cty. Mar. 18, 2021) (dismissing defendant Notre Dame School of Manhattan where school charters and "affidavits demonstrate that the Notre Dame School and defendant Notre Dame School of Manhattan are completely separate entities" and thus the defendant did "not own, operate or exercise control over the Notre Dame Convent School/Notre Dame School").

56.     An essential element of a negligent hiring, retention, or supervision claim is there must be an employer-employee relationship, and no such relationship has been established in

POC 111. In *SCVAWCR-Doe v. Archdiocese of New York*, a plaintiff alleged negligent hiring, retention and supervision of an alleged abuser who was employed by a third-party employer, not the Archdiocese, which proved fatal to the claim leading to its dismissal on summary judgment. 2024 N.Y. Misc. LEXIS 1549, at *24-25 (Sup. Ct. Westchester County Mar. 27, 2024) (granting summary judgment dismissing negligent supervision claim because an "essential element of an employer-employee relationship is lacking in this case;" the plaintiff "has not established how either the Archdiocese or St. Joseph's was liable for the alleged negligent supervision of [abuser] when he was employed by non-party [].")

57.     In *In re Roman Catholic Diocese of Rockville Center*, Judge Glenn found that under New York law it is critical that facts that are alleged go "to the degree of control exercised by the purported employer," with the predominant factor being "the extent of the employer's power to order and control the employee's performance at work." 651 B.R. 399, 410, *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499 (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003); *Sokola v. Weinstein*, 187 N.Y.S.3d 493, 500 (Sup. Ct. N.Y. Cty. Feb. 7, 2023)) (internal quotations omitted). The claims against the diocese were dismissed because there were no "accompanying factual allegations that would support [the] legal labels of employment or agency," and therefore no "allegations that actually bear on the factual circumstances of the Debtor's alleged employment or agency relationships with the abusers or Religious Institutions/Orders" that are "necessary to [] plead the causes of action asserted." *Id.* at 416, 418-19.

58.     Judge Glenn held the 22 claims that were only proofs of claim, and no state court complaint was filed must meet the same legal pleading standard as the complaints. *Id.* at 433-36. This decision was made because the definition of "Sexual Abuse Claim" on the proof of claim

form defined "such claims as abuse 'under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any other persons or entity for whose acts or failures to act the Diocese is or was allegedly responsible.'" *Id.* at 433. Therefore, the court concluded that asserted claims consisted of a similar range of tort claims as those asserted by the complaint claimants, the arguments regarding the diocese's liability are "founded on the same allegations regarding control as the Complaint Claimants," and so "they will be subject to the same legal standards and caselaw discussed for the Complaint Claims." *Id.* at 434.

59.     Here, Friar Kolodziej is alleged by the Claimant to have been employed by St. Francis High School, a wholly separate and independent entity from the Diocese, resulting in no employer-employee relationship with the Diocese. The mere conclusory assertions of a legal employment relationship without accompanying factual allegations to support such legal label does not meet the federal pleading standards for the negligence claims. Here, there is not even a conclusory allegation.

60.     An organization **may, accordingly, be held liable** for a person's sexual misconduct **only when** the alleged perpetrator's conduct is connected to the organization. *See Sheila C. v. Povich*, 11 A.D.3d 120, 129 (1st Dep't 2004) (defendant could not be held liable for sexual assault that occurred after she "had left defendants' physical custody and control"); *K.I. v. New York Cty. Bd. of Educ.*, 256 A.D.2d 189, 192 (1st Dep't 1998) (the school was not responsible for sexual assault which "was severed by time, distance and [the perpetrator's] intervening independent actions").

61.     Similarly, under New York law, custody or control over a student is required to establish a duty of the Diocese to supervise or "afford [Claimant] protection from certain dangers

including conduct of others." *Pulka*, 40 N.Y.2d at 783; *see also Pratt v. Robinson*, 39 N.Y.2d 554, 560 (1976) ("The school's duty is thus coextensive with and concomitant to its physical custody and control over the child. When the custody ceases because the child has passed out of the orbit of its authority . . . the school's custodial duty also ceases.") (citations omitted). The Diocese never controlled, owned or operated St. Francis High School, that was the responsibility of the Franciscan Friars and the administration of the school employed by and members of the Franciscan Friars;[27] at no time did the Diocese maintain any custody or control over Claimant while they were a student at St. Francis High School.

62. Judge Glenn also considered arguments by the claimants that Canon Law gave the diocese control over the respective alleged abusers with the most specific assertion being that: "Everyone who works in a diocese including pastors, assistant pastors, and anyone holding any other position, is appointed by the bishop. This includes members of religious institutions who hold positions in the government of the diocese." *In re Roman Catholic Diocese of Rockville Ctr.*, 654 B.R. at 422-23, *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499. The court also considered "the more generalized allegations of the Debtor's control over personnel within its territory" and the argument that the diocese has control over the separate religious institutions or orders that perform works of ministry within the diocese's territory. *Id.* at 423, 428. First, Judge Glenn found that Canon Law may be considered "to assess the allegations in the complaint," but "if claimants cannot prove the existence of [an employment or agency relationship] based on underlying secular facts pertaining to employment and agency, the Court considers that **they will not be able to rely exclusively on Canon Law** to prove their claims." *Id.* at 422-23, 426 (emphasis added).

---

[27] *See* Suchan Declaration, ¶¶ 46-49.

Case 1-20-10322-CLB, Doc 4304, Filed 10/29/25, Entered 10/29/25 11:43:44, Description: Main Document , Page 30 of 90

63.     The allegations relating to Canon Law led the court to conclude that "inherent in the allegations that the Debtor *may* hire and appoint *some* personnel to other Catholic entities within the diocesan territory, is the recognition that the Debtor does not hire and appoint *all personnel* at every entity within diocesan territory." *Id.* at 423 (emphasis in original). The court found it "plausible that the Debtor has the general authority to staff certain of its own employees at Religious Institutions or even appoint clergy members to work for the Religious Institutions/Orders," but was "troubled by the lack of non-conclusory allegations stating that is actually what occurred for the abusers at issue." *Id.* at 425. Similarly, the allegations could not establish that "the Religious Institutions and Orders were acting on behalf of the Debtor, or subject to their control, when they hire or supervise their own employees. *Id.* at 427.

64.     Under straightforward principles of New York law, POC 111 is not properly asserted against the Diocese and should be disallowed. Claimant has not alleged any facts, conclusory or otherwise, giving rise to a legal duty of the Diocese. *See* POC 111. In addition, as detailed in the Suchan Declaration, the evidence demonstrates that the Diocese had no authority to control the actions of Friar Kolodziej, a member of the Franciscan Friars who was an employee of St. Francis High School.[28]

65.     Friar Kolodziej was not a cleric or employee of the Diocese.[29] The Franciscan Friars is an independent religious order that was and is separate from the Diocese.[30] The Diocese did not have supervisory authority over the Franciscan Friars at St. Francis High School, nor did it pay their salaries or benefits.[31] St. Francis High School is a separately incorporated entity.[32]

---

[28] *See* Suchan Declaration, ¶¶ 47, 49.
[29] *Id.*, ¶ 49.
[30] *Id.*, ¶ 46.
[31] *Id.*, ¶ 49.
[32] *Id.*, ¶ 46.

At all relevant times, St. Francis High School was owned, controlled and operated by the Franciscan Friars, not by the Diocese.[33]  The Diocese did not play any role in assigning or appointing Friar Kolodziej at St. Francis High School.[34]  The Diocese did not, and does not, own property where St. Francis High School was located and at no time has it employed, supervised or trained the faculty, staff or any other employees of St. Francis High School, including Friar Kolodziej.[35]

66.     Based upon the foregoing, the Diocese did not owe Claimant a legal duty of care and because there is no such duty, it cannot be held liable for the alleged abuse.  Accordingly, the Insurers respectfully request that the Court enter an order disallowing and expunging POC 111.

**C.     Claimant is not entitled to discovery before the Court determines whether they have adequately stated a claim against the Diocese**

67.     As explained by Judge Glenn when deciding this precise issue, the U.S. Supreme Court ruled that 'Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"  *In re Roman Cath. Diocese of Rockville Ctr.*, 2023 WL 6284596, at *8 (Bankr. S.D.N.Y. Sep. 26, 2023) (citing *Iqbal*, 556 U.S. 662, 678).  The Claimant must be able to allege sufficient facts such that their claims move from conceivable to plausible, otherwise they must be dismissed as a matter of law.  *See id.* (citing *Twombly*, 550 U.S. 544, 570).  Only after this Court determines whether the POC 111 has adequately stated a claim against the Diocese is discovery appropriate.

---

[33] *Id.*, ¶ 47.
[34] *Id.*, ¶ 49.
[35] *Id.*, ¶¶ 46-49.

**D.     Insurers have standing to object under Section 502(a)**

68.     The alleged abuse asserted in POC 111 implicates or may implicate the time period from July 1, 1978, through July 1, 1979, addressed by U.S. Fire Insurance Company Policy No. 523 017914 4.[36] Thus, U.S. Fire and PEIC have associated into the defense of the underlying claims, are paying the cost of associated defense counsel,[37] are parties to the adversary proceeding filed against them by the Diocese and the monetary demands associated with it[38] and are parties to the Mediation Order.[39]

### *Insurers are "Parties in Interest" to this Bankruptcy Case*

69.     As insurers with a "***potential*** financial stake in the outcome of the claim, the Insurers are parties in interest withstanding to object to proofs of claim.   *In re Black, Davis & Shue Agency, Inc.*, 460 B.R. 407, 414-15 (Bankr. M.D. Pa. 2011) (quoting *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000)) (emphasis added); *see also Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 282 (2024) (an insurer is a party in interest when they have a

---

[36] *See* Declaration of Attorney James R. Murray, *The Diocese of Buffalo, N.Y. v. JMH 100 Doe, et al.*, Adv. Proc. 20-01016-CLB, Doc. No. 290 (Bankr. W.D.N.Y. Oct. 23, 2023), ¶ 8, Exh. A (stating that "from July 1, 1978 to July 1, 1979, the Diocese purchased excess coverage from U.S. Fire Insurance Company" and listed policy number 523 017914 4 on the coverage chart attached as Exhibit A for that time period).

