UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Diocese of Buffalo, N.Y.,<br><br>Debtor. | Case No. 20-10322 (CLB)<br><br>Chapter 11 |

**LIMITED RESPONSE OF THE DIOCESE OF BUFFALO, N.Y.
TO CLAIM OBJECTIONS FILED BY CERTAIN EXCESS INSURERS**

The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, hereby submits this limited response to the eight claim objections [Docket Nos. 4223, 4224, 4225, 4226, 4227, 4228, 4229, and 4230] (the "Objections") filed by U.S. Fire Insurance Company and Pacific Employers Insurance Company (together the "Excess Insurers"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. While the Diocese has the utmost sympathy for all survivors of abuse, as a debtor in bankruptcy, the Diocese must remain focused on ensuring that Diocesan resources are devoted to satisfying those claims for which the Diocese has legal liability. In this regard, the Diocese shares the Excess Insurers' goal of ensuring that settlement funds go to those survivors with meritorious claims against the Diocese and its affiliates who comprise the Participating Parties under the chapter 11 plan of reorganization proposed jointly by the Diocese and the Committee [Docket No. 4221] (the "Joint Plan").[1] The Diocese respectfully submits, however, that litigating the Objections at this stage of the process will not be productive or helpful to bringing about a workable resolution of this chapter 11 case, will require an undue and unnecessary expenditure of

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Joint Plan.

time, money, and other resources, and is ultimately unnecessary as the Joint Plan contains appropriate safeguards to ensure that each claim will be evaluated on its merits and paid (or not) accordingly.

2. The claim resolution process proposed in the Joint Plan is designed to be faster, less litigious, less administratively burdensome, and far less costly than litigating individual claim objections prior to confirmation. The Diocese respectfully submits that the Court should take notice of the fact that several insurance carriers have already agreed in principle to settlements with the Diocese and the Committee through mediation and without the need to litigate individualized claim objections, including commitments from two of the Diocese's largest carriers, CNA and Wassau, to contribute $85 million and $37.5 million respectively. The Diocese is cautiously optimistic that additional carrier settlements will be forthcoming. These positive developments demonstrate that insurers have sufficient information available through mediation to assess both the underlying abuse claims and their potential coverage obligations, and to resolve them expeditiously without resort to litigation.

3. For the reasons stated herein, the Diocese submits that the path forward should be one which prioritizes further mediation with an eye towards plan confirmation, while allowing any potentially objectionable claims to be resolved through the Joint Plan's claims review process and Allocation Protocol. In the event that the Excess Insurers are ultimately unwilling to reach a settlement with the Diocese and the Committee, the Joint Plan preserves their right to challenge any contested claims impacting their policies through post-confirmation litigation in state court.

4. The Objections at issue relate to proofs of claim filed by eight claimants seeking compensation for abuse alleged to have been perpetrated by an individual employed by the Franciscan Friars at St. Franscis High School which was owned and operated by the religious

order, not the Diocese. While the Diocese believes that it should have little, if any, liability under such circumstances, certain claimants have articulated legal theories which, if successful, might possibly provide a path to a finding of liability against the Diocese. Several claimants have recently filed motions for relief from the automatic stay to pursue discovery and trial on these theories. Because the Joint Plan already proposed by the Diocese provides appropriate procedures to ensure that only meritorious claims against the Diocese and the Participating Parties are paid, the Diocese submits that there is no need for this Court to resolve the issue of the Diocese's liability (or lack thereof) and cannot endorse a claim objection process at this juncture that would open the door to protracted litigation, needlessly forcing the Diocese to suffer delay in its confirmation process and to expend limited resources. At this phase of the Chapter 11 case, all parties must focus on advancing mediation efforts and moving this case towards confirmation without distractions that hinder an expeditious and economical resolution of this case.

## REPLY

### I. Adjudicating claim objections at this juncture is unnecessary and wasteful.

5. The Joint Plan contemplates a review process to assess claims in accordance with an Allocation Protocol developed by the Committee in consultation with counsel for survivors. The Allocation Protocol will approximate similar tools used successfully in other diocesan chapter 11 cases and is intended to provide an expeditious, efficient, and inexpensive method for determining whether an abuse claimant is entitled to a distribution from the Joint Plan's settlement trust (the "Trust"), and the allocable share of Trust assets to which each eligible claimant may be entitled. All abuse claims will be assessed for liability and severity, as well as the impact upon each individual claimant. The concerns raised by the Excess Insurers regarding potential payment of non-viable claims are therefore addressed in the first instance by the Allocation Protocol.

3

22488141.v4
Case 1-20-10322-CLB, Doc 4305, Filed 10/29/25, Entered 10/29/25 11:47:12, Description: Main Document , Page 3 of 7

6.  To the extent the Excess Insurers elect not to become Settling Insurers under the Joint Plan, they would only ever be required to pay an abuse claim after a claimant successfully establishes liability against the Diocese or a Participating Party through post-confirmation litigation in state court.[2]  Even then, the Excess Insurers would retain any and all contractual defenses to coverage available under their policies.  There is therefore no conceivable scenario in which the Excess Insurers could be forced to involuntarily pay a claim where the Diocese or another Participating Party has not first been definitively adjudicated to have liability to the claimant.  Accordingly, the Excess Insurers will suffer no harm if the Court declines to entertain the Objections.

