**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

THE DIOCESE OF BUFFALO, NY,

                     Debtor.

Case No. 20-10322 (CLB)

Chapter 11

## NOTICE OF OBJECTION TO ALLOWANCE OF
## SEXUAL ABUSE PROOF OF CLAIM NO. 697

**PLEASE TAKE NOTICE**, that for U.S. Fire Insurance Company and Pacific Employers Insurance Company (collectively, the "Insurers"), by and through their counsel, filed the *Objection to Proof of Claim No. 697*, seeking an Order, pursuant to 11 U.S.C. § 502(a) and (b) and Rule 3007 of the Federal Rules of Bankruptcy Procedure: (i) disallowing and expunging Sexual Abuse Proof of Claim No. 697 in its entirety; and (ii) granting such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE**, that the hearing to consider the Objection and any responses thereto will be held on October 30, 2025, at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel may appear and be heard, before the Honorable Carl L. Bucki, Chief United States Bankruptcy Judge for the Western District of New York, or such other judge as may be sitting in his stead, in the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, New York 14202.

**PLEASE TAKE FURTHER NOTICE**, that parties can choose to appear either (i) in person at the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, New York or (ii) telephonically (call in 1-517-353-2301, Courtroom ID 483077448#, and security pin 9999#).

**PLEASE TAKE FURTHER NOTICE**, that any responses to the Objection must conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the

Western District of New York and be filed with the Court and served in accordance with Local Rule 9013-1 upon the following parties: (i) counsel to the Insurers, O'Melveny & Myers LLP, 1301 Avenue of the Americas, Suite 1700, New York, NY 10019, Attn: Tancred Schiavoni, Esq. and Adam Haberkorn, Esq.; (ii) counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq., and Grayson T. Walter, Esq., (iii) the Office of the United States Trustee for the Western District of New York, 300 Pearl Street, Suite 401, Buffalo, NY 14202, Attn: Joseph W. Allen, Esq., (iv) counsel to the Official Committee of Unsecured Creditors, Pachulski, Stang, Ziehl & Jones, LLP, 780 Third Avenue, 34th Floor, New York, New York, 10017-2024, Attn. Ilan Scharf, Esq. and James Stang, and (v) those persons who have formally appeared and requested service in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

**PLEASE TAKE FURTHER NOTICE**, that copies of the Objection and all other documents filed in the Diocese's chapter 11 case may be obtained free of charge via the case management website maintained by the Diocese's notice agent at https://case.stretto.com/dioceseofbuffalo or by contacting the undersigned counsel for the Insurers.

Dated:  September 30, 2025

Respectfully submitted,

By: _/s/ Adam Haberkorn_____

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:     (212) 326-2000
Email: tschiavoni@omm.com
           ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone:     (973) 210-6700
Email:  marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company and*
*Pacific Employers Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| THE DIOCESE OF BUFFALO, NY, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

Case No. 20-10322 (CLB)

Chapter 11

## INSURERS' OBJECTION TO PROOF OF CLAIM NO. 697
## AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:     (212) 326-2000
Email: tschiavoni@omm.com
          ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone:     (973) 210-6700
Email: marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company*
*and Pacific Employers Insurance Company*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 3

    The allegations of the POC ...................................................... 3

    Claimant names the Franciscan Friars and St. Francis High School as
        responsible in his separate state court complaint ....................... 4

    The Diocese objected to this claim on the exact same basis (Dkt. No. 3581) ....... 5

    St. Francis High School was founded, incorporated, owned, and managed
        entirely by the Franciscan Friars, a religious order wholly separate
        from the Diocese ............................................................ 6

    The New York Department of State and Erie County corroborate the Suchan
        Declaration ................................................................. 7

    Clearing out proofs of claim not properly asserted against the Diocese ............... 8

RELIEF REQUESTED ........................................................................ 9

JURISDICTION .............................................................................. 10

ARGUMENT ................................................................................. 11

    A.    If a single essential allegation in a claim is refuted, the burden of proof
        shifts to the claimant to establishing the validity of the claim ........................... 11

    B.    The Diocese did not owe Claimant a legal duty of care and because there
        is no such duty, it cannot be held liable for the alleged abuse ........................... 15

    C.    Claimant is not entitled to discovery before the Court determines whether
        they have adequately stated a claim against the Diocese .................................. 24

    D.    Insurers have standing to object under Section 502(a) ..................................... 24

    Insurers are "Parties in Interest" to this Bankruptcy Case .................................. 25

    Denial of Standing on an Issue on Which the Court has an Independent Duty
        to Act will Needlessly Force an Appeal .................................................. 27

    Motion for Stay Pending Appeal if Standing is Denied ..................................... 29

NOTICE AND PROCEDURE ................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*,
  96 N.Y.2d 280 (2001) ................................................................................ 16

*Arista Records LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ...................................................................... 12

*Ark263 Doe v. Archdiocese of N.Y.*,
  2022 N.Y. Misc. LEXIS 3510 (July 18, 2022) ........................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 4, 13

*Bautista v. Archdiocese of New York*,
  164 A.D.3d 450 (1st Dep't 2018) ............................................................ 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ............................................................................ 12, 13

*Coyle v. United States*,
  954 F.3d 146 (2d Cir. 2020) ..................................................................... 16

*D'Amico v. Christie*,
  71 N.Y.2d 76 (1987) ................................................................................. 17

*De Angelis v. Lutheran Medical Ctr.*,
  58 N.Y.2d 1053 (1983) ........................................................................ 16, 17

*Doe v. Roman Cath. Diocese of Rockville Ctr. (In re Roman Cath. Diocese of Rockville Ctr.)*,
  2024 U.S. Dist. LEXIS 124499 (S.D.N.Y. July 15, 2024) .................. 12, 14

*Espinal v. Melville Snow Contractors*,
  98 N.Y.2d 136 (2002) ............................................................................... 17

*Farrulla v. Happy Care Ambulette Inc.*,
  125 A.D.3d 529 (1st Dep't 2015) ............................................................ 18

*In re Actos Antitrust Litig.*,
  2020 WL 8996696 (S.D.N.Y. Mar. 9, 2020) ........................................... 29

*In re Black, Davis & Shue Agency, Inc.*,
  460 B.R. 407 (Bankr. M.D. Pa. 2011) ......................................... 11, 25, 26

*In re Country Squire Assocs. of Carle Place, L.P.*,
  203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) ................................................. 30

*In re Heating Oil Partners*,
  2009 U.S. Dist. LEXIS 117871 (D. Conn. Dec. 17, 2009) ...................... 25

*In re Johnsbury Trucking Co., Inc.*,
  206 B.R. 318 (Bankr. S.D.N.Y. 1997) ..................................................... 11

Case 1-20-10322-CLB,    Doc 4309,    Filed 10/29/25,    Entered 10/29/25 12:34:16,
Description: Main Document  , Page 6 of 69

*In re Megan-Racine Assocs., Inc.*,
   1996 WL 167681 (N.D.N.Y. Apr. 1, 1996) ................................................ 29, 30

*In re Prime Capital Ventures, LLC*,
   2025 WL 73066 (Bankr. N.D.N.Y. Jan. 10, 2025) ...................................... 28

*In re Prime Capital Ventures, LLC*,
   2025 WL 73066 (Bankr. N.D.N.Y. Jan. 10, 2025) ...................................... 30

*In re Reilly*,
   245 B.R. 768 (B.A.P. 2d Cir. 2000) ........................................................... 11

*In re Residential Cap. LLC*,
   531 B.R. 1 (S.D.N.Y. 2015) ....................................................................... 12

*In re Revel AC, Inc.*,
   802 F.3d 558 (3d Cir. 2015) ....................................................................... 30

*In re Rockefeller Ctr. Props.*,
   272 B.R. 524 (Bankr. S.D.N.Y.2000) ......................................................... 11

*In re Roman Cath. Diocese of Rockville Ctr.*
   2023 WL 6284596 (Bankr. S.D.N.Y. Sep. 26, 2023) ................................ 3, 24

*In re Roman Cath. Diocese of Rockville Ctr., N.Y.*
   651 B.R. 399 (Bankr. S.D.N.Y. 2023).................................................. passim

*In re Roman Catholic Diocese of Syracuse*,
   665 B.R. 866 (Bankr. N.D.N.Y. 2024) ....................................................... 28

*In re Standard Insulations, Inc.*,
   138 B.R. 947 (Bankr. W.D. Mo. 1992)....................................................... 25

*In re World Trade Ctr. Disaster Site Litig.*,
   503 F.3d 167 (2d Cir. 2007)....................................................................... 29

*K.I. v. New York Cty. Bd. of Educ.*,
   256 A.D.2d 189 (1st Dep't 1998) .............................................................. 21

*Nken v. Holder*,
   556 U.S. 418 (2009).................................................................................. 29

*Palka v. Servicemaster Mgt. Servs. Corp.*,
   83 N.Y.2d 589 (1994) ............................................................................... 17

*Pratt v. Robinson*,
   39 N.Y.2d 554 (1976) ............................................................................... 21

*Primavera Familienstifung v. Askin*,
   130 F. Supp.2d 450 (S.D.N.Y. 2001) ........................................................ 11

*Pulka v. Edelman*,
   40 N.Y.2d 781 (1976) .................................................................... 16, 17, 21

Case 1-20-10322-CLB,   Doc 4309,   Filed 10/29/25,   Entered 10/29/25 12:34:16,
Description: Main Document , Page 7 of 69

*Purdy v. Public Adm'r of County of Westchester*,
72 N.Y.2d 1 (1988) ........................................................................................ 17

*R.D. v. Archdiocese of New York et al.*,
2021 WL 4307231 (Sup. Ct. Kings Cty. Sep. 22, 2021) .............................. 19

*SCVAWCR-Doe v. Archdiocese of New York*,
2024 N.Y. Misc. LEXIS 1549 (Sup. Ct. Westchester County Mar. 27, 2024)..................... 19

*Sheila C. v. Povich*,
11 A.D.3d 120 (1st Dep't 2004) ................................................................... 21

*Solomon ex rel. Solomon v. City of New York*,
46 N.Y.2d 401 (1978) ................................................................................... 16

*Springer v. Archdiocese of New York*,
2021 WL 1054553 (Sup. Ct. New York Cty. Mar. 18, 2021) ............................ 19

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
602 U.S. 268 (2024)................................................................ 25, 26, 27, 28

*Walker v. Archdiocese of New York*,
270 A.D.2d 127 (1st Dep't 2000) ................................................................. 18

**Statutes**

11 U.S.C. § 101, *et seq.*............................................................................... 10

11 U.S.C. § 1109(b) ..................................................................................... 33

11 U.S.C. § 502 ............................................................................................ 17

11 U.S.C. § 502(a) ....................................................................................... 10

11 U.S.C. § 502(b)(1) .............................................................................. 10, 11

11 U.S.C. § 502(b)(1) ................................................................................... 12

U.S. Fire Insurance Company and Pacific Employers Insurance Company (the "Insurers"), by and through their counsel, hereby object to Sexual Abuse Proof of Claim No. 697 ("POC 697") filed in this chapter 11 case (the "Chapter 11 Case"), and respectfully request the entry of an order disallowing and expunging, in its entirety, POC 697. In support of this Objection, the Insurers set forth as follows:

## PRELIMINARY STATEMENT

1. POC 697 alleges abuse by a Franciscan Friar, Michael Kolodziej, O.F.M. Conv., at St. Francis High School of Athol Springs, N.Y. ("St. Francis High School"), where it is alleged the claimant was a student from 1979 to 1981 ("Claimant"). It is alleged Friar Kolodziej was a vice principal at St. Francis High School.

2. The proof of claim was filed in this bankruptcy case. However, the Claimant separately filed a state court complaint that was not attached to POC 697. The Claimant names as defendants in his complaint the Franciscan Friars and St. Francis High School, and represents that the Franciscan Friars and St. Francis High School employed and were responsible for Friar Kolodziej.

3. Friar Kolodziej was not a cleric or employee of the Diocese; rather, he is alleged by the Claimant in his complaint to have been a member of the Conventual Franciscans d/b/a Our Lady of Angels Province, Inc. a/k/a St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. a/k/a Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. ("Franciscan Friars"), a religious order separate and apart from the Diocese, and to have been employed by the Franciscan Friars at a Franciscan Friars' school, St. Franscis High School.

