# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF BUFFALO, N.Y.,

Debtor.

Chapter 11

Case No. 20-10322 (CLB)

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PERMITTING NONTESTIMONIAL SURVIVOR STATEMENTS

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of Buffalo, N.Y. (the "**Debtor**" or "**Diocese**"), by and through its undersigned counsel, hereby moves (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A,** permitting survivors of childhood sexual abuse who filed claims in this case to make nontestimonial statements before the Court.  In support of the Motion, the Committee respectfully states:

### PRELIMINARY STATEMENT

1.  On the first day of this case the Diocese informed the Court that "[t]he Diocese does not seek bankruptcy relief to hide the truth or deny any person a day in court. In fact, the Diocese is committed to pursuing the truth and has never prohibited any person from telling his or her story or speaking his or her truth in public." *Affidavit of Rev. Peter J. Karalus Regarding Structure and Pre-Filing History of the Debtor and in Support of the Chapter 11 Petition and First Day Pleadings* [Docket No. 8] ("**Karalus Affidavit**") ¶ 63.

2.  Approximately 900 survivors filed Sexual Abuse Claims in this Case (collectively, "**Survivors**").  To date, Survivors have not had an opportunity to tell their stories or to speak their truth in court.  As such, the Committee requests that the Court schedule sessions

for Survivors to give non-testimonial statements to the Court about their abuse and the impact it has had on their lives. Giving Survivors an opportunity to personally participate in the bankruptcy process is important for this case's success and the Diocese's stated objective of pursuing truth and allowing Survivors to tell of their abuse in public.

3.     The Committee submits that it is important for Survivors to have an opportunity to have their say and be heard.   Providing Survivors with a direct connection to the Court and these proceedings will strengthen Survivors' engagement with the bankruptcy.

4.     Though there is not yet a global resolution in this Case, the Diocese and the Committee working with the Court-appointed mediators, have reached a settlement between the Committee, the Diocese and entities associated with the Diocese.  The Diocese and the Committee have memorialized the terms of the settlement in a joint plan of reorganization (as it may be amended, the "**Plan**")[Docket No. 4222] filed with the Court.  The Committee has also reached a settlement in principle with two of the largest insurance companies of the Diocese and continues to engage in mediation with the other insurers in an effort to reach a global resolution. The proposed Plan includes releases and injunctions in favor of non-debtor entities, such as parishes and other entities associated with the Diocese.

5.     Under the *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S.Ct. 2071 (2024) (the "**Purdue Decision**") decision, obtaining approval from all Survivor-claimants – or, at least, a lack of opposition from Survivors – is critical to success of the Plan.  Thus, allowing Survivors to be engaged in the bankruptcy process so that they can ultimately feel empowered to support the Plan is vitally important at this stage of the case.  More fundamentally, it is important for all parties in this case to hear the voice of Survivors who suffered at the hands of the Diocese and other entities associated with the Diocese this case moves towards confirmation.

6.      This Court should provide Survivors with the opportunity to make statements before this Court, the Diocese and other responsible entities regarding the abuse that they suffered, the consequences of that abuse, and the importance of the resolution of the Bankruptcy Case for closure and healing.  Shedding light on the abuse and the wake of devastation left by the Diocese and other responsible entities will provide a meaningful benefit to Survivors and aid in reaching global resolution of the case.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

8.      The Committee requests entry of an order substantially in the form attached as **Exhibit A**, scheduling a full day hearing prior to the confirmation hearing so that survivors may provide voluntary statements to the Court and the Diocese.  The Committee seeks authority to present survivor statements pursuant to sections 105 and 1109(b) of the Bankruptcy Code on the grounds that abuse survivors wish to be heard as part of the bankruptcy process and their statements will promote engagement and trust among survivors.

### A.  Importance of in Court Survivor Statements.

9.      Child sexual abuse is a deeply traumatic experience that leaves lasting scars on its survivors. Beyond the immediate physical and emotional harm, it undermines a person's sense of safety, trust, and self-worth, often for a lifetime. For many survivors of childhood sexual abuse, seeking justice through the legal system is a fundamental step towards reclaiming their dignity and healing from the profound harm inflicted upon them.

