UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**NOTICE OF MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING
BIDDING PROCEDURES FOR THE SALE AND PARTIAL LEASEBACK
OF CERTAIN REAL PROPERTY LOCATED AT 785, 814, 815, 819 AND 821
MAIN STREET, BUFFALO, NEW YORK; (B) AUTHORIZING AND APPROVING
THE FORM OF PURCHASE AGREEMENT AND ACCOMPANYING LEASE; (C)
SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE; AND
(D) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE OF
AUCTION AND SALE HEARING; (II) APPROVING THE SALE FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER
INTERESTS; AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE**, that on February 9, 2026, The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, filed with the United States Bankruptcy Court for the Western District of New York (the "Court") the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale and Partial Leaseback of Certain Real Property Located at 785, 814, 815, 819 and 821 Main Street, Buffalo, New York; (B) Authorizing and Approving the Form of Purchase Agreement and Accompanying Lease; (C) Scheduling an Auction and Hearing to Consider the Sale; and (D) Approving the Form and Manner of Service of Notice of Auction and Sale Hearing; (II) Approving the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (III) Granting Related Relief* (the "Sale Motion").[1]

**PLEASE TAKE FURTHER NOTICE**, that the Diocese, by and through its counsel, will move before the Honorable Carl L. Bucki, Chief United States Bankruptcy Judge for the Western District of New York on the **6th day of March, 2026 at 10:00 a.m.** (the "Bidding Procedures Hearing"), or as soon thereafter as counsel may be heard, for an Order: (a) approving bidding procedures in connection with the sale and partial leaseback of certain real property located at (i) 785 Main Street, Buffalo, New York 14203, (ii) 814 Main Street, Buffalo, New York 14203, (iii) 815 Main Street, Buffalo, New York, (iv) 819 Main Street, Buffalo, New York, and (v) 821 Main Street, Buffalo, New York (each a "Parcel" and collectively, (i) – (v), together with all improvements and fixtures located thereon, the "Real Property"); (b) authorizing and approving the form of the proposed purchase agreement between the Diocese and BFC Buffalo Main LLC ("BFC"); (c) authorizing and approving the form of the proposed lease agreement (the "Lease Agreement") between the Diocese and BFC Buffalo Main LLC; (d) scheduling an auction (the "Auction") and the date and time of the hearing to approve the sale of the Real Property; and (e)

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

approving the form and manner of service of notice of the Bidding Procedures and the Auction and Sale Hearing.

**PLEASE TAKE FURTHER NOTICE**, that parties can choose to appear at the Bidding Procedures Hearing either (i) in person at the Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, New York or (ii) telephonically (call-in 1-571-353-2301, Courtroom ID 483077448#, and security pin 9999#).

**PLEASE TAKE FURTHER NOTICE**, that pursuant to the Sale Motion, the Diocese is seeking authority to conduct a sale and partial leaseback of the Real Property outside of the ordinary course of its business pursuant to 11 U.S.C. § 363(b) free and clear of any liens, claims, encumbrances and other interests prior to the entry of an order of confirmation in its above-captioned chapter 11 case.

**PLEASE TAKE FURTHER NOTICE**, that the Real Property proposed to be sold in the Sale Motion consists of five (5) Parcels of land owned by the Diocese; and the improvements and fixtures thereon. The initial bid for the Real Property is $4,500,000.00 and the initial bidder is BFC. If approved by the Court, the proposed sale will be subject to the submission of higher or better offers by other bidders at the Auction. The Real Property does not constitute all or substantially all of the Diocese's assets, and the proposed sale of the Real Property will have no material impact on the reorganization of the Diocese.

**PLEASE TAKE FURTHER NOTICE**, that the Diocese believes that the sale of the Real Property to BFC or to an alternate purchaser pursuant to a higher or better offer submitted in conformity with the Bidding Procedures, represents the best opportunity to realize value from the Real Property for the Diocese's bankruptcy estate.

**PLEASE TAKE FURTHER NOTICE**, that title and possession of the Real Property shall transfer to BFC or to an alternate purchaser pursuant to a higher or better offer submitted in conformity with the Bidding Procedures, and expressly subject to all terms, conditions, and obligations contained in the Lease Agreement.

**PLEASE TAKE FURTHER NOTICE**, that all affidavits and memoranda in opposition to the relief requested in the Sale Motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court for the Western District of New York as soon as practicable.

