UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------
In re

    THE DIOCESE OF BUFFALO, N.Y.,           BK 20-10322 CLB


                Debtor.                     <u>DECISION & ORDER</u>
--------------------------------------------------------

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
Grayson T. Walter, Esq., Sara C. Temes, Esq.
Andrew S. Rivera, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for The Diocese of Buffalo, N.Y.

Pachulski Stang Ziehl & Jones LLP
Ilan D. Scharf, Esq., James I. Stang, Esq.,
Iain A.W. Nasitir, Esq., Karen B. Dine, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Office of the U.S. Trustee
Joseph W. Allen, Esq., Jill M. Zubler, Esq., of counsel
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

Jeff Anderson & Associates, PA
Jeffrey R. Anderson, Esq., Stacey Benson, Esq.,
Michael G. Finnegan, Esq., of counsel
366 Jackson Street, Suite 100
Saint Paul, Minnesota 55101
Attorneys for Various Claimants

Steve Boyd, PC
Stephen Boyd, Esq., of counsel
2969 Main St., Suite 100
Buffalo, New York 14214
Attorneys for Various Claimants

Dan Chiacchia Attorneys, PLLC
Daniel J. Chiacchia, Esq., of counsel
5113 South Park Avenue
Hamburg, New York 14075
Attorneys for Various Claimants

Merson Law, PLLC
Matthew G. Merson, Esq., of counsel
950 Third Avenue, 18th Floor
New York, New York 10022
Attorneys for Various Claimants

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, New York 14604
Co-Counsel for Parish Steering Committee

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

In *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 218 (2024), the Supreme Court held that except for cases involving asbestos liability, nothing in the Bankruptcy Code endows the Bankruptcy Court with the power "to discharge the debts of a nondebtor without the consent of affected claimants."  However, the decision did not "call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan."  *Id*. at 226.  The present dispute involves the requirements for an expression of consent.  Must creditors "opt-in" to a release of third parties, or may a reorganization plan impose a release from all creditors except those who affirmatively "opt-out" of that outcome?

The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020.  Thereafter, more than 900 claims were filed

by individuals seeking damages for alleged instances of sexual abuse. After months of negotiation and with the assistance of several mediators, a tentative settlement was reached among the Diocese, the Official Committee of Unsecured Creditors (the "Committee"), multiple insurance companies, and a steering committee of parishes. This settlement then became an essential component of a joint reorganization plan that the debtor and the Committee filed on October 1, 2025. Among other provisions, the proposed plan contemplates the grant of third-party releases for the benefit of parishes and other entities affiliated with the Diocese.

On November 7, 2025, the Diocese filed a motion seeking guidance with regard to various procedural issues, including processes for approving a disclosure statement, for voting on a plan and for giving consent to third-party releases. After hearing counsel on December 11, 2025, we resolved that the most expeditious approach was to first determine the requirements for consent by creditors. The Court invited briefing on this issue and reserved time for oral argument on January 9, 2026. Since that date, the Court has also received and reviewed various post-hearing submissions, the most recent of which was filed on February 13, 2026.

The debtor and the Committee contend that if creditors receive adequate disclosure and notice, consent can be established by the absence of opposition to third-party releases. Thus, the plan proponents have suggested a confirmation ballot that allows creditors to "opt-out" of the contemplated releases. Under this scheme, if creditors are silent, their consent would be assumed. The Office of the United States Trustee objects. It contends that a release should bind only those creditors who

affirmatively "opt-in" to the proposal by giving their explicit consent.

In their submissions, the parties have identified decisions of bankruptcy and district courts relative to the application of "opt-in" versus "opt-out."  However, none are precedents that bind this Court.  To date, the Second Circuit Court of Appeals has not spoken on the standard for consent under *Harrington v. Purdue Pharma L.P.*  Therefore, the present dispute provides the opportunity for a fresh analysis.

## Discussion

Chapter 11 of the Bankruptcy Code allows a debtor like the Diocese of Buffalo to propose a plan that will address its own liabilities.  But most if not all of the tort victims in this case have claims that they could assert against both the Diocese and other affiliated corporations such as parishes.  Meanwhile, the parishes generally relied upon the debtor to provide liability coverage under a self-insurance program that the Diocese operated for the benefit of itself and its affiliates.  Although we understand why the Diocese wants a global settlement, the Bankruptcy Code does not here authorize non-consensual relief for anyone other than the Diocese itself.  A bankruptcy discharge "releases the debtor from its debts and enjoins future efforts to collect them – even by those who do not assent" to a confirmed plan of reorganization." *Harrington v. Purdue Pharma, L.P.*, 603 U.S. at 221.  Generally, however, the statute "reserves this benefit to 'the debtor' – the entity that files for bankruptcy." *Id.* at 221.  An extension of this benefit to third parties is possible, but only with the consent of every impacted creditor.  *See Id.* at 222.

