# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF BUFFALO, N.Y.,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-10322 (CLB) |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR RECONSIDERATION OF THE COURT'S DECISION REGARDING OPT-OUT VOTING, OR, IN THE ALTERNATIVE, (A) CERTIFICATION TO APPEAL THE DECISION DIRECTLY TO THE SECOND CIRCUIT COURT OF APPEALS, AND/OR (B) ADOPTION OF THE PROPOSED PROCEDURES FOR RAPID PREPACKAGED CHAPTER 11 CASES

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of Buffalo, N.Y. (the "**Debtor**" or "**Diocese**"), by and through its undersigned counsel, hereby moves (the "**Motion**") for reconsideration of the Decision and Order entered on February 27, 2026 [Docket No. 4616] (the "**Opt-In Decision**"), or, in the alternative, for (a) certification to appeal the Opt-In Decision directly to the Second Circuit Court of Appeals and/or (b) adoption of the proposed procedures (the "**Rapid Prepack Procedures**") for rapid prepackaged chapter 11 cases.[1] In support of the Motion, the Committee respectfully states:

## PRELIMINARY STATEMENT

1. This case is at a critical juncture. The Committee has reached agreement on a resolution with the Diocese and its parishes, the insurers that provided insurance to both the Diocese and the Parishes beginning in 1973, and with several of the insurers that exclusively

---

[1] Exhibit A attached hereto is a proposed form of order for reconsideration of the Opt-In Decision. Exhibit B attached hereto is a proposed form of order for direct appeal of the Opt-In Decision to the Second Circuit Court of Appeals. Exhibit C attached hereto is a proposed form Rapid Prepack Procedures. The proposed Rapid Prepack Procedures are attached as Schedule 1 to Exhibit C.

insured certain parishes prior to 1973. The Debtor, the Committee and the Settling Insurers are working on the proposed plan (the "**Plan**"), the insurance settlement agreements, the disclosure statement and the ancillary documents that will memorialize the settlement. Survivors are eager to move the case to conclusion.

2. As the Court heard from many of the survivors of childhood sexual abuse ("**Survivors**"), it is critical to Survivors that this bankruptcy case finally be brought to conclusion on the terms negotiated between by the Committee with the Diocese, parishes and insurers.

3. Respectfully, the Court's Opt-In Decision places this case at a challenging cross-road as the requirement for affirmative opt-ins to the third-party releases in the Plan jeopardizes the settlement achieved in the Plan if the parishes cannot have certainty regarding the release of abuse claims against them, or, at the very least, significantly delays the Diocese's ability to bring this case to conclusion.

4. In an effort to find a swifter path forward with the settlements already achieved, the Committee first respectfully requests that the Court reconsider the Opt-In Decision in light of the recent decision from the District Court for the Southern District of Texas (in the Fifth Circuit Court of Appeals that, even prior to the decision in Purdue,[2] prohibited non-consensual third-party releases while allowing opt-out voting procedures[3]) in *In re Container Store Group, Inc.*, No. 24-90627, 2026 WL 395898 (S.D. Tex. Feb. 12, 2026) ("**Container Store**") finding opt-out procedures sufficient to provide consent for third-party releases.

---

[2] *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ("**Purdue**").

[3] "*Purdue* confirmed what the Fifth Circuit had long held: that a bankruptcy court may not confirm a plan that provided nonconsensual nondebtor releases." *In re Container Store Grp., Inc.*, No. 24-90627, 2026 WL 395898, at *8 (S.D. Tex. Feb. 12, 2026).

5. To the extent that the Court does not reconsider its Opt-In Decision, the Committee requests that the Court certify the Opt-In Decision for direct appeal to the Second Circuit Court of Appeals, which is already considering a dispute concerning opt-in versus opt-out releases in connection with the Southern District's bankruptcy appeal decision in *In re Gol Linhas Aéreas Inteligentes S.A.,* No. 25cv4610 (DLC), 2025 U.S. Dist. LEXIS 249924 (S.D.N.Y. Dec. 1, 2025), which was appealed to the Second Circuit on January 7, 2026 and is now pending there as Case No. 26-49 ("**Gol Linhas**"). The Committee submits that, given the significance of these legal issues following *Purdue*, it is appropriate to bring this issue forward directly to the Second Circuit Court of Appeals. Permitting appeal to the Second Circuit will also remove months of delay from an interim appeal to the District Court that would likely lead to a further appeal to the Second Circuit Court of Appeals, where an appeal of an iteration of this issue is already moving forward.

