# EXHIBIT D

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 1 of 12

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

JOHN ROZAK, ROSEMARY AILINGER, TRUSTEES OF

BLASSED SACREMENT ROMAN CATHOLIC CHURCH SOCIETY OF

TONAWANDA,

THOMAS FRIEDMAN, TRUSTEE OF THE

OUR LADY OF PEACE, ROMAN CATHOLIC CHURCH     **Index No. 811414/2025**

TIMOTHY CREENAN, PROCURATOR OF THE OUR

LADY OF PEACE ROMAN CATHOLIC CHURCH

EUGENE HANITZ, PROCURATOR OF ST. BERNADETTE OF ORCHARD PARK-

RICHARD W. JAUCH, TRUSTEE OF ST. ALOYSIUS GONZAGA ROMAN CATHOLIC CHURCH

THOMAS O'NEIL, ANNE MARIE AGOSTINELLI TRUSTEES OF

ST. JOHN XXIII in WEST SENECA

Plaintiffs,

v.

DIOCESE OF BUFFALO, BISHOP OF BUFFALO, MICHAEL W. FISHER

PASTOR MICHAEL PARKER,

Fr. JAMES CIUPE, REV. THOMAS MAHONEY, REV. DAVID A. BELLITTIERE

REV. JOHN E. STANTON

Defendants.

---

**AND**

1

Case 1-20-10322-CLB,   Doc 4967-4,   Filed 07/20/26,   Entered 07/20/26 15:59:16,
Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 2 of 12

1 of 11

PAUL D. REID, TRUSTEE OF ALL SAINTS PARISH IN LOCKPORT, NY

JOHN WICK, PROCURATOR OF ALL SAINTS PARISH IN LOCKPORT, NY

SAMANTHA SCALISE, PROCURATOR OF HOLY APOSTLES PARISH IN JAMESTOWN, NY

JOSEPH KEEFE, PROCURATOR OF ST. MOTHER TERESA OF CALCUTTA PARISH,

JULIANNA MONHEIM, PROCURATOR OF SACRED HEART OF JESUS PARISH AND DIOCESE SHRINE

|  |  |
|---|---|
| Plaintiffs, | **Index No. 812422/2025** |

v.

DIOCESE OF BUFFALO,

BISHOP OF BUFFALO, MOST REVERED MICHAEL W. FISHER,

FR. MATT NYCZ, FR. PAUL CYGAN, FR. RICHARD SIEPKA,

REV. THOMAS MAHONEY

Defendants.

---

## HON. JOHN J. DELMONTE, J.S.C.

**Appearances:**

**John J. Flaherty, Esq., and James I. Myers, PLLC, James I. Myers, Esq., of Counsel appearing for Plaintiffs**

**Bond, Schoeneck & King, PLLC, Stephen A. Sharkey, Esq., and Dennis K. Schaeffer, Esq., of counsel appearing for Defendants**

## DECISION AND ORDER

The above actions (*John Rozak, et al v. Diocese of Buffalo, et al* [the "Rozak Action"] and *Paul Reid, et al v. Diocese of Buffalo, et al* [the "Reid Action"]) have been mutually agreed upon by counsel for all parties on both sides of each action (i.e., identical counsel representing the plaintiffs and defendants, respectively, in both actions) to be joined for

2

purposes of addressing and reaching a disposition on the motions made by plaintiffs for a preliminary injunction and the defendants' cross-motions for dismissal of both actions pursuant to multiple grounds set forth in CPLR Rule 3211 (a) (sometimes collectively referred to as the "motions"). The full submission of all papers in support of and in opposition to the aforesaid motions are filed and numerically designated in the NYSCEF Docket of the Rozak Action and will be referenced from that docket throughout this Decision, and are delineated as follows:

1. Plaintiffs' motion for a preliminary injunction initiated with the filing of the verified complaint filed on July 8, 2025, with accompanying exhibits (Dkt. Nos. 1-6) and an Order to Show Cause signed on July 9, 2025 (Dkt. No. 25), with its supporting affirmations of counsel and plaintiffs John Rozak and Sarah Rowe with accompanying exhibits (Dkt. Nos. 8-22); and

2. Defendants' cross-motion to dismiss the complaint (Dkt. No. 28) and supporting affirmations of counsel and various representatives of the defendant Diocese of Buffalo along with exhibits and a memorandum of law (Dkt. Nos. 29-47, 55-60 and 92 (said papers also properly captioned to be in opposition to the plaintiffs' motion); and

