# Exhibit C

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF BUFFALO, N.Y.,                    Chapter 11

                              Debtor.             Case No.: 1-20-10322-CLB

## ANSWERS OF SAVE OUR BUFFALO CHURCHES, INC. TO THE
## FIRST INTERROGATORIS OF THE PARISHES WITHIN THE DIOCESE OF BUFFALO, N.Y.
## TO SAVE OUR BUFFALO CHURCHES, INC.

Save Our Buffalo Churches, Inc. ("SOBC"), by and through its attorneys, Baumeister Denz LLP,

Arthur G. Baumeister, Jr., Esq., of counsel, as and for its Answers to the First Interrogatories of the

Parishes (the "Interrogatories"), states the following:

### GENERAL OBJECTIONS

1.     SOBC objects to the Interrogatories on the grounds and to the extent that they ask for

privileged information, including, without limitation, information that is protected by the attorney-client

privilege, that is protected by the attorney work product doctrine, that was prepared in anticipation of

litigation, that constitutes or discloses the mental impressions, conclusions, opinions, legal theories or

strategies or any attorney or other representative of SOBC concerning this or any other litigation, or that is

protected by any privilege or immunity.

2.     SOBC objects to the Interrogatories on the grounds and to the extent that they purport to

require SOBC to disclose information in the possession, custody and control of entities other than SOBC or

not known or reasonably available to SOBC.

1

3. SOBC objects to the Interrogatories on the grounds and to the extent that their definitions and instructions seek to impose requirements inconsistent with or beyond those of the Federal Rules of Bankruptcy Procedure.

4. The objections of SOBC to the Interrogatories are made without waiving or intending to waive, but on the contrary, reserving and intending to reserve;

a. The right to object to the competence, relevance, materiality, privilege and admissibility as evidence for any purpose of the responses, objections or documents, or the subject matter thereof, in any aspect of this or any other action, arbitration, proceeding or investigation;

b. The right to object on any ground to the use of the responses, objections or documents, or the subject matter thereof, in any aspect of this or any other action, arbitration, proceeding or investigation; and

c. The right to object at any time to any other interrogatories, document requests or requests for admission.

## ANSWERS TO INTERROGATORIES

The forgoing objections are hereby incorporated and made a part of each of the following answers and objections as though fully set forth therein. These answers are provided without waiver or limitation of the foregoing objections. SOBC reserves the right at any time to revise, supplement, correct, add to or clarify these answers on the basis of newly acquired information or information otherwise coming to the attention of its attorneys after service of these responses (whether via discovery herein or otherwise), or as required by the Federal Rules of Bankruptcy Practice or for any other reason. Each answer contained herein shall be deemed as answering the request it immediately follows and any other request to which it is factually and/or legally responsive.

2

Documents produced in connection with these Interrogatories are being furnished with the SOBC document production to the Unsecured Creditors Committee requests copies of which are being furnished to the Parishes. References to "Parish #" refer to the electronic production of documents and correspond to the file electronic file label.

INTERROGATORY NO. 1: Identify each person or entity who is or has been responsible for operating, controlling, and/or overseeing the SOBC FB Group, at any time from its inception to the present, and for each, identify the time period during which such person or entity operated, controlled, and/or oversaw the SOBC FB Group, his or her responsibilities concerning the SOBC FB Group, and any actions he or she has taken in regards to the SOBC FB Group.

RESPONSE: SOBC Facebook Group is registered and has always been under the direction of a small group of volunteers who assert their right to privacy. All posting rules and regulations required by Facebook/Meta are followed. There are several additional volunteer contributors who intermittently initiate posts and/or reply to posts. SOBC FB has 1,737 members, 515 visitors (who post/comment to the page but have not joined). We have 3 administrators and 2 moderators who are all volunteers and want to maintain their anonymity. We do have a review process in place to aid in the monitoring of comments. The page is public.

3

**INTERROGATORY NO. 2:** Identify each person or entity who is or has been an "administrator" of the SOBC FB Group, at any time from its inception to the present, and for each, identify the time period during which such person or entity dealt with the SOBC FB Group, his or her responsibilities concerning the SOBC FB Group, and any actions he or she has taken in regards to the SOBC FB Group.

RESPONSE: See Response No. 1 above. The main volunteers have been with the SOBC Facebook page since its' inception to present day. They are responsible for authoring and/or selecting content as per reported in secular media, submitted parish activities/events and reported parish advocacy activities. There are several volunteer contributors who intermittently initiate posts with pre-determined approval thresholds.

**INTERROGATORY NO. 3:** Identify the person who, on the SOBC FB Group page, goes by the name "Beacon Gal" and provide the full name and address of such person.

RESPONSE: Beacon Gal asserts her right to privacy.

**INTERROGATORY NO. 4:** Identify and describe in detail the basis for Your contention in paragraph 11 of the Motion that the Diocese has sought millions of dollars from Parishes "to fund the settlement of the hundreds of claims that have been filed against the Diocese."

