# Exhibit H

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 1 of 36



From the Vatican, 1 April 2026

Prot. N. 2025 4066

Ms. Ellen MISSERT, Procurator
233 Kenview Boulevard
Cheektowaga, NY 14215
**UNITED STATES OF AMERICA**

Dear Ms. Missert,

This Dicastery for the Clergy writes further regarding your hierarchical recourse against the decision of the Most Reverend Michael W. FISHER, Bishop of Buffalo, communicated to the vicariate of *Northern Erie* on 10 June 2025 concerning the contribution of the Parish of *Saint Aloysius Gonzaga* in Cheektowaga toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*



## DICASTERIUM PRO CLERICIS

# DECREE

Prot. N. 2025 4066

*SPECIES FACTI*

1. WHEREAS, on 17 November 2024, the Bishop of Buffalo, the Most Reverend Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the Parish of St. Aloysius Gonzaga in Cheektowaga, New York (hereinafter, 'the Parish') with the Parish of Christ the King in Snyder, New York (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. WHEREAS, on 10 June 2025, at the meeting of the Vicariate of *Northern Erie*, the priests and other persons responsible for the Parishes were informed about the contribution plan, which was published to the faithful on 16 June 2025, and;

4. Whereas, on 17 June 2025, Ms. Ellen MISSERT, Procurator for 349 members of the faithful (hereinafter, 'the Procurator'), brought *remonstratio* against the aforementioned decision to the Ordinary (cf. can. 1734 §1), who made no response (cf. cann. 57, § 2; 1735), and;

5. WHEREAS, on 2 August 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which accepted that request for study by its decretal letter of 3 October 2025 (cf. Art. 137 §1 *General Regulations of the Roman Curia* 1999), recognizing as the object the decree the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

6. WHEREAS, on 9 November 2025, the Procurator submitted additional information concerning the impugned decision, and;

7. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in

consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

### *IN IURE ET IN FACTO*

8. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

9. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

10. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

11. Indeed, it is the Ordinary's contention, as expressed in the *vota* previously provided in response to recourses against extinctive unions within the Diocese of Buffalo, that the amounts are requests for a gift. However, documentation provided by the Recurrents shows that the consent to transfer the funds made by the Trustees of the civil corporation of the Parish states: "the Diocese has tendered an assessment to the Parish in an amount of $232,796, which represents the Parish's allocable portion of the Settlement Amount". The impugned act of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.



12. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

THEREFORE

**In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Saint Aloysius Gonzaga* in Cheektowaga toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united.**

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
1 April 2026

*Lazzaro You*

Lazzaro Cardinal You Heung sik
*Prefect*

*Simone Renna*

Monsignor Simone Renna
*Undersecretary*



**DICASTERIUM
PRO CLERICIS**

Prot. N. 2026 0207

Mr. Daniel A. HINZ, Procurator
2262 Haskell Road
Olean, NY 14760
**UNITED STATES OF AMERICA**

Dear Mr. Hinz,

This Dicastery for the Clergy writes further regarding your petition for hierarchical recourse in the matter of the contribution of the Parish of *Saint John the Evangelist* in Olean toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

✠ Carlo Roberto Maria Redaelli
*Archbishop Emeritus of Gorizia*
*Secretary*

Case 1-20-10322-CLB,    Doc 4976-8,    Filed 07/22/26,    Entered 07/22/26 17:16:01, Description: Exhibit H, Page 6 of 36



# DICASTERIUM PRO CLERICIS

# DECREE

Prot. N. 2026 0207

1. WHEREAS, on 5 March 2025, the Bishop of Buffalo, the Most Reverend Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the Parish of St. John the Evangelist in Olean (hereinafter, 'the Parish') with the Parish of St. Mary of the Angels, also in Olean (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. Whereas, on 20 June 2025, Mr. Daniel HINZ, Procurator for members of the faithful (hereinafter, 'the Procurator'), made a petition according to can. 57 concerning the assessment as expressed in the press release and vicariate meeting to the Ordinary (cf. can. 1734 §1), who replied on 30 June 2025 (cf. cann. 57, § 2; 1735), and;

