**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

THE DIOCESE OF BUFFALO, N.Y., Debtor.

Case No. 20-10322

Chapter 11 Case

# FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DIOCESE OF BUFFALO, N.Y. AND ADDITIONAL DEBTORS

**DATED AUGUST 21, 2026**


**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

*Counsel to The Diocese of Buffalo, N.Y.*

**PACHULSKI STANG ZIEHL & JONES, LLP**
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**TABLE OF CONTENTS**

Page

SECTION 1. DEFINITIONS AND INTERPRETATION .......... 3

1.1 Definitions .......... 3
1.2 Interpretation: Application of Definitions and Rules of Construction .......... 25
1.3 Exhibits. .......... 25
1.4 Time Periods. .......... 25

SECTION 2. TREATMENT OF CLAIMS .......... 26

2.1 Unclassified Claims. .......... 26
2.2 Classification Specification of Treatment of Claims. .......... 28
2.3 Classes of Claims. .......... 29

SECTION 3. ACCEPTANCE OR REJECTION OF THE PLAN .......... 36

3.1 Impaired Classes Vote. .......... 36
3.2 Presumed Acceptance of the Plan. .......... 36
3.3 Presumed Rejection of the Plan. .......... 36
3.4 Voting Classes. .......... 37
3.5 Modification of Treatment of Claims. .......... 37
3.6 Elimination of Vacant Classes. .......... 37

SECTION 4. ABUSE CLAIMS. .......... 37

4.1 Assessment of Abuse Claims. .......... 37
4.2 Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol. .......... 37
4.3 Insurance Settlements. .......... 38
4.4 Release and Discharge of Abuse Claims. .......... 38
4.5 Distributions to Abuse Claimants. .......... 39
4.6 Dismissal of Pending Litigation .......... 39
4.7 Claim Withdrawal. .......... 39
4.8 Medicare Procedures. .......... 39

SECTION 5. SETTLING INSURERS .......... 41

5.1 Insurance Settlement Agreements. .......... 41
5.2 Sale of Settling Insurer Policies Free and Clear. .......... 41
5.3 Resolution of Claims Involving Settling Insurers. .......... 42
5.4 The Settling Insurer’s Payments. .......... 42
5.5 Further Assurances; Non-Material Modifications. .......... 42
5.6 Waiver/Consent. .......... 42
5.7 Timing. .......... 43

SECTION 6. MATTERS RELATING TO NON-SETTLING INSURERS .......... 43

6.1 Preservation of Rights and Obligations. .......... 43
6.2 Estimations/Assessments of Abuse Claims Are Not Binding. .......... 43

6.3 Trust Powers With Respect to Abuse Claims and Non-Settling Insurers............ 44
6.4 Insurance Coverage Adversary Proceedings. ..................................................... 44

SECTION 7. MEANS FOR IMPLEMENTATION OF PLAN ................................................ 45

7.1 Plan Implementation. ......................................................................................... 45
7.2 Corporate Action.................................................................................................. 45
7.3 Payments Effective Upon Tender. ..................................................................... 45
7.4 Agreements, Instruments, and Documents. ......................................................... 45
7.5 Continuation of Insurance Policies. .................................................................... 46
7.6 Bar Date for Professional Fee Claims.................................................................. 46
7.7 Bar Date for Other Administrative Claims. ......................................................... 46
7.8 Exit Financing....................................................................................................... 47

SECTION 8. THE TRUST ...................................................................................................... 47

8.1 Establishment of Trust. ........................................................................................ 47
8.2 Funding of the Trust.............................................................................................. 47
8.3 Vesting of Trust Assets.......................................................................................... 49
8.4 Non-Monetary Commitments. .............................................................................. 50
8.5 Appointment of the Trustee. ................................................................................. 50
8.6 Rights and Responsibilities of Trustee. ............................................................... 50
8.7 Trust Advisory Committee. ................................................................................... 51
8.8 Trust Pursuit of Insurance Claims Against Non-Settling Insurers........................ 51
8.9 Investment Powers; Permitted Cash Expenditures. ............................................. 55
8.10 Tax Matters. .......................................................................................................... 55
8.11 No Recourse Against Trustee. .............................................................................. 55
8.12 Indemnification by Trust....................................................................................... 56
8.13 Trust Assumption of Liability............................................................................... 57
8.14 Termination........................................................................................................... 57

SECTION 9. GENERAL CLAIMS ADMINISTRATION ....................................................... 57

9.1 Objections to Non-Abuse Claims. ........................................................................ 57
9.2 Determination of Claims........................................................................................ 58
9.3 No Distributions Pending Allowance. ................................................................. 58
9.4 Claim Estimation. .................................................................................................. 58
9.5 Treatment of Contingent Claims........................................................................... 59
9.6 Controversy Concerning Impairment. ................................................................. 59
9.7 Treatment of Executory Contracts and Unexpired Leases. ................................. 59

SECTION 10. PROVISIONS GOVERNING DISTRIBUTIONS.............................................. 59

10.1 Disbursing Agents.................................................................................................. 59
10.2 Manner of Payment................................................................................................ 60
10.3 Distribution Only to Holders of Allowed Claims................................................ 60
10.4 Disputed Claim Reserve. ....................................................................................... 60
10.5 Transmittal of Distributions.................................................................................. 60
10.6 Timing of Distributions.......................................................................................... 60

10.7 Time Bar to Check Payments. .... 61
10.8 No Professional Fees or Expenses. .... 61
10.9 No Interest on Claims. .... 61
10.10 Saturday, Sunday, or Holiday. .... 61
10.11 Withholding Taxes. .... 62
10.12 Setoffs and Recoupment. .... 62
10.13 No *De Minimis* Distributions. .... 62
10.14 Prepayment. .... 62

SECTION 11. EFFECTIVE DATE .... 62

11.1 Conditions Precedent to Effective Date. .... 62
11.2 Waiver of Conditions. .... 64
11.3 Occurrence of Effective Date. .... 64
11.4 Notice of Effective Date. .... 64
11.5 Effect of Non-Occurrence of Condition. .... 64

SECTION 12. EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE .... 65

12.1 General Injunction and Discharge. .... 65
12.2 Injunction and Discharge of Abuse Claims and Inbound Contribution Claims. .... 66
12.3 Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties. .... 68
12.4 Additional Debtors Payment .... 70
12.5 Settling Insurer Injunction. .... 70
12.6 Litigation/Settlement of Certain Claims. .... 70
12.7 Additional Debtors Abuse Claim Bar Date .... 73
12.8 Certain Litigation Matters. .... 75
12.9 Injunction Against Interference with Plan. .... 75
12.10 Release by Holders of Channeled Claims. .... 75
12.11 Mutual Releases. .... 76
12.12 Releases in Insurance Settlement Agreements. .... 76
12.13 Exculpation; Limitation of Liability. .... 77
12.14 Gatekeeper Injunction. .... 77
12.15 Injunctions in Full Force and Effect. .... 78
12.16 Release of Estate Causes of Action .... 78
12.17 Injunctions and Releases Integral. .... 78
12.18 Timing. .... 78
12.19 Excluded Parties and Non-Settling Insurers. .... 79
12.20 Title to and Vesting of Assets. .... 79
12.21 Continued Corporate Existence; No Successor Liability. .... 79
12.22 Identity of Trustees and Officers of the Diocese. .... 80
12.23 Authority to Effectuate Plan. .... 80
12.24 Binding Effect. .... 80
12.25 Dissolution of Committee. .... 80

SECTION 13. [RESERVED] .......... 81

SECTION 14. RETENTION OF JURISDICTION .......... 81

14.1 By the Bankruptcy Court. .......... 81
14.2 By the District Court. .......... 83
14.3 Actions to Enforce the Plan. .......... 83
14.4 Case Closure. .......... 83

SECTION 15. MISCELLANEOUS PROVISIONS .......... 83

15.1 Amendment or Modification of this Plan. .......... 83
15.2 Revocation or Withdrawal of this Plan. .......... 84
15.3 Reports. .......... 84
15.4 Notices. .......... 84
15.5 Severability. .......... 85
15.6 Validity and Enforceability. .......... 85
15.7 Controlling Documents. .......... 86
15.8 Filing of Additional Documents. .......... 86
15.9 Direction to a Party. .......... 86
15.10 Certain Actions. .......... 86
15.11 Waiver of Subordination. .......... 86
15.12 Reservation of Rights. .......... 87
15.13 Plan as Settlement Communication. .......... 87
15.14 Governing Law. .......... 87
15.15 Headings. .......... 87
15.16 No Admissions. .......... 87

PLAN EXHIBITS

Exhibit A List of Additional Debtors
Exhibit B Additional Debtors Bar Date Notice
Exhibit C Additional Debtors Bar Date Publication Notice
Exhibit D Additional Debtors Abuse Proof of Claim Form
Exhibit E List of Contributing Non-Debtor Entities

PLAN SUPPLEMENT EXHIBITS

Exhibit 1 Allocation Protocol
Exhibit 2 Abuse Claim Release Agreement
Exhibit 3 Trust Agreement
Exhibit 4 Non-Monetary Commitments
Exhibit 5 List of Assumed Contracts and Leases
Exhibit 6 DOB Trust Note

## INTRODUCTION

The Diocese of Buffalo, N.Y., the above-captioned debtor and debtor in possession (the "Diocese"), the Additional Debtors (defined below), and the Official Committee of Unsecured Creditors (the "Committee"), jointly propose the following Fist Amended Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code. The Diocese, Additional Debtors, and the Committee are the proponents of this Plan (the "Plan Proponents") and the accompanying Disclosure Statement (the "Disclosure Statement") within the meaning of Section 1129 of the Bankruptcy Code.

This Plan provides for the financial restructuring of the Diocese and the Additional Debtors and the settlement of all, or substantially all, Claims against the Diocese and the Additional Debtors, including, without limitation, the settlement of all Abuse Claims[1] against the Diocese, the Additional Debtors and the Contributing Non-Debtor Entities.

As set forth in more detail below, the Plan provides for payment in full of all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims, leaves unimpaired any Allowed Secured Claims or Pass-Through Claims, provides for deferred payments equal to the full Allowed amount of any General Unsecured Claims, and establishes the Abuse Claims Settlement Fund to be held by the Trust to compensate holders of Abuse Claims. Inbound Contribution Claims against the Diocese and Additional Debtors are disallowed and extinguished pursuant to the Plan.

The Plan provides that funding for the Trust and the Abuse Claims Settlement Fund in the total amount of $326,452,500 will be provided from, among other potential sources of recovery, a monetary payment by the Diocese, the Additional Debtors and the Contributing Non-Debtor Entities in the aggregate amount of $150,000,000, which may include up to $25,000,000 to be evidenced by the DOB Trust Note, and payments from Settling Insurers in the amount of $176,452,500. The Plan also provides for other potential sources of funding for the Abuse Claims Settlement Fund. As of the date of this Plan, the Diocese, the Additional Debtors and the Committee have agreed to accept the following Settling Insurer payments: (i) $37.5 million from Wausau, (ii) $85 million from CNA, (iii) $1.4 million from AIG Insurers, (iv) $1.5 million from TNCRRG, (v) $35.5 million from SICNY, (vi) $9 million from Catholic Mutual, (vii) $2.0875 million from Travelers Indemnity, (viii) $1.5 million from Hartford, (ix) $1.5 million from Century, and (x) an additional $1.465 million in the aggregate from a number of additional Settling Insurers. If the conditions set forth in this Plan are met and the Plan Proponents reach an Insurance Settlement Agreement or other terms of settlement with respect to Insurance Claims against Non-Settling Insurers prior to commencement of the confirmation hearing for the Plan, the Plan provides that such Non-Settling Insurers may become Settling Insurers and for settlement proceeds resulting therefrom to be used to further supplement the Abuse Claims Settlement Fund. To the extent no settlement is achieved, the Plan provides for the assignment of Insurance Claims held by the Diocese Settling Parties against the Non-Settling Insurers to the Trust.

[1] All capitalized terms used but not defined in this Introduction are defined in Section 1 of the Plan, below.

The Plan's treatment of Abuse Claims represents the culmination of over six (6) years of negotiation among the Diocese, the Additional Debtors, and the Committee in its capacity as an advocate on behalf of all Abuse Claimants, and has been approved by the Committee in consultation with attorneys who collectively represent an overwhelming majority of Abuse Claims against the Diocese ("State Court Counsel").

All holders of Claims against the Diocese, holders of Abuse Claims against the Additional Debtors and holders of Abuse Claims Against the Contributing Non-Debtor Entities are encouraged to read this Plan and the Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions regarding the Diocese and Additional Debtors, events prior to and during the Chapter 11 Case of the Diocese and the filing of Chapter 11 Cases for the Additional Debtors, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan Documents, once Filed, can be obtained for free at https://case.stretto.com/dioceseofbuffalo, and shall also be available for review in the Office of the Clerk of the Bankruptcy Court during the Bankruptcy Court's normal hours of operation. Holders of Claims may also obtain copies of the Plan Documents by contacting counsel for the Diocese in writing at the address on the cover page of the Plan. Each Plan Document is an integral part of the Plan and is hereby incorporated by reference and made a part of the Plan.

## SECTION 1. DEFINITIONS AND INTERPRETATION

### 1.1 **Definitions.**

The following terms used herein shall have the respective meanings defined below:

1.1.1 ***Abuse*** means any actual or alleged:

a. sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law); or

b. non-sexual assault, battery, corporal punishment, and other nonsexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever.

For the avoidance of doubt, "***Abuse***" also includes (i) any conduct which would constitute a sexual offense as defined in article one hundred thirty of the New York Penal Law, incest as defined in section 255.27, 255.26 or 255.25 of the New York Penal Law, or the use of such Person in a sexual performance as defined in section 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act; and (ii) sexually-related injuries, including those stemming from the use of photography, video, or digital media.

1.1.2 ***Abuse Action*** means a lawsuit asserting an Abuse Claim against the Diocese, any Additional Debtor or any Contributing Non-Debtor Entity.

1.1.3 ***Abuse Claim*** means any Claim that has been or could be asserted against any Covered Party, Settling Insurer, or Non-Settling Insurer that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the DOB Petition Date, with respect to the Diocese, or the Additional Debtors Petition Date, with respect to the Additional Debtors or the Contributing Non-Debtor Entities, as applicable, including any such Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention, or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory (including any theory based upon public policy) or any act or failure to act by any Covered Party, Settling Insurer, or Non-Settling Insurer or any other Entity for which any Covered Party, Settling Insurer or Non-Settling Insurer is alleged to be responsible. For the avoidance of doubt, "Abuse Claim" includes (a) all Post-Confirmation

Claims, (b) all Unknown Abuse Claims, (c) Child Abuse Claims (or any other Claim or cause of action described in the CVA) and Adult Abuse Claims (or any other Claim or cause of action described in the ASA) against the Diocese or any Covered Party, (d) Inbound Contribution Claims, and (e) any Claim against the Diocese or any Covered Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the applicable Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA or ASA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Effective Date, or (z) a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim. For the avoidance of doubt and notwithstanding anything to the contrary herein, "Abuse Claim" also include Claims for Abuse that are revived pursuant to any law, statute, or binding precedential decision passed or issued on or after the Effective Date. Nothing in this definition shall constitute a waiver of any defense that would otherwise be available under applicable law to any Covered Party, any other Protected Party, the Trust or any other Entity. "Abuse Claim" does not include Extra-Contractual Claims or Coverage Claims (as defined in the Insurance Settlement Agreements) against Settling Insurers or Non-Settling Insurers. For the avoidance of doubt, a Claim based on Abuse solely occurring following the applicable Petition Date is not an Abuse Claim.

1.1.4 ***Abuse Claim Discharge Date*** means the Effective Date, the date on which the Diocese Discharge and Additional Debtors Discharge occurs.

1.1.5 ***Abuse Claim Release Agreement*** means an agreement, in the form attached to the Plan Supplement as Exhibit 2, releasing the Diocese Settling Parties and the Settling Insurers from (a) any and all Abuse Claims and (b) with respect to the Settling Insurers, any and all Barred Claims (including Extra Contractual Claims and Direct Action Claims) held by a Class 6 Claimant or Unknown Abuse Claimant in accordance with the terms of this Plan, to be executed by Class 6 Claimants or Unknown Abuse Claimants as a condition of receiving any Trust Distribution.

1.1.6 ***Abuse Claimant*** means the holder of an Abuse Claim, the estate of a deceased individual who held an Abuse Claim, the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, or the assignee of any of the foregoing, as the case may be. For the avoidance of doubt, the holder of an Unknown Abuse Claim or Post-Statute Filed Abuse Claim is an Abuse Claimant.

1.1.7 ***Abuse Claims Reviewer*** means the Person, including the designee of such Person, who will assess Abuse Claims under the Allocation Protocol.

1.1.8 ***Abuse Claims Settlement Fund*** means a fund established by the Trust from which Trust Distributions will be made to Abuse Claimants on account of their Abuse Claims.

1.1.9 ***Action*** means any lawsuit, proceeding, or other action in a court, or any arbitration.

1.1.10 ***Additional Debtors*** means those Entities listed on Exhibit A of this Plan that have filed for relief under chapter 11 of the Bankruptcy Code, along with such entities' predecessors in interest.

1.1.11 ***Additional Debtors Abuse Claim Bar Date*** means the date that is twenty-one (21) days after the Additional Debtors Petition Date.

1.1.12 ***Additional Debtors Abuse Proof of Claim Form*** means Exhibit D of this Plan.

1.1.13 ***Additional Debtors Bar Date Notice*** means Exhibit B of this Plan.

1.1.14 ***Additional Debtors Bar Date Publication Notice*** means Exhibit C of this Plan.

1.1.15 ***Additional Debtors' Cash Payment*** means that portion of the DOB Entities' Cash Payment funded by the Additional Debtors.

1.1.16 ***Additional Debtors Petition Date*** means the date that the Additional Debtors file their respective petitions for relief under chapter 11 of the Bankruptcy Code.

1.1.17 ***Administrative Claim*** means a Claim against the Diocese or any Additional Debtor for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses, incurred after the applicable Petition Date, of preserving the Estate and operating the business of the Diocese and Additional Debtors; (b) Professional Fee Claims; (c) any Claim specified in section 503(b)(9) of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code; and (e) any Claim arising from or related to any Abuse alleged to have first occurred after the applicable Petition Date but prior to the Effective Date, unless the Diocese or any Additional Debtor elects to treat such Claim as a Pass-Through Claim.

1.1.18 ***Administrative Claims Bar Date*** means the deadline for filing requests for payment of Administrative Claims, as follows: (i) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be sixty (60) days after the Effective Date.

1.1.19 ***Adult Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was 18 years of age or older.

1.1.20 ***Agent*** means any past or present employee; officer; director; managing agent or other agent; shareholder; principal; teacher; staff; member; board member; administrator; priest; deacon; brother, sister, nun, or other member of a religious order; clergy; Person bound by a monastic vow; volunteer; attorney; claim handling administrator; or representatives of a Person, in each case in their capacities as such.

1.1.21 ***AIG Insurers*** means National Union Fire Insurance Company of Pittsburgh, Pa. and certain of its affiliates.

1.1.22 ***Alleged Insured*** has the meaning ascribed to such term in Section 12.5.2.b. of the Plan.

