UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Diocese of Buffalo, N.Y.,<br><br>Debtor. | Case No. 20-10322 (CLB)<br><br>Chapter 11 |
| The Diocese of Buffalo, N.Y.,<br><br>Plaintiff,<br>v.<br><br>The Continental Insurance Company, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-1009 (CLB) |
| All Saints Roman Catholic Church Society of Buffalo, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>21st Century Premier Insurance Company (f/k/a National Ben Franklin Fire Insurance Co. of Pittsburgh, PA), *et al.*,<br><br>Defendants. | Adv. Proc. No. 21-01001 (CLB) |

**DECLARATION OF JAMES R. MURRAY IN SUPPORT OF THE DIOCESE'S MOTION FOR AN ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF**

I, James R. Murray, declare as follows:

1. I am a partner at the law firm Blank Rome LLP, which is Special Insurance Counsel to the Diocese of Buffalo, New York (the "Diocese") in this case. This Declaration is filed in support of the Diocese's *Motion for an Entry of Orders Pursuant to Sections 363 and 105(A) of*

*the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* [ECF No. 5111] (the "Motion").[1]

2. As detailed in the Motion, the Settling Insurers will make settlement payments totaling $176,955,500 for the benefit of Abuse Claimants. In addition, the Settlement Agreements will provide for the Settling Insurers to buy back their respective Subject Insurance Policies free and clear of claims and other interests. These "buy backs" and the settlements, including the amount of payment, are contingent on successful confirmation of a plan of reorganization.

3. The United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court") appointed Blank Rome LLP as Special Insurance Counsel for the Diocese by Order dated June 30, 2020. *See* Order at ECF No. 423, *In re The Diocese of Buffalo, N.Y.,* Case No. 20-10322 (CLB) (Bankr. W.D.N.Y.). I have personally and directly been involved with the insurance coverage litigation and the mediations that led to the settlements that the Agreements memorialize.

4. On February 20, 2020 (the "Petition Date"), the Diocese filed for Chapter 11 bankruptcy. On December 11, 2020, the Court entered an Order establishing August 14, 2021, as the deadline for filing all claims, including Abuse Claims, in this Chapter 11 Case. [ECF No. 729]. Since the Petition Date, approximately 924 individuals have filed proofs of claim in the bankruptcy, asserting that they were sexually abused by priests and, among other claims, the Diocese was negligent in supervising these priests. The Diocese tendered certain proofs of claim to the Settling Insurers (the "Claims").

5. In the bankruptcy proceedings, the Diocese and/or the Additional Debtors initiated adversary proceedings on February 28, 2020 and January 15, 2021 against insurers responsible for

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and/or the Plan.

general liability policies that the Diocese and its parishes contended covered Claims (the "Insurance Coverage Actions").

6. On February 3, 2022, the Court entered an *Order Referring This Adversary Proceeding to Mediation* [ECF No. 1568] (the "Mediation Order"). The Mediation Order appointed Judge Michael J. Kaplan as mediator. Subsequent to the appointment of Judge Michael J. Kaplan, on January 19, 2023, the Court entered an *Order Appointing Patrick H. NeMoyer as Additional Mediator* [ECF No. 2215] to serve as an additional mediator with Judge Kaplan. On January 23, 2025, the Court issued a *Decision and Order* appointing Judge Melanie Cyganowski (ret.) to serve as co-mediator with Judge NeMoyer. [ECF No. 3501].

7. Pursuant to the Court's mediation orders, the Diocese, the Committee, and the Settling Insurers have engaged in years-long extensive mediation efforts to resolve their disputes regarding, among other things, the insurance coverage available to compensate Abuse Claimants.

8. The Settling Insurers raised numerous issues in their coverage position letters. The Settling Insurers contended, and/or reserved rights to contend, that coverage for certain Claims was precluded in whole or in part by certain terms, conditions, limitations, and exclusions under some or all of the policies. The Settling Insurers asserted, among other coverage defenses, that the alleged abuse may not have been caused by an "occurrence" under the policies and/or the Diocese expected or intended the alleged abuse. Specifically, the Settling Insurers contended that certain claims alleged injuries that were not caused by an "occurrence" to the extent the Diocese might have been aware of the alleged perpetrator's propensity for or history of molesting children prior to or during the alleged abuse and failed to take appropriate action in response. Various Settling Insurers asserted that the Diocese may have provided untimely notice of certain claims to the extent that the Diocese was previously aware of the allegations of abuse.

9. Many Settling Insurers contended that some or all of the policies attributed to them are incomplete or missing. For example, one Settling Insurer asserted that it conducted a comprehensive review of available records and was unable to locate any information to support that it provided liability insurance coverage to the Diocese applicable to the matters in dispute here. Many other Settling Insurers raised similar "missing policy" issues. The Settling Insurers also disputed whether certain Claims alleged abuse during their policy periods.

10. The Diocese disputed the Settling Insurers' defenses to coverage. Nonetheless, given the time and financial resources it would take for the parties to litigate the insurance coverage issues to completion, the risks of litigation, and the potential for appeals to further delay recoveries to the estate, it is in the Diocese's best interest to reach a consensual resolution of the disputes regarding the availability of insurance coverage for the Claims.

11. The Settlement Agreements between the Diocese and the Settling Insurers constitute reasonable compromises that benefit survivors. Had settlements not been reached with the Settling Insurers, the Diocese and/or the Trust would have faced the prospect of prolonged litigation and the risk of adverse rulings on one or more of the disputed issues, any one of which could limit coverage, potentially for numerous claims. The Diocese and/or the Trust would likely have had to engage in significant discovery, motion practice, and trial to resolve disputed legal and factual issues, such as whether the Claims alleged abuse that was sufficiently accidental from the perspective of the Diocese to constitute an "occurrence" covered by the policies, or whether the Diocese had prior knowledge of a given Claim or alleged perpetrator. At trial, the Settling Insurers may have attempted to establish that no "occurrence" existed or exclusions barred coverage by contending that, among other things, the Diocese was allegedly aware that priests sexually abused minors, allowed abusers to return from treatment to their parishes without informing the parishioners, and did not have any policies or procedures regarding the supervision of priests.

12. The trial would likely have been followed by post-trial motions and appeals. Any potential appeals would have added further delay and uncertainty. In addition to prolonging the final determination of the coverage issues possibly for years, with no certainty that the Diocese and/or the Trust would prevail, the Diocese and/or the Trust would continue to incur costs throughout the process, which would erode the value of the Diocese's estate and the resources available to pay the Claims. Meanwhile, the Settling Insurers' ability to pay claims could decrease over time if, for example, one or more became insolvent.

13. In light of (1) the costs to the Diocese's estate and/or the Trust to litigate coverage claims against the Settling Insurers, (2) the time it will take to obtain a final determination of the Diocese's rights and claims under the Subject Policies, (3) the risk that the Diocese and/or the Trust may not prevail in litigation of the issues, (4) the likelihood that the losing party would appeal any judgment, thus delaying ultimate resolution of the dispute potentially for years, and (5) the desire to obtain the maximum value promptly from the Settling Insurers under the policies to use toward the resolution of Abuse Claims, the Diocese, in consultation with the Committee, determined that it is in the best interest of the Diocese's estate and its creditors to reach a negotiated resolution and compromise of the dispute between the Diocese and these Settling Insurers.

14. Given the above factors, including the risks of litigation and the interests of the creditors, I believe that the Settlement Agreements providing a total of $176,955,500 are within the range of reasonableness and should be approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 14, 2026

By: /s/ James R. Murray
James R. Murray