**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10322 (CLB) |
| THE DIOCESE OF BUFFALO, NY, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

**MULTIPLE SETTLED INSURERS' REPLY IN SUPPORT OF THE SALE APPROVAL MOTION**

The settled insurers listed in the signature block below (the "Settled Insurers"), respectfully submit this reply brief (this "Reply") in support of the Diocese's *Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Settling Insurers and Granting Related Relief* (the "Approval Motion") [Dkt. No. 5113], and in response to the *Baker Hall d/b/a OLV Human Services Objection To The Diocese's Motion For Entry Of Orders Approving Settlement Agreements And Policy Buybacks With Certain Settling Insurers and Granting Related Relief* (the "OLV Sale Objection") [Dkt. No. 5151].

In support of this Reply, the Settled Insurers respectfully state as follows:

## I. PRELIMINARY STATEMENT

1. A centerpiece of the plan of reorganization is the funding provided by the Settling Insurers in exchange for a buyback of the insurance policies issued to and paid for by the Debtor and Additional Debtors. The complete buyback of these policies is a condition to the insurer settlement and the consummation of the insurer settlement is a condition precedent to the plan. The policies issued to, and paid for by, the Diocese are property of the Debtor's estate and the Debtor can sell estate assets free and clear under section 363 of the Bankruptcy Code.

2. To the extent OLV claims to be an additional insured under the Debtor's policies,—*i.e.*, the alleged Shared Insurance Policies (as defined in the OLV Sale Objection ¶ 6)—its interest is at most that of a third party beneficiary in property of the Debtor. The Second Circuit adopts a broad definition of "interests" in property that are severed by a sale of such estate property under section 363(f), which includes interests of other named or additional insureds under a debtor's insurance policies that are sold in a buyback transaction. The injunctions proposed in the Approval Order do nothing more than enforce the sale under 363(f). OLV's interest, if any, attaches to the proceeds under section 363(e).

3. For these reasons, as further described below, the OLV Sale Objection should be overruled with respect to the Shared Insurance Policies. If, as expected, the handful of Abuse Claims against OLV accept the plan this Court need never address the protections afforded to OLV by section 363(m). This is not an issue for today, however.

## II. <u>BACKGROUND FACTS</u>

### ***The Settlement***

4. At the hearing on November 18, 2025, the Debtor and Committee announced on the record that they had reached settlements with the Debtor's remaining insurers, except for Catholic Mutual and Allianz which settled shortly thereafter. *See* Diocese's Letter (Dkt. No. 4109); Nov. 18, 2025, Hr. Tr. at 7:5-7, 12:9-14. The mediator, Judge Cyganowski, confirmed that the Debtor and Committee agreed and the settlement terms were memorialized in a written document exchanged with the mediator as witness and acknowledged in writing by the Diocese and Committee. By its terms, this document states that the settlement includes, among other things, the buy-back of all policies, both known and unknown, issued by the Settled Insurers, including their affiliates, and a channeling injunction. Further, the settlement was to provide complete finality in full and final resolution of any claims that may be asserted against it in

connection with this bankruptcy case.

***Disclosure Statement Hearing***

5. During the Disclosure Statement approval hearing on August 26, 2026, Diocese counsel stated numerous times on the record that there is no confirmation without approval of the insurer settlement agreements first. Aug. 26, 2026, Hr. Tr. at 63:17-18 (Mr. Donato stated "I said it six time: No deal without settlement agreement approval.").

***Disclosure Statement Reports***

6. The Disclosure Statement confirms that "[t]here is a risk that the [Insurance Settlement Agreements] may not be finalized or approved, ***in which case the Plan could not be confirmed***." Disclosure Statement [Dkt. No. 5077] at 125 (emphasis added). The same is stated upfront in the Executive Summary of the Disclosure Statement, that "[i]f the Settlement Agreements are not approved, then ***the Plan will not be confirmable***." *Id.* at 6 (emphasis added).

## III. ARGUMENT

7. Baker Hall d/b/a OLV Human Services ("OLV") fundamentally misinterprets the applicable law, as addressed in further detail below. The Settled Insurers address each in turn.

