UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Diocese of Buffalo, N.Y.,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-10322-CLB |
| The Diocese of Buffalo, N.Y.,<br><br>Plaintiff,<br>v.<br><br>The Continental Insurance Company, *et al*.,<br><br>Defendants. | Adv. Proc. No. 20-01009-CLB |
| All Saints Roman Catholic Church Society of Buffalo, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>21st Century Premier Insurance Company (f/k/a National Ben Franklin Fire Insurance Co. of Pittsburgh, PA, *et al*.,<br><br>Defendants. | Adv. Proc. No. 21-01001-CLB |

**DECLARATION OF RICHARD C. SUCHAN IN SUPPORT OF THE DIOCESE'S MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS WITH CERTAIN SETTLING INSURERS AND GRANTING RELATED RELIEF**

Richard C. Suchan, declares and states as follows:

1. I am the Chief Operating Officer ("COO") for The Diocese of Buffalo, N.Y., (the "Diocese"). I have served as COO of the Diocese since July 2021. Prior to working for the Diocese, for ten years I served as the Executive Director of The Foundation of the Roman Catholic

Diocese of Buffalo, N.Y., Inc. In my capacity as COO, I am familiar with the Diocese's assets, liabilities, sources of income, and its chapter 11 case.

2. I make this Declaration based upon: (a) my personal knowledge of certain facts stated herein, (b) information supplied to me by others associated with the Diocese, (c) my review of relevant documents, (d) consultation with professionals engaged by the Diocese, and (e) my experience and knowledge of Diocesan operations. If I were called to testify, I would testify to the facts as set forth herein.

3. I am authorized by the Diocese to submit this Declaration in support of the *Motion for Entry of Orders Pursuant to Section 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Settling Insurers and Granting Related Relief* [Docket No. 5113] (the "Motion"), which provides funding and support for the Second Amended Plan, as it may be further modified (the "Joint Plan")[1] in the amount of $176,955,500 to be placed into the Settlement Trust for the benefit of Abuse Claimants.

**BACKGROUND**

4. On February 28, 2020, the Diocese filed a voluntary chapter 11 petition for relief with this Court and commenced the captioned case in order to address the numerous claims alleging sexual abuse asserted against the Diocese.

5. On February 28, 2020, the Diocese commenced an adversary proceeding against certain Settling Insurers and other insurance carrier defendants by filing a complaint for breach of contract and declaratory judgment, seeking a declaration of the rights, duties, and liabilities of the

[1] Capitalized terms that are used herein but not defined shall have the meanings assigned to such terms in the Motion or the Joint Plan.

parties pursuant to the terms of their respective policies and damages [Adv. No. 20-01009, Dkt. No. 1] (the "Diocese Coverage Action").

6. On January 15, 2021, certain Additional Debtors, along with the Diocese, commenced adversary against certain Settling Insurers and other insurance carrier defendants by filing a complaint for breach of contract and declaratory judgment, seeking a declaration of the rights, duties, and liabilities of the parties pursuant to the terms of their respective insurance policies and damages [Adv. Pro. No. 21-01001, Dkt. No.1] (the "Additional Debtors Coverage Action", collectively with the Diocese Coverage Action, the "Insurance Coverage Actions").

7. On June 5, 2020, the Diocese moved the Court for an order referring the Insurance Coverage Actions to mediation [Docket No. 106] (the "First Mediation Motion").

8. On December 27, 2021, the Bankruptcy Court entered its *Decision and Order* conditionally granting the First Mediation Motion, subject to: (i) the resolution of certain discovery issues; (ii) a representation from the Diocese in support of its position that each defendant to the Insurance Coverage Actions should be required to participate in mediation; and (iii) the selection of a mediator. [Docket No. 1512].

9. On February 3, 2022, the Court entered an *Order Referring This Adversary Proceeding to Mediation* [Docket No. 1568] (the "Mediation Order"). The Mediation Order, among other things: (i) referred the claims asserted in the Coverage Actions to mediation; (ii) appointed the Honorable United States Bankruptcy Judge Michael J. Kaplan as mediator; and (iii) directed the Diocese, the Insurers, the Committee, the ad hoc committee of Parishes, and other Protected Parties to participate in the mediation process.

