UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re

THE DIOCESE OF BUFFALO, N.Y., BK 20-10322 CLB

Debtor.

CORRECTED
<u>DECISION & ORDER</u>

---

THE DIOCESE OF BUFFALO, N.Y.,

Plaintiff, AP 20-01009 CLB

v.

THE CONTINENTAL INSURANCE COMPANY, et al.,

Defendants.

---

ALL SAINTS ROMAN CATHOLIC CHURCH SOCIETY OF BUFFALO, et al.,

Plaintiffs, AP 21-01001 CLB

v.

21st CENTURY PREMIER INSURANCE COMPANY (f/k/a National Ben Franklin Fire Insurance Co. of Pittsburgh, PA), et al.,

Defendants.

---

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq., Grayson T. Walter, Esq.,
Charles J. Sullivan, Esq., Sara C. Temes, Esq.,
Justin S. Krell, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for The Diocese of Buffalo, N.Y.

Blank Rome LLP
James R. Murray, Esq., of counsel
1271 Avenue of the Americas
New York, New York 10020
Attorneys for The Diocese of Buffalo, N.Y.

Pachulski Stang Ziehl & Jones LLP
Ilan D. Scharf, Esq., Karen B. Dine, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Westerman Ball Ederer Miller Zucker & Sharfstein, LLP
William C. Heuer, Esq., of counsel
1201 RXR Plaza
Uniondale, New York 11556
Attorneys for All Parishes with the Diocese of Buffalo, N.Y.

Lippes Mathias LLP
Raymond L. Fink, Esq., Kevin T. Merriman, Esq., of counsel
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Attorneys for Baker Hall dba OLV Human Services

O'Melveny & Myers LLP
Tancred V. Schiavoni, Esq.,
Adam P. Haberkorn, Esq., of counsel
Times Square Tower
7 Times Square
New York, New York 10036
Attorneys for Various Insurance Companies

Clyde & Co US LLP
Marianne G. May, Esq., of counsel
340 Mt. Kemble Ave., Suite 300
Morristown, New Jersey 07340
Attorneys for Various Insurance Companies

Plevin & Turner LLP
Miranda H. Turner, Esq., of counsel
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006
Attorneys for The Continental Insurance Company

Office of the U.S. Trustee
Joseph W. Allen, Esq., Jill M. Zubler, Esq., of counsel
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

Carl L. Bucki, Chief U.S.B.J.

The Diocese of Buffalo has moved to approve a settlement of two adversary proceedings, both of which sought judgment declaring that defendant insurance companies are obligated to provide coverage for claims arising from alleged incidents of sexual abuse. Chief among the provisions of the proposed settlement is the repurchase of insurance contracts for a total consideration of $176,955,500, a sum which the parties will pay into a trust that will fund distributions under a proposed plan of reorganization. A central issue is whether the debtor may sell contact rights free and clear of all other claims and interests. But in addition, the United States Trustee opposes broad releases that the settlement contemplates for the benefit of insurers.

On February 28, 2020, the Diocese of Buffalo, N.Y., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In papers supporting that petition, the debtor acknowledged the need to address claims for sexual abuse. To this end, on the same day as the filing of its petition, the debtor also commenced an adversary proceeding seeking a judgment declaring that nine insurance companies had a duty to defend and to provide coverage for abuse claims. Then on January 19, 2021, the Diocese and its parishes started another adversary proceeding for declaratory relief against 69 insurance companies. Meanwhile, prior to the claims bar deadline,

approximately 924 claims have been submitted for damages arising from alleged instances of sexual abuse.

For almost five years, various mediators have worked to facilitate a settlement not only of the two adversary proceedings, but also with regard to the terms of a reorganization plan. Key parties have now agreed to a global resolution whose implementation will require at least three coordinated parts. First, the debtor and the Official Committee of Unsecured Creditors are currently seeking confirmation of a joint plan of reorganization. Funding for this plan will come primarily from two sources: payment of $150,000,000 from resources of the Diocese and its parishes; and the proceeds of a settlement with insurers. A second step will require that parishes file pre-packaged petitions for relief under Chapter 11, for the purpose of securing the benefit of a discharge in exchange for plan contributions. A third step is the finalization of a settlement with insurance companies. To this end, the debtor has moved to approve settlement agreements and to authorize the sale of contract rights that exist under outstanding policies of insurance.

Discussion

The Diocese of Buffalo now operates as a debtor in possession, as defined in 11 U.S.C. § 1101. Consequently, subject to exceptions not here relevant, the Diocese holds all of the rights, powers and duties of a trustee. 11 U.S.C. § 1107(a). Bankruptcy Rule 9019 states that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." In the present instance, the motion to approve the insurance settlement has been duly served on all creditors

and the United States Trustee. In its written submissions and oral presentations, the Diocese has convincingly demonstrated that the proposed settlement is fair, equitable and in the best interests of the estate and its creditors. Although they assert serious objections to coverage, the settling insurers are offering to pay the considerable sum of $176,955,500. At the hearing on the motion, no creditor questioned the settlement's monetary terms. The Official Committee of Unsecured Creditors gave its unconditional support. We find, therefore, that the settlement falls within a range of reasonableness that would allow its approval. The chief remaining issue is whether the settlement complies with the strictures of the Bankruptcy Code.