[37] Haberkorn Decl., ¶ 3 (describing the letter the Insurers sent on August 18, 2025, to Mr. Obis as the authorized representative of the Diocese notifying the Diocese that the Insurers "exercise their right to associate in the defense of the Lawsuits" for which the stay was lifted and implicate the Insurers' excess policy periods).

[38] *See* Complaint, *All Saints Roman Catholic Church Society of Buffalo, et al. v. 21st Century Premier Insurance Company, et al.*, Adv. Proc. No. 20-10322 CLB, Doc. No. 1, at ¶¶ 358, 398, 404 (Bankr. W.D.N.Y. Jan. 19, 2021) (naming U.S. Fire Insurance Company in the coverage adversary proceeding seeking both a declaratory judgment that the Insurers are obligated to indemnify the Parishes and/or the Diocese for all sums the Parishes and/or Diocese become obligated to pay through judgment, settlement, or otherwise as well as damages for costs to pay settlements and/or judgments in the Underlying Actions and Claims).

[39] *See* Order, at 3 [Dkt. No. 1568] (mandating participation in the mediation for all insurer defendants listed on Exhibit A attached thereto, including but not limited to U.S. Fire); *see also* Decision & Order, at 7 [Dkt. No. 3501] (mandating participation by all parties in all mediation sessions for the latest round of mediation efforts).

risk of "***potential*** financial harm—attributable to [their] status as an insurer with financial responsibility for bankruptcy claims") (emphasis added); *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) ("The insurers are parties in interest under 11 U.S.C. §§ 1109(b) and 502(a), and have standing to object to claims against the estate."); *see also In re Heating Oil Partners*, 2009 U.S. Dist. LEXIS 117871, at \*17 (D. Conn. Dec. 17, 2009) ("Where the debtor's insurance was . . . the true asset sought by personal injury claimants against the debtor, the insurers were parties in interest with standing to object to claims against the estate.").

70.      As entities that have already incurred costs associated with POC 111 and may be asked to pay the claim alleged in POC 111, U.S. Fire and PEIC are parties in interest with a right to object. *See Truck Ins. Exch.*, 602 U.S. 268.

71.      U.S. Fire and PEIC face financial harm even when maintaining coverage defenses, as reorganization efforts can affect insurers in "myriad ways." "For example, a plan that purports to maintain an insurer's coverage defenses could nonetheless allow claims at amounts far above their actual value," expose insurers to the payment of fraudulent claims or impair insurers' rights to control settlement and defense. *Id.* at 281 ("A reorganization plan can impair an insurer's contractual right to control settlement or defend claims. A plan can abrogate an insurer's rights to contribute from other insurance carriers. Or, as alleged here, a plan may be collusive, in violation of the debtor's duty to cooperate, assist, and impair the insurer's financial interests by inviting fraudulent claims. The list goes on.").

72.      The term "party in interest" is not defined more narrowly for purposes of a claim objection than in the context of a plan objection, because potential financial exposure is sufficient to have a legally protected interest in the resolution of a claim. In *In re Black, Davis & Shue Agency, Inc.*, the court held that an insurer with even just a "potential financial stake in the

outcome" of the claim is a party in interest withstanding to object to proofs of claim. The Court reasoned that:

> There is no reason to define 'party in interest' standing more narrowly in the context of an objection to a claim than in the context of a plan objection. Parties in interest for the purpose of claims objections 'include not only the debtor, but anyone who has a legally protected interest that could be affected by the bankruptcy proceeding.'

*In re Black, Davis & Shue Agency, Inc.*,460 B.R. 407, 414-15 (Bankr. M.D. Pa. 2011) (quoting *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000)) (holding that an insurer with a "potential financial stake in the outcome" of the claim is a party in interest withstanding to object to proofs of claim).

73. Because of the settlement between the Diocese and the Committee, neither the Diocese nor the Committee have any incentive to oppose this Claim, leaving the Insurers as the ***only*** entities with an incentive to object to this Claim.[40] *See Truck Ins. Exch.*, 602 U.S. at 282 (the court found that "neither the Debtors nor the Claimants have an incentive to limit the post confirmation cost of defending or paying claims," "the Plan eliminates all of [the Debtors'] ongoing liability," and "Claimants similarly have little incentive to propose barriers to their ability to recover from Truck," leaving the insurer as "***the only entity*** with an incentive to identify problems with the Plan") (emphasis added).

### *Denial of Standing on an Issue on Which the Court has an Independent Duty to Act will Needlessly Force an Appeal*

74. Judge Littlefield's recent decision in *In re The Diocese of Albany, New York*, Case

---

[40] *See* Co-Mediators First Report [Dkt. No. 3814], at ¶ 7 ("The settlement in principle also provides, among other terms, the withdrawal of pending claim objections . . . ."); Haberkorn Decl., Exh. 11 (June 4 Hearing Transcript at 5:3-20 (in responding to the Court's question about why the Diocese is seeking to withdraw motions to disallow claims by persons who possibly should not be treated as creditors in the case, counsel for the Diocese stated the purpose of withdrawing their objections is because of the announced settlement and the parties are focused on mediation and resolving a Plan and don't want to spend money pursuing these claim objections)).

No. 23-10244, Dkt. No. 2168 (Bankr. N.D.N.Y. Sept. 3, 2025) is based on different facts. Here, the Diocese has abandoned the prosecution of proofs of claims it has admitted are legally meritless leaving U.S. Fire and PEIC as the only parties in interest with any economic interest in objecting. Judge Littlefield's holding "that [an] obligation is not real until either the Insurers concede liability or are otherwise adjudicated to be responsible" is also wrong as it is at odds with the Supreme Court's holding that it is enough for purposes of standing that an insurer merely could be at risk of "potential financial harm." *Truck Ins. Exch.*, 602 U.S. at 282.

75.     As Judge Kinsella found in the *Diocese of Syracuse* bankruptcy, "liability does not need to be acknowledged or adjudicated before the teachings of *Truck* apply," particularly when the diocese is "attempting to assign its interest in insurance claims and recoveries against the Certain Insurers to the Trust." *In re Roman Catholic Diocese of Syracuse*, 665 B.R. 866, 866 and 875 (Bankr. N.D.N.Y. 2024). The Diocese and Committee will propose a plan that assigns the insurance rights to a trust, which will threaten to impact the Insurers' rights, just as was proposed in *In re Roman Catholic Diocese of Syracuse*.

76.     In *Prime Capital Ventures*, the Court found, on similar facts as here, that an officer of a company had standing as a party in interest pursuant to Section 1109(b) ***based on potential, contingent liability as a codebtor who had not admitted liability***, and no final determination of his personal responsibility had been made. *In re Prime Capital Ventures, LLC*, 2025 WL 73066 (Bankr. N.D.N.Y. Jan. 10, 2025) (emphasis added). The Court found that the mere possibility that creditor payments "may reduce a future liability of [the officer] in his individual capacity" was sufficient. *Id.* at *5. The Insurers face potential contractual liability for covered claims under certain insurance policies that they subscribed, hence, applying the analysis of *Prime Capital Ventures*, the Insurers have standing to object to abuse claims.

77.     An insurer's legally protected interest may be in the defense of a claim or in "a potential financial stake in the outcome" of the claim.  *Id.*  This is exactly the case here.  Insurers have a legally protectable interest in not being sued to pay legally insufficient claims.  Because U.S. Fire and PEIC are "parties in interest" under 11 U.S.C. § 1109(b), they have the right to "raise and . . . appear and be heard on any issue" in this proceeding including a right to object to any claims implicating such interest.  11 U.S.C. § 1109(b); *see also Truck Ins. Exch.*, 602 U.S. at 269 (observing that the rights of a party in interest are broadly construed).

### Motion for Stay Pending Appeal if Standing is Denied

78.     If the Court concludes that the Insurers are not parties in interest, Insurers hereby request a stay of such order pending appeal to the district court pursuant to Bankruptcy Rule 8007.

79.     Bankruptcy Rule 8007 provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal."  Fed. R. Bankr. P. 8007(a)(1)(A).  But the motion also "may be made in the court where the appeal is pending," as long as it is accompanied by a statement that a similar motion was made in the bankruptcy court and "either state[s] that the court has not yet ruled on the motion, or state[s] that the court has ruled and set out any reasons given for the ruling."  Fed. R. Bankr. P. 8007(b).

80.     The four factors to be considered for whether to issue a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).  All of these factors favor the issuance of a stay to resolve the question of whether Insurers are parties in interest in this Case.  It is well-established that the first two factors "are the

most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

81.　*First*, a likelihood of success on the merits does not requires a party to show that there is "more than a mere possibility" it will prevail. *In re Actos Antitrust Litig.*, 2020 WL 8996696, at *2 (S.D.N.Y. Mar. 9, 2020). The Insurers easily satisfy this standard because it is, at a minimum, plausible that as an insurer with a potential financial obligation to the debtor each Insurer is a party in interest. *See, e.g., In re Megan-Racine Assocs., Inc.*, 1996 WL 167681, at *11 (N.D.N.Y. Apr. 1, 1996) (granting motion to stay pending appeal to resolve "very difficult question of statutory interpretation"). This ruling would be consistent with the recent decision in *In re Prime Capital Ventures, LLC*. *See* 2025 WL 73066 at *4-5 (Bankr. N.D.N.Y. Jan. 10, 2025).

82.　*Second*, a party will suffer irreparable harm if a stay is denied where, as here, it will result in the loss of appellate rights. *See In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (the loss of appellate rights is the "quintessential form of prejudice"). Not only is a stay necessary to allow Century to validify its rights on appeal, but if this bankruptcy proceeding moves forward without a review of whether Century is a party in interest its due process rights will be violated because it will be denied the chance to challenge the validity of proof of claim CC048—a claim that may result in Century owing a financial obligation to the debtor.

83.　*Third*, although other parties may assert the "possibility of irreparable harm" if a stay is entered the "near certainty of irreparable harm" to Century if a stay is not entered clearly outweighs this concern. *See In re Megan-Racine Assocs., Inc.*, 1996 WL 167681 at *6.

84.　*Finally*, the public interest also weighs strongly in favor of a stay because it "strongly favors the correct application of the Bankruptcy Code, especially where property rights

are at stake." *In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015) (reversing district court's denial of stay). Neither the Second Circuit nor any district court in this Circuit has ruled on the question of whether under *Truck Insurance* an insurer that has a potential financial obligation under an insurance policy is a party in interest. There is a strong public interest in resolving this question which has arisen in the *Diocese of Albany, Diocese of Syracuse,* and *Diocese of Buffalo* cases (among others), and will continue to arise again in the future.