7.  On the other hand, the Objections threaten to burden the Diocese and its estate with significant costs and delay, and without providing any tangible benefit.  At least three of the claimants targeted by the Objections have already filed motions for relief from the automatic stay to pursue discovery and trial in state court, which will result in unnecessary litigation expenses, divert the parties' focus away from mediation and confirmation efforts, force the parties to commit inordinate attention and resources to fighting lawsuits and developing legal strategies, and inevitably delay the Diocese's efforts to successfully reorganize, to the detriment of both the Diocese and survivors.  Even if the Court were to grant the Objections outright, without providing stay relief, under the terms of the Diocese's settlement with the Committee, and as embodied in the Joint Plan, reducing by eight the number of claims against the Diocese would not change the Diocese's commitment to fund the Trust with $150 million, and would therefore result in zero net benefit to the estate.

---

[2]  The Joint Plan expressly preserves the rights of all Non-Settling Insurers under their applicable insurance policies and provides that any determination made under the Allocation Protocol as to the validity of a claim is not binding upon them.  *See* Joint Plan at § 6.1 and § 8.9.2.

4

8. Under similar circumstances, Judge Kinsella denied a request by certain insurers in the *Diocese of Syracuse* chapter 11 case to pursue claim objections, finding that "permitting a claims objection process to proceed now would be distracting, time consuming, and expensive, and may impair and delay confirmation." *See* Transcript of Nov. 30, 2023 Hearing at 60:5-7, *In re Roman Cath. Dioc. of Syracuse*, Case No. 20-30663 (WAK) (Bankr. N.D.N.Y.) [Docket No. 1572]. In the *Diocese of Albany*, Judge Littlefield held that where – like the Excess Insurers here – insurers had neither accepted nor been adjudicated to have financial responsibility to provide an indemnity for abuse claims, such insurers lack a sufficient interest in the outcome of the proceedings to confer standing to raise claim objections. *In re Roman Cath. Dioc. of Albany*, No. 23-10244, 2025 Bankr. LEXIS 2185, at *11 (Bankr. N.D.N.Y. Sep. 3, 2025).

**II.   If the Court is inclined to entertain the Objections, the Excess Insurers should be required to pay all associated costs incurred by the Diocese and the Participating Parties, including any costs of discovery and trial.**

9. The Excess Insurers assert that the Diocese should support the Objections, but they themselves have not accepted financial responsibility for the associated defense costs or indemnity for the underlying claims.

10. In the Objections, the Excess Insurers state that they "have associated into the defense of the underlying claims [and] are paying the costs of associated defense counsel…" *See*, *e.g.*, Docket No. 4223 at ¶ 68. A casual reader might be forgiven for inferring from this assertion that the Excess Insurers have agreed to pay the Diocese's costs of defense. They have not. The referenced "associated defense counsel" have been retained solely to protect the interests of the Excess Insurers and do not represent the Diocese, nor have the Excess Insurers accepted financial responsibility to provide indemnity coverage for the underlying claims in the event liability is established. If the Objections move forward and claimants are granted stay relief to pursue

5

discovery and trial, the Diocese may well be forced to expend its own funds to respond to discovery and defend against these claims.[3] Basic fairness requires that if the Excess Insurers are going to insist upon pursuing the Objections, causing the Diocese to incur unnecessary costs with no ascertainable benefit to its estate, the Excess Insurers should be required to bear such costs.

**III.     The Court should deny the Objections without prejudice, or otherwise hold them in abeyance.**

11.     As set forth above, the Diocese respectfully submits that the Excess Insurers will suffer no harm if the Court denies the Objections without prejudice, or otherwise holds them in abeyance while the Diocese's plan confirmation process proceeds. As the Supreme Court has observed, in furtherance of achieving an expedient resolution of cases, every court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936).

12.     The Diocese believes that the facts and circumstances articulated herein warrant that the Court exercise its broad authority to refrain from definitively ruling on the Objections at this time. Allowing the Objections to proceed pre-confirmation will result in unnecessary costs and delay, will disrupt ongoing attempts at mediation, and could potentially jeopardize the significant progress made to date with other insurers.

**CONCLUSION**

**WHEREFORE**, the Diocese respectfully requests that the eight claim Objections filed by U.S. Fire Insurance Company and Pacific Employers Insurance Company be denied without

---

[3] Although these costs might normally be covered by a primary insurer, the Diocese has already reached settlements in principle with two of its largest primary carriers. Introducing unanticipated defense costs risks potentially jeopardizing those settlements.

prejudice, or, in the alternative, that the Court hold consideration of the Objections in abeyance pending further mediation and proceedings on confirmation of the Joint Plan.

Dated: October 29, 2025

BOND, SCHOENECK & KING, PLLC

By: */s/ Stephen A. Donato*
Stephen A. Donato
Charles J. Sullivan
Grayson T. Walter
Ruthleona N. Clement
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Email: sdonato@bsk.com
csullivan@bsk.com
gwalter@bsk.com
rclement@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*