4. New York law requires a direct relationship between the Diocese and Friar Kolodziej, specifically an employment or agency relationship, in order to demonstrate the

Diocese had a duty to control Friar Kolodziej. Such a relationship must be pled with accompanying factual allegations bearing on the plausible existence of such a relationship. Merely filing a proof of claim in the Diocese's bankruptcy case without any factual allegations plausibly establishing that the Diocese could control or employ Friar Kolodziej, is wholly insufficient under federal pleading standards. There are no such facts pled in POC 697 about or against the Diocese. Nor could there be. The declaration filed by the Diocese eight months ago attesting that Friar Kolodziej was not employed by the Diocese, and that St. Francis High School was not owned by the Diocese, is uncontroverted.

5.     In *Diocese of Rockville Centre*, Judge Glenn disallowed 39 proofs of claim— including 22 that did not file a state court complaint—involving religious order priests and schools pled almost identical to those here, emphasizing the need for supporting factual allegations that go beyond the type of conclusory allegation that the diocese had an agency or employment relationship with the alleged perpetrator or separate religious order which are not even made here. *See In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 651 B.R. 399 (Bankr. S.D.N.Y. 2023) (dismissing 39 claims against alleged abusers employed by separate religious orders / institutions on the basis that the claims failed to allege facts sufficient to establish an employment or agency relationship with the diocese), *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499. Because there were no non-conclusory allegations to support either an employment or agency relationship, the claims had to be dismissed as a matter of law and the District Court affirmed that decision. *Id*. Further, Judge Glenn found that the plaintiffs' Canon Law assertions could not support the claims without sufficient allegations of secular facts. *Id.* at 420-28.

6.     POC 697 further fails to allege that the Diocese had any knowledge of Friar

Kolodziej's propensity to commit abuse prior to the alleged abuse suffered by Claimant. Claimant does not plead any facts that would put the Diocese on notice of any duty owed where the alleged perpetrator was employed by the Franciscan Friars, a separate religious order from the Diocese, and the Claimant failed to plead how the Diocese knew or should have known of the alleged perpetrator's propensity for child sexual abuse, a necessary element of a claim.

7.      Just like Judge Glenn found in *Rockville Centre*, this Court need not consider the factual support offered in Diocese's declaration as the Claimant has not pled specific facts sufficient to support a claim, nor could they, and therefore POC 697 must be disallowed as a matter of law. While the Diocese's declaration establishes that facts cannot be pled to support a claim against the Diocese, as Judge Glenn states "[t]he Proofs of Claim here fail not because the Debtor has refuted any facts, but because the Claimants have failed to allege sufficient facts in the first instance." *In re Roman Cath. Diocese of Rockville Ctr.*, 2023 WL 6284596, at *7 (Bankr. S.D.N.Y. Sep. 26, 2023). POC 697 fails for the same reason.

8.      As set forth herein, accepting Claimant's allegations against Friar Kolodziej as true for purposes of this Objection does not mean that the Diocese is responsible for Friar Kolodziej's criminal conduct. The POC fails to adequately plead a cause of action under federal pleading standards and therefore must be dismissed.

## **STATEMENT OF FACTS**

### *The allegations of the POC*

9.      POC 697 is devoid of any allegation that the Diocese had control over the hiring, retention and/or supervision of the Franciscan Friar employed at St. Franscis High School. Nor is there any allegation that the Diocese knew or should have known of the risks posed by Friar Kolodziej. The only factual allegations in POC 697 regarding an employee-employer relationship state that "[Friar Michael Kolodziej was Vice Principal of St. Francis High School."

POC 697, Attachment, Part 3.b. No facts are alleged that any information about the Friar reached anyone at the Diocese.

10.     These allegations fail to state any facts or allegations of a claim against the Diocese and are even less than "[t]hreadbare recitals of the elements of a cause of action" that still would not suffice. *Iqbal*, 556 U.S. at 678.

### Claimant names the Franciscan Friars and St. Francis High School as responsible in his separate state court complaint

11.     Claimant separately filed a state court complaint that was not attached to POC 697 that names only the Franciscan Friars and St. Francis High School, in which it is represented that the Franciscan Friars and St. Francis High School employed and were responsible for Friar Kolodziej. *See* Complaint, *John Doe XXX v. St. Francis High School, et al.*, Index No. 810928/2021, Doc. No. 2 (Sup. Ct. Erie Cty. Aug. 10, 2021) ("Complaint"), attached hereto as **Appendix 1**.[1]  The Complaint has since been discontinued with prejudice pursuant to a Stipulation Discontinuing Action agreed to and entered on January 25, 2023, which discontinues the CVA litigation along with all cross-claims and counter-claims with prejudice. *See* Stipulation Discontinuing Action, *John Doe XXX v. St. Francis High School, et al.*, Index No. 810928/2021, Doc. No.20 (Sup. Ct. Erie Cty. Jan. 25, 2023), attached hereto as **Appendix 2**.

12.     Friar Kolodziej was not a cleric or employee of the Diocese; rather, he is alleged by the Claimant in his separately filed complaint to have been a member of the Franciscan Friars, a religious order separate and apart from the Diocese, and to have been employed by the Franciscan Friars at a Franciscan Friars' school, St. Franscis High School. *Id.*, at ¶¶ 14, 27.

13.     The Franciscan Friars and St. Francis High School do not deny the allegations that

---

[1] The Complaint is signed solely by the Claimant's lawyer, Jeff Herman of Herman Law, and not by the Claimant. *See* Complaint.

Friar Kolodziej was a member of the order of Franciscan Friars or employed by St. Francis High School or the Franciscan Friars in their Answer to the Complaint. *See* Verified Answer to Complaint, *John Doe XXX v. St. Francis High School, et al.*, Index No. 810928/2021, Doc. No. 11, ¶ 4 (Sup. Ct. Erie Cty. Sept. 24, 2021), attached hereto as **Appendix 3** (neither admitting nor denying the allegations contained in paragraphs 14 and 27 of the Complaint on the basis they call for a legal conclusion requiring neither an admission or denial, which allege the Friar's employment relationship to the Franciscan Friars and St. Francis High School).

***The Diocese objected to this claim on the
exact same basis (Dkt. No. 3581)***

14.     The Diocese objected to POC 697 on January 15, 2025. *Objection to Allowance of Sexual Abuse Proof of Claim No. 697* at docket entry number 3581 (the "Diocese Objection"). The Diocese walked through in its Objection how POC 697 failed to plead an employment or agency relationship, in order to demonstrate the Diocese had a duty to control Friar Kolodziej, with accompanying factual allegations bearing on the plausible existence of such a relationship. *See* Diocese Objection, at ¶ 17-20, 29.

15.     In demonstrating that such facts could not be pled, the Diocese Objection to POC 697 is supported by the Declaration of Richard C. Suchan dated January 8, 2025 (Dkt. No. 3587) (the "Suchan Declaration"). Mr. Suchan is the Chief Operating Officer for the Diocese, a position he has served in since July 2021.[2] He affirms that the statements in the declarations are based on his personal knowledge, and specifically that he makes "this Declaration based upon: (a) [his] personal knowledge of certain facts stated [therein], (b) information supplied to [him] by others associated with the Diocese, (c) [his] review of relevant documents, (d) consultation with professionals engaged by the Diocese, and (e) [his] experience and knowledge of Diocesan

---

[2] *See* Suchan Declaration, ¶ 1.

operations."[3]

16.     In the eight months since the filing of the Diocese Objection, the claimant who filed POC 697 has not offered anything to controvert the facts offered in the Diocese Objection and Suchan Declaration.

### *St. Francis High School was founded, incorporated, owned, and managed entirely by the Franciscan Friars, a religious order wholly separate from the Diocese*

17.     As set forth in the Suchan Declaration, St. Francis High School of Athol Springs, N.Y. "is an all-boys secondary school located in Hamburg, New York that was founded, supervised and controlled by the [Franciscan Friars], an independent, separately incorporated religious order that was, and is, separate from and not affiliated with the Diocese."[4] "St. Francis High School is a separately incorporated entity."[5] The charter for St. Francis High School, attached at Exhibit 10 to the Suchan Declaration, was granted on September 25, 1959, and contains no reference to the Diocese.[6]

18.     Mr. Suchan further affirms that: "The Diocese does not own the property where the school is located"[7] and that "[s]ince its founding by the Franciscan Friars, the Diocese has not managed, supervised, controlled, directed, or operated St. Francis High School."[8] Mr. Suchan further verifies as the CFO of the Diocese that: "The Diocese did not hire, employ, supervise, control, or train the faculty, staff, or other employees in their work at St. Francis High School."[9]

---

[3] *Id.*, ¶ 2.

[4] *Id.*, ¶ 46.

[5] *Id.*

[6] Suchan Declaration, ¶ 46 ("Attached hereto as Exhibit 10 is the charter for St. Francis High School granted on September 25, 1959, which contains no reference to the Diocese.").

[7] *Id.*

[8] *Id.*, ¶ 47.

[9] *Id.*

19.     Mr. Suchan verifies that "[t]he Diocese did not assign [Friar Kolodziej] to St. Francis High School, did not supervise [Friar Kolodziej] or any Franciscan Friars there, and did not pay their salaries and benefits."[10]  Mr. Suchan further attests that "[t]he Diocese does not maintain records for the clerics, staff or employees of St. Francis High School."[11]

### The New York Department of State and Erie County corroborate the Suchan Declaration

20.     The government records maintained by the New York Department of State independently confirm that St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. and Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. were and are separately incorporated entities.[12]  Additionally, the government records maintained by the Maryland Secretary of State independently confirm that Our Lady of Angels Province, Inc. is also a separately incorporated entity.[13]  The Franciscan Friars hold themselves out on their official website as a separate and independent religious order.[14]  The Franciscan Friars also hold themselves out on their official website as being "responsible for administration of its own high school in Hamburg, NY (St. Francis High School)."[15]

21.     Government records maintained by the New York Department of State confirm

---

[10] *Id.*, ¶ 49.

[11] *Id.*

[12] *See* Haberkorn Declaration, Exhs. 1, 2 (New York Department of State records for (1) St. Anthony of Padua Province, Franciscan Fathers Minor Conventual, U.S.A., Inc. founded in 1901 and (2) Franciscan Fathers Minor Conventuals of Buffalo, NY, Inc. formed in 1960, both of which remain active not for profit entities in New York).

[13] *See id.*, Exhs. 3, 4 (Maryland Secretary of State records for Franciscan Friars-Our Lady of Angels Province, Inc. along with the Articles of Incorporation, showing this is a separately incorporated entity).

[14] *See id.*, Exh. 5 (The "Who We Are" page of the Franciscan Friar's website describes the friars as originating in Europe in the 13th and 14th centuries and "today are divided into three main groups or branches:  the Friars Minor (Brown Franciscans – OFM), the Friars Minor Capuchin (Capuchins – OFM Cap.), and the Friars Minor Conventual (Conventuals – OFM Conv.)")

[15] *See id.*, Exh. 6 (the "Education" page of the Franciscan Friars' webpage states that they are responsible for the administration of St. Francis High School and even includes a hyperlink leading directly to the school's webpage).

that St. Francis High School is and was a separately incorporated entity.[16]  St. Francis High School maintains on its official website that it was founded and has been run by the Franciscan Friars since its inception.[17]

22.    The Erie County property records reflect that the owner of the school premises is St. Francis High School (not the Diocese).[18]  The history of the school reflects that the Franciscan Order purchased the property on which St. Francis High School was built and with the help of Polish American businessmen and professionals raised money for the Franciscan Order to construct the school.[19]

### *Clearing out proofs of claim not properly asserted against the Diocese*

23.    At the June 4 hearing, the Court noted the benefit of clearing out proofs of claim not properly asserted against the Diocese.

"[I]f these 28 or so claimants have absolutely no claim against the Diocese and

---

[16]  *See id.*, Exh. 7 (the Erie County property records list the ownership history of the parcel of land upon which the high school is built, which currently lists the owner of the land as "ST FRANCIS HIGH SCHOOL" as an independent business entity).

[17]  *See id.*, Exh. 8 (The "History" page on the St. Francis High School website, which is directly linked from the "Education" page on the Franciscan Friars' website (*see* FN 15 *supra*), provides that the school was founded in the mid-1920's by "the Very Rev. Justin Figas, OFM Conv." on the shores of Lake Erie "on a thirty-two acre site that had been purchased for the Conventual Franciscans of St. Anthony of Padua Province in 1916 by the Very Rev. Hyacinth Fudzinski, OFM Conv.").