10.     Unfortunately, during the long pendency of this Bankruptcy Case, instead of an opportunity to reclaim their dignity and healing from the profound harm inflicted upon them, many Survivors feel that the bankruptcy process is revictimizing them and has wrested them from the control of their individual cases.

11.     The opportunity for Survivors to have a "day in court" to present statements about their experiences is important for Survivors for several compelling reasons:

- *Validation and Acknowledgment*: Court proceedings provide a formal acknowledgment of the trauma suffered by survivors. It validates their experiences and affirms that their suffering is acknowledged by society and the legal system.

- *Empowerment and Agency*: Participating in legal proceedings empowers survivors by giving them a voice. It allows them to actively engage in the pursuit of justice and reclaim a sense of agency that was stripped away by the abuse.

- *Closure and Healing*:  For many Survivors, having their perspective heard in court can be a pivotal step towards emotional healing and closure. It provides a mechanism for Survivors, to, at least in part, confront the past, reclaim their narrative, and move forward with their lives.  Moreover,  Survivors often feel isolated because they went through the abuse alone and believe that they carry the burden alone.  As Survivors hear from other individuals who suffered similar harm or were abused by the same perpetrators, they learn that they are not alone.

12.     Numerous courts have recognized the benefit of allowing survivors to give confidential, personal impact statements to the court and the debtor as part of the bankruptcy

process. The Court has inherent authority to schedule status conferences for such statements (the "**Survivor Statement Sessions**") pursuant to sections 105 and 1109(b) of the Bankruptcy Code.

13. Bankruptcy Code section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [Title 11]." Further, section 105(d) states that the court, "on its own motion or on the request of a party in interest – shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case." The Committee up to four days of the Survivor Statement Sessions so the Court and Diocese may hear Survivor statements to promote a better understanding of the main creditor constituency.

14. In addition, section 1109(b) of the Bankruptcy Code gives creditors of the Diocese a right to be heard "on any issue in a case under this chapter." Survivors seek to be heard in this case and treated as more than a claim number or data point.

15. The Committee requests that the Survivor Statement Sessions be in person, with direction that the statements are not to be considered evidence and should not be transcribed. The Committee further requests that no parties shall be expected or allowed to comment or respond to the statements. The Committee will also request of the Diocese that the Bishop attend the Survivor Statement Sessions in person.

**B. Numerous Diocesan Bankruptcy Courts Have Scheduled Hearings for Survivor Statements.**

16. Victim impact statements have been authorized in numerous diocesan bankruptcies, as well as the *Purdue Pharma* case. In the diocesan bankruptcies, survivor statements are an important step in the process of transparency, acknowledgment, and healing that is not otherwise available in the typical bankruptcy.

17.     In the Sacramento Diocese bankruptcy Case, on March 7, 2025, the court

overruled objections by numerous insurers and issued a written decision for publication, granting

the Committee's motion to authorize the presentation of survivor statements.  Rejecting

arguments that a court session to hear survivors was not authorized by the Bankruptcy Code, the

court stated:

> The reality is that profound human, psychological, and spiritual aspects of church sex abuse cases transcend tort damages.  The bankruptcy reorganization process may be proficient in the hard-headed business of marshaling diocesan resources and insurance coverage available to fund tort damage payments, but it does little to heal festering psychological wounds.
>
> **Anything that promotes reconciliation, catharsis, and solace for sex abuse victims in a chapter 11 case serves the interests of justice and is a worthy task for a bankruptcy judge.**
>
> **Procedurally, the victims statement session qualifies as a form of conference that is neither a trial nor a hearing.**  If one needs a label and a justification, it is in the nature of a confidential settlement conference that is an exercise of inherent judicial authority.

(Emphasis added).[1]  As Judge Klein noted, the bankruptcy court is not the trier of fact of sexual

abuse personal injury claims.  The survivor statements are not testimony under oath, nor are they

evidence, nor or they subject to response.  They are fundamentally a "listening session."[2]

18.     In the Northern District of New York, the Bankruptcy Court recently authorized –

over the objection of an insurer – up to two days of survivor impact statements in the Diocese of

Ogdensburg, N.Y. chapter 11 case.  *See Memorandum-Decision and Order Permitting Non-*

*Testimonial Survivor Statements, In re The Roman Catholic Diocese of Ogdensburg, New York,*

---

[1] *Memorandum Order on Motion to Authorize Presentation of Survivor Statements,* Docket No. 1153 (Mar. 7, 2025) at p. 2, *In re The Roman Catholic Bishop of Sacramento,* U.S. Bankruptcy Court, E.D. Cal., Case No. 24-21326.