**PLEASE TAKE FURTHER NOTICE**, that all affidavits and memoranda in opposition to the relief requested in the Sale Motion, if any, shall be served upon (i) counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Charles J. Sullivan, Grayson T. Walter, and Justin S. Krell; (ii) the Office of the United States Trustee for the Western District of New York, 300 Pearl Street, Suite 401, Buffalo, New York 14202, Attn: Joseph W. Allen, (iii) counsel to the Official Committee of Unsecured Creditors, Pachulski, Stang, Ziehl & Jones, LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California, 90067-4003, Attn: James I. Stang, and 1700 Broadway, 36th Floor, New York, New York, 10019-5004, Attn: Ilan Scharf, and (iv) those persons who have formally appeared and requested service in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

2

**PLEASE TAKE FURTHER NOTICE**, that copies of the Sale Motion and all other documents filed in the Diocese's chapter 11 case may be obtained free of charge via the case management website maintained by the Diocese's noticing agent at https://case.stretto.com/dioceseofbuffalo or by contacting the undersigned counsel for the Diocese.

Dated: February 9, 2026

BOND, SCHOENECK & KING, PLLC


By:    /s/ Stephen Donato
     Stephen A. Donato
     Charles J. Sullivan
     Grayson T. Walter
     Justin S. Krell
     One Lincoln Center
     Syracuse, NY 13202-1355
     Telephone: (315) 218-8000
     Fax: (315) 218-8100
     Emails:   sdonato@bsk.com
              csullivan@bsk.com
              gwalter@bsk.com
              jkrell@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 20-10322 (CLB) |
| The Diocese of Buffalo, N.Y., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**MOTION FOR ENTRY OF ORDERS (I)(A)
APPROVING BIDDING PROCEDURES FOR
THE SALE AND PARTIAL LEASEBACK OF CERTAIN REAL
PROPERTY LOCATED AT 785, 814, 815, 819 AND 821 MAIN STREET,
BUFFALO, NEW YORK; (B) AUTHORIZING AND APPROVING THE FORM OF
PURCHASE AGREEMENT AND ACCOMPANYING LEASE; (C) SCHEDULING AN
AUCTION AND HEARING TO CONSIDER THE SALE; AND (D) APPROVING THE
FORM AND MANNER OF SERVICE OF NOTICE OF AUCTION AND SALE
HEARING; (II) APPROVING THE SALE FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES AND OTHER INTERESTS;
AND (III) GRANTING RELATED RELIEF**

The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, hereby moves this Court (this "Motion") for entry of an order substantially in the form attached hereto as ***Exhibit A*** (the "Bidding Procedures Order"): (a) approving bidding procedures in substantially the form attached as Exhibit 1 to the Bidding Procedures Order (the "Bidding Procedures") in connection with the sale and partial leaseback of certain real property located at (i) 785 Main Street, Buffalo, New York 14203, (ii) 814 Main Street, Buffalo, New York 14203, (iii) 815 Main Street, Buffalo, New York 14203, (iv) 819 Main Street, Buffalo, New York 14203, and (v) 821 Main Street, Buffalo, New York 14203 (each a "Parcel" and collectively, (i) – (v), together with all improvements and fixtures located thereon, the "Real Property"); (b) authorizing and approving the form of the proposed purchase agreement, as amended, (the "Purchase Agreement") with BFC Buffalo Main LLC, ("BFC"), a copy of which is attached as Exhibit 2 to the Bidding Procedures Order; (c) authorizing and approving the form of the proposed lease

agreement (the "Lease Agreement") with BFC Buffalo Main LLC, ("BFC"), a copy of which is attached as Exhibit 3 to the Bidding Procedures Order; (d) scheduling an auction (the "Auction") and the date and time of the hearing to approve the sale and partial leaseback of the Real Property (the "Sale Hearing"); and (e) approving the form and manner of service of notice of the Bidding Procedures and the Auction and Sale Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit 4 (the "Notice of Auction and Sale Hearing").

The Diocese further requests that at the Sale Hearing, subject to the results of the Auction and the Bidding Procedures set forth herein, this Court enter an order (the "Sale Order") (i) approving and authorizing the sale and partial leaseback of the Real Property (together the "Sale Transaction") free and clear of any liens, claims, encumbrances and other interests (collectively, "Encumbrances"), pursuant to the terms of the Successful Bid (as defined herein); and (ii) granting related relief. In support of the Motion, the Diocese respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and rule-based predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (11 U.S.C. § 101, *et seq.*, the "Bankruptcy Code"), Rules 6004 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Procedure for the Western District of New York (the "Local Rules").