Except in cases involving asbestos liability, nothing in the Bankruptcy Code even

contemplates a third-party release. *Harrington v. Purdue Pharma, L.P.*, 603 U.S. at 223. Therefore, authority for such an outcome can only derive from an agreement among affected parties. As we observed in *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024), "any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent."

The Diocese and the Committee argue that Bankruptcy Courts should develop a federal common law that will infer consent from the absence of objection. We disagree. As the Supreme Court observed in *Purdue Pharma*, bankruptcy law does not give to this Court "a roving commission to resolve" all problems of collective liability. 603 U.S. at 220. As a voluntary contract among affected parties, a third-party release "would be governed instead by state law." *In re Tonawanda Coke Corp.*, 662 B.R. at 222.

The debtor is a New York corporation whose principal and only place of business is in this state. Claims against the debtor arose from activities that occurred within the same jurisdiction. For most abuse victims, the current ability to assert claims derives from legislation that the New York State legislature adopted in 2019. *See* Child Victims Act, 2019 N.Y. Sess. Laws c. 11, § 3. Consequently, any third-party releases will address claims that arise under New York law. By reason of these many relationships, the law of New York will set the controlling guidelines for consent.

The longstanding rule in New York is that silence does not constitute consent, except in instances where estoppel might apply. In *More v. New York Bowery Fire Ins. Co.*, 130 N.Y. 537, 545 (1892), the state's highest court stated the applicable

standard:

> "The proper inference from failure to respond to a proposition of any kind is that it is rejected or declined. A party cannot be held to contract where there is no assent. Silence operates as an assent, and creates an estoppel, only when it has the effect to mislead."

The debtor and Committee essentially contend that by silence, creditors are estopped from denying their consent to a third-party release. This attempt to find an estoppel is both ineffective as a matter of law and inappropriate as an exercise of bankruptcy process.

Estoppel through silence requires proof of three essential elements: "a duty to speak, a failure to speak and damage to another party directly due to this silence." *LaPorto v. Village of Philmont*, 39 N.Y.2d 7, 12 (1976). *See also* 57 NY Jur 2d, Estoppel § 18 (2011). The victims of abuse are innocent parties who have no obligation to respond to any request for consent, either by reason of some contractual obligation or by reason of any dictate of the Bankruptcy Code. Nor does this Court have any authority to impose such a duty. Without a duty to respond, we find no basis to imply consent by estoppel.

The third requirement for estoppel through silence is the occurrence of "damage directly due to this silence." In other words, the silence must "operate as a fraud on the party who has taken, or neglected to take, some action to his own prejudice in reliance upon it." *More v. New York Bowery Fire Ins. Co.*, 130 N.Y. at 545. Here, an abuse victim makes no representation at all when he or she fails to consent to third-party releases. Without a false representation, there can be no fraud. *See Durland*

*v. United States*, 161 U.S. 306, 313 (1896); *In re Lokotnicki*, 232 B.R. 583, 587 (Bankr. W.D.N.Y. 1999). Hence, a victim's silence does not allow any presumption of consent.

In its submission dated December 10, 2025, the Diocese argues that the Committee "may provide surrogate consent on behalf of Abuse Claimants, subject to such claimants' ability to countermand the Committee and affirmatively withhold consent." Pursuant to 11 U.S.C. § 1103(c), the Committee may "participate in the formulation of a plan," and may "perform such other services as are in the interest of those represented." However, the enumeration of rights in section 1103(c) does not include anything like the exercise of a power of attorney on behalf of creditors. Upon the formulation of a proposed plan, the right to vote is expressly reserved to "[t]he holder of a claim or interest." 11 U.S.C. § 1126(a). Moreover, because a release of third parties is an action outside the bankruptcy process, any granting of consent is further removed from the authority of the Committee. Simply put, the Committee has no power or right to consent to a third-party release, even if creditors were allowed an opportunity to opt-out of that arrangement.

For reasons stated above, this Court rejects the debtor's call to create a federal common law on the issue of consent. But even if we were to accept this suggestion, any such common law would more appropriately command that creditors affirmatively express their consent for third-party releases. In particular, we agree with the recent analysis by District Judge Cote in *In re GOL Linhas Aéreas Inteligentes S.A.*, ___ B.R. ___, 2025 WL 3456675, at * 5 (S.D.N.Y. 2025), *appeal docketed*, No. 26-49 (2d Cir.

Jan. 9, 2026). "[T]he general principles of contract law, as embodied in the Restatement of Contracts, establish that, outside of rare exceptions, consent cannot be implied from silence. The third-party releases here are nonconsensual under federal law as well."

Even if consent could be inferred from silence, an "opt-out" procedure is impractical and a disregard of the interests of decedent estates. The debtor and the Committee have acknowledged that an unknown number of claimants have died. A dead person has no ability to consent to anything. No assurance of consent can derive from a notice sent to deceased creditors at the address provided in his or her proof of claim or on the current mailing matrix. Rather, with regard to claims of deceased victims, consent must be obtained from a duly appointed executor or administrator of the estate. Not knowing the identity of deceased claimants, we have no awareness of whether any executor or administrator has yet been appointed. The absence of a response is not a reliable indicator of consent, but might instead reflect the claimant's own passing. For victims who have died, an "opt-in" ballot provides a pragmatic way to assure that his estate representative has approved the release of third parties.