6. Finally, to the extent that this Court will not reconsider its decision or certify the appeal to the Second Circuit, the Committee requests that the Court adopt the proposed Rapid Prepack Procedures – similar to procedures in place in the Southern District of New York and in the Eastern District of Louisiana. The Rapid Prepack Procedures facilitated the filing of Chapter 11 cases by the parishes for the Roman Catholic Diocese of Rockville Centre, New York, and the Roman Catholic Archdiocese of New Orleans in connection with plans of reorganization in those cases. The Rapid Prepack Procedures in those cases enabled the votes by Survivors on plans that included the participation of the parishes and the settling insurers – votes that in both cases resulted in the overwhelming support of the Survivors for those plans. Then, in light of the support of the Survivors, the parishes were able to file for bankruptcy with a streamlined and significantly less expensive process and move forward with confirmation of plans within days of

the bankruptcy filings. The elimination in those cases of numerous of the requirements for filing bankruptcy with prepackaged plans enabled a process that limited costs and expenses to the estate and avoided months of additional delay that would come from separate bankruptcy filings without such procedures.

7. If the Court adopts the Rapid Prepack Procedures, then the Diocese and the parishes will be able to consider a prepackaged bankruptcy option as a way to effectuate the agreed settlement and provide the releases necessary for the parishes to move forward with the global settlement.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

**A. Reconsideration of the Opt-In Decision.**

9. Bankruptcy Rule 9023 makes Federal Rule of Civil Procedure 59, regarding motions to alter or amend judgments, applicable in bankruptcy cases. A motion to reconsider a judgment "may be granted if: (1) there is an intervening change in controlling law; (2) there is newly discovered evidence; (3) the judgment is based on manifest errors of law or fact; or (4) to prevent manifest injustice." *Gordon v. Livecchi (In re Livecchi)*, No. 09-20897, 2014 WL 7013463, at *4 (Bankr. W.D.N.Y. Dec. 11, 2014). Reconsideration is appropriate to prevent manifest injustice, or where the Court overlooked certain matters that may have reasonably altered the Court's ruling. *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F.Supp.2d 206, 210 (S.D.N.Y. 2009). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

10. In the Opt-In Decision, this Court determined that in order for Survivors to release non-debtor parishes from claims of childhood sexual abuse, each such Survivor must affirmatively indicate their intention to grant such release through such Survivor's ballot or a later release. The Court rejected the Diocese and Committee's assertion that a Survivor who voted for the Plan and did not affirmatively opt-out of the third-party releases should be deemed to have consented to the release.

11. In the Opt-In Decision the Court focused on state law contract principles and rejected application of a federal common law standard to the determination of the validity of the releases. Opt-In Decision at 5.

12. The Committee respectfully requests that the Court reconsider its Opt-In Decision in light of *Container Store*. In *Container Store*, the District Court held that federal law applied to the determination of whether the releases were consensual:

> The court concludes that there are two separate and independent bases of federal authority that require the application of federal law, rather than state contract law, to the question of whether claimants have "consented" to third-party releases contained in a bankruptcy reorganization plan. The first is the Bankruptcy Code via § 1123(b)(6) and § 105(a), which grant statutory authority to bankruptcy courts over the provisions they may include in a reorganization plan. The second, and broader, basis for applying federal law is the inherent authority of federal courts to enter consent decrees in cases arising in equity within their subject-matter jurisdiction. Under either basis, federal law is the answer to the threshold question of what law provides the bankruptcy court with authority to enter consensual third-party releases. Unique federal interests compel the application of a federal, not state, rule of decision.

*Container Store*, 2026 WL 395898, at *9.

13. The *Container Store* court reasoned that under *United States v. Energy Resources Co.*, 495 U.S. 545 (1990), the Supreme Court had ruled that a "bankruptcy court may confirm a

plan that modifies a relationship between a creditor and a nondebtor third-party." *Container Store*, 2026 WL 395898, at *10.