3. Plaintiff's reply papers including affirmations of counsel and plaintiffs John Rozak, Eugene Hanitz, Timothy Creenan and Cheryl Bauer with exhibits and Memorandum of Law (Dkt. Nos. 67-89); and

4. The post-argument document (captioned as a "Decree") received by one set of plaintiffs in the Reid Action from the Roman Catholic Dicasterium Pro Clericis (the "Dicastery"), in its role and capacity as the hierarchical recourse authority (to wit, "general discipline governing...[over] parishes") of the Vatican relative to the *remonstratio* application made by the plaintiffs from All Saints Parish (Paul Reid as Trustee and John Wick as Procurator... said Decree [captioned as Prot. N. 2025 1799] is hereafter referred to as the "Dicasterium Decree") for a review of the Decree of Extinctive Merger of All Saints Parish with St. John the Baptist Parish issued by Bishop Michael Fisher of the Diocese on November 25, 2024.

3

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 4 of 12

3 of 11

The Dicasterium Decree was uploaded and filed by mutual agreement and consent of counsel on September 11, 2025 (Dkt. No. 93) and the supplemental papers filed by counsel for both sides with respect to the meaning, implication and effect, of said Discasterium Decree on the issues raised in the motions (Dkt. Nos. 94-97 [plaintiffs' submission] and 98-99 [defendants' submission]).

## PROCEDURAL POSTURE RELATIVE TO THE SPECIFIC RELIEF REQUESTED BY BOTH PARTIES

The Rozak Action was commenced with the filing of plaintiffs' summons and verified complaint on July 8, 2025. Dkt. Nos. 1 and 2. The complaint has one cause of action for relief...the granting and issuance of a permanent injunction to stay or "freeze" (i) the enforcement of any of the juridic mergers of the plaintiff parishes declared by individual Decrees issued by Bishop Fisher declaring said mergers[1] and (ii) the subsequent imposition of a certain "assessment" made by the Diocese of 80% of the "unrestricted" assets and financial reserves of each of the plaintiff parishes in their status as a "merging" parish.[2] The essence of the plaintiffs' cause of action is to have the Court exert and exercise the civil/secular law of the state under the Religious Corporation Law to supplementally prevent the enforcement of the Merger Decrees during the pendency of the ecclesiastical appeal(s).

The motions before the Court are (1) the plaintiffs' request for a preliminary injunction to serve as a preservative measure to maintain the *status quo* of the parties (to wit, "preliminarily" obtain the final relief sought in the complaint while this action is pending) by having an order of the Court issued to deem and declare the Merger Decrees "stayed" under state law pending the determinations to be made by the Dicastery on the

---

[1] The hereafter referenced "Merger Decrees" for each of the Rozak Action parishes are set forth in Dkt. Nos. 50, 51, 52, 53 and 54.

[2] The "assessments" were issued by the Diocese on all 160 parishes within its cataclysmic jurisdiction in the eight counties of Western New York. The assessments were imposed on a percentage scale ranging from 10% to 80% depending on the status and financial condition of each parish.

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 5 of 12

*remonstratio* filings made by the plaintiffs, and (2) the defendants' Rule 3211 (a) cross-motion to dismiss the action outright on various grounds, dispositively beginning with their primary claim that this civil law action over the ecclesiastical subject matter at issue herein is entirely precluded by long-established recognition of the sovereign jurisdiction of a hierarchical religious organization like the Roman Catholic Church under the Freedom of Religion and Establishment Clause of the First and Fourteenth Amendments of the United States Constitution and the declarative submission and absolute deference given to said sovereignty of the church under the law of the State of New York.

### **FACTUAL BACKGROUND GIVING RISE TO THE ACTION BEING FILED**

Much of the factual scenario leading up to the filing of both actions is identical for all the plaintiffs. Again, using the Rozak Action as the generally acceptable outline of the events triggering and at the heart of these actions, the underlying events can be briefly summarized as follows:

1. All of the parishes named and described in the complaint(s) were the recipients of a Decree of Extinctive Merger from the Bishop (the Merger Decrees).

2. The plaintiffs in their individual and representative capacities as duly designated "Procurators" in accordance with Canon Law each made timely filings under Section 1734 of Canon Law with the Bishop ("*remonstratio*") expressing their respectful discontent with the Merger Decrees and asking that they be rescinded or voided.