RESPONSE: See Parish 4. The Diocese of Buffalo published their "contribution" plan with the goal of obtaining millions of dollars to fund the settlement claims, which define the plan and implementation of its strategy. Relevant is the expert analysis entitled: *The Availability of Parish Assets for Diocesan Debts: A Canonical Analysis,* by Nicholas P. Cafardi, Dean and Professor of Law J.D.,

4

Duquesne School of Law, University of Pittsburgh School of Law; J.C.L., University of St. Thomas, Rome

**INTERROGATORY NO. 5:** Identify and describe in detail the basis for Your contention in paragraph 17 of the Motion that "The Assessments are overly excessive and would financially ruin many of the parishes."

RESPONSE: See Parish5. Examples of appeals first sent to Bishop Fisher and when denied, forwarded to the Dicastery for the Clergy. In each procurator's own words are the distressing pleas of possible financial ruin if the payment were to be paid and perceived threats if the assessment payment was refused. Other email conversations also highlight the grave harm expected by some parishes with the loss of these significant funds.

**INTERROGATORY NO. 6:** Identify and describe in detail the basis for Your contention in paragraph 17 of the Motion that "every merger Dicastery Decree has stated that the **Diocese may not assess the parishes to fund any portion of the settlement of the CVA Claims**" (emphasis in original).

RESPONSE: See Disc. 14a-d.

**INTERROGATORY NO. 7:** Identify and describe in detail the basis for Your contention in paragraph 18 of the Motion that "the proposed plan would permit the Diocese to apply Contributions to settle unrelated claims against the Diocese".

5

RESPONSE:   SOBC maintains that the parishioners provide their weekly Mass collection donations were always intended and fully expected for those donations to remain directly available only to the parish for routine budgetary expenditures. Any excess contribution amounts were to be placed into savings for future Parish facility or personnel needs. The extraction of said parish savings derived from weekly donations for payment toward a non-parish debt is considered a use by the Diocese of Buffalo for the Bankruptcy settlement and is an unrelated claim to the parish (*ad quem*).

**INTERROGATORY NO. 8:** Identify and describe in detail all Documents that discuss or comprise the "Diocese of Buffalo Assessment Program" as that phrase is used in paragraph 19 of the Motion.

RESPONSE:   See Parish 4.  The DOB as documented in the publications therein outlined their need to amass funds to comply with their agreement as parish provided funds toward the settlement. The term used was a "contribution" which was denounced by local parishioners and the Dicastery for the Clergy due to the use of assigned percentage of savings to be remitted and to be paid by an unreasonable deadline. The community term for this "contribution" plan became the Assessment Program. It was a hierarchal plan disseminated without representation by those whose funds were targeted for removal.

**INTERROGATORY NO. 9:** Identify the parishes that "did not have the required trustee board representatives appointed or attending the assessment payment vote" as that phrase is used in paragraph 20.B.4 of the Motion.

RESPONSE:

Ascension Parish, Batavia
Our Lady of Peace, Clarence
Our Lady of Peace, Salamanca

6

St. Brendan on the Lake
Blessed Sacrament, Tonawanda
St. Pius, Getzville
St. Aloysius, Cheektowaga
St. Timothy's, North Tonawanda
Infant of Prague, Cheektowaga

**INTERROGATORY NO. 10:** Identify each person or entity who requested "SOBC participation on behalf of all the parishes in the Diocese of Buffalo" as relates to the Diocese's chapter 11 case as that phrase is used in paragraph 20 of the Motion

RESPONSE:

St. Bernadette, Orchard Park
Our Lady of Peace, Clarence
Holy Apostles, Jamestown
St. Joseph church, Lockport
St. Mary church, East Arcade
St. Rose of Lima, Buffalo
Sacred Heart, Bowmansville
St. John XXIII, West Seneca
St. John the Evangelist, Olean
St. John Vianney, Orchard Park
St. Michael Parish, Buffalo
All Saints, Lockport
St. Brigid Parish, Bergen
Infant of Prague Parish, Cheektowaga
Ascension Parish, Batavia
Our Lady of Bistrica, Lackawanna
Blessed Sacrament Parish, Tonawanda
St. Pius X Parish, Getzville
St. Martha Parish, Depew
St. Joseph, Holland
St. Aloysius Gonzaga, Cheektowaga
Our Lady of Peace, Salamanca
Holy Spirit, Buffalo
14 Holy Helpers, West Seneca
St. Gabriel's, Elma
St. Timothy's, Tonawanda
St. Jude the Apostle, North Tonawanda
St. Mother of Theresa of Calcutta, Depew

Immaculate Conception, East Aurora
Our Lady of Pompeii, Depew
Queen of Martyrs, Cheektowaga
St. Benedict, Williamsville
St. Rose of Lima, Buffalo
St. Theresa of Avila, Akron

**INTERROGATORY NO. 11:** Identify each individual who assisted or participated in answering these Interrogatories.

RESPONSE:

Elizabeth Zilbauer, President SOBC
Mary Beth Pruski, Treasurer and Secretary SOBC

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Buffalo, New York
July 10, 2026

/s/ Mary Pruski
Mary Pruski,
Secretary/Treasure of
Save Our Buffalo Churches, Inc.

**BAUMEISTER DENZ LLP**

By: /s/ Arthur G. Baumeister, Jr.
Arthur G. Baumeister, Jr., Esq.
*Attorneys for Save Our Buffalo Churches, Inc.*
174 Franklin Street, Suite 2
Buffalo, New York 14202
(716) 852-1300
abaumeister@bdlegal.net

8