4. WHEREAS, having received the aforementioned reply on 8 July 2025, the Procurator made *remonstratio* on 22 July 2025 against the decision of 30 June 2025, to which no response was made before which the Procurator, on 16 August 2025, submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'),

5. WHEREAS, on 19 August 2025, the Ordinary replied to the *remonstratio* of 22 July 2024, rejecting the same, and;

6. WHEREAS, on 2 September 2025, the Procurator submitted an updated request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which, notwithstanding the procedural errors, accepted that request for study by its decretal letter of 2 October 2025 (cf. Art. 137 §1 *General Regulations of the Roman Curia* 1999), recognizing as the object the decree the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 7 of 36

7. WHEREAS, on 6 December 2025, 8 December 2025 and 6 January 2026, the Procurator submitted additional information concerning the impugned decision, and;

8. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.


## IN IURE ET IN FACTO


9. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

10. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

11. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

12. Indeed, it is the Ordinary's contention, as expressed in the *vota* previously provided in response to recourses against extinctive unions within the Diocese of Buffalo, that the amounts are requests for a gift. He argues that the retention by the Parish in 2020 of civil advocates proposed by the Diocese "indicated that the Pastor, the canonical representative of the parish (c. 532), who took advantage of the offer willingly attached his parish to the diocesan proceedings. Implicit here was the request to be informed of the amount his parish would need to contribute to reach the full settlement value"

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 8 of 36

(Ordinary's Letter of 19 August 2025; Attachment 6). However, documentation provided by the Recurrents shows that the Parish Administrator did not voluntarily transfer the assessed amount of $211,800.00: "I have in fact been ordered to do so" (Attachment 8). The impugned act of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

13. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish, this act is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

THEREFORE

**In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Saint John the Evangelist* in Olean toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united.**

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

Lazzaro Cardinal You Heung sik
*Prefect*

Monsignor Simone Renna
*Undersecretary*

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 9 of 36



**DICASTERIUM PRO CLERICIS**

From the Vatican, 8 April 2026

Prot. N. 2025 3956

Ms. Cheryl BAUER, Procurator
52 Royal Coach Road
West Seneca, NY 14224
**UNITED STATES OF AMERICA**

Dear Ms. Bauer,

This Dicastery for the Clergy writes further regarding your petition for hierarchical recourse in the matter of the contribution of the Parish of *St. John XXIII* in West Seneca toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*



# DICASTERIUM PRO CLERICIS

## DECREE

Prot. N. 2025 3956

### SPECIES FACTI

1. WHEREAS, on 12 November 2024, the Bishop of Buffalo, His Excellency Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the Parish of Saint John XXIII in West Seneca (hereinafter, 'the Parish') with the Parish of Queen of Heaven, also in West Seneca (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. WHEREAS, on 13 June 2025, at the meeting of the local vicariate, the priests and other persons responsible for the Parishes were informed about the contribution plan, and;

4. WHEREAS, on 21 June 2025, Ms. Cheryl BAUER, Procurator for members of the faithful (hereinafter, 'the Procurator'), made a petition according to can. 57 concerning the assessment as expressed in the press release and vicariate meeting to the Ordinary (cf. can. 1734 §1), who replied on 30 June 2025 (cf. cann. 57, § 2; 1735), and;

5. WHEREAS, on 17 July 2025, the Procurator made *remonstratio* against that reply of 30 June 2025, to which no response was made, and;

6. WHEREAS, on 3 September 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which initially rejected the petition on 9 October 2025 due to the failiure to produce the Ordinary's reply of 30 June 2025 (cf. Prot. N. 2025 3230, and;