1.1.23 ***Allocation Protocol*** or ***Abuse Claim Allocation Protocol*** means the protocol for allocation of the Abuse Claims Settlement Fund developed by the Committee, attached to the Plan Supplement as Exhibit 1, and incorporated into the Trust Agreement.

1.1.24 ***Allowed*** means, with respect to any Non-Abuse Claim or any portion thereof, a Claim or portion thereof: (a) that has been allowed by a Final Order; (b) which is included on the Diocese's Schedules as not disputed, not contingent and not unliquidated, for which no proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; (c) as to which a proof of claim in a liquidated and non-contingent amount has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed by the terms of this Plan. For the avoidance of doubt, it is expressly understood that Abuse Claims shall not be deemed Allowed or Disallowed by operation of the Plan.

1.1.25 ***ASA*** means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j. The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the Claimant reached eighteen years of age.

1.1.26 ***Avoidance Action*** means any (i) state law fraudulent transfer Claim; (ii) Claim pursuant to sections 502(d), 541-545, 547, 548, 549, 550, 551, 552(b), or 553 of the Bankruptcy Code against any Person; and (iii) Claim pursuant to section 510 N.Y. Business Corporation Law or any law of similar effect.

1.1.27 ***Bank of America*** means Bank of America, N.A.

1.1.28 ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Cases.

1.1.29 ***Bankruptcy Court*** means the United States Bankruptcy Court for the Western District of New York (Buffalo Division) and any Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Cases or the Plan.

1.1.30 ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended.

1.1.20 ***Bar Date*** means, as to a particular Claim, the deadline for filing a Proof of Claim as to such Claim, as established by the Bar Date Order or, with respect to the Additional Debtors, the Additional Debtors Abuse Claim Bar Date.

1.1.21 ***Bar Date Order*** means, collectively (a) that certain *Order Establishing August 14, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner*

*of Notice Thereof* [Docket No. 729] establishing that all prepetition claims, including Abuse Claims, were required to be Filed against the Diocese on or prior to August 14, 2021 at 11:59 p.m. (Eastern time), (b) that certain *Order Establishing Supplemental Bar Date for Adult Claims* as April 17, 2023 [Docket No. 2202] establishing that all prepetition Adult Abuse Claims were required to be filed on or prior to April 17, 2023 at 11:59 p.m. (Eastern Time), and (c) any other Final Orders of the Bankruptcy Court establishing deadlines for the filing of Proofs of Claim and other claims filing procedures and requirements.

1.1.22 ***Barred Claim*** means all Channeled Claims (specifically including, but not limited to, Abuse Claims, Medicare Claims, and Extra-Contractual Claims), Released Insurance Claims, Abuse Actions, Unknown Abuse Claims, Related Insurance Claims, Insurer Contribution Claims, Direct Action Claims, and every other Claim that (a) is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Settling Insurer Policies or (b) is released pursuant to any Insurance Settlement Agreement.

1.1.23 ***BOA Lien*** means any and all security interests or Liens of Bank of America with respect to any property of the Diocese.

1.1.24 ***BOA Secured Debt Documents*** means all loan and security agreements evidencing the secured obligation of the Diocese to Bank of America.

1.1.25 ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday", as defined in Bankruptcy Rule 9006(a), any day on which commercial banks are authorized or required by law to close in Buffalo, New York, and any day on which the Diocese's business offices are closed in observance of a religious holiday.

1.1.26 ***Cabrini Foundation*** means Mother Cabrini Health Foundation.

1.1.27 ***Cabrini Exempt Transfer*** means any transfer of funds or other assets from the Cabrini Foundation to the Diocese or any Additional Debtor, whether directly, indirectly, through an intermediary or not, to the extent such transfer is unrelated to Abuse Claims or consists of (a) grants consistent with those previously made by the Cabrini Foundation in furtherance of its charitable mission; (b) assets transferred subject to a charitable restriction on use pursuant to applicable law; or (c) transfers made in exchange for fair consideration.

1.1.28 ***Cabrini Qualifying Proceeds*** means the proceeds of any transaction or series of transactions resulting in a transfer of funds or other assets of the Cabrini Foundation to the Diocese or any Additional Debtor whether directly, indirectly, through an intermediary or not, other than a Cabrini Exempt Transfer.

1.1.29 ***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

1.1.30 ***Catholic Mutual*** means Catholic Mutual Group.

1.1.31 ***Century*** means Aetna Insurance Company f/k/a CIGNA Property & Casualty Insurance Company and n/k/a ACE Property & Casualty Insurance Company, Century Indemnity, as successor in interest to Insurance Company of North America, as successor in

interest to Indemnity Insurance Company of North America, Federal Insurance Company, Pacific Employers Insurance Company, and U.S. Fire Insurance Company.

1.1.32 ***Channeled Claim*** means (a) any Abuse Claim against the Debtor, Additional Debtors, or Contributing Non-Debtor Entities (but if asserted against a Contributing Non-Debtor Entity, solely to the extent such Abuse Claim is asserted in a Contributing Non-Debtor Entity Abuse Action), (b) any Inbound Contribution Claim, Medicare Claim or Extra-Contractual Claim, or (c) any Claim against any Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy. For the avoidance of doubt (i) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a Claim on either such Person, and (ii) notwithstanding anything to the contrary herein, Channeled Claims do not include any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers; *provided*, *however*, any Claims which assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party. Notwithstanding the foregoing, the following are not Channeled Claims: any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers, provided that any Claims which assert liability against an Excluded Party or Non-Settling Insurer (x) in conjunction with a Protected Party shall in all events be Channeled Claims as to the Protected Party, and (y) as part of a Contributing Non-Debtor Entity Abuse Action shall be Channeled Claims as to any Contributing Non-Debtor Entity Named therein.

1.1.33 ***Channeling Injunction*** means the injunction contained in Section 12.3 of this Plan.

1.1.34 ***Chapter 11*** means Chapter 11 of the Bankruptcy Code.

1.1.35 ***Chapter 11 Cases*** means the chapter 11 case for the Diocese, styled *In re The Diocese of Buffalo, N.Y. 20-10322* and filed on the DOB Petition Date and the chapter 11 cases filed by the Additional Debtors on the Additional Debtors Petition Date.

1.1.36 ***Child Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was less than eighteen (18) years of age.

1.1.37 ***Claim*** means a "claim", as that term is defined in Section 101(5) of the Bankruptcy Code, and includes, without limitation, any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise,

act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

1.1.38 ***Claimant*** means any Person who alleges or alleged any Claim.

1.1.39 ***Claims Objection Deadline*** means the deadline for filing an objection to any Claim, which shall be (i) with respect to any Non-Abuse Claim, including any Claim for damages arising from or relating to the Debtor's rejection of any Executory Contract or Unexpired Lease, the date which is ninety (90) days after the latter of the Effective Date and the date such Claim is Filed; and (ii) with respect to any Unknown Abuse Claim, one hundred eighty (180) days after such Claim is Filed or first submitted to the Diocese provided, however, that the Claims Objection Deadline shall not apply to any Claim filed after the applicable Bar Date; provided further, however, that the Claims Objection Deadline shall not apply to Abuse Claims, which shall be administered on a timeline determined by the Trustee in accordance with the Trust Documents.

1.1.40 ***Class*** means a class or category of Claims as classified and described in Section 2 of this Plan.

1.1.41 ***Class 1 Claim*** means the Secured Claim held by The Bank of America.

1.1.42 ***Class 2 Claim*** means the Secured Claim held by M&T Bank.

1.1.43 ***Class 3 Claim*** means the Secured Claim held by National Fuel.

1.1.44 ***Class 4 Claim*** means a Pass-Through Claim against the Diocese.

1.1.45 ***Class 5 Claim*** means a General Unsecured Claim against the Diocese that is not an Abuse Claim.

1.1.46 ***Class 6 Claim*** means any and all Abuse Claims held by Class 6 Claimants.

1.1.47 ***Class 6 Claimant*** means any holder of an Abuse Claim filed against the Diocese.

1.1.48 ***Class 7 Claim*** means an Inbound Contribution Claim.

1.1.49 ***Class 8 Claim*** means a Claim against the Additional Debtors that is not an Abuse Claim.

1.1.50 ***CMS*** means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

1.1.51 ***CNA*** means The Continental Insurance Company.

1.1.52 ***Committee*** means the Official Committee of Unsecured Creditors appointed in the Diocese's Chapter 11 Case by the United States Trustee pursuant to Section 1102 of the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.1.53 ***Confirmation Date*** means the date the Confirmation Order is entered by the clerk of the Court on the docket of the Diocese's Chater 11 Case.

1.1.54 ***Confirmation Hearing*** means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Diocese seeks entry of the Confirmation Order.

1.1.55 ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

1.1.56 ***Contributing Non-Debtor Entities*** means those Entities listed on Exhibit E to this Plan.

1.1.57 ***Contributing Non-Debtor Entity Abuse Actions*** means the litigation alleging Abuse commenced against a Contributing Non-Debtor Entity.

1.1.58 ***Contributing Non-Debtor Entity Contribution*** means the contributions of Contributing Non-Debtor Entities.

1.1.59 ***Contributing Non-Debtor Entity Claimant*** means a Class 6 Claimant who commenced a Contributing Non-Debtor Entity Abuse Action.

1.1.60 ***Covered Party*** means, collectively, the following Entities: (a) the Diocese; (b) the Additional Debtors; (c) the Contributing Non-Debtor Entities; (d) any other Entity that is a "Named Assured" or "named insured" under the Insurance Policies and all other Entities that may claim to be an "Assured," an "Additional Assured," an "insured," or otherwise entitled to insurance coverage under the Insurance Policies; and (e) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, advisory board members, advisory committee members, employees,

agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and such Entities' respective heirs, executors, estates, and nominees.

1.1.61 ***Court*** means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Chapter 11 Cases, as applicable.

1.1.62 ***Creditor*** means a holder of a Claim.

1.1.63 ***CVA*** means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g. The CVA created a one-year window from August 14, 2019 to August 13, 2020 for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

1.1.64 ***Diocese*** means The Diocese of Buffalo, N.Y., the debtor and debtor in possession in the above-captioned Chapter 11 Case.

1.1.65 ***Diocese Cash Payment*** means that portion of the DOB Entities' Cash Payment funded by the Diocese, which shall be not less than $30,000,000.

1.1.66 ***Diocese Discharge*** means the complete extinguishment of the liability of the Diocese in respect to any Claim or debt, as and to the extent further described in Section 12 of the Plan.

1.1.67 ***Diocese Insurance Coverage Adversary Proceeding*** means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on February 28, 2020, captioned as *The Diocese of Buffalo, N.Y. et al v. The Continental Insurance Company et al.*, Adv. Pro. No. 20-01009.

1.1.68 ***Diocese Settling Parties*** means (a) the Diocese, (b) the Additional Debtors, and (c) Contributing Non-Debtor Entities.

1.1.69 ***Direct Action Claim*** means any Claim by any Person against a Settling Insurer identical or similar to an Abuse Claim, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an Insurer.

1.1.70 ***Disallowed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof: (a) has been disallowed by either a Final Order or pursuant to a settlement or stipulation between the Diocese and the holder of the Claim; or (b)(i) is valued on the Diocese's Schedules at zero dollars ($0) or denominated as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law. With respect to any Abuse Claim, the term "Disallowed" shall not apply.

1.1.71 ***Disclosure Statement*** means the Disclosure Statement to accompany this Plan as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.72 ***Disputed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, all Abuse Claims and Inbound Contribution Claims together with any Non-Abuse Claim that: (i) is not included on the Diocese's Schedules or is reflected on the Schedules as being valued at zero dollars, or as contingent, unliquidated or disputed; or (ii) is the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.1.73 ***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

1.1.74 ***District Court*** means the United States District Court for the Western District of New York.

1.1.75 ***DOB Entities' Cash Payment*** means $150,000,000, to be contributed by or on behalf of the Diocese Settling Entities to the Trust, less that portion of the Contributing Non-Debtor Entity Contribution to be contributed by any Contributing Non-Debtor Entity that has not received an opt-in consent with respect to each of its Contributing Non-Debtor Entity Abuse Actions, and used to fund the payment of Abuse Claims (except Unknown Abuse Claims) and Trust Expenses pursuant to the Plan and the Trust Agreement.

1.1.76 ***DOB Entities' Cash Payment Remainder*** means any remainder of the DOB Entities' Cash Payment after the initial funding of the Trust Reserve in accordance with Section 8.2.1 of the Plan.

1.1.77 ***DOB Petition Date*** means February 28, 2020.

1.1.78 ***DOB Trust Note*** means a promissory note in an original amount equal to the difference, if any, between $150,000,000 and the amount of the DOB Entities' Cash Payment, but not to exceed $25,000,000, to be executed by the Diocese and made payable to the Trust over a period of one year from the Effective Date, in the form attached to the Plan Supplement as Exhibit 6 with interest paid as follows: (i) 0% simple interest per annum on the unpaid balance for the first five months following the Effective Date, (ii) 4% simple interest per annum on the unpaid balance for months 6 to 8 following the Effective Date, and (iii) 9% simple interest per annum on the unpaid balance for months 9-12 following the Effective Date.

1.1.79 ***Donor Restrictions*** means, with respect to any charitable assets in the Diocese's possession or control, any donor-imposed restrictions upon the use of such assets.

1.1.80 ***Effective Date*** means (a) the last Business Day of the month in which (i) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Section 11.1 and (ii) no stay of the Confirmation Order is in effect, *provided, however* that if the first date on which all conditions to effectiveness or of the Plan have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last

Business Day of the immediately following month; or (b) such other date as may be mutually agreed by both Plan Proponents and all Settling Insurers.

1.1.81 ***Enjoined Party*** means all Persons who have held, hold, or may hold Claims or causes of action that have been released or discharged or are subject to exculpation, the Channeling Injunction, or the Settling Insurer Injunction, pursuant to this Plan, the Confirmation Order or any Sale Order(s).

1.1.82 ***Entity*** has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

1.1.83 ***Estate*** means the estates created under Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.1.84 ***Estate Causes of Action*** means those claims or causes of action that the Diocese or the Additional Debtors, and any of their respective successors, assigns, or representatives, may have against each other or any of the Contributing Non-Debtor Entities, and any of their successors, assigns or representatives including, without limitation, any and all claims or causes of action for contractual indemnification, contribution, equitable indemnification, reimbursement, subrogation, breach of contract and other similar rights, any and all claims or causes of action to avoid, invalidate, or recover any transfer of any kind made by the Diocese or any Additional Debtor, on one hand, to any Contributing Non-Debtor Entity, on the other, including under Chapter 5 of the Bankruptcy Code or other applicable non-bankruptcy law, including any state or foreign law governing fraudulent or otherwise avoidable obligations, transfers, or conveyances, any and all claims or causes of action under or based on a theory of veil piercing, alter-ego, vicarious liability, predecessor liability, successor liability, mere continuation, domination and control, mere instrumentality, inadequate capitalization, single business enterprise or common enterprise, equitable subordination or recharacterization.

1.1.85 ***Evaluation Factors*** means the factors to be considered by the Abuse Claims Reviewer in scoring Abuse Claims pursuant to the Allocation Protocol, as described therein.

1.1.86 ***Excluded Party*** means (a) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against the Diocese or a Protected Party, but solely in his or her capacity as an abuser; (b) the Holy See; and (c) any religious order or other Entity that is an affiliate of or associated with the Roman Catholic Church (other than Diocese Settling Parties and their respective Related Persons); provided, however, that neither of the following is an "Excluded Party": (y) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies, and/or (z) any Person who has actually or allegedly acquired or been assigned the right to make a Claim for coverage under any of the Settling Insurer Policies.

1.1.87 ***Exculpated Parties*** means (a) the Diocese; (b) the Additional Debtors; (c) the Contributing Non-Debtor Entities; (d) the Mediators; (e) the Committee and its members in their capacity as members of the Committee; and (f) with respect to the foregoing Entities in clauses (a) through (e), such Entities' current and former officers, directors, fiduciaries (including

members and trustees) and professionals (including attorneys, financial advisors, accountants, investment bankers, and consultants) provided, however, that notwithstanding anything to the contrary herein, no Excluded Party may be an Exculpated Party.

1.1.88 ***Expunged Abuse Claim*** means an Abuse Claim that has been disallowed and expunged by a Final Order of the Bankruptcy Court without leave to amend or refile.

1.1.89 ***Extra-Contractual Claim*** means any Claim against any Settling Insurer Releasee, seeking any type of relief other than coverage or benefits under, or with respect to, the Insurance Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (i) any Insurance Policy; (ii) any Claim allegedly or actually covered under an Insurance Policy; or (iii) the conduct of a Settling Insurer Releasee with respect to (i) or (ii): (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy, including any failure to investigate or to provide a defense or adequate defense; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied or otherwise; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (h) any type of misconduct; or (i) any other act or omission of any type by a Settling Insurer Releasee for which the claimant seeks relief other than coverage or benefits under an Insurance Policy. Extra-Contractual Claims further include all Claims relating to any Settling Insurer Releasees' (x) handling of any Claims under the Insurance Policies, (y) conduct in negotiating the Insurance Settlement Agreements and/or the Plan, and (z) conduct in the settlement of any Claims.

1.1.90 ***File*** or ***Filed*** means (i) properly filed with the clerk of the Court in the Chapter 11 Cases or any appeal therefrom, as reflected on the official docket of the clerk of the Court for the Chapter 11 Cases or such appeal, or the actual delivery of proofs of claim in paper or electronic form to Stretto in accordance with the terms of the Bankruptcy Court's Bankruptcy Court's *Order Establishing August 14, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 729] and *Order Establishing Supplemental Bar Date for Adult Claims* as April 17, 2023 [Docket No. 2202], or (ii) with respect to any Abuse Action, properly filed with the clerk of the court in which the Abuse Action is commenced, as reflected on the official docket of the clerk of that court.

1.1.91 ***Filed Abuse Claim*** means either (a) an Abuse Claim Filed against the Diocese on or prior to April 22, 2025, or (b) an Abuse Action commenced against the Diocese and/or an Additional Debtor prior to April 22, 2025.

1.1.92 ***Filed Abuse Claim Fund*** means that portion of the Abuse Claims Settlement Fund consisting of (a) the DOB Entities' Cash Payment Remainder plus (b) after funding the Unknown Abuse Claim Fund, all other amounts to be distributed to Abuse Claimants by the Trust pursuant to the Plan.

1.1.93 ***Final Order*** means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to each applicable litigant waiving such right and their respective counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion pursuant to Section 502(j) or 1144 of the Bankruptcy Code, or Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, Filed with respect to such order shall not cause such order not to be a Final Order.

1.1.94 ***General Unsecured Claim*** means a Claim of any kind or nature including, without limitation, on account of trade credit, contract, personal injury (other than personal injury arising from or related to Abuse), or arising from the rejection of an executory contract or unexpired lease, that (i) is not secured by property of the Estate or otherwise entitled to treatment as a secured Claim under Section 506 of the Bankruptcy Code; (ii) is not otherwise entitled to priority under Sections 503 or 507 of the Bankruptcy Code; and (iii) is not otherwise an Abuse Claim, Administrative Claim, Professional Fee Claim, Claim for U.S. Trustee Fees, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Pass-Through Claim.

1.1.95 ***Hartford*** means Hartford Accident and Indemnity Company and Hartford Fire Insurance Company and New England Insurance Company.