### A. The Court Should Approve the Sale of the Subject Insurance Policies Free and Clear of All Interests Under Section 363(f) of The Bankruptcy Code.

8. Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). Under section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of any lien, claim, interest, or encumbrance in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See, e.g.*, *In re Royal Alice Props., LLC*, 637 B.R. 465, 481–82 (Bankr. E.D. La. 2021) (finding sections 363(f)(1) and 363(f)(4) each provided independent basis to allow free and clear sale); *In re Patriot Place, Ltd.*, 486 B.R. 773, 814–15 (Bankr. W.D. Tex. 2013) (noting debtor can sell property if it "can satisfy one of the five different conditions set forth in the subsections of § 363(f)"); *In re Camp Cooley Ltd.*, No. 09-61311, 2011 WL 5037565, at *4 (Bankr. W.D. Tex. Aug. 17, 2011) (allowing sale because "one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied").

9. The sale of policies under the Insurance Settlement Agreement free and clear of all claims and interests and set forth therein is appropriate under section 363(f) of the Bankruptcy Code because, as described in the Approval Motion and reiterated here, one or more of the enumerated conditions set forth in section 363(f)(1)–(5) are satisfied with respect to the sale.

10. <u>*As an initial matter*</u>, the policies may be sold free and clear of other interests under section 363(f)(1), which allows a sale free and clear where applicable law permits a sale free and clear of an interest. The policies being sold back to the Settling Insurers were issued to the Debtor, and any policy rights that might be asserted by OLV only in its capacity as an additional insured under any such Shared Insurance Policies being sold by the Debtor. *See, e.g.*, *Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, 901 F.3d 599, 602 (5th Cir. 2018) (noting "a debtor's

liability insurance policies are generally property of the estate . . . ."); *see also In re W.R. Grace & Co*., 475 B.R. 34, 81 (D. Del. 2012) (quoting *ACandS, Inc. v. Travelers Cas. & Sur. Co*., 435 F.3d 252, 260 (3d Cir.2006)) ("It has long been the rule in th[e] [Third] Circuit that insurance policies are considered part of the property of a bankruptcy estate."); *see also MacArthur Co. v. Johns-Manville Corp*., 837 F.2d 89, 92 (2d Cir. 1988) ("courts have determined that a debtor's insurance policies are property of the estate").

11. The Debtor is the owner of the policies and the Debtor can sell those policies and policy rights back to the Settling Insurers free of any interests of co-insured parties. *See, e.g.*, *In re Dow Corning Corp*., 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) ("nonbankruptcy law permits the 'sale' . . . of an insured's cause of action against its insurer free and clear of any interest of an injured party whose tort claim would trigger the insurer's duty to defend and indemnify the insured"); *In re Johns-Manville Corp*., 837 F.2d at 92–93 (noting that, because numerous courts have determined that a debtor's insurance policies are property of the estate, courts have authorized a settlement of the debtor's insurance coverage claims pursuant to the court's authority to approve the sale of the debtor's property). OLV has not identified any restrictions on such sale under applicable non-bankruptcy law.

12. *Further*, the policies may be sold free and clear of claims and interests pursuant to section 363(f)(4). Under section 363(f)(4), a sale free and clear is appropriate where the interests are subject to a bona fide dispute. *See In re Johns-Manville Corp.*, 837 F.2d at 93 (holding that vendor's alleged rights under certain endorsements for indemnity for asbestos claims was in *bona fide* dispute because a dispute existed as to whether "the product liability limits on the policies to which the vendor endorsements attach have been exhausted"). There are unresolved disputes related to the Settling Insurers' policies, including coverage issues and the validity of Abuse

Claims that occurred during a period when an applicable policy was in effect. Accordingly, there is a bona fide dispute with respect to the claims and interests that makes section 363(f)(4) of the Bankruptcy Code applicable to the sale of Subject Insurance Policies.

13. Because the Approval Motion seeks to sell property of the estate back to Century and the other Settling Insurers, and for the additional reasons set forth below, the OLV Sale Objection should be overruled.