10. After almost a year of mediation with Judge Kaplan, on January 19, 2023, the Court entered an *Order Appointing Patrick H. NeMoyer as Additional Mediator* [Docket No. 2215] to serve as an additional mediator with Judge Kaplan.

11. During a status conference held on October 10, 2024, the Diocese advocated for the Court to direct the parties to continue their mediation efforts with the help of a new co-mediator. Accordingly, on January 13, 2025, the Court issued its *Decision and Order* appointing Judge Melanie Cyganowski, retired bankruptcy judge from the Eastern District of New York, to serve as a co-mediator with Judge NeMoyer. [Docket No. 3501].

12. After years of mediation, the settlements with the Settling Insurers were negotiated by the Diocese, the Committee, and the Settling Insurers at arm's length, with the assistance of each party's counsel and other professionals, and under the supervision of well-credentialed, Court approved, independent mediators. I was involved in the negotiations that resulted in the proposed settlements. It is my belief that the Settlement Agreements are the result of hard-fought, good faith negotiations between the Diocese, the Committee, and the Settling Insurers.

13. In addition to the $176,955,500 in funding provided by the Settling Insurers, the Joint Plan provides for the Diocese Settling Parties to make an aggregate contribution of $150 million to the Settlement Trust, thereby providing $326,955,500 to fund the Settlement Trust established under the Joint Plan.

**<u>SETTLEMENT WITH THE SETTLING INSURERS</u>**

14. The terms of settlement provide for settlement payments from the Settling Insurers in the aggregate amount of $176,955,500 in exchange for extinguishment of their coverage obligations and a buy-back of the Subject Insurance Policies. The negotiated settlements also contemplate that, in exchange for the payment of the Settlement Proceeds (i) the Settling Insurers

will receive releases from the Diocese Settling Parties, (ii) Abuse Claims that would otherwise have been asserted against the Diocese Settling Parties or their collective insurance policies will be channeled to the Settlement Trust, (iii) the Subject Insurance Policies will be sold back to the Settling Insurers free and clear of any claims or interests and, (iv) in furtherance of such "free and clear" sale, the Settling Insurers will receive the benefit of an injunction enjoining claimants from pursuing such claims or interests against the Settling Insurers. The Committee has agreed to accept the amounts offered by each of the Settling Insurers and to the other material terms of settlement.

15. In evaluating settlement proposals, the Diocese consulted with its professionals including lead bankruptcy counsel Bond Schoeneck & King, PLLC and special insurance counsel Blank Rome, LLP, as well as with the Committee and its professionals. Litigation risks, insurance defense strengths and weaknesses, the parties' respective positions in mediation, and the strengths, weaknesses, and potential settlement values of various claims asserted against the Diocese and Diocese Settling Parties were all factors that the Diocese considered in connection with its analysis.

16. As part of its evaluation of the proposed settlements with the Settling Insurers, the Diocese considered the potential liability of the Diocese and Diocese Settling Parties for Abuse Claims. In addition, the Diocese considered the Joint Plan's alternative option of assigning Insurance Claims to the Settlement Trust to prosecute the Coverage Action, along with having individual Litigation Claimants engage in post-confirmation litigation in state court, and the delay, costs, and risks associated with such litigation, including, but not limited to, incurring professional and Settlement Trust administrative fees while such actions are pending, the possibility of adverse decisions which could result in little or no recovery for the Settlement Trust, and the impact of prolonged litigation on survivors. The Diocese considered other potential ways to resolve its disputes with the Settling Insurers and to monetize the value of its insurance policies. Ultimately,

however, the Diocese determined, in consultation with the Committee, that the certainty of a negotiated settlement with the Settling Insurers was in the best interest of the Diocese and survivors.

17. After conferring with the professionals employed by the Diocese, I believe that the settlements proposed in the Motion represent a fair and reasonable compromise and that it is in the best interest of the Diocese's estate and all of its creditors, but specifically survivors. More specifically, entering into the settlements will result in $176,955,500 to fund the Settlement Trust and will eliminate the risk of unfavorable litigation outcomes and additional litigation expenses in the Coverage Action.

18. It is my belief that the Diocese is exercising sound business judgment by entering into the Settlement Agreements, as further confirmed by the Committee's support for the Motion.

I swear, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 14, 2026

By: *\/s/ Richard C. Suchan*
Richard C. Suchan
Chief Operating Officer
The Diocese of Buffalo, N.Y.