At the time of its bankruptcy filing, the debtor's estate included contract rights that arose under various policies of insurance. The essence of the proposed settlement is that the insurance companies will repurchase those contract rights free and clear of all other interests. Most especially, those other interests include any right that an abuse victim might possess to recover compensation from the insurer. Authority for this arrangement derives from 11 U.S.C. § 363(b) and § 363(f). Subdivision (b) states generally that a trustee, after notice and hearing, may sell property outside the ordinary course of its business. A sale free and clear of interests is then addressed in subdivision (f), which reads as follows:

> "The trustee may sell property under subsection (b) or © of this section free and clear of any interest in such property of an entity other than the estate, only if – (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such

> interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

In balloting on the Second Amended Joint Plan of Reorganization, abuse victims have an opportunity also to consent to a release of claims against non-debtor entities. We need not rely on consent under part 2 of subdivision (f), however, because a sale free and clear of creditor interests is allowed under parts (4) and (5) of the statute.

Part (4) of section 363(f) permits a sale free and clear of interests whenever those interests are in bona fide dispute. Here, the mere existence of an interest is subject to multiple levels of contention. As to the personal injury itself, the debtor has disputed both liability and damages. The insurers have disputed coverage, and in some instances, have also disputed a duty to defend. Because many of the insurance policies are lost, some insurers question the scope of their obligations. A further area of challenge is whether under New York law, plaintiffs have any interest in insurance prior to the issuance of a judgment against the insured. *See Lang v. Hanover Ins.*, 3 NY3d 350 (2004). Due to these bona fide disputes regarding interests in the policies of insurance, the statute allows a sale free and clear of all claims.

The proposed sale also involves an uncommon circumstance where victims could be compelled to accept a money satisfaction of any interest in insurance. As against an insurer, the recovery of any claim is subject to contract terms. No matter the level of damages, a payment of policy limits will absolve the insurer. Being subject to the possibility of a money satisfaction, victims have at most an interest that the debtor can clear pursuant to 11 U.S.C. § 363(f)(5).

Pursuant to section 363(b) and section 363(f) of the Bankruptcy Code, the Diocese of Buffalo may sell back its contract rights under various insurance policies to the issuing insurers. The details of these repurchases are stated in separate agreements with each settling party. With regard to these agreements, the Court has received two written objections. The first is presented by Baker Hall, doing business as OLV Human Services. Baker Hall asserts that it is a co-owner of some of the insurance policies, and that the debtor cannot modify the rights of an owner not in bankruptcy. At the hearing on the present motion, counsel advised that the parties were working to resolve the objection. In anticipation of successful negotiations, the Court will defer final approval of a sale until the parties have finalized acceptable language for inclusion in the settlement documents.

The Office of the United States Trustee filed the other written objection, in which it asserts two arguments. First, it contends that the plan, the sale agreements and the sale order impermissibly provide non-consensual releases and injunctions for the benefit of the settling insurers. In particular, the Trustee believes that these releases and injunctions were designed to evade *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S.Ct. 2071 (2024). In that ruling, the Supreme Court held that the Bankruptcy Court lacks power "to discharge the debts of a nondebtor without the consent of affected claimants." 603 U.S. at 218. In the Trustee's view, the settling insurers are nondebtors for whom the releases and injunctions will serve as the functional equivalent of a discharge.

Settling insurers have potential liability only by reason of obligations that arise

under the insurance policies. The proposed settlement involves the repurchase of those same contracts. When the sale occurs, the Diocese of Buffalo will no longer own any of the contract rights that derived from the policies. Concurrently, the insurance companies will have terminated every obligation that the insurance contracts might have created. In particular, the insurer will then have no further obligation to any injured party whose interests have been cleared pursuant to 11 U.S.C. § 363(f). Any releases and injunctions must by viewed in this context.

The repurchase of insurance contracts operates fully to settle the obligations of the insurers. But when defendants contribute more than $176 million to a resolution of claims, we understand their desire for harmless redundancy. Unlike the releases in *Purdue Pharma*, the settlement here gives nothing beyond the inevitable consequences of a repurchase of insurance policies. Rather, the releases and injunctions provide only a supplementary means to assure that result. Accordingly, we overrule the Trustee's first objection.

In his second objection, the United States Trustee questions the imposition of a "Gatekeeper Injunction," which would require that prospective or continuing disputes be brought in the first instance to the Bankruptcy Court. The settlement agreements are contingent upon confirmation of the Second Amended Joint Plan of Reorganization, into which the Gatekeeper Injunction is incorporated. As now presented in the plan, the Gatekeeper Injunction may have application to issues other than those which involve the settling insurers. Consequently, any objection to this provision should more appropriately be considered as a plan objection. Without overruling the Trustee's

second objection at this time, we will defer its consideration to plan confirmation.

Conclusion

We understand that the parties intend to finalize an individual settlement agreement with each of the settling insurers. We assume also that these agreements will incorporate language that satisfies the objection of Baker Hall. Otherwise, for the reasons stated herein, the Court will approve the proposed settlements. The objection of the United States Trustee with regard to the use of a Gatekeeper Injunction is preserved and will be considered in the context of plan confirmation. All other objections of the United States Trustee are overruled. After allowing an opportunity for review by interested parties and the Office of the United States Trustee, the debtor may submit orders that approve the stipulations of settlement. The settlements are contingent, however, upon confirmation of a Plan of Reorganization.

So ordered.

Dated: October 26, 2026 __/s/ Carl L. Bucki________________________
Buffalo, New York Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y