## NOTICE AND PROCEDURE

85.     U.S. Fire and PEIC will provide notice to: (i) the Claimant who submitted Proof of Claim No. 111; (ii) the Office of the United States Trustee; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for the Diocese, and (v) any other parties requesting notice in this proceeding.

86.     No prior request for the relief sought herein has been made to this Court or any other court.[41][42]

**WHEREFORE,** based upon the foregoing, the Insurers respectfully request that the Court issue an Order, substantially in the form attached hereto as **Exhibit A**: (i) disallowing and expunging Proof of Claim No. 111 in its entirety; and (ii) awarding such other and further relief as the Court deems just and proper.

---

[41] U.S. Fire and PEIC reserve the right to supplement this Objection and to object to POC 111 on any other grounds not stated herein. In addition, the Insurers reserve their rights to object to any and all other claims filed in this Chapter 11 Case.

[42] This filing does not constitute a waiver of the Moving Insurers right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a Federal district court (or, as applicable, appellate court) and/or the Moving Insurers' right to trial by jury in any proceeding as to any and all matters so triable, whether or not the same be designated legal or private rights, or in any case or controversy or proceeding related thereto, and whether such jury trial is pursuant to statute or the United States Constitution.

Dated:  September 30, 2025                     Respectfully submitted,


                                               By: _/s/ Adam Haberkorn_____

                                               **O'MELVENY & MYERS LLP**
                                               TANCRED V. SCHIAVONI
                                               ADAM P. HABERKORN
                                               1301 Avenue of the Americas
                                               Suite 1700
                                               New York, NY 10019
                                               Telephone:     (212) 326-2000
                                               Email: tschiavoni@omm.com
                                                       ahaberkorn@omm.com

                                               *-and-*

                                               **CLYDE & CO US LLP**
                                               MARIANNE G. MAY
                                               340 Mt. Kemble Ave., Suite 300
                                               Morristown, NJ 07340
                                               Telephone:     (973) 210-6700
                                               Email:  marianne.may@clydeco.us

                                               *Attorneys for U.S. Fire Insurance Company and*
                                               *Pacific Employers Insurance Company*

## EXHIBIT A

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
| | ) |
| THE DIOCESE OF BUFFALO, NY, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

Case No. 20-10322 (CLB)

Chapter 11

## [PROPOSED] ORDER DISALLOWING AND EXPUNGING
## SEXUAL ABUSE PROOF OF CLAIM NO. 111

Upon the objection (the "Objection") filed by for U.S. Fire Insurance Company and

Pacific Employers Insurance Company (collectively "Insurers") seeking entry of an order (this

"Order") disallowing and expunging Sexual Abuse Proof of Claim No. 111 in its entirety; and

the Court having found that: (i) it has jurisdiction over the matters raised in the Objection

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and (iii) the relief requested in the Objection is in the best interest of the estate of

the Diocese of Buffalo, its creditors and other parties in interest; and the Court having found that

the Insurers provided appropriate notice of the Objection and the opportunity for a hearing on the

Objection under the circumstances; and upon the record and after due deliberation,

**IT IS HEREBY ORDERED THAT**:

1.      The Objection is GRANTED, as set forth herein.

2.      Sexual Abuse Proof of Claim No. 111 is hereby disallowed and expunged in its

entirety.

3.      Nothing in this Order shall be deemed a waiver or release of the Insurers' right to

otherwise object to Sexual Abuse Proof of Claim No. 111 on any other grounds not set forth in

the Objection.

4.      Nothing in this Order shall be deemed to in any way impair or limit the Insurers'

right to object to any other claim in this Chapter 11 Case.

5.     This Order is immediately effective and enforceable.

6.     This Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.


Dated: _____
         Buffalo, New York

                                        _____
                                        Hon. Carl L. Bucki
                                        United States Bankruptcy Judge

Case 1-20-10322-CLB,    Doc 4304,    Filed 10/29/25,    Entered 10/29/25 11:43:44,
Description: Main Document  , Page 43 of 90

# APPENDIX 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

————————————————————————X

GREGG PACILLO,

               Plaintiff,

    -against-

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA
PROVINCE, FRANCISCAN FATHERS MINOR
CONVENTUAL, FRANCISCAN FRIARS-OUR
LADY OF THE ANGELS PROVINCE, INC., and
MICHAEL J. KOLODZIEJ,

               Defendants.

————————————————————————X

Date Index No. Purchased:

Index No.:

Plaintiff designates Erie County
as the place of trial.

The basis of venue is
Defendant's residence.

**SUMMONS**

The Above-Named Defendants:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this
summons, exclusive of the day of service (or within thirty (30) days after the service is complete
if this summons is not personally delivered to you within the State of New York); and in case of
your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated: New York, New York
       August 2, 2021

Yours, etc.,

By: Adam P. Slater, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

Linc C. Leder, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

1

TO:   **ST. FRANCIS HIGH SCHOOL**
4129 Lake Shore Road
Hamburg, NY 14075

**ST. FRANCIS OF ASSISI PARISH**
4263 St. Francis Drive, PO Box 182
Athol Springs, NY 14010

**FRANCISCAN FRIARS-OUR LADY OF THE ANGELS PROVINCE, INC.**
**o/b/o St. Anthony of Padua Province, Franciscan Fathers Minor Conventual**
12300 Folly Quarter Road
Ellicott City, MD 21042

**MICHAEL J. KOLODZIEJ**
1283 Thompson Street
Pittsboro, NC 27312-5632

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

——————————————————————————X

GREGG PACILLO,

      Plaintiff,

   -against-

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA
PROVINCE, FRANCISCAN FATHERS MINOR
CONVENTUAL, FRANCISCAN FRIARS-OUR
LADY OF THE ANGELS PROVINCE, INC., and
MICHAEL J. KOLODZIEJ,

      Defendants.

——————————————————————————X

Date Filed:
Index No.:

**VERIFIED COMPLAINT**

Plaintiff, GREGG PACILLO ("Plaintiff"), by his attorneys Slater Slater Schulman LLP,

brings this action against Defendants, ST. FRANCIS HIGH SCHOOL ("School"), ST. FRANCIS

OF ASSISI PARISH ("Parish"), ST. ANTHONY OF PADUA PROVINCE, FRANCISCAN

FATHERS MINOR CONVENTUAL, FRANCISCAN FRIARS-OUR LADY OF THE ANGELS

PROVINCE, INC, and MICHAEL J. KOLODZIEJ ("Abuser") (collectively, "Defendants"); and

alleges, on personal knowledge as to himself and on information and belief as to all other matters,

as follows:

**JURISDICTION AND VENUE**

1.    This action is brought pursuant to the Child Victims Act ("CVA"). *See* CPLR §

214-g and 22 NYCRR 202.72; as it alleges physical, psychological and emotional

injuries/damages suffered as a result of conduct against an infant that constitutes one or more

sexual offenses as defined in Article 130 of the New York Penal Law, including without limitation,

3

Case 1-20-10322-CLB    Doc 4304    Filed 10/29/25    Entered 10/29/25 11:43:44,
Description: Main Document  , Page 47 of 90
3 of 40

conduct constituting sexual abuse (consisting of sexual contact) (N.Y. Penal Law §§ 130.55 - 130.77).

2.      This Court has personal jurisdiction over the School pursuant to CPLR §§ 301 and 302, as the School resides in New York or conducts, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

3.      This Court has personal jurisdiction over the Parish pursuant to CPLR §§ 301 and 302, as the Parish resides in New York or conducts, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

4.      This Court has personal jurisdiction over the St. Anthony of Padua Province, Franciscan Fathers Minor Conventual pursuant to CPLR §§ 301 and 302, as the St. Anthony of Padua Province, Franciscan Fathers Minor Conventual reside in New York or conduct, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

5.      This Court has personal jurisdiction over the Franciscan Friars-Our Lady of The Angels Province, Inc., pursuant to CPLR §§ 301 and 302, as the Franciscan Friars-Our Lady of The Angels Province, Inc., reside in New York or conduct, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

6.      This Court has personal jurisdiction over Abuser pursuant to CPLR §§ 301 and 302, as Abuser either resides in New York or conducts, or at relevant times conducted, activities in New York that give rise to the claims asserted herein.

7.      This Court has jurisdiction over this action because the amount of damages Plaintiff is seeking exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

8.      Venue for this action is proper in the County of Erie pursuant to CPLR § 503 as one or more Defendants reside in this County.

## PARTIES

9.    Plaintiff is an individual residing in Erie County, New York. Plaintiff was an infant at the time of the abuse alleged herein.

10.    Whenever reference is made to any defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business affairs.

11.    At all times material to this complaint, St. Anthony of Padua Province, Franciscan Fathers Minor Conventual was a non-profit educational corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

12.    St. Anthony of Padua Province, Franciscan Fathers Minor Conventual is authorized to conduct business under the laws of the State of New York, with its principal place of business at 1450 New York Avenue, Huntington Station, New York 11746.

13.    Franciscan Friars-Our Lady of The Angels Province, Inc., is a non-profit educational corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

14.    Franciscan Friars-Our Lady of The Angels Province, Inc., is authorized to conduct business under the laws of the State of New York, with its principal place of business at 12300 Folly Quarter Road, Ellicott City, MD 21042.

15.    Defendants merged St. Anthony of Padua Province, Franciscan Fathers Minor Conventual with Franciscan Friars-Our Lady of The Angels Province, Inc in or about the year

5

1992, after the sexual abuse described herein. Upon information and belief, St. Anthony of Padua Province, Franciscan Fathers Minor Conventual ceased business operations soon after the merger, and Franciscan Friars-Our Lady of The Angels Province assumed the responsibilities and liabilities ordinarily necessary for the uninterrupted continuation of St. Anthony of Padua Province, Franciscan Fathers Minor Conventual's operations and business with a continuity of attendance, management, personnel, records, obligations, and general administration.

16.    St. Anthony of Padua Province, Franciscan Fathers Minor Conventual and Franciscan Friars-Our Lady of The Angels Province are collectively referred to herein as "Franciscan Friars."

17.    At all times material to this complaint, the Franciscan Friars operated under the control of the Parish and the School.