[18]  *See id.*, Exhs. 9, 7 (the property records for Erie County, New York show that St. Francis High School is the owner of the parcel of land upon which the high school is built, and the ownership history for that property goes back to 1916 with the only property owners listed being the "FRANCISCAN FATHERS ASSN" and "ST FRANCIS HIGH SCHOOL").

[19]  *See id.*, Exh. 10 (Wikipedia,
https://en.wikipedia.org/wiki/Saint_Francis_High_School_(Athol_Springs,_New_York) (as of Aug. 25, 2025, 9:35pm EST), "The Conventual Franciscans of the Saint Anthony of Padua Province already owned a 32-acre (130,000 m$^2$) parcel of land on the shore of Lake Erie in Athol Springs just outside Buffalo. The site was purchased in 1916 by Father Hyacinth Fudzinski who was a member of the Franciscan Order. The land had previously been the estate of one "Dr. Pierce," who developed pharmaceuticals around the start of the 20th century. In December 1924 Father Justin assembled a group of Polish American businessmen and professionals from Buffalo, New York to help raise funds and support for the construction of the school. This group became known as the "Father Justin Drivers," or the "Justin Drivers." The group was successful and in 1925 ground was broken for the new school in a ceremony held on 12 July 1925.").

yet you allow them to go and recover through the plan, are you not diluting the recovery for the other 800 and some claimants and reducing what they will ultimately get by way of this settlement because you're adding on additional claims."[20]

24.     In granting the Diocese's request to adjourn the hearing on the Diocese Objection and later allowing the Diocese to withdraw its objection at the insistence of the Committee the Court expressly preserved the rights of other parties—including the Insurers—to separately advance objections to the same proofs of claim that were the subject of the Diocese's claims objections.[21]  *See* Haberkorn Decl., Exh. 11 (June 4, 2025, Hearing Transcript at 17:21-25 ("If any party with standing wishes to raise their own objection, perhaps even on the identical grounds that are raised by the Diocese in these motions, we'll give you a hearing time and we'll give it consideration.  And so we're open to that being raised by anyone.")).

25.     This Objection is being filed on that basis.

### **RELIEF REQUESTED**

26.     U.S. Fire and PEIC respectfully request that the Court issue an order disallowing and expunging POC 697 in its entirety.  In response to an objection, if a claim is determined to be unenforceable against the debtor it should be disallowed.  *See* 11 U.S.C. § 502(b)(1).  The claimant has not plausibly asserted that he has a "right to payment" from the Diocese of Ogdensburg, and his claim should be disallowed.  *See* 11 U.S.C. § 101; 11 U.S.C. § 502(b)(1).

---

[20] *Id.*, Exh. 11 (June 4, 2025, Hearing Transcript at 10:19-24).

[21] The Insurers wrote the Court and conveyed the benefits to the estate, claimants and the mediation of going forward with the Claims Objections and clearing out of the claims that are not properly asserted against the Diocese. *See* Letter in Response to Letter Adjourning Matter [Dkt. No. 3757].  In April 2025, the Diocese conveyed that it reached an agreement in principle with the Committee on the amount it would contribute to a plan of reorganization in exchange for the Committee's agreement to support the Diocese being granted a discharge of any liability it may have for all abuse claims.  No longer having an economic interest in what claims are allowed, the Diocese asked that the Diocese Objection be taken off calendar pursuant to a letter notice filed at docket entry number 4059.

## JURISDICTION

27.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

28.     The relief requested is available pursuant to sections 502(a) and (b) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* and Rule 3007 of the Federal Rules of Bankruptcy Procedure.  "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless ***a party in interest . . . objects***."  11 U.S.C. § 502(a) (emphasis added).

29.     "The language of section 502(a) is clear and unambiguous.  ***It plainly authorizes a party in interest to object to any claim or interest***, proof of which is filed under section 501 of the Code.  Nowhere is this right made subject to any other provision of the Code or to the Trustee's refusal to pursue possible objections to certain claims."  4 Collier on Bankruptcy ¶ 502.02 (16th 2025) (quoting *Whitely v. Slobodian (In re Mechanicsburg Fitness, Inc.)*, 592 B.R. 798, 807 (Bankr. M.D. Pa. 2018)) (emphasis added).

30.     U.S. Fire and PEIC have associated into the defense of the underlying claims, are paying the cost of associated defense counsel,[22] are parties to the adversary proceeding filed against them by the Diocese and the monetary made against them[23] and are parties to the

---

[22] Haberkorn Decl., ¶ 3 (describing the letter the Insurers sent on August 18, 2025, to Mr. Obis as the authorized representative of the Diocese notifying the Diocese that the Insurers "exercise their right to associate in the defense of the Lawsuits" for which the stay was lifted and implicate the Insurers' excess policy periods).

[23] *See* Complaint, *All Saints Roman Catholic Church Society of Buffalo, et al. v. 21st Century Premier Insurance Company, et al.*, Adv. Proc. No. 20-10322 CLB, Doc. No. 1, at ¶¶ 358, 398, 404 (Bankr. W.D.N.Y. Jan. 19, 2021) (naming U.S. Fire Insurance Company in the coverage adversary proceeding seeking both a declaratory judgment that the Insurers are obligated to indemnify the Parishes and/or the Diocese for all sums the Parishes and/or Diocese become obligated to pay through judgment, settlement, or otherwise as well as damages for costs to pay settlements and/or judgments in the Underlying Actions and Claims).

Mediation Order and the monetary demands for this claim.[24]  As insurers with a "***potential***

financial stake in the outcome***" of the claim U.S. Fire and PEIC are parties in interest with

standing to object to proofs of claim.  *In re Black, Davis & Shue Agency, Inc.*,460 B.R. 407, 414-

15 (Bankr. M.D. Pa. 2011) (quoting *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000))

(emphasis added).

31.     In response to an objection, if a claim is determined to be unenforceable against the

debtor it should be disallowed.  *See* 11 U.S.C. § 502(b)(1).  The claimant has not plausibly asserted

that he has a "right to payment" from the Diocese of Ogdensburg, and his claim should be

disallowed.  *See* 11 U.S.C. § 101; 11 U.S.C. § 502(b)(1).

## <u>ARGUMENT</u>

**A.      If a single essential allegation in a claim is refuted, the burden of proof shifts to the claimant to establishing the validity of the claim**

32.     Where, as here, a claim is unenforceable under applicable state law, it should be

disallowed.  11 U.S.C. § 502(b)(1).  If an objection is asserted refuting at least one essential

allegation in a claim, the claimant then has the burden to demonstrate the validity of such claim.

*See, e.g., In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000); *In re Rockefeller Ctr. Props.*,

272 B.R. 524, 539 (Bankr. S.D.N.Y.2000).  Importantly, a claimant "must prove the claim, not

sit back while the objector attempts to disprove it."  *In re Johnsbury Trucking Co., Inc.*, 206 B.R.

318, 323 (Bankr. S.D.N.Y. 1997) (citing *In re Bennett*, 83 B.R. 248, 252 (Bankr. S.D.N.Y.

1988)); *see also Primavera Familienstiftung v. Askin*, 130 F. Supp.2d 450, 541 (S.D.N.Y. 2001)

("The ultimate burden or persuasion to prove the loss claimed . . . remains with the claimant.").

---

[24] *See* Order, at 3 [Dkt. No. 1568] (mandating participation in the mediation for all insurer defendants listed on Exhibit A attached thereto, including but not limited to U.S. Fire); see also Decision & Order, at 7 [Dkt. No. 3501] (mandating participation by all parties in all mediation sessions for the latest round of mediation efforts).

33.     The proof of claim subject to this Objection alleges sexual abuse that occurred at, and by individuals associated with and controlled by, a separately incorporated entity unaffiliated with and distinct from the Diocese.  In the Complaint, the Claimant represents that the Franciscan Friars entity defendants employed the abusers.

34.     Federal pleading rules apply in assessing the validity of a proof of claim.  *See In re Residential Cap. LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y. 2015), *on reconsideration in part*, 537 B.R. 161 (Bankr. S.D.N.Y. 2015); *Doe v. Roman Cath. Diocese of Rockville Ctr. (In re Roman Cath. Diocese of Rockville Ctr.)*, 2024 U.S. Dist. LEXIS 124499, *3 (S.D.N.Y. July 15, 2024) ("The legal standard of review of the disallowance of claims at a sufficiency hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").  Judge Glenn found that this standard also applies to proofs of claim where the claimant's "arguments regarding the Debtor's liability are founded on the same allegations regarding control as" those that also filed complaints in state court and also depend on a control theory to succeed.  *In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 651 B.R. 399, 434 (Bankr. S.D.N.Y. 2023), *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499.

35.     A claimant, thus, must assert allegations of plausible fact that make their claims rise above a speculative level.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level.").  In order to be plausible, "the complaint's '[factual] allegations must be enough to raise a right to relief above the speculative level.'"  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)  (quoting *Twombly*, 550 U.S. at 555, 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Similarly, a complaint is properly dismissed when, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

36.     Here, it is alleged in POC 697 § 3.b that "[Friar Michael Kolodziej was Vice Principal of St. Francis High School." Claimant makes no allegation that the Diocese had control over the hiring, retention and supervision of the alleged abusers in POC 697. There are no references to the Diocese anywhere in POC 697 other than the fact that the proof of claim was filed against the Diocese in this Case and a naked allegation that Friar Kolodziej was "a Priest of the Diocese of Buffalo." Exhibit A to POC 697.

37.     These allegations do not even set out "[t]hreadbare recitals of the elements of a cause of action" that still would not be sufficient to state a claim. *Iqbal*, 556 U.S. at 678. Because Claimant has not asserted allegations of plausible fact that "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the claim should be disallowed as against the Diocese.

38.     In *Rockville Centre*, 39 very similarly pled proofs of claim—including 22 that did not file a state court complaint—were objected to and dismissed on the basis that the claimants did not adequately allege that the diocese had an employment relationship or an agency relationship with the respective alleged abusers when the claimants merely made simple "conclusory recitals of the legal relationships that the claimants seek to establish." *In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 651 B.R. 399, 418 (Bankr. S.D.N.Y. 2023), *aff'd In re*

*Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499.  As described more fully below, one of these two relationships is necessary under New York law to establish the requisite degree of control exercised by the diocese over the alleged abusers and threadbare allegations of the possibility of control fails as a matter of law.  *Id.* at 417-19.

39.     Judge Glenn carefully considered and applied the federal dismissal standard and based on an analysis of the conclusory facts alleged in the complaints, granted the objections.  *Id.* at 409, 417-19.  Importantly, Judge Glenn noted that an allegation of "'control' itself is not actually an independent theory that allows a plaintiff to hold a defendant liable in tort for the actions of a third party" and thus is wholly insufficient to plead a claim arising out of an employment or agency relationship under New York state law.  *Id.* at 410; *see also In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499 at *5 (affirming bankruptcy court's dismissal of claims where claimants "offer[ed] no non-conclusory allegations to support a theory of liability based on the Debtor's relationships with either the alleged abusers or the religious institutions where the abuse occurred.").

40.     The claims against the Diocese of Rockville Centre were dismissed by Judge Glenn because there were no factual allegations to support the claimant's alleged legal labels of employment or agency and therefore no allegations of factual circumstances to support the diocese's alleged employment or agency relationships with the abusers or separate religious order.  *Id.* at 416, 418-19.  Here, the proof of claim alleges no facts that bear upon any employment or agency relationship between the Diocese and Friar Kolodziej.

41.     Conversely, the Suchan Declaration delineates the legal distinctions among the Diocese, the Franciscan Friars and St. Francis High School, and establishes that the Diocese did not own, operate or control that private school, nor did it hire, direct, manage, supervise or

control the clerics or employees of St. Francis High School.[25]  Government records submitted in support of this objection further confirm the Suchan Declaration.

42.      As set forth in Section B below, the Claimant does not have viable causes of action under New York law for an abuse claim against the Diocese.  Here, the Claimant does not plead plausible facts of a custodial or "control" relationship—neither employment nor agency— between the Diocese and Claimant or between the Diocese and Claimant's alleged abuser.  Because POC 697 is unenforceable under appliable law, it should be disallowed pursuant to 11 U.S.C. § 502.

43.      POC 697 is also devoid of any allegation the Diocese had any knowledge of Friar Kolodziej's propensity to commit abuse prior to the alleged abuse suffered by Claimant.