[2] *Id.* at p. 7.

Case No. 23-60507 (Bankr. N.D.N.Y. October 27, 2025), a copy of which is attached hereto as **Exhibit B**.

19.     Recently, the Bankruptcy Court in the Diocese of Rochester case held a full day session to hear over 30 Survivor Statements on the same terms and conditions as are being proposed here.[3]  Many of the Survivors speaking thanked the Bankruptcy Court for the opportunity to be heard with one Survivor expressing gratitude for be able to express his pain in a "healthy way."[4]

20.     In the Archdioceses of San Francisco and Baltimore cases, the bankruptcy courts each scheduled sessions for survivor statements from survivor claimants who expressed a willingness and desire to address the Court.[5]  In the Diocese of Syracuse bankruptcy, the bankruptcy court ordered a single six-hour session for survivor statements that included a lunch break.[6]  The sessions were for "the sole purpose" of increasing "engagement and understanding in [the] chapter 11 case.  In each of the cases, the court explicitly ordered that "*no statements of any party at the Conferences will be considered as evidence in any matter or proceeding in this*

---

[3] *Order Granting Motion of the Official Committee of Unsecured Creditors for Entry of an Order Permitting Nontestimonial Survivor Statements,* Docket No. 3223 (June 26, 2025), In re Diocese of Rochester, U.S. Bankruptcy Court W.D.N.Y, Case No. 19-20905.

[4] https://www.whec.com/top-news/by-the-age-of-8-i-knew-monsters-do-exist-survivors-share-painful-testimonies-of-clergy-sex-abuse-as-246m-settlement-is-made/

[5] *See Amended Order Granting Application to Schedule a Status Conference with Presentation of Survivor Statements,* Docket No. 829 (Aug. 28, 2024), *In re The Roman Catholic Archbishop of San Francisco,* U.S. Bankruptcy Court, N.D. Cal., Case No. 23-30564-DM (the "**SF Order**"), and *Order Granting Committee Request to Reserve Time for Presentation of Survivor Statements,* Docket No. 432 (Mar. 21, 2024), *In re Roman Catholic Archbishop of Baltimore*, U.S. Bankruptcy Court, Dist. of Md., Case No. 23-16969 ("**Baltimore Order**").

[6] *See Order Granting Official Committee of Unsecured Creditors' Motion to Authorize Status Conferences for the Presentation of Survivor Impact Statements,* Docket No. 2540 (Feb. 24, 2025), *In re The Roman Catholic Diocese of Syracuse, New York,* U.S. Bankruptcy Court, N.D.N.Y., Case No. 20-20663 ("**Syracuse Order**").

*case or as part of the official record in this case.*"[7] The statements were not transcribed and audio recordings were not released without further court order.[8]

21.     Additionally, the Bankruptcy Court in the Roman Catholic Diocese of Burlington Vermont, pending in the United State Bankruptcy Court for the District of Vermont granted a motion for two status conferences for the presentation of Survivor statements.[9]  At the first hearing, one survivor, after thanking the judge for holding the hearing, noted that "[f]or me, shining a light on the darkness is a big part of what justice is about."[10] Another survivor observed following the hearing that the opportunity to speak gave him "a sense of closure and maybe a sense of being."[11]

22.     At least two other bankruptcy courts have recently granted motions to allow survivors to present statements in private proceedings.

23.     For example, in the bankruptcy of the Santa Rosa Diocese, the Court explained the benefit of allowing a limited number of survivors to speak, describing the session as comprising the "building blocks for a confirmable Chapter 11 plan."[12]  Again, the court overruled objections by insurers and reminded the parties that it is a non-evidentiary hearing, akin to a status conference.

---

[7] SF Order at ¶3; Baltimore Order at p. 2; and Syracuse Order at ¶3.