**BACKGROUND**

5.      On February 28, 2020 (the "<u>Petition Date</u>"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq*., as amended, the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the Western District of New York (the "<u>Court</u>"), commencing the Diocese's chapter 11 case (this "<u>Chapter 11 Case</u>"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On March 12, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "<u>Committee</u>") pursuant to Bankruptcy Code section 1102 [Docket No. 92]. No request for a trustee or examiner has been made in this Chapter 11 Case, and as of the date of this filing, no other official committees have been appointed or designated.

**A.**      <u>The Real Property and the Purchase and Lease Agreements</u>

7.      The Real Property consists of five (5) Parcels of land owned by the Diocese and located at 785 Main Street, Buffalo, New York 14203, 814 Main Street, Buffalo, New York 14203, 815 Main Street, Buffalo, New York 14203, 819 Main Street, Buffalo, New York 14203, and 821 Main Street, Buffalo, New York 14203.

8.      On January 31, 2024, the Court entered an *Order Granting Application to Employ Hanna Commercial Real Estate as Realtor* [Docket No. 2784] (the "<u>Broker Order</u>") which authorized the Diocese to engage Hanna Commercial Real Estate (the "<u>Broker</u>") as real estate broker for the Diocese in this Chapter 11 Case to market, among other properties, the Real Property.

9.      Promptly after the entry of the Broker Order, the Broker began marketing the Real Property for sale, ultimately resulting in an offer from BFC. Following negotiations with BFC,

3

the Diocese and BFC entered into a purchase agreement, whereby BFC agreed to purchase the Real Property for $4,500,000.00. BFC will act as the stalking horse bidder for the Real Property, subject to higher or better offers through competitive bidding as proposed herein.

10. The Diocese determined that although a sale of the Real Property at this time was in the best interests of its estate, the Diocese still required temporary use of a portion of the Real Property. Thus, the Diocese and BFC entered into an amendment to the purchase agreement (together, the purchase agreement and the amendment thereto shall be referred to as the "Purchase Agreement") to incorporate provisions from the Lease Agreement. Pursuant to the Lease Agreement, BFC agreed to lease to the Diocese the building comprised of approximately 31,500 square feet located at 801 Main Street, Buffalo, New York 14203[1] (the "Building"). The Lease Agreement includes the garage at street level and adjacent to the Building, and exclusive use of all parking spaces located in Lot 1, which Parking Lot 1 is connected to the Building. The Lease Agreement is for a term of three (3) years with an option to renew for one consecutive and successive period of three (3) years.

### RELIEF REQUESTED

11. By this Motion, the Diocese seeks the Court's approval to sell the Real Property, subject to the Lease Agreement, as described above, to BFC for $4,500,000.00 (subject to higher and better offers), free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code.

12. To implement this relief, the Diocese seeks entry of two orders:

(a) first, the Bidding Procedures Order, a proposed form of which (with exhibits) is attached hereto as ***Exhibit A***:

---

[1] The Parties acknowledge that 801 Main Street, Buffalo, New York is the mailing address for a portion of the Real Property, which is commonly known by the City of Buffalo as "785 Main Street, Buffalo, New York."

4

i. allowing for a competitive bid process with respect to the Real Property;

ii. approving Bidding Procedures, including setting a deadline and approving requirements and procedures for interested parties to submit bids for the Real Property;

iii. approving the form of the proposed Purchase Agreement;

iv. approving the form of the proposed Lease Agreement;

v. scheduling the Auction and the Sale Hearing to approve the sale and partial leaseback of the Real Property to the bidder (the "Successful Bidder") submitting the highest or otherwise best offer acceptable to the Diocese (the "Successful Bid");

vi. approving the form and manner of service of the Notice of Auction and Sale Hearing; and

(b) second, the Sale Order, authorizing and approving the Sale Transaction to the Successful Bidder pursuant to the terms of the Successful Bid.

13.    The Diocese believes that the sale of the Real Property to BFC, or to an alternate purchaser pursuant to a higher or better offer submitted in conformity with the Bidding Procedures, represents the best opportunity to realize value from the Real Property for the Diocese's bankruptcy estate.  Additionally, the proceeds from sale of the Real Property, along with other excess real property, are needed to fund a potential plan of reorganization.  Further, the sale of the Real Property, along with other excess real property, is a key component of current and future negotiations with the Committee.