An "opt-in" procedure maintains the spirit of at least two important bankruptcy guidelines. The first is the so-called Chapter 7 test for plan confirmation under 11 U.S.C. § 1129. Subdivision (a)(7) of this section includes the general rule that the Court can confirm a plan only if each holder of a claim or interest shall "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so

receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A)(ii). Creditors may waive this requirement only through acceptance of the plan. 11 U.S.C. § 1129(a)(7)(A)(i). Acceptance, however, requires submission of an affirmative ballot and is not implied from silence. In like fashion, acceptance of a third-party release should require an affirmative consent to this extra-statutory relief.

An affirmative expression of consent will also maintain the expectations that derive from filing a proof of claim. Filed proofs of claim are deemed allowed. 11 U.S.C. § 502(a). Unless a party in interest objects to a claim, the creditor needs to do nothing in order to preserve its rights under a confirmed plan. Of course, every creditor should anticipate that confirmation will define the debtor's obligations, and for this reason, a claimant may choose to participate in the confirmation process. But the Bankruptcy Code imposes no duty on creditors to vote on a plan or even to read a disclosure statement. Accordingly, 11 U.S.C. § 1126(a) directs only that the holder of a claim or interest "may accept or reject a plan." In deciding whether to review a proposed plan, creditors have no reason to expect that the plan will address obligations other than those of the debtor itself. Under these circumstances, the imposition of a third-party release would constitute consent by ambush. An "opt-out" approach creates an unacceptable trap for creditors having no reason to presume the inclusion of a third-party release into a plan.

In support of an "opt-out" approach, the Committee has presented the expert opinion of Dr. David G. Heffler, a licensed mental health counselor. Dr. Heffler advises

that some abuse victims might experience further trauma if they were pressured to consent to a third-party release. Additionally, he predicted that a requirement of actual consent "will be perceived as a *coercive* and *controlling* process which will *force* a yet unknown number of plaintiffs to not comply and thus forgo their due settlement." These professional views help us to appreciate the impact of sexual abuse. But this Court cannot change the ruling of the Supreme Court in *Harrington v. Purdue Pharma, L.P.* A plan of reorganization can provide for a third-party release only with the actual consent of creditors.

Although this Court cannot disregard legal precedents regarding consent, we nonetheless recognize a need to address the concerns that Dr. Heffler identifies. Almost every abuse claimant is represented by counsel with extensive experience in handling personal injury claims. As part of their engagement, these attorneys have undertaken to assist their clients in evaluating the plan, including its provisions for a third-party release. To enhance preparations for the delivery of this representation, the Court will direct that prior to balloting on a plan, the Committee shall provide a copy of Dr. Heffler's report to each attorney for an abuse claimant. We do not see actual consent as a process any more burdensome than a settlement outside bankruptcy. In state court, a resolution of tort claims will typically require an exchange of general releases. The victim's consent to a general release in state proceedings is virtually identical to actual consent to a third-party release in bankruptcy.

The United States Trustee argues in addition that consent to a plan can never constitute consent to a third-party release. The Court is not prepared to reach this

conclusion as an absolute rule.  Indeed, we can imagine instances where, with proper notice, creditors might be given an opportunity to cast a single vote to approve both the plan and a third-party release.  For now, however, we hold only that in their present forms, the plan and disclosure statement are insufficient in that they fail to require an expression of actual consent for the release of parishes and other affiliates.

Conclusion

Transparency is an essential feature of the reorganization process.  When a plan proposes a third-party release, the disclosure statement must identify this provision without ambiguity.  The expression of consent should be similarly deliberate.  Accordingly, the debtor and Committee are directed to re-design a ballot that will require creditors expressly to "opt-in" to a release of third parties.[1]  The plan and disclosure statement should also be modified to reflect this approach and to correct any deficiencies in the previously filed documents.

The Court appreciates that this case was filed six years ago and that victims deserve a resolution.  Nonetheless, as in state court, actual consent is not an insurmountable obstacle to settlement.  We intend to take every reasonable step to expedite the confirmation process.  To this end, the plan proponents are directed to file an amended disclosure statement, plan and ballot no later than March 31, 2026.  Thereafter, the Court will promptly schedule a further hearing on the debtor's motion

---

[1] In its objection, the United States Trustee asserts that the proposed plan contemplates a release for the benefit of contributing insurers.  At this time, the Court will limit its decision to the issue about which it invited argument, namely whether the absence of opposition can serve as proof of creditor consent.  We therefore reserve for future argument any challenge to whether the holding of *Purdue Pharma* would apply to a settling insurer injunction.

to set procedures that will advance this case toward confirmation.

    So ordered.


Dated: February 27, 2026          _/s/ Carl L. Bucki_____
      Buffalo, New York           Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.