14. On this basis, the *Container Store* court went on to reason that federal law should apply to the determination of whether there is the required consent to the third-party release:

> Because a bankruptcy court's authority to enter consensual releases follows from the Code's text and structure, it raises questions of federal law: what is "appropriate"; what is "necessary"; and what it means to "agree." The inquiry begins with ordinary meaning and statutory definitions. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69, 131 S. Ct. 716, 178 L.Ed.2d 603 (2011). "[I]n the absence of congressional definition[,] this is a matter to be determined by decisions of" the federal courts "after due consideration of the structure and purpose of the Bankruptcy Act as a whole, as well as the particular provisions of the Act brought in question." *Katchen v. Landy*, 382 U.S. 323, 328, 86 S. Ct. 467, 15 L.Ed.2d 391 (1966); *see also In re Spirit Airlines*, 668 B.R. at 702. "[W]hat constitutes consent, including opt-out features and deemed consent for not opting out, has long been settled in this [d]istrict." *In re Robertshaw US Holding Corp.*, 662 B.R. at 323; *see also In re Pipeline Health Sys., LLC*, No. 22-90291, 2025 WL 686080, at *4 (Bankr. S.D. Tex. Mar. 3, 2025) (concluding that "[o]pt-out procedures are a proper means to obtain consent to third-party releases in a chapter 11 plan").

*Id.* at *11.

15. The court further reasoned that federal courts have the power to enter consent decrees further supporting the authority of the bankruptcy court to apply federal law to determine whether the proposed release is consensual. *Id.* (citing *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("The Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits ... in equity.' (quoting § 11, 1 Stat. 78)")). The court further noted that bankruptcy plans are a "kind of consent decree." *Id.* at *14.

16. The court went on to reason that, as with a consent decree, the resolution of claims as part of a bankruptcy plan represents a "kind of consent decree" to which "federal law's 'general rules' of contract" should apply. *Id.* "The federal common law directs the application

of a federal, not state, rule of decision on the question of whether a claimant consented to a consent decree." *Id.* Further, in this case, the abuse claims are based in tort, not contract, and as such contract law principles should not govern.

17. The court also found that applying state law to define consent in connection with third-party releases in a bankruptcy plan "materially undermine[s] federal interests." *Id.* The court emphasized the need for consistency in the administration of bankruptcy laws across the country noting that using state contract law as the benchmark for consent undermines this critical federal interest. *Id.*

18. In focusing on the application of federal law, the *Container Store* court followed the reasoning of the Supreme Court in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) that a claimant did not need to affirmatively need to opt-in to be bound by a judgment in a class action focusing on the procedures for notice and due process being followed to determine whether such notice was sufficient to infer consent. *Container Store*, 2026 WL 395898, at *15.

19. The Container Store court also expressly addressed issues that concerned this Court in the Opt-In Decision.

20. First, it addressed the issue of whether silence can be consent under contract law:

> Although it may be unreasonable to impose on creditors an unequivocal duty to speak up—such that opt-outs under any condition are acceptable—it is often "reasonable" to assume that the creditor "should notify [the bankruptcy parties] if he does not intend to accept," Restatement (Second) of Contracts § 69(1)(c), because everyone else is relying on him. When reorganizations plans are achieved through hard-fought negotiation by the interested parties, including those similarly situated to the silent creditor; inure to the creditor's benefit; give creditors proper notice; and require substantial consent to the third-party releases for the plan's success, it is reasonable to infer an intent to accept the plan from a creditor's silence.

*Id.* at *18–19 (internal quotations and citations omitted).

21. Second, the court addressed the concern of using class action jurisprudence to determine that opt-out indicates the required consent under the appropriate circumstances:

> The Trustee's remaining argument that reliance on *Shutts* and class-action jurisprudence contravenes the Supreme Court's warning about "de facto" class actions is unpersuasive, for three reasons. First, each of the cases in which the Supreme Court has cautioned parties about creating a "de facto" class action occurred in the context of traditional civil litigation. Outside of Rule 23, there are no protections or procedures for absent litigants from which a court can infer consent to a judgment. By contrast, and as discussed, bankruptcy provides a host of analogous, if not stronger, structural protections that permit an inference of consent. Second, some class actions are distinguishable because they can bind parties without notice and an opportunity to exit, even if monetary claims are at stake. Procedural rigidity is necessary to ensure that even *nonconsenting* plaintiffs receive due process; as the Trustee concedes, the rule does not ensure that *all* parties consent. The concern is not warranted here, because the [Bankruptcy] Code requires procedures to obtain and make findings of consent to opt out. Third, the bankruptcy courts are making largely individualized (or group-based) determinations of consent for claimants. If a finding of consent is inappropriate for a group or even an individual claimant, then they are not bound by the releases.