3. After the filing of each of the *remonstratio(s),* more than 30 days lapsed with no reply or response to or from the Bishop or anyone on his behalf from the Diocese.

4. The 30-day lapse with no response allowed the plaintiff Procurators from each parish to file a petition for hierarchal recourse before the Dicastery (Canon Law, § 1735) to challenge the canonical law validity of the Merger Decrees.

5. All of the hierarchal recourse petitions were acknowledged with a letter from the Dicastery confirming the recourse filings to have been timely received and

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 6 of 12

affirmatively declaring "the requested suspension of the aforementioned act of extinctive merger is hereby GRANTED, for the duration of the recourse (cf. can. 1737, §3)" (the "Suspension Letter"). See, Dkt. No. 3.[3]

6. The Dicasterium Decree was dated and issued on July 28, 2025.

There is no dispute that all parties have received, recognized and accepted the Dicastery's suspension of the Merger Decrees "for the duration of the recourse" effectively "staying" the proposed "merging" of the subject parishes and all impacts or implications of such mergers pending the Dicastery's determination on each of the recourse petitions. Though already in possession of a binding canonical "suspension" document issued by the "governing discipline" authority of the Holy See, the Dicastery,[4] plaintiffs commenced this action for a correlative civil/secular order from the Court to essentially obtain and invoke the same *pendente lite* relief against the Merger Decrees, but in civil law form. It is further undisputed that the Dicasterium Decree is in the record and before the Court for all relevant purposes in reviewing the procedural and substantive prongs of the motions.

## LEGAL ANALYSIS

There are multiple issues and grounds for relief raised in the plaintiffs' motion for a preliminary injunction and the defendants' cross-motion to dismiss. If taken singularly, the evidentiary submission in support of the injunctive relief sought by the plaintiffs would have to be so thoroughly satisfied as to essentially convince the Court to grant the requested relief as a matter of law (e.g., substantively speaking, the plaintiffs are required to prove and satisfy the 3-prong test for a preliminary injunction by "clear and convincing" evidence, *Aetna Insurance Co. v. Capasso*, 75 N.Y.2d 860 [1990]; *Nobu Next Door, LLC v. Fine Arts Housing, Inc.*, 4 NY3d 839 [2005]). Correspondingly, on most of the 3211 grounds for

---

[3] Again, as noted above all the references are made to the docket of the Rozak Action...but for the record it is necessary to point out that the suspension letter from the Dicastery in response to the hierarchal recourse filings was only received by two of the plaintiff parties in the Reid Action...All Saints Parish in Lockport and Holy Apostles Parish in Jamestown, NY. The other two named plaintiffs in the Reid Action have not yet received a response to their petitions for recourse from the Dicastery. See Reid Action Verified Complaint, Dkt. No. 2, ¶¶ 9 and 12.

[4] Counsel stipulated that nothing further would be done to enforce the Merger Decree(s) until Response(s) were issued by and received from the Dicastery.

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 7 of 12

6 of 11

dismissal advocated by the defendants there would have to be a demonstrable showing of legal invalidity to bring the action on other grounds (e.g., lack of standing) or insufficiency within the body of the complaint to overcome the broad and liberal pleading spectrum given under the well-established law that allows pleadings (notably complaints) to survive those motions if the "four corners" of the pleading, when liberally construed to accept the facts alleged therein as true, and with every possible favorable inference being extended to "determine whether the facts alleged in the complaint 'fit within any cognizable theory' [internal citation omitted]." *Crehan v. Richardson*, 236 AD3d 1418 (4th Dept. 2025), citing *Leon v. Martinez*, 84 NY2d83, 87-88, (1994).

The unique character of this action (specifically, the religious ecclesiastical subject matter for which plaintiffs seek civil/secular injunctive intervention from the Court under New York law) inexorably overwhelms all other issues and compels a review of the threshold issue of whether this Court has any measure of jurisdiction in the first instance to examine and intervene in a matter stemming from a hierarchal church.