7. WHEREAS, on 28 October 2025, the Procurator made facultative *remonstratio* against the decretal letter of 9 October 2025, and at the same time produced the Ordinary's reply of 30 June 2025, after which the Dicastery accepted the petition for study by its decretal letter of 4 February 2026 (cf. Art. 43 § 1 *General Regulations of the Roman Curia* 2025), recognizing as the object the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

*Page 1 of 3*

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 11 of 36

8. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

## IN IURE ET IN FACTO

9. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

10. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

11. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

12. Indeed, it is the Ordinary's contention, as expressed in his response of 30 June 2025 to the Procurator's petition that the amounts are requests for a gift and that the norms of cann. 1291-1295 were to be followed, which, from the evidence at hand, were not observed. Notwithstanding the Ordinary's response, the Recurrents assert that the Parish received an invoice from the Diocese of Buffalo that is equivalent to 85% of their unrestricted assets, or $407,005.00. The press release of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

*Page 2 of 3*



13. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

THEREFORE

In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Saint John XXIII* in West Seneca toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return to the Parish of any money already transferred.

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

*Lazzaro You*

Lazzaro Cardinal You Heung sik
*Prefect*

*Simone Renna*

Monsignor Simone Renna
*Undersecretary*

*Page 3 of 3*

Case 1-20-10322-CLB,   Doc 4976-8,   Filed 07/22/26,   Entered 07/22/26 17:16:01,
Description: Exhibit H, Page 13 of 36



**DICASTERIUM**
**PRO CLERICIS**

From the Vatican, 8 April 2026

Prot. N. 2025 4328

Mr. William H. BRACH, Procurator
5168 Ellicott St. Rd.
Batavia, NY 14020
**UNITED STATES OF AMERICA**

Dear Mr. Brach,

This Dicastery for the Clergy writes regarding your hierarchical recourse against the contribution of the Parish of *Ascension* in Batavia toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*

Case 1-20-10322-CLB,   Doc 4976-8,   Filed 07/22/26,   Entered 07/22/26 17:16:01,
Description: Exhibit H, Page 14 of 36



## DICASTERIUM PRO CLERICIS

# DECREE

Prot. N. 2025 4328

### SPECIES FACTI

1. WHEREAS, on 16 October 2024, the Bishop of Buffalo, the Most Reverend Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the Parish of Ascension in Batavia (hereinafter, 'the Parish') with the Parish of Resurrection, also in Batavia (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. WHEREAS, on 12 June 2025, at the meeting of the vicariate, the priests and other persons responsible for the Parishes were further informed about the contribution plan and the amount assessed to the Parish, namely, $1,387,911.46, and;

4. Whereas, on 17 June 2025, Mr. William H. BRACH, Procurator for members of the faithful (hereinafter, 'the Procurator'), brought *remonstratio* against the aforementioned decision to the Ordinary (cf. can. 1734 §1), who made no response (cf. cann. 57, § 2; 1735), and;

5. WHEREAS, on 1 August 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which accepted that request for study by its decretal letter of 3 October 2025 (cf. Art. 137 §1 *General Regulations of the Roman Curia* 1999), recognizing as the object the decree the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

6. WHEREAS, on 7 November 2025, the Procurator submitted additional information concerning the impugned decision, and;

7. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 15 of 36

consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

## *IN IURE ET IN FACTO*

8. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

9. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

10. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

11. Indeed, it is the Ordinary's contention, as expressed in the *vota* previously provided in response to recourses against extinctive unions within the Diocese of Buffalo, that the amounts are requests for a gift. Four parishioners have provided statements affirming that they asked the Pastor of the Parish what would happen if he refused to pay the assessment, to which the Pastor responded, "the Bishop would have him removed and replace him with someone who would follow the Bishop's wishes" (cf. Attachments 1-4). The impugned act of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 16 of 36

12. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

THEREFORE

In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Ascension* in Batavia toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united.