1.1.96 ***Impaired*** means, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of Section 1124 of the Bankruptcy Code.

1.1.97 ***Inbound Contribution Claim*** means any Claim against the Diocese or Additional Debtors asserting rights of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery, arising from or related to any Abuse Claim.

1.1.98 ***Indemnified Claims*** has the meaning ascribed to such term in Section 8.12.3 of this Plan.

1.1.99 ***Insurance Claim Proceeds*** means any amount recovered by the Trust in respect of the Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Insurance Claims Assignment.

1.1.100 ***Insurance Claims*** means all Claims, causes of action and enforceable rights against a Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Diocese, the Additional Debtors or any other Diocese Settling Party or an Abuse Claimant for any reason related to any Abuse Claim asserted or alleged against the Diocese, Additional Debtors or any other Diocese Settling Party, including those for

(i) indemnity and payment of any such Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Abuse Claims against the Diocese pursuant to any Insurance Policy, (iv) to the extent not otherwise encompassed by section (iii) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Abuse Claims, and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing. The term "Insurance Claim" also includes any Claims or causes of action for reimbursement under any Insurance Policy, but only to the extent such costs are actually paid by the Trust. For avoidance of doubt, the term "Insurance Claim" does not include any Related Insurance Claims against Settling Insurers.

1.1.101 ***Insurance Claims Assignment*** means the transfer or assignment to the Trust of Insurance Claims against Non-Settling Insurers as set forth in Section 8.2.5, herein. For the avoidance of doubt, Related Insurance Claims expressly are excluded from the Insurance Claims Assignment.

1.1.102 ***Insurance Coverage Adversary Proceedings*** means the Diocese Insurance Coverage Adversary Proceeding and the Parish Insurance coverage Adversary Proceeding.

1.1.103 ***Insurance Policy*** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Effective Date, which actually, allegedly, or potentially provides liability coverage for the Diocese and/or any Additional Debtor or Contributing Non-Debtor Entity, or any of their respective Related Persons.

1.1.104 ***Insurance Recovery Sub-Fund*** means that portion of the Abuse Claims Settlement Fund consisting solely of funds representing (i) the Settling Insurers' Cash Contribution, (ii) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, and (iii) any Insurance Claim Proceeds.

1.1.105 ***Insurance Settlement Agreement*** means a settlement agreement among the Diocese and/or applicable Additional Debtors, with the Committee's consent or, following the Effective Date, the consent of the Trust, and a Settling Insurer, consistent with the terms of the Plan, to be included in the Plan Supplement or Filed with the Bankruptcy Court if entered into by the Trust after the Effective Date. The Diocese may not enter into any Insurance Settlement Agreements without the Committee's consent.

1.1.106 ***Insurance Settlement Amount*** means the settlement amount to be paid by each Settling Insurer pursuant to each Insurance Settlement Agreement to which it is a party.

1.1.107 ***Insurer*** means a Person (including all of its Affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy.

1.1.108 ***Insurer Contribution Claim*** means any Claim, including any Inbound Contribution Claim, by an Insurer where such Insurer contends that it has paid more than its

equitable or proportionate share of a Claim, whether expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery.

1.1.109 ***Interests*** means all Claims, "interests" as that term is used in 11 U.S.C. § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York or any other applicable law.

1.1.110 ***Joint Tortfeasor*** means any Person, other than the Diocese or an Additional Debtor, who is alleged to be a joint tortfeasor with the Diocese and/or any Additional Debtor in connection with the Abuse or alleged Abuse giving rise to an Abuse Claim.

1.1.111 ***Lien*** means any "lien" as defined in Section 101(37) of the Bankruptcy Code.

1.1.112 ***M&T Lien*** means any and all security interests or Liens of M&T Bank with respect to any property of the Diocese.

1.1.113 ***M&T Secured Debt Documents*** means all loan and security agreements evidencing the secured obligation of the Diocese to M&T Bank.

1.1.114 ***Mediator*** means those Persons appointed to serve as mediators during the Diocese's Chapter 11 Case, including: the Honorable Michael J. Kaplan, the late Honorable Patrick H. NeMoyer, and the Honorable Melanie Cyganowski.

1.1.115 ***Medicaid*** means medical assistance provided under a state plan approved under title XIX of the Social Security Act.

1.1.116 ***Medicare*** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

1.1.117 ***Medicare Beneficiary*** means an individual who is entitled to Medicare benefits and/or who has been determined to be eligible for Medicaid.

1.1.118 ***Medicare Claim*** means all Claims by CMS, and/or any Agent or successor of CMS charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA or pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

1.1.119 ***Medicare Eligible*** means an Abuse Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

1.1.120 ***MMSEA*** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

1.1.121 ***MSPA*** means 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

1.1.122 ***Neutrality Parties*** means, collectively, (i) the Diocese; (ii) the Additional Debtors; (iii) the Committee; (iv) the Trustee; (v) the Abuse Claimants; (vi) the Abuse Claims Reviewer; and (vii) all Non-Settling Insurers.

1.1.123 ***Non-Abuse Claim*** means any Claim that is not an Abuse Claim or Inbound Contribution Claim.

1.1.124 ***Non-Settling Insurer*** means any Insurer that is not a Settling Insurer.

1.1.125 ***Non-Settling Insurer Policy*** means any Insurance Policy where a Non-Settling Insurer has a duty or obligation to provide coverage to the Diocese and/or any Additional Debtors. For the avoidance of doubt, no Settling Insurer Policy is a Non-Settling Insurer Policy.

1.1.126 ***Non-Tax Priority Claim*** means a Claim against the Diocese, other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

1.1.127 ***Outbound Contribution Claim*** means any Claim or cause of action related to an Abuse Claim that may be asserted by the Diocese or any Additional Debtor against any Person that is not a Protected Party.

1.1.128 ***Parish*** means any past or present Roman Catholic parish located within the geographical territory of the Diocese or subject to the canonical jurisdiction of the Bishop of Buffalo, together with any corporation or other Entity recognized under civil law that holds title to temporal property for, or on behalf of, any such parish.

1.1.129 ***Parish Insurance Coverage Adversary Proceeding*** means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on January 15, 2021, captioned as *All Saints Roman Catholic Church Society of Buffalo et al. v. 21st Century Premier Insurance Company et al.*, Adv. Pro. Case No. 21-01001.

1.1.130 ***Pass-Through Claim*** means any Disputed Non-Abuse Claim which the Diocese elects to treat as a Pass-Through Claim pursuant to the terms of the Plan.

1.1.131 ***Perpetrator(s)*** means the individual natural Person(s) who perpetrated the acts of Abuse or alleged Abuse giving rise to any Abuse Claims.

1.1.132 ***Perpetrator of the Diocese*** means a Perpetrator: (1) who was an Agent of the Diocese or any Additional Debtor when such Person committed an act of Abuse; or (2) for whom or for whose actions the Diocese or any Additional Debtor was otherwise responsible.

1.1.133 ***Person*** means an individual, any corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other

entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other Entity, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and also has the meaning set forth in section 101(41) of the Bankruptcy Code. For the avoidance of doubt, an Entity is a "***Person***", as is each of the Protected Parties.

1.1.134 ***Petition Date*** means the DOB Petition Date and, solely with respect to the Additional Debtors, the Additional Debtors Petition Date.

1.1.135 ***Plan*** means this First Amended Joint Chapter 11 Plan of Reorganization as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.136 ***Plan Documents*** means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

1.1.137 ***Plan Proponents*** means, collectively, the Diocese, the Additional Debtors and the Committee.

1.1.138 ***Plan Supplement*** means one or more supplements to the Plan to be Filed with the Bankruptcy Court in advance of the Confirmation Hearing which shall contain (a) the Allocation Protocol, the form of Class 6 Claim Release Agreement, the form of Trust Agreement, and the Diocese's non-monetary commitments, all in form and substance acceptable to each of the Plan Proponents in their respective sole discretion; (b) a list of all executory contracts and leases designated by the Diocese in its sole discretion to be assumed pursuant to the Plan; and (c) each Insurance Settlement Agreement entered into prior to the Confirmation Date.

1.1.139 ***Post-Confirmation Claim*** means an Abuse Claim against one or more Additional Debtors that is evidenced by a Proof of Claim filed after entry of the Confirmation Order by the Bankruptcy Court and in accordance with the Additional Debtors Abuse Claim Bar Date and Section 12.7 of this Plan; provided, however, a Post-Confirmation Claim shall not include any Claim (a) for which the holder of such Claim is also the holder of a Previously Asserted Abuse Claim, (b) where the holder of such Claim has been provided with a Class 6 Ballot at least 21 days prior to the Voting Deadline, or (c) where the holder of such Claim has cast a Ballot in Class 6 regardless of how or when such Ballot was received.

1.1.140 ***Post-Effective Date Preconditions to Coverage*** means those preconditions and contractual requirements (if any): (a) which the Diocese and Additional Debtors must satisfy under Non-Settling Insurer Policies and applicable law as a predicate to pursing an Insurance Claim, and (b) that the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date.

1.1.141 ***Post-Statute Filed Abuse Claims*** means any Abuse Claim or Abuse Action, including Post-Confirmation Claims, filed before the Additional Debtors Abuse Claim Bar Date, but after August 14, 2022; provided, however, that any Abuse Action that was Filed pursuant

to the New York Adult Survivors Act on or before November 23, 2023 shall not be deemed a Post-Statute Filed Claim. In the case of any amended Abuse Claim, the original date on which the Abuse Claim was Filed shall be deemed the filing date of the claim.

1.1.142 ***Previously Asserted Abuse Claim*** means any Abuse Claim for which the holder of such Abuse Claim has, on or before the entry of the Confirmation Order by the Bankruptcy Court (a) Filed a Proof of Claim in the Chapter 11 Cases, regardless of whether such Claim is an Expunged Abuse Claim, and regardless of whether such Proof of claim was timely filed in accordance with the Bar Date, or (b) Filed an Abuse Action against the Debtor or the Additional Debtors, regardless of whether such Abuse Action has been dismissed or remains pending, and regardless of whether such Abuse Action was timely commenced under applicable state law.

1.1.143 ***Priority Tax Claim*** means any Claim against the Diocese entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.1.144 ***Professional Fee Claim*** means a Claim against the Diocese for compensation for legal or other professional services and related reimbursement of expenses under sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

1.1.145 ***Professionals*** means all professionals employed in the Chapter 11 Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

1.1.146 ***Protected Parties*** means the Diocese, the Additional Debtors, the Settling Insurers, any Settling Insurer Covered Persons and, solely with respect to any Contributing Non-Debtor Entity Abuse Actions, the Contributing Non-Debtor Entities.

1.1.147 ***Purchased Property*** means, pursuant to such Settling Insurer's Insurance Settlement Agreement, any and all right, title, and interest of the Diocese Settling Parties in and to the Settling Insurer Policies and Related Insurance Claims and Coverage Claims.

1.1.148 ***Reduction Amount*** has the meaning ascribed to such term in Section 12.5.2.b. of the Plan.

1.1.149 ***Related Insurance Claims*** means:

a. all Claims, causes of action and enforceable rights against any Settling Insurer Releasee or any Settling Insurer's Related Persons, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Diocese, any Additional Debtor, or any Abuse Claimant for any reason related to any Abuse Claim asserted or alleged against the Diocese or any Additional Debtor, including those for (i) indemnity and payment of any such Abuse Claim; (ii) any Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Settling Insurer to timely compromise and settle any such Abuse Claims against the Diocese or any Additional Debtor pursuant to any Insurance Policy; (iv) to the extent not otherwise

encompassed by section (iii) above, any Settling Insurer's failure or refusal to reasonably settle such Abuse Claims; and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and

b. all Extra-Contractual Claims, against any Settling Insurer Releasee or any Settling Insurer's Related Persons; and

c. all other Claims and causes of action against any Settling Insurer Releasee or any Settling Insurer's Related Persons that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Insurance Policies.

1.1.150 ***Related Person*** means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former shareholders, members, Affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; *provided, however*, that no person or entity shall be a Related Person if such person or entity is an Excluded Party.

1.1.151 ***Release*** means the release of the Protected Parties from all Class 6 Claims.

1.1.152 ***Released Insurance Claims*** means all Claims purchased by the Settling Insurers and/or released by the Diocese Settling Parties pursuant to the Insurance Settlement Agreements.

1.1.153 ***Released Parties*** means (a) the Diocese; (b) the Additional Debtors; (c) the Contributing Non-Debtor Entities, with respect to the Contributing Non-Debtor Entity Abuse Actions; and (d) each Settling Insurer, but only to the extent that such Settling Insurer's liability is under, arises out, relates (directly or indirectly) to, or connects in any way with the Settling Insurer Policies or otherwise from liabilities covered by the Settling Insurer Policies (including for the avoidance of doubt, Related Insurance Claims), *provided, however,* that "***Released Parties***" shall not include: (x) any Perpetrator; or (y) any religious order, diocese, or archdiocese (other than the Diocese), unless such Entity is identified as an Additional Debtor on Exhibit A hereto.

1.1.154 ***Releasing Parties*** has the meaning ascribed to such term in Section 12.10 of the Plan.

1.1.155 ***Residual Assets*** means, after payment of the Diocese Cash Contribution, the Insurance Claims Assignment, and the transfer of Outbound Contribution Claims to the Trust, and except for (i) any Insurance Policies to be retained by the Diocese pursuant to Section 7.5 of this Plan and (ii) the Purchased Property and Released Insurance Claims, all residual property and assets of the Diocese and/or the Estate, including all charitable assets subject to Donor Restrictions, all property to which the Diocese holds legal title only, and all rights with respect to any Avoidance Actions or other causes of action belonging to the Diocese or its Estate.

1.1.156 ***Sale Order*** or ***Sale Orders*** means the order or orders approving any Insurance Settlement Agreements.

1.1.157 ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs Filed by the Diocese in its Chapter 11 Case on April 11, 2020 [Docket No. 228], as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

1.1.158 ***School*** means a past or present Catholic school owned by the Diocese or any Additional Debtors, including those identified as such on Exhibit A attached hereto, but does not include schools owned by any Excluded Party.

1.1.159 ***Secured*** means, with respect to any Claim against the Diocese, a Claim to the extent (i) secured by a Lien on property of the Estate (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Diocese, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code but, with respect to both of the foregoing clauses (i) and (ii), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

1.1.160 ***Settling Insurer*** means Wausau, CNA, AIG Insurers, TNCRRG, SICNY, Catholic Mutual, Travelers Indemnity, Hartford, Century and any other Insurer that is party to an Insurance Settlement Agreement with the consent of the Committee and the Diocese. A Settling Insurer's Related Persons shall receive the benefits and protections afforded to a Settling Insurer under the Plan; provided, however, that if such Related Person is a Related Person by virtue of being a predecessor, successor, and assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

1.1.161 ***Settling Insurer Covered Person*** means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy. For the avoidance of doubt and notwithstanding anything to the contrary herein, no Excluded Party may be a Settling Insurer Covered Person.

1.1.162 ***Settling Insurer Injunction*** means the injunction defined in Section 12.4 of this Plan.

1.1.163 ***Settling Insurer Policy*** means each Insurance Policy (or the coverage part(s) of such policy) that is canceled, settled, or sold back to a Settling Insurer pursuant to the Insurance Settlement Agreement with such Settling Insurer, provided, however, that in no instance will a current Insurance Policy be cancelled, settled, or sold back to a Settling Insurer except to the extent that such Insurance Policy provides coverage for Abuse Claims that will be Channeled Claims or Barred Claims under the Plan.

1.1.164 ***Settling Insurer Releasee*** means each Settling Insurer and each of its or their respective past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the

foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, solely in their respective capacities as such; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, solely in their respective capacities as such, and all Persons acting on behalf of, by, through, or in concert with them. "***Settling Insurer Releasees***" further includes the reinsurers and retrocessionaires of each Settling Insurer, solely in their capacities as such with respect to a Settling Insurer Policy.

1.1.165 ***SICNY*** means Selective Insurance Company of America (formerly known as Exchange Mutual Insurance Company).

1.1.166 ***State Court Counsel*** is defined in the Introduction section above.

1.1.167 ***Stretto*** means Stretto, Inc., in its capacity as the claims and noticing agent for the Diocese.

1.1.168 ***Timely Abuse Action*** means an Abuse Action which, at the time of its commencement, would not be subject to an affirmative defense by the Diocese and/or any Additional Debtor that such Abuse Action (i) is barred by the provisions of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, or (ii) is otherwise untimely pursuant to N.Y. C.P.L.R. § 214 or any other statutes of limitation or repose under applicable law. For avoidance of doubt, the failure of any Abuse Claimant to name the Diocese or Additional Debtor as a defendant in an Abuse Action because of the application of any stay arising pursuant to Section 362 of the Bankruptcy Code shall not prevent any Abuse Action that would otherwise qualify under this definition from being a Timely Abuse Action.

1.1.169 ***TNCRRG*** means The National Catholic Risk Retention Group.

1.1.170 ***Travelers Indemnity*** means St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company (successor in interest to Aetna Casualty and Surety Company), Traveler's Indemnity Company (successor in interest to Gulf Insurance Company), and U.S. Fidelity and Guaranty Company.

1.1.171 ***Trust*** means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of Abuse Claims.

1.1.172 ***Trust Advisory Committee*** shall have the same definition as in the Trust Agreement.

1.1.173 ***Trust Agreement*** or ***Trust Documents*** shall mean the trust agreement establishing and governing the Trust, including the Allocation Protocol, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

1.1.174 ***Trust Assets*** means the Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Plan, Outbound Contribution Claims, and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the

Effective Date, together with any proceeds thereof. For avoidance of doubt, the Trust Assets shall specifically exclude (i) all of the Residual Assets; and (ii) all Settling Insurer Policies, all Claims against Settling Insurers (including, for the avoidance of doubt, Extra-Contractual Claims) settled, sold and/or released pursuant to the Insurance Settlement Agreements, and all other Purchased Property, and Related Insurance Claims.

1.1.175 ***Trust Distribution*** means a Distribution by the Trust, in accordance with the provisions of the Plan, the Allocation Protocol, Trust Documents and the Confirmation Order. For the avoidance of doubt, the payment of Trust Expenses shall not be considered Trust Distributions.

1.1.176 ***Trust Expenses*** means the costs of administering the Trust, including, without limitation, payments to the Trustee and professionals retained to represent the Trust in accordance with the terms of the Trust Agreement. For the avoidance of doubt, Trust Expenses shall not include any fees, costs or expenses of the Diocese or Additional Debtors, except as set forth in Section 6.3 of this Plan.

1.1.177 ***Trust Insurance Settlement*** means any Insurance Settlement Agreement entered into between the Trustee, on behalf of the Trust, and any Non-Settling Insurer, following the occurrence of the Effective Date.

1.1.178 ***Trust Reserve*** means a reserve to be established by the Trustee in accordance with the provisions of the Trust Agreement.

1.1.179 ***Trustee*** means the trustee of the Trust, who initially will be a Person selected by the Committee, subject to approval by the Bankruptcy Court, at the time of a hearing to consider approval of a disclosure statement for the Plan on no less than fourteen (14) days' notice to all parties receiving ECF notice in this Bankruptcy Case, including the Diocese, and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement.

1.1.180 ***Unimpaired*** means, with respect to any Class, that such Class is not Impaired.