**B. The Proposed Approval Order Does Not Impose Overbroad Releases And Injunctions—Section 363(f) Cuts Off Interests In The Policies, And The Injunction Enforces The Sale**.

14. OLV argues throughout the OLV Sale Objection that the releases and injunctions are too broad,[1] however the Settling Insurers have agreed to nothing less than a complete resolution of any and all claims relating to the policies issued to the Diocese and the Additional Debtors—including any Shared Insurance Policies—that the Settling Insurers are buying back under section 363(f). Anything less and a Settling Insurer may be asked to pay twice for the same Abuse Claim, which is not the agreement that Century or any other Settling Insurer bargained for.

15. Such releases and injunctions, particularly the Settling Insurer Injunction in paragraph 19 of the Approval Order, are based on sections 105(a) and 363(f). *See* Approval Motion [Dkt. No. 5113-2] at 51-52. Similarly, the *Diocese of Rochester* sale orders identified those sections as the statutory predicates for the same relief. *In re Diocese of Rochester*, No. 19-20905-PRW (Bankr. W.D.N.Y.) ("Rochester"), ECF Nos. 3265 ¶ B, 3266 ¶ B.

16. Section 363(f) permits a debtor to sell estate property "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). The Second Circuit applied that authority to an insurance buyback nearly four decades ago. In *MacArthur*, which is controlling

[1] *See*, *e.g.*, OLV Sale Objection ¶¶ 12, 37, 43, 51-52.

here, the Second Circuit held that the bankruptcy court "had authority to issue the injunctive orders" protecting Manville's settling insurers "pursuant to its power to dispose of a debtor's property free and clear of third-party interests and to channel such interests to the proceeds of the disposition." *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 90 (2d Cir. 1988); *see also id.* at 92-93. The Approval Order does the same thing here. The Purchased Property is sold free and clear of the interests of other named or additional insureds, and abuse claimants' rights attach to the proceeds in the trust. The Additional Debtors' rights in the Purchased Property, which will be property of their own estates, is similarly sold. The *Diocese of Rochester* court approved the same structure, vesting Settling Insurers with "all right, title, and interest of the Diocese and the DOR Signatories" in the Purchased Property, free and clear of the interests of "other named or additional insureds, or those with direct action rights against the Purchased Property." *Rochester*, ECF No. 3266 ¶ P.

17. The injunction does not itself cut off anyone's rights. The sale does that, and the injunction "merely prevent[s] third parties whose claims have been cut off by a Section 363(f) sale from asserting such claims." *Rochester*, ECF No. 3199. Courts "have often permitted a narrowly tailored release and injunction in a [§ 363(f)] sale order to ensure that the purchaser of the debtor's property (as well as the debtor's property being sold) is insulated from claims that creditors might have against the debtor and the property being sold." *In re Patriot Place, Ltd.*, 486 B.R. 773, 821-22 (Bankr. W.D. Tex. 2013). Such injunctions "are relatively common with [§ 363(f)] sale orders." *In re Sunland, Inc.*, 2014 WL 7011747, at *5-6 (Bankr. D.N.M. Dec. 11, 2014) (approving insurance policy buyback with channeling injunction). The injunctions that prohibit "third parties from pursuing claims against the" Settling Insurers, including additional insureds, serve "only to preserve the value of the policies for the benefit of all the creditors whose claims are covered under

the policies" and "protects the purchasers of the insurance policies (the insurers) from defending future claims against policies that have been liquidated; without such protections, the insurance companies would have little incentive to settle, purchase, or otherwise monetize the policies." *In re Hopeman Bros., Inc.*, 667 B.R. 101, 108 (Bankr. E.D. Va. 2025) (denying stay pending appeal of order approving insurance policy buyback and injunction). The *Diocese of Rochester* court made the same finding in approving the Settling Insurer's buyback: issuing the injunction under section 105(a) "is essential to give effect to the sale of the Purchased Property to the London Market Insurers and this Order's approval of such sale free and clear of Interests pursuant to Section 363(f)." *Rochester*, ECF No. 3266 ¶ S; ECF No. 3265 ¶ S; *In re Metex Mfg. Corp.*, 2014 WL 3544409, at *3 (Bankr. S.D.N.Y. June 23, 2014) (same finding in order approving sale of insurance policies). Section 105(a) and Rule 9019 thus do not extend section 363(f), they implement it.