18.    At all times material to this complaint, the Franciscan Friars operated for the benefit of the Parish and the School.

19.    The Parish was and continues to be a non-profit religious corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

20.    The Parish was and remains authorized to conduct business under the laws of the State of New York.

21.    The Parish's principal place of business is 4263 St. Francis Drive, Athol Springs, NY 14010.

22.    The Parish oversaw and continues to oversee a variety of liturgical, sacramental, educational, and faith formation programs, including the School.

23.    At all times material to this complaint, the Parish had and continues to have various programs and activities that seek the participation of children.

6

24.     At all times material to this complaint, the Parish, through its agents, servants, or employees had and continues to have control over its programs involving children, including the School.

25.     At all times material to this complaint, the Parish employed individuals working with or alongside children and providing said children guidance or instruction including, but not limited to, those at the Parish, Franciscan Friars, and School.

26.     The School is a non-profit educational corporation, organized exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

27.     The School is authorized to conduct business under the laws of the State of New York.

28.     The School oversaw and continues to oversee a variety of liturgical, sacramental, educational, and faith formation programs, including most predominantly schools and the Parish.

29.     At all times material to this complaint, the School had and continues to have various programs and activities that seek the participation of children.

30.     At all times material to this complaint, the School, through their agents, servants, or employees, had and continues to have control over their activities involving children, including the School.

31.     At all times material to this complaint, the School had and continues to have the power to employ individuals working with or alongside children and providing said children guidance or instruction including, but not limited to, those at the Parish, Franciscan Friars, and School.

32.     At all times material to this complaint, the School participated in the management, control, and operation of the Franciscan Friars.

7

33.     At all times material to this complaint, the School operated under the control of the Parish.

34.     At all times material to this complaint, the School operated for the benefit of the Parish.

35.     The Diocese of Buffalo ("Diocese") is not a party to this civil action.

36.     On February 28, 2020, the Diocese filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York (Case No. 20-10322) and is currently the debtor in the pending bankruptcy proceeding.

37.     The Diocese is not a named nor pled defendant due to the automatic stay provision of the United States Code. See 11 U.S.C. § 362 et seq.

38.     Although not a party to this civil action, the Diocese oversaw and continues to oversee a variety of liturgical, sacramental, educational, and faith formation programs, including schools and the School; the Diocese had and continues to have various programs and activities that seek the participation of children; the Diocese through its agents, servants, or employees, had and continues to have control over those activities involving children; the Diocese had and continues to have the power to employ individuals working with or alongside children and providing said children guidance or instruction under the auspices of the Diocese including, but not limited to, those at the Parish, Franciscan Friars, the School; Abuser was an agent, servant, or employee of the Diocese; and, while an agent, servant or employee of the Diocese, Abuser remained under the control and supervision of the Diocese.

39.     At all times material to this complaint, Abuser was a priest at the Parish and School.

40.     Upon information and belief, Abuser was previously accused of child sex abuse.

41.     Abuser currently resides in Manchester, New Hampshire with a service address of PO Box 310, Manchester, New Hampshire 03105.

42.     At all times material to this complaint, Abuser was an agent, servant, or employee of the Parish.

43.     At all times material to this complaint, Abuser was an agent, servant, or employee of the School.

44.     At all times material to this complaint, Abuser was an agent, servant, or employee of the Franciscan Friars.

45.     At all times material to this complaint, while an agent, servant or employee of the Parish, Abuser remained under the control and supervision of the Parish.

46.     At all times material to this complaint, while an agent, servant, or employee of the Parish, Abuser remained under the control and supervision of the School.

47.     At all times material to this complaint, while an agent, servant, or employee of the Parish, Abuser remained under the control and supervision of the Franciscan Friars.

48.     At all times material to this complaint, while an agent, servant, or employee of the School, Abuser remained under the control and supervision of the Parish.

49.     At all times material to this complaint, while an agent, servant, or employee of the School, Abuser remained under the control and supervision of the School.

50.     At all times material to this complaint, while an agent, servant, or employee of the School, Abuser remained under the control and supervision of the Franciscan Friars.

51.     At all times material to this complaint, while an agent, servant, or employee of the Franciscan Friars, Abuser remained under the control and supervision of the Parish.

52.     At all times material to this complaint, while an agent, servant, or employee of the Franciscan Friars, Abuser remained under the control and supervision of the School.

53. At all times material to this complaint, while an agent, servant, or employee of the Franciscan Friars, Abuser remained under the control and supervision of the Franciscan Friars.

54. The Parish placed Abuser in positions where he had immediate access to children.

55. The School placed Abuser in positions where he had immediate access to children.

56. The Franciscan Friars placed Abuser in positions where he had immediate access to children.

57. The Parish placed Abuser in positions where he had unfettered and prolonged unsupervised access to children.

58. The School placed Abuser in positions where he had unfettered and prolonged unsupervised access to children.

59. The Franciscan Friars placed Abuser in positions where he had unfettered and prolonged unsupervised access to children.

## **BACKGROUND**

60. By tradition, Roman Catholics and those within their custody and control, including Plaintiff, are taught to hold religious figures in the highest esteem as earthly representatives of God, and that religious figures, unlike lay people, belong to a separate and higher state in life, which Defendants represent to be of divine origin and which they represent, entitles them to special privileges. For these and other reasons relating to the practice of the Roman Catholic Church, religious figures, and other individuals in leadership positions in the Roman Catholic Church, have traditionally occupied positions of great trust, respect, and allegiance among adults and children, including Plaintiff.

61. The pattern and practice of intentionally refusing or failing to disclose the identities and locations of sexually inappropriate or abusive clerics has been practiced by the Catholic Church for decades and continues through current day. The failure to disclose the identities of

such allegedly sexually inappropriate or abusive clerics is unreasonable and knowingly, or recklessly, creates or maintains a condition that endangers the safety and health of members of the public, and more specifically, Plaintiff herein.

62.     Moreover, Roman Catholic Church officials, including Defendants herein, have used their power and influence to prevent victims of such abuse and their families from disclosing allegations of abuse.

## **FACTS**

63.     Plaintiff attended the School between the approximate years of 1979 to 1980, when then infant Plaintiff was approximately fourteen (14) to fifteen (15) years old.

64.     Plaintiff and his family also attended the Parish for religious instruction and devotion.

65.     At all times material to this complaint, Abuser was Plaintiff's priest at the School and Parish, and provided educational and religious instruction to infant Plaintiff under the auspices of the Parish, School, and Franciscan Friars.

66.     Upon information and belief, the Abuser was Plaintiff's vice principal.

67.     At all times material to this complaint, Abuser was an adult.

68.     Between the approximate years of 1979 and 1980, Plaintiff engaged in recreational, educational, and religious activities at the School and Parish.

69.     During said activities, Plaintiff, as a vulnerable minor, was dependent on the Defendants and Abuser for his care and welfare.

70.     During said activities, Defendants had custody of Plaintiff and accepted the entrustment of then infant Plaintiff.

71.     During said activities, Defendants were responsible for, and had authority over, then infant Plaintiff.

72.     Under the doctrine of *in loco parentis*, Defendants assumed duties to protect then infant Plaintiff from harm.

73.     Through Abuser's position at, within, or for the Parish, School, and Franciscan Friars, Abuser was put in direct contact with Plaintiff, a minor student or parishioner of the Parish, School, and Franciscan Friars.

74.     Under these circumstances, Plaintiff came to be under the direction, contact, and control of Abuser, who used his position of authority and trust to manipulate, sexually abuse, and sexually harass then infant Plaintiff.

75.     On numerous occasions, from approximately 1979 through about 1980, while Plaintiff was a minor, Abuser, while acting as a priest, counselor, teacher, trustee, director, officer, employee, agent, servant, or volunteer of the Parish, sexually assaulted, sexually abused, or had sexual contact with Plaintiff in violation of the laws of the State of New York, including New York's Penal Law Article 130.

76.     On numerous occasions, from approximately 1979 through about 1980, while Plaintiff was a minor, Abuser, while acting as a priest, counselor, teacher, trustee, director, officer, employee, agent, servant, or volunteer of the School, sexually assaulted, sexually abused, or had sexual contact with Plaintiff in violation of the laws of the State of New York, including New York's Penal Law Article 130.

77.     On numerous occasions, from approximately 1979 through about 1980, while Plaintiff was a minor, Abuser, while acting as a priest, counselor, teacher, trustee, director, officer, employee, agent, servant, or volunteer of the Franciscan Friars, sexually assaulted, sexually abused, or had sexual contact with Plaintiff in violation of the laws of the State of New York, including New York's Penal Law Article 130.

78.     Specifically, the abuse included, but was not limited to, Abuser fondling and groping then infant Plaintiff's bare genitals and buttocks, and Abuser forcibly clenching Plaintiff's head between Abuser's thighs.

79.     Said sexual abuse approximate three (3) times over the course of the school year on School property.

80.     Plaintiff's relationship to the Parish, as a vulnerable minor, parishioner, and participant in its religious and instructional activities, was one in which Plaintiff was subject to its ongoing influence.  The dominating culture of the Catholic Church over Plaintiff pressured Plaintiff not to report Abuser's sexual abuse.

81.     Plaintiff's relationship to the School, as a vulnerable minor, student, and participant in its religious and instructional activities, was one in which Plaintiff was subject to its ongoing influence.  The dominating culture of the Catholic Church over Plaintiff pressured Plaintiff not to report Abuser's sexual abuse.

82.     Plaintiff's relationship to the Franciscan Friars, as a vulnerable minor, student, and participant in their religious and instructional activities, was one in which Plaintiff was subject to their ongoing influence.  The dominating culture of the Catholic Church over Plaintiff pressured Plaintiff not to report Abuser's sexual abuse.

83.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Parish.

84.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the School.

85.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Franciscan Friars.

13

86.     The Parish knew, or reasonably should have known, or knowingly condoned, or covered up, the inappropriate and unlawful sexual activities of Abuser.

87.     The School knew, or reasonably should have known, or knowingly condoned, or covered up, the inappropriate and unlawful sexual activities of Abuser.

88.     The Franciscan Friars knew, or reasonably should have known, or knowingly condoned, or covered up, the inappropriate and unlawful sexual activities of Abuser.

89.     The Parish negligently or recklessly believed Abuser was fit to work with children, that any previous problems Abuser had were fixed and cured, that Abuser would not sexually molest children, and that Abuser would not injure children.