44.      In *C.S. v. Archdiocese of N.Y.*, plaintiff's abuse claims against the Archdiocese were dismissed because the "Plaintiff has not submitted any evidence that would put Archdiocese on notice of any duty owed" where the alleged perpetrators were employed by the Franciscan Friars of the Atonement, a separate religious order from the Archdiocese, and the plaintiff failed to establish how the Archdiocese knew or should have known of the alleged perpetrators' propensities for child sexual abuse.  Index No. 951299/2021, 2022 N.Y. Misc. LEXIS 6640, at *2-4 (Sup. Ct. New York Cty. Nov. 2, 2022).  This Court is faced with the precise same situation here.

**B.      The Diocese did not owe Claimant a legal duty of care and because there is no such duty, it cannot be held liable for the alleged abuse**

45.      To establish a prima facie case of negligence under New York law, "a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach."  *Coyle v. United States*,

---

[25] *See* Suchan Declaration at ¶¶ 46-49.

954 F.3d 146, 148 (2d Cir. 2020) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (2016)); *Becker v. Schwartz*, 46 N.Y.2d 401, 410 (1978) ("As in any cause of action founded upon negligence, a successful plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party.").

46.     Under New York law, for the Diocese to be liable for the torts of alleged abusers, the Diocese must have a duty to control them.  The duty to control arises only when "the relationship between the defendant and the person who threatens the harm to the third person . . . require[s] the defendant to attempt to control the other's conduct." *Pulka v. Edelman*, 40 N.Y.2d 781, 783-84 (1976).  For instance, in an employment relationship or when the "relationship between the defendant and the person exposed to harm . . . requires the defendant to afford protection from certain dangers including the conduct of others." *Id.* (citations omitted).

47.     It is well-established law that "[i]n the absence of duty, there is no breach and without a breach there is no liability." *Pulka*, 40 N.Y.2d at 782 (citation omitted); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 96 N.Y.2d 280, 289 (2001) ("Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.  This restriction is necessary to avoid exposing defendants to unlimited liability to an indeterminate class of persons conceivably injured by any negligence in a defendant's act.").  "Duty is essentially a legal term by which we express our conclusion that there can be liability.  It tells us whether the risk to which one person exposes another is within the protection of the law.  In fixing the bounds of that duty, not only logic and science, but policy plays an important role." *De Angelis v. Lutheran Medical Ctr.*, 58 N.Y.2d 1053, 1055 (1983) (citation omitted).

48.     A "threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138 (2002) (citations omitted).  Whether someone owes a duty of care to reasonably avoid injury to another is a question of law.  *See Purdy v. Public Adm'r of County of Westchester*, 72 N.Y.2d 1, 8 (1988); *Palka v. Servicemaster Mgt. Servs. Corp.*, 83 N.Y.2d 589, 585 (1994) (holding that "the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration.") (citations omitted).  "The question of duty is best expressed as 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Pulka*, 40 N.Y.2d at 784 (citations omitted).  However, "a line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit." *De Angelis*, 58 N.Y.2d at 1055.

49.     It is well-settled in New York law that "[a] defendant generally has no duty to control the conduct of a third person so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) (citing *Pulka v. Edelman*, 40 N.Y.2d 781, 783 (1976)).  New York courts have identified a duty to control the conduct of another person when "there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons." *Purdy*, 72 N.Y.2d at 8.  The New York Court of Appeals has "imposed a duty to control the conduct of others where there is a special relationship:  a relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person's conduct; or a relationship between the defendant and plaintiff requiring defendant to protect the plaintiff from the conduct of others." *Id.* (citations omitted).

Case 1-20-10322-CLB,    Doc 4309,    Filed 10/29/25,    Entered 10/29/25 12:34:16,
Description: Main Document , Page 25 of 69

50.     A party, like the Diocese here, cannot be held liable for tortious conduct by individuals outside of its control.  *See Bautista v. Archdiocese of New York*, 164 A.D.3d 450, 451 (1st Dep't 2018) (no legal liability because defendant did not have "the authority to supervise or control" the individual); *Farrulla v. Happy Care Ambulette Inc.*, 125 A.D.3d 529, 530 (1st Dep't 2015) (defendant "did not cause plaintiff's alleged injuries and was not legally responsible for the person who did").

51.     In *Ark263 Doe v. Archdiocese of N.Y.*, the court dismissed a complaint that alleged abuse by an employee of a high school that was owned and operated by the Congregation of Christian Brothers—a religious organization separate and independent from the Archdiocese, similar to the Franciscan Friars.  2022 N.Y. Misc. LEXIS 3510, at *3-6 (July 18, 2022).  The Archdiocese did not own the school property where the alleged abuser worked, nor did the Archdiocese "hire, retain, employ, oversee, or control the staff or employees" of the high school, including the alleged abusers.  *Id.* at *3-4.  Based on the lack of ownership over the property, any direct relationship between the Archdiocese and the Congregation of Christian Brothers, and testimony evidencing the lack of operational control, including hiring and supervision, by the Archdiocese, the court dismissed the complaint.  *Id.* at *5-6.

52.     Courts have repeatedly held, including in the context of claims asserted under the CVA, that where a diocese does not control the entity with which the alleged abuser is associated, the diocese is not responsible for that individual's alleged misconduct as a matter of law.  *See*, *e.g.*, *Walker v. Archdiocese of New York*, 270 A.D.2d 127, 128 (1st Dep't 2000) (affirming the summary judgment dismissal of a personal injury action against the Archdiocese where affidavits established "the Archdiocese does not own, operate or exercise control over the school," nor did it own the "premises on which the defendant school is located" which was

separately owned by the defendant church); *R.D. v. Archdiocese of New York et al.*, No. 519339/2020, 2021 WL 4307231 (Sup. Ct. Kings Cty. Sep. 22, 2021) (granting motion to dismiss the abuse claims against the Archdiocese where documentary evidence established (1) that "contrary to plaintiff's claims, [Archdiocese] did not oversee St. Agnes and St. Francis[, the two locations where the abuse alleged[ly] occurred], and had no custody, control, or supervision over either entity's residents or employees," (2) the premises of St. Agnes "has been owned by the Dominican Convent, not the Archdiocese," and (3) St. Francis was located in Brooklyn outside of the Archdiocese's geographic territory); *Springer v. Archdiocese of New York*, No. 950137/2019, 2021 WL 1054553, at *1 (Sup. Ct. New York Cty. Mar. 18, 2021) (dismissing defendant Notre Dame School of Manhattan where school charters and "affidavits demonstrate that the Notre Dame School and defendant Notre Dame School of Manhattan are completely separate entities" and thus the defendant did "not own, operate or exercise control over the Notre Dame Convent School/Notre Dame School").

53.     An essential element of a negligent hiring, retention, or supervision claim is there must be an employer-employee relationship, and no such relationship has been established in POC 697.  In *SCVAWCR-Doe v. Archdiocese of New York*, a plaintiff alleged negligent hiring, retention and supervision of an alleged abuser who was employed by a third-party employer, not the Archdiocese, which proved fatal to the claim leading to its dismissal on summary judgment. 2024 N.Y. Misc. LEXIS 1549, at *24-25 (Sup. Ct. Westchester County Mar. 27, 2024) (granting summary judgment dismissing negligent supervision claim because an "essential element of an employer-employee relationship is lacking in this case;" the plaintiff "has not established how either the Archdiocese or St. Joseph's was liable for the alleged negligent supervision of [abuser] when he was employed by non-party [].")

54.    In *In re Roman Catholic Diocese of Rockville Center*, Judge Glenn found that under New York law it is critical that facts that are alleged go "to the degree of control exercised by the purported employer," with the predominant factor being "the extent of the employer's power to order and control the employee's performance at work."  651 B.R. 399, 410, *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499 (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003); *Sokola v. Weinstein*, 187 N.Y.S.3d 493, 500 (Sup. Ct. N.Y. Cty. Feb. 7, 2023)) (internal quotations omitted).  The claims against the diocese were dismissed because there were no "accompanying factual allegations that would support [the] legal labels of employment or agency," and therefore no "allegations that actually bear on the factual circumstances of the Debtor's alleged employment or agency relationships with the abusers or Religious Institutions/Orders" that are "necessary to [] plead the causes of action asserted."  *Id.* at 416, 418-19.

55.    Judge Glenn held the 22 claims that were only proofs of claim, and no state court complaint was filed must meet the same legal pleading standard as the complaints.  *Id.* at 433-36. This decision was made because the definition of "Sexual Abuse Claim" on the proof of claim form defined "such claims as abuse 'under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any other persons or entity for whose acts or failures to act the Diocese is or was allegedly responsible.'"  *Id.* at 433.  Therefore, the court concluded that asserted claims consisted of a similar range of tort claims as those asserted by the complaint claimants, the arguments regarding the diocese's liability are "founded on the same allegations regarding control as the Complaint Claimants," and so "they will be subject to the same legal standards and caselaw discussed for the Complaint Claims."  *Id.* at 434.

56.     Here, Friar Kolodziej is alleged by the Claimant to have been employed by St. Francis High School, a wholly separate and independent entity from the Diocese, resulting in no employer-employee relationship with the Diocese.  The mere conclusory assertions of a legal employment relationship without accompanying factual allegations to support such legal label does not meet the federal pleading standards for the negligence claims. Here, there is not even a conclusory allegation.

57.     An organization *may, accordingly, be held liable* for a person's sexual misconduct *only when* the alleged perpetrator's conduct is connected to the organization.  *See Sheila C. v. Povich*, 11 A.D.3d 120, 129 (1st Dep't 2004) (defendant could not be held liable for sexual assault that occurred after she "had left defendants' physical custody and control"); *K.I. v. New York Cty. Bd. of Educ.*, 256 A.D.2d 189, 192 (1st Dep't 1998) (the school was not responsible for sexual assault which "was severed by time, distance and [the perpetrator's] intervening independent actions").

58.     Similarly, under New York law, custody or control over a student is required to establish a duty of the Diocese to supervise or "afford [Claimant] protection from certain dangers including conduct of others."  *Pulka*, 40 N.Y.2d at 783; *see also Pratt v. Robinson*, 39 N.Y.2d 554, 560 (1976) ("The school's duty is thus coextensive with and concomitant to its physical custody and control over the child.  When the custody ceases because the child has passed out of the orbit of its authority . . . the school's custodial duty also ceases.") (citations omitted).  The Diocese never controlled, owned or operated St. Francis High School, that was the responsibility of the Franciscan Friars and the administration of the school employed by and members of the Franciscan Friars;[26] at no time did the Diocese maintain any custody or control over Claimant

---

[26] *See* Suchan Declaration, ¶¶ 46-49.

while they were a student at St. Francis High School.

59.     Judge Glenn also considered arguments by the claimants that Canon Law gave the diocese control over the respective alleged abusers with the most specific assertion being that: "Everyone who works in a diocese including pastors, assistant pastors, and anyone holding any other position, is appointed by the bishop.  This includes members of religious institutions who hold positions in the government of the diocese."  *In re Roman Catholic Diocese of Rockville Ctr.*, 654 B.R. at 422-23, *aff'd In re Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 124499.  The court also considered "the more generalized allegations of the Debtor's control over personnel within its territory" and the argument that the diocese has control over the separate religious institutions or orders that perform works of ministry within the diocese's territory.  *Id.* at 423, 428.  First, Judge Glenn found that Canon Law may be considered "to assess the allegations in the complaint," but "if claimants cannot prove the existence of [an employment or agency relationship] based on underlying secular facts pertaining to employment and agency, the Court considers that ***they will not be able to rely exclusively on Canon Law*** to prove their claims."  *Id.* at 422-23, 426 (emphasis added).

60.     The allegations relating to Canon Law led the court to conclude that "inherent in the allegations that the Debtor ***may*** hire and appoint ***some*** personnel to other Catholic entities within the diocesan territory, is the recognition that the Debtor does not hire and appoint ***all personnel*** at every entity within diocesan territory."  *Id.* at 423 (emphasis in original).  The court found it "plausible that the Debtor has the general authority to staff certain of its own employees at Religious Institutions or even appoint clergy members to work for the Religious Institutions/Orders," but was "troubled by the lack of non-conclusory allegations stating that is actually what occurred for the abusers at issue."  *Id*. at 425.  Similarly, the allegations could not

Case 1-20-10322-CLB,   Doc 4309,   Filed 10/29/25,   Entered 10/29/25 12:34:16,
Description: Main Document  , Page 30 of 69

establish that "the Religious Institutions and Orders were acting on behalf of the Debtor, or subject to their control, when they hire or supervise their own employees. *Id.* at 427.