[8] SF Order at ¶4; Baltimore Order at p. 2; Syracuse Order at ¶¶4-5

[9] *Order Granting Motion to Schedule a Status Conference of the Presentation of Survivor Statements*, Docket No. 281 (April 29, 2025), *In re Roman Catholic Diocese of Burlington, Vermont*, U.S. Bankruptcy Court, D. Vt., Case No. 24-10205-HZC.

[10] The reporter received the survivor's permission before publishing his comments. *See* Derek Brouwer, *Burlington Bishop Hears Sex Abuse Survivors' Stories*, SEVEN DAYS (May 21, 2025), https://www.sevendaysvt.com/news/burlington-bishop-hears-sex-abuse-survivors-stories-43578336.

[11] Alexis Crandall, Abuse Survivors Have Day in Court in Burlington Diocese Bankruptcy Case, MYNBC5 (May 14, 2025, 8:58 PM EDT), https://www.mynbc5.com/article/abuse-survivors-have-day-in-court-in-burlington-diocese-bankruptcy-case/64772393.

[12] *Order Authorizing Survivor Statement Hearing,* Docket No. 966 (Nov. 18, 2024) at p. 2, *In re The Roman Catholic Bishop of Santa Rosa,* U.S. Bankruptcy Court, N.D. Cal., Case No. 23-10113-CN.

24. The bankruptcy court overseeing the Diocese of Oakland similarly authorized and scheduled conferences for survivor statements.[13] The court granted the motion to permit survivor statements under its inherent authority to issue any order that fairness requires and to hear a party in interest.

25. Finally, the bankruptcy court presiding over the Diocese of Albany Case heard survivor impact statements over three days.[14]

### **CONCLUSION**

26. The Committee respectfully request the Court enter an order substantially in the form attached as **Exhibit A**.

---

[13] *See Amended Order Granting Application to Schedule a Status Conference with Presentation of Survivor Statements,* Docket No. 829 (Aug. 28, 2024), *In re The Roman Catholic Archbishop of San Francisco,* U.S. Bankruptcy Court, N.D. Cal., Case No. 23-30564-DM; and *Agreed Order Granting Motion to Schedule Status Conferences for the Presentation of Survivor Statements,* Docket No. 1436 (October 31, 2024), *In re The Roman Catholic Bishop of Oakland,* U.S. Bankruptcy Court, N.D. Cal., Case No. 23-40523-WJL.

[14] Lilli Iannella, *Victims of Sexual Abuse Tell Their Stories as Judge, Bishop Listen*, Times Union, (September 10, 2025)(https://www.timesunion.com/state/article/victims-abuse-albany-diocese-tell-stories-21040531.php)

Case 1-20-10322-CLB, Doc 4341, Filed 11/07/25, Entered 11/07/25 15:56:38, Description: Main Document , Page 9 of 26

Dated: November 7, 2025

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Ilan D. Scharf* _____
James I. Stang
Ilan D. Scharf
Karen B. Dine
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: 212-561-7700
Facsimile: 212-561-7777
Email: jstang@pszjlaw.com
        ischarf@pszjlaw.com
        kdine@pszjlaw.com

*Counsel to Official Committee of Unsecured Creditors*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| THE DIOCESE OF BUFFALO, N.Y., | )    Case No. 20-10322-CLB |
| | ) |
| Debtor. | ) |
| | ) |

## [PROPOSED] ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PERMITTING <u>NONTESTIMONIAL SURVIVOR STATEMENTS</u>

Upon consideration of the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Permitting Nontestimonial Survivor Statements* (the "**Motion**") [Docket. No. _____], and the Court having found that notice given of the Motion is appropriate under the circumstances and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is GRANTED to the extent set forth herein.

2.      Survivors designated by the Committee shall be permitted to make statements before the Court on the following dates:

[insert date for each session]

3.      The Survivor Statement Sessions will include only Survivor Statements; no parties in interest shall be expected or allowed to comment or respond to the Survivor Statements.

4.      The sole purpose of the Survivor Statement Sessions is to increase survivor engagement and understanding in this chapter 11 case; no statements of any party in interest at the Survivor Statement Sessions will be considered as evidence in any matter or proceeding in this case or as part of the official record in this case.

5.      The Survivor Statement Sessions will not be transcribed by a court reporter. There will be no recording of the Survivor Statement Sessions.