14.    Pursuant to Local Rule 6004-1, the Diocese submits that the Real Property proposed to be sold does not represent all or substantially all of the Diocese's assets, and its sale will facilitate the Diocese's ability to reorganize.

## A.    The Purchase Agreement

15.    Following the substantial marketing efforts of the Broker, the Diocese and BFC engaged in good faith negotiations, which culminated in the Purchase Agreement (see Exhibit 2 to

5

the Bidding Procedures Order).  The salient terms of the Purchase Agreement are as follows:[2]

    (a)    <u>The Parties</u>.  The Diocese as seller and BFC as buyer.

    (b)    <u>The Real Property</u>.  The real property to be sold consists of five (5) Parcels owned by the Diocese and located at (i) 785 Main Street, Buffalo, New York 14203, (ii) 814 Main Street, Buffalo, New York 14203, (iii) 815 Main Street, Buffalo, New York 14203, (iv) 819 Main Street, Buffalo, New York 14203, and (v) 821 Main Street, Buffalo, New York 14203.commonly known as The Catholic Center, Buffalo, New York.

    (c)    <u>Purchase Price</u>.  $4,500,000.00, in cash comprised of a $450,000.00 deposit, and the remaining $4,050,000.00 due at closing, subject to any closing adjustments.

    (d)    <u>Conditions</u>.  The proposed sale is subject to certain conditions, including: (i) approval of the Purchase Agreement by the Bankruptcy Court; (ii) an initial minimum overbid of no less than $100,000; (iii) additional bidding increments of no less than $50,000; and (iv) execution and consummation of the Lease Agreement.

    (e)    <u>Higher or Better Offers</u>.  As set forth in further detail below, the sale of the Real Property is subject to the submission of competing bids by third parties of higher or otherwise better offers.

## B.     The Lease Agreement

16.     Following the execution of the Purchase Agreement with BFC, the Diocese and BFC engaged in further good faith negotiations and executed the Lease Agreement (see Exhibit 3 to the Bidding Procedures Order).  The salient terms of the Lease Agreement are as follows:[3]

    (a)    <u>The Parties</u>.  The Diocese as tenant and BFC as landlord.

    (b)    <u>The Leased Property</u>.  The property to be leased consists of the building comprised of approximately 31,500 square feet located at 801 Main Street, Buffalo, New York 14203, including the garage at street level and adjacent

---

[2] This summary of the terms of the Purchase Agreement is intended solely to provide the Court and interested parties with a brief overview of the terms thereof.  All capitalized terms not otherwise defined herein have the meaning set forth in the Purchase Agreement.  In the event of any inconsistency between the terms as described in this Motion and the Purchase Agreement, the Purchase Agreement will control.

[3] This summary of the terms of the Lease Agreement is intended solely to provide the Court and interested parties with a brief overview of the terms thereof.  All capitalized terms not otherwise defined herein have the meaning set forth in the Lease Agreement.  In the event of any inconsistency between the terms as described in this Motion and the Lease Agreement, the Lease Agreement will control.

to the aforementioned building, and exclusive use of all parking spaces located in Lot 1, which Parking Lot 1 is connected to the aforementioned building.

(c)    <u>Rent</u>.  In lieu of installment payments to landlord, tenant shall pay all maintenance, repair, and upkeep of Parking Lot 1 and sidewalk, all real property taxes and assessments levied against the Building, and all costs to obtain and maintain insurance coverage for the Property in accordance with terms of the Lease Agreement.

(d)    <u>Conditions</u>.  The Lease Agreement is subject to approval by the Bankruptcy Court.

## C.    Proposed Bidding Procedures

17.    To ensure that the sale maximizes the value of the Real Property for the benefit of the Diocese's estate, the Diocese seeks to implement a competitive bidding process.  As described more fully in the Bidding Procedures and the Bidding Procedures Order, if competing offers for the Real Property are received, the Diocese intends to hold an auction, and to pursue a sale to the bidder that submits the highest or otherwise best offer acceptable to the Diocese.  The Diocese respectfully requests that the Bidding Procedures Order approve the proposed Bidding Procedures to govern the submission of competing bids for the Real Property.