*Id.* at *19 (internal quotations and citations omitted).

22. The Committee respectfully submits that the reasoning of the *Container Store* court is persuasive on the issue of whether an opt-out procedure for voting of a plan can fulfill the requirement for demonstrating consent to third-party releases. In light of the District Court's decision, the Committee requests that this Court reconsider its determination of the Opt-In Decision and permit the opt-out procedures requested by the Debtor and the Committee.

## B. Certification of the Opt-In Decision for Appeal to the Second Circuit Court of Appeals

23. If the Court is not willing to reconsider the Opt-In Decision, then the Committee requests that pursuant to Bankruptcy Rule 8006(f) and 28 U.S.C. § 158(d)(2), the Court certify the Opt-In Decision for appeal to the Second Circuit Court of Appeals.

24. With respect to the standard for certification for direct appeal, 28 U.S.C. § 158(d)(2) provides that an appeal of a final order *must* be certified for direct appeal to the Court of Appeals if any of the following disjunctive criteria are met:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, *or* involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; *or*
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A) (emphasis added).

25. "If the bankruptcy court [or] the district court . . . determines that a circumstance specified in clause (i), (ii), *or* (iii) . . . exists . . . then the . . . court . . . ***shall*** make the certification." *Id.* § 158(d)(2)(B) (emphasis added). Certification is thus mandatory if any of the specified circumstances exist. *In re Springfield Hosp., Inc.*, 618 B.R. 109, 113 (Bankr. D. Vt. 2020).

26. Notably, satisfaction of either the "no controlling decision" and "public interest" criteria suffices to require certification. *Id.* at 115-17.

27. As described below, although the satisfaction of any one of the criteria set forth in the statute is sufficient to mandate certification, three of those criteria have been satisfied here.

28. First, as this Court recognizes in the Opt-In Decision, the Second Circuit Court of Appeals has not ruled on this issue. Opt-In Decision at 4. Further, as clear from the briefing, the lower courts in the Second Circuit are split on the issue of whether opt-out procedures provide the required consent. There is thus no controlling decision of the Second Circuit with respect to the validity of opt-out releases.

29. Second, the Opt-In Decision Order involves matters of public importance. "Public importance exists when the matter on appeal transcends the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Springfield Hosp.*, 618 B.R. at 117 (internal quotation marks omitted). Here, the extent to which, and the manner in which, bankruptcy cases involving related mass tort defendants with shared insurance can only be released from tort claims if each member of the enterprise files its own separate bankruptcy case is significant not only to Diocese of Buffalo survivors but survivors in other matters, and widely to claimants in mass tort-related bankruptcies.

30. Third, an immediate appeal from the Order will materially advance the progress of this case. As noted above, the Diocese, the parishes and the Settling Insurers have reached an agreement that can lead to the resolution of this case, meaningful compensation to the Survivors and freedom for the Diocese and its parishes from the risk of potentially economically crippling tort judgments relating to childhood sexual abuse. The Opt-In Decision jeopardizes these hard-fought agreements by creating a scenario where parishes cannot receive the protection they need from future potential liability that justifies their financial contributions to the Plan and their

willingness to release their insurance coverage as necessary for the Settling Insurers to make their significant contributions to the proposed settlement trust. Moreover, because the Second Circuit is contemporaneously addressing the issue of third-party opt-out releases in *GOL Linhas*, there is no benefit in the District Court's review of the legal issues absent guidance from the Second Circuit. *See generally In re Gravel*, Nos. 11-10112, 11-10281, 12-10512, 2019 WL 3783317, at *8 (Bankr. D. Vt. Aug. 12, 2019) (material advancement found where issues had already "percolated" in District Court).

### C. Adoption of Procedures for Rapid Prepackaged Chapter 11 Cases.

31. The Committee seeks an order of this Court adopting Guidelines and Procedures for Prepackaged Chapter 11 Cases for use in connection with Chapter 11 cases (substantially in the form attached as Schedule 1 to Exhibit C, the "**Rapid Prepack Procedures**") that would be filed by parishes or other non-debtor affiliates of the Diocese in connection with and in order to facilitate the Plan in this Chapter 11 case.