It has been repeatedly and consistently stated that the courts of this state "adhere to the long-recognized and sensible prohibition against court involvement in the governance and administration of a hierarchal church (*Committee to Save St. Brigid's Inc. v. Egan,* 45 A.D.3d 375, 376, 846 N.Y.S.2d 30 [2007])" (internal quotation omitted*). Blaudziunas v. Egan*, 74 AD3d 697, 698 (1st Dept 2010). It is indisputable (and indeed all parties agree) that the Roman Catholic Church is a hierarchal church, rather than a congregational church.[5] The court in *Church of Our Lady of Vilna, supra* (Fn. 5), eloquently and thoroughly examined and cited the compelling authority issued by the United States Supreme Court of the preclusive effect of the First and Fourteenth Amendments over disputes involving hierarchal churches, expressly noting the Opinion rendered in *Serbian Eastern Orthodox Diocese v Milivojevich*, 426 U.S. 696 (1976) (making "it clear that the

---

[5] For an eloquent cited reference to the difference and distinction between the two polities see *The Church of Our Lady of Vilna v. The Archbishop of New York,* 15 Misc.3d 1143(a), *3 (Sup. Ct. New York Co., 2007), citing the definitive description of congregational versus hierarchal provided by Justice Brennan in *Maryland & Virginia Eldership of Churches of God v. Church of God, Inc.*, 396 U.S. 367, 370, n. 1 (1970). See also *Knight v The Presbytery of Western New York*, 26 A.D.2d 19 (4th Dept. 1966).

7

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 8 of 12

7 of 11

Constitution proscribes court resolution of such controversies where the disagreement, at its core, is one of religious doctrine, practice and organization." *Id.* at *4).

An earlier and compelling statement on the First Amendment constitutional deference doctrine of state law to ecclesiastical and hierarchal church authority was laid out by the Appellate Division, Fourth Department, in *Knight v. Presbytery of Western New York*, 26 A.D.2d 19, 22 (4th Dept. 1966):

> "But upon the facts here presented consideration must be given to a legal principle applicable to a hierarchical church enunciated in *Watson v. Jones* (13 Wall. [80 U. S.] 679, 727, supra., [and reaffirmed in *Kedroff v. St. Nicholas Cathedral*, 344 U. S. 94, supra.]) as follows: "In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."

Knight v. Presbytery of Western New York, 26 A.D.2d 19, 22, aff'd, 18 N.Y.2d 868, 222 N.E.2d 738 (1966).

A thoroughly insightful, and on point, Decision stemming from a case involving the bishopric merger authority of a Diocesan Bishop was laid out in *Filetto v. St. Mary of Assumption Church of Binghamton,* 61 Misc.2d 278 (Sup. Ct., Broome Co., 1969), including a pointed reference by the court rejecting much of the argument made on behalf of the plaintiffs herein that certain provisions of New York Religious Corporation Law (§§ 5, 13, 90-92) were applicable. Much like the present case, which involves undisputed recognition of the Code of Canon Law and the ecclesiastical governance of the Roman Catholic Church through the jurisdictional authority of the Dicastery (*and such higher levels of review applicable to the Dicasterium Decree by the Supreme Tribunal of the Apostolic Signatura,* Dkt. No. 93, pg. 6, closing paragraph) as the harbinger of final dispositional treatment over the issues raised in these two actions, the court in *Filetto* succinctly recited the precepts applicable to the matters now before the Court as follows:

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 9 of 12
8 of 11

"The ecclesiastical power of a diocesan bishop to mandate a merger of parishes and churches lies in Canon 1423 of the Code of Canon Law of the Roman Catholic Church, stating in part, that bishops" may because of the needs or the great and evident interest of the Church, effect an equally or less principal union of parish churches among themselves... And, in the hierarchy of Roman Catholic church organizations the powers, and concomitant control, descend from each respective higher church authority down ultimately to the corporate body of the individual church corporation, over the conduct of which the parishioners of that individual church have no ultimate control. As demonstrated by statutes heretofore quoted, the laws of the State of New York clearly recognize this particular authoritarian ecclesiastical form of the Roman Catholic church's organization and its powers."

*Id.* at 282.