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

*Lazzaro You*
Lazzaro Cardinal You Heung sik
*Prefect*

*Simone Renna*
Monsignor Simone Renna
*Undersecretary*

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 17 of 36



DICASTERIUM
PRO CLERICIS

From the Vatican, 8 April 2026

Prot. N. 2026 0220

Mr. George B. METZLER, Procurator
220 Ensminger Rd
Tonawanda, New York 14150
**UNITED STATES OF AMERICA**

Dear Mr. Metzler,

This Dicastery for the Clergy writes further regarding your hierarchical recourse against the decision of the Most Reverend Michael W. FISHER, Bishop of Buffalo, dated 13 August 2025, denying the petition made on 10 July last concerning the contribution of the Parish of **Saint Timothy in Tonawanda** toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*

Dicastero per il Clero - 00120 Città del Vaticano - Tel. 06/69884151 - Fax: 06/69884845



# DECREE

Prot. N. 2026 0220

## *SPECIES FACTI*

1. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

2. WHEREAS, on 13 June 2025, at the meeting of the local vicariate, the priests and other persons responsible for the Parishes were informed about the contribution plan, and;

3. WHEREAS, on 10 July 2025, George B. Metzler, Procurator for 1700 members of the faithful (hereinafter, 'the Procurator'), made a petition according to can. 57 to the Bishop of Buffalo, the Most Reverend Michael W. FISHER (hereinafter, 'the Ordinary'), concerning the assessment imposed on the Parish of Saint Timothy in Tonawanda (hereinafter, 'the Parish') as expressed in the press release and vicariate meeting to the Ordinary (cf. can. 1734 §1), who replied on 13 August 2025 (cf. cann. 57, § 2; 1735), and;

4. WHEREAS, on 29 August 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which was accepted *ex officio* by its decretal letter of 2 December 2025, and;

5. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

## *IN IURE ET IN FACTO*

6. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes,

*Page 1 of 3*

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 19 of 36

may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

7. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

8. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

9. Indeed, it is the Ordinary's contention, as expressed in his response of 30 June 2025 to the Procurator's petition that the amounts are requests for a gift and that the norms of cann. 1291-1295 were to be followed, which, from the evidence at hand, were not observed. Notwithstanding the Ordinary's response, the Recurrents assert that the Parish was assessed $5,196,996.00. The press release of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

10. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

THEREFORE

**In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Saint Timothy* in Tonawanda toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return to the Parish of any money already transferred.**

Case 1-20-10322-CLB,   Doc 4976-8,   Filed 07/22/26,   Entered 07/22/26 17:16:01, Description: Exhibit H, Page 20 of 36

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

Lazzaro You
Lazzaro Cardinal You Heung sik
*Prefect*

Simone Renna
Monsignor Simone Renna
*Undersecretary*

*Page 3 of 3*



## DICASTERIUM
## PRO CLERICIS
———

Prot. N. 2025 3959

Mr. Fabio FREDA, Procurator
Via del Casale Strozzi, 33
**00195 ROMA**

Dear Mr. Freda,

This Dicastery for the Clergy writes regarding your hierarchical recourse on behalf of your clients against the decision of the Most Reverend Michael W. FISHER, Bishop of Buffalo, concerning the contribution of the Parish of *Infant of Prague* in Cheektowaga toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*

Dicastero per il Clero - 00120 Città del Vaticano - Tel. 06/69884151 - Fax: 06/69884845



# DECREE

Prot. N. 2025 3959

## *SPECIES FACTI*

1. WHEREAS, on 17 November 2024, the Bishop of Buffalo, the Most Reverend Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the Parish of Infant of Prague in Cheektowaga (hereinafter, 'the Parish') with the Parish of Saints Peter and Paul in Williamsville (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. WHEREAS, on 10 June 2025, at the meeting of the vicariate, the priests and other persons responsible for the Parishes were informed about the contribution plan in the amount of $509,982.00, which was published to the faithful on 16 June 2025, and;