1.1.181 ***United States Trustee*** means the Office of the United States Trustee for Region 2, which includes the Western District of New York.

1.1.182 ***Unknown Abuse Claim*** means any Abuse Claim asserted against the Diocese and/or an Additional Debtor, or otherwise presented to the Trust, that alleges Abuse that occurred prior to the applicable Petition Date, and which is not (i) Filed on or before the Additional Debtors Abuse Claim Bar Date or (ii) the subject of a Timely Abuse Action commenced on or before the Additional Debtors Abuse Claim Bar Date.

1.1.183 ***Unknown Abuse Claimant*** means a holder of an Unknown Abuse Claim.

1.1.184 ***Unknown Abuse Claim Fund*** means the fund established by the Trust to be used exclusively for payment of Unknown Abuse Claims, consisting of five percent (5%) of the Insurance Recovery Sub-Fund. Amounts from the Unknown Abuse Claim Fund shall be

distributed to holders of Unknown Abuse Claims by the Trust pursuant to the terms of the Plan, the Allocation Protocol, and Trust Documents.

1.1.185 ***U.S. Trustee Fees*** means all fees and charges assessed against the Estate of the Diocese under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

1.1.186 ***Voting Deadline*** means the deadline established by the Court for claimants entitled to vote on the Plan to submit ballots accepting or rejecting the Plan.

1.1.187 ***Wausau*** means Employers Insurance Company of Wausau (f/k/a Employers Insurance of Wausau A Mutual Company f/k/a Employers Mutual Liability Insurance Company of Wisconsin), Wausau Underwriters Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Insurance Company (f/k/a Farm Bureau Mutual Automobile Insurance Company), and each of their past and present parents, subsidiaries, affiliates, and divisions solely in their respective capacities as such.

## 1.2 **Interpretation: Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Disclosure Statement, and if not defined therein, in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented, or otherwise modified. If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## 1.3 **Exhibits.**

All exhibits to the Plan and any other Plan Documents are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

## 1.4 **Time Periods.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

## SECTION 2. TREATMENT OF CLAIMS

2.1 **Unclassified Claims**.

2.1.1 ***Administrative Claims.*** Administrative Claims are Claims for costs or expenses incurred in the administration of the Chapter 11 Cases of the Diocese and Additional Debtors, which are Allowed pursuant to section 503(b) of the Bankruptcy Code. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as described in this Section 2.1 of the Plan. Except as otherwise provided in the Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under the Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of: (i) the Effective Date; or (ii) the date on which such Claim becomes an Allowed Administrative Claim. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

With respect to any trade Claims arising after the applicable Petition Date representing obligations incurred by the Diocese or the Additional Debtors in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business. As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim: (i) shall be paid by the Diocese or the Additional Debtors as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Administrative Claims representing obligations incurred by the Diocese or the Additional Debtors after the date and time of the entry of the Confirmation Order shall not be subject to application to the Bankruptcy Court and may be paid by the Diocese or the Additional Debtors in the ordinary course of business and without Bankruptcy Court approval.

2.1.2 ***Priority Tax Claims.*** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Diocese, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of: (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Diocese reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium. The holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising from, or in connection with any Priority Tax Claim and any demand for such penalty will be deemed Disallowed by the confirmation of the Plan.

2.1.3 ***Non-Tax Priority Claims.*** Unless the holder of an Allowed Non-Tax Priority Claim and the Diocese agree to a different treatment, on, or as soon as reasonably practicable after, the later of: (i) the Effective Date; or (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Claim, each holder of such an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (a) Cash equal to the unpaid portion of such Allowed Claim or (b) such other less favorable treatment as to which the Diocese and the holder of such Allowed Claim shall have agreed upon in writing. The Trust shall not be responsible for payment of Non-Tax Priority Claims. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

2.1.4 ***Professional Fee Claims.*** In accordance with section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims have not been classified and are treated as described herein. All Professionals or other Persons requesting an award by the Bankruptcy Court of Professional Fee Claims shall: (i) File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date; and (ii) be paid in full, in Cash, by the Diocese or the Additional Debtors, as applicable (a) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (b) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese or the Additional Debtors, as applicable. The Diocese and the Additional Debtors are authorized to pay their Professionals for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, may be paid by the Diocese, after notice and a hearing, or by the Trust from contributions by the Diocese in addition to the amounts payable to Abuse Claimants under the Plan. Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date shall not be paid by the Trust.

2.1.5 ***U.S. Trustee Fees***. U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717. All U.S. Trustee Fees due and owing but not paid prior to the Effective Date shall be paid by the Diocese on the Effective Date. In no event shall the payments made to the Trust pursuant to Sections 2, 5, 7 or 8 of this Plan by any Person other than the Diocese be considered "disbursements" under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930. The Additional Debtors must comply with requirements set forth in the *Case Management Order Establishing Procedures for the Filing and Administration of Prepackaged Chapter 11 Cases by Parishes and Affiliated Entities of the Diocese of Buffalo* [Docket No. ___].

### 2.2 **Classification Specification of Treatment of Claims.**

All Claims, except those described in Section 2.1, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their Impaired or Unimpaired status, pursuant to Sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the respective treatments set forth below. This Plan will not provide any Distribution on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distribution on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Bankruptcy Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be Impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to Section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation of the Plan, and Distributions pursuant to the Plan:

| **Class** | **Designation** | **Impaired** | **Entitled to Vote** |
|---|---|---|---|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of Bank of America | No | Deemed to Accept |
| 2 | Secured Claim of M&T Bank | No | Deemed to Accept |
| 3 | Secured Claim of National Fuel | No | Deemed to Accept |
| 4 | Pass-Through Claims (against the Diocese) | No | Deemed to Accept |
| 5 | General Unsecured Claims (against the Diocese) | No | Deemed to Accept |
| 6 | Abuse Claims (against the Diocese and Additional Debtors) | Yes | Entitled to Vote |
| 7 | Inbound Contribution Claims | Yes | Deemed to Reject |

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| 8 | Ride Through Claims (against the Additional Debtors) | No | Deemed to Accept |

2.3 **Classes of Claims.**

2.3.1 ***Class 1 – Secured Claim of The Bank of America***

**Classification:** Class 1 is composed of the Secured Claim held by Bank of America in connection with the BOA Secured Debt Documents.

**Treatment:** The Diocese is current with respect to all obligations due under the BOA Secured Debt Documents and will continue to pay those obligations in accordance with the terms of the BOA Secured Debt Documents. The Trust shall not be responsible for the payment of the Class 1 Claim. The BOA Lien shall attach to the Residual Assets held by the Diocese, to the same extent, validity, and priority as it attached to the assets of the Diocese prior to the DOB Petition Date, and the Diocese shall assume all obligations under the BOA Secured Debt Documents.

**Voting:** The Class 1 Claim is Unimpaired, and therefore, the holder of the Class 1 Claim is deemed to have accepted the Plan and is not entitled to vote.

2.3.2 ***Class 2 – Secured Claim of M&T Bank***

**Classification:** Class 2 is composed of the Secured Claim held by M&T Bank in connection with the M&T Secured Debt Documents.

**Treatment:** The Diocese is current with respect to all obligations due under the M&T Secured Debt Documents and will continue to pay those obligations in accordance with the terms of the M&T Secured Debt Documents. The Trust shall not be responsible for the payment of the Class 2 Claim. The M&T Lien shall attach to the Residual Assets held by the Diocese, to the same extent, validity, and priority as it attached to the assets of the Diocese prior to the DOB Petition Date, and the Diocese shall assume all obligations under the M&T Secured Debt Documents.

**Voting:** The Class 2 Claim is Unimpaired, and therefore, the holder of the Class 2 Claim is deemed to have accepted the Plan and is not entitled to vote.

2.3.3 ***Class 3 – Secured Claim of National Fuel***

**Classification:** Class 3 is composed of the Secured Claim held by National Fuel in connection with the National Fuel Secured Debt Documents.

**Treatment:** The Diocese is current with respect to all obligations due under the National Fuel Secured Debt Documents and will continue to pay those obligations in accordance with the terms of the National Fuel Secured Debt Documents. The Trust shall not be responsible for the payment of the Class 3 Claim. The National Fuel Lien shall attach to the Residual Assets held by the Diocese, to the same extent, validity, and priority as it attached to the assets of the

Diocese prior to the DOB Petition Date, and the Diocese shall assume all obligations under the National Fuel Secured Debt Documents.

**Voting:** The Class 3 Claim is Unimpaired, and therefore, the holder of the Class 3 Claim is deemed to have accepted the Plan and is not entitled to vote.

2.3.4 ***Class 4 – Pass-Through Claims (against the Diocese).***

**Classification:** Class 4 includes all Pass-Through Claims.

**Treatment:** Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the applicable Petition Date. The Diocese shall designate all Pass-Through Claims no later than sixty (60) days after the Effective Date. The Trust shall not be responsible for the payment of any Pass-Through Claims.

**Voting:** Class 4 Pass-Through Claims are Unimpaired, and therefore, holders of Class 4 Claims are deemed to have accepted the Plan and are not entitled to vote.

2.3.5 ***Class 5 – General Unsecured Claims (against the Diocese).***

**Classification:** Class 5 Claims include all General Unsecured Claims that are Non-Abuse Claims against the Diocese.

**Treatment:** Except to the extent the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment as proposed by the Diocese, the Diocese shall pay each holder of an Allowed General Unsecured Claim, Cash in the Allowed amount of such General Unsecured Claim on the later of (a) the Effective Date, and (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim. The foregoing payment shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim. Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured Claim with prejudice as of the Effective Date in consideration of the Channeling Injunction and Release provisions provided in Section 12 of the Plan.

The Trust shall not be responsible for payment of General Unsecured Claims.

**Voting:** Class 5 General Unsecured Claims are Unimpaired, and therefore, holders of Class 5 Claims are deemed to have accepted the Plan and are not entitled to vote.

2.3.6 ***Class 6 – Abuse Claims.***

**Classification:** Class 6 Claims include all asserted and unasserted Abuse Claims.

**Treatment:**

a. On the Effective Date and subject to the Plan provisions, the Trust shall assume liability for all Abuse Claims against the Diocese and all Additional Debtors, including Post-Statute Filed Abuse Claims, Adult Abuse Claims, and Unknown Abuse Claims, in accordance with and under the Plan and Trust Documents. To the extent a Contributing Non-Debtor Entity makes its contribution, the Trust shall assume liability for all Abuse Claims against that Contributing Non-Debtor Entity. Distributions shall be made to holders of Abuse Claims on a fair and equitable basis, pursuant to and in accordance with the terms of this Plan and the Trust Documents. The Trust will make an initial distribution to holders of Filed Abuse Claims after reserving funds sufficient to fund (i) operational expenses, (ii) costs of litigation with Non-Settling Insurers, (iii) any reserves required under the Plan or Trust Documents, and (v) any other reserves as determined necessary by the Trustee, but not to include any reserves established to provide indemnification to Settling Insurers. Thereafter, the Trust will make additional distributions in accordance with the Trust Documents.

b. Class 6 Claimants shall have their Claims treated in accordance with the Allocation Protocol which shall provide as follows:

(i) Initial Evaluation. The Abuse Claims Reviewer shall consider whether the Abuse Claimant has proven by credible evidence that the Abuse alleged by each Abuse Claimant was perpetrated by a Perpetrator of the Diocese. The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the Trustee if he determines that the Abuse Claimant has not met the burden of proof and will provide the Abuse Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof has been met. The Diocese and any Protected Party (other than a Settling Insurer) must cooperate with any reasonable information or discovery request by an Abuse Claimant that is necessary to respond to the Abuse Claims Reviewer's determination that the Abuse Claimant has not met the burden of proof.

For Post-Statute Filed Abuse Claims and Unknown Abuse Claims, the Abuse Claims Reviewer will additionally determine whether a valid legal excuse for not timely filing an Abuse Claim or Abuse Action pursuant to N.Y. C.P.L.R. § 214 or any other statutes of limitation or repose under applicable law exists. The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the Trustee if he determines that the Abuse Claimant has not met the burden of proof (or, where applicable, has failed to establish the required valid legal excuse), and will provide the Abuse Claimant a reasonable opportunity to provide facts and/or legal basis to establish that

the burden of proof or requirement for a valid legal excuse, as the case may be, has been satisfied. With respect to any Post-Statute Filed Abuse Claims, the Abuse Claims Reviewer may, in his sole discretion, reduce the award to any such Claimant as set forth in the Trust Documents.

(ii) Unknown Abuse Claimants may receive compensation only from the Unknown Abuse Claim Fund.

(iii) Each Claim that has met the burden of proof as set forth in the Initial Evaluation will be evaluated by the Abuse Claims Reviewer. Each Claim will be scored on a scale of up to 200 based on the Evaluation Factors.

The Abuse Claims Reviewer shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes fraud or misrepresentation.

The Abuse Claims Reviewer may grant an additional award of up to 20 points based on the holder of the Filed Abuse Claim's level of participation in public events related to the Abuse Claims, including but not limited to:

a. leadership role in organizations dedicated to helping sexual abuse survivors;

b. active participation in the chapter 11 process;

c. active participation in litigation against the Diocese and/or an Additional Debtor regarding any Abuse Claim; and/or

d. participation in criminal proceedings against a Perpetrator of the Diocese.

The Trustee shall apply a multiple of 1.25 to the award determined by the Abuse Claims Reviewer to any holder of any Abuse Claimant that also filed a complaint against the Diocese, any Additional Debtor, and/or any other Roman Catholic entity on or prior to August 13, 2022.

The Trustee shall apply any further enhancements to the claims awards in accordance with the Trust Documents.

Zero (0) points shall be allocated for any Claim that is not a Filed Abuse Claim. Further, zero (0) points shall be allocated for any Claim that is on account of non-sexual assault, non-sexual battery, non-sexual corporal punishment and any other non-sexual act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation or fraud, fraud in

the inducement, misrepresentation, concealment, unfair practice, loss of consortium or any other non-Abuse tort.

There will be no consideration of an Abuse Claimant's claims against any entity other than the Diocese or Additional Debtors that may be liable to the Abuse Claimant. Any Claims for punitive or exemplary damages will be treated as penalty Claims and will be Disallowed and receive no Distribution under the Plan.

The right of any Class 6 Claimant to a trial by jury or otherwise against the Diocese and/or any Protected Parties is waived and released upon the occurrence of the Effective Date, and any Class 6 Claim they may hold will be solely determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol.

c. The Allocation Protocol was developed by the Committee, in consultation with State Court Counsel and was not developed by, or submitted for the approval of, any of the Protected Parties, nor are the Protected Parties deemed to have accepted or acquiesced in the adoption of the Allocation Protocol. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol in any proceeding; the Settling Insurers take no position on the Allocation Protocol. If a Class 6 Claim is denied payment, in whole or in part, pursuant to the Allocation Protocol, the holder of such Class 6 Claim will have no rights against any of the Protected Parties relating to such Class 6 Claim.

d. None of the Trust, the Diocese or the Additional Debtors shall have any obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence/prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, though the Trust (the Diocese), may do so in their sole and absolute discretion.

e. Nothing in this Plan affects, diminishes, or impairs any Class 6 Claimant's rights against any Joint Tortfeasor, including that Joint Tortfeasor's comparative fault or joint and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a Class 6 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor; *provided*, *however*, that the Channeling Injunction and Settling Insurer Injunction respectively bar any recovery of a Channeled Claim or Barred Claim from any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either (including the Purchased Property).

f. The Diocese and the Additional Debtors are not obligated to take any actions pursuant to this Section, but may cooperate with the Abuse Claims Reviewer and/or the Trustee if reasonably requested by the Abuse Claims Reviewer

and/or the Trustee in connection with the administration of the Allocation Protocol. If the Trustee or the Abuse Claims Reviewer requests information or seeks participation of any kind from the Diocese and/or any Additional Debtor(s) in connection with this Section 2.3.6(f), the parties will confer and negotiate to determine whether such request can be accommodated, subject to an agreement that reasonable fees and expenses of the Diocese and/or the Additional Debtor(s), as applicable, will be reimbursed by the Trust.

g. The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the Trust Distributions Class 6 Claimants receive, or are entitled to receive, based on the Plan, Trust Agreement, or Allocation Protocol. For the avoidance of doubt, (i) determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Additional Debtor's liability or damages for Class 6 Claims; and (ii) under no circumstances shall the Abuse Claims Reviewer's review of a Class 6 Claim affect, or be construed to affect, the rights of a Non-Settling Insurer. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 6 Claims. Any such recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to Section 4.5 of this Plan and the Allocation Protocol.

h. As of the Effective Date of the Plan, and without any further order from the Bankruptcy Court or further action from any party, the Trustee shall fully assume (a) the liability of the Protected Parties for all Channeled Claims, in each case pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan and (b) the liability (if any) of the Settling Insurers for any and all Barred Claims. All Class 6 Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol.

i. No Person, other than the Committee or, following the Effective Date, the Trustee, may: (i) object to any Class 6 Claim; or (ii) challenge the merit, validity, or amount of any Class 6 Claim, except that nothing in the Plan shall prevent the Diocese or any Additional Debtor, or with respect to any Class 6 Claim implicating a Non-Settling Insurer Policy, a Non-Settling Insurer, from asserting any legal or factual defenses that the Diocese, an Additional Debtor, and/or Non-Settling Insurer may have in response to any such Class 6 Claim. Any objection or challenge to a Class 6 Claim pending as of the Effective Date is deemed withdrawn and shall not be refiled. With the exception of the Trustee's objections or challenges to a Class 6 Claim, Class 6 Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration. Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 6 Claim, nor shall anything herein or therein (i) restrict the Diocese or the Additional Debtors from satisfying any Post-Effective Date Preconditions to Coverage; or (ii) modify the terms of any Non-Settling Insurer Policy with respect to any failure of the

Diocese or the Covered Party to satisfy any Post-Effective Date Preconditions to Coverage.

m. No Class 6 Claimant shall receive a Distribution from the Trust until such Class 6 Claimant has executed and delivered to the Trust an Abuse Claim Release Agreement attached to the Plan Supplement as Exhibit 2. Each Class 6 Claimant must release all Claims against the Protected Parties. The Trust must provide copies of all executed Abuse Claim Release Agreements (a) to the Protected Parties, and (b) upon request, to any Joint Tortfeasor that has executed a non-disclosure or confidentiality agreement.

n. Subject to and conditioned upon entry of the Confirmation Order as contemplated in Section 11.1.1 of the Plan, Class 6 Claimants shall automatically and without further action be deemed to irrevocably appoint the Committee as their attorney in fact and to grant to the Committee the authority to negotiate and agree to modifications of the treatment accorded to Class 6 claims, and the Plan generally on their behalf, between the Confirmation Date and the Effective Date, to the extent such modifications are necessary to satisfy or obtain the waiver of any of the conditions precedent to the Plan's Effective Date set forth in Sections 11.1.2 through 11.1.10, subject to the Committee's fiduciary duties to act on behalf of all Creditors.

o. The Allocation Protocol and the terms of this Plan concerning financial treatment of Abuse Claims were developed by the Committee; it was not developed by the Diocese, the Additional Debtors or any Settling Insurer, and the Settling Insurers have not (and shall not be deemed to have) accepted or acquiesced in the adoption of the Allocation Protocol. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol in any proceeding; the Settling Insurers take no position on the Allocation Protocol.