18. Section 363(f) reaches OLV's interests in the Shared Insurance Policies as they include claims flowing from the purchased policies. The Second Circuit has held that the term "interest" is a very broad term that "encompasses other obligations that may flow from ownership of the property" being sold. *In re Motors Liquidation Co.*, 829 F.3d 135, 155 (2d Cir. 2016). Other courts agree that "interest" reaches *in personam* claims "connected to, or aris[ing] from, the property being sold." *In re Christ Hosp.*, 502 B.R. 158, 171-72 (Bankr. D.N.J. 2013).

19. The various definitions OLV cites from the Settlement Agreement and Approval Order meet that test. Extra-Contractual Claims are defined in the section 1.1.40 of Settlement Agreement as claims against any Insurer Released Party for bad faith, unfair claims practices, and similar conduct "under or with respect to" an Insurance Policy or claim covered by one. Approval Motion [Dkt. No. 5113-2] at 10. The other Related Insurance Claims, defined in section 1.1.67 of

the Settlement Agreement, are claims that "arise out of, relate (directly or indirectly) to, or connect in any way with the Insurance Policies." *Id.* at 13. The Diocese Settling Parties' rights in Related Insurance Claims, which include Extra-Contractual Claims, are part of the Purchased Property as defined in section 1.1.66 of the Settlement Agreement. *Id.* The Insurance Policies at issue are the policies the Settling Insurers are buying back pursuant to section 363(f). *See id.* at 3.

20. OLV contends that the Insurance Settlement Agreement cannot be approved because it would "prohibit OLV from pursuing any bad faith or other extra-contractual claims against" a Settling Insurer. OLV Sale Objection ¶ 52. The insurer's duty of good faith "is an implied obligation derived from the insurance contract." *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452 (1993). Similarly, as explained above, Extra-Contractual Claims are defined as claims for conduct "under or with respect to" an Insurance Policy being sold to a Settling Insurer. Each of those claims are part of the Purchased Property and subject to section 363(f). The Second Circuit has held that such claims are "inseparable from [the debtor's] own insurance coverage" and may be enjoined as part of a buyback, whether they sound in tort or contract. *MacArthur*, 837 F.2d at 92-93; *cf. In re Quigley Co.*, 676 F.3d 45, 56-57 (2d Cir. 2012). *MacArthur* rejected the argument that a co-insured's rights under the debtor's policies are "separate and distinct" from the debtor's. The Second Circuit held that an insured vendor's rights were "completely derivative of Manville's rights as the primary insured" and could be enjoined as part of the buyback. *MacArthur*, 837 F.2d at 92-93.

21. Accordingly, under binding Second Circuit precedent, the Shared Insurance Policies may be sold free and clear of OLV's interests in the Shared Insurance Policies under section 363(f).

## IV. CONCLUSION

**WHEREFORE**, the Settled Insurers respectfully request that the Court (i) overrule the OLV Sale Objection, grant the Approval Motion, and (ii) award all other relief as is just, equitable, appropriate and consistent with the relief requested herein.

*[Remainder of page intentionally left blank.]*



Case 1-20-10322-CLB, Doc 5160, Filed 10/14/26, Entered 10/14/26 15:07:54,
Description: Main Document , Page 10 of 11

Dated: October 14, 2026

Respectfully submitted,

By: */s/ Adam Haberkorn*

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI (*pro hac vice*)
ADAM P. HABERKORN
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com
ahaberkorn@omm.com

*-and-*

**CLYDE & CO US LLP**
MARIANNE G. MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07340
Telephone: (973) 210-6700
Email: marianne.may@clydeco.us

*Attorneys for Aetna Insurance Company f/k/a CIGNA Property & Casualty Insurance Company and n/k/a ACE Property & Casualty Insurance Company, Insurance Company of North America, Federal Insurance Company, Pacific Employers Insurance Company, and U.S. Fire Insurance Company*