90.     The School negligently or recklessly believed Abuser was fit to work with children, that any previous problems Abuser had were fixed and cured, that Abuser would not sexually molest children, and that Abuser would not injure children.

91.     The Franciscan Friars negligently or recklessly believed Abuser was fit to work with children, that any previous problems Abuser had were fixed and cured, that Abuser would not sexually molest children, and that Abuser would not injure children.

92.     The Parish had the responsibility to supervise and direct its employees or agents serving at the Parish or School, and specifically had a duty not to aid individuals such as Abuser by assigning, maintaining, or appointing, him to a position with unfettered access to minors.

93.     The School had the responsibility to supervise and direct its employees or agents serving at the Parish or School, and specifically had a duty not to aid individuals such as Abuser by assigning, maintaining, or appointing, him to a position with unfettered access to minors.

94.     The Franciscan Friars had the responsibility to supervise and direct their employees or agents serving with the Parish or School, and specifically had a duty not to aid individuals such

14

as Abuser by assigning, maintaining, or appointing, him to a position with unfettered access to minors.

95.     By holding Abuser out as safe to work with children and undertaking the custody, supervision, and care of minor Plaintiff as a parishioner and student, the Parish entered a fiduciary relationship with Plaintiff.   As a result of Plaintiff being a vulnerable minor and the Parish undertaking his care and guidance, the Parish held a distinct position of power over Plaintiff.

96.     By holding Abuser out as safe to work with children and undertaking the custody, supervision, and care of minor Plaintiff as a parishioner and student, the School entered a fiduciary relationship with Plaintiff.   As a result of Plaintiff being a vulnerable minor and the School undertaking his care and guidance, the School held a distinct position of power over Plaintiff.

97.     By holding Abuser out as safe to work with children and undertaking the custody, supervision, and care of minor Plaintiff as a parishioner and student, the Franciscan Friars entered a fiduciary relationship with Plaintiff.   As a result of Plaintiff being a vulnerable minor and the Franciscan Friars undertaking his care and guidance the Franciscan Friars held a distinct position of power over Plaintiff.

98.     By holding itself out as being able to provide a safe environment for children, the Parish sought and accepted this position of power over Plaintiff. This empowerment prevented then minor Plaintiff from effectively protecting himself.  As a result, the Parish entered a fiduciary relationship with Plaintiff.

99.     By holding itself out as being able to provide a safe environment for children, the School sought and accepted this position of power over Plaintiff. This empowerment prevented then minor Plaintiff from effectively protecting himself.  As a result, the School entered a fiduciary relationship with Plaintiff.

100.     By holding themselves out as being able to provide a safe environment for children, the Franciscan Friars sought and accepted this position of power over Plaintiff. This empowerment prevented then minor Plaintiff from effectively protecting himself.  As a result, the Franciscan Friars entered a fiduciary relationship with Plaintiff.

101.     The Parish had a special relationship with Plaintiff.

102.     The School had a special relationship with Plaintiff.

103.     The Franciscan Friars had a special relationship with Plaintiff.

104.     The Parish owed Plaintiff a duty of reasonable care because the Parish had knowledge about the risk that Abuser posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children.

105.     The School owed Plaintiff a duty of reasonable care because the School had knowledge about the risk that Abuser posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children.

106.     The Franciscan Friars owed Plaintiff a duty of reasonable care because the Franciscan Friars had knowledge about the risk that Abuser posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children.

107.     The Defendants owed Plaintiff a duty of reasonable care because they sought out youth or their parents or guardians for participation in their programs; encouraged youth and their parents or guardians to have the youth participate in their programs; undertook custody of said youth; promoted their facilities and programs as being safe for children; held their agents, out as safe to work with children; encouraged youth and their parents or guardians to spend time with their agents; and encouraged their agents, to spend time with, interact with, and welcome children.

108.     The Parish owed Plaintiff a duty to protect Plaintiff from harm because the Parish's actions created a foreseeable risk of harm to Plaintiff.

16

109. The School owed Plaintiff a duty to protect Plaintiff from harm because the School's actions created a foreseeable risk of harm to Plaintiff.

110. The Franciscan Friars owed Plaintiff a duty to protect Plaintiff from harm because the Franciscan Friars' actions created a foreseeable risk of harm to Plaintiff.

111. At all times material to this complaint, the Defendants, or their agents, or their employees, were responsible and liable for each other's **_negligent_** actions and omissions via, but not limited to, *respondeat superior.* However, Plaintiff does not allege that the doctrine of *respondeat superior* applies directly to **_intentional_** acts of sexual assault or sexual abuse alleged of the individual perpetrator identified in this complaint.

112. The Parish's breach of its duties include, but are not limited to: failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement the policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make sure that the policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the workers at institutions and programs within the Parish, failure to protect children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying on mental health professionals, or failure by relying on people who claimed that they could treat child molesters.

113. The School's breach of its duties include, but are not limited to: failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement the policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make

17

sure that the policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the workers within the School, failure to protect children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying on mental health professionals, or failure by relying on people who claimed that they could treat child molesters.

114. The Franciscan Friars' breach of their duties include, but are not limited to: failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement the policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make sure that the policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train those within the Franciscan Friars, failure to protect children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying on mental health professionals, or failure by relying on people who claimed that they could treat child molesters.

115. The Parish also breached its duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk Abuser posed and the risks of child sexual abuse by its employees or

agents. The Parish also failed to warn Plaintiff about any of the knowledge that it had about child sexual abuse.

116. The School also breached its duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk Abuser posed and the risks of child sexual abuse by its employees or agents. The School also failed to warn Plaintiff about any of the knowledge that it had about child sexual abuse.

117. The Franciscan Friars also breached their duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk Abuser posed and the risks of child sexual abuse by their employees or agents. The Franciscan Friars also failed to warn Plaintiff about any of the knowledge that they had about child sexual abuse.

118. The Parish also violated a legal duty by failing to report known or suspected abuse of children by Abuser or its other agents to the police and law enforcement.

119. The School also violated a legal duty by failing to report known or suspected abuse of children by Abuser or its other agents to the police and law enforcement.

120. The Franciscan Friars also violated a legal duty by failing to report known or suspected abuse of children by Abuser or their other agents to the police and law enforcement.

121. By employing Abuser at the Parish or School, or other facilities under its supervision, the Parish, through its agents, affirmatively represented to minor children and their families that Abuser did not pose a threat to children, did not have a history of molesting children, that the Parish did not know that Abuser had a history of molesting children, and that the Parish did not know Abuser was a danger to children. Plaintiff and Plaintiff's family were induced to rely on these affirmations and did rely on them.

122. By employing Abuser at the School, the School through its agents, affirmatively represented to minor children and their families that Abuser did not pose a threat to children, did

not have a history of molesting children, that the School did not know that Abuser had a history of molesting children, and that the School did not know Abuser was a danger to children. Plaintiff and Plaintiff's family were induced to rely on these affirmations and did rely on them.

123.    By employing Abuser at the School, or other facilities under their supervision, the Franciscan Friars through their agents, affirmatively represented to minor children and their families that Abuser did not pose a threat to children, did not have a history of molesting children, that the Franciscan Friars did not know that Abuser had a history of molesting children, and that the Franciscan Friars did not know Abuser was a danger to children. Plaintiff and Plaintiff's family were induced to rely on these affirmations and did rely on them.

124.    At no time did the Parish ever send an official, investigator, or any employee or independent contractor to advise or provide any form of notice to the parishioners, students, or their families, either verbally or in writing, that there were credible allegations against Abuser and to request anyone who saw, suspected, or suffered sexual abuse, to come forward and file a report with the police department. Rather, the Parish remained silent.

125.    At no time did the School ever send an official, investigator, or any employee or independent contractor to advise or provide any form of notice to the parishioners, students, or their families, either verbally or in writing, that there were credible allegations against Abuser and to request anyone who saw, suspected, or suffered sexual abuse, to come forward and file a report with the police department. Rather, the School remained silent.

126.    At no time did the Franciscan Friars ever send an official, investigator, or any employee or independent contractor to advise or provide any form of notice to the parishioners, students, or their families, either verbally or in writing, that there were credible allegations against Abuser and to request anyone who saw, suspected, or suffered sexual abuse, to come forward and file a report with the police department. Rather, the Franciscan Friars remained silent.

20

127.     The Parish, as school administrators, violated various New York statutes, including, but not limited to N.Y. Soc. Serv. Law §§ 413 and 420, which require, *inter alia*, school officials, teachers, day care center workers, providers of family or group family day care, and any other childcare worker to report suspected cases of child abuse and impose liability for failure to report.

128.     The School violated various New York statutes, including, but not limited to N.Y. Soc. Serv. Law §§ 413 and 420, which require, *inter alia*, school officials, teachers, day care center workers, providers of family or group family day care, and any other childcare worker to report suspected cases of child abuse and impose liability for failure to report.

129.     The Franciscan Friars, as school administrators, violated various New York statutes, including, but not limited to N.Y. Soc. Serv. Law §§ 413 and 420, which require, *inter alia*, school officials, teachers, day care center workers, providers of family or group family day care, and any other childcare worker to report suspected cases of child abuse and impose liability for failure to report.

130.     As a result of Defendants' conduct described herein, Plaintiff has and will continue to suffer personal physical, eemotional and psychological injuries, including but not limited to great pain of mind and body; severe and permanent emotional distress; physical manifestations of emotional distress; problems sleeping and concentrating; low self-confidence, low self-respect, and low self-esteem; feelings of worthlessness, shamefulness, and embarrassment; feeling alone and isolated; losing faith in God and authority figures; feeling estranged from religion; struggling with gainful employment and career advancement; feeling helpless and hopeless; problems with sexual and emotional intimacy; relationship problems; trust issues; feeling confused and angry; depression; anxiety; feeling dirty, used, and damaged; experiencing traumatic flashbacks; and invasive feelings that his childhood and innocence were stolen.  Plaintiff was prevented and will continue to be prevented from performing Plaintiff's normal daily activities; has incurred and will

21

continue to incur expenses for medical and psychological treatment, therapy, and counseling; and, on information and belief, has incurred and will continue to incur loss of income or loss of earning capacity. As a victim of Defendants' misconduct, Plaintiff is unable at this time to fully describe all the details of that abuse and the extent of the harm Plaintiff suffered as a result.