61.     Under straightforward principles of New York law, POC 697 is not properly asserted against the Diocese and should be disallowed. Claimant has not alleged any facts, conclusory or otherwise, giving rise to a legal duty of the Diocese. *See* POC 697. In addition, as detailed in the Suchan Declaration, the evidence demonstrates that the Diocese had no authority to control the actions of Friar Kolodziej, a member of the Franciscan Friars who was an employee of St. Francis High School.[27]

62.     Friar Kolodziej was not a cleric or employee of the Diocese.[28] The Franciscan Friars is an independent religious order that was and is separate from the Diocese.[29] The Diocese did not have supervisory authority over the Franciscan Friars at St. Francis High School, nor did it pay their salaries or benefits.[30] St. Francis High School is a separately incorporated entity.[31] At all relevant times, St. Francis High School was owned, controlled and operated by the Franciscan Friars, not by the Diocese.[32] The Diocese did not play any role in assigning or appointing Friar Kolodziej at St. Francis High School.[33] The Diocese did not, and does not, own property where St. Francis High School was located and at no time has it employed, supervised or trained the faculty, staff or any other employees of St. Francis High School, including Friar Kolodziej.[34]

---

[27] *See* Suchan Declaration, ¶¶ 47, 49.
[28] *Id.*, ¶ 49.
[29] *Id.*, ¶ 46.
[30] *Id.*, ¶ 49.
[31] *Id.*, ¶ 46.
[32] *Id.*, ¶ 47.
[33] *Id.*, ¶ 49.
[34] *Id.*, ¶¶ 46-49.

63.     Based upon the foregoing, the Diocese did not owe Claimant a legal duty of care and because there is no such duty, it cannot be held liable for the alleged abuse.  Accordingly, the Insurers respectfully request that the Court enter an order disallowing and expunging POC 697.

**C.     Claimant is not entitled to discovery before the Court determines whether they have adequately stated a claim against the Diocese**

64.     As explained by Judge Glenn when deciding this precise issue, the U.S. Supreme Court ruled that 'Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"  *In re Roman Cath. Diocese of Rockville Ctr.*, 2023 WL 6284596, at *8 (Bankr. S.D.N.Y. Sep. 26, 2023) (citing *Iqbal*, 556 U.S. 662, 678).  The Claimant must be able to allege sufficient facts such that their claims move from conceivable to plausible, otherwise they must be dismissed as a matter of law.  *See id.* (citing *Twombly*, 550 U.S. 544, 570).  Only after this Court determines whether the POC 697 has adequately stated a claim against the Diocese is discovery appropriate.

**D.     Insurers have standing to object under Section 502(a)**

65.     The alleged abuse asserted in POC 697 implicates or may implicate the time period from July 1, 1979, through July 1, 1981, addressed by U.S. Fire Insurance Company Policy No. 523 017914 4 and Pacific Employers Insurance Company Policy No. XMO007350.[35] Thus, U.S. Fire and PEIC have associated into the defense of the underlying claims, are paying the cost of associated defense counsel,[36] are parties to the adversary proceeding filed against

---

[35] *See* Declaration of Attorney James R. Murray, *The Diocese of Buffalo, N.Y. v. JMH 100 Doe, et al.*, Adv. Proc. 20-01016-CLB, Doc. No. 290 (Bankr. W.D.N.Y. Oct. 23, 2023), ¶¶ 8, 10, Exh. A (stating that "from July 1, 1978 to July 1, 1979, the Diocese purchased excess coverage from U.S. Fire Insurance Company" and "[f]rom July 1, 1981 to July 1, 1982, the Diocese purchased an excess policy from Pacific Employers Insurance Company," listed with policy numbers 523 017914 4 and XMO007350, respectively, on the coverage chart attached as Exhibit A for those time periods).

[36] Haberkorn Decl., ¶ 3 (describing the letter the Insurers sent on August 18, 2025, to Mr. Obis as the

them by the Diocese and the monetary demands associated with it[37] and are parties to the

Mediation Order.[38]

### *Insurers are "Parties in Interest" to this Bankruptcy Case*

66.     As insurers with a "***potential*** financial stake in the outcome of the claim, the

Insurers are parties in interest withstanding to object to proofs of claim.  *In re Black, Davis &*

*Shue Agency, Inc.*,460 B.R. 407, 414-15 (Bankr. M.D. Pa. 2011) (quoting *Adair v. Sherman*, 230

F.3d 890, 894 n. 3 (7th Cir. 2000)) (emphasis added); *see also Truck Ins. Exch. v. Kaiser*

*Gypsum Co., Inc*., 602 U.S. 268, 282 (2024) (an insurer is a party in interest when they have a

risk of "***potential*** financial harm—attributable to [their] status as an insurer with financial

responsibility for bankruptcy claims") (emphasis added); *In re Standard Insulations, Inc.*, 138

B.R. 947, 950 (Bankr. W.D. Mo. 1992) ("The insurers are parties in interest under 11 U.S.C.

§§ 1109(b) and 502(a), and have standing to object to claims against the estate."); *see also In re*

*Heating Oil Partners*, 2009 U.S. Dist. LEXIS 117871, at *17 (D. Conn. Dec. 17, 2009) ("Where

the debtor's insurance was . . . the true asset sought by personal injury claimants against the

debtor, the insurers were parties in interest with standing to object to claims against the estate.").

67.     As entities that have already incurred costs associated with POC 697 and may be

---

authorized representative of the Diocese notifying the Diocese that the Insurers "exercise their right to
associate in the defense of the Lawsuits" for which the stay was lifted and implicate the Insurers' excess
policy periods).

[37] *See* Complaint, *All Saints Roman Catholic Church Society of Buffalo, et al. v. 21st Century Premier
Insurance Company, et al.*, Adv. Proc. No. 20-10322 CLB, Doc. No. 1, at ¶¶ 358, 398, 404 (Bankr.
W.D.N.Y. Jan. 19, 2021) (naming U.S. Fire Insurance Company in the coverage adversary proceeding
seeking both a declaratory judgment that the Insurers are obligated to indemnify the Parishes and/or the
Diocese for all sums the Parishes and/or Diocese become obligated to pay through judgment, settlement,
or otherwise as well as damages for costs to pay settlements and/or judgments in the Underlying Actions
and Claims).

[38]  *See* Order, at 3 [Dkt. No. 1568] (mandating participation in the mediation for all insurer defendants
listed on Exhibit A attached thereto, including but not limited to U.S. Fire); see also Decision & Order, at
7 [Dkt. No. 3501] (mandating participation by all parties in all mediation sessions for the latest round of
mediation efforts).

asked to pay the claim alleged in POC 697, U.S. Fire and PEIC are parties in interest with a right

to object. *See Truck Ins. Exch.*, 602 U.S. 268.

68.     U.S. Fire and PEIC face financial harm even when maintaining coverage

defenses, as reorganization efforts can affect insurers in "myriad ways."  "For example, a plan

that purports to maintain an insurer's coverage defenses could nonetheless allow claims at

amounts far above their actual value," expose insurers to the payment of fraudulent claims or

impair insurers' rights to control settlement and defense. *Id.* at 281 ("A reorganization plan can

impair an insurer's contractual right to control settlement or defend claims.  A plan can abrogate

an insurer's rights to contribute from other insurance carriers.  Or, as alleged here, a plan may be

collusive, in violation of the debtor's duty to cooperate, assist, and impair the insurer's financial

interests by inviting fraudulent claims.  The list goes on.").

69.     The term "party in interest" is not defined more narrowly for purposes of a claim

objection than in the context of a plan objection, because potential financial exposure is

sufficient to have a legally protected interest in the resolution of a claim.  In *In re Black, Davis &*

*Shue Agency, Inc.*, the court held that an insurer with even just a "potential financial stake in the

outcome" of the claim is a party in interest withstanding to object to proofs of claim.  The Court

reasoned that:

> There is no reason to define 'party in interest' standing more narrowly in the context
> of an objection to a claim than in the context of a plan objection.  Parties in interest
> for the purpose of claims objections 'include not only the debtor, but anyone who
> has a legally protected interest that could be affected by the bankruptcy
> proceeding.'

*In re Black, Davis & Shue Agency, Inc.*,460 B.R. 407, 414-15 (Bankr. M.D. Pa. 2011) (quoting

*Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000)) (holding that an insurer with a

Case 1-20-10322-CLB,   Doc 4309,   Filed 10/29/25,   Entered 10/29/25 12:34:16,
Description: Main Document  , Page 34 of 69

"potential financial stake in the outcome" of the claim is a party in interest withstanding to object to proofs of claim).

70.    Because of the settlement between the Diocese and the Committee, neither the Diocese nor the Committee have any incentive to oppose this Claim, leaving the Insurers as the *only* entities with an incentive to object to this Claim.[39]  *See Truck Ins. Exch.*, 602 U.S. at 282 (the court found that "neither the Debtors nor the Claimants have an incentive to limit the post confirmation cost of defending or paying claims," "the Plan eliminates all of [the Debtors'] ongoing liability," and "Claimants similarly have little incentive to propose barriers to their ability to recover from Truck," leaving the insurer as "***the only entity*** with an incentive to identify problems with the Plan") (emphasis added).

### *Denial of Standing on an Issue on Which the Court has an Independent Duty to Act will Needlessly Force an Appeal*

71.    Judge Littlefield's recent decision in *In re The Diocese of Albany, New York*, Case No. 23-10244, Dkt. No. 2168 (Bankr. N.D.N.Y. Sept. 3, 2025) is based on different facts.  Here, the Diocese has abandoned the prosecution of proofs of claims it has admitted are legally meritless leaving U.S. Fire and PEIC as the only parties in interest with any economic interest in objecting.  Judge Littlefield's holding "that [an] obligation is not real until either the Insurers concede liability or are otherwise adjudicated to be responsible" is also wrong as it is at odds with the Supreme Court's holding that it is enough for purposes of standing that an insurer merely could be at risk of "potential financial harm."  *Truck Ins. Exch.*, 602 U.S. at 282.

---

[39]  *See* Co-Mediators First Report [Dkt. No. 3814], at ¶ 7 ("The settlement in principle also provides, among other terms, the withdrawal of pending claim objections . . . ."); Haberkorn Decl., Ex. 11 (June 4 Hearing Transcript at 5:3-20 (in responding to the Court's question about why the Diocese is seeking to withdraw motions to disallow claims by persons who possibly should not be treated as creditors in the case, counsel for the Diocese stated the purpose of withdrawing their objections is because of the announced settlement and the parties are focused on mediation and resolving a Plan and don't want to spend money pursuing these claim objections)).

72.     As Judge Kinsella found in the *Diocese of Syracuse* bankruptcy, "liability does not need to be acknowledged or adjudicated before the teachings of *Truck* apply," particularly when the diocese is "attempting to assign its interest in insurance claims and recoveries against the Certain Insurers to the Trust." *In re Roman Catholic Diocese of Syracuse*, 665 B.R. 866, 866 and 875 (Bankr. N.D.N.Y. 2024).  The Diocese and Committee will propose a plan that assigns the insurance rights to a trust, which will threaten to impact the Insurers' rights, just as was proposed in *In re Roman Catholic Diocese of Syracuse*.

73.     In *Prime Capital Ventures*, the Court found, on similar facts as here, that an officer of a company had standing as a party in interest pursuant to Section 1109(b) ***based on potential, contingent liability as a codebtor who had not admitted liability***, and no final determination of his personal responsibility had been made.  *In re Prime Capital Ventures, LLC*, 2025 WL 73066 (Bankr. N.D.N.Y. Jan. 10, 2025) (emphasis added).  The Court found that the mere possibility that creditor payments "may reduce a future liability of [the officer] in his individual capacity" was sufficient.  *Id.* at *5.  The Insurers face potential contractual liability for covered claims under certain insurance policies that they subscribed, hence, applying the analysis of *Prime Capital Ventures*, the Insurers have standing to object to abuse claims.

74.     An insurer's legally protected interest may be in the defense of a claim or in "a potential financial stake in the outcome" of the claim.  *Id.*  This is exactly the case here.  Insurers have a legally protectable interest in not being sued to pay legally insufficient claims.  Because U.S. Fire and PEIC are "parties in interest" under 11 U.S.C. § 1109(b), they have the right to "raise and . . . appear and be heard on any issue" in this proceeding including a right to object to any claims implicating such interest.  11 U.S.C. § 1109(b); *see also Truck Ins. Exch.*, 602 U.S. at 269 (observing that the rights of a party in interest are broadly construed).