6.      Consistent with Judicial Conference policy, no party or member of the public may photograph, video record, audio record, broadcast, televise, or otherwise transmit the Survivor Statement Sessions. Any media report concerning the statements made during the Survivor Statement Sessions shall not be considered evidence in any matter or proceeding in this case.

7.      If any survivor who filed a proof of claim in the Debtor's Bankruptcy Case and/or filed a lawsuit against a parish of the Diocese would like the opportunity to make a statement, the Survivor (a "**Speaker**") should contact, or, if represented by counsel, should have their counsel contact the Official Committee of Unsecured Creditors (Ilan D. Scharf  at [ischarf@pszjlaw.com](mailto:ischarf@pszjlaw.com) and Karen B. Dine at kdine@pszjlaw.com) as soon as possible, and include the Speaker's, or the Speaker's counsel's contact information. It may not be possible to accommodate every request.

8.      Committee counsel will confirm the Speakers and, at least two business days in advance of the Survivor Statement Sessions, shall inform Chambers (via email) of the number of Speakers, the order of expected appearance, and the estimated time allocated to each statement (the "**Agenda**").  Counsel for the Committee shall also file each Agenda on the Docket with Speakers identified by a pseudonym and/or the number of their filed Sexual Abuse Claim.

9.      During the Survivor Statement Sessions, Speakers will be referred to only by their assigned speaker number unless they choose to use their own names. Speaker statements will be limited to no more than approximately 20 minutes each.

10.      Apart from introductions by counsel and the Court, the Survivor Statement Sessions will include only statements by the Speakers. No party shall comment or respond to the

statements.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

Dated: _____, 2025
          Buffalo, New York

_____
Hon. Carl L. Bucki
Chief United States Bankruptcy Judge

**EXHIBIT B**

4873-0062-8734.3 18502.002

So Ordered.

Signed this 27 day of October, 2025.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| In re: | : |
| | : |
| THE ROMAN CATHOLIC DIOCESE | : |
| OF OGDENSBURG, NEW YORK, | : |
| | : |
| Debtor. | : |

_____

Case No. 23-60507 (PGR)
Chapter 11

APPEARANCES:

BOND, SCHOENECK & KING, PLLC             CHARLES J. SULLIVAN, ESQ.
*Counsel for Debtor*
One Lincoln Center, Syracuse, New York 13202

PACHULSKI STANG ZIEHL & JONES LLP        IIAN D. SCHARF, ESQ.
*Counsel for Official Committee of Unsecured Creditors*
1700 Broadway, Ste 36th Floor, New York, New York 10019

O'MELVENY & MYERS LLP                     TANCRED V. SCHIAVONI, ESQ.
*Counsel for Century Indemnity Company,*
*as successor to CCI Insurance Company, as*
*successor to Insurance Company of North America*
1301 Avenue of the Americas, Suite 1700, New York, New York 10019

## MEMORANDUM-DECISION AND ORDER
## PERMITTING NON-TESTIMONIAL SURVIVOR STATEMENTS

"The fundamental requisite of due process of law is the opportunity to be

heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 783, 58 L. Ed. 1363

(1914).

1

"When I have been listened to and when I have been heard, I am able to re-perceive my world in a new way and to go on." CARL ROGERS, *Experiences in Communication*, *in* A WAY OF BEING 5, 12 (1980).

The Roman Catholic Diocese of Ogdensburg is a debtor in bankruptcy because over one hundred individuals filed lawsuits seeking compensation for alleged clerical sexual abuse. (Declaration of Rev. Kevin J. O'Brien, Docket No. 7, at ¶ 44). Presently pending is a motion by the Official Committee of Unsecured Creditors ("Committee") to allow those individuals the opportunity to be heard. (Docket No. 1050). The motion is granted.

## Jurisdiction

This Court has core jurisdiction over the parties and the subject matter of this contested matter under 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

The Diocese is a religious corporation canonically established in 1872 and incorporated pursuant to a special act of the New York Legislature in 1945. (O'Brien Declaration, Docket No. 7, at ¶ 2, 20). The Diocese, by and through its offices, parishes, and ministry entities, provides religious services and performs charitable work across eight counties in northern New York State. *Id.* at ¶ 22.

The Diocese is a named defendant in 124 lawsuits brought by individuals alleging clerical sexual abuse. *Id.* at ¶ 44. The Diocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 17, 2023. (Docket No. 1).