18.    The proposed Bidding Procedures contain the following provisions:[4]

(a)    <u>Qualified Bidders</u>:  In order to participate in the bidding process, a bidder for the Real Property (a "<u>Potential Bidder</u>") must be a "<u>Qualified Bidder</u>." A Qualified Bidder is a person or group of persons who has provided the Diocese with current audited financial statements, evidence of committed financing, or such other financial and credit-quality disclosures as may be reasonably requested by, and satisfactory to the Diocese, in consultation with the Committee, evidencing the Potential Bidder's financial wherewithal to consummate the Sale Transaction and pay the purchase price for the Real Property to the Diocese in cash.

---

[4] This summary of the Bidding Procedures is provided for the convenience of the Court and interested parties.  In the event of any inconsistencies between this summary and the Bidding Procedures approved by the Bidding Procedures Order, the Bidding Procedures and the Bidding Procedures Order shall control.

7

(b)    <u>Due Diligence</u>: The Bidding Procedures permit all Qualified Bidders to conduct site visits and obtain reasonable due diligence information between the entry of the Bidding Procedures Order and the Bid Deadline.

(c)    <u>Qualified Bids</u>: The Diocese, in consultation with the Committee, shall determine whether a bid qualifies as a "<u>Qualified Bid</u>." To constitute a Qualified Bid, a bid must be an offer from a Qualified Bidder received by the Diocese before the Bid Deadline (defined below) and:

i.    be submitted in writing;

ii.    provide for a purchase price, payable in full, in cash, at closing, which exceeds the cash consideration set forth in the Purchase Agreement by at least $100,000.00 (the "<u>Initial Minimum Overbid</u>").

iii.    be on terms that are not more burdensome or conditional in any material respect than the terms of the Purchase Agreement;

iv.    agree to lease terms that are substantially similar, in all material respects, to the terms of the Lease Agreement;

v.    not be conditioned on obtaining financing, the outcome of any due diligence investigation, or on the receipt of any third-party approvals or consents (excluding required Bankruptcy Court approval and any third-party approvals or consents contemplated in the Purchase Agreement or the Lease Agreement);

vi.    not request or entitle the bidder to any break-up fee, expense reimbursement, or similar type of payment;

vii.    include a binding and definitive purchase agreement for the Real Property, in substantially the same form as the Purchase Agreement and executed by the Qualified Bidder (a "<u>Qualified Bidder Contract</u>"), together with a marked copy showing any proposed changes from the Purchase Agreement, and a clean electronic copy in Microsoft Word readable format;

viii.    include a lease agreement for the Real Property, in substantially the same form as the Lease Agreement and executed by the Qualified Bidder (a "<u>Qualified Bidder Lease</u>"), together with a marked copy showing any changes from the Lease Agreement, and a clean electronic copy in Microsoft Word readable format;

ix.    be accompanied by a cash, certified bank check, or wire transfer deposit equal to at least 10% of the purchase price set forth in the Qualified Bidder Contract;

8

x.    fully disclose the identity of each entity that will be bidding for the Real Property or otherwise participating in connection with such bid, the complete terms of any such participation, and identify no more than three (3) representatives authorized to appear and act on behalf of such Qualified Bidder at the Auction ("Authorized Bidder Representatives");

xi.    include an acknowledgment and representation that the Qualified Bidder has had an opportunity to consider all due diligence regarding the Real Property and the Lease Agreement or Qualified Bidder Lease prior to submitting its bid and that it has relied solely upon its own independent review, investigation and inspection of any documents or the Real Property in making its bid;

xii.    confirm that, if selected as the Successful Bidder or the Back-Up Bidder, such bidder will complete the Sale Transaction within five (5) business days following the later date of which (A) the Bankruptcy Court's order approving the sale shall have become a final and non-appealable order, or (B) the Diocese shall have provided written notice of its readiness to consummate the Sale Transaction;

xiii.    certify that the bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale Transaction; and

xiv.    provide that such bid shall remain open and irrevocable until:

(A)    if such bid is not the Successful Bid or Back-Up Bid (as each term is defined below), the entry by the Bankruptcy Court of an order approving the sale of the Real Property to another Qualified Bidder;

(B)    if such bid is the Successful Bid, the closing of the Sale Transaction to such Successful Bidder; or

(C)    if such bid is chosen by the Diocese to be the Back-Up Bid, the date which is the earlier to occur of: (i) the closing of the Sale Transaction to the Successful Bidder or (ii) the closing of the Sale Transaction to such Back-Up Bidder.