32. The Committee requests that the Court approve and adopt the Rapid Prepack Procedures to enable the parishes or other non-debtor catholic entities to file for Chapter 11 to seek confirmation of the Plan with respect to such Chapter 11 entity. The proposed Rapid Prepack Procedures are modeled on procedures utilized in the Southern District of New York.[4]

33. The requested procedures address streamlined procedures, including being able to seek the waiver of certain requirements such as the holding of a Section 341 Meeting or the filing of schedules and statements of financial affairs that would otherwise be required in a Chapter 11 case. The procedures also address the process for first day motions and provide

---

[4] Attached as Exhibit D hereto is a redline comparison of the Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York (dated February 1, 2024) to the proposed Rapid Prepack Procedures.

mechanisms for holding a combined disclosure statement and confirmation hearing as well as addressing the approval of solicitation procedures used in the solicitation of any prepackaged plan.

34. As discussed above, the Diocese's Chapter 11 case is at a critical juncture. There is a near global resolution that includes the Diocese, the parishes, the Settling Insurers and the Committee. Vital to the Plan is the release of the parishes by Survivors holding claims against a particular parish. Without such releases, the parishes will not make the necessary and agreed financial contribution to the settlement trust, and, as importantly, will not release their interests in the insurance policies of the Settling Insurers such that there can be no settlement with the insurers and the Diocese will not be able to confirm its Plan.

35. The Opt-In Decision requires each Survivor entitled to vote on the Plan to provide an affirmative release of the parishes before the parish can be released. Thus, without such a signed release from every Survivor, the Plan will not be confirmed because the parishes, and the Settling Insurers, will not accept a Plan without the certainty of the releases.

36. To the extent that the Court does not reconsider the Opt-In Decision or certify it for direct appeal to the Second Circuit, the proposed Rapid Prepack Procedures provide a potential path forward to provide a mechanism for parishes to seek Chapter 11 relief and confirmation of a Plan without the expense and delay of a standard Chapter 11 case.

37. The Committee submits that the cost and delay from requiring the parishes to file Chapter 11 cases without the Rapid Prepack Procedures are prohibitive and would leave the Diocese back at square one, after seven years of work to reach resolution of this Bankruptcy Case.

38. The Rapid Prepack Procedures are designed to streamline scheduling, standardize notice, facilitate prompt hearings where appropriate, and provide transparent frameworks for financing, sale processes, plan solicitation, and professional compensation, all while preserving parties' rights to be heard.

39. The Rapid Prepack Procedures facilitated the resolution of the bankruptcy cases of (i) The Roman Catholic Diocese of Rockville Centre, New York before Bankruptcy Judge Glenn in the bankruptcy court for the Southern District of New York and (ii) The Roman Catholic Church of the Archdiocese of New Orleans in the Eastern District of Louisiana before Bankruptcy Judge Grabill.

40. Adoption of similar procedures in this case will promote the global resolution of the bankruptcy case by enabling the parishes to file for Chapter 11 in a manner that reduces administrative expense, and provides clarity and predictability to all stakeholders, while conforming to the Bankruptcy Code, the Bankruptcy Rules, and this Court's Local Rules.

41. The Committee submits that the proposed Rapid Prepack Procedures will enable the Plan process in this case to move forward on a faster timetable and will minimize unnecessary expense and delay of requiring parishes to fulfill all of the requirements and obligations of Chapter 11 debtors.

## CONCLUSION

42. The Committee respectfully request the Court (a) enter an order substantially in the form attached as Exhibit A reconsidering the Opt-In Decision, or (b), in the alternative, entering an order substantially in the form of Exhibit B, certifying the Opt-In Decision for immediate appeal to the Second Circuit Court of Appeals, or, (c) in the alternative, entering an order substantially in the form of Exhibit C adopting the Rapid Prepack Procedures.

| | |
|---|---|
| Dated: March 13, 2026<br>New York, New York | PACHULSKI STANG ZIEHL & JONES LLP<br><br>*/s/ Ilan D. Scharf*<br>James I. Stang, Esq.<br>Ilan D. Scharf, Esq.<br>Iain A. W. Nasatir, Esq.<br>Karen B. Dine, Esq.<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Telephone: 212/561-7700<br>Facsimile: 212/561-7777<br>Email: jstang@pszjlaw.com<br>        ischarf@pszjlaw.com<br>        inasatir@pszjlaw.com<br>        kdine@pszjlaw.com<br><br>*Counsel for the Official Committee of Unsecured Creditors* |