Inescapably, and as noted by the court in *Church of Our Lady of Vilna*, while a concept later evolved recognizing that a state "may adopt neutral principles of civil law as a means of adjudicating a church property dispute," *Jones v. Wolf*, 443 U.S. 595, 600 (1979), *Id.* at *4, it has remained manifestly clear that civil courts should only (*and may only*) immerse themselves in church property disputes if "the case can be decided solely upon the application of neutral principles of contract law, *without reference to any religious principle* (italics added). *Avitzur v. Avitzur*, 58 N.Y.2d 108, 118 (1983); and the emphasis of these cases with respect to the adoption of neutral principles of law is very narrow and tightly applied to church property disputes "so long as it involves no consideration of doctrinal matters." (underscore added). *Trustees of Diocese of Albany v. Trinity Episcopal Church of Gloversville*, 250 A.D.2d 282, 285 (3rd Dept. 1999), citing *Jones v. Wolf, supra* at 602; accord *Episcopal Diocese of Rochester v. Harnish*, 17 Misc.3d 1105(A) (Sup. Ct. Monroe Co. 2006), *aff'd* 43 A.D. 3d 1406 (4th Dept. 2007), *aff'd* 11 N.Y.3d 340 (2008).

Central to the pending actions is the inescapable fact that while the plaintiffs make overtures and attempt to frame their complaints to include a companion reference that the "temporalities and property" of the subject parishes are contemporaneously at risk of misappropriation vis-à-vis the manner by which and the purpose for which the mergers were declared by Bishop Fisher, these are not *per se* typical or traditional common law

Case 1-20-10322-CLB, Doc 4967-4, Filed 07/20/26, Entered 07/20/26 15:59:16, Description: Exhibit D - Judge DelMonte 9/26/25 Decision and Order, Page 10 of 12

9 of 11

property disputes under any provisions of applicable New York civil law.[6] More compelling in these actions is the undisputed fact that the Suspension Letters have operatively controlled and stayed all aspects of the challenged Merger Decrees and more recently, the first Dicasterium Decree that has been issued makes a plain declaration of the matters raised in the complaints, to wit, formally "confirming the extinctive union, for which sufficient cause has been shown" **and** directing the treatment and handling of the "temporal goods of the suppressed Parish."

Though avidly and forthrightly argued by plaintiffs that the disposition rendered by the Dicastery in the Dicasterium Decree is supportive of their position for the Court to grant the relief sought in these actions, it is plain and obvious from the averments made in their supplemental papers that the plaintiffs acknowledge, accept and completely reconcile themselves to the decisional authority of the Canon Law and ecclesiastical governance of the Roman Catholic Church to be solely and ultimately responsible for the lawful disposition of all the issues raised in these actions. (See Dkt. No. 96, particularly ¶ 10 ["Plaintiffs are not requesting that the Court make any substantive determination as to the merits of the Dicastery Decree. It is respectfully submitted that it is for the Dicastery for the Clergy and the Supreme Tribunal to make the final decision in accordance with Canon Law.], and ¶ 13 ["*It is for the Dicastery and/or the Supreme Tribunal to make the final decisions.*"], and ¶¶ 14-18 [italics added]).   The Court agrees.

## CONCLUSION

In furtherance of the foregoing, the plaintiffs' motion is **DENIED** in all respects, the defendants' cross-motion is **GRANTED** on the lack of civil jurisdiction premised under the First and Fourteenth Amendments of the Constitution, and the complaints in both actions are **DISMISSED WITHOUT PREJUDICE** to the right of any plaintiff in either action to file a stand-alone complaint (that is a new action based on a singularly focused complaint of its

---

[6] The statutory wording of Religious Corporation Law § 5 that plaintiffs rely upon heavily plainly states that the administration of the "temporalities and property" of a parish shall be administered "in accordance with the discipline, rules and usages of the corporation *and of the ecclesiastical governing body, if any, to which the corporation is subject...*" (italics added).

own merits strictly premised solely on state law civil claims, if any) *or* a motion to renew argument in these actions pursuant to CPLR Rule 2221 (e) based upon a demonstration of new facts or a different decretal disposition from the Dicastery that would implicitly invoke the application of some form of civil legal redress they believe is restored in accordance with the substantive content of a separate Dicasterium Decree issued to them.[7]

Based on the foregoing it is unnecessary to address any of the other procedural and substantive issues raised in the motions, and the same are hereby deemed moot.

SO ORDERED on the 26th day of September 2025.

JOHN J. DELMONTE, J.S.C.

---

[7] The Court would accept a compatible combined motion to renew by all the plaintiffs named in the currently pleaded actions (as opposed to separately filed motions from each plaintiff) stemming from any new legal opinion from a New York appellate court that would arguably demonstrate a change in the law of the precedential authority cited herein.