4. WHEREAS, on 18 June 2025 and 19 June 2025, Mr. Peter BISHOP, Procurator for members of the faithful (hereinafter, 'the Procurator'), brought *remonstratio* against the aforementioned decision to the Ordinary (cf. can. 1734 §1), who responded on 23 June 2025, denying the request, and;

5. WHEREAS, on 31 July 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which accepted that request for study by its decretal letter of 15 October 2025 (cf. Art. 137 §1 *General Regulations of the Roman Curia* 1999), recognizing as the object the decree the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

6. WHEREAS, in that same decretal letter of 15 October 2025, the Dicastery rejected the mandate of the aforementioned Procurator and ordered the appointment of a new Procurator enrolled in the Register of Advocates of the Roman Curia (cf. art. 238 of *Praedicate Evangelium*), and;

*Page 1 of 3*

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 23 of 36

7. WHEREAS, on 30 October 2025, Mr. Bishop submitted additional information concerning the impugned decision, and;

8. Whereas, on 10 November 2025, Mr. Fabbio FREDA was appointed by Mr. Bishop as his procurator and advocate in the recourse and his mandate was furnished to the Dicastery on 13 November 2025, and;

9. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

## IN IURE ET IN FACTO

10. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

11. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

12. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

13. Indeed, it is the Ordinary's contention, as expressed in the *vota* previously provided in response to recourses against extinctive unions within the Diocese of Buffalo, that the amounts are requests for a gift. However, the impugned act of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the

*Page 2 of 3*

Case 1-20-10322-CLB,    Doc 4976-8,    Filed 07/22/26,    Entered 07/22/26 17:16:01, Description: Exhibit H, Page 24 of 36

Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

14. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

THEREFORE

In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Infant of Prague* in Cheektowaga toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united.

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

*Lazzaro You*

Lazzaro Cardinal You Heung sik
*Prefect*

*Simone Renna*

Monsignor Simone Renna
*Undersecretary*

*Page 3 of 3*

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 25 of 36



DICASTERIUM
PRO CLERICIS

From the Vatican, 8 April 2026

Prot. N. 2026 0566

Mr. Robert J. BAUSCH, Procurator
PO Box 81
Bergen, NY 14416-0081
**UNITED STATES OF AMERICA**

Dear Mr. Bausch,

This Dicastery for the Clergy writes further regarding your hierarchical recourse against the decision of the Most Reverend Michael W. FISHER, Bishop of Buffalo, concerning the contribution of the Parish of **St. Brigid in Bergen** toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*

(*Enclosure*)

Case 1-20-10322-CLB,    Doc 4976-8,    Filed 07/22/26,    Entered 07/22/26 17:16:01,
Description: Exhibit H, Page 26 of 36



# DICASTERIUM PRO CLERICIS

# DECREE

Prot. N. 2026 0566

## *SPECIES FACTI*

1. WHEREAS, on 18 October 2024, the Bishop of Buffalo, the Most Reverend Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the Parish of St. Brigid in Bergen (hereinafter, 'the Parish') with the Parish of Our Lady of Mercy in Leroy (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. WHEREAS, on 12 June 2025, at the meeting of the vicariate, the priests and other persons responsible for the Parish were informed about the contribution plan in the amount of $241,284.00, and;

4. WHEREAS, on 20 June 2025, Mr. Robert J. BAUSCH, Procurator for members of the faithful (hereinafter, 'the Procurator'), made a petition according to can. 57 concerning the assessment as expressed in the press release and vicariate meeting to the Ordinary, who replied on 30 June 2025, and;

5. WHEREAS, on 15 July 2025, the Procurator made *remonstratio* against that reply of 30 June 2025, to which no response was made, and;

6. WHEREAS, on 7 August 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which, not withstanding the procedural error, accepted that request for study by its decretal letter of 23 September 2025 (cf. Art. 137 §1 *General Regulations of the Roman Curia* 1999), recognizing as the object the decree the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

7. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in

*Page 1 of 3*

Case 1-20-10322-CLB,  Doc 4976-8,  Filed 07/22/26,  Entered 07/22/26 17:16:01,
Description: Exhibit H, Page 27 of 36

consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

*IN IURE ET IN FACTO*

8. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

9. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

10. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

11. Indeed, it is the Ordinary's contention, as expressed in the *vota* previously provided in response to recourses against extinctive unions within the Diocese of Buffalo, that the amounts are requests for a gift. However, the press release of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

12. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 28 of 36

THEREFORE

In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Saint Brigid* in Bergen toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united.

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

*Lazzaro You*

Lazzaro Cardinal You Heung sik
*Prefect*

*Simone Renna*

Monsignor Simone Renna
*Undersecretary*



**DICASTERIUM
PRO CLERICIS**

From the Vatican, 8 April 2026

Prot. N. 2026 0265

Mr. John ROZAK, Procurator
426 University Avenue
Tonawanda, NY 14223
**UNITED STATES OF AMERICA**

Dear Mr. Rozak,

This Dicastery for the Clergy writes further regarding your hierarchical recourse against the decision of the Most Reverend Michael W. FISHER, Bishop of Buffalo, dated 30 June 2025, denying the petition made on 17 June last concerning the contribution of the Parish of **Blessed Sacrament** in Tonawanda toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations.

Please find enclosed the decree of this curial Institution, deciding the recourse (cf. *Enclosure*).

Thanking you for your correspondence, and with assurances of prayers and best wishes, I remain,

Sincerely yours in Christ,

Monsignor Simone Renna
*Undersecretary*

Dicastero per il Clero - 00120 Città del Vaticano - Tel. 06/69884151 - Fax: 06/69884845



# DECREE

Prot. N. 2026 0265

## *SPECIES FACTI*

1. WHEREAS, on 25 November 2024, the Bishop of Buffalo, His Excellency Michael W. FISHER (hereinafter, 'the Ordinary'), decreed the extinctive union of the *Parish of Blessed Sacrament* in Tonawanda (hereinafter, 'the Parish') with the *Parish of Saint John the Baptist* in Kenmore (cf. *CIC* cann. 121; 515 §2), and;

2. WHEREAS, on 9 June 2025, the Diocese of Buffalo issued a press release in which the faithful were informed that the Parishes of the Diocese would be requested to contribute between 10% to 80% of their "unrestricted cash with the highest percentage being applied to parishes scheduled to be closed or merged as part of the Road to Renewal", and;

3. WHEREAS, on 10 June 2025, at the meeting of the local vicariate, the priests and other persons responsible for the Parishes were informed about the contribution plan, and;

4. WHEREAS, on 17 June 2025, Mr. John ROZAK, Procurator for members of the faithful (hereinafter, 'the Procurator'), made a petition according to can. 57 concerning the assessment as expressed in the press release and vicariate meeting to the Ordinary (cf. can. 1734 §1), who replied on 30 June 2025 (cf. cann. 57, § 2; 1735), and;

5. WHEREAS, on 13 July 2025, the Procurator made *remonstratio* against that reply of 30 June 2025, to which no response was made, and;

6. WHEREAS, on 13 August 2025, the Procurator submitted a request for hierarchical recourse (cf. can. 1737 §1) to the Dicastery for the Clergy (hereinafter, 'the Dicastery'), which was accepted for study by its decretal letter of 3 October 2025 (cf. Art. 137 § 1 *General Regulations of the Roman Curia* 1999), recognizing as the object the aforementioned contribution, and granting the requested suspension of the Ordinary's act, and;

7. WHEREAS, having provided ample opportunity for all interested parties to respond, and having carefully examined the documents submitted in the recourse, the Dicastery, in consideration of can. 57, § 3, judges as complete the documentation in its possession and proceeds, therefore, to its decision.