**Voting:** Class 6 Claims are Impaired, and each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 6 Claim is deemed to be Allowed in the amount of $1.00. Those Class 6 Claimants who hold a Contributing Non-Debtor Entity Abuse Claim shall be assigned a ballot providing for the election to opt in to the release for the applicable Contributing Non-Debtor Entity.

2.3.7 ***Class 7 – Inbound Contribution Claims.***

**Classification:** Class 7 Inbound Contribution Claims include any Claim asserted against the Diocese for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:** Class 7 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 7 Claims on account of such Class 7 Claims.

**Voting:** Class 7 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 7 will not vote on the Plan.

2.3.8 ***Class 8 – Ride Through Claims (against the Additional Debtors).***

**Classification:** Class 8 Ride Through Claims (against the Additional Debtors) includes Claims filed against the Additional Debtors that are not Abuse Claims.

**Treatment:** The Additional Debtors will continue to meet their obligations on account of Claims that are not Abuse Claims, in the ordinary course of business and as they become due. All rights, claims, and defenses relating to Claims in Class 8 are fully preserved for each Additional Debtor and each Class 8 Claimant.

**Voting:** Class 8 Ride Through Claims (against the Additional Debtors) are unimpaired, and each holder of a Claim against an Additional Debtor that is not an Abuse Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 8 Claims against the Additional Debtors are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Claims, other than Abuse Claims, against the Additional Debtors.

## SECTION 3. ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1 Impaired Classes Vote.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.2 Presumed Acceptance of the Plan.

Classes 1, 2, 3, 5, and 8 Claims are Unimpaired under the Plan, and the holders of Class 4 Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 3.3 Presumed Rejection of the Plan.

Class 7 Claims will not receive or retain any property under this Plan. Holders of Class 7 Clams are therefore deemed to reject this Plan pursuant to Section 1126(g) of the Bankruptcy Code. Notwithstanding such presumed rejection, holders of Class 7 Claims will be deemed to consent to the injunctions and releases set forth in the Plan unless they File a timely objection to confirmation of the Plan.

3.4 **Voting Classes.**

Class 6 Claims are Impaired, and the holders of Claim in Class 6 are entitled to vote to accept or reject this Plan.

3.5 **Modification of Treatment of Claims.**

The Diocese may modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the consent of the holder of the Claim whose Allowed Claim is being adversely affected, or as Allowed by Bankruptcy Court order prior to the Effective Date.

3.6 **Elimination of Vacant Classes.**

Any Class of Claims that does not have, as of the Confirmation Date, at least one Allowed Claim, or at least one Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

**SECTION 4. ABUSE CLAIMS.**

4.1 **Assessment of Abuse Claims.**

Class 6 Abuse Claims will be assessed and paid in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for determining whether an Abuse Claimant is entitled to a Distribution from the Trust. Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

4.2 **Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol.**

The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect. The determination of Abuse Claimants' qualifications, the estimation of Abuse Claims, and the payment of Trust Distributions shall not be construed as an admission of liability by the Diocese, any Additional Debtor, any defendant in an Abuse Action or alleged Joint Tortfeasor, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, any Additional Debtor, the Trust, or any Non-Settling Insurer. Notwithstanding the discharge of the Diocese and the Additional Debtors, Trust Distributions do not release the liability of Joint Tortfeasors for liability on account of the Abuse Claims; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Protected Party, any Settling Insurer Releasees, any Settling Insurer's Related Person, or the assets or property of either of the foregoing (including Purchased Property).

The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, any Additional Debtor's, or any Non-Settling Insurers' liability for, or damages with respect to, any Abuse Claim. Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of an Abuse Claim or the payment of Distributions shall: (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Diocese or the Additional Debtors, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount in any coverage litigation with any Non-Settling Insurers. The Trust's estimation of Abuse Claims and payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Additional Debtors.

4.3 **Insurance Settlements.**

The Trust shall use reasonable efforts, consistent with the terms of the Trust Agreement and its fiduciary duties to the Trust's beneficiaries, to enter into an Insurance Settlement Agreement with each Non-Settling Insurer.

4.4 **Release and Discharge of Abuse Claims.**

Notwithstanding anything to the contrary herein, each Abuse Claimant must, prior to receiving a Distribution from the Trust, execute and deliver to the Trustee an Abuse Claim Release Agreement in the form attached to the Plan Supplement as Exhibit 2, but recourse on such Abuse Claims prior to their release is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled in accordance with the Plan.

Class 6 Claims will be released and enjoined as against the Diocese and Additional Debtors for any Abuse that may be covered under Non-Settling Insurer Policies upon the occurrence of the Abuse Claim Discharge Date. Class 6 Claimants will expressly reserve their rights against all Persons, including Joint Tortfeasors, which are not Protected Parties; Joint Tortfeasors will remain severally liable with respect to any Class 6 Claims. For the avoidance of doubt, neither the Channeling Injunction nor the Settling Insurer Injunction, nor any release of a Class 6 Claim, shall be subject to any delayed effectiveness with respect to the Settling Insurers.

Any Person that is, or was alleged to be, a Joint Tortfeasor with any of the Diocese Settling Parties in connection with the Abuse that forms the basis of any Class 6 Claim, including a Post-Confirmation Claim shall not be liable for any Protected Party's share of causal liability or fault and no Protected Party shall be liable for the share of causal liability or fault of any other Protected Party or Joint Tortfeasor.

For the avoidance of doubt, with respect to all Non-Abuse Claims, except as otherwise provided in the Plan, the Diocese's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d).

4.5 **<u>Distributions to Abuse Claimants.</u>**

4.5.1 ***Distributions Generally***. Abuse Claimants' recoveries under the Plan shall be limited to their Trust Distributions, if any, under the Allocation Protocol and Trust Documents. Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever from the Diocese, any Additional Debtor or their respective assets, for any Abuse Claims that are Channeled Claims, even if Abuse Claimants are denied a Trust Distribution. Abuse Claimants shall not be entitled to collect any portion of a Channeled Claim or Barred Claim (including, for the avoidance of doubt, an Abuse Claim) from any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) under any circumstance. Distributions may commence only after the earlier of (a) sixty (60) days after the Effective Date or (b) the entry of a final decree in these Chapter 11 Cases, unless the Plan Proponents agree otherwise in writing.

4.5.2 ***Distributions to Class 6 Claimants.*** A Class 6 Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution, will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in the Allocation Protocol and Trust Documents; *provided, however*, no Class 6 Claimant shall receive a Distribution from the Trust until such Class 6 Claimant has executed and delivered to the Trust an Abuse Claim Release Agreement. Any payment on a Class 6 Claim constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

4.6 **<u>Dismissal of Pending Litigation.</u>**

Upon the occurrence of the Abuse Claim Discharge Date, the subject Abuse Claim asserted in any lawsuit against any Protected Party pending in state or federal court shall be dismissed, with prejudice, and without fees and costs being recoverable against any Protected Party and the Diocese or any Protected Party is authorized to file a copy of this Plan and the Confirmation Order, or such other documentation as necessary to effectuate such dismissal.

4.7 **<u>Claim Withdrawal.</u>**

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Diocese Discharge, the Additional Debtors Discharge and all injunctive provisions of this Plan, including the Channeling Injunction to the same extent that such provisions applied to such Abuse Claimant's Abuse Claim prior to its withdrawal.

4.8 **<u>Medicare Procedures.</u>**

None of the Protected Parties will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other

Claim liquidations by the Trust, under the reporting provisions of MSPA or MMSEA. To that end, the following shall apply (and the Confirmation Order shall so provide):

a. The Trust shall register as a "Responsible Reporting Entity" under the reporting provisions of MMSEA.

b. With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

c. The Trust shall confirm whether the holder of any Abuse Claims that occurred after December 5, 1980, is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying the Centers for Medicare and Medicaid on such determination, including, but not limited to, the claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number.

d. The Trust shall timely submit all reports required under MMSEA because of any Abuse Claims that occurred after December 5, 1980, settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, as a Responsible Reporting Entity, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for tracking, assessing, or receiving reports made under MMSEA to determine whether, and, if so, how, to report to such agency or agencies under MMSEA.

e. For Abuse Claims that occurred after December 5, 1980, before remitting funds to any person on account of an Abuse Claim, the Trustee shall obtain (i) a certification that said person (or such person's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSP Provisions, or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim, and (ii) an agreement that such person indemnify the Trust for any such obligations. The failure by one or more holders of Abuse Claims to follow these provisions shall not delay or impair the payment by the Trust to any other holder of an Abuse Claim following these provisions.

f. Upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to perform their own queries to CMS, to the extent they wish to do so, including a report setting forth (I) each Abuse Claimant whom the Trustee has determined to be a Medicare Beneficiary; (II) the amount of (a) all Conditional Payments to each such Medicare Beneficiary, (b) the amount of the reserve maintained by the Trust for each Medicare Claim based upon such Conditional Payments.

g. The Trust shall submit reimbursement to the Centers for Medicare and Medicaid for Medicare Claims relating to Abuse Claims.

h. With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to the Centers for Medicare and Medicaid in full and consider the potential future interests of the Centers for Medicare and Medicaid.

i. Nothing in the Plan shall imply, or constitute an admission, that the Diocese, the Protected Parties, or any Settling Insurer are "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

## SECTION 5. SETTLING INSURERS

### 5.1 **Insurance Settlement Agreements.**

Each Insurance Settlement Agreement is effective and binding upon all Persons who have notice (including constructive notice, to the extent applicable), and any of the foregoing Persons' successors and assigns (including, for the avoidance of doubt, the Trust and the Trustee), upon the entry of the Sale Order approving such Insurance Settlement Agreement and satisfaction of all conditions precedent, including, without limitation, the Sale Order and the Confirmation Order having become Final Orders. Payment to the Trust of a Settling Insurer's Insurance Settlement Amount, and the releases by the Diocese and the Additional Debtors of that Settling Insurer, shall occur and/or be effective according to the terms of such Settling Insurer's Insurance Settlement Agreement. The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan. The rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement and those provisions of the Sale Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order. In the event of a conflict between (a) any Insurance Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the applicable Insurance Settlement Agreement shall control; and/or in the event of a conflict between (y) the Sale Order(s), on the one hand, and (z) the Confirmation Order, on the other, the terms of the Sale Order(s) shall control. For the avoidance of doubt, but without limiting the generality of the foregoing, nothing in this Plan, any Plan Documents, or the Confirmation Order shall limit the parties' respective rights and obligations under the Insurance Settlement Agreements.

### 5.2 **Sale of Settling Insurer Policies Free and Clear.**

Each Settling Insurer shall purchase its Settling Insurer Policy(ies) and Claims related thereto free and clear of all Claims, Interests, and other rights of any nature, whether at law or in equity, pursuant to sections 105 and 363 of the Bankruptcy Code and the terms of such Settling Insurer's Insurance Settlement Agreement.

5.3 **Resolution of Claims Involving Settling Insurers.**

The Confirmation Order shall provide that the Diocese or the Trust, as the case may be, shall dismiss with prejudice their Claims in the Insurance Coverage Adversary Proceedings against each Settling Insurer, and each Settling Insurer shall dismiss with prejudice their respective Claims in the Insurance Coverage Adversary Proceedings against the Diocese, Additional Debtors (or, if applicable, the Trust), in accordance with the terms and timeline(s) set forth in such Settling Insurer's respective Insurance Settlement Agreement. Each side will bear its own fees and costs.

5.4 **The Settling Insurer's Payments.**

Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement, on the terms and within the time detailed therein.

5.5 **Further Assurances; Non-Material Modifications.**

From and after the Effective Date, the Diocese and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements without further order of the Bankruptcy Court and to consummate the sale of the Purchased Property. The Diocese and a Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of such Settling Insurer's Insurance Settlement Agreement, subject to the requirements thereof. The Diocese and the Settling Insurers, with the consent of the Committee, may also make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of the Plan, subject to the requirements of the respective Insurance Settlement Agreements. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under Section 15.1 of the Plan, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such Class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to Section 15.1 of the Plan shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

5.6 **Waiver/Consent.**

In consideration of the releases and Channeling Injunction and other covenants herein, subject to the occurrence of the Effective Date and the satisfaction of the other conditions precedent to the effectiveness of the Insurance Settlement Agreements, each of the Protected Parties: (a) ratifies the releases set forth in the Insurance Settlement Agreements; and (b) ratifies and further consents to the sale of the Purchased Property in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

5.7 **Timing.**

The injunctions, releases, and discharges to which a Settling Insurer is entitled pursuant to its Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order, and the Bankruptcy Code shall become effective pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, which shall not occur prior to the Effective Date.

## SECTION 6. MATTERS RELATING TO NON-SETTLING INSURERS

6.1 **Preservation of Rights and Obligations.**

If an Abuse Claim is liquidated through the Allocation Protocol or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and all coverage defenses. The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by the Diocese Discharge.

The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred. Each Non-Settling Insurer shall be entitled to all rights and defenses as are provided under the terms of its Non-Settling Insurer Policies as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

6.2 **Estimations/Assessments of Abuse Claims Are Not Binding.**

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

a. shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims; or (iv) otherwise prejudice any rights of the Trust, the Diocese, the Additional Debtors, the Settling Insurers, the Non-Settling Insurers, or Class 6 Claimants in any other contexts or forums;

b. shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and Class 6 Claimants in any other contexts and forums; and

c. shall not be deemed to be a determination of liability of the Diocese or any Additional Debtors or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

6.3 **Trust Powers With Respect to Abuse Claims and Non-Settling Insurers.**

Solely as set forth in this Plan, the Allocation Protocol, or the Trust Agreement, any Abuse Claimant or the Trust with consent of an individual Abuse Claimant, may enter into a settlement of an individual Abuse Claim allowed by applicable non-bankruptcy law, and may enter into an arrangement with the Abuse Claimant's counsel, provided such counsel will receive reasonable compensation from any recovery from a Non-Settling Insurer. Notwithstanding the foregoing, the foregoing sentence shall not apply to the Trust's negotiation and entry into a Trust Insurance Settlement.

The Diocese and the Additional Debtors are not obligated to participate in any way in the resolution of any Covered Claims against Non-Settling Insurers. Nothing contained in this Plan requires any of the Diocese Settling Parties to satisfy any of the Non-Settling Insurers' Post-Effective Date Preconditions to Coverage. If any party requests information or seeks participation of any kind from the Diocese and/or any Additional Debtor(s) in connection with the resolution of Covered Claims against the Non-Settling Insurers, including, but not limited to, participating in litigation or settlement of claims, the parties will confer and negotiate to determine whether such request can be accommodated, subject to an agreement that reasonable fees and expenses of the Diocese and/or the Additional Debtor(s), as applicable, will be reimbursed by the Trust or the requesting party.

If the Trust successfully resolves a Covered Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available to pay, and shall increase the amount available to pay, Class 6 Claims, pursuant to the Allocation Protocol.

Upon the due execution and delivery of an Insurance Settlement Agreement, the entry of an order approving an Insurance Settlement Agreement, and the payment to the Trust of the settlement amount due thereunder, a Non-Settling Insurer shall become a Settling Insurer protected by the Channeling Injunction and the Settling Insurer Injunction and become entitled to benefit from all releases executed by Claimants and the other rights and protections of a Settling Insurer under the Plan, the Trust Documents, and the orders approving Insurance Settlement Agreements.

6.4 **Insurance Coverage Adversary Proceedings.**

As of the Effective Date, the Insurance Coverage Adversary Proceedings shall be dismissed without prejudice. For the avoidance of doubt, the Trust and the Abuse Claimants shall have no right to pursue recoveries against any Settling Insurer Releasee or any Settling Insurer's Related Persons.

## SECTION 7. MEANS FOR IMPLEMENTATION OF PLAN

### 7.1 **Plan Implementation.**

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese. All Distributions to be made under the Plan on account of Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan, the Allocation Protocol, and the Trust Agreement. All Class 8 Ride Through Claims against the Additional Debtors will be paid in the ordinary course of business. The Allocation Protocol is attached to the Plan Supplement as Exhibit 1 and is incorporated into the Trust Agreement. The proposed Trust Agreement is attached to the Plan Supplement as Exhibit 3.

### 7.2 **Corporate Action.**

All matters provided under this Plan involving the corporate structure of the Diocese and the Additional Debtors or corporate action to be taken by or required of the Diocese and the Additional Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further approval by the Bankruptcy Court or any other governmental entity. For avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the entry of the Confirmation Order shall constitute such approval.

### 7.3 **Payments Effective Upon Tender.**

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Diocese or any Additional Debtors to the Creditor to whom payment is due. If any Creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Diocese or any Additional Debtor for the benefit of that Creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Trust, the Diocese, or any Additional Debtors failed to pay the tendered payment.

### 7.4 **Agreements, Instruments, and Documents.**

All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan, shall be executed on or before the Effective Date or as soon thereafter as is practicable.

### 7.5 **Continuation of Insurance Policies.**

All Insurance Policies that are *not* Settling Insurer Policies shall, as applicable, either (i) be deemed to be assumed by the Diocese or the Additional Debtors, as applicable, pursuant to Sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Diocese or any Additional Debtor, or (ii) continued in accordance with its terms pursuant to Section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese or any Additional Debtor, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered. To the extent that any or all such Insurance Policies that are not Settling Insurer Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to Sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Diocese, the Additional Debtors, their Estates, and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Insurance Policy. Subject to the terms of the Insurance Settlement Agreements, the Diocese and the Additional Debtors reserve the right to seek rejection of any Insurance Policy or other available relief prior to the Effective Date.

### 7.6 **Bar Date for Professional Fee Claims.**

Each Professional retained or requesting compensation in the Chapter 11 Cases, pursuant to Sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than sixty (60) days after the Effective Date. All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred. Objections to such applications may be Filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such Professional Fee Claims.

### 7.7 **Bar Date for Other Administrative Claims.**

Except as provided for herein or in an order of the Bankruptcy Court, and subject to Section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Diocese or the Additional Debtors, as applicable, requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable against the Diocese, the Additional Debtors, their Estates, or their property without the need for any objection by the Diocese or the Additional Debtors, or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

7.8 **Exit Financing.**

The Diocese may, at its discretion, obtain financing to assist the Diocese in making the Diocese Cash Payment, which includes any loan or other financing arrangement entered into by the Diocese (i) prior to the Effective Date to fund any portion of the DOB Entities' Cash Payment through the DOB Trust Note or (ii) at any time after the Effective Date, without the need to seek Court approval, to fund any portion of the Diocese's payment obligations under the DOB Trust Note (if any). Any security interest or Lien in collateral granted to a lender in connection with such financing shall, on and after the Effective Date, be enforceable against any interest the Diocese may have in such collateral, to the same extent it may have been enforceable against the Diocese prior to the Effective Date.

## SECTION 8. THE TRUST

8.1 **Establishment of Trust.**

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will control the allocation and Distribution of the Abuse Claims Settlement Funds to Abuse Claimants pursuant to the terms of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order. The Trustee shall establish and maintain a reserve for Trust Expenses, which shall be paid pursuant to the terms of the Trust Agreement.