131.    The injuries and damages suffered by Plaintiff are specific in kind to Plaintiff, special, peculiar, and above and beyond those injuries and damages suffered by the public.

## NATURE OF ALLEGED CONDUCT

132.    This action alleges physical, psychological, and emotional injuries suffered as a result of conduct which would constitute a sexual offense on a minor as defined in Article 130 of the New York Penal Law, including without limitation, conduct constituting sexual abuse (consisting of sexual contact) (N.Y. Penal Law§§ 130.55 - 130.77).

133.    The limitation of liability set forth in CPLR Art. 16 is not applicable to the claim of personal injury alleged herein, by reason of one or more of the exemptions provided in CPLR § 1602, including without limitation, that Defendants acted, with reckless disregard for the safety of Plaintiff, or knowingly, or intentionally, in concert with its agents and employees, to retain and permit Abuser mentioned herein unfettered and prolonged unsupervised access to children.

## FIRST CAUSE OF ACTION: NEGLIGENCE

134.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

135.    The Parish knew or was negligent in not knowing Abuser posed a threat of sexual abuse to children.

136.    The School knew or was negligent in not knowing Abuser posed a threat of sexual abuse to children.

22

137.    The Franciscan Friars knew or were negligent in not knowing Abuser posed a threat of sexual abuse to children.

138.    Prior to the sexual abuse of Plaintiff, the Parish knew or should have known that Abuser was unfit to work with children.  The Parish, by and through its agents, servants or employees knew, or should have known of Abuser's propensity to commit sexual abuse and of the risk to Plaintiff's safety.  At the very least, the Parish knew or should have known that it did not have sufficient information about whether its employees or those working within the Parish or School were safe or not.

139.    Prior to the sexual abuse of Plaintiff, the School knew or should have known that Abuser was unfit to work with children.  The School, by and through its agents, servants or employees knew, or should have known of Abuser's propensity to commit sexual abuse and of the risk to Plaintiff's safety.  At the very least, the School knew or should have known that it did not have sufficient information about whether its employees or those working at the School, were safe or not.

140.    Prior to the sexual abuse of Plaintiff, the Franciscan Friars knew or should have known that Abuser was unfit to work with children.  The Franciscan Friars, by and through their agents, servants or employees knew, or should have known of Abuser's propensity to commit sexual abuse and of the risk to Plaintiff's safety.  At the very least, the Franciscan Friars knew or should have known that they did not have sufficient information about whether their employees or those working at the School, were safe or not.

141.    The acts of Abuser described hereinabove were undertaken, or enabled by, or during the course, or within the scope of Abuser's employment, appointment, or agency with the Parish.

23

142.     The acts of Abuser described hereinabove were undertaken, or enabled by, or during the course, or within the scope of Abuser's employment, appointment, or agency with the School.

143.     The acts of Abuser described hereinabove were undertaken, or enabled by, or during the course, or within the scope of Abuser's employment, appointment, or agency with the Franciscan Friars.

144.     The Parish's willful, wanton, grossly negligent, or negligent, acts of commission or omission resulted directly or proximately in the damages set forth herein at length.

145.     The School's willful, wanton, grossly negligent, or negligent, acts of commission or omission resulted directly or proximately in the damages set forth herein at length.

146.     The Franciscan Friars' willful, wanton, grossly negligent, or negligent, acts of commission or omission resulted directly or proximately in the damages set forth herein at length.

147.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Parish.

148.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the School.

149.     At all times material to this complaint, Abuser was under the direct supervision, employ, or control of the Franciscan Friars.

150.     At all times material to this complaint, the Parish's actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in its disregard for the rights and safety of Plaintiff.

151.     At all times material to this complaint, the School's actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in its disregard for the rights and safety of Plaintiff.

24

152. At all times material to this complaint, the Franciscan Friars' actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in their disregard for the rights and safety of Plaintiff.

153. The Parish owed Plaintiff a duty of care because it had a special relationship with Plaintiff.

154. The School owed Plaintiff a duty of care because it had a special relationship with Plaintiff.

155. The Franciscan Friars owed Plaintiff a duty of care because they had a special relationship with Plaintiff.

156. The Parish had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents or guardians, or the other parents or guardians of young, innocent, vulnerable children in the Parish, to properly train and supervise its clerics, employees, or agents. This special relationship arose because of the high degree of vulnerability of those children, including Plaintiff, entrusted to its care. As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, the Parish had a duty to establish measures of protection not necessary for people who are older and better able to protect themselves.

157. The School had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents or guardians, or the other parents or guardians of young, innocent, vulnerable children in the School, to properly train and supervise its clerics, employees, or agents. This special relationship arose because of the high degree of vulnerability of those children, including Plaintiff, entrusted to its care. As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, the School had a duty to establish measures of protection not necessary for people who are older and better able to protect themselves.

158.     The Franciscan Friars had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents or guardians, or the other parents or guardians of young, innocent, vulnerable children in the School, to properly train and supervise its clerics, employees, or agents. This special relationship arose because of the high degree of vulnerability of those children, including Plaintiff, entrusted to its care.  As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, the Franciscan Friars had a duty to establish measures of protection not necessary for people who are older and better able to protect themselves.

159.     The Parish owed Plaintiff a duty to protect Plaintiff from Abuser's sexual deviancy, before and after Abuser's misconduct.

160.     The School owed Plaintiff a duty to protect Plaintiff from Abuser's sexual deviancy, before and after Abuser's misconduct.

161.     The Franciscan Friars owed Plaintiff a duty to protect Plaintiff from Abuser's sexual deviancy, before and after Abuser's misconduct.

162.     By accepting custody of infant Plaintiff, the Parish established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury. Further, the Parish entered a fiduciary relationship with Plaintiff by undertaking the custody, supervision of, or care of infant Plaintiff.  As a result of Plaintiff being an infant, and by the Parish undertaking the care and guidance of Plaintiff, the Parish also held a position of power over Plaintiff.  Further, the Parish, by holding itself out as being able to provide a safe environment for children, solicited or accepted this position of power.  The Parish, through its employees or agents, exploited this power over Plaintiff and, thereby, put the infant Plaintiff at risk for sexual abuse.

163.     By accepting custody of infant Plaintiff, the School established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

26

Further, the School entered a fiduciary relationship with Plaintiff by undertaking the custody, supervision, or care of infant Plaintiff. As a result of Plaintiff being an infant, and by the School undertaking the care and guidance of Plaintiff, the School also held a position of power over Plaintiff. Further, the School, holding itself out as being able to provide a safe environment for children, solicited or accepted this position of power. The School, through its employees or agents, exploited this power over Plaintiff and, thereby, put the infant Plaintiff at risk for sexual abuse.

164. By accepting custody of infant Plaintiff, the Franciscan Friars established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury. Further, the Franciscan Friars entered a fiduciary relationship with Plaintiff by undertaking the custody, supervision of, or care of infant Plaintiff. As a result of Plaintiff being an infant, and by the Franciscan Friars undertaking the care and guidance of Plaintiff, the Franciscan Friars also held a position of power over Plaintiff. Further, the Franciscan Friars, by holding themselves out as being able to provide a safe environment for children, solicited or accepted this position of power. The Franciscan Friars, through their employees or agents, exploited this power over Plaintiff and, thereby, put the infant Plaintiff at risk for sexual abuse.

165. By establishing and operating the School, accepting infant Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff, accepting custody of infant Plaintiff *in loco parentis*, and by establishing a relationship with Plaintiff, the Parish entered an express or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for the children who participated in its programs. The Parish had the duty to exercise the same degree of care over minors under its control as a reasonably prudent parent would have exercised under similar circumstances.

166. By establishing and operating the School, accepting infant Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff,

accepting custody of infant Plaintiff *in loco parentis*, and by establishing a relationship with Plaintiff, the School entered an express or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for the children who participated in its programs. The School had the duty to exercise the same degree of care over minors under its control as a reasonably prudent parent would have exercised under similar circumstances.

167.    By establishing and operating the School, accepting infant Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for Plaintiff, accepting custody of infant Plaintiff *in loco parentis*, and by establishing a relationship with Plaintiff, the Franciscan Friars entered an express or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for the children who participated in their programs. The Franciscan Friars had the duty to exercise the same degree of care over minors under their control as a reasonably prudent parent would have exercised under similar circumstances.

168.    The Parish breached the aforementioned duties it owed Plaintiff and was otherwise negligent.

169.    The School breached the aforementioned duties it owed Plaintiff and was otherwise negligent.

170.    The Franciscan Friars breached the aforementioned duties they owed to Plaintiff and were otherwise negligent.

171.    The Parish additionally violated a legal duty by failing to report to law enforcement known or suspected abuse of children by Abuser or its other agents.

172.    The School additionally violated a legal duty by failing to report to law enforcement known or suspected abuse of children by Abuser or its other agents.

173.    The Franciscan Friars additionally violated a legal duty by failing to report to law enforcement known or suspected abuse of children by Abuser or their other agents.

174.    The Parish's actions or inactions created a foreseeable risk of harm to Plaintiff.  As a vulnerable child participating in the programs and activities the Parish offered to minors, Plaintiff was a foreseeable victim.  Additionally, as a vulnerable child who Abuser had access to through the Parish's facilities and programs, Plaintiff was a foreseeable victim.

175.    The School's actions or inactions created a foreseeable risk of harm to Plaintiff.  As a vulnerable child participating in the programs and activities the School offered to minors, Plaintiff was a foreseeable victim.  Additionally, as a vulnerable child who Abuser had access to through the School's facilities and programs, Plaintiff was a foreseeable victim.

176.    The Franciscan Friars' actions or inactions created a foreseeable risk of harm to Plaintiff.  As a vulnerable child participating in the programs and activities the Franciscan Friars offered to minors, Plaintiff was a foreseeable victim.  Additionally, as a vulnerable child who Abuser had access to through the Franciscan Friars' facilities and programs, Plaintiff was a foreseeable victim.

177.    The Parish's conduct showed a reckless or willful disregard for the safety and well-being of Plaintiff and other children.

178.    The School's conduct showed a reckless or willful disregard for the safety and well-being of Plaintiff and other children.

179.    The Franciscan Friars' conduct showed a reckless or willful disregard for the safety and well-being of Plaintiff and other children.