## *Motion for Stay Pending Appeal if Standing is Denied*

75.     If the Court concludes that the Insurers are not parties in interest, Insurers hereby request a stay of such order pending appeal to the district court pursuant to Bankruptcy Rule 8007.

76.     Bankruptcy Rule 8007 provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). But the motion also "may be made in the court where the appeal is pending," as long as it is accompanied by a statement that a similar motion was made in the bankruptcy court and "either state[s] that the court has not yet ruled on the motion, or state[s] that the court has ruled and set out any reasons given for the ruling." Fed. R. Bankr. P. 8007(b).

77.     The four factors to be considered for whether to issue a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). All of these factors favor the issuance of a stay to resolve the question of whether Insurers are parties in interest in this Case. It is well-established that the first two factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

78.     *First*, a likelihood of success on the merits does not requires a party to show that there is "more than a mere possibility" it will prevail. *In re Actos Antitrust Litig.*, 2020 WL 8996696, at *2 (S.D.N.Y. Mar. 9, 2020). The Insurers easily satisfy this standard because it is, at a minimum, plausible that as an insurer with a potential financial obligation to the debtor each Insurer is a party in interest. *See, e.g., In re Megan-Racine Assocs., Inc.*, 1996 WL 167681, at *11 (N.D.N.Y. Apr. 1, 1996) (granting motion to stay pending appeal to resolve "very difficult

question of statutory interpretation"). This ruling would be consistent with the recent decision in *In re Prime Capital Ventures, LLC*. *See* 2025 WL 73066 at \*4-5 (Bankr. N.D.N.Y. Jan. 10, 2025).

79. *Second*, a party will suffer irreparable harm if a stay is denied where, as here, it will result in the loss of appellate rights. *See In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (the loss of appellate rights is the "quintessential form of prejudice"). Not only is a stay necessary to allow Century to validify its rights on appeal, but if this bankruptcy proceeding moves forward without a review of whether Century is a party in interest its due process rights will be violated because it will be denied the chance to challenge the validity of proof of claim CC048—a claim that may result in Century owing a financial obligation to the debtor.

80. *Third*, although other parties may assert the "possibility of irreparable harm" if a stay is entered the "near certainty of irreparable harm" to Century if a stay is not entered clearly outweighs this concern. *See In re Megan-Racine Assocs., Inc*., 1996 WL 167681 at \*6.

81. *Finally*, the public interest also weighs strongly in favor of a stay because it "strongly favors the correct application of the Bankruptcy Code, especially where property rights are at stake." *In re Revel AC, Inc*., 802 F.3d 558, 573 (3d Cir. 2015) (reversing district court's denial of stay). Neither the Second Circuit nor any district court in this Circuit has ruled on the question of whether under *Truck Insurance* an insurer that has a potential financial obligation under an insurance policy is a party in interest. There is a strong public interest in resolving this question which has arisen in the *Diocese of Albany, Diocese of Syracuse,* and *Diocese of Buffalo* cases (among others), and will continue to arise again in the future.

## <u>NOTICE AND PROCEDURE</u>

82. U.S. Fire and PEIC will provide notice to: (i) the Claimant who submitted Proof

of Claim No. 697; (ii) the Office of the United States Trustee; (iii) counsel for the Official

Committee of Unsecured Creditors; (iv) counsel for the Diocese, and (v) any other parties

requesting notice in this proceeding.

83.     No prior request for the relief sought herein has been made to this Court or any

other court.[40][41]

**WHEREFORE,** based upon the foregoing, the Insurers respectfully request that the

Court issue an Order, substantially in the form attached hereto as <u>**Exhibit A**</u>: (i) disallowing and

expunging Proof of Claim No. 697 in its entirety; and (ii) awarding such other and further relief

as the Court deems just and proper.

---

[40] U.S. Fire and PEIC reserve the right to supplement this Objection and to object to POC 697 on any other grounds not stated herein.  In addition, the Insurers reserve their rights to object to any and all other claims filed in this Chapter 11 Case.

[41] This filing does not constitute a waiver of the Moving Insurers right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a Federal district court (or, as applicable, appellate court) and/or the Moving Insurers' right to trial by jury in any proceeding as to any and all matters so triable, whether or not the same be designated legal or private rights, or in any case or controversy or proceeding related thereto, and whether such jury trial is pursuant to statute or the United States Constitution.

Case 1-20-10322-CLB,    Doc 4309,    Filed 10/29/25,    Entered 10/29/25 12:34:16,
Description: Main Document  , Page 39 of 69

Dated:  September 30, 2025

Respectfully submitted,

By: /s/ Adam Haberkorn

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:     (212) 326-2000
Email: tschiavoni@omm.com
          ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone:     (973) 210-6700
Email:  marianne.may@clydeco.us

*Attorneys for U.S. Fire Insurance Company and Pacific Employers Insurance Company*

**EXHIBIT A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| THE DIOCESE OF BUFFALO, NY, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

### [PROPOSED] ORDER DISALLOWING AND EXPUNGING
### SEXUAL ABUSE PROOF OF CLAIM NO. 697

Upon the objection (the "<u>Objection</u>") filed by for U.S. Fire Insurance Company and

Pacific Employers Insurance Company (collectively "<u>Insurers</u>") seeking entry of an order (this

"<u>Order</u>") disallowing and expunging Sexual Abuse Proof of Claim No. 697 in its entirety; and

the Court having found that: (i) it has jurisdiction over the matters raised in the Objection

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and (iii) the relief requested in the Objection is in the best interest of the estate of

the Diocese of Buffalo, its creditors and other parties in interest; and the Court having found that

the Insurers provided appropriate notice of the Objection and the opportunity for a hearing on the

Objection under the circumstances; and upon the record and after due deliberation,

**IT IS HEREBY ORDERED THAT**:

1.     The Objection is GRANTED, as set forth herein.

2.     Sexual Abuse Proof of Claim No. 697 is hereby disallowed and expunged in its

entirety.

3.     Nothing in this Order shall be deemed a waiver or release of the Insurers' right to

otherwise object to Sexual Abuse Proof of Claim No. 697 on any other grounds not set forth in

the Objection.

4.     Nothing in this Order shall be deemed to in any way impair or limit the Insurers'

Case 1-20-10322-CLB,    Doc 4309,    Filed 10/29/25,    Entered 10/29/25 12:34:16,
Description: Main Document  , Page 42 of 69

right to object to any other claim in this Chapter 11 Case.

5.      This Order is immediately effective and enforceable.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.


Dated: _____
      Buffalo, New York

 

_____
Hon. Carl L. Bucki
United States Bankruptcy Judge

# APPENDIX 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-------------------------------------------------------------------X
JOHN DOE XXX,

                              Plaintiff,          **COMPLAINT**

          -against-
                                                  Index No._____

ST. FRANCIS HIGH SCHOOL; and THE
CONVENTUAL FRANCISCANS OF THE SAINT
ANTHONY OF PADUA PROVINCE,

                              Defendants.
-------------------------------------------------------------------X
TO THE SUPREME COURT OF THE STATE OF NEW YORK:

    Plaintiff, JOHN DOE XXX, by and through undersigned counsel, respectfully shows to

this Court and alleges as follows:

## INTRODUCTION

    1.    This is a revival action brought pursuant to the New York Child Victims Act, CPLR

§ 214-g. As a minor, the Plaintiff was sexually abused and assaulted by a clergyman.

## PARTIES, JURISDICTION AND VENUE

    2.    Plaintiff, JOHN DOE XXX, is a citizen and resident of the State of New York.

Plaintiff brings this Complaint using a pseudonym because of the sensitive nature of the allegations

of child sexual abuse in the Complaint, which is a matter of the utmost intimacy. Plaintiff fears

embarrassment and further psychological damage if Plaintiff's identity as a victim of child sexual

abuse were to become publicly known.

    3.    Defendant, ST. FRANCIS HIGH SCHOOL (hereinafter, "SCHOOL"), is a Roman

Catholic parochial school operating under the authority and control of the DIOCESE OF

BUFFALO, with a principal place of business located at 4129 Lake Shore Road, Hamburg, New York 14075. At all times relevant and material hereto, SCHOOL was owned, operated, maintained, and/or controlled by CHURCH. SCHOOL is a citizen and resident of the State of New York.

4. Defendant, THE CONVENTUAL FRANCISCANS OF THE SAINT ANTHONY OF PADUA PROVINCE, (hereinafter, "ORDER"), is a Catholic religious order operating within the territory and under the authority of DIOCESE OF BUFFALO with their principal location at 4129 Lake Shore Road, Hamburg, New York 14010. ORDER is a citizen and resident of the State of New York.

5. At all times relevant and material hereto, CHURCH and SCHOOL were wholly or partially owned, operated, controlled, managed, and/or staffed by ORDER.

6. At all times relevant and material hereto, FATHER MICHAEL KOLDZIEJ (hereinafter "PERPETRATOR") was a duly ordained Catholic clergyman under the supervision and control of the ORDER and DIOCESE OF BUFFALO, assigned to the CHURCH and the SCHOOL.

7. This Court has subject matter jurisdiction of this action pursuant to Article VI of the New York Constitution.

8. Personal jurisdiction lies over Defendants as they are present and domiciled in the State of New York and/or transacts business within the State of New York and/or regularly solicits business in the state of New York and/or otherwise falls within the jurisdiction of the Court pursuant to CPLR § 302.

9. Venue of this action lies in Erie County as a substantial part of the events or omissions giving rise to the claim occurred in Erie County and/or one or more of the Defendants resides in Erie County.

10.    The amount in controversy exceeds the jurisdictional limit of all lower courts.

## **DUTY**

### **Defendant SCHOOL**

11.    At all times relevant and material hereto, the DIOCESE OF BUFFALO, as principal, and SCHOOL, as agent, were in an agency relationship, such that SCHOOL acted on the DIOCESE OF BUFFALO's behalf, in accordance with the DIOCESE OF BUFFALO's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of SCHOOL were subject to the DIOCESE OF BUFFALO's plenary control, and SCHOOL consented to act subject to the DIOCESE OF BUFFALO's control.

12.    At all times relevant and material hereto, the SCHOOL and Plaintiff were in a special relationship of parochial school – student, in which the SCHOOL owed Plaintiff a duty of reasonable care to prevent foreseeable harm.

13.    At all times relevant and material hereto, the SCHOOL had a duty to act as a reasonably prudent parent would to protect Plaintiff from foreseeable harms on SCHOOL grounds and during school-related activities. In this regard, the SCHOOL was in loco parentis with parochial school students, including Plaintiff.

14.    At all times relevant and material hereto, the SCHOOL and PERPETRATOR were in a special relationship of employer-employee, in which the SCHOOL owed a duty to control the acts and conduct of PERPETRATOR to prevent foreseeable harm.

15.    At all times relevant and material hereto, the SCHOOL had a duty to exercise reasonable care in the training of teachers, clergy, employees, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

16.     At all times relevant and material hereto, the SCHOOL had a duty to establish and implement policies and procedures in the exercise of reasonable care for the prevention of sexual abuse and protection of the safety of the parochial students and children in its care.

17.     At all times relevant and material hereto, the SCHOOL had a duty to warn parishioners of dangers presented to children on school grounds and in engaging in school-related activities, including the dangers of sexual abuse.

18.     At all times relevant and material hereto, the SCHOOL owed a duty to Plaintiff to use reasonable care to protect the safety, care, well-being, and health of Plaintiff while Plaintiff was under the care and custody, and/or in the presence of the SCHOOL.

19.     At all times relevant and material hereto, the SCHOOL's duties encompassed using reasonable care in the retention, supervision, and hiring of PERPETRATOR and the duty to otherwise provide a safe environment for Plaintiff.

20.     At all times relevant and material hereto, the SCHOOL's duties encompassed the protection and supervision of Plaintiff, and otherwise providing a safe environment for Plaintiff while on SCHOOL premises.

21.     At all times relevant and material hereto, the SCHOOL had a duty to exercise reasonable care in the training of teachers, clergy, employees, administration, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

**Defendant ORDER**

22.     At all times relevant and material hereto, the DIOCESE OF BUFFALO, as principal, and ORDER, as agent, were in an agency relationship, such that ORDER acted on the DIOCESE OF BUFFALO's behalf, in accordance with the DIOCESE OF BUFFALO's instructions and directions on all matters, including those relating to the hiring, retention and

supervision of personnel. The acts and omissions of ORDER were subject to the DIOCESE OF BUFFALO's plenary control, and ORDER consented to act subject to the DIOCESE OF BUFFALO's control.