2

According to the Diocese, it sought bankruptcy relief to maximize its assets (including insurance) to provide the "greatest recovery for the greatest number" of abuse survivors; to create an orderly claims administration process and achieve an equitable distribution; and to allow the Diocese to survive and "continue to fulfill its charitable, humanitarian and religious mission in service of the Catholic faith." (O'Brien Declaration, Docket No. 7, at ¶45).

Approximately 130 individuals filed proofs of claims in this case alleging sexual abuse. (Docket No. 1050, at ¶ 2). The Diocese, Committee, and various insurance companies have been engaged in mediation with a court-appointed mediator since January of 2024. (Docket No. 69, Adversary Proceeding 23-80013-6).

On September 26, 2025, the Committee moved for an Order permitting non-testimonial "survivor statements." (Docket No. 1050). Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") filed a response in opposition to the motion on October 14, 2025. (Docket No. 1083). The Committee filed a reply in further support of the requested relief on October 20, 2025. (Docket No. 1089).

This Court held a hearing on October 21, 2025, in Utica, New York, with appearances by, and arguments from, the above-named counsel. The Diocese's counsel advised that the Diocese supports the motion and that the Bishop of the Diocese would attend the conference(s) and listen to the survivor statements. The motion was granted over Century's objection. This Court's reasons for that ruling are set forth below.

## Analysis

The Committee requests an Order scheduling two days of survivor statements, with sexual abuse claimants being offered the opportunity to address this Court and the Bishop regarding their experience. The survivor statements would be voluntary and non-testimonial, with the stipulation that the statements will not be transcribed and cannot be used in any other proceeding or for any other purpose. The claimants would not be subject to cross-examination and other parties will not respond to the statements.

The Committee argues that the statements would provide valuable validation, empowerment, closure, and healing to survivors of sexual abuse. In addition, the Committee believes the statements will promote the claimants' engagement with, and confidence in, the bankruptcy process, thereby facilitating their support for the consensual plan of reorganization the parties hope to develop through mediation.

Century does not directly deny the benefits cited by the Committee, but opposes the motion by arguing that (1) survivor statements are not authorized by the Bankruptcy Code and, in fact, conflict with important evidentiary rules and (2) hearing survivor statements will taint this Court as a trier of fact.

This Court finds Century's arguments unavailing.

First, the Bankruptcy Code gives the abuse claimants the right to be heard and grants this Court the authority and discretion to conduct conferences and hear from parties in a pending case.

4

Section 1109 (b) of the Code states that parties in interest, including creditors, "may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109 (b).  The Supreme Court described this provision as "capacious" and intended to ensure "[b]road participation," which "promotes a fair and equitable reorganization process." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 277, 280-81 144 S. Ct. 1414, 1424-25, 219 L. Ed. 2d 41 (2024).

In addition, Section 105 (d) of the Code not only grants bankruptcy courts the power to conduct conferences, but states that they "*shall* hold such status conferences as are necessary to further the expeditious and economical resolution" of their cases. 11 U.S.C. § 105 (d)(emphasis added); *see also* 2 Collier on Bankruptcy P 105.08 (discussing Congress's intention to "mandate" status conferences); *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Bankruptcy Code § 105(d) requires a bankruptcy court to hold a case management conference ….").

Although Rule 5001 (b) of the Federal Rules of Bankruptcy Procedure requires that trials and hearings be "held in open court," it permits other proceedings to be conducted "in chambers anywhere within or outside the district." Fed. R. Bankr. Pro. 5001 (b).  This Rule is derived from former Bankruptcy Rule 501(b). *See* 12 COLLIER ON BANKRUPTCY ¶ 501.6 (14th ed. 1978).  In discussing former Rule 501 (b), *Collier's* explains that the Rule "is in keeping with the judicial power to do all things and perform all acts necessary to speed the case to a conclusion…." *Id.*

Century notes that in 2024 two members of the House of Representatives introduced a bill that would, *inter alia*, expressly permit victim impact statements in Chapter 11 cases. (Docket No. 1083-4).