(d)    Bid Deadline:  All Qualified Bids must be actually received no later than 12:00 noon (prevailing Eastern time) 35 days after the entry of the Bidding Procedures Order (the "Bid Deadline"), by counsel to the Diocese, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202 (Attn: Stephen A. Donato, Charles J. Sullivan, Grayson T. Walter, and Justin S. Krell (Telephone (315) 218-8000; email: sdonato@bsk.com,

9

csullivan@bsk.com, gwalter@bsk.com, and jkrell@bsk.com). The Diocese may extend the Bid Deadline in its discretion but is not obligated to do so.

(e) <u>Auction</u>: If the Diocese receives one or more Qualified Bids (in addition to the Purchase Agreement and the Lease Agreement submitted by the Stalking Horse Bidder which shall be deemed to be a Qualified Bid), prior to the Bid Deadline, the Diocese shall conduct an auction (the "<u>Auction</u>") for the sale of the Real Property. The Auction shall take place on _____ __, **2026 at 12:00 noon** (prevailing Eastern time), at the offices of Bond, Schoeneck & King, PLLC, The Avant Building, Suite 900, 200 Delaware Avenue, Buffalo, New York 14202-2107, or at such other time and place as the Diocese may notify all Qualified Bidders. Only the Stalking Horse Bidder and those Qualified Bidders who timely submitted a Qualified Bid will be eligible to participate in the Auction.

At the commencement of the Auction, the Diocese shall announce the Qualified Bid that it has determined represents the highest or otherwise best bid for the Real Property (the "<u>Starting Qualified Bid</u>") and the overall consideration value ascribed to such bid (the "<u>Bid Value</u>").

Each Qualified Bidder present at the Auction will be permitted to increase its Qualified Bid in turns (each such increased Qualified Bid, a "<u>Qualified Overbid</u>"). The initial Qualified Overbid must exceed the Starting Qualified Bid by at least one hundred thousand dollars ($100,000) (the "<u>Initial Minimum Overbid</u>"). Each subsequent Qualified Overbid must exceed the Bid Value of the then-highest or otherwise best Qualified Overbid, by at least fifty thousand dollars ($50,000) (the "<u>Minimum Bid Increment</u>"). During the course of the Auction, the Diocese will inform the participants which Qualified Overbid reflects the then-highest or otherwise best offer for the Real Property and the Bid Value ascribed thereto.

At the conclusion of the Auction the Diocese will announce (i) the Qualified Bid which the Diocese, in consultation with the Committee, deems to represent the highest or otherwise best bid for the Real Property (such being the "<u>Successful Bid</u>" and the Qualified Bidder submitting such bid, the "<u>Successful Bidder</u>") and (ii) the next highest or otherwise best bid (the "<u>Back-Up Bid</u>" and the party submitting such bid, the "<u>Back-Up Bidder</u>"). As a condition precedent to the Diocese declaring any bid the Successful Bid or the Back-Up Bid, the Diocese may require the Successful Bidder or Back-Up Bidder to deposit additional cash or immediately available funds such that their total deposit shall be not less than ten percent (10%) of the purchase price of their respective Successful Bid or Back-Up Bid. Any deposits not applied in satisfaction of the obligations of the Successful Bidder or Back-Up Bidder shall be returned not later than five (5) business days following the consummation of the Sale Transaction.

22232346.v8

No bids submitted after the conclusion of the Auction shall be considered unless a motion to reopen the Auction is made on notice, prior to the Sale Hearing, to all Qualified Bidders who attended and submitted a bid at the Auction and such motion is granted by the Court.

(f)     Sale Hearing:  The Diocese requests that the Court schedule the Sale Hearing approximately five (5) business days following the Auction, or as soon thereafter as may be convenient for the Court.  At the Sale Hearing, the Diocese will seek entry of an order, among other things, authorizing and approving the sale of the Real Property to the Successful Bidder, as determined by the Diocese in consultation with the Committee.

(g)     Back-Up Bid:  Following the entry of the Sale Order, if the Successful Bidder fails to consummate the approved Sale Transaction in accordance with the terms of its Successful Bid because of a breach or failure to perform on the part of such Successful Bidder, the Diocese may terminate its agreement to sell the Real Property to the Successful Bidder, retain the Successful Bidder's deposit, and maintain the right to pursue all available remedies whether legal or equitable against such Successful Bidder.  In the event the Diocese elects to so terminate, the Backup Bid, shall automatically be deemed to be the Successful Bid with respect to the Real Property, and the Diocese shall be authorized to effectuate the sale of the Real Property to the Backup Bidder without further order of the Bankruptcy Court.