*Page 1 of 3*

1. In the case at hand, the Diocese of Buffalo has declared bankruptcy due to the enormous amount required of it by its creditors, in large part those who have a claim against that ecclesiastical circumscription on account of allegations of their sexual abuse as minors by clerics. The entities affiliated with the Diocese, such as parishes, may participate in the bankruptcy by contributing a "meaningful amount" and thereby claim relief from future claims deriving from the matter.

2. Canon 1285 permits a pastor to make charitable contributions: "*Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere*". Given the amount established by the formula set by the Diocese of Buffalo, any contribution made clearly exceeds ordinary administration (can. 1281, § 1), and as such would be an act of extraordinary administration, and must follow the norms of cann. 1291-1295.

3. One mechanism by which the Diocesan Bishop may oblige public juridic persons subject to him to contribute to the needs of the Diocese is through a moderate and proportionate tribute on income (cf. can. 1263). The diocesan bishop may, after consulting the Diocesan Finance Council and the Presbyteral Council, impose such a tribute for grave reasons (cf. can. 1263). While the situation facing the Diocese of Buffalo is grave, there is no evidence that the contribution plan was a tribute. Nevertheless, were it so, such an action would be invalid (cf. can. 127, § 2, 2°), on account of the substance of the act and the failure to observe the required procedure.

4. Indeed, it is the Ordinary's contention, as expressed in the *vota* previously provided in response to recourses against extinctive unions within the Diocese of Buffalo, that the amounts are requests for a gift. However, documentation provided by the Recurrents shows that the Parish was given a document in the form of an invoce, stating its "contribution share" in the amount of $251,947. The impugned act of 9 June 2025 makes it clear that the contribution is required: "All payments are required to be received by the Diocese by July 15, 2025." Such an act is hardly consonant with a request for a donation and indicates the obligatory nature of the Parish Contribution to the Bankruptcy Settlement.

5. Concerning the interim transfer of the funds to a common fund not controlled by the juridic person of the parish is invalid without the license of the Ordinary (cf. can. 1281, § 1), which, from an examination of the documentation provided to this Dicastery, does not seem to have been issued according to the norm of law.

Case 1-20-10322-CLB, Doc 4976-8, Filed 07/22/26, Entered 07/22/26 17:16:01, Description: Exhibit H, Page 32 of 36

THEREFORE

In accord with CIC can. 1739, this Dicastery hereby REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of *Blessed Sacrament* in Tonawanda toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united.

Recourse against this Decree may be made before the Supreme Tribunal of the Apostolic Signatura within the peremptory time limit established by the Apostolic Letter *Motu Proprio, Antiqua Ordinatione* 34 §1.

Given at the Dicastery for the Clergy
8 April 2026

*Lazzaro You*

Lazzaro Cardinal You Heung sik
*Prefect*

*Simone Renna*

Monsignor Simone Renna
*Undersecretary*

Case 1-20-10322-CLB,   Doc 4976-8,   Filed 07/22/26,   Entered 07/22/26 17:16:01, Description: Exhibit H, Page 33 of 36

# JAMES I. MYERS, PLLC
### ATTORNEY AND COUNSELOR AT LAW

5500 MAIN STREET - SUITE 312
WILLIAMSVILLE, NY 14221
PHONE: (716) 634-8400
FAX: (716) 634-6443
jmyers@myersquinn.com

June 8, 2026

Email:

Most Rev. Michael Fisher, Bishop of Buffalo and Diocese of Buffalo
c/o Bond, Schoeneck & King PLLC
Avant Bldg. – Suite 900
200 Delaware Ave.
Buffalo, New York 14202

Re: Blessed Sacrament Parish – Illicit transfer of 80% of Funds to the Diocese

Dear Bishop Fisher and Diocese of Buffalo:

As you may be aware, our law firm represented procurators, who acted on behalf of hundreds and thousands of parishioners from nine parishes, and a number of lay trustees of the respective parishes in legal proceedings instituted in July 2025. This letter is on behalf of the Blessed Sacrament procurator and those he represents with respect to the illicit transfer of 80% of the Parish funds being alienated from the parish contrary and in violation of the April 8, 2026 Dicastery for the Clergy decree.