8.2 **Funding of the Trust.**

8.2.1 ***Diocese Cash Payment.*** On or before the Effective Date, the Diocese shall cause the Diocese Cash Payment to be paid to the Trust to establish the Trust Reserve, with any balance to be included in the Abuse Claims Settlement Fund. The Abuse Claims Settlement Fund may be supplemented from time to time from: (i) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement; (ii) any Insurance Claim Proceeds; (iii) proceeds of Outbound Contribution Claims; and (iv) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

8.2.2 ***Additional Debtors' Cash Payment.*** On or before the Effective Date, the Additional Debtors shall cause the Additional Debtors' Cash Payment to be paid to the Trust, as part of the DOB Entities' Cash Payment, for inclusion in the Abuse Claims Settlement Fund.

8.2.3 ***Contributing Non-Debtor Entity Contribution.*** On or before the Effective Date, and in consideration for the releases set forth herein, including the release of the Estate Causes of Action, each Contributing Non-Debtor Entity shall cause its portion of the Contributing Non-Debtor Entity Contribution to either (a) be paid to the Trust, as part of the DOB Entities' Cash Payment, for inclusion in the Abuse Claims Settlement Fund if all Contributing Non-Debtor Entity Claimants who have filed an Abuse Action against a particular Non-Debtor Entity have either (i) returned a ballot that elects to opt-in to the release for the applicable Contributing Non-Debtor Entity or (ii) the underlying Abuse Action is dismissed with prejudice, or (b) paid to

the IOLTA account of Bond Schoeneck & King PLLC and, thereafter paid to the Trust after all Contributing Non-Debtor Entity Claimants who have filed an Abuse Action against a particular Contributing Non-Debtor Entity have either (i) all returned an executed Abuse Claim Release Agreement providing for the release of such Contributing Non-Debtor Entity or (ii) the underlying Abuse Action with respect to the Contributing Non-Debtor Entity Claimant is dismissed with prejudice.

8.2.4 ***Settling Insurers' Cash Contribution.*** Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement, in accordance with the terms thereof.

8.2.5 ***Insurance Claims Assignment.*** Insurance Claims against the Non-Settling Insurers shall be transferred to the Trust as follows:

a. On the Effective Date, and without further action by any party, the Diocese and the Class 6 Claimants will be deemed to have assigned to the Trust their respective rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. Additionally, on the Effective Date, and without further action by any party, each of the Additional Debtors will assign to the Trust the Additional Debtors' rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of the Non-Settling Insurer Policies; or (ii) to entitle any Person to Insurance Coverage other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Class 6 Claim or arising out of any Non-Settling Insurer Policy. To the extent that the Trust pays any self-insured retention in connection with any Class 6 Claim, such amount shall be paid by the Trust. To the extent the Diocese or any of the Additional Debtors pay any self-insured retention, the Trust shall reimburse the Diocese or Additional Debtor for any amounts actually paid by the Diocese or the Additional Debtor prior to making any Trust Distribution for the Abuse Claim for which the Diocese or Additional Debtor paid the self-insured retention. Nothing herein shall obligate any Non-Settling Insurers to advance any self-insured retention, unless otherwise required by applicable law. Likewise, nothing herein shall obligate the Trust, the Diocese or any Additional Debtor to pay any self-insured retention that is not otherwise required by applicable law.

b. For the avoidance of doubt, the Diocese and the Additional Debtors make no representations or warranties, and shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims against Non-Settling Insurers. The Trust shall assume all risks with respect to the litigation, liquidation, and collection of the Insurance Claims against Non-Settling Insurers.

c. For the avoidance of doubt, and notwithstanding anything to the contrary herein, Related Insurance Claims shall not be transferred to the Trust and shall be sold to the Settling Insurers and/or settled and released, in each case as set forth in the Insurance Settlement Agreements.

*8.2.5* ***Outbound Contribution Claims.*** Outbound Contribution Claims shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

*8.2.6* ***Cabrini Foundation.***

a. If, prior to the termination of the Trust, the Cabrini Foundation enters into a settlement agreement or other arrangement whereby the Diocese and/or Additional Debtors receive any Cabrini Qualifying Proceeds, the Diocese and/or Additional Debtors shall transfer such Cabrini Qualifying Proceeds to the Trust as set forth in such settlement agreement or arrangement.

b. If prior to the termination of the Trust, the Diocese and/or Additional Debtors (as applicable) receive any Cabrini Qualifying Proceeds that are not transferred subject to a settlement agreement or other arrangement as contemplated by Section 8.2.6(a) above, the recipient thereof shall hold such Cabrini Qualifying Proceeds in a separate segregated account (which may be an investment account) pending either (i) agreement among the Trustee, the Diocese, and, if applicable, any recipient Additional Debtors, as to the ultimate disposition of such Cabrini Qualifying Proceeds; or (ii) entry of an order by the Court directing such disposition, provided, however, that no party shall apply to the Court for judicial intervention until the parties have attempted to negotiate in good faith for at least six months, and provided further, that in the event of judicial intervention is needed with respect to any issue related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof, all parties shall retain all rights and arguments (if any) they may have related to the Cabrini Foundation its assets, proceeds thereof, or the disposition thereof.

c. Any Cabrini Qualifying Proceeds that are transferred to the Trust pursuant to this Section 8.2.6 shall be included in the Abuse Claims Settlement Fund.

d. For avoidance of doubt, nothing in the Plan shall limit or direct in any way the manner in which the Diocese or any Additional Debtors may receive and utilize any Cabrini Exempt Transfer.

8.3 **<u>Vesting of Trust Assets.</u>**

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of the Trust Assets in accordance with this paragraph, and

subject to the Insurance Settlement Agreements, the Protected Parties shall have no further interest in or with respect to the Trust Assets.

8.4 **Non-Monetary Commitments.**

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Diocese and the Additional Debtors agree that, beginning within thirty (30) days after the Effective Date (unless a different date is provided in the Confirmation Order), they will use reasonable efforts to undertake and observe certain non-monetary commitments as agreed upon with the Committee and set forth as Exhibit 4 to the Plan Supplement.

8.5 **Appointment of the Trustee.**

The initial Trustee will be identified no fewer than ten (10) Business Days before the Confirmation Hearing. The Trustee shall commence serving as the Trustee on the Effective Date; *provided*, *however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

8.6 **Rights and Responsibilities of Trustee.**

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under New York law specified in this Plan and as reflected in the Trust Agreement, including commencing, prosecuting or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to the Trustee's authority to act, the provisions of the Trust Agreement shall control, but shall not take precedence over any contrary provision in any Insurance Settlement Agreement(s) or the Sale Order(s) approving the Insurance Settlement Agreement(s) (in which case, such Sale Order(s) and the applicable Insurance Settlement Agreement(s) shall control and govern in that order). Among other things, the Trustee: (1) shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trust shall make Trust Distributions to the Abuse Claimants. The Trust may pursue Insurance Claims against any Non-Settling Insurers. The Trust shall neither pursue Related Insurance Claims against Settling Insurer Releasees nor any Settling Insurer's Related Persons or take any other action contrary to, or in violation of, the Insurance Settlement Agreements.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as

Trustee; provided, however, that this limitation shall not apply with respect to any Claim or cause of action brought by a Settling Insurer for any actual or alleged breach by the Trustee of such Settling Insurer's Insurance Settlement Agreement or violation by the Trustee of any provision of the Sale Order(s).

8.7 **Trust Advisory Committee.**

The Plan and Trust Agreement provide for the creation of a Trust Advisory Committee, which shall initially consist of those members of the Committee who agree to serve on the Trust Advisory Committee. The members of the Trust Advisory Committee shall have only such limited rights, duties and powers as set forth in the Plan and Trust Agreement. The process for appointing replacement members of the Trust Advisory Committee shall be provided in the Trust Agreement. Upon termination of the Trust, or as otherwise provided in the Trust Agreement, the Trust Advisory Committee shall be deemed dissolved and discharged of and from all further authority, duties, responsibilities, and obligations with respect to or in connection with the Trust and the Chapter 11 Cases.

Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Trust Advisory Committee, the members of the Trust Advisory Committee shall serve without compensation. Reasonable expenses incurred by members of the Trust Advisory Committee may be solely paid by the Trust without need for approval of the Bankruptcy Court. For the avoidance of doubt, none of the Protected Parties shall be responsible for any fees, costs, or expenses associated with the Trust Advisory Committee.

8.8 **Trust Pursuit of Insurance Claims Against Non-Settling Insurers.**

8.8.1 ***Trust's Rights to Pursue Insurance Claims Against Non-Settling Insurers.*** Effective as of the Effective Date, and in accordance with Section 8.2.5 hereof, the Insurance Claims against Non-Settling Insurers are assigned and transferred to the Trust.

a. The Trust shall be entitled to (i) all recoveries on account of Insurance Claims against Non-Settling Insurers that are assigned to the Trust as set forth in the Plan, the Allocation Protocol, and the Confirmation Order, and (ii) to assert and/or assign to any Class 6 Claimant or combination of Class 6 Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable law, any and all Insurance Claims that currently exist or may arise in the future.

b. The Trust shall also have the exclusive right to pursue Insurance Claims against Non-Settling Insurers related to the Diocese's and/or the Additional Debtors' liability for Channeled Claims or the Non-Settling Insurers' obligations in respect of such Channeled Claims. The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. For the avoidance of doubt, the Trust cannot present Non-Settling Insurers with a demand for Coverage or indemnification based upon Distributions made by the Trust to Abuse Claimants.

c. The Trust may act in its own name, or in the name of any Class 6 Claimant, the Diocese and/or an Additional Debtor to enforce any right, title, or interest of any such party in the Insurance Claims against Non-Settling Insurers assigned to the Trust.

d. No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Diocese is in bankruptcy or by any Distribution from the Trust to an Abuse Claimant.

e. The Insurance Claims Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that the failure to defend or a separate agreement between the Diocese and/or an Additional Debtor and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any costs actually paid by the Trust.

f. Any recovery by the Trust on Insurance Claims against Non-Settling Insurers relating to the Diocese's and/or Additional Debtors' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in the Plan, the Trust Agreement, and the Allocation Protocol.

g. The Trust's pursuit of the Covered Parties shall be limited to enforcing specific performance of the Insurance Claims Assignment and any other rights or interests expressly granted to the Trust under the Plan. Neither the Trust nor the Trustee may pursue any Settling Insurer for any Claim released, waived, sold, or relinquished under such Settling Insurer's Insurance Settlement Agreement (including, for the avoidance of doubt, Related Insurance Claims); *provided*, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s).

h. The Trust shall have full access to coverage under the Non-Settling Insurer Policies as permitted by applicable non-bankruptcy law, and the Non-Settling Insurers shall retain any and all rights and defenses to coverage under the Non-Settling Insurer Policies and applicable non-bankruptcy law.

i. The Insurance Claims Assignment does not affect any right of the Diocese, any Additional Debtor or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

8.8.2 ***No Impact on Non-Settling Insurers.*** Nothing in the Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceedings:

a. constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

(i) the liquidated liability (in the aggregate or otherwise) of (a) the Diocese, the Additional Debtors, or the Trust, with respect to any Abuse

Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

(ii) the liability or obligation of the Diocese, Additional Debtors, or Trust with respect to any Abuse Claim;

(iii) that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Diocese and/or the Additional Debtors into the Trust;

(iv) that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Diocese, the Additional Debtors, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder), any other Plan Documents, or any other document or agreement;

(v) that the Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Diocese and the Additional Debtors before the applicable Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vi) that the conduct of the Diocese, the Additional Debtors, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Plan (including the aggregate value or amount of the DOB Entities' Cash Payments), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vii) that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents, and other Plan Documents; and

b. have any *res judicata*, collateral estoppel or other preclusive effect with respect to any matter set forth in Section 8.8.1(a) hereof, or otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto. Without limiting the foregoing, but subject to Sections 8.8.4 below, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not

litigating any issue set forth in Section 8.8.1(a) hereof or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in these Chapter 11 Cases;

c. constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceedings. Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in these Chapter 11 Cases, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended – and shall not be construed – to constitute a finding, conclusion or determination regarding any matter set forth in Section 8.8.2(a) hereof or any other issue for any insurance coverage purpose whatsoever, and the Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d. subject to Section 8.8.4 below, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims. The Neutrality Parties shall retain, and be permitted to assert, in any Action against any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e. subject to Section 8.8.4 below, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Diocese, the Diocese Settling Parties or the Trust (as applicable) in any Action by or against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceedings. To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims. For avoidance of doubt, and notwithstanding anything to the contrary in this Section 8.8.2, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.3 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against any Protected Party.

8.8.3 ***Non-Settling Insurers' Remedies.*** Notwithstanding anything to the contrary in Section 8.8.2, the Non-Settling Insurers' remedies are limited to those available under applicable law and nothing in these Chapter 11 Cases shall enhance any right(s) a Non-Settling Insurer may have under applicable law.

8.8.4 ***Preservation of Plan Provisions.*** For the avoidance of doubt, the provisions of Section 8.8.2 above are intended solely to ensure that the Plan leaves intact and does not alter or affect any rights or interests of the Non-Settling Insurers with respect to the Non-Settling Insurer Policies. Nothing set forth in Section 8.8.2 is intended to, nor shall it, impair the effectiveness of any provision of the Plan, including, without limitation, the Diocese Discharge, the Additional Debtor Discharge, the Channeling Injunction, the Settling Insurer Injunction, or any other release or injunctive provisions set forth in the Plan, as such Plan provisions relate to any rights, Claims, actions, defenses, interests, transactions or other dealings between or among (i) one or more Neutrality Parties who are not Non-Settling Insurers or (ii) any Neutrality Party who is not a Non-Settling Insurer and any Person who is not a Neutrality Party.

8.9 **Investment Powers; Permitted Cash Expenditures.**

All funds held by the Trust shall be held in Cash or invested in short-term highly-liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement. The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement and the Allocation Protocol.

8.10 **Tax Matters.**

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be the same legal entity as the Diocese or the Additional Debtors but only the assignee of certain assets of the Diocese and the Additional Debtors and a representative of the Estates for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and New York law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any. The Trustee may, in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

8.11 **No Recourse Against Trustee.**

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only

against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

None of the Protected Parties shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

8.12 **Indemnification by Trust.**

8.12.1 The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties hereunder. For the avoidance of doubt, the Diocese, the Additional Debtors, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

8.12.2 The Trust shall defend, indemnify, and hold harmless the Protected Parties from any Medicare Claims arising out of or related to an Abuse Claim, and any Claims related to the Trust's obligations under this Plan.

8.12.3 The Trust shall defend, indemnify, and hold harmless each Settling Insurer, as set forth in such Settling Insurer's Insurance Settlement Agreement, from each and every one of the following "***Indemnified Claims***": any and all Channeled Claims, Barred Claims, and Claims otherwise enjoined by or subject to the Settling Insurer Injunction and/or such Settling Insurer's Insurance Settlement Agreement, including all such Claims made by (i) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies; (ii) any Person who has made, will make, or can make (a) a Related Insurance Claim or (b) an Abuse Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Settling Insurer Policies. For the avoidance of doubt, to the extent this Section 8.12.3. (including the subsections immediately below) conflicts or is inconsistent with the provisions of any Insurance Settlement Agreement that relate to Indemnified Claims, the provisions of the applicable Insurance Settlement Agreement(s) will control and govern.

a. Each Settling Insurer shall have the right (but not the obligation) to defend any Indemnified Claims brought or made against such Settling Insurer and shall do so in good faith. Each Settling Insurer (i) may, upon receipt of an Indemnified Claim brought or made against such Settling Insurer, undertake the defense of the Indemnified Claim but is not required to do so and (ii) agrees to notify the Trust as soon as practicable of such Indemnified Claim(s) and of the Settling Insurer's choice of counsel. If a Settling Insurer declines to defend an Indemnified Claim brought or made against it, the Trust shall undertake the defense thereof.

b. The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by each Settling Insurer defending an Indemnified Claim. Such Settling Insurer may settle or otherwise resolve the Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld. The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense, settlement, or other resolution of any Indemnified Claim brought or made against such Settling Insurer shall not diminish the obligations of the Trust to indemnify the Settling Insurer for the Indemnified Claim, as set forth in this Section 8.12.3.

c. The indemnification and hold harmless undertaking set forth in this Section 8.12.3 also extends to and for the benefit of the other Settling Insurer Releasees, all of which are third-party beneficiaries of the terms hereof.

8.13 **Trust Assumption of Liability.**

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets.

Subject to and upon the occurrence of each applicable Abuse Claim Discharge Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Diocese and Additional Debtors and Settling Insurers in respect of all Abuse Claims, which shall become Channeled Claims in accordance with the terms of the Plan. On the Effective Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Settling Insurers in respect of all Barred Claims and Channeled Claims.

8.14 **Termination.**

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

## SECTION 9. GENERAL CLAIMS ADMINISTRATION

9.1 **Objections to Non-Abuse Claims.**

Prior to the Effective Date, the Diocese and the Additional Debtors shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim. From and after the Effective Date, the Diocese and the Additional Debtors will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims; *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Diocese, the Additional Debtors and the Trustee) to object to any Non-Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims will be Filed and served not later than the Claims Objection Deadline. The Claims Objection Deadline or any Bankruptcy Court-approved

extension thereof, may be extended upon request by the Diocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Diocese's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

9.2 **<u>Determination of Claims.</u>**

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in these Chapter 11 Cases, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Non-Abuse Claim, (b) an application to equitably subordinate such Non-Abuse Claim, and (c) an application to otherwise limit recovery with respect to such Non-Abuse Claim, Filed by the Diocese or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Non-Abuse Claim. Any such Non-Abuse Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, or causes of action that the Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157; *provided, however*, that any Claims against the Settling Insurers that the Diocese had, has, may have had, or may in the future have shall be waived and released in accordance with the terms of, and to the extent set forth in, the Settling Insurers' respective Insurance Settlement Agreement.

9.3 **<u>No Distributions Pending Allowance.</u>**

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

9.4 **<u>Claim Estimation.</u>**

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of these Chapter 11 Cases, with respect to Disputed Claims (except Class 6 Claims), the Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant

to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

9.5 **Treatment of Contingent Claims.**

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

9.6 **Controversy Concerning Impairment.**

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy prior to confirmation of this Plan.

9.7 **Treatment of Executory Contracts and Unexpired Leases.**

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Diocese and the Additional Debtors except (i) Insurance Policies that have not been assumed and retained by the Diocese or any Additional Debtors pursuant to Section 7.5, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed and assigned to the Diocese and the Additional Debtors, as applicable, on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed and assigned to the Diocese or Additional Debtors objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Diocese and the Additional Debtors, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Diocese or the Additional Debtors pursuant to Section 7.5. In the event of a dispute regarding the amount of any cure payments, or the ability of the Diocese or the Additional Debtors (as applicable) to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Diocese or the Additional Debtors, or assumed and assigned to the Diocese or the Additional Debtors, the Trust, the Diocese or the Additional Debtors (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed and assigned to the Diocese and the Additional Debtors, and their respective cure costs, are identified in Exhibit 5 to the Plan Supplement. For the avoidance of doubt, none of the Settling Insurer Policies will be assumed or assigned to the Diocese or the Additional Debtors.