180.    Defendants breached their duties to the Plaintiff and were otherwise negligent.

181.    As a direct or indirect result of said conduct, Plaintiff has suffered the injuries and damages described herein.

182.    By reason of the foregoing, Defendants are jointly, severally, or in the alternative, liable to Plaintiff for compensatory damages, and for punitive damages, together with interest and costs.

## SECOND CAUSE OF ACTION: NEGLIGENT HIRING, RETENTION, OR DIRECTION

183.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

184.    The Parish hired Abuser.

185.    The School hired Abuser.

186.    The Franciscan Friars hired Abuser.

187.    The Parish hired Abuser for a position that required Abuser to work closely with, mentor, supervise, and counsel young boys and girls.

188.    The School hired Abuser for position that required Abuser to work closely with, mentor, supervise, and counsel young boys and girls.

189.    The Franciscan Friars hired Abuser for a position that required Abuser to work closely with, mentor, supervise, and counsel young boys and girls.

190.    The Parish herein was negligent in hiring Abuser because the Parish knew or should have known, through the exercise of reasonable care, of Abuser's propensity to develop inappropriate relationships with children in the Parish's charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

191.    The School herein was negligent in hiring Abuser because the School knew or should have known, through the exercise of reasonable care, of Abuser's propensity to develop inappropriate relationships with children in the School's charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

192. The Franciscan Friars herein were negligent in hiring Abuser because the Franciscan Friars knew or should have known, through the exercise of reasonable care, of Abuser's propensity to develop inappropriate relationships with children in the Franciscan Friars' charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

193. Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been hired by the Parish to mentor and counsel children in the Parish.

194. Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been hired by the School to mentor and counsel children in the School.

195. Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been hired by the Franciscan Friars to mentor and counsel children in the School.

196. Abuser continued to sexually abuse Plaintiff while within the Parish and School.

197. The harm complained of herein was foreseeable.

198. Plaintiff would not have suffered the foreseeable harm complained of herein but for the negligence of the Parish in having placed Abuser, or allowed Abuser to remain, in his position.

199. Plaintiff would not have suffered the foreseeable harm complained of herein but for the negligence of the School in having placed Abuser, or allowed Abuser to remain, in his position.

200. Plaintiff would not have suffered the foreseeable harm complained of herein but for the negligence of the Franciscan Friars in having placed Abuser, or allowed Abuser to remain, in his position.

201. At all times material to this complaint, while Abuser was employed or appointed by the Parish, he was supervised by, under the direction of, or answerable to, the Parish, School, Franciscan Friars, or their agents or employees.

202.     At all times material to this complaint, while Abuser was employed or appointed by the School, he was supervised by, under the direction of, or answerable to, the Parish, School, Franciscan Friars, or their agents or employees.

203.     At all times material to this complaint, while Abuser was employed or appointed by the Franciscan Friars, he was supervised by, under the direction of, or answerable to, the Parish, School, Franciscan Friars, or their agents or employees.

204.     The Parish was negligent in its direction or supervision of Abuser as the Parish knew or should have known, through the exercise of ordinary care, that Abuser's conduct would subject third parties to an unreasonable risk of harm, including Abuser's propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

205.     The School was negligent in its direction or supervision of Abuser as the School knew or should have known, through the exercise of ordinary care, that Abuser's conduct would subject third parties to an unreasonable risk of harm, including Abuser's propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

206.     The Franciscan Friars were negligent in their direction or supervision of Abuser as the Franciscan Friars knew or should have known, through the exercise of ordinary care, that Abuser's conduct would subject third parties to an unreasonable risk of harm, including Abuser's propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

207.     The Parish failed to take steps to prevent such conduct from occurring.

208.     The School failed to take steps to prevent such conduct from occurring.

209.     The Franciscan Friars failed to take steps to prevent such conduct from occurring.

32

210.    The Parish was negligent in its retention of Abuser as the Parish knew, or should have known, through the exercise of reasonable care, of his propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

211.    The School was negligent in its retention of Abuser as the School knew, or should have known, through the exercise of reasonable care, of his propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

212.    The Franciscan Friars were negligent in their retention of Abuser as the Franciscan Friars knew, or should have known, through the exercise of reasonable care, of his propensity to develop inappropriate relationships with children under his charge and to engage in sexual behavior and lewd and lascivious conduct with such children.

213.    The Parish retained Abuser in his position as mentor and counselor to such children and thus left him in a position to continue such behavior.

214.    The School retained Abuser in his position as mentor and counselor to such children and thus left him in a position to continue such behavior.

215.    The Franciscan Friars retained Abuser in his position as mentor and counselor to such children and thus left him in a position to continue such behavior.

216.    The School was further negligent in its retention, supervision, or direction of Abuser allowing him to sexually molest Plaintiff on the School's premises.

217.    The Franciscan Friars were further negligent in their retention, supervision, or direction of Abuser allowing him to sexually molest Plaintiff on the School's premises.

218.    The Parish failed to take reasonable steps to prevent such events from occurring on the Parish's premises.

219.     The School failed to take reasonable steps to prevent such events from occurring on the School's premises.

220.     The Franciscan Friars failed to take reasonable steps to prevent such events from occurring on the School's premises.

221.     Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been negligently retained, supervised, or directed by the Parish as a mentor and counselor to its infant parishioners, including Plaintiff.

222.     Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been negligently retained, supervised, or directed by the School as a mentor and counselor to its infant students, including Plaintiff.

223.     Abuser would not and could not have been in a position to sexually abuse Plaintiff had he not been negligently retained, supervised, or directed by the Franciscan Friars as a mentor and counselor to their infant students, including Plaintiff.

224.     The Parish breached its duty of care to the Plaintiff and was otherwise negligent.

225.     The School breached its duty of care to the Plaintiff and was otherwise negligent.

226.     The Franciscan Friars breached their duty of care to the Plaintiff and were otherwise negligent.

227.     As a direct or indirect result of said negligence, Plaintiff has suffered the injuries and damages described herein.

228.     By reason of the foregoing, Defendants are jointly, severally, or in the alternative, liable to Plaintiff for compensatory damages, and for punitive damages, together with interest and costs.

## THIRD CAUSE OF ACTION: BREACH OF STATUTORY DUTY TO REPORT
## ABUSE UNDER SOC. SERV. LAW §§ 413 and 420

229.    Plaintiff repeats and realleges by reference every allegation set forth as if fully set forth herein.

230.    Pursuant to N.Y. Soc. Serv. Law §§ 413 and 420, Defendants as school administrators, by and through, including but not limited to their principals, agents, or employees, had a statutorily imposed duty to report or cause to report abuse or maltreatment of children in their care, or parents, guardians, custodians, or other persons legally responsible for such children that otherwise came before them in their official capacity, when Defendants had reasonable cause to suspect abuse or maltreatment of such children.

231.    Defendants breached that duty by negligently, knowingly, or willfully failing to report or causing to report reasonable suspicion of abuse or maltreatment of such children, and Plaintiff in particular.

232.    As a direct or indirect result of said conduct, Plaintiff has suffered injuries and damages described herein.

233.    By reason of the foregoing, Defendants, jointly, severally, or in the alternative, are liable to Plaintiff for compensatory damages, and for punitive damages, together with interest and costs.

## FOURTH CAUSE OF ACTION: ASSAULT
## (against MICHAEL J. KOLODZIEJ)

234.    Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

235.    At all times material hereto, the acts of Abuser described above placed Plaintiff in reasonable fear of harmful and injurious contact, including but not limited to further and continued intentional and malicious sexual assault, molestation, battery, and abuse.

35

236.     At all times material hereto, Abuser acted with reckless disregard for the safety and well-being of Plaintiff.

237.     At all times material hereto, Abuser acted willfully, wantonly, maliciously, and recklessly.

238.     At all times material hereto, Abuser was under the direct supervision, employ and/or control of the Defendants.

239.     By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, together with interest and costs.

## FIFTH CAUSE OF ACTION:  BATTERY
### (against MICHAEL J. KOLODZIEJ)

240.     Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

241.     By the acts of Abuser described hereinabove, Abuser intentionally and maliciously sexually assaulted, battered, molested, abused, and otherwise injured Plaintiff.

242.     The offensive and harmful contact of Abuser as alleged herein was performed by Abuser without the consent of Plaintiff.

243.     At all times material hereto, Abuser acted with reckless disregard for the safety and wellbeing of Plaintiff.

244.     At all times material hereto, Abuser acted willfully, wantonly, maliciously, and recklessly.

245.     At all times material hereto, Abuser was under the direct supervision, employ, or control of the Defendants.

246.     As a direct result of said conduct, Plaintiff has suffered the injuries and damages described herein.

247. By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, together with interest and costs.

### SIXTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against MICHAEL J. KOLODZIEJ)

248. Plaintiff repeats and realleges by reference every allegation set forth above as if fully set forth herein.

249. At all times material hereto, Abuser molested Plaintiff, which Abuser knew would cause, or disregarded the substantial probability that it would cause, severe emotional distress while the Defendants employed Abuser as Plaintiff's custodian, temporary guardian, chaperone, supervisor, teacher, mentor, or counselor.

250. At all times material hereto, it was part of Abuser's job to gain Plaintiff's trust.

251. Abuser used his position, and the representations made by the Defendants about his character that accompanied that position, to gain Plaintiff's trust and confidence and to create opportunities to violate Plaintiff.

252. Plaintiff suffered severe emotional distress, including psychological and emotional injury as described above.

253. This distress was caused by Abuser's sexual abuse of Plaintiff.

254. The sexual abuse of Plaintiff was extreme and outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized community.

255. By reason of the foregoing sexual contact, Plaintiff has suffered harms as more fully alleged herein, including emotional trauma and related continuing psychological sequelae.

256. By reason of the foregoing, Defendant is liable to Plaintiff for compensatory damages and punitive damages, together with interest and costs.

**WHEREFORE,** it is respectfully requested that the Court grant judgment in this action in favor of Plaintiff, and against Defendants, jointly and severally, in a sum of money exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with all applicable interest, costs, disbursements, as well as punitive damages and such other, further, and different relief as the Court in its discretion shall deem to be just, proper and equitable.

Plaintiff further places Defendants on notice and reserves the right to interpose claims sounding in Fraudulent Concealment, Deceptive Practices, or Civil Conspiracy should the facts and discovery materials support such claims.