23.     At all times relevant and material hereto, the ORDER, as principal, and CHURCH, as agent, were in an agency relationship, such that CHURCH acted on the ORDER's behalf, in accordance with the ORDER's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of CHURCH were subject to the ORDER's plenary control, and CHURCH consented to act subject to the ORDER's control.

24.     At all times relevant and material hereto, the ORDER, as principal, and SCHOOL, as agent, were in an agency relationship, such that SCHOOL acted on the ORDER's behalf, in accordance with the ORDER's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of SCHOOL were subject to the ORDER's plenary control, and SCHOOL consented to act subject to the ORDER's control.

25.     At all times relevant and material hereto, the ORDER and Plaintiff were in a special relationship of parochial school – student, in which the ORDER owed Plaintiff a duty of reasonable care to prevent foreseeable harm.

26.     At all times relevant and material hereto, the ORDER had a duty to act as a reasonably prudent parent would to protect Plaintiff from foreseeable harms on CHURCH and SCHOOL grounds and during church- and school-related activities. In this regard, the ORDER was in loco parentis with parochial school students, including Plaintiff.

27.     At all times relevant and material hereto, the ORDER and PERPETRATOR were in a special relationship of employer-employee, in which the ORDER owed a duty to control the acts and conduct of PERPETRATOR to prevent foreseeable harm.

28.     At all times relevant and material hereto, the ORDER had a duty to exercise reasonable care in the training of teachers, clergy, employees, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

29.     At all times relevant and material hereto, the ORDER had a duty to establish and implement policies and procedures in the exercise of reasonable care for the prevention of sexual abuse and protection of the safety of the parochial students and children in its care.

30.     At all times relevant and material hereto, the ORDER had a duty to warn parishioners of dangers presented to children on church and school grounds and in engaging in church- and school-related activities, including the dangers of sexual abuse.

31.     At all times relevant and material hereto, the ORDER owed a duty to Plaintiff to use reasonable care to protect the safety, care, well-being, and health of Plaintiff while Plaintiff was under the care and custody, and/or in the presence of the SCHOOL.

32.     At all times relevant and material hereto, the ORDER's duties encompassed using reasonable care in the retention, supervision, and hiring of PERPETRATOR and the duty to otherwise provide a safe environment for Plaintiff.

33.     At all times relevant and material hereto, the ORDER's duties encompassed the protection and supervision of Plaintiff, and otherwise providing a safe environment for Plaintiff while on SCHOOL premises.

34.     At all times relevant and material hereto, the ORDER had a duty to exercise reasonable care in the training of teachers, clergy, employees, administration, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

## BACKGROUND AND FACTS OF SEXUAL ABUSE

35.     At all times relevant and material hereto, Plaintiff was a student at SCHOOL and participated in Defendants' school-related activities and those of its employee-agent clergy.

36.     At all times relevant and material hereto, PERPETRATOR was a clergyman of the ORDER assigned to SCHOOL under the authority and control of the ORDER and the DIOCESE OF BUFFALO.

37.     At all times relevant and material hereto, PERPETRATOR was over eighteen (18) years of age.

38.     From approximately 1979 to 1981, when he was approximately sixteen (16) to eighteen (18) years old, Plaintiff was sexually abused and assaulted by PERPETRATOR, a Catholic priest and Vice Principal of SCHOOL, approximately once per week for three (3) years. The acts of sexual abuse and assault perpetrated against Plaintiff by PERPETRATOR took place at SCHOOL.

39.     The acts of sexual assault and abuse perpetrated by PERPETRATOR against Plaintiff included conduct which constitutes a sexual offense on a minor as defined in Article 130 of the New York Penal Law or the use of a child in a sexual performance as defined in § 263.05 of the New York Penal Law, including without limitation, conduct constituting rape (consisting of sexual intercourse) (N.Y. Penal Law §§ 130.25 - 130.35); criminal sexual act (consisting of oral or anal sexual conduct) (N.Y. Penal Law §§ 130.40 - 130.53), and/or sexual abuse (consisting of sexual contact) (N.Y. Penal Law §§ 130.55 - 130.77).

## NOTICE – FORESEEABILITY

40.     Upon information and belief, PERPETRATOR was at all times relevant and material hereto a sexual predator who sexually abused minor children during his employment by the Defendants.

41.     At all times relevant and material hereto, the Defendants knew, or in the exercise of reasonable care should have known, that PERPETRATOR had a propensity for the conduct which caused injury to Plaintiff, particularly that PERPETRATOR had a propensity to engage in the sexual abuse of children.

42.     At all times relevant and material hereto, it was reasonably foreseeable to the Defendants that PERPETRATOR would commit acts of child sexual abuse or assault on a child.

43.     At all times relevant and material hereto, the Defendants knew or should have known that PERPETRATOR was unfit, dangerous, and a threat to the health, safety and welfare of the children entrusted to PERPETRATOR's counsel, care and/or protection.

44.     With such actual and/or constructive knowledge, the Defendants provided PERPETRATOR unfettered access to Plaintiff and gave PERPETRATOR the opportunity to commit foreseeable acts of child sexual abuse or assault.

### The Diocese's Concealment of Acts of Sexual Abuse by Clergy

45.     The Bishop of the DIOCESE OF BUFFALO, and therefore CHURCH as agent, and the leader of the ORDER (the "leader") at all relevant times knew that their clergy, under their supervision and control, were grooming and sexually molesting children with whom the clergy would have contact in their ministry and in their educational and pastoral functions.

46.     At all relevant times, the Bishop and the Leader knew that this was a widespread, ubiquitous, and systemic problem in the Catholic Church, involving many clergymen and numerous victims.

47.     Despite receiving credible allegations of child sexual abuse against clergy, the Bishop and the Leader acted to conceal these allegations in an effort to avoid scandal and accountability.

48.     This concealment was in accordance with a policy of the DIOCESE OF BUFFALO, and the Leader, as agents, and the Holy See, as principal. In 1922, the Holy See released a confidential document to its Bishops and other officials of Catholic organizations regarding the handling of cases of solicitation of sex in the confessional. This document mandated a specific procedure for Holy See's agents, including the DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER to use when a cleric abused children using the confessional. This document required strict secrecy. The 1922 document showed that the Holy See and its agents were fully aware that there was a systemic problem of clergy sexually molesting children using the confessional.

49.     In 1962, the Holy See released the confidential document, *Instruction on The Manner of Proceeding in Cases of Solicitation* (The Vatican Press, 1962) (hereinafter referred to as "*Crimen Sollicitationis*"). The heading of the document states, "From the Supreme and Holy Congregation of the Holy Office To All Patriarchs, Archbishops, Bishops and Other Diocesan Ordinaries 'Even of the Oriental Rite,'" and contains specific instructions regarding the handling of child sex abuse by clergy. According to the document itself, it is an "instruction, ordering upon those to whom it pertains to keep and observe it in the minutest detail" (*Crimen Sollicitationis* at paragraph 24).

50. The 1962 document reinforced that the Holy See and its agents to whom the document was directed had knowledge that there was a systemic problem of Catholic clergy sexually molesting children using the confessional.

51. At the same time, the Holy See was involved in the formation of secret facilities in the United States where sexually offending clergy would be sent for short periods of time. In 1962-63, Fr. Gerald Fitzgerald reported to the Pope on the problem of abuse of children by clergy and expressed concerns if these clergymen were returned to active duty.

52. Fr. Fitzgerald's reports were kept secret under the Holy See's standing policy to avoid scandal at all costs. His recommendation was ignored, however, and instead the Holy See made a choice to return known offending clergy to active duty. At this point, it is clear that the Holy See and its agents, including the DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER, knew they had a widespread problem of clergy sexually molesting minors, and they participated in the creation and the operation of facilities in the United States where sexually offending clergy could be sent before they were moved to another parish to work and potentially abuse again.

53. The Holy See's policy of secrecy under penalty of immediate removal from the organization (excommunication) for all involved in an accusation of child sexual abuse created a shroud of secrecy insulating clergy from consequence. Through this policy and others, the Holy See and its agents, including the DIOCESE OF BUFFALO, and therefore SCHOOL as agent, and the ORDER, knowingly allowed, permitted, and encouraged child sex abuse by their clergy.

54. The Holy See mandates secrecy for all those involved, including agents and itself, in handling allegations of sexual abuse. Penalties for child sexual abuse include an order to move offending clergymen to other locations once they have been determined to be "delinquent." In

response to allegations, the document mandates that supplementary penalties include: "As often as, in the prudent judgment of the Ordinary, it seems necessary for the amendment of the delinquent, for the removal of the near occasion [of soliciting in the future], or for the prevention of scandal or reparation for it, there should be added a prescription for a prohibition of remaining in a certain place" (*Crimen Sollicitations* at paragraph 64). Under this policy of secrecy and transfers or reassignments, all involved are threatened with excommunication and, thus, damnation, if they do not comply.

55.     The policy of secrecy and the severest of penalties for its violation were reiterated in documents issued by officials of the Holy See for the benefit of its agents, including the Bishop of the DIOCESE OF BUFFALO, the SCHOOL as agent, and the Leader of the ORDER, in 1988 and 2001.

56.     The policies and practices of the DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER designed to conceal sexual abuse by clergy and protect them from scandal and liability included the following:

    a.    transfer and reassignment of clergy known or suspected to abuse minors to deflect attention from reports or allegations of child sexual abuse;

    b.    concealing from parishioners and even other clergy that a clergy reassigned to their parish posed a danger of sexual abuse to children;

    c.    failing to alert parishioners from the clergymen's prior assignments or his experience in seminary that their children were exposed to a known or suspected child molester;

    d.    failing to report sexual abuse to criminal authorities; and

e.  otherwise protecting and fostering the interests of abusive clergy to the detriment of the victims and the community, for the purpose of avoiding scandal and public scrutiny.

57.  Upon information and belief, the DIOCESE OF BUFFALO's and the ORDER's transfers and reassignments of accused clergy were pursuant to this policy and practice designed to conceal sexual abuse of clergy and protect themselves from scandal.

58.  Indeed, the policy of secrecy and lack of consequences for the sexual abuse of children was perceived as a perquisite by clergy sex abusers. The Holy See, the DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER believed it to be perceived as a perquisite, which it condoned and used to their advantage in controlling clergymen.

59.  Plaintiff was in a zone of foreseeable harm as a child engaged in Catholic activities in close proximity to or with Catholic clergy.

60.  The DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER were in the best position to protect against the risk of harm as they knew of the systemic problem and foreseeable proclivities of their clergymen to sexually abuse children.

61.  At all relevant times, while the DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER had special and unique knowledge of the risk of child sexual abuse by its clergymen, such clergymen who would prey on children were outside the reasonable contemplation of the Catholic community and families who trusted clergy to have access to their children.

62.  Plaintiff and those similarly situated had no opportunity to protect themselves against a danger that was solely within the knowledge of the DIOCESE OF BUFFALO and the ORDER.

63. The DIOCESE OF BUFFALO, the SCHOOL as agent, and ORDER knew a significant percentage of clergymen were using their status and position to identify, recruit, groom and sexually assault vulnerable children in the Church.

64. Children engaging in Catholic activities were in this manner placed at risk of child sexual abuse. Because the DIOCESE OF BUFFALO, the SCHOOL as agent, and the ORDER maintained child sexual abuse by clergy in strict secrecy, parishioners, including Plaintiff's parents and/or guardians, were misled to believe that their clergy were safe around children.

65. As a result of the foregoing secrecy and deceit, Plaintiff's parents/guardians trusted the Defendants, and continued Plaintiff's involvement with church- and school-related activities.

**BREACH**

66. Upon information and belief, at the time Plaintiff was first sexually assaulted by PERPETRATOR and during the time that these sexual assaults continued, the Defendants knew or should have known that PERPETRATOR posed a foreseeable risk of sexual assault to students and children with whom PERPETRATOR would have contacts in his duties and activities as a Catholic clergyman.

67. At all times relevant and material hereto, the Defendants failed to warn Plaintiff and similarly situated individuals, and their parents and/or guardians, that PERPETRATOR posed a risk of child sexual abuse.