The desire of two House members to codify the survivors' right to offer statements does not mean that this Court does not already have the statutory and/or inherent authority to permit such statements. *See generally In re Nunn*, 49 B.R. 963, 964 (Bankr. E.D. Va. 1985)("Section 107(a) provides that papers filed in a case under Title 11 of the United States Code are of public record. This is merely a codification of the common law general right to inspect judicial records and documents."); *Riggs v. Dayco Prods., Inc.*, No. 1:05CV91, 2006 WL 8455907, at *1 (W.D.N.C. Feb. 22, 2006)("Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process."); *Gerzof v. Miller* (*In re Miller*), 14 B.R. 443, 447 (Bankr. E.D.N.Y. 1981)("It seems obvious from the very existence of a bankruptcy court's equitable powers, that Congress did not intend to provide expressly for all of the court's prerogatives.").

Indeed, Bankruptcy Rule 5001(b) is akin to Rule 77(b) of the Federal Rules of Civil Procedure, which has long been recognized as a codification of the court's inherent authority to conduct bench conferences. *See* 1 Bankruptcy Litigation § 5:318 (Steinberg 2025); *B.H.*, 49 F.3d at 298.

Second, the proposed conference falls well within the "traditional authority of a judge to speak privately with the parties to a suit, whether in bench conferences or in chambers." 14 Moore's Federal Practice § 77.03 (3d ed. 2024)(quoting *B.H. v.*

6

*McDonald*, 49 F.3d 294, 297-98 (7th Cir. 1995)); *see also In re Roman Cath. Archbishop of Baltimore,* No. 23-16969-MMH, 2025 WL 2314793, at *7 (Bankr. D. Md. Aug. 11, 2025)("Case law and the federal rules have long recognized a court's ability to manage its own docket and to conduct certain activities and proceedings in chambers or otherwise outside the designated courtroom."); *see also generally United States v. Town of Moreau, N.Y.*, 979 F. Supp. 129, 134 n.2 (N.D.N.Y. 1997), *aff'd sub nom. United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998).

Third, Century's argument that the proposed conference violates the rules and procedures applicable to witness testimony fails because the statements will expressly *not* be considered evidence and will not be admissible in any proceeding to prove (or disprove) any dispute issue(s).

Fourth, nearly all the bankruptcy courts to consider this issue have found survivor statements to be a permissible and appropriate exercise of discretion. *See In re Roman Cath. Bishop of Sacramento*, 667 B.R. 577 (Bankr. E.D. Cal. 2025); *In re Archbishop of Baltimore*, 2025 WL 2314793, at *6-*7; *Amended Order Granting Application to Schedule a Status Conference with Presentation of Survivor Statements*, Docket No. 829, *In re The Roman Catholic Archdiocese of San Francisco* (Bankr. N.D. Cal., Case No. 23-30564-DM, Aug. 28, 2024); *Order Granting Motion of the Official Committee of Unsecured Creditors for Entry of an Order Permitting Nontestimonial Survivor Statements*, Docket No. 3223, *In re Diocese of Rochester*, (Bankr. W.D.N.Y, Case No. 19-20905, June 26, 2025); *Order Granting Motion to Schedule a Status Conference of the Presentation of Survivor Statements*, Docket No.

281, In *re Roman Catholic Diocese of Burlington, Vermont*, Bankr. D. Vt., Case No. 24-10205-HZC, April 29, 2025).

Both Chief Judge Kinsella and Judge Littlefield in this Court's own district permitted survivor statements. *See Order Granting Official Committee of Unsecured Creditors' Motion to Authorize Status Conferences for the Presentation of Survivor Impact Statements*, Docket No. 2540, *In re The Roman Catholic Diocese of Syracuse, New York* (Bankr. N.D.N.Y. Case No. 20-20663, Feb. 24, 2025); *Order Authorizing a Status Conference for the Presentation of Survivor Impact Statements*, Docket No. 2067, *In re The Roman Catholic Diocese of Albany, New York* (Bankr. N.D.N.Y. Case No. 23-10244, July 24, 2025).

Fifth, while recognizing Century's concern regarding the risk that hearing the statements could taint this Court as a future trier of fact and noting that this concern has been shared by some judges, including Judge Grabill in the Archdiocese of New Orleans case, this Court finds the concern overstated and outweighed by the benefits of permitting the statements.

Judges are not robots — we come to court with personal feelings and beliefs informed by our life experience.