## **BASIS FOR RELIEF**

**A.      The proposed Sale Transaction is within the sound business judgment of the Diocese and should be approved.**

19.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor in possession is given these rights by section 1107(a) of the Bankruptcy Code.  *See* 11 U.S.C. §1107(a).  Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. §105(a).

20.      Courts have uniformly held that approval of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor.  *See, e.g.*, *In re Chateaugay*

11

*Corp.,* 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp (In re Lionel Corp.).* 772 F.2d 1063, 1071 (2d Cir. 1983); *see also Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (quoting *Van Gorkom,* 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company'," which has continued applicability in bankruptcy)).

21.     Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard.  *See In re Global Crossing, Ltd.,* 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and its advisors, so long as they have satisfied the requirements articulated in the caselaw.").  Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Integrated Res., Inc.,* 147 B.R. at 656 (holding that there is a strong presumption "that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company").

22.     The Diocese respectfully submits that the proposed sale to the Successful Bidder (as determined following the competitive bidding process outlined above) satisfies the "sound business reason test" and represents a prudent and proper exercise of the Diocese's business judgment.  The Diocese believes that a prompt sale of the Real Property and leaseback of the

22232346.v8

Building is the best way to realize value from the Real Property for the benefit of its estate and to support the administration, and ultimately the resolution, of this Chapter 11 Case.

23.     The Bidding Procedures further provide for an expeditious but controlled, fair and open competitive bidding process that will encourage participation by financially capable bidders who demonstrate their ability to complete a transaction, thereby ensuring that the Diocese can obtain the best offer available for the Real Property.

24.     Although the Real Property at issue will continue to be used by the Diocese in connection with the Lease Agreement, it represents a part of a larger portfolio of underutilized and/or non-essential real property that the Diocese intends to market for sale to benefit its creditors and to contribute towards the plan of reorganization.  Accordingly, the Diocese respectfully submits that its determination to pursue a sale and partial leaseback at this time, and to accept an offer of $4,500,000.00 (subject to higher or better offers) for the Real Property is a practical and reasonable exercise of its business judgment.  Further, the sale of this Real Property and others is an important component of the Diocese's negotiations with the Committee toward a settlement.

25.     Based on the foregoing, the sale and partial leaseback of the Real Property is justified by sound business reasons and is in the best interests of the Diocese and its estate. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Diocese requests approval of the sale to the Successful Bidder as determined in accordance with the Bidding Procedures.

**B.      The proposed Bidding Procedures are in the best interests of the Diocese, its creditors and its estate.**

26.     The Bidding Procedures outlined herein will both invite competitive bids to allow the Diocese to realize the greatest value for the Real Property and enable the Diocese to consummate a sale of the Real Property within a reasonable time frame.  The Bidding Procedures

are fair, reasonable and necessary to promote the highest or best sale price, without imposing undue obstacles to the competitive bidding process.

27.     The Diocese respectfully submits that the proposed $100,000 minimum initial overbid and $50,000 subsequent minimum bidding increment is reasonably necessary to facilitate an efficient auction process and because no breakup fee is proposed as part of the Bidding Procedures, will not create an undue impediment for any interested party seeking to submit a competing bid.

28.     The Bidding Procedures are a necessary tool to preserve and enhance the value of the Diocese's estate and will not unduly hamper the submission of competing bids.  Rather, the Bidding Procedures will ensure that only parties with (i) a serious and legitimate interest in acquiring the Real Property and (ii) the financial means to consummate a transaction quickly, will participate in an open Auction process.

29.     For the foregoing reasons, the Diocese respectfully submits that this Court should authorize and approve the Bidding Procedures pursuant to section 363(b) of the Bankruptcy Code.

**C.      The sale of the Real Property free and clear of Encumbrances is authorized under section 363(f) of the Bankruptcy Code.**

30.     At the Sale Hearing, the Diocese intends to seek entry of the Sale Order approving the sale free and clear of all Encumbrances.  The Diocese will seek to sell the Real Property free and clear of all Encumbrances to the fullest extent possible pursuant to section 363(f) of the Bankruptcy Code, including, without limitation, successor liability or similar theories and the Successful Bidder will be protected from liability from, and cannot be pursued for, any claims against the Diocese.  In addition, the Diocese requests that the Sale Order include findings that the Sale Transaction is not a fraudulent conveyance.