That decree **"REVOKES the decree of the Bishop of Buffalo, which determined the assessment of the Parish of Blessed Sacrament in Tonawanda toward the Chapter 11 Bankruptcy Settlement regarding the Diocese of Buffalo and affiliated organizations and ORDERS the return of any money already transferred to the Parish to which that community was extinctively united."**

The transfer of the 80% of the funds is contrary to civil law and places the existence and the parish viability.

During the course of the prior litigation, and in public statements by the Bishop and/or the Diocese, it was represented and acknowledged by you that the Dicastery for the Clergy was above the Bishop and the Diocese, and that you would aide by and follow the Dicastery decisions.

In Honorable John J. Delmonte, J.S.C. September 26, 2025 Decision and Order, the civil court **Granted** defendants' motion based on the lack of civil jurisdiction and **DISMISSED WITHOUT PREJUDICE** the complaints in both actions. The Court provided the right to any plaintiff to file a stand-alone complaint focused of its own merits strictly premised solely on state law claims.

The Court stated on page 10 as follows:

"More compelling in these actions is the undisputed fact that the Suspension Letters have operative[y controlled and stayed all aspects of the challenged Merger Decrees and more recently, the first Dicasterium Decree that has been issued makes a plain declaration of the matters raised in the complaints, to wit, formally "confirming the extinctive union, for which sufficient cause has been shown" and directing the treatment and handling of the "temporal goods of the suppressed Parish.

Though avidly and forthrightly argued by plaintiffs that the disposition rendered by the Dicastery in the Dicasterium Decree is supportive of their position for the Court to grant the relief sought in these actions, it is plain and obvious from the averments made in their supplemental papers that the plaintiffs acknowledge, accept and completely reconcile themselves to the decisional authority of the Canon Law and ecclesiastical governance of the Roman Catholic Church to be solely and ultimately responsible for the lawful disposition of all the issues raised in these actions. (See Dkt. No. 96, particularly ¶ 10 ["Plaintiffs are not requesting that the Court make any substantive determination as to the merits of the Dicastery Decree. It is respectfully submitted that it is for the Dicastery for the Clergy and the Supreme Tribunal to make the final decision in accordance with Canon Law.] and ¶ 13 ["It is for the Dicastery and/or the Supreme Tribunal to make the final decisions.], and ¶¶ 14-18 (italics added]). **The Court agrees.** "

Since Judge Delmonte's September 26, 2026 Decision and Order, the seizure and transfer of 80% of the "unrestricted funds" after the April 8, 2026 Dicastery decree involves questions and applicability of civil law.

The Bishop and the Diocese's invocation of the civil remedy of bankruptcy, the determination of the secular claims of child abuse, and whether donated funds are restricted are proper inquires of the secular courts. The Bishop's determination whether the funds were restricted does not control. Judge Bucki has already made rulings on certain funds as to donor-intent and implied-trust analysis. The 80% taken involves funds that were restricted and/or contrary to the donors' intent.

The Bishop decree on the merger is on recourse before the Supreme Tribunal, and you have represented that you are required to wait (and you will wait) until the decree is issued by the Supreme Tribunal.

This letter demands that the 80% of the funds which was $251,947.26 transferred by the Pastor of Blessed Sacrament Parish, to a Diocesan account (St. Joseph Investment Fund)), which account is not under direct control of the Parish as the funds are frozen by the Diocese, be immediately return to the Parish so that the Parish community will not face imminent fiscal collapse.

Very truly yours,

James I. Myers

John Flaherty