## SECTION 10. PROVISIONS GOVERNING DISTRIBUTIONS

10.1 **Disbursing Agents.**

The Diocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust. With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

### 10.2 **Manner of Payment.**

Unless otherwise agreed by the Diocese, Additional Debtors, or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

### 10.3 **Distribution Only to Holders of Allowed Claims.**

Except as otherwise provided in the Plan for Abuse Claims which shall be neither Allowed nor Disallowed under the Plan, Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims. Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents. If necessary in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Diocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount. When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Diocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

### 10.4 **Disputed Claim Reserve.**

Except with respect to Trust Distributions made to Abuse Claimants pursuant to the Allocation Protocol, to the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

### 10.5 **Transmittal of Distributions.**

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 6 Claimants will be made by the Trust, and Distributions to all other Claimants will be made by the Diocese or the Additional Debtors. Distributions to Class 6 Claimants will be made: (i) to the client trust account for the Claimant's attorney of record, as agent for the Abuse Claimant; or (ii) if the Class 6 Claimant does not have an attorney of record, to the mailing address set forth in the Release submitted to the Trust, or to such other address as may be provided to the Trustee by such Claimant in writing. The Trustee shall have no liability to a Class 6 Claimant on account of Distributions made to the client trust account of a Class 6 Claimant's attorney.

### 10.6 **Timing of Distributions.**

Unless otherwise agreed by the Diocese, Additional Debtors, or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the

next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Diocese, Additional Debtor or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Diocese, Additional Debtor, or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Diocese, Additional Debtor, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Diocese or Additional Debtor, as applicable, in accordance with the Plan. Nothing in the Plan requires the Diocese, Additional Debtor, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

10.7 **<u>Time Bar to Check Payments.</u>**

If an instrument delivered as a Distribution to a Claimant by the Diocese or the Trust is not negotiated within one hundred eighty (180) days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before one hundred eighty (180) days after issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after one hundred eighty (180) days following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, and shall return to and revest in the Diocese or to the Trust, as applicable.

10.8 **<u>No Professional Fees or Expenses.</u>**

No professional fees or expenses incurred by a Claimant will be paid by the Diocese or the Trust with respect to any Claim except as specified in the Plan or the Trust Documents.

10.9 **<u>No Interest on Claims.</u>**

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the applicable Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

10.10 **<u>Saturday, Sunday, or Holiday.</u>**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

10.11 **<u>Withholding Taxes.</u>**

The Diocese shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Plan, the Diocese will require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

10.12 **<u>Setoffs and Recoupment.</u>**

Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Diocese may, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Diocese may have against the holder of such Claim.

10.13 **<u>No *De Minimis* Distributions.</u>**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash. Any Distribution of less than $25.00 will be considered *de minimis*, and holders of Allowed Claims that are entitled to Distributions of less than $25.00 will not receive any Distribution. Such funds will remain with, and revest in, the Diocese. For avoidance of doubt, this Section 10.13 shall not apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

10.14 **<u>Prepayment.</u>**

Except as otherwise provided in the Plan or the Confirmation Order, the Diocese shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## SECTION 11. EFFECTIVE DATE

11.1 **<u>Conditions Precedent to Effective Date.</u>**

The Effective Date shall not occur, and the Plan shall not be consummated, unless each of the following conditions are satisfied or waived as set forth in Section 11 of the Plan:

11.1.1 ***Confirmation Order.*** The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents and the Settling Insurers; *provided, however*, that the findings and determinations set forth in the following clauses a. and b. of this Section 11.1.1 (or in any corresponding section or paragraph of the Plan or Confirmation Order) shall not be binding on the Settling Insurers. Neither the Insurance Settlement Agreements nor any of the Settling Insurers' actions or inactions in these Chapter 11 Cases shall be deemed as support for such findings and determinations, the Insurance Claims Assignment and/or the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations, the Insurance Claims Assignment and/or Allocation Protocol in any proceeding. Rather, the Settling Insurers are designated as Protected Parties under the Plan,

and as a result, the Settling Insurers take no position on such findings and determinations, the Insurance Claims Assignment, or the Allocation Protocol. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a. the assignment of Insurance Claims, or alternatively, the retention and prosecution of such Claims following confirmation by the Diocese and the Additional Debtors as contemplated in the Plan is authorized by, and does not conflict with, any provision of the Bankruptcy Code, and is therefore approved;

b. to the extent approval for any transfer contemplated in the Joint Plan may be required under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the Bankruptcy Court has jurisdiction to approve, and does hereby approve such transfers, and no further approval of, or authorization from, the New York State Attorney General or the Supreme Court of the State of New York is required; and

c. all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed.

11.1.2 ***Channeling and Insurer Injunctions.*** The Confirmation Order shall approve and implement the Channeling Injunction set forth in Section 12 of the Plan and shall ratify the Settling Insurer Injunction set forth in the Sale Order(s) approving the respective Insurance Settlement Agreements.

11.1.3 ***Plan Documents.*** Except for the Allocation Protocol, the Plan Documents shall be in form and substance acceptable to the Plan Proponents and the Settling Insurers. The Allocation Protocol shall be in form and substance acceptable to the Plan Proponents.

11.1.4 ***Trust Formation.*** The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee and the Diocese shall have executed the Trust Agreement.

11.1.5 ***The DOB Entities' Cash Payment to the Trust.*** The DOB Entities' Cash Payment, including the DOB Trust Note, as applicable, shall have been contributed to the Trust.

11.1.6 ***Insurance Settlement Agreements.*** Each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties thereto and approved by the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers.

11.1.7 ***The Settling Insurers' Contribution.*** Each Settling Insurer shall have paid to the Trust the Insurance Settlement Amount due under such Settling Insurer's Insurance Settlement Agreement, unless the terms of such Insurance Settlement Agreement expressly provide that the applicable Insurance Settlement Amount will be paid at a later date.

11.1.8 ***Final Orders.*** The Confirmation Order, the order appointing the Trustee, and the Sale Order(s) shall be Final Orders and no stay of any such orders shall then be in effect.

11.1.9 ***Additional Debtors Petition Date and Additional Debtors Bar Date.*** The Additional Debtors shall have filed their chapter 11 petitions prior to the Confirmation Hearing, and the Additional Debtors Bar Date shall have occurred and no more than ten (10) Post-Confirmation Claims shall have been filed.

11.1.10 ***No Material Amendments.*** The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with consent of the Plan Proponents, and any affected Settling Insurers, Additional Debtors and Abuse Claimants, *provided*, *however*, that the Committee shall have authority to negotiate and agree to modifications to the treatment accorded to Class 6 Claims on behalf of all Class 6 Claimants in accordance with Section 2.3.6(n) of the Plan.

11.2 **<u>Waiver of Conditions.</u>**

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of this Plan may be waived only by the mutual written consent of the Diocese and the Committee, provided, however, that each Settling Insurer must consent to a waiver of any conditions affecting such Settling Insurer's rights or obligations, and each of the Additional Debtors must consent to a waiver of any conditions affecting such Additional Debtor's obligations. For avoidance of doubt, none of the Diocese, the Committee, the Settling Insurers, or the Additional Debtors shall have any obligation to waive any of the conditions set forth in Section 11.1, and each may withhold such consent in their sole and absolute discretion.

11.3 **<u>Occurrence of Effective Date.</u>**

If the Effective Date has not occurred within ninety (90) days of the date on which the Confirmation Order becomes a Final Order, the Diocese or the Committee may elect to withdraw the Plan in their respective sole and absolute discretion.

11.4 **<u>Notice of Effective Date.</u>**

The Diocese shall File a notice of Effective Date with the Bankruptcy Court, and serve it on all Creditors and parties in interest, within five (5) Business Days after the occurrence of the Effective Date. Such notice shall include all relevant deadlines put into effect by the occurrence of the Effective Date.

11.5 **<u>Effect of Non-Occurrence of Condition.</u>**

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties; (ii) prejudice in any manner the rights of the Protected Parties or the Trust; (iii) constitute an admission, acknowledgment, offer, or undertaking by the Protected Parties in any respect, including but not limited to, in any proceeding or case against the Diocese or any Additional Debtor; or (iv) be admissible in any

action, proceeding or case against the Protected Parties in any court or other forum. Notwithstanding the foregoing, each Insurance Settlement Agreement (including any release or waiver of Claims in accordance with the terms thereof) shall continue and survive, in accordance with its terms and to the extent set forth therein.

## SECTION 12. EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 12.1 General Injunction and Discharge.

12.1.1 ***General Injunction***. **EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2.3 BELOW, AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, OR AS OTHERWISE PROVIDED IN ANY INSURANCE SETTLEMENT AGREEMENT OR SALE ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE OR ITS AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASES, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

12.1.2 ***Discharge of the Diocese for Non-Abuse Claims.*** Except as otherwise expressly provided in (i) the Plan, (ii) the Confirmation Order or (iii) any Insurance Settlement Agreement or Sale Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy

Code, the Diocese and its Estate will be discharged from all liability for any and all Non-Abuse Claims. For the avoidance of doubt and notwithstanding anything to the contrary herein, neither the Diocese nor its Estate will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

12.1.3 ***Treatment of Non-Abuse Claims against the Additional Debtors.*** The Additional Debtors will continue to be obligated to pay Non-Abuse Claims in the ordinary course of business, as set forth in Section 2.3.8. For the avoidance of doubt and notwithstanding anything to the contrary herein, neither the Additional Debtors, nor their Estates will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

12.2 **Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.**

12.2.1 ***Discharge of the Diocese.*** Except as expressly provided in the Insurance Settlement Agreements, Plan or the Confirmation Order, all consideration distributed under the Plan, and the Diocese's payment to the Trust, shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims of any nature whatsoever against or in the Diocese or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, the Diocese shall be deemed discharged and released, and each holder of a Claim, and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released the Diocese, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of any from any and all Claims, rights and liabilities, and all debts of the kind specified in Section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity or any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is Filed or deemed Filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan, provided, however, with respect to any Abuse Claim arising after the Diocese Petition Date but prior to the Effective Date, such Abuse Claimant shall be entitled to pursue such Abuse Claim to the extent that such Abuse Claim is covered by an Insurance Policy of the Diocese that remains effective, but may only recover with respect to such Abuse Claim to the extent of the proceeds of any such Insurance Policy covering such Abuse Claim.

12.2.2 ***Discharge of Abuse Claims Against the Additional Debtors.*** All consideration distributed under the Plan, and each Additional Debtor's payment to the Trust, shall be in exchange for, and in complete satisfaction, settlement, discharge, termination, and release of, all Abuse Claims against or in the Additional Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, the Additional Debtors shall be deemed discharged and released, and each holder of an Abuse Claim and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged, and released the Additional Debtors, to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Abuse Claims, rights and liabilities, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of

Claim based upon such Abuse Claim is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) an Abuse Claim is Allowed under Section 502 of the Bankruptcy Code, (c) an Abuse Claim is or has become an Expunged Abuse Claim, or (d) the holder of an Abuse Claim is deemed to have accepted the Plan.

12.2.3 ***Injunction of Abuse Claims and Inbound Contribution Claims.*** **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE, THE ADDITIONAL DEBTORS, OR CONTRIBUTING NON-DEBTOR ENTITY (IN CONNECTION WITH A CONTRIBUTING NON-DEBTOR ENTITY ABUSE ACTION), ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY ADDITIONAL DEBTOR, ANY CONTRIBUTING NON-DEBTOR ENTITY (IN CONNECTION WITH A CONTRIBUTING NON-DEBTOR ENTITY ABUSE ACTION), OR ANY OF THEIR AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASES, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE; (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.**

**IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY ADDITIONAL DEBTOR.**

12.2.4 ***Discharge of Abuse Claims and Inbound Contribution Claims.*** Except as otherwise expressly provided in the Confirmation Order, pursuant to Section 1141(d) of the

Bankruptcy Code, the Diocese, Additional Debtors and their Estates will be discharged from: (i) all liability for any and all Inbound Contribution Claims on the Confirmation Date; and (ii) all liability for any and all Abuse Claims upon the occurrence of the Abuse Claim Discharge Date.

The Abuse Claim Discharge Date shall be the Effective Date with respect to any Filed Abuse Claim held by Abuse Claimants, any Abuse Claim held by an Unknown Abuse Claimant, or any Post-Statute Filed Abuse Claim.

12.2.5 ***Preservation of Insurance Claims.*** The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese and the Additional Debtors have filed, or will file, bankruptcy petitions, or by the amount of any Distributions Abuse Claimants receive, or may be entitled to receive, based on the Plan. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims as set forth in the Plan. Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Plan, the Allocation Protocol, and the Trust Documents. Nothing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

12.2.6 ***No Injunction Until Payment***. The Injunction provided in Section 12.2.3 above shall not apply to any Contributing Non-Debtor Entity until such time that such entity's Contributing Non-Debtor Entity Contribution is paid to the Trust.

12.3 **Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.**

**IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR PAYMENTS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:**

**A. ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.**

**B. ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES**

**OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:**

**(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

**(II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

**(III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;**

**(IV) ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

**(A) ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

**(B) ANY OF THE PROTECTED PARTIES; OR**

**(C) THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**(V) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND**

**(VI) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING**

**PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING**.

12.4 **Additional Debtors Payment**

Subject to the terms and conditions of this Section 12.4, in exchange for the settlement and release of Abuse Claims as set forth in this Plan, and the other provisions of this Plan, including, without limitation, the Trust's assumption of the Channeled Claims and Trust Expenses, the Additional Debtors have agreed, and are hereby directed, to make their payment to the Trust (the "Additional Debtors Payment"). The Diocese, or its designee, may serve as paying agent for the collection and payment of the Additional Debtors Payment to the Trust and any such payments shall be deemed disbursement only of the Diocese for purposes of calculating disbursements for payment of fees to the United States Trustee.

The Bankruptcy Court shall retain exclusive jurisdiction any disputes under this Section 12.4. In any contested matter relating to disputes under this Section 12.4, the prevailing party shall be entitled to the payment of its reasonable fees and expenses.

12.5 **Settling Insurer Injunction.**

Pursuant to Sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the Settling Insurers' purchase of the Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code, this Plan hereby incorporates by reference, adopts, and ratifies (and the Confirmation Order shall adopt and ratify) the Settling Insurer Injunction set forth in the Sale Order(s) in all respects.

12.6 **Litigation/Settlement of Certain Claims.**

12.6.1 Except as expressly set forth in Section 12.2.5 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims, to the Trust. For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, the channeling of an Inbound Contribution Claim or Insurance Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.

12.6.2 If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

a. Settling Insurers shall retain their Insurer Contribution Claims; *provided*, *however*, that:

(i) Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer, (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 12.6, or (C) that does not assert an Insurer Contribution Claim against them;

(ii) If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

(iii) If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

b. In any Action, including the Insurance Coverage Adversary Proceedings, involving the Diocese, a Covered Party, or the Trust (collectively, the "Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against a Settling Insurer (that Settling Insurer, a "Contribution Target"), then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that the Contribution Target is liable to pay such Non-Settling Insurer as a result of its Insurer Contribution Claim (the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely. In any Action involving an Alleged Insured or Abuse Claimant against a Non-Settling Insurer, where the Contribution Target is not a party, such Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, establishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. A Contribution Target shall upon request and at the sole expense of the Trust cooperate in good faith with the Diocese and/or the Trust (as applicable) to take reasonable steps to aid the Diocese and/or the Trust in defending against the Insurer Contribution Claim. In the absence of such good faith cooperation by the Contribution Target, the Reduction Amount shall be zero. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Contribution Targets their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.

c. If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against Settling Insurers, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of

the Reduction Amount. If (i) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (ii) such a reduction is not otherwise made as described above, then the Insurer Contribution Claim by the Non-Settling Insurer against the Contribution Target shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Insurer Contribution Claim is Filed. A Contribution Target upon request and at the sole expense of the Trust shall cooperate in good faith with the Diocese and/or the Trust (as applicable) to take reasonable steps to aid the Diocese and/or the Trust in defending against any Insurer Contribution Claim. In the absence of such good faith cooperation by the Contribution Target with respect to the Insurer Contribution Claim against it, the Reduction Amount shall be zero. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Contribution Targets their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.

d. If a Non-Settling Insurer asserts an Insurer Contribution Claim against any Settling Insurer, and the Trust fully indemnifies the Settling Insurer, then the Settling Insurer shall assign its Insurer Contribution Claim to the Trust; or the Trust partially, but not fully, indemnifies the Settling Insurer for such Claim, then the Settling Insurer shall retain its Insurer Contribution Claims and may assert those Claims against the Non-Settling Insurer asserting the Insurer Contribution Claim against the Settling Insurer. Any recovery by the Settling Insurer in excess of the amount necessary to satisfy the Trust's full indemnity obligation plus the Settling Insurer's litigation costs shall be turned over to the Trust.

e. Nothing contained in this Section 12.6.2 shall be interpreted to require the Trust to maintain or allocate a specific reserve for the costs set forth in this Section.

f. The above procedures shall bind, and inure to the benefit of, all Settling Insurers.

12.6.3 To ensure that the reduction contemplated in Section 12.6.2 is accomplished, the Settling Insurers shall be entitled to: (i) notice, within a reasonable time, of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim is asserted against any Settling Insurers, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Section 12.6.2; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the Trust, so that the Settling Insurers can assert Section 12.6.2 as a defense in any Action against any of them for any Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by: (i) the Alleged Insured that is a party to such Action or settlement negotiations; or (ii) if no Alleged Insured

is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (iii) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Abuse Claimant bound by this Plan.

12.6.4 The Trust shall use reasonable efforts to obtain, from all Settling Insurers, agreements with terms similar to those referenced in Section 12.5 hereof.

12.7 **<u>Additional Debtors Abuse Claim Bar Date</u>**

12.7.1 *Establishment of Additional Debtors Abuse Claim Bar Date*

Except for a Previously Asserted Abuse Claim (which, for the avoidance of doubt, will be classified and treated in accordance with Section 2.3.6), all Proofs of Claim for Abuse Claims against Additional Debtors, if any, must be filed by the Additional Debtors Abuse Claim Bar Date. Any Abuse Claim (other than a Previously Asserted Abuse Claim) against an Additional Debtor for which a timely Proof of Claim is not filed shall be automatically disallowed, forever barred from assertion, and unenforceable against the Diocese, the Additional Debtors, their Estates, or their property without the need for any objection by the Additional Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Abuse Claim against an Additional Debtor shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary. For the avoidance of doubt, if and when Unknown Abuse Claims are filed, such Unknown Abuse Claimants shall receive distributions as and to the extent provided in the Trust Allocation Protocol in the Plan Supplement.

For the avoidance of doubt, the fact that an Abuse Claim is or may be time-barred or subject to a statute of limitations or other defense under applicable non-bankruptcy law does not excuse the holder of such Abuse Claim from compliance with the provisions of the Plan, including this Section 12.7 and the Additional Debtors Abuse Claim Bar Date, and the Confirmation Order.

12.7.2 *Treatment of Post-Confirmation Claims*

All Previously Asserted Abuse Claims against the Additional Debtors shall be classified as Abuse Claims and treated in accordance with Section 2.3.6. All Abuse Claims (other than Previously Asserted Abuse Claims) against Additional Debtors that are timely filed in accordance with the Additional Debtors Abuse Claim Bar Date and this Section 12.7 shall be classified as Post-Confirmation Claims and treated in accordance with Section 2.3.6.