Dated: New York, New York
August 2, 2021

Yours, etc.,

By: Adam P. Slater, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906


Linc C. Leder, Esq.
SLATER SLATER SCHULMAN LLP
*Counsel for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

38

SUPREME COURT OF THE STATE NEW YORK
COUNTY OF ERIE

-------------------------------------------------------------X

GREGG PACILLO,

                                Index No.

         Plaintiff,

   -against-

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA PROVINCE,
FRANCISCAN FATHERS MINOR CONVENTUAL,
FRANCISCAN FRIARS- OUR LADY OF THE
ANGELS PROVINCE, INC., and MICHAEL J.
KOLODZIEJ,

         Defendants.

-------------------------------------------------------------X

## SUMMONS & VERIFIED COMPLAINT

Slater Slater Schulman LLP
*Attorneys for Plaintiff*
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 922-0906

### CERTIFICATION

      Pursuant to 22 NYCRR §130-1.1-a, the undersigned, an attorney duly admitted to practice in the courts of the State of New York, certifies that, upon information and belief, and reasonable inquiry, the contentions contained in the annexed document are not frivolous as defined in subsection (c) of the aforesaid section.

Adam P. Slater, Esq.

Linc C. Leder, Esq.

# APPENDIX 2

STATE OF NEW YORK
SUPREME COURT          COUNTY OF ERIE

GREGG PACILLO,

                    Plaintiff,

v.

ST. FRANCIS HIGH SCHOOL, ST. FRANCIS OF
ASSISI PARISH, ST. ANTHONY OF PADUA
PROVINCE, FRANCISCAN FATHERS MINOR
CONVENTUAL, FRANCISCAN FRIARS-OUR
LADY OF THE ANGELS PROVINCE, INC., and
MICHAEL J. KOLODZIEJ,

                    Defendants.

**VERIFIED ANSWER**

**Index No. 810502/2021**

Defendant, ST. FRANCIS OF ASSISI ROMAN CATHOLIC CHURCH SOCIETY OF

ATHOL SPRINGS, NEW YORK ("Defendant"), incorrectly sued herein as ST. FRANCIS

HIGH SCHOOL, ST. FRANCIS OF ASSISI PARISH, by its attorneys, WOODS OVIATT

GILMAN LLP, for its answer to the Complaint herein:

1.       Denies knowledge and information sufficient to form a belief as to the allegations

contained in Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, 25, 26,

27, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 49, 50, 52, 53, 54, 55, 56, 57,

58, 59, 60, 63, 64, 65, 66, 67, 68, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 84, 85, 87, 88, 90, 91, 93,

94, 96, 97, 99, 100, 102, 103, 105, 106, 109, 110, 113, 114, 116, 117, 119, 122, 123, 124, 125,

126, 128, 129, 133, 136, 137, 139, 140, 142, 143, 145, 146, 148, 149, 151, 152, 154, 155, 157,

158, 160, 161, 163, 164, 165, 166, 167, 169, 170, 172, 173, 175, 176, 178, 179, 185, 186, 188,

189, 191, 192, 194, 195, 196, 199, 200, 202, 203, 205, 206, 208, 209, 211, 212, 214, 215, 216,

217, 219, 220, 222, 223, 225, 226, 235, 236, 237, 241, 242, 243, 244, 250, 253, and 254 of the

Complaint.

{9627262: }

Case 1-20-10322-CLB,   Doc 4304,   Filed 10/29/25,   Entered 10/29/25 11:43:44,
Description: Main Document , Page 85 of 90
1 of 6

2.      Denies knowledge and information sufficient to form a belief as to the allegations in Paragraphs 19, 20, and 21 of the Complaint, except admits ST. FRANCIS OF ASSISI ROMAN CATHOLIC CHURCH SOCIETY OF ATHOL SPRINGS, NEW YORK, is or was a not-for-profit religious corporation duly incorporated under the laws of the State of New York.

3.      Denies the allegations contained in Paragraphs 10, 33, 34, 45, 48, and 51 of the Complaint.

4.      As to the allegations contained in Paragraphs 61, 62, 69, 70, 71, 72, 83, 86, 89, 92, 95, 98, 101, 104, 107, 108, 111, 112, 115, 118, 120, 121, 127, 130, 131, 132, 135, 138, 141, 144, 147, 150, 153, 156, 159, 162, 168, 171, 174, 177, 180, 181, 182, 184, 187, 190, 193, 197, 198, 201, 206, 207, 210, 213, 218, 221, 224, 227, 228, 230, 231, 232, 233, 238, 239, 245, 246, 247, 249, 251, 252, 255, and 256 of the Complaint, Defendant denies the allegations as they pertain to Defendant, and denies knowledge and information as to the remainder of the allegations therein.

5.      Repeats and realleges each and every answer to the allegations contained in Paragraphs 134, 183, 229, 234, 240, and 248 of the Complaint with the same force and effect as if fully set forth herein.

6.      Denies the remaining allegations of the Complaint not specifically admitted or otherwise denied herein.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

7.      Some or all of the causes of action set forth in Plaintiff's Complaint fail to state a cause of action.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

8.      The Court lacks personal jurisdiction over Defendant.

{9627262: }      2

Case 1-20-10322-CLB, Doc 4304, Filed 10/29/25, Entered 10/29/25 11:43:44, Description: Main Document , Page 86 of 90
2 of 6

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

9. Some or all of the causes of action in Plaintiff's Complaint have not been brought within the time prescribed by the applicable statute of limitations.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

10. Plaintiff fails to plead with specificity in compliance with N.Y. C.P.L.R. §§ 3014 and 3016.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

11. The alleged injuries suffered by Plaintiff were not proximately caused by any actions of Defendant.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

12. The imposition of punitive damages would violate Defendant's right to due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution and relevant New York State constitutional law.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

13. Plaintiff's Complaint and each and every claim therein which seeks an award of punitive or exemplary damages, fails to allege facts sufficient to justify an award of such damages against Defendant.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

14. Upon information and belief, some or all of the damages alleged in the Complaint are barred and/or subject to the qualifications of the provisions of N.Y. C.P.L.R. § 4545.

15. In the event that Plaintiff recovers a judgment against Defendant for the cost of medical care, loss of earnings, or other economic loss resulting from the alleged conduct, Defendant is entitled to a reduction in the amount of the award in favor of Plaintiff and against

{9627262: }

3

Case 1-20-10322-CLB, Doc 4304, Filed 10/29/25, Entered 10/29/25 11:43:44,
Description: Main Document , Page 87 of 90
3 of 6

Defendant by the amount of past and future collateral source payments to or for the benefit of Plaintiff of such loss, cost, and expenses pursuant to N.Y. C.P.L.R. § 4545.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

16. If Plaintiff has suffered any damages as alleged in the Complaint, Defendant cannot be held vicariously liable for these damages because they arose from conduct which was outside the scope of the individual alleged abuser's employment.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

17. Any claim by Plaintiff is barred to the extent that the Child Victims Act (New York Laws 2019, Ch. 11, Sec. 2, eff. 2/14/2019; N.Y. C.P.L.R. § 208) is found to violate the United States Constitution and/or relevant New York State constitutional law.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

18. In the event a verdict or decision is rendered in favor of Plaintiff against Defendant, said Defendant is entitled to limitations on liability as set forth in Article 16 of the N.Y. C.P.L.R.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

19. Plaintiff has failed to join a necessary party pursuant to N.Y. C.P.L.R. § 1001.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

20. The injuries or damages described in the Complaint were caused in whole or in part by the negligence, or intentional or other culpable conduct of such other person(s) or entities for whose acts this Defendant was not responsible and over whom this Defendant had no control, and without any negligence, intentional, or other culpable conduct on the part of this Defendant causing or contributing thereto.

{9627262: }

4

Case 1-20-10322-CLB, Doc 4304, Filed 10/29/25, Entered 10/29/25 11:43:44, Description: Main Document , Page 88 of 90
4 of 6

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

21.     If Plaintiff receives any damages from any third party by verdict or settlement as a result of the events or facts alleged in this litigation, Defendant shall be entitled to a setoff or credit for the amount of said settlement or damages.

## RESERVATION OF RIGHTS

22.     Defendant reserves the right to amend or supplement its Answer and plead such additional defenses or claims, the existence of which may become known to it through further investigation and/or discovery in connection with this action.

23.     Defendant reserves the right to assert any claims against The Diocese of Buffalo, including for contribution, indemnification, or insurance coverage or any other payment or benefit, whether as a named or additional insured or otherwise. Defendant is not herein asserting claims against The Diocese of Buffalo, based upon the applicability of a stay in making such claims, to the extent provided under 11 U.S.C. § 362(a).  Defendant reserves its rights to assert that this action is stayed as to Defendant under 11 U.S.C. § 362(a), including under 11 U.S.C. § 362(a)(3), based upon Defendant's status as co-insured or additional insured with The Diocese of Buffalo with respect to insurance coverage for this action.

WHEREFORE, Defendant, ST. FRANCIS OF ASSISI ROMAN CATHOLIC CHURCH SOCIETY OF ATHOL SPRINGS, NEW YORK, demands (1) judgment dismissing Plaintiff's Complaint; (2) an allocation and apportionment of the relative culpabilities of all parties, and damages, if any; (3) together with the costs and disbursements of this action; and (4) such other relief as this Court deems just and proper.

Dated: July 31, 2024
       Rochester, New York

                              WOODS OVIATT GILMAN LLP

                  By:    s/ Timothy P. Lyster
                              Timothy P. Lyster, Esq.
                              William G. Bauer, Esq.
                              *Attorneys for Defendant*
                              1900 Bausch & Lomb Place
                              Rochester, New York 14604
                              585.987.2800
                              tlyster@woodsoviatt.com
                              wbauer@woodsoviatt.com

TO:     SLATER SLATER SCHULMAN LLP
           Adam P. Slater, Esq.
           Linc C. Leder, Esq.
           *Attorneys for Plaintiff*
           488 Madison Avenue, 20th floor
           New York, NY 10022
           212.922.0906
           Aslater@sssfirm.com
           Lleder@sssfirm.com

{9627262: }               6

Case 1-20-10322-CLB,   Doc 4304,   Filed 10/29/25,   Entered 10/29/25 11:43:44,
Description: Main Document  , Page 90 of 90
6 of 6