68. Given Defendants' constructive and/or actual knowledge of PERPETRATOR's dangerous sexual propensities, as described above, Defendants breached their duty to protect Plaintiff by allowing PERPETRATOR to serve as clergy and granting him unfettered access to students and children engaged in church- and school-related activity despite such knowledge of his dangerous sexual propensities, and by failing to institute any supervision of PERPETRATOR's

contacts with students and children, and failing to address and/or correct PERPETRATOR's known inappropriate contacts with students and children.

69.     As a direct and proximate result of the Defendants' breach of their duties, Plaintiff was sexually assaulted and abused by PERPETRATOR while Plaintiff was a student at SCHOOL.

70.     At all times relevant and material hereto, the Defendants breached their duties by (i) failing to protect Plaintiff from sexual assault and lewd and lascivious acts committed by their agent and employee; (ii) failing to establish policies and procedures that were adequate to protect the health, safety and welfare of students and children within the parish and protect them from sexual abuse; (iii) failing to implement and enforce policies and procedures that were adequate to protect the health, safety, and welfare of children within the parish and protect them from sexual abuse; (iv) hiring, retaining, and/or failing to supervise PERPETRATOR when they knew or should have known that he posed a substantial risk of harm to students and children; (v) failing to adequately monitor and supervise students and children at SCHOOL and within the DIOCESE OF BUFFALO and the ORDER; (vi) failing to warn students of the SCHOOL and their parents of the danger of sexual abuse posed by PERPETRATOR; (vii) hiring and retaining PERPETRATOR as clergy with unfettered access to students and children: (viii) failing to adequately supervise PERPETRATOR as an active clergyman of the ORDER and DIOCESE OF BUFFALO; and (ix) granting and maintaining PERPETRATOR faculties or authorization to act as clergy without making any warning or notice of his perverse sexual proclivities to the Catholic faithful who would have contacts with PERPETRATOR.

71.     At all times relevant and material hereto, the Defendants concealed their knowledge that clergy, specifically PERPETRATOR, were unsafe.

72.     At all times relevant and material hereto, Defendants failed to train teachers, clergy, employees, administrators, and staff in the prevention of child sexual abuse.

73.     At all times relevant and material hereto, Defendants failed to warn Catholic families that their students and children were at risk of sexual abuse by clergy in general and PERPETRATOR in particular.

74.     As a direct and proximate cause of the foregoing breaches of duty, PERPETRATOR sexually assaulted Plaintiff while Plaintiff was a student at SCHOOL.

75.     The limitation of liability set forth in CPLR Art. 16 is not applicable to the claim of personal injury alleged herein, by reason of one or more of the exemptions provided in CPLR § 1602, including without limitation, that Defendants acted with reckless disregard for the safety of others, including Plaintiff, or knowingly or intentionally, in concert with PERPETRATOR to retain PERPETRATOR in ministry with unfettered access to children.

## COUNT I – NEGLIGENCE
### (against Defendant CHURCH)

76.     Plaintiff repeats and realleges Paragraphs 1 through 75 above.

77.     Defendant CHURCH was negligent.

78.     Defendant CHURCH owed a duty of care to Plaintiff.

79.     Defendant CHURCH breached the duty of care owed to Plaintiff.  Defendant CHURCH, having actual or constructive notice of child sexual abuse perpetrated by its agents, including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and otherwise failed to make its parochial school safe.

80.     Defendant CHURCH knew or should have known that Plaintiff was being sexually abused and failed to take corrective action against the perpetrators of the sexual abuse, namely PERPETRATOR, or otherwise make its environment safe for Plaintiff.  Plaintiff was sexually

abused after Defendant CHURCH knew or should have known that Plaintiff was being sexually abused.

81.     It was reasonably foreseeable to Defendant CHURCH that in allowing clergy unsupervised and unfettered access to students and children that those students and children may be sexually abused.

82.     Defendant CHURCH was negligent in the hiring, supervision, placement, training, and retention of PERPETRATOR.

83.     As a direct and proximate result of Defendant CHURCH's negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

## COUNT II – NEGLIGENCE
### (against Defendant SCHOOL)

84.     Plaintiff repeats and realleges Paragraphs 1 through 75 above.

85.     Defendant SCHOOL was negligent.

86.     Defendant SCHOOL owed a duty of care to Plaintiff.

87.     Defendant SCHOOL breached the duty of care owed to Plaintiff.  Defendant SCHOOL, having actual or constructive notice of child sexual abuse perpetrated by its agents, including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and otherwise failed to make its parochial school safe.

88.     Defendant SCHOOL knew or should have known that Plaintiff was being sexually abused and failed to take corrective action against the perpetrators of the sexual abuse, namely PERPETRATOR, or otherwise make its environment safe for Plaintiff.  Plaintiff was sexually abused after Defendant SCHOOL knew or should have known that Plaintiff was being sexually abused.

89.     It was reasonably foreseeable to Defendant SCHOOL that in allowing clergy

unsupervised and unfettered access to students and children that those students and children may

be sexually abused.

90.     Defendant SCHOOL was negligent in the hiring, supervision, placement, training,

and retention of PERPETRATOR.

91.     As a direct and proximate result of Defendant SCHOOL's negligence, Plaintiff has

suffered and continues to suffer severe and permanent psychological, emotional, and physical

injuries, shame, humiliation, and the inability to lead a normal life.

## COUNT III – NEGLIGENCE
### (against Defendant ORDER)

92.     Plaintiff repeats and realleges Paragraphs 1 through 75 above.

93.     Defendant ORDER was negligent.

94.     Defendant ORDER owed a duty of care to Plaintiff.

95.     Defendant ORDER breached the duty of care owed to Plaintiff.  Defendant

ORDER, having actual or constructive notice of child sexual abuse perpetrated by its agents,

including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and

otherwise failed to make its parochial school safe.

96.     Defendant ORDER knew or should have known that Plaintiff was being sexually

abused and failed to take corrective action against the perpetrators of the sexual abuse, namely

PERPETRATOR, or otherwise make its environment safe for Plaintiff.  Plaintiff was sexually

abused after Defendant ORDER knew or should have known that Plaintiff was being sexually

abused.

97.    It was reasonably foreseeable to Defendant ORDER that in allowing clergy unsupervised and unfettered access to students and children that those students and children may be sexually abused.

98.    Defendant ORDER was negligent in the hiring, supervision, placement, training, and retention of PERPETRATOR.

99.    As a direct and proximate result of Defendant ORDER's negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

## DEMAND FOR A JURY TRIAL

100.    Plaintiff demands a Jury Trial in this action.

WHEREFORE, the amount in controversy exceeds the jurisdictional limits of all lower courts, and Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, pain and suffering, punitive damages, attorney fees, the costs and disbursements of this action, and such other and further relief as this Court deems necessary just and proper.

Dated: New York, NY
      August 10, 2021

Respectfully submitted,

HERMAN LAW
434 W. 33rd St., Penthouse
New York, NY 10001
Tel: (212) 390-0100

By_____

  Jeff Herman, Esq.
  jherman@hermanlaw.com
  Jesse Seiden, Esq.
  jseiden@hermanlaw.com

# APPENDIX 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

-------------------------------------------------------------------X

JOHN DOE XXX,

                Plaintiff,

       -against-

ST. FRANCIS HIGH SCHOOL; and THE CONVENTUAL
FRANCISCANS OF THE SAINTANTHONY OF PADUA
PROVINCE,

                Defendants.

-------------------------------------------------------------------X

**STIPULATION
DISCONTINUING
ACTION**

Index No. 810928/2021

IT IS HEREBY STIPULATED AND AGREED by the parties herein that the above entitled action,
together with all cross-claims and counter-claims, be and the same is, hereby discontinued, with
prejudice and without costs to any party and this stipulation may be filed with the Clerk of the
Court without further notice.

HERMAN LAW

By: _____
       Jesse Seiden, Esq.
       jseiden@hermanlaw.com
       434 W. 33rd St., 7th Floor
       New York, NY 10001
       212-390-0100

LIPPES MATHIAS, LLP

By: _____
       Scott S. Allen, Esq.
       sallen@lipes.com
       50 Fountain Plaza, Suite 1700
       Buffalo, NY 14202
       716-853-5100

# APPENDIX 3

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

_____

JOHN DOE XXX,

                Plaintiff,

v.

ST. FRANCIS HIGH SCHOOL and THE
CONVENTUAL FRANCISCANS OF THE SAINT
ANTHONY OF PADUA PROVINCE,

                Defendants.

_____

**ANSWER**

Index No. 810928/2021

Defendants ST. FRANCIS HIGH SCHOOL and THE CONVENTUAL FRANCISCANS OF THE SAINT. ANTHONY OF PADUA PROVINCE, (hereinafter "Defendants"), by their attorneys, Lippes Mathias Wexler Friedman LLP, as and for their Answer to the Complaint, responds as follows:

1.      Deny knowledge or information sufficient to respond to the allegations contained in paragraphs 1, 2, 5, 6, 35, 36, 37, 38, 40, 49, 50, 51, 77, 78, 79, 80, 81, 82, and 83 of the Complaint, and therefore deny same.

2.      With respect to paragraph 3, admit the first sentence of paragraph 3, and deny knowledge or information sufficient to respond to the second sentence of paragraph 3, and therefore deny same.

3.      With respect to paragraph 4, admit that the Conventual Franciscans is a Catholic religious order, and deny the remaining allegations.

4.      The allegations contained in paragraphs 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 39, 75, 86, and 94 call for a legal

conclusion requiring neither an admission or denial. To the extent that a response is necessary, Defendants deny same.

5.      Deny the allegations contained in paragraphs 41, 42, 43, 44, 45, 46, 47, 48, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 85, 87, 88, 89, 90, 91, 93, 95, 96, 97, 98, and 99 of the Complaint.

6.      Defendants repeat and reallege all of the allegations above and below paragraphs 76, 84, and 92 of the Complaint.

7.      Defendant further denies each and every allegation of the Complaint not hereinbefore specifically admitted, controverted, or denied.

## AFFIRMATIVE AND OTHER DEFENSES

8.      For a first affirmative defense, Defendants assert that the Complaint and each Cause of Action therein fails to state a claim upon which relief can be granted.

9.      For a second affirmative defense, Defendants assert that this Court lacks jurisdiction over some or all of the claims made in the Complaint.

10.     For a third affirmative defense, Defendants assert that Plaintiff's claims are barred, in whole or in part, by the doctrine of laches and the applicable statues of limitations.

11.     For a fourth affirmative defense, Defendants assert that the Childs Victim Act is unconstitutional.

12.     For a fifth affirmative defense, Defendants assert that Defendants did not breach any lawful duty owed to Plaintiff.

13.     For a sixth affirmative defense, Defendants assert that all or some of the claims in the Complaint are barred because the alleged violations and damages sustained by Plaintiff, if any, were caused by the acts of a third party over whom Defendants had no control.

14. For a seventh affirmative defense, Defendants assert that Plaintiff's claims are barred, in whole or in part, because the acts of others constitute responsible and/or intervening and/or superseding causes of Plaintiff's alleged damages.

15. For an eighth affirmative defense, Defendants assert that all or some of the claims in the Complaint are barred because the alleged violations and damages sustained by Plaintiff, if any, were not caused by Defendants.

16. For a ninth affirmative defense, the Child Victims Act violates Defendants' Due Process rights under the New York State Constitution (Const. Art I, §6).

17. For a tenth affirmative defense, in the event that the Plaintiff recovers damages which have been paid or are payable by a collateral source, Defendants will seek an offset to such damages pursuant to Article 45 of the CPLR.

18. For an eleventh affirmative defense, if Defendants are found liable as alleged in the complaint, Defendants allege that the provisions of CPLR 1601 will apply.

19. For a twelfth affirmative defense, any proof adduced or presented during any trial of this matter on the issue of punitive damages and any such resulting award must conform to the procedural and substantive constitutional limitations set forth in the due process clauses of the 14th Amendment to the United States Constitution and the applicable sections of the New York State Constitution.

WHEREFORE, Defendants respectfully demand judgment dismissing Plaintiff's Complaint in its entirety and for such other and further relief as to this Court may seem just, proper and equitable, together with the costs and disbursements of this action.

Dated:      Buffalo, New York
              September 24, 2021

LIPPES MATHIAS WEXLER FRIEDMAN LLP

*/s/Dennis C. Vacco*
Dennis C. Vacco, Esq.
Scott S. Allen Jr., Esq.
*Attorneys for Defendants*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
T: (716) 853-5100
dvacco@lippes.com
sallen@lippes.com

TO:    Herman Law
434 W. 33rd St., Penthouse
New York, NY 10001
Tel.: (212) 390-0100