It is fundamental to the role that we strive to transcend those sentiments and apply the law as we interpret it according to the facts as we find them. *See Confirmation Hearing on the Nomination of Hon. Sonia Sotomayor to be an Associate Justice of the Supreme Court of the United States before the S. Comm. on the Judiciary,* 111th Cong. 121 (2009) (response of J. Sonia Sotomayor to Sen. Jon Kyl,

S. Comm. on the Judiciary)(explaining that judges "apply law to facts. We don't apply feelings to facts."); *see also Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1372 (7th Cir. 1994)( "Judges are human; like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a 'possible temptation' to be biased. But not all temptations are created equal. We expect—even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do.").

This is particularly the case for bankruptcy judges. As Judge Harner observed in her decision permitting survivor statements:

> Bankruptcy cases involve difficult issues. People lose their homes, their businesses, their jobs, their retirement benefits, and much more, and often the circumstances surrounding these events are not pleasant and can be emotional for the parties. Regardless of statements made in the courtroom during any act or other proceeding outside a formal hearing or trial, as stated in a prior note, the Court is bound by, and will follow, the Code and the applicable federal rules (including the Federal Rules of Evidence) in any hearing or trial held in the case or any related adversary proceeding.

*Archbishop of Baltimore*, 2025 WL 2314793, at *6, n. 22.

Moreover, this Court recognizes that the survivor statements will not, and cannot, be considered evidence, as they will not be offered under oath or tested by cross-examination. *See Bishop of Sacramento*, 667 B.R. at 580 ("In the procedural posture of the case, any statements made are no more than allegations which

9

standard Rule 12 pretrial motion practice treats as true only for purposes of analysis. Hence, the alleged sex abuses are treated as presumed to have occurred for interim pretrial procedural purposes. Ultimately, of course, the plaintiffs must prove their respective cases by preponderance of evidence in trial by jury. At this stage, credibility is not an issue."); *Archbishop of Baltimore*, 2025 WL 2314793, at *6 ("This Court frequently hears statements from parties in interest in the courtroom that are not evidence or offered as part of an evidentiary hearing or trial. The Court can allow parties to speak without prejudicing the record.").

Further, any concern about potential prejudice in the event this Court is called upon to be a trier of fact is speculative and, should it arise, can be raised by a concerned party via a recusal request as to the matter in question.[1]

Lastly, and most importantly, the risk is substantially outweighed by the significant benefits to be achieved by permitting the statements.

As noted above, Century does not seriously dispute that affording claimants an opportunity to address this Court and the Bishop (and to hear from fellow survivors) will provide some measure of validation, healing, and empowerment. *See Bishop of Sacramento*, 667 B.R. at 578 ("Considerations of basic human dignity require that [survivors] know that they have been heard by the Church and by the Court....Anything that promotes reconciliation, catharsis, and solace for sex abuse

---

[1] Indeed, 28 U.S.C. § 455 "already … imposes … an obligation on me to personally evaluate any bias I may have in this case—actual or reasonably perceived—and disclose or recuse if I find that I must." *Brizuela v. City of Sparks*, No. 3:19-CV-00692-MMD-CSD, 2022 WL 22827625, at *4 (D. Nev. Oct. 3, 2022).

10

victims in a chapter 11 case serves the interests of justice and is a worthy task for a bankruptcy judge.").

Further, having this Court (as opposed to another judge with no connection to the case) conduct the conference promotes engagement with, and confidence in, the bankruptcy process, which will, in turn, hopefully increase the prospects for a consensual and expeditious resolution to this case. *See Archbishop of Baltimore*, 2025 WL 2314793, at *8 ("A status conference allowing Survivors to address the Court, the Debtor, and other parties in interest is appropriate, an authorized tool available to the Court, and *needed* in this particular case to maintain confidence in the process and facilitate continued discussions and progress.")(emphasis in original).

The Committee's Motion for Entry of an Order Permitting Nontestimonial Survivor Statements (Docket No. 1050) is GRANTED.  A separate scheduling order setting the dates, location, and parameters of the conference will be issued forthwith.[2]

###

---

[2] In its opposition to this motion, Century requested a stay pending appeal.  That request is denied without prejudice to being renewed via separate motion on notice.

11