31.     Section 363(f) of the Bankruptcy Code provides:

14

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

32.    Section 363(f) of the Bankruptcy Code permits the Diocese, with court approval, to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

33.    In the instant case, the Diocese is unaware of any (a) liens, encumbrances or interests, or (b) "claims" as defined in section 101(5) of the Bankruptcy Code, that have been asserted specifically against the Real Property. In the event any party asserts that they may have a lien, encumbrance, interest, or claim, the Diocese submits that the Real Property may nevertheless be sold free and clear pursuant to section 363(f)(4) because any such liens, claims, interests, or encumbrances are subject to a bona fide dispute, or pursuant to section 363(f)(5) because the holder could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interest.

**D.    Buyer's good faith**

34.    Section 363(m) of the Bankruptcy Code provides:

15

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35.     The Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders to demonstrate a lack of good faith. *See In re Colony Hill Assocs.,* 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

36.     While the sale to the Stalking Horse Bidder remains subject to higher or better bids, the Diocese notes for the Court that it is not aware of any connection between the Stalking Horse Bidder or its principals and the Diocese.

37.     The Diocese intends to make an appropriate showing at the Sale Hearing that the Successful Bid submitted by the Successful Bidder is the result of a negotiated, arm's-length transaction, in which such Successful Bidder at all times acted in good faith.  The Diocese thus requests that the Court find that the Successful Bidder will be purchasing the Real Property in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**E.      Notice of the proposed Sale Transaction is adequate under the circumstances.**

38.     A copy of the proposed Notice of Auction and Sale Hearing is attached to the Bidding Procedures Order as Exhibit 4.  The Notice of Auction and Sale Hearing will provide interested parties with notice of the entry of the Bidding Procedures Order, the location of the Real

Property proposed to be sold, the establishment of the Bidding Procedures and Bid Deadline, and the scheduled date and time of the Auction and Sale Hearing.

39.     The Diocese proposes to publish a copy of the Notice of Auction and Sale Hearing in the *Buffalo News*, not later than five (5) business days following entry of the Bidding Procedures Order (subject to applicable submissions deadlines). The Diocese shall further serve the Notice of Auction and Sale Hearing upon (i) the Office of the United States Trustee for the Western District of New York; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) all parties filing Notices of Appearance and requests for papers in this Chapter 11 Case; (iv) all required governmental agencies; (v) all known parties who have expressed a bona fide interest in acquiring the Real Property during the pendency of this Chapter 11 Case; (vi) all creditors in the Chapter 11 Case; and (vii) all persons known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in or upon any of the Real Property.

40.     The Diocese respectfully submits that the form of the proposed Notice of Auction and Sale Hearing, and the publication and service thereof, should be deemed adequate and sufficient notice of the Sale Hearing and Sale Transaction pursuant to Bankruptcy Rule 2002. Accordingly, the Diocese respectfully requests that the Bidding Procedures Order approve the proposed form and manner of service of the Notice of Auction and Sale Hearing.

**F.     Relief from Bankruptcy Rule 6004(h) is appropriate.**

41.     Under Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

17

42. The Diocese does not expect the sale of the Real Property to be controversial. Accordingly, the Diocese respectfully requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

## NOTICE

43. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the Western District of New York; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) all parties filing Notices of Appearance and requests for papers in this Chapter 11 Case; (iv) all required governmental agencies; (v) all creditors in the Chapter 11 Case; (vi) all persons known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in or upon any of the Real Property. In light of the relief requested, the Diocese submits that no other or further notice is necessary or required.

**WHEREFORE,** the Diocese respectfully requests that the Court (i) enter the Bidding Procedures Order: (a) approving the Bidding Procedures; (b) authorizing and approving the form of the proposed Purchase Agreement; (c) authorizing and approving the form of the proposed Lease Agreement; (d) scheduling the Auction and Sale Hearing; and (e) approving the form and manner of the Notice of Auction and Sale Hearing; and, following the Sale Hearing (ii) enter the Sale Order approving the Sale Transaction and authorizing the sale of the Real Property to the Successful Bidder; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: February 9, 2026

BOND, SCHOENECK & KING, PLLC

By:    /s/ Stephen Donato

     Stephen A. Donato
     Charles J. Sullivan
     Grayson T. Walter
     Justin S. Krell
     One Lincoln Center
     Syracuse, NY 13202-1355
     Telephone: (315) 218-8000
     Fax: (315) 218-8100
     Emails:   sdonato@bsk.com
              csullivan@bsk.com
              gwalter@bsk.com
              jkrell@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*