As set forth herein, all Abuse Claims (other than Previously Asserted Abuse Claims) against Additional Debtors that are not timely filed in accordance with the Additional Debtors Abuse Claim Bar Date and this Section 12.7 shall be discharged, disallowed, forever barred from assertion, and unenforceable against the Trust, the Trustee, Additional Debtors, the Estates or their property. To the extent any future court finds the foregoing provision to be unenforceable, such claims shall be treated as Unknown Abuse Claims.

12.7.3 *Additional Debtors Abuse Claim Bar Date Procedures*

The following procedures for the filing of proofs of claim shall apply:

(a) Additional Debtors Abuse Proofs of Claim must conform substantially to the Additional Debtors Abuse Proof of Claim Form;

(b) All confidentiality provisions of the Diocese Bar Date Order shall apply to the Additional Debtors Abuse Proofs of Claim, provided, however, that to the extent necessary, the Pastor or other trustees of the Additional Debtors may be designated as Authorized Parties (as defined in the Bar Date Order) upon written consent of the Committee or the Trustee.

(c) Additional Debtors Abuse Proofs of Claim must be submitted (i) electronically through the Claims Agent website for the lead Chapter 11 Case at https://case.stretto.com/dioceseofbuffalo by following instructions for filing proofs of claim electronically; or (ii) Diocese of Buffalo, N.Y. Claims Processing – Additional Debtors Claims, c/o Stretto, 410 Exchange, Ste. 100, Irvine, CA 92602;

(d) Additional Debtors Abuse Proofs of Claim will be deemed filed only when received by the Claims Agent on or before the Additional Debtors Abuse Claim Bar Date;

(e) Additional Debtors Abuse Proofs of Claim must (i) be signed, (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; and (iii) be in the English language; and

(f) Additional Debtors Abuse Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission will not be accepted.

Pursuant to Bankruptcy Rule 3003(c)(2), all holders of Additional Debtors Abuse Claims that fail to comply with this Section 12.7 by timely filing a proof of claim in appropriate form shall not be treated as a Creditor with respect to such Claim for the purpose of distributions.

Parties asserting Abuse Claims against the Additional Debtors that arose before the Additional Debtors Petition Date must use the form substantially in the form of the Additional Debtors Abuse Proof of Claim Form.

Due to the sensitive nature of the information requested in the Additional Debtors Abuse Proof of Claim Form, the Confidentiality Protocol, as stated in the *Order Establishing August 14, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 729]*, and as may be further amended from time to time, shall apply to all Additional Debtors Abuse Proof of Claim Forms submitted by holders of Abuse Claims against the Additional Debtors.

The Claims Agent shall assign to each claimant filing an Additional Debtors Abuse Proof of Claim Form against an Additional Debtor a unique identifier code and shall

maintain a confidential list of the identities of such claimants, their corresponding identifier code, and their respective Additional Debtors Proof of Claim Forms.

The Diocese will cause the Additional Debtors Bar Date Notice and the Additional Debtors Abuse Proof of Claim Form to be posted on the website established by the Claims Agent for these Chapter 11 Cases.

Pursuant to Bankruptcy Rules 2002(l) and 9008, the Diocese and Additional Debtors may publish notice of the Additional Debtors Abuse Claim Bar Date substantially in the form of the Additional Debtors Bar Date Publication Notice.

The Additional Debtors may (a) post a link on its respective website to the Additional Debtors Bar Date Notice and the Additional Debtors Abuse Proof of Claim Form, (b) provide a notice (or a link to the notice) in any bulletins it sends to its parishioners, or (c) provide additional notice to the extent it considers appropriate.

The Diocese, Additional Debtors and the Claims Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Section12.7.

Nothing in this Section 12.7 shall (a) prejudice the right of the Trust, the Trustee, the Diocese, Additional Debtors, or any other Diocese Settling Party or Insurer to dispute or assert offsets or defenses to any Abuse Claim, (b) limit the releases, discharges and injunctions set forth elsewhere in this Plan or the Confirmation Order or (c) be construed to modify, amend or enlarge any Creditor's rights with respect to any Claim.

12.8 **Certain Litigation Matters.**

Upon the occurrence of the Effective Date, the Insurance Coverage Adversary Proceedings shall be deemed withdrawn with prejudice, subject to the Trustee's rights under Section 6.3 of the Plan.

12.9 **Injunction Against Interference with Plan.**

Upon entry of the Confirmation Order, all holders of Claims and all Non-Settling Insurers shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

12.10 **Release by Holders of Channeled Claims.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CHANNELED CLAIMS, INCLUDING CLASS 6 CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE ADDITIONAL DEBTORS, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE ADDITIONAL DEBTORS' BUSINESSES, THE FORMULATION,**

**PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THESE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE. THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH CLASS 6 CLAIMANT WILL RELEASE THE DIOCESE AND THE ADDITIONAL DEBTORS UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM.**

12.11 **Mutual Releases.**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE OR THE ADDITIONAL DEBTORS, OR OBLIGATIONS ARISING UNDER THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE DIOCESE, THE ADDITIONAL DEBTORS, THE COMMITTEE, THE TRUST, AND EACH CLASS 6 CLAIMANT, SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, EXCEPT THAT CLASS 6 CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL, AND SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS AGAINST THE DIOCESE AND THE ADDITIONAL DEBTORS AS OF THE ABUSE CLAIM DISCHARGE DATE; PROVIDED, HOWEVER, THAT PRIOR TO THEIR RELEASE ANY SUCH ABUSE CLAIMS SHALL ONLY BE ENFORCEABLE AND COMPENSABLE PURSUANT TO THE TERMS OF THE PLAN AND PLAN DOCUMENTS. CLASS 6 CLAIMANTS SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST A SETTLING INSURER, SUCH SETTLING INSURER'S RELATED PERSONS, AND ALL OTHER OF SUCH SETTLING INSURER'S SETTLING INSURER RELEASEES ON THE DATE SUCH SETTLING INSURER REMITS ITS INSURANCE SETTLEMENT AMOUNT TO THE TRUST (BUT NO EARLIER THAN THE EFFECTIVE DATE).**

12.12 **Releases in Insurance Settlement Agreements.**

The releases in the Insurance Settlement Agreements are hereby fully incorporated in this Plan by reference and are adopted and ratified in all respects, and the Confirmation Order shall adopt and ratify all such releases. For the avoidance of doubt, but without limiting the generality

of the foregoing, the Confirmation Order shall provide that all such releases are binding upon the Diocese and the Additional Debtors.

12.13 **Exculpation; Limitation of Liability.**

**FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION (I) THAT OCCURRED FROM THE APPLICABLE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THESE CHAPTER 11 CASES OR (II) IN CONNECTION WITH THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE, THE ADDITIONAL DEBTORS AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

12.14 **Gatekeeper Injunction.**

To the extent permitted by law, and subject in all respects to this Section 12, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Cases, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the businesses of the Diocese or any Additional Debtor, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction in this Section 12.14 does not apply to Claims seeking recovery from Non-Settling Insurers.

12.15 **Injunctions in Full Force and Effect.**

All injunctions and/or stays provided for in the Plan, the injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies, free and clear of all Claims pursuant to Sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

12.16 **Release of Estate Causes of Action**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE OR THE ADDITIONAL DEBTORS AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, IN CONSIDERATION FOR THE CONTRIBUTING NON-DEBTOR ENTITY CONTRIBUTION TO THE TRUST, ON THE EFFECTIVE DATE THE DIOCESE AND THE ADDITIONAL DEBTORS EACH, AND COLLECTIVELY, SHALL BE DEEMED TO IRREVOCABLY AND UNCONTITIONALLY FULLY, FINALLY, AND FOREVER WAIVE, RELEASE, ACQUIT, AND DISCHARGE THE CONTRIBUTING NON-DEBTOR ENTITIES, THEIR RESPECTIVE AFFILIATES, AND EACH OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES FROM ANY AND ALL CLAIMS, COUNTERCLAIMS, CROSS-CLAIMS, CAUSES OF ACTION, DISPUTES, SUITS, COSTS, DEBTS, LIABILITIES, OBLIGATIONS, RIGHTS, REMEDIES, DEFENSES, DUES, SETOFFS, RECOUPMENTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, COVENANTS, CONTRACTS, CONTROVERSIES, AGREEMENTS, PROMISES, DAMAGES, JUDGMENTS, EXECUTIONS AND DEMANDS WHATSOEVER, OF WHATEVER KIND OR NATURE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, ACCRUED OR UNACCRUED, CURRENTLY EXISTING OR ARISING IN THE FUTURE, BASED IN WHOLE OR IN ANY PART ON THE ESTATE CAUSES OF ACTION.**

12.17 **Injunctions and Releases Integral.**

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. The currently pending Abuse Actions commenced by Class 6 Claimants, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of this Plan, the releases provided for under the Plan, or the Insurance Settlement Agreements shall be dismissed with prejudice following the Trustee's receipt of an Abuse Claim Release Agreement executed by the applicable Abuse Claimant.

12.18 **Timing.**

The injunctions, releases, and discharges (including the Channeling Injunction and the Settling Insurer Injunction) to which a Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement Agreement, the Plan, the Confirmation Order, Sale Order

approving such Insurance Settlement Agreement, and the Bankruptcy Code shall become effective when (i) the Trust receives payment in full of the Insurance Settlement Amount from the applicable Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and (ii) all other conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement are satisfied or waived in accordance with the terms thereof.

12.19 **Excluded Parties and Non-Settling Insurers.**

Notwithstanding anything to the contrary herein, the following shall apply to Excluded Parties and Non-Settling Insurers: (a) no Claim by an Abuse Claimant against an Excluded Party or Non-Settling Insurer shall be a Channeled Claim, *provided*, *however*, that any Class 6 Claims which assert liability against an Excluded Party or a Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party; (b) no Claim by an Abuse Claimant against an Excluded Party or a Non-Settling Insurer shall be released by operation of this Plan; (c) the injunctions provided in Section 12.1 and 12.2 of this Plan shall not apply to Claims by any Abuse Claimant against an Excluded Party or Non-Settling Insurer; and (d) all Claims by any Abuse Claimant against an Excluded Party or Non-Settling Insurer are preserved and are not affected by the terms of this Plan.

12.20 **Title to and Vesting of Assets.**

All property of the Diocese, the Additional Debtors and their Estates is dealt with by the Plan. Therefore, on the Effective Date, to the fullest extent allowed by Sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Diocese, the Additional Debtors and their Estates, and any property acquired by the Diocese or any Additional Debtor pursuant to this Plan shall revest in the Diocese and any Additional Debtor, as applicable, and such property shall be, except as otherwise expressly provided in this Plan or Confirmation Order, free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except (i) that any charitable assets subject to Donor Restrictions shall remain subject to such Donor Restrictions, and (ii) all Purchased Property shall be settled, sold, and/or released (as applicable) pursuant to the terms of the Insurance Settlement Agreements. On and after the Effective Date, except as otherwise provided in this Plan, the Diocese and the Additional Debtors may operate and manage their affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by Donor Restrictions, the Plan or the Confirmation Order. The Diocese and the Additional Debtors may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

12.21 **Continued Corporate Existence; No Successor Liability.**

12.21.1 The Diocese and the Additional Debtors will continue to exist after the Effective Date as not-for-profit corporation, including pursuant to the special act under New York law, other formation, organizational and governance documents immediately prior to the Effective Date, and having tax-exempt status under 26 U.S.C. § 501(c)(3) and applicable New York law, without prejudice to any right to alter or terminate such existence, or to change any corporate name,

except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

12.22 **Identity of Trustees and Officers of the Diocese.**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees of the Diocese on and after the Effective Date shall be: (i) The Most Reverend Michael W. Fisher, Bishop of Buffalo, President; (ii) Reverend Peter J. Karalus, Vicar General, Vice President; (iii) Richard C. Suchan, Chief Operating Officer; (iv) Melissa Potzler, Chancellor; and (iv) Albert Gress, Chief Financial Officer, all of whom have served in such capacities for the Diocese during these Chapter 11 Cases and each of whom is affiliated with the Universal Roman Catholic Church. The trustees of each of the Additional Debtors shall remain unchanged and will include (i) The Most Reverend Michael W. Fisher, Bishop of the Diocese of Buffalo, (ii) Reverend Peter J. Karalus, Vicar General, (iii) the pastor assigned to such Additional Debtor, and (iv) two lay trustees. For the avoidance of doubt, the foregoing individuals shall not be trustees of the Trust.

12.23 **Authority to Effectuate Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court the Diocese or the Additional Debtors. The Diocese and the Additional Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action it may deem necessary or beneficial to achieve consummation of and carry out the Plan and to effectuate the transactions provided for thereunder.

12.24 **Binding Effect.**

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims. Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese or any Additional Debtor any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the applicable Petition Date.

12.25 **Dissolution of Committee.**

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in these Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during these Chapter 11 Cases, including any orders regarding confidentiality issued by the Bankruptcy Court or Mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

## SECTION 13. [RESERVED]

## SECTION 14. RETENTION OF JURISDICTION

### 14.1 **By the Bankruptcy Court.**

Pursuant to sections 105, 1123(a)(5) and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain: (i) original and exclusive jurisdiction over the Chapter 11 Cases; (ii) original, but not exclusive jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Cases; and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Cases and the Plan, including matters concerning the interpretation, implementation, consummation, execution or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

a. over disputes concerning the ownership of Claims.

b. over disputes concerning the distribution or retention of assets under the Plan.

c. subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims and motions to estimate Claims.

d. over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or the Trust, or property abandoned or transferred by the Diocese, the Estate, or the Trust.

e. over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee.

f. over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

g. over matters related to the removal of the Trustee and the appointment of a successor Trustee.

h. over matters relating to the subordination of Claims.

i. to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

j. to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

k. to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement Agreement (including, without limitation, the Channeling Injunction, Settling Insurer Injunction, and Gatekeeper Injunction).

l. over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

m. over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections thereto.

n. over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code.

o. over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

p. over conflicts and disputes among the Trust, the Diocese, and holders of Claims.

q. over disputes concerning the existence, nature, or scope of the Diocese Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

r. to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Estate or its property, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

s. to enter a final decree closing the Chapter 11 Cases.

t. to enforce all orders previously entered by the Bankruptcy Court (including, without limitation, the Sale Order(s)).

u. over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan.

v. to hear and determine any matters related to the indemnification obligations of the Trust under Section 8.12 and/or any Insurance Settlement Agreements.

### 14.2 **By the District Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1134, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases.

### 14.3 **Actions to Enforce the Plan.**

The Diocese, the Additional Debtors and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement. Any such Action may be commenced by filing a motion with the Bankruptcy Court. On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Diocese and/or any Additional Debtor (except that the Diocese or any Additional Debtor may enforce the terms of the plan as against each other and the Trust) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action.

### 14.4 **Case Closure.**

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Cases upon a motion by the Diocese or any other Person. The Trustee shall not take any actions to unreasonably keep the Chapter 11 Cases open. The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Cases to administer assets of the Trust, including with respect to entering into settlement agreements with Non-Settling Insurers. If the Chapter 11 Cases are reopened upon request of the Trustee, the Trust, the Diocese and the Additional Debtors shall cooperate to assure that no disbursements are made from the Estates during the period when the Chapter 11 Cases are reopened, and the case shall be closed at the earliest possibility.

## SECTION 15. MISCELLANEOUS PROVISIONS

### 15.1 **Amendment or Modification of this Plan.**

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement or relate to the Insurance Settlement Agreements may not be severed, waived, amended, deleted or otherwise modified without the prior written approval of each Settling Insurer affected by such severance, waiver, amendment, deletion or modification.

15.2 **Revocation or Withdrawal of this Plan.**

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan Proponents revoke or withdraw this Plan before the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Diocese or the Committee or to prejudice in any manner the rights of the Diocese or the Committee in any further proceedings.

15.3 **Reports.**

Until a final decree closing the Diocese's Chapter 11 Case is entered, the Diocese shall File all post-confirmation quarterly reports as required by the United States Trustee Operating Guidelines (with a copy served on the Office of the United States Trustee). The first report shall be Filed within thirty (30) days after the end of the quarter in which the Effective Date occurs. The Additional Debtors shall not be required to file monthly operating reports or post-confirmation quarterly reports, pursuant to the *Case Management Order Establishing Procedures for the Filing and Administration of Prepackaged Chapter 11 Cases by Parishes and Affiliated Entities of the Diocese of Buffalo* [Docket No. **_____**].

15.4 **Notices.**

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

To the Diocese:
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
stemes@bsk.com

To the Committee:
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Karen B. Dine, Esq.
Pachulski Stang Ziehl & Jones LLP
1700 Broadway, 36th Floor
New York, New York 10019

Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
kdine@pszjlaw.com

To the Additional Debtors:
William C. Heuer, Esq.
Westerman Ball Ederer Miller Zucker & Sharfstien, LLP
1201 RXR Plaza
Uniondale, New York 11556
Email: wheuer@westermanllp.com

Ford Elsaesser, Esq.
Elsaesser Anderson, Chtd.
519 High Street
Priest River, Idaho 83856
Email: felsaesser@eaidaho.com

To the Trust or the Trustee
At the address set forth in the Trust Agreement

All notices and requests to Persons holding any Claim in any Class shall be sent to them at (i) the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Diocese, Additional Debtors, or Trustee, as applicable, by such Claimant in writing; or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, Additional Debtors, or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in its Chapter 11 Case.

15.5 **Severability.**

If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

15.6 **Validity and Enforceability.**

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms. Should any provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

15.7 **Controlling Documents.**

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Documents (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of the Plan, the Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

15.8 **Filing of Additional Documents.**

At any time before substantial consummation of the Plan, the Diocese, the Additional Debtors, and the Trust, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

15.9 **Direction to a Party.**

On or after the Effective Date, the Trustee, the Diocese, or the Additional Debtors, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

15.10 **Certain Actions.**

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or trustees of the Diocese or the Additional Debtors under the Plan, including: (i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan; and (ii) the adoption, execution and implementation of other matters provided for under the Plan involving the Diocese or the organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or trustees of the Diocese.

15.11 **Waiver of Subordination.**

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the Distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under the Plan.

15.12 **Reservation of Rights.**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

15.13 **Plan as Settlement Communication.**

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and/or causes of action that are disputed as to validity or amount (including Abuse Claims and the Insurance Coverage Adversary Proceedings), except as otherwise provided above. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Rule 408 of the Federal Rule of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity, or invalidity of, any Disputed Claim or cause of action. Except as expressly set forth in the Plan, nothing in the Plan is intended to constitute a compromise of Abuse Claims.

15.14 **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

15.15 **Headings.**

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

15.16 **No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Diocese, the Committee any Additional Debtor, or any Settling Insurer with respect to any matter set forth herein.

[*Signature pages follow*]

Dated: August 21, 2026
Buffalo, New York

Respectfully submitted,

The Diocese of Buffalo, N.Y.

By: */s/ Richard C. Suchan*
Richard C. Suchan, Chief Operating Officer

BOND, SCHOENECK & KING, PLLC

By: */s/ Stephen A. Donato*
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
Office and Post Office Address:
110 West Fayette Street
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

*Counsel to The Diocese of Buffalo, N.Y.*

Dated: August 21, 2026
New York, New York

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: */s/ Peter Starks*
Peter Starks
Committee Chair

PACHULSKI, STANG, ZIEHL & JONES, LLP

By: */s/ Ilan D. Scharf*
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain A.W. Nasatir, Esq.
Karen B